1

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   08-80736-CIV-MARRA

FILED by _____ D.C.

JUL 17 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

IN RE:  JANE DOE,

         Plaintiff,

vs.

UNITED STATES OF AMERICA,

         Defendant.

_____/

ORIGINAL

REC'D by _____ D.C.

JUL 18 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

                    Federal Courthouse
                    West Palm Beach, Florida
                    July 11, 2008
                    10:15 a.m.


        The above entitled matter came on for

Emergency Petitioner for Enforcement of Crime Victim

Rights before the Honorable Kenneth A. Marra,

pursuant to Notice, taken before Victoria Aiello,

Court Reporter, pages 1-32.



For the Plaintiff:  Bradley Edwards, Esquire


For the Defendant:  Dexter Lee, AUSA

                    Maria Villafana, AUSA


OFFICIAL REPORTING SERVICES, LLC   (954) 467-8204

2

1          (Call to Order of the Court).

2          THE COURT: Good morning.  Please be seated.

3          This is the case of In Re:  Jane Doe, Case

4    Number 08-80736-Civ-Marra.  May I have counsel state

5    their appearances, please?

6          MR. LEE: Good morning, Your Honor.  May it

7    please the Court, for the United States of America,

8    we have Maria Villafana, Assistant United States

9    Attorney and Dexter Lee, Assistant United States

10   Attorney. And we have seated in the front row FBI

11   Special Agent Becker Kendall and Jason Richards.

12   Thank you, Your Honor.

13         MR. EDWARDS: Good morning, Your Honor.  Brad

14   Edwards on behalf of the petitioners. Petitioners

15   are also in the courtroom today.  This petition is

16   styled on her behalf.

17         THE COURT: Good morning.  All right.  We're

18   here on the petitioner's motion to enforce her

19   rights as a victim under 18 USC 3771.  I have

20   received the petition, the government's response and

21   the victim's reply, which was filed, I guess, this

22   morning.  So, You want to proceed, counsel?.

23         MR. EDWARDS: Yes, Your Honor.  You prefer me

24   at the podium?

25         THE COURT:  It is easier for us to hear you.

OFFICIAL REPORTING SERVICES, LLC   (954) 467-8204

3

1          MR. EDWARDS: Your Honor, as a factual

2    background, Mr. Epstein is a billionaire that

3    sexually abused and molested dozens and dozens of

4    girls between the ages of 13 and 17 years old.  And

5    through cooperating victims, that evidence can be

6    proven. Because of his deviant appetite for young

7    girls, combined with his extraordinary wealth and

8    power, he may just be the most dangerous sexual

9    predator in U.S. history.  This petitioner is one of

10   the victims and she is in attendance today.  Another

11   one of Mr. Epstein's victims is also in attendance

12   today.  She would be able to provide evidence that

13   she provided-- that Mr. Epstein paid her to provide

14   him over 50 girls for the purposes of him to

15   sexually abuse.  Therefore, the undercurrents of the

16   petition are clear.  The plea bargain that was

17   worked out for Mr. Epstein in light of the offenses

18   that he committed is clearly unfair to the point

19   that if anybody looks at the information, it is

20   unconscionable.

21          THE COURT:  Well, I mean, is that for me?

22   That's not my role. That's the prosecutor's role to

23   apply, would it not? I can't force them to bring

24   criminal charges.  What do I have to do with that.

25          MR. EDWARDS: Okay.

4

1      THE COURT:  That may be your opinion, that

2  may be your client's opinion, but I presume that the

3  government is aware that that's your client's

4  opinion.  How does that change anything?

5      MR. EDWARDS: That's my problem.  I'm not

6  sure that the government is aware that is

7  petitioner's opinion and that's why we're here

8  today, just to enforce the victim's rights under 18

9  USC 3771, Crime Victims Rights Act, and all we are

10  asking is to order that the plea agreement that has

11  been negotiated in this case--

12      THE COURT:  How do you know there is a plea

13  agreement?  The plea agreement is with the State of

14  Florida, wasn't it?

15      MR. EDWARDS: There was a state charge with

16  one victim that I'm aware of.  And the plea

17  agreement as to that one victim was 18 months in the

18  county jail. But along with that, the Palm Beach

19  County Sheriff investigating this case was getting

20  no action out of the local authorities and sent this

21  to the FBI.

22      THE COURT:  It was actually the Palm Beach--

23  Town of Palm Beach Police, not the Sheriff's Office.

24      MR. EDWARDS: I'm sorry, Judge.  And that's

25  why the FBI got involved because Michael Feeter

OFFICIAL REPORTING SERVICES, LLC   (954) 467-8204

5

1    wrote a scathing letter to the State Attorney about

2    Mr. Epstein receiving preferential treatment by

3    local authorities.

4         Before the FBI took the case, they went

5    behind the victim's back, and this is our motion,

6    without the victim's input and allowing her the

7    right to meaningfully confer with the government,

8    which is a right that she can assert at this time.

9    They worked out a plea deal where if Mr. Epstein

10   would plead to this other charge regarding another

11   victim in the state court case, they would agree to

12   not prosecute him for all of the federal charges of

13   what they were aware of in federal court..

14        THE COURT:  So that's already apparently

15   taken place, correct?

16        MR. EDWARDS: I don't know if it has taken

17   place. I'm not sure exactly what stage it is in.  I

18   know it is supposed to be attached at some point in

19   time to a state court plea.

20        THE COURT: Hasn't he already plead guilty,

21   though?

22        MR. EDWARDS: If he did plead guilty, it is

23   my understanding and belief that the agreement with

24   the federal government and with the U.S. Attorney's

25   Office wasn't signed on that day.  So it is still my

6

1  belief, I could be wrong, but that that agreement

2  hasn't been completed as of this time.

3       THE COURT:  So let's assume it hasn't been

4  completed.

5       MR. EDWARDS: Okay.  Then petitioner would

6  like the right to confer with--

7       THE COURT:  You can go in the conference

8  room. We've got the FBI agents, you've got the

9  assigned prosecuting attorney.  You have got a

10 conference room.  You've got your client.  Go and

11 talk.  Confer.  And then it is up government to

12 decide what to do, correct?

13      MR. EDWARDS: In a way, Your Honor, that's

14 very similar to what happened in In Re: Dean and PB

15 case where there is a plea agreement negotiated and

16 then the victim gets the right to confer.

17      THE COURT:  It's already negotiated.  What

18 am I supposed to do?

19      MR. EDWARDS: Order that the agreement that

20 was negotiated is invalid and it is illegal as it

21 did not pertain to the rights of the victim.

22      THE COURT:  I can order you into the

23 conference room.  Then the government can do what it

24 chooses. It can agree to prosecute or it can agree

25 to going forward with the agreement it had already

1   reached and after consulting your client and in

2   taking into consideration your client's views,

3   decide to go forward anyway. I can't make them

4   prosecute him.  I can't-- All I can do is, at best,

5   say confer with the victim, consider the victim's

6   input before you make a decision or reconsider the

7   decision you already made in view of the victim's

8   input, if it is possible for you to do that.  So if

9   I invalidate the agreement, what's the best you can

10   get?  The right to confer?

11          MR. EDWARDS: Exactly.  That is all we can.

12          THE COURT: So why can't you go into the

13   conference room now, take as much time as you feel

14   you need and confer?

15          MR. EDWARDS: Judge, at this time I'd like to

16   move ore tenus to add the victim that's in the

17   courtroom to this conference with the U.S.

18   Attorney's Office.

19          THE COURT:  So is that Jane Doe 2 for

20   purposes of this?

21          MR. EDWARDS: Exactly, Your Honor.

22          THE COURT:  All right. Let me hear from the

23   government then.

24          MR. LEE:.  Good morning, Your Honor.  May it

25   please the Court.

8

1          Let me update the Court on the status of

2    various matters.  The agreement to defer prosecution

3    to the State of Florida was signed and completed by

4    December of 2007.  Mr. Epstein's attorneys saught a

5    higher review within the Department of Justice and

6    it took a number of months for that to come to

7    fruition.  When it came to fruition, he ended up

8    pleading guilty on June 30, 2008 to two charges in

9    state court, and he was sentenced to a term of

10   incarceration of 18 months, with another 12 months

11   of community control after the completion of his

12   sentence, and he is currently incarcerated as we

13   speak.

14          We have two arguments, Your Honor.  First,

15   insofar as the right that they claim under

16   3771(a)(5), their right to confer in the case, we

17   respectfully submit that there was no case in

18   federal court and, indeed, none was contemplated if

19   the plea agreement was to be successfully completed,

20   since it contemplated the State of Florida sentence

21   on the criminal charges.  So as long as certain

22   conditions were met and certain federal interests

23   were vindicated, the federal government was

24   satisfied that this was an appropriate disposition.

25          Insofar as the best effort, Your Honor, we

9

1    have cited the Attorney General's guidelines.  The

2    guidelines do say that you should normally advise

3    victims of plea negotiations and the terms of the

4    plea, but they recognize that there are times when

5    they may not be appropriate or could cause some harm

6    or prejudice, and they set out six factors which are

7    to be considered, non-exhaustive factors.

8         We have advised, in the declaration of AUSA

9    Villafana that when the subject of having Mr.

10   Epstein concede that he would be convicted of an

11   enumerated offense for purposes of a cause of action

12   under 18 USC 2255, there was a rather strenuous

13   objection from Mr. Epstein's counsel that the

14   federal government was inducing some effort to

15   either fabricate claims, enhance claims or embellish

16   claims and if this agreement ultimately could not be

17   consumated, then we'd have a federal prosecution on

18   our hands, and we did not want to be in a positin of

19   creating additional impeachment material.

20        I can't say that the stand by Mr. Edwards

21   that the arguments of inducement in a subsequent

22   civil action can be made by any criminal victim,

23   that is true.  It is another thing for that

24   inducement to have come before the prosecution

25   arguing about the credibility and veracity of the

1   individual. That was a considerably strong point, in

2   essence, in not discussing those terms with the

3   victims as might ordinarily be done if those

4   considerations did not exist.

5       So, first, Your Honor, we believe that

6   3771(a)(5) does not apply.

7       THE COURT:  Well, what about the language in

8   the statute that suggests that a victim can bring a

9   claim or seek enforcement of his or her rights under

10  the statute before a case is filed?  What does that

11  refer to?

12      MR. LEE: Your Honor, we believe that's a

13  venue provision essentially telling an individual if

14  there is no exigent case, there is no case of United

15  States versus So And So, then you seek to enforce

16  your rights, then you can go in and do so in the did

17  court where the offense occurred.  This is not

18  saying, necessarily, that rights exist, but if you

19  believe they exist, here is the place where you're

20  going to have to lodge it, and the Court will have

21  to decide.

22      Now, there are certain of the eight rights

23  accorded in 3771(a) that could come up before any

24  charge is filed.  For instance, let's say somebody

25  believes that the perpetrator of the crime is going

1    to try to harm them or threatened them or

2    intimidated them into not testifying or cooperating

3    with the government and, of course, no indictment

4    has been returned. If an individual went to the

5    government and believed that the individual had not

6    acted appropriately, they can go to the district

7    court and say I need to have my rights under

8    3771(a)(1) enforced because those people are

9    threatening me, and the government hasn't done

10   enough.  That would be a situation.

11        But we're talking really here about (a)(5),

12   which is the right to consult in the case and we

13   respectfully submit that there is not case until a

14   charge has been filed.

15        THE COURT:  So, what about the circuit case

16   that was actually pending case had to do with a plea

17   agreement in a pending case?

18        MR. LEE: Yes.  The distinction between the

19   Dean case and the instant case, Your Honor, is

20   this.  In Dean, they had negotiated with BP

21   Petroleum for a plea and it was always contemplated

22   that there was going to be a federal prosecution.

23   The distinction in this case was that there was

24   already a pending state prosecution and the

25   objective for both sides was to keep it in state

1  court and the federal government's objective was to

2  ensure that there were sufficient safeguards in the

3  state court proceedings and concessions made by Mr.

4  Epstein so that federal interests, particularly a

5  cause of action for damages for the victims of the

6  sexual exploitation could be preserved. So that's

7  the key distinction because there was no federal

8  case, there was no federal criminal charge

9  contemplate so long as the agreement could be

10  reached.

11        THE COURT:  All right.  So they want me to

12  invalidate your non-prosecution agreement.

13        MR. LEE: Your Honor, we respectfully submit

14  that 3771 does not grant authority of this Court to

15  do so.  In the Dean case, for instance, Your Honor,

16  there was a plea agreement that was entered into and

17  district court, of course, entertained a plea

18  agreement and exercised its judicial discretion in

19  terms of whether to accept it or not.  The victims

20  were encouraged to go to district court and say, you

21  know, we didn't hear about this.  We should have,

22  and we object to it for the following reasons.  The

23  district court take that into account.  There is no

24  plea agreement before this Court.  There will be no

25  plea proceedings in this court.  That was all done

1   in state court several weeks ago.  So that's another

2   basis for distinguishing Dean.

3           THE COURT:  All right.  So is there any

4   point in conferring with these victims?

5           MR. LEE: Your Honor, I will always confer,

6   sit down with Jane Doe 1 and 2, with the two agents

7   and Ms. Villafana. We'll be happy to sit down with

8   them.

9           THE COURT:  But it wouldn't make any

10  difference in terms of the outcome.  Would maybe

11  give them the benefit of your explanation of why you

12  did what you did and why you came to the conclusion

13  you did, but it is not going to change your decision

14  in any way.

15          MR. LEE: If it is going to change, it would

16  have to be done at a level higher than mine, Your

17  Honor.

18          THE COURT:  What was-- I didn't understand

19  your statement earlier that Mr. Epstein wanted some

20  kind of review of higher authority within the

21  Department in terms of whether or not the federal

22  government was going to insist on preserving any

23  civil claims.

24          MR. LEE: Your Honor, of the agreement was

25  consumated by the parties in December of 2007.  Mr.

14

1    Epstein's attorneys wanted a further review of the

2    agreement higher up within the Department of Justice

3    and they exercised their ability to do that.

4          THE COURT:  Meaning? Again, I'm trying to

5    understand.  He wasn't happy with the agreement that

6    he had signed?

7          MR. LEE: Basically, yes.  And was trying to

8    maintain that the agreement should be set aside or

9    more favorable terms.

10         THE COURT:  Now, in terms of -- You don't

11   dispute that Jane Doe 1 and 2-- First of all, do you

12   have an objection to Jane Doe 2 being added as a

13   petitioner in this case?

14         MR. LEE: No, I don't.

15         THE COURT:  I'll grant that request.

16         You don't dispute that they're victims

17   within the meaning of the Act.

18         MR. LEE: It depends to which -- There is one

19   Jane Doe-- Well, there is one individual who is one

20   of Mr. Edwards' clients who we do not believe to

21   been a victim.  If these are SN and CW, then we have

22   no objection and I can discuss-- If I may have a

23   moment, Your Honor.

24         Your Honor, thank you.  I have been

25   corrected.  We have no objection.

15

1          THE COURT:  Okay.

2          MR. LEE: We agree they're victims.

3          THE COURT:  Now, what is your position,

4    then, regarding the right of a victim of a crime

5    that is potentially subject to federal prosecution

6    to be, to have input with the prosecutor, your

7    office, before a resolution or decision not to

8    prosecute is made?  Do you say that there is no

9    right to confer under those circumstances because

10   there is no "case pending" so any decision not to

11   prosecute, there is no right to confer but that

12   right to confer only is triggered once there is an

13   indictment or an information filed?

14         MR. LEE: That is correct, Your Honor.  The

15   Attorney General guidelines which were published in

16   May of 2005 provide that the rights in 3771(a)(1

17   through 8) accrue when a charge is filed in federal

18   court.  Now, that my change after the Dean

19   decision.  It is under consideration.  But that's

20   the government's position.

21         THE COURT:  All right.  And so -- Are you

22   saying all of the rights--

23         MR. LEE: Your Honor, some of the rights

24   clearly will only pertain after a charge has been

25   filed.  The one that pertains to notice of public

1    hearing, public proceedings, though, can't apply

2    until there are public proceedings to be had.

3            Of course, these guidelines are a floor and

4    not a ceiling.  They're to be applied with common

5    sense.  If somebody-- If charges of assault were

6    being investigated and somebody would come in and

7    say the perpetrator whom you're investigating is

8    getting ready to indict has been threatening me,

9    following me, and I need help because he or she is

10   going to do something bad to me and try to take care

11   of me before I can testify in the grand jury, this

12   person would not be turned away because a charge

13   hasn't been filed yet.  Those guidelines would be

14   applied with common sense.

15           But specifically insofar as a (a)(5), which

16   is the right to consult with the attorney for the

17   government in the case, that would not accrue until

18   there is a days.  And, in our view, a case doesn't

19   come into being until charges are filed.

20           THE COURT:  And are there any reported

21   decisions that you are aware of where any court has

22   found a right to confer before charges are filed?

23           MR. LEE: I'm not aware of any, Your Honor.

24           THE COURT:  All right.  Thank you.

25           MR. LEE: Thank you, Your Honor.

1        THE COURT:  Counsel?

2        MR. EDWARDS: I would just like to address

3    that Dean decision.  They're asking you that you

4    just simply ignore it because the decision clearly

5    was a decision made because as it is a direct result

6    of a plea deal being worked out prior to the victims

7    being able to speak.

8        THE COURT:  But there was a pending case,

9    though, correct?

10        MR. EDWARDS: As I understand the decision--

11        THE COURT: As I understand the plea deal, it

12    was negotiated prior to charges being filed.  Then

13    there was a filed case and then the court had the

14    ability to accept the plea or not.  And at that

15    point, you would have the ability to entertain or

16    assert an objection because you weren't consulted

17    about the plea.

18        So there was a proceeding or case in which

19    you can assert a right to confer.  How do you do

20    that before a case is filed?  How do you enforce the

21    government or force the government to consult about

22    not filing a case?  Every case they have to consult

23    with the victim before they decide not to prosecute?

24        MR. EDWARDS: No, there are limitations.  I

25    think in my reply I refer to the case of U.S. V.

18

1    Rubin where they discussed that very scenario

2    stating there at least has to be criminal charges

3    contemplate by the government before these rights

4    kick in.  The rights under (d)(3) and (a)(5), the

5    right to confer and the Dean case clearly states

6    clearly rights under the CBRA apply before

7    prosecution is under way.  Logically, this includes

8    the CBRA establishments of a victim's reasonable

9    right to confer with the attorney for the

10   government.  And, that's read in the plain reading

11   of the statutes as well.

12         This first case in interpreting it, I think

13   it's pretty clear the distinction they're making

14   between BP and this case.  Is it a distinction

15   withoug a real difference in that the court is

16   saying you have this right before the case is filed

17   which is exactly what we are saying.  And the result

18   in that case was they filed the case, later let him

19   plea out to some sweet deal.  And in this case, what

20   we have is they avoid that by deciding not to file.

21   Either way, you deprive the victim of their right

22   before making that decision.

23         And the main problem that the court had in

24   Dean, as it states, the victims do have rights when

25   there is an impact and the eventual sent is

1   substantially less.  Whereas here, their input is

2   received after the parties have reached a tentative

3   deal.  Well, the government just stated the deal was

4   reached back in October of 2007. However, attached

5   to their response is a letter to my client

6   petitioner, dated January 10, 2008, after the time

7   then counsel just put on the record that the deal

8   was already finalized and it starts, the opening

9   paragraph talks about whether they wanted the

10  victims to have the right to confer.  It says, this

11  case is currently under investigation.  This is

12  January 2008.  This case has been a lengthy process

13  and we request your continued patience while we

14  conduct a thorough investigation.  Sounds like the

15  exact opposite of, we want you to come in and confer

16  and let us know what you really feel about this.

17      That is our biggest problem with what has

18  happened here, is that she just wasn't given a voice

19  and if somebody would have heard her, we believe

20  there would have been a different outcome.  To go

21  back into a room right now and talk, after there has

22  already been a plea negotiated without Your Honor

23  ordering that in this case the plea deal needs to be

24  vacated, it is illegal and give her her rights.

25      THE COURT:  Well, would you agree or not

20

1    that Mr. Epstein plead guilty to the state charges

2    probably at least, in part, in reliance upon the

3    fact that he had an agreement with the federal

4    government they weren't going to prosecute? Would

5    you concede that or would would present evidence to

6    that effect?

7        MR. EDWARDS: Of course we would. Yes, of

8    course. Sure.

9        THE COURT:  So you agree that Mr. Epstein is

10   now sitting in the Palm Beach County Jail a

11   convicted felon serving 18 months of imprisonment,

12   at least in material part, because he relied upon

13   the government's non-prosecution agreement?

14       MR. EDWARDS: Yes. I agree that he is sitting

15   there because he is guilty and maybe he took the

16   plea rather than going to trial and being found

17   guilty later in part because of this non-prosecution

18   agreement that was worked out behind the other

19   victims' backs.  I would agree with that.

20       THE COURT:  So he accepted the State's deal

21   in part because he knew he had an agreement from the

22   federal government that they weren't going to

23   prosecute.

24       MR. EDWARDS: I presume.  I speculate that is

25   true.

1              THE COURT:  So you want me now, then, to set

2     aside the government's agreement with him because

3     there was no conferring, yet he has already accepted

4     a plea agreement and is sitting in custody, in part,

5     in reliance on that agreement.  I mean, I can undo

6     the agreement in your theory, but how do I-- Mr.

7     Epstein, in a sense, would then be adversely

8     affected by my actions when he acted in reliance

9     upon the agreement. How does that work?

10             MR. EDWARDS: Certainly, we're only asking

11    you to vacate the agreement.  I understand and your

12    point is well taken.  And I believe that at that

13    point in time his rights may kick in and say, wait,

14    I was relying on this other deal so I wouldn't be

15    prosecuted for these hundreds of other girls that I

16    molested; that I plead guilty over here to the one

17    girl that I will admit to molesting. So maybe I can

18    get to withdraw my plea. But the last thing he wants

19    to do because if he ends up going to trial, I'll be

20    in prison for the rest of his life like any other

21    person who ever did this crime would be.  He could

22    have that argument, I guess, but still wouldn't

23    really work well for him.

24             THE COURT:  All right.  So you still think I

25    should set aside the agreement, require the

1    government to confer?

2        MR. EDWARDS: Work out a plea negotiation

3    commensorate with the crimes that he committed and

4    that are favorable after they confer with the

5    victims.  And it is within their discretion.  Of

6    course, they can decide on their own that, hey, I

7    think that the agreement was fair after they have

8    talked with the victims.  That could happen.  I

9    don't know if a reasonable person that would do

10   that, but it could happen.

11       THE COURT:  Apparently, you are not

12   suggesting that that these person are not

13   reasonable.

14       MR. EDWARDS: I'm suggesting they haven't

15   conferred with the victims and that if they took

16   into consideration what these two in the courtroom

17   have to say, I don't think that we'd be in this same

18   position right now.

19       THE COURT: They have never spoken to your

20   client about what happened to them?

21       MR. EDWARDS: They have spoken to them about

22   what happened.  Maybe not about what the girls

23   wanted to happen as a result of this case, which is

24   part of conferring to decide that these girls wanted

25   money on their own, which is basically what this--

23

1    this non-prosecution agreement entails that has

2    language that he'll agree to liability in a civil

3    case. That's not what these girls-- They want

4    justice.  They want him in prison now more than

5    ever. The reason they stated they kept this

6    agreement from the girls and they basically conceded

7    we didn't tell the girls about this agreement, well,

8    the reason is because they would have objected and

9    they wouldn't have been able to sign off on this and

10   the victims would have had a voice, and we'd still

11   been going through litigation.  The exact problem

12   they tried to prevent, at least in their terms which

13   was the impeachment of these girls at a later trial,

14   is still available to anybody once the civil suits

15   are filed anyway.

16         They have three arguments. One, we didn't

17   have to talk to them.  Two, we did talk to them sort

18   of.  And if you don't buy that, the reason we didn't

19   talk to them, we were trying to prevent them from

20   being impeached later.  None of them trump the

21   victims' rights to confer prior to plea

22   negotiations.  That's why, Your Honor, we would ask

23   this Court to enter an order vacating that previous

24   plea agreement as illegal, ask them to confer with

25   the victims once again or for the first time and

24

1    work out a negotiated plea to that accord.

2         THE COURT:  Well, all you can ask them to do

3    is confer. I can't ask them to do anything beyond

4    that.  I mean, it is up to them to negotiate.

5         MR. EDWARDS: I wouldn't quarrel with that.

6         THE COURT:  Now, having learned today, I

7    guess, that the agreement was signed when, in

8    October?

9         MR. EDWARDS: October 2007, I heard.

10        THE COURT: About eight or nine months ago,

11   is there any need to rush to a decision in this

12   matter?  The decision has already been made.  You

13   filed this, I think, on the presumption that the

14   agreement was about to take place and you wanted to

15   be able to confer beforehand and you weren't sure

16   what was going on.

17        MR. EDWARDS: Precisely, Your Honor.  And I'm

18   holding the letters that are exhibits that they were

19   writing to my client during the year of 2008 telling

20   her how lengthy of a process this was going to be

21   and be patient.  So, right, I was completely in the

22   dark about when this agreement was signed.

23        THE COURT:  In view of the fact that this

24   agreement has already been consumated, and you want

25   me to set it aside, as opposed to something that's

1   about to occur, would you agree that-- and I have

2   done this very quickly because of the petition and

3   your allegation that something was about to happen.

4   I'm not blaming you.

5           MR. EDWARDS: I was mistaken.

6           THE COURT:  I'm not blaming you for doing

7   that.  In view of what you know now, is there any

8   need to treat this as an emergency that has to be

9   decided by tomorrow?

10          MR. EDWARDS: I can't think of any reason in

11  light of what we just heard.

12          THE COURT: Mr. Lee, do you have anything

13  else you wanted to add? Does either side think I

14  need to take evidence about anything?   If I do,

15  since this is not an emergency anymore, I can

16  probably find a more convenient time to do that.  I

17  don't have the time today to take evidence.  But if

18  you do believe that I should take evidence on this

19  issue.

20          MR. EDWARDS: It may be best if I conferred

21  with the U.S. Attorney's Office on that and we can

22  make a decision whether it is necessary or whether

23  Your Honor deemed it was necessary for you to make a

24  decision.

25          THE COURT:  I want to know what your

1    respective positions are because it may be something

2    in terms of having a complete record, and this is

3    going to be an issue that's it going to go to the

4    Eleventh Circuit, may be better to have a complete

5    record as to what your position is and the

6    government's is as to what actions were taken.  And

7    I don't know if I have enough information, based on

8    Ms. Villafana's affidavit or I need additional

9    information.  And because it is not an emergency, I

10   don't have to do something quickly, we can play it

11   be ear and make this into a more complete record for

12   the court of appeals.

13           MR. EDWARDS: If there is a time where it is

14   necessary to take evidence, Your Honor is correct in

15   stating that it is not an emergency and it doesn't

16   need to happen today.  And, I will confer with the

17   government on this and if evidence needs to be

18   taken, it be taken at a later date.  It doesn't seem

19   like there will be any prejudice to any party.

20           THE COURT: Mr. Lee, do you have any

21   thoughts?  You want to consult with Mr. Edwards?

22           MR. LEE: There may be a couple of factual

23   matters that I need to chat with petitioner's

24   counsel on.  If we can reach agreement on those as

25   to what was communicated to CW and what time, if

1    they don't dispute that, then we don't think it will

2    be necessary to have an evidentiary hearing.  But if

3    we can agree, fine or maybe we can't. We'll talk

4    about it.

5         THE COURT:  All right.  So why don't you let

6    me know if you think an evidentiary hearing is

7    necessary.  If there are additional stipulations you

8    want to enter into or supplement what has already

9    been presented, you can do that.

10        Now, the other issue I want to take up,

11   though, is the government filed its response to the

12   petition under seal.  And so I want to know why.

13   What is in there that at this point needs to be

14   under seal?  Is there anything in there that's

15   confidential, privileged, anything that's different

16   from what you hve said here in open court that

17   requires that to be sealed?

18        MR. LEE: Well, Your Honor, on our motion to

19   seal was based on two reasons.  One that dealt with

20   individuals or minors at the time that the offense

21   occurred.  So we were attempting to protect the

22   privacy of those individuals.  And also it dealt

23   with negotiations with Mr. Epstein which were in the

24   nature of plea negotiations, which we treat as

25   confidential.  Normally, they're not aired out in

28

1    open court. So those were our two reasons.

2         THE COURT:  All right.  But I guess the

3    letters you attached only related to Mr. Edwards'

4    client.

5         MR. LEE: Three of them, yes, Your Honor.

6         THE COURT:  Are you prepared, Mr. Edwards,

7    to waive any issues regarding the release of those

8    documents that relate to your clients?

9         MR. EDWARDS: Judge, I think it would be

10   appropriate to redact the names of the clients as

11   they have done.

12        THE COURT: I don't think the names are in

13   there.

14        MR. EDWARDS: I think they're redacted.

15   They're blacked out.  I have no problem with

16   releasing those documents.  I'm not sure that's part

17   of the deal.  But if it is--

18        MR. LEE: It is.

19        MR. EDWARDS: Okay.  I'll waive.

20        THE COURT:  You really don't have any

21   objection to those letters that were sent to them

22   being released to the public?

23        MR. EDWARDS: Of course not, Judge.

24        THE COURT:  Then what is there about the

25   plea agreement or the negotiations that is in the

1   response that we really haven't already kind of--

2        MR. LEE: Your Honor, there was a

3   confidentiality agreement in the deferral of

4   prosecution to the State of Florida.  So we were

5   trying to maintain the confidentiality of the

6   negotiations that occurred since we had discussions

7   during those negotiations as one of the reasons why

8   we decided not to tell all of the individuals what

9   was going on.

10       THE COURT:  But is that still necessary,

11  that confidentiality or is that kind of moot at this

12  point?

13       MR. LEE: Well, we would like it sealed.

14  Admittedly, what happened today in open court has

15  probably weakened our argument.  I don't dispute

16  that.

17       THE COURT:  In your opinion, anything in

18  particular, any paragraph in the response or in Ms.

19  Villafana's affidavit that you think is particularly

20  troublesome that should remain under seal?

21       MR. LEE: May I have a moment, Your Honor?

22       THE COURT:  Yes.

23       MR. LEE: Thank you.  Your Honor, one aspect

24  of this in the notification letters that were

25  dispatched to individuals which were attached to Ms.

1    Villafana's declaration, there is a citation to a

2    clause in the agreement that was reached regarding

3    the damages remedy under 18 USC 2255 that was

4    subject to the constitutionality agreement, we

5    believe that should still remain confidential.

6         THE COURT: But hasn't the fact that this

7    provision was part of the agreement again been

8    aired? Is there any secret to it anymore?

9         MR. LEE: The actual text of it has not been

10   aired. The existence of it has been heard but the

11   actual text has not and we believe it should still

12   remain confidential.

13        THE COURT:  Okay.  Any other argument on

14   that issue?

15        MR. LEE: No, Your Honor. Thank you.

16        THE COURT:  Ms. Villafana wants to speak to

17   you.

18        MR. LEE: Your Honor, one item that I'd like

19   to bring to the Court's attention. We had advised

20   Mr. Epstein and his attorneys that if we were to

21   disclose some of the agreement, we would give them

22   advance notice and ability to lodge an objection. We

23   would like an opportunity to do that.

24        THE COURT: All right.  But you're not

25   disclosing.  It would be by my order that it would

1    be disclosed.

2         MR. LEE: Yes, Your Honor.  And we just would

3    like to register that we believe it should remain

4    confidential.

5         THE COURT:  All right.

6         MR. EDWARDS: Your Honor, I don't see any

7    authority for keeping that under seal.

8         THE COURT:  I agree.  The fact that there is

9    this preserved right on behalf of the victims to

10   pursue a civil action is already a matter of public

11   record; the exact text of the clause-- I don't see

12   that disclosing the text of the clause when the fact

13   that the clause exists is already a matter of public

14   record.  It is not harmful in any way to Mr. Epstein

15   or the government and the letters to the victim that

16   the victim can disclose those letters, they're not

17   under any confidentiality obligation or restriction

18   and they're free to disclose it themselves if they

19   choose to.  So I don't see that there is any real

20   public necessity to keep the response sealed in view

21   of what we discussed already on the record and the

22   victim's ability to disclose those provisions of

23   their own choosing, if they wish.  So, in view of

24   the public policy that matters filed in court

25   proceedings should be open to the public and sealing

1  should only occur in circumstances that justife the

2  need to restrict public access, I'm going to deny

3  the motion to seal the response and allow that to be

4  viewed.

5      All right.  So I'll let both of you confer

6  about whether there is a need for any additional

7  evidence to be presented.  Let me know one way or

8  the other.  If there is, we'll schedule a hearing.

9  If there isn't and you want to submit some

10 additional stipulated information, do that, and then

11 I'll take care of this in due course.

12      MR. EDWARDS: Thank you, Your Honor.

13      THE COURT:  All right.

14      MR. LEE: Thank you, Your Honor.

15      MS. VILLAFANA: Thank you, Your Honor.

16      THE COURT:  You're welcome.

17      (Proceedings concluded.)

18

19

20      I hereby certify that the foregoing is true

21 and correct to the best of my ability.

22

23

24  _____

25 Victoria Aiello, Court Reporter