# ATTACHMENT TO MOTION TO INTERVENE OR IN THE ALTERNATIVE FOR A SUA SPONTE RULE 11 ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-Civ-Marra/Johnson

JANE DOE #1 AND JANE DOE #2,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.

BRUCE E. REINHART,

      Intervenor

_____/

## INTERVENOR'S MOTION FOR SANCTIONS

Comes now, Bruce E. Reinhart, intervenor and party in interest (hereinafter "Movant"), and moves this Honorable Court to impose sanctions under Federal Rule of Civil Procedure 11(b) and 28 U.S.C. 1927 based on intentional or reckless false, bad faith, vexatious factual and legal assertions made about Movant in Paragraphs 52 and 53 of Plaintiff's Motion for Finding of Violations of the Crime Victims' Rights Act (the "Motion") [DE 48].

### BACKGROUND

The instant cause of action involves claims by Plaintiffs that Defendant violated the Crime Victims Rights Act (CVRA), 18 U.S.C. §3771, in its handling of a criminal investigation of Jeffrey Epstein ("Epstein") and others.  The investigation ultimately resulted in a non-prosecution agreement between the United States and Epstein.  On

March 21, 2011, Plaintiffs filed their Motion.[1]  Numbered paragraphs 1-50 of the Motion are a chronological review of the background of the Epstein investigation, including the interactions among the victims' counsel, counsel for Epstein, the Government and the FBI.  Paragraph 51 asserts that at all relevant times it was feasible for the Government to provide certain notifications to Plaintiffs.

Without attempting to make any connection to the asserted violation of the CVRA, Paragraphs 52 and 53 falsely allege that Movant violated Florida Bar rules and Department of Justice regulations by representing Epstein's employees in civil litigation after Movant retired from the United States Attorney's Office for the Southern District of Florida ("Office").  They also falsely allege that Movant, while still employed by the Office engaged in improper conduct relating to Epstein.  These allegations are made in bad faith, unreasonably, without reasonable inquiry into the law and facts, vexatiously, and for the improper purpose of gratuitously harassing Movant.

## LEGAL STANDARDS

### Federal Rule of Criminal Procedure 11

Federal Rule of Civil Procedure 11 states that a lawyer signing any pleading in federal court is certifying that:

[T]to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[1] Movant was not served with a copy of the pleading.  Movant first saw the pleading on April 20, 2011.

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). Rule 11 uses an objective standard. *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003). The analysis is whether "a reasonable attorney in like circumstances could believe that his actions were factually and legally justified." *Id.* (citing *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1294 (11th Cir. 2002)). Violations of Rule 11 are punishable by monetary and non-monetary sanctions against both the lawyer filing the pleading and the lawyer's client. Fed. R. Civ. P. 11(c).

### 28 U.S.C. §1927

Title 28, United States Code, Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expense, and attorneys' fees reasonably incurred because of such conduct.

To impose sanctions under § 1927, the Court must find that the attorney's conduct is "'tantamount to bad faith.'" *Amlong & Amlong,* 500 F.3d 1230, 1239 (11th Cir. 2007) (*quoting Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). "[T]he attorney must knowingly or recklessly pursue a frivolous claim." *Id.* at 1242. The finding of bad faith does not turn on "the attorney's subjective intent, but on the attorney's objective conduct." *Id.* at 1239. The standard is "whether, regardless of the attorney's subjective intentions, the conduct was unreasonable and vexatious when measured against an objective standard." *Hudson v. Int'l Comp. Negotiations, Inc.,* 499 F.3d 1252, 1262 (11th Cir. 2007).

3

## DISCUSSION

Paragraphs 52 and 53 contain inflammatory claims that are false, misleading, and irrelevant to the relief sought in the Motion.  *See generally* Declaration of Bruce E. Reinhart (attached as Exhibit 1 and incorporated by reference).   They ultimately allege, "[Movant's] representations [of Epstein's employees] are in contravention of Justice Department regulations and Florida bar rules.  Such representations also give, at least, the improper appearance that Reinhart may have attempted to curry [sic] with Epstein and then reap his reward through favorable representation."   Plaintiff's Motion at ¶53.  They do not cite to any particular bar rule or regulation that they believe was violated.  They do not explain how the alleged conduct contributed to the Department of Justice's alleged violation of the CVRA.  Nor do they explain how the alleged conduct is imputable to the Department of Justice.  These otherwise slanderous accusations against a non-party are false.  They were made in bad faith, without a factual inquiry reasonable under the circumstances, or elementary research into the legal basis for the allegations.

Paragraphs 52 and 53 omit the following true facts, which Plaintiffs should have investigated before making their allegations: (1) Movant did not participate in any way in the Office's investigation of Epstein, (2) after leaving government employment, Movant did not represent Epstein before the  Department of Justice, nor did Movant communicate with the Department of Justice about Epstein, and (3) Movant did not use confidential information obtained during his Government employment to the detriment of the United States. *See* Declaration of Bruce E. Reinhart at ¶¶11-12, 17.

Rather than conducting the required inquiry, Plaintiffs simply make two irresponsible and unsupported leaps.  First, they incorrectly conclude that merely because

Movant worked in the Office at the time of the Epstein case, Movant must have been involved in the internal decisionmaking at the Office about Epstein. Second, they incorrectly conclude that because Movant later represented Epstein's employees in private civil litigation, Movant must have used confidential Government information improperly in his representation of Epstein's employees, and for his own financial gain.

It is apparent that Plaintiffs conducted no factual inquiry to substantiate their accusations before making them. They never contacted Movant. On information and belief, they did not speak to any current or former personnel from the Office or the FBI who were familiar with the structure of the West Palm Beach Office or with Movant's role (or lack thereof) in the Epstein investigation. Had they done so, they would have learned that there were approximately 20 Assistant United States Attorneys in the West Palm Beach Office during the relevant time period. *See* Declaration of Bruce E. Reinhart at ¶10. They would have learned that Movant was not assigned to the same section as the prosecutor handling the Epstein matter. *Id.* They would have learned that Movant had a different chain of supervision from the prosecutor assigned to the Epstein matter. *Id.* They would have learned that Movant had no involvement in the Epstein investigation. *See* Declaration of Bruce E. Reinhart at ¶¶11-12.

Further, Plaintiffs did not conduct an adequate inquiry into the applicable Department of Justice regulations. As discussed below, to violate the relevant regulations, a former employee must appear before, or communicate with, the Department of Justice, about a particular matter in which the former employee participated personally and substantially while employed at the Department of Justice. *See* 5 C.F.R. §2641.201(a). The Motion contains approximately 50 paragraphs of a

5

detailed historical litany of the interactions among the parties to the Epstein matter. The Motion does not allege that Movant participated at all, let alone personally and substantially, as a government employee in the Epstein investigation. The Motion does not allege that that Movant subsequently appeared before, or communicated with, the Department of Justice about Epstein. To the contrary, the Motion alleges only that, after leaving the Office, Movant represented Epstein's employees in litigation with non-Governmental third parties. Had Plaintiffs conducted rudimentary research into the applicable regulations, they would have known that any allegation that Movant violated these regulations was frivolous.

*Movant Did Not Violate Any Florida Bar Rule*

<u>Relevant Florida Bar Rules</u>

The potentially applicable Florida Bar rules are Rule 4-1.6(a) (Confidentiality of Information), Rule 4-1.9 (Conflict of Interest; Former Clients), and Rule 4-1.11 (Special Conflicts of Interest for Former and Current Government Officers and Employees). For purposes of these rules, the U.S. Department of Justice was Movant's client during his employment in the Office. Movant did not violate any of the bar rules.

Rule 4-1.6(a) states:

A lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.

Rule 4-1.6 was not violated because Movant did not know any confidential information about the Epstein matter, so none could be revealed.

Rule 4-1.9 states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

6

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; or

(b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or,

(c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Rule 4-1.9 was not violated because Movant never represented the United States in the Epstein matter.

Rule 4-1.11 states in pertinent parts:

(a) A lawyer who has formerly served as a public officer or employee of the government:

(1) is subject to rule 4-1.9(b); and

(2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

. . .

(c) A lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public.

(d) A lawyer currently serving as a public officer or employee:

(1) is subject to rules 4-1.7 and 4-1.9; and

(2) shall not:

> (A) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent; or

> (B) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.

Rule 4-1.11(a) was not violated because Movant did not participate personally and substantially in the Epstein matter. Rule 4-1.11(c) was not violated because Movant did not have any confidential Government information within the meaning of the rule, so he did he use any confidential Government information about a third party to the detriment of that third party. Rule 4-1.11(d) was not violated because Movant did not participate personally and substantially in the Epstein matter.

*Movant Did Not Violate Department of Justice Regulations*

Department of Justice Regulations

The Department of Justice regulation containing post-employment restrictions, 5 C.F.R. §2641.201, states in most pertinent part:

(a) Basic prohibition of 18 U.S.C. 207(a)(1). No former employee shall knowingly, with the intent to influence, make any communication to or appearance before an employee of the United States on behalf of any other person in connection with a particular matter involving a specific party or parties, in which he participated personally and substantially as an employee, and in which the United States is a party or has a direct and substantial interest.

. . .

(i) Participate: To "participate" means to take an action as an employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other such action, or to purposefully forbear in order to affect the outcome of a matter . . . An employee does not participate in a matter

merely because he had knowledge of its existence or because it was pending under his official responsibility.[2]

Movant did not violate 5 C.F.R. §2641.201 because he did not participate personally and substantially in the Epstein matter as a Government employee.  He did not appear before the United States on behalf of Epstein after leaving Government employment.   He did not communicate with the United States on behalf of Epstein after leaving Government employment.   He represented Epstein's employees in civil cases in which the Government was not a party.

It is clear from the face of the regulations that Movant's representing Epstein's employees in civil matters not involving the Government did not violate §2641(a).  In fact, had Plaintiffs and their counsel properly investigated the facts and law, they would have seen that §2641(a) would have permitted Movant to represent Epstein, himself, openly against the Department of Justice.  Movant did not.  The allegation that Movant violated Department of Justice regulations is frivolous.

---

[2] A complete copy of this regulation is attached to this Motion as Exhibit 2.

CONCLUSION

The allegations in Paragraph 52 and 53 of the Motion are false, made in bad faith, and made without sufficient inquiry into the law and facts. They are irrelevant to whether the United States Attorney complied with the CVRA. Notably, the Motion does not attempt to tie the allegations against Movant to the alleged violation of the CVRA. The allegations are included gratuitously in the Motion solely to harass Movant in a forum where the accusations are not legally slanderous. The allegations are made without reasonable pre-filing inquiry into the facts or law. This Court should issue an Order to Show Cause why sanctions should not be imposed under Rule 11 or 28 U.S.C. §1927.

Respectfully submitted,

/s/ Bruce E. Reinhart
BRUCE E. REINHART,P.A.
Florida Bar # 10762
250 S. Australian Avenue, Suite 1400
West Palm Beach, Florida 33401
(561) 202-6360 fax (561) 202-6976
Breinhart@BruceReinhartLaw.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Intervenor's Motion For Sanctions was served on all counsel of record by CM/ECF on _____, 2011.

/s/Bruce Reinhart
BRUCE REINHART

# EXHIBIT 1

## DECLARATION OF BRUCE E. REINHART

I, Bruce E. Reinhart, make the following declaration pursuant to 28 U.S.C. §1746.

1.  I am a licensed attorney in solo practice as Bruce E. Reinhart, P.A.  My office is located at 250 S. Australian Avenue, Suite 1400, West Palm Beach, Florida, 33401.

2.  I am a member in good standing of the bars of the states of Florida, Pennsylvania, and New Jersey.  I am also admitted to the practice in the United States District Court for the Southern District of Florida, the U.S. Court of Appeals for the Eleventh Circuit, the U.S. Supreme Court, and several other federal courts.

3.  I graduated from Princeton University in 1984 with a B.S.E. in civil engineering *cum laude*.  I graduated from the University of Pennsylvania Law School in 1987, *cum laude*.  I also served as an Editor of the University of Pennsylvania Law School.

4.  After graduating from law school, I served as judicial law clerk to the Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania.

5.  In 1988, I began working at the Criminal Division of the United States Department of Justice in Washington, D.C., through the Attorney General's Honors Program.  From 1988-1994, I worked in the Public Integrity Section of the Criminal Division.  While working there, I received two Special Achievement Awards for Meritorious Acts and Service from the Department of Justice.

6.    While at the Public Integrity Section, I was involved in investigating and prosecuting people who violated federal conflict of interest and post-employment statutes. I attended multiple training conferences where federal conflicts of interest laws and regulations were discussed.

7.    From in or about July 1994 to on or about May 1, 1996, I served as Senior Policy Advisor to the Undersecretary of the Treasury for Enforcement at the United States Department of the Treasury. In that position, I helped the Undersecretary, the Deputy Secretary, and the Secretary of the Treasury to develop law enforcement policies for U.S. Customs, ATF, Secret Service, and IRS Criminal Investigations. I also acted as principal staff liaison to the Deputy Attorney General, the FBI and the other Department of Justice law enforcement agencies. For my service, I was awarded the Undersecretary for Enforcement's Award for Exceptional Service.

8.    I am the former Vice Chair of the Palm Beach County Bar's Professionalism Committee. I am the former President of the Palm Beach County Chapter of the Federal Bar Association. I currently serve as an Ethics Commissioner on the Palm Beach County Commission on Ethics.

9.    From May 1, 1996 to January 1, 2008, I served as an Assistant United States Attorney in the Southern District of Florida, assigned to the West Palm Beach office. From in or about July 1998 to in or about October 2002, I was a Supervisory Assistant United States Attorney. From October 2002 to January 2008, I was a non-supervisory Assistant United States Attorney handling my own docket of cases.

10. At all relevant times, the Office had approximately 20 Assistant U.S. Attorneys assigned to the West Palm Beach location. The prosecutor assigned to the Epstein case, Ann Marie Villafana, and I were assigned to different sections within the Office. We reported to different supervisors.

11. I did not participate in any way in the Office's investigation of Epstein. I was not involved in any of the Office's decisionmaking with regard to the Epstein matter.

12. I never learned any confidential, non-public information about the Epstein matter.

13. In late December 2007, I had an "exit meeting" with Dexter Lee, the Office's ethics officer. As part of that meeting, Mr. Lee reviewed with me the Department of Justice's post-employment restrictions. Based on our conversation, it was my understanding that I could work on any matter so long as I had not participated in it personally and substantially as a Government employee. I also understood that I could not use non-public Government information for any purpose.

14. After opening my private practice on January 2, 2008, I was retained to represent Sarah Kellen for purposes of civil depositions in causes of action to which the United States was not a party. At a later time, I was retained to represent several other members of Mr. Epstein's staff in their civil depositions.

15. After leaving the Office, I did not participate in any of the negotiations over Mr. Epstein's non-prosecution agreement.

16.     After leaving the Office, I did not communicate with the Office, in person or in writing, about any matters relating to possible criminal charges against Mr. Epstein.

17.     Because I did not have any, I did not share non-public confidential information about the Epstein investigation with any of Epstein's attorneys.

18.     Prior to the filing of Plaintiff's Motion for Finding of Violations of the Crime Victims' Rights Act, neither Mr. Edwards, nor Judge Cassell, nor anyone on their behalf contacted me to determine if the allegations in Paragraphs 52 and 53 of that Motion were true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 3, 2011.

Bruce E. Reinhart

# EXHIBIT 2

§ 2641.201 Permanent restriction on any former employee's..., 5 C.F.R. § 2641.201

Code of Federal Regulations
Title 5. Administrative Personnel
Chapter XVI. Office of Government Ethics
Subchapter B. Government Ethics
Part 2641. Post-Employment Conflict of Interest Restrictions (Refs & Annos)
Subpart B. Prohibitions

5 C.F.R. § 2641.201

§ 2641.201 Permanent restriction on any former employee's representations to United States concerning particular matter in which the employee participated personally and substantially.

Effective: July 25, 2008
Currentness

(a) Basic prohibition of 18 U.S.C. 207(a)(1). No former employee shall knowingly, with the intent to influence, make any communication to or appearance before an employee of the United States on behalf of any other person in connection with a particular matter involving a specific party or parties, in which he participated personally and substantially as an employee, and in which the United States is a party or has a direct and substantial interest.

(b) Exceptions and waivers. The prohibition of 18 U.S.C. 207(a)(1) does not apply to a former employee who is:

(1) Acting on behalf of the United States. See § 2641.301(a).

(2) Acting as an elected State or local government official. See § 2641.301(b).

(3) Communicating scientific or technological information pursuant to procedures or certification. See § 2641.301(e).

(4) Testifying under oath. See § 2641.301(f). (Note that this exception from § 2641.201 is generally not available for expert testimony. See § 2641.301(f)(2).)

(5) Acting on behalf of an international organization pursuant to a waiver. See § 2641.301(h).

(6) Acting as an employee of a Government-owned, contractor-operated entity pursuant to a waiver. See § 2641.301(i).

(c) Commencement and length of restriction. 18 U.S.C. 207(a)(1) is a permanent restriction that commences upon an employee's termination from Government service. The restriction lasts for the life of the particular matter involving specific parties in which the employee participated personally and substantially.

(d) Communication or appearance--

(1) Communication. A former employee makes a communication when he imparts or transmits information of any kind, including facts, opinions, ideas, questions or direction, to an employee of the United States, whether orally, in written correspondence, by electronic media, or by any other means. This includes only those communications with respect to which the former employee intends that the information conveyed will be attributed to himself, although it is not necessary that any employee of the United States actually recognize the former employee as the source of the information.

(2) Appearance. A former employee makes an appearance when he is physically present before an employee of the United States, in either a formal or informal setting. Although an appearance also may be accompanied by certain communications, an appearance need not involve any communication by the former employee.

(3) Behind-the-scenes assistance. Nothing in this section prohibits a former employee from providing assistance to another person, provided that the assistance does not involve a communication to or an appearance before an employee of the United States.

Example 1 to paragraph (d): A former employee of the Federal Bureau of Investigation makes a brief telephone call to a colleague in her former office concerning an ongoing investigation. She has made a communication. If she personally attends an informal meeting with agency personnel concerning the matter, she will have made an appearance.

Example 2 to paragraph (d): A former employee of the National Endowment for the Humanities (NEH) accompanies other representatives of an NEH grantee to a meeting with the agency. Even if the former employee does not say anything at the meeting, he has made an appearance (although that appearance may or may not have been made with the intent to influence, depending on the circumstances).

Example 3 to paragraph (d): A Government employee administered a particular contract for agricultural research with Q Company. Upon termination of her Government employment, she is hired by Q Company. She works on the matter covered by the contract, but has no direct contact with the Government. At the request of a company vice president, she prepares a paper describing the persons at her former agency who should be contacted and what should be said to them in an effort to increase the scope of funding of the contract and to resolve favorably a dispute over a contract clause. She may do so.

Example 4 to paragraph (d): A former employee of the National Institutes of Health (NIH) prepares an application for an NIH research grant on behalf of her university employer. The application is signed and submitted by another university officer, but it lists the former employee as the principal investigator who will be responsible for the substantive work under the grant. She has not made a communication. She also may sign an assurance to the agency that she will be personally responsible for the direction and conduct of the research under the grant, pursuant to § 2641.201(e)(2)(iv). Moreover, she may personally communicate scientific or technological information to NIH concerning the application, provided that she does so under circumstances indicating no intent to influence the Government pursuant to § 2641.201(e)(2) or she makes the communication in accordance with the exception for scientific or technological information in § 2641.301(e).

Example 5 to paragraph (d): A former employee established a small government relations firm with a highly specialized practice in certain environmental compliance issues. She prepared a report for one of her clients, which she knew would be presented to her former agency by the client. The report is not signed by the former employee, but the document does bear the name of her firm. The former employee expects that it is commonly known throughout the industry and the agency that she is the author of the report. If the report were submitted to the agency, the former employee would be making a communication and not merely confining herself to behind-the-scenes assistance, because the circumstances indicate that she intended the information to be attributed to herself.

(e) With the intent to influence--

(1) Basic concept. The prohibition applies only to communications or appearances made by a former Government employee with the intent to influence the United States. A communication or appearance is made with the intent to influence when made for the purpose of:

(i) Seeking a Government ruling, benefit, approval, or other discretionary Government action; or

(ii) Affecting Government action in connection with an issue or aspect of a matter which involves an appreciable element of actual or potential dispute or controversy.

Example 1 to paragraph (e)(1): A former employee of the Administration on Children and Families (ACF) signs a grant application and submits it to ACF on behalf of a nonprofit organization for which she now works. She has made a communication with the intent to influence an employee of the United States because her communication was made for the purpose of seeking a Government benefit.

Example 2 to paragraph (e)(1): A former Government employee calls an agency official to complain about the auditing methods being used by the agency in connection with an audit of a Government contractor for which the former employee serves as a consultant. The former employee has made a communication with the intent to influence because his call was made for the purpose of seeking Government action in connection with an issue involving an appreciable element of dispute.

(2) Intent to influence not present. Certain communications to and appearances before employees of the United States are not made with the intent to influence, within the meaning of paragraph (e)(1) of this section, including, but not limited to, communications and appearances made solely for the purpose of:

(i) Making a routine request not involving a potential controversy, such as a request for publicly available documents or an inquiry as to the status of a matter;

(ii) Making factual statements or asking factual questions in a context that involves neither an appreciable element of dispute nor an effort to seek discretionary Government action, such as conveying factual information regarding matters that are not potentially controversial during the regular course of performing a contract;

(iii) Signing and filing the tax return of another person as preparer;

(iv) Signing an assurance that one will be responsible as principal investigator for the direction and conduct of research under a Federal grant (see example 4 to paragraph (d) of this section);

(v) Filing a Securities and Exchange Commission (SEC) Form 10-K or similar disclosure forms required by the SEC;

(vi) Making a communication, at the initiation of the Government, concerning work performed or to be performed under a Government contract or grant, during a routine Government site visit to premises owned or occupied by a person other than the United States where the work is performed or would be performed, in the ordinary course of evaluation, administration, or performance of an actual or proposed contract or grant; or

(vii) Purely social contacts (see example 4 to paragraph (f) of this section).

Example 1 to paragraph (e)(2): A former Government employee calls an agency to ask for the date of a scheduled public hearing on her client's license application. This is a routine request not involving a potential controversy and is not made with the intent to influence.

Example 2 to paragraph (e)(2): In the previous example, the agency's hearing calendar is quite full, as the agency has a significant backlog of license applications. The former employee calls a former colleague at the agency to ask if the hearing date for her client could be moved up on the schedule, so that her client can move forward with its business plans more quickly. This is a communication made with the intent to influence.

Example 3 to paragraph (e)(2): A former employee of the Department of Defense (DOD) now works for a firm that has a DOD contract to produce an operator's manual for a radar device used by DOD. In the course of developing a chapter about certain technical features of the device, the former employee asks a DOD official certain factual questions about the device and its properties. The discussion does not concern any matter that is known to involve a potential controversy between the agency and the contractor. The former employee has not made a communication with the intent to influence.

Example 4 to paragraph (e)(2): A former medical officer of the Food and Drug Administration (FDA) sends a letter to the agency in which he sets out certain data from safety and efficacy tests on a new drug for which his employer, ABC Drug Co., is seeking FDA approval. Even if the letter is confined to arguably "factual" matters, such as synopses of data from clinical trials, the communication is made for the purpose of obtaining a discretionary Government action, i.e., approval of a new drug. Therefore, this is a communication made with the intent to influence.

Example 5 to paragraph (e)(2): A former Government employee now works for a management consulting firm, which has a Government contract to produce a study on the efficiency of certain agency operations. Among other things, the contract calls

§ 2641.201 Permanent restriction on any former employee's..., 5 C.F.R. § 2641.201

for the contractor to develop a range of alternative options for potential restructuring of certain internal Government procedures. The former employee would like to meet with agency representatives to present a tentative list of options developed by the contractor. She may not do so. There is a potential for controversy between the Government and the contractor concerning the extent and adequacy of any options presented, and, moreover, the contractor may have its own interest in emphasizing certain options as opposed to others because some options may be more difficult and expensive for the contractor to develop fully than others.

Example 6 to paragraph (e)(2): A former employee of the Internal Revenue Service (IRS) prepares his client's tax return, signs it as preparer, and mails it to the IRS. He has not made a communication with the intent to influence. In the event that any controversy should arise concerning the return, the former employee may not represent the client in the proceeding, although he may answer direct factual questions about the records he used to compile figures for the return, provided that he does not argue any theories or positions to justify the use of one figure rather than another.

Example 7 to paragraph (e)(2): An agency official visits the premises of a prospective contractor to evaluate the testing procedure being proposed by the contractor for a research contract on which it has bid. A former employee of the agency, now employed by the contractor, is the person most familiar with the technical aspects of the proposed testing procedure. The agency official asks the former employee about certain technical features of the equipment used in connection with the testing procedure. The former employee may provide factual information that is responsive to the questions posed by the agency official, as such information is requested by the Government under circumstances for its convenience in reviewing the bid. However, the former employee may not argue for the appropriateness of the proposed testing procedure or otherwise advocate any position on behalf of the contractor.

(3) Change in circumstances. If, at any time during the course of a communication or appearance otherwise permissible under paragraph (e)(2) of this section, it becomes apparent that circumstances have changed which would indicate that any further communication or appearance would be made with the intent to influence, the former employee must refrain from such further communication or appearance.

Example 1 to paragraph (e)(3): A former Government employee accompanies another employee of a contractor to a routine meeting with agency officials to deliver technical data called for under a Government contract. During the course of the meeting, an unexpected dispute arises concerning certain terms of the contract. The former employee may not participate in any discussion of this issue. Moreover, if the circumstances clearly indicate that even her continued presence during this discussion would be an appearance made with the intent to influence, she should excuse herself from the meeting.

(4) Mere physical presence intended to influence. Under some circumstances, a former employee's mere physical presence, without any communication by the employee concerning any material issue or otherwise, may constitute an appearance with the intent to influence an employee of the United States. Relevant considerations include such factors as whether:

(i) The former employee has been given actual or apparent authority to make any decisions, commitments, or substantive arguments in the course of the appearance;

(ii) The Government employee before whom the appearance is made has substantive responsibility for the matter and does not simply perform ministerial functions, such as the acceptance of paperwork;

(iii) The former employee's presence is relatively prominent;

(iv) The former employee is paid for making the appearance;

(v) It is anticipated that others present at the meeting will make reference to the views or past or present work of the former employee;

(vi) Circumstances do not indicate that the former employee is present merely for informational purposes, for example, merely to listen and record information for later use;

(vii) The former employee has entered a formal appearance in connection with a legal proceeding at which he is present; and

(viii) The appearance is before former subordinates or others in the same chain of command as the former employee. Example 1 to paragraph (e)(4): A former Regional Administrator of the Occupational Safety and Health Administration (OSHA) becomes a consultant for a company being investigated for possible enforcement action by the regional OSHA office. She is hired by the company to coordinate and guide its response to the OSHA investigation. She accompanies company officers to an informal meeting with OSHA, which is held for the purpose of airing the company's explanation of certain findings in an adverse inspection report. The former employee is introduced at the meeting as the company's compliance and governmental affairs adviser, but she does not make any statements during the meeting concerning the investigation. She is paid a fee for attending this meeting. She has made an appearance with the intent to influence.

Example 2 to paragraph (e)(4): A former employee of an agency now works for a manufacturer that seeks agency approval for a new product. The agency convenes a public advisory committee meeting for the purpose of receiving expert advice concerning the product. Representatives of the manufacturer will make an extended presentation of the data supporting the application for approval, and a special table has been reserved for them in the meeting room for this purpose. The former employee does not participate in the manufacturer's presentation to the advisory committee and does not even sit in the section designated for the manufacturer. Rather, he sits in the back of the room in a large area reserved for the public and the media. The manufacturer's speakers make no reference to the involvement or views of the former employee with respect to the matter. Even though the former employee may be recognized in the audience by certain agency employees, he has not made an appearance with the intent to influence because his presence is relatively inconspicuous and there is little to identify him with the manufacturer or the advocacy of its representatives at the meeting.

(f) To or before an employee of the United States--

(1) Employee of the United States. For purposes of this paragraph, an "employee of the United States" means the President, the Vice President, and any current Federal employee (including an individual appointed as an employee or detailed to the Federal Government under the Intergovernmental Personnel Act (5 U.S.C. 3371-3376)) who is detailed to or employed by any:

(i) Agency (including a Government corporation);

(ii) Independent agency in the executive, legislative, or judicial branch;

(iii) Federal court; or

(iv) Court-martial.

(2) To or before. Except as provided in paragraph (f)(3) of this section, a communication "to" or appearance "before" an employee of the United States is one:

(i) Directed to and received by an entity specified in paragraphs (f)(1)(i) through (f)(1)(iv) of this section even though not addressed to a particular employee, e.g., as when a former employee mails correspondence to an agency but not to any named employee; or

(ii) Directed to and received by an employee in his capacity as an employee of an entity specified in paragraphs (f)(1)(i) through (f)(1)(iv) of this section, e.g., as when a former employee directs remarks to an employee representing the United States as a party or intervenor in a Federal or non-Federal judicial proceeding. A former employee does not direct his communication or appearance to a bystander who merely happens to overhear the communication or witness the appearance.

(3) Public commentary.

(i) A former employee who addresses a public gathering or a conference, seminar, or similar forum as a speaker or panel participant will not be considered to be making a prohibited communication or appearance if the forum:

(A) Is not sponsored or co-sponsored by an entity specified in paragraphs (f)(1)(i) through (f)(1)(iv) of this section;

(B) Is attended by a large number of people; and

(C) A significant proportion of those attending are not employees of the United States.

(ii) In the circumstances described in paragraph (f)(3)(i) of this section, a former employee may engage in exchanges with any other speaker or with any member of the audience.

(iii) A former employee also may permit the broadcast or publication of a commentary provided that it is broadcast or appears in a newspaper, periodical, or similar widely available publication.

Example 1 to paragraph (f): A Federal Trade Commission (FTC) employee participated in the FTC's decision to initiate an enforcement proceeding against a particular company. After terminating Government service, the former employee is hired by the company to lobby key Members of Congress concerning the necessity of the proceeding. He may contact Members of Congress or their staff since a communication to or appearance before such persons is not made to or before an "employee of the United States" as that term is defined in paragraph (f)(1) of this section.

Example 2 to paragraph (f): In the previous example, the former FTC employee arranges to meet with a Congressional staff member to discuss the necessity of the proceeding. A current FTC employee is invited by the staff member to attend and is authorized by the FTC to do so in order to present the agency's views. The former employee may not argue his new employer's position at that meeting since his arguments would unavoidably be directed to the FTC employee in his capacity as an employee of the FTC.

Example 3 to paragraph (f): The Department of State granted a waiver pursuant to 18 U.S.C. 208(b)(1) to permit one of its employees to serve in his official capacity on the Board of Directors of a private association. The employee participates in a Board meeting to discuss what position the association should take concerning the award of a recent contract by the Department of Energy (DOE). When a former DOE employee addresses the Board to argue that the association should object to the award of the contract, she is directing her communication to a Department of State employee in his capacity as an employee of the Department of State.

Example 4 to paragraph (f): A Federal Communications Commission (FCC) employee participated in a proceeding to review the renewal of a license for a television station. After terminating Government service, he is hired by the company that holds the license. At a cocktail party, the former employee meets his former supervisor who is still employed by the FCC and begins to discuss the specifics of the license renewal case with him. The former employee is directing his communication to an FCC employee in his capacity as an employee of the FCC. Moreover, as the conversation concerns the license renewal matter, it is not a purely social contact and satisfies the element of the intent to influence the Government within the meaning of paragraph (e) of this section.

Example 5 to paragraph (f): A Federal Trade Commission economist participated in her agency's review of a proposed merger between two companies. After terminating Government service, she goes to work for a trade association that is interested in the proposed merger. She would like to speak about the proposed merger at a conference sponsored by the trade association. The conference is attended by 100 individuals, 50 of whom are employees of entities specified in paragraphs (f)(1)(i) through (f)(1)(iv) of this section. The former employee may speak at the conference and may engage in a discussion of the merits of the proposed merger in response to a question posed by a Department of Justice employee in attendance.

Example 6 to paragraph (f): The former employee in the previous example may, on behalf of her employer, write and permit publication of an op-ed piece in a metropolitan newspaper in support of a particular resolution of the merger proposal.

Example 7 to paragraph (f): ABC Company has a contract with the Department of Energy which requires that contractor personnel work closely with agency employees in adjoining offices and work stations in the same building. After leaving the Department, a former employee goes to work for another corporation that has an interest in performing certain work related to the same contract, and he arranges a meeting with certain ABC employees at the building where he previously worked on the project. At the meeting, he asks the ABC employees to mention the interest of his new employer to the project supervisor, who is an agency employee. Moreover, he tells the ABC employees that they can say that he was the source of this information. The ABC employees in turn convey this information to the project supervisor. The former employee has made a communication to an employee of the Department of Energy. His communication is directed to an agency employee because he intended that the information be conveyed to an agency employee with the intent that it be attributed to himself, and the circumstances indicate such a close working relationship between contractor personnel and agency employees that it was likely that the information conveyed to contractor personnel would be received by the agency.

(g) On behalf of any other person--

(1) On behalf of.

(i) A former employee makes a communication or appearance on behalf of another person if the former employee is acting as the other person's agent or attorney or if:

(A) The former employee is acting with the consent of the other person, whether express or implied; and

(B) The former employee is acting subject to some degree of control or direction by the other person in relation to the communication or appearance.

(ii) A former employee does not act on behalf of another merely because his communication or appearance is consistent with the interests of the other person, is in support of the other person, or may cause the other person to derive a benefit as a consequence of the former employee's activity.

(2) Any other person. The term "person" is defined in § 2641.104. For purposes of this paragraph, the term excludes the former employee himself or any sole proprietorship owned by the former employee.

Example 1 to paragraph (g): An employee of the Bureau of Land Management (BLM) participated in the decision to grant a private company the right to explore for minerals on certain Federal lands. After retiring from Federal service to pursue her hobbies, the former employee becomes concerned that BLM is misinterpreting a particular provision of the lease. The former employee may contact a current BLM employee on her own behalf in order to argue that her interpretation is correct.

Example 2 to paragraph (g): The former BLM employee from the previous example later joins an environmental organization as an uncompensated volunteer. The leadership of the organization authorizes the former employee to engage in any activity that she believes will advance the interests of the organization. She makes a communication on behalf of the organization when, pursuant to this authority, she writes to BLM on the organization's letterhead in order to present an additional argument concerning the interpretation of the lease provision. Although the organization did not direct her to send the specific communication to BLM, the circumstances establish that she made the communication with the consent of the organization and subject to a degree of control or direction by the organization.

Example 3 to paragraph (g): An employee of the Administration for Children and Families wrote the statement of work for a cooperative agreement to be issued to study alternative workplace arrangements. After terminating Government service, the former employee joins a nonprofit group formed to promote family togetherness. He is asked by his former agency to attend a meeting in order to offer his recommendations concerning the ranking of the grant applications he had reviewed while still a Government employee. The management of the nonprofit group agrees to permit him to take leave to attend the meeting in order to present his personal views concerning the ranking of the applications. Although the former employee is a salaried employee of the non-profit group and his recommendations may be consistent with the group's interests, the circumstances establish that he did not make the communication subject to the control of the group.

Example 4 to paragraph (g): An Assistant Secretary of Defense participated in a meeting at which a defense contractor pressed Department of Defense (DOD) officials to continue funding the contractor's sole source contract to develop the prototype of a specialized robot. After terminating Government service, the former Assistant Secretary approaches the contractor and suggests that she can convince her former DOD colleagues to pursue development of the prototype robot. The contractor agrees that the former Assistant Secretary's proposed efforts could be useful and asks her to set up a meeting with key DOD officials for the following week. Although the former Assistant Secretary is not an employee of the contractor, the circumstances establish that she is acting subject to some degree of control or direction by the contractor.

(h) Particular matter involving a specific party or parties--

(1) Basic concept. The prohibition applies only to communications or appearances made in connection with a "particular matter involving a specific party or parties." Although the statute defines "particular matter" broadly to include "any investigation, application, request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation, arrest, or judicial or other proceeding," 18 U.S.C. 207(i)(3), only those particular matters that involve a specific party or parties fall within the prohibition of section 207(a)(1). Such a matter typically involves a specific proceeding affecting the legal rights of the parties or an isolatable transaction or related set of transactions between identified parties, such as a specific contract, grant, license, product approval application, enforcement action, administrative adjudication, or court case.

Example 1 to paragraph (h)(1): An employee of the Department of Housing and Urban Development approved a specific city's application for Federal assistance for a renewal project. After leaving Government service, she may not represent the city in relation to that application as it is a particular matter involving specific parties in which she participated personally and substantially as a Government employee.

Example 2 to paragraph (h)(1): An attorney in the Department of Justice drafted provisions of a civil complaint that is filed in Federal court alleging violations of certain environmental laws by ABC Company. The attorney may not subsequently represent ABC before the Government in connection with the lawsuit, which is a particular matter involving specific parties.

(2) Matters of general applicability not covered. Legislation or rulemaking of general applicability and the formulation of general policies, standards or objectives, or other matters of general applicability are not particular matters involving specific parties. International agreements, such as treaties and trade agreements, must be evaluated in light of all relevant circumstances to determine whether they should be considered particular matters involving specific parties; relevant considerations include such factors as whether the agreement focuses on a specific property or territory, a specific claim, or addresses a large number of diverse issues or economic interests.

Example 1 to paragraph (h)(2): A former employee of the Mine Safety and Health Administration (MSHA) participated personally and substantially in the development of a regulation establishing certain new occupational health and safety standards for mine workers. Because the regulation applies to the entire mining industry, it is a particular matter of general applicability, not a matter involving specific parties, and the former employee would not be prohibited from making post-employment representations to the Government in connection with this regulation.

Example 2 to paragraph (h)(2): The former employee in the previous example also assisted MSHA in its defense of a lawsuit brought by a trade association challenging the same regulation. This lawsuit is a particular matter involving specific parties, and the former MSHA employee would be prohibited from representing the trade association or anyone else in connection with the case.

Example 3 to paragraph (h)(2): An employee of the National Science Foundation formulated policies for a grant program for organizations nationwide to produce science education programs targeting elementary school age children. She is not prohibited from later representing a specific organization in connection with its application for assistance under the program.

Example 4 to paragraph (h)(2): An employee in the legislative affairs office of the Department of Homeland Security (DHS) drafted official comments submitted to Congress with respect to a pending immigration reform bill. After leaving the Government, he contacts DHS on behalf of a private organization seeking to influence the Administration to insist on certain amendments to the bill. This is not prohibited. Generally, legislation is not a particular matter involving specific parties. However, if the same employee had participated as a DHS employee in formulating the agency's position on proposed private relief legislation granting citizenship to a specific individual, this matter would involve specific parties, and the employee would be prohibited from later making representational contacts in connection with this matter.

Example 5 to paragraph (h)(2): An employee of the Food and Drug Administration (FDA) drafted a proposed rule requiring all manufacturers of a particular type of medical device to obtain pre-market approval for their products. It was known at the time that only three or four manufacturers currently were marketing or developing such products. However, there was nothing to preclude other manufacturers from entering the market in the future. Moreover, the regulation on its face was not limited in application to those companies already known to be involved with this type of product at the time of promulgation. Because the proposed rule would apply to an open-ended class of manufacturers, not just specifically identified companies, it would not be a particular matter involving specific parties. After leaving Government, the former FDA employee would not be prohibited from representing a manufacturer in connection with the final rule or the application of the rule in any specific case.

Example 6 to paragraph (h)(2): A former agency attorney participated in drafting a standard form contract and certain standard terms and clauses for use in all future contracts. The adoption of a standard form and language for all contracts is a matter of general applicability, not a particular matter involving specific parties. Therefore, the attorney would not be prohibited from representing another person in a dispute involving the application of one of the standard terms or clauses in a specific contract in which he did not participate as a Government employee.

Example 7 to paragraph (h)(2): An employee of the Department of State participated in the development of the United States' position with respect to a proposed treaty with a foreign government concerning transfer of ownership with respect to a parcel of real property and certain operations there. After terminating Government employment, this individual seeks to represent the foreign government before the Department with respect to certain issues arising in the final stage of the treaty negotiations. This bilateral treaty is a particular matter involving specific parties, and the former employee had participated personally and substantially in this matter. Note also that certain employees may be subject to additional restrictions with respect to trade and treaty negotiations or representation of a foreign entity, pursuant to 18 U.S.C. 207(b) and (f).

Example 8 to paragraph (h)(2): The employee in the previous example participated for the Department in negotiations with respect to a multilateral trade agreement concerning tariffs and other trade practices in regard to various industries in 50 countries. The proposed agreement would provide various stages of implementation, with benchmarks for certain legislative enactments by signatory countries. These negotiations do not concern a particular matter involving specific parties. Even though the former employee would not be prohibited under section 207(a)(1) from representing another person in connection with this matter, she must comply with any applicable restrictions in 18 U.S.C. 207(b) and (f).

(3) Specific parties at all relevant times. The particular matter must involve specific parties both at the time the individual participated as a Government employee and at the time the former employee makes the communication or appearance, although the parties need not be identical at both times.

Example 1 to paragraph (h)(3): An employee of the Department of Defense (DOD) performed certain feasibility studies and other basic conceptual work for a possible innovation to a missile system. At the time she was involved in the matter, DOD had not identified any prospective contractors who might perform the work on the project. After she left Government, DOD issued a request for proposals to construct the new system, and she now seeks to represent one of the bidders in connection with this procurement. She may do so. Even though the procurement is a particular matter involving specific parties at the time of her proposed representation, no parties to the matter had been identified at the time she participated in the project as a Government employee.

Example 2 to paragraph (h)(3): A former employee in an agency inspector general's office conducted the first investigation of its kind concerning a particular fraudulent accounting practice by a grantee. This investigation resulted in a significant monetary recovery for the Government, as well as a settlement agreement in which the grantee agreed to use only certain specified accounting methods in the future. As a result of this case, the agency decided to issue a proposed rule expressly prohibiting the fraudulent accounting practice and requiring all grantees to use the same accounting methods that had been developed in connection with the settlement agreement. The former employee may represent a group of grantees submitting comments critical of the proposed regulation. Although the proposed regulation in some respects evolved from the earlier fraud case, which did involve specific parties, the subsequent rulemaking proceeding does not involve specific parties.

(4) Preliminary or informal stages in a matter. When a particular matter involving specific parties begins depends on the facts. A particular matter may involve specific parties prior to any formal action or filings by the agency or other parties. Much of the work with respect to a particular matter is accomplished before the matter reaches its final stage, and preliminary or informal action is covered by the prohibition, provided that specific parties to the matter actually have been identified. With matters such as grants, contracts, and other agreements, ordinarily specific parties are first identified when initial proposals or indications of interest, such as responses to requests for proposals (RFP) or earlier expressions of interest, are received by the Government; in unusual circumstances, however, such as a sole source procurement or when there are sufficient indicia that the Government has explicitly identified a specific party in an otherwise ordinary prospective grant, contract, or agreement, specific parties may be identified even prior to the receipt of a proposal or expression of interest.

Example 1 to paragraph (h)(4): A Government employee participated in internal agency deliberations concerning the merits of taking enforcement action against a company for certain trade practices. He left the Government before any charges were filed against the company. He has participated in a particular matter involving specific parties and may not represent another person in connection with the ensuing administrative or judicial proceedings against the company.

Example 2 to paragraph (h)(4): A former special Government employee (SGE) of the Agency for Health Care Policy and Research served, before leaving the agency, on a "peer review" committee that made a recommendation to the agency concerning the technical merits of a specific grant proposal submitted by a university. The committee's recommendations are nonbinding and constitute only the first of several levels of review within the agency. Nevertheless, the SGE participated in a particular matter involving specific parties and may not represent the university in subsequent efforts to obtain the same grant.

Example 3 to paragraph (h)(4): Prior to filing a product approval application with a regulatory agency, a company sought guidance from the agency. The company provided specific information concerning the product, including its composition and intended uses, safety and efficacy data, and the results and designs of prior studies on the product. After a series of meetings, the agency advised the company concerning the design of additional studies that it should perform in order to address those issues that the agency still believed were unresolved. Even though no formal application had been filed, this was a particular matter involving specific parties. The agency guidance was sufficiently specific, and it was clearly intended to address the substance of a prospective application and to guide the prospective applicant in preparing an application that would meet approval requirements. An agency employee who was substantially involved in developing this guidance could not leave the Government and represent the company when it submits its formal product approval application.

Example 4 to paragraph (h)(4): A Government scientist participated in preliminary, internal deliberations about her agency's need for additional laboratory facilities. After she terminated Government service, the General Services Administration issued a request for proposals (RFP) seeking private architectural services to design the new laboratory space for the agency. The former employee may represent an architectural firm in connection with its response to the RFP. During the preliminary stage in which the former employee participated, no specific architectural firms had been identified for the proposed work.

Example 5 to paragraph (h)(4): In the previous example, the proposed laboratory was to be an extension of a recently completed laboratory designed by XYZ Architectural Associates, and the Government had determined to pursue a sole

source contract with that same firm for the new work. Even before the firm was contacted or expressed any interest concerning the sole source contract, the former employee participated in meetings in which specifications for a potential sole source contract with the firm were discussed. The former employee may not represent XYZ before the Government in connection with this matter.

(5) Same particular matter--

(i) General. The prohibition applies only to communications or appearances in connection with the same particular matter involving specific parties in which the former employee participated as a Government employee. The same particular matter may continue in another form or in part. In determining whether two particular matters involving specific parties are the same, all relevant factors should be considered, including the extent to which the matters involve the same basic facts, the same or related parties, related issues, the same confidential information, and the amount of time elapsed.

(ii) Considerations in the case of contracts, grants, and other agreements. With respect to matters such as contracts, grants or other agreements:

    (A) A new matter typically does not arise simply because there are amendments, modifications, or extensions of a contract (or other agreement), unless there are fundamental changes in objectives or the nature of the matter;

    (B) Generally, successive or otherwise separate contracts (or other agreements) will be viewed as different matters from each other, absent some indication that one contract (or other agreement) contemplated the other or that both are in support of the same specific proceeding;

    (C) A contract is almost always a single particular matter involving specific parties. However, under compelling circumstances, distinct aspects or phases of certain large umbrella-type contracts, involving separate task orders or delivery orders, may be considered separate individual particular matters involving specific parties, if an agency determines that articulated lines of division exist. In making this determination, an agency should consider the relevant factors as described above. No single factor should be determinative, and any divisions must be based on the contract's characteristics, which may include, among other things, performance at different geographical locations, separate and distinct subject matters, the separate negotiation or competition of individual task or delivery orders, and the involvement of different program offices or even different agencies.

Example 1 to paragraph (h)(5): An employee drafted one provision of an agency contract to procure new software. After she left Government, a dispute arose under the same contract concerning a provision that she did not draft. She may not represent the contractor in this dispute. The contract as a whole is the particular matter involving specific parties and may not be fractionalized into separate clauses for purposes of avoiding the prohibition of 18 U.S.C. 207(a)(1).

Example 2 to paragraph (h)(5): In the previous example, a new software contract was awarded to the same contractor through a full and open competition, following the employee's departure from the agency. Although no major changes were made in the contract terms, the new contract is a different particular matter involving specific parties.

Example 3 to paragraph (h)(5): A former special Government employee (SGE) recommended that his agency approve a new food additive made by Good Foods, Inc., on the grounds that it was proven safe for human consumption. The Healthy Food Alliance (HFA) sued the agency in Federal court to challenge the decision to approve the product. After leaving Government service, the former SGE may not serve as an expert witness on behalf of HFA in this litigation because it is a continuation of the same product approval matter in which he participated personally and substantially.

Example 4 to paragraph (h)(5): An employee of the Department of the Army negotiated and supervised a contract with Munitions, Inc. for four million mortar shells meeting certain specifications. After the employee left Government, the Army sought a contract modification to add another one million shells. All specifications and contractual terms except price, quantity and delivery dates were identical to those in the original contract. The former Army employee may not represent Munitions in connection with this modification, because it is part of the same particular matter involving specific parties as the original contract.

§ 2641.201 Permanent restriction on any former employee's..., 5 C.F.R. § 2641.201

Example 5 to the paragraph (h)(5): In the previous example, certain changes in technology occurred since the date of the original contract, and the proposed contract modifications would require the additional shells to incorporate new design features. Moreover, because of changes in the Army's internal system for storing and distributing shells to various locations, the modifications would require Munitions to deliver its product to several de-centralized destination points, thus requiring Munitions to develop novel delivery and handling systems and incur new transportation costs. The Army considers these modifications to be fundamental changes in the approach and objectives of the contract and may determine that these changes constitute a new particular matter.

Example 6 to paragraph (h)(5): A Government employee reviewed and approved certain wiretap applications. The prosecution of a person overheard during the wiretap, although not originally targeted, must be regarded as part of the same particular matter as the original wiretap application. The reason is that the validity of the wiretap may be put in issue and many of the facts giving rise to the wiretap application would be involved.

Example 7 to paragraph (h)(5): The Navy awards an indefinite delivery contract for environmental remediation services in the northeastern U.S. A Navy engineer is assigned as the Navy's technical representative on a task order for remediation of an oil spill at a Navy activity in Maine. The Navy engineer is personally and substantially involved in the task order (e.g., he negotiates the scope of work, the labor hours required, and monitors the contractor's performance). Following successful completion of the remediation of the oil spill in Maine, the Navy engineer leaves Government service and goes to work for the Navy's remediation contractor. In year two of the contract, the Navy issues a task order for the remediation of lead-based paint at a Navy housing complex in Connecticut. The contractor assigns the former Navy engineer to be its project manager for this task order, which will require him to negotiate with the Navy about the scope of work and the labor hours under the task order. Although the task order is placed under the same indefinite delivery contract (the terms of which remain unchanged), the Navy would be justified in determining that the lead-based paint task order is a separate particular matter as it involves a different type of remediation, at a different location, and at a different time. Note, however, that the engineer in this example had not participated personally and substantially in the overall contract. Any former employee who had--for example, by participating personally and substantially in the initial award or subsequent oversight of the umbrella contract--will be deemed to have also participated personally and substantially in any individual particular matters resulting from the agency's determination that such contract is divisible.

Example 8 to paragraph (h)(5): An agency contracts with Company A to install a satellite system connecting the headquarters office to each of its twenty field offices. Although the field offices are located at various locations throughout the country, each installation is essentially identical, with the terms of each negotiated in the main contract. Therefore, this contract should not be divided into separate particular matters involving specific parties.

(i) Participated personally and substantially--

(1) Participate. To "participate" means to take an action as an employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other such action, or to purposefully forbear in order to affect the outcome of a matter. An employee can participate in particular matters that are pending other than in his own agency. An employee does not participate in a matter merely because he had knowledge of its existence or because it was pending under his official responsibility. An employee does not participate in a matter within the meaning of this section unless he does so in his official capacity.

(2) Personally. To participate "personally" means to participate:

(i) Directly, either individually or in combination with other persons; or

(ii) Through direct and active supervision of the participation of any person he supervises, including a subordinate.

(3) Substantially. To participate "substantially" means that the employee's involvement is of significance to the matter. Participation may be substantial even though it is not determinative of the outcome of a particular matter. However, it requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or

peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but also on the importance of the effort. While a series of peripheral involvements may be insubstantial, the single act of approving or participating in a critical step may be substantial. Provided that an employee participates in the substantive merits of a matter, his participation may be substantial even though his role in the matter, or the aspect of the matter in which he is participating, may be minor in relation to the matter as a whole. Participation in peripheral aspects of a matter or in aspects not directly involving the substantive merits of a matter (such as reviewing budgetary procedures or scheduling meetings) is not substantial.

Example 1 to paragraph (i): A General Services Administration (GSA) attorney drafted a standard form contract and certain standard terms and clauses for use in future contracts. A contracting officer uses one of the standard clauses in a subsequent contract without consulting the GSA attorney. The attorney did not participate personally in the subsequent contract.

Example 2 to paragraph (i): An Internal Revenue Service (IRS) attorney is neither in charge of nor does she have official responsibility for litigation involving a particular delinquent taxpayer. At the request of a co-worker who is assigned responsibility for the litigation, the lawyer provides advice concerning strategy during the discovery stage of the litigation. The IRS attorney participated personally in the litigation.

Example 3 to paragraph (i): The IRS attorney in the previous example had no further involvement in the litigation. She participated substantially in the litigation notwithstanding that the post-discovery stages of the litigation lasted for ten years after the day she offered her advice.

Example 4 to paragraph (i): The General Counsel of the Office of Government Ethics (OGE) contacts the OGE attorney who is assigned to evaluate all requests for "certificates of divestiture" to check on the status of the attorney's work with respect to all pending requests. The General Counsel makes no comment concerning the merits or relative importance of any particular request. The General Counsel did not participate substantially in any particular request when she checked on the status of all pending requests.

Example 5 to paragraph (i): The OGE attorney in the previous example completes his evaluation of a particular certificate of divestiture request and forwards his recommendation to the General Counsel. The General Counsel forwards the package to the Director of OGE with a note indicating her concurrence with the attorney's recommendation. The General Counsel participated substantially in the request.

Example 6 to paragraph (i): An International Trade Commission (ITC) computer programmer developed software designed to analyze data related to unfair trade practice complaints. At the request of an ITC employee who is considering the merits of a particular complaint, the programmer enters all the data supplied to her, runs the computer program, and forwards the results to the employee who will make a recommendation to an ITC Commissioner concerning the disposition of the complaint. The programmer did not participate substantially in the complaint.

Example 7 to paragraph (i): The director of an agency office must concur in any decision to grant an application for technical assistance to certain nonprofit entities. When a particular application for assistance comes into her office and is presented to her for decision, she intentionally takes no action on it because she believes the application will raise difficult policy questions for her agency at this time. As a consequence of her inaction, the resolution of the application is deferred indefinitely. She has participated personally and substantially in the matter.

(j) United States is a party or has a direct and substantial interest--

    (1) United States. For purposes of this paragraph, the "United States" means:

    (i) The executive branch (including a Government corporation);

    (ii) The legislative branch; or

    (iii) The judicial branch.

(2) Party or direct and substantial interest. The United States may be a party to or have a direct and substantial interest in a particular matter even though it is pending in a non-Federal forum, such as a State court. The United States is neither a party to nor does it have a direct and substantial interest in a particular matter merely because a Federal statute is at issue or a Federal court is serving as the forum for resolution of the matter. When it is not clear whether the United States is a party to or has a direct and substantial interest in a particular matter, this determination shall be made in accordance with the following procedure:

(i) Coordination by designated agency ethics official. The designated agency ethics official (DAEO) for the former employee's agency shall have the primary responsibility for coordinating this determination. When it appears likely that a component of the United States Government other than the former employee's former agency may be a party to or have a direct and substantial interest in the particular matter, the DAEO shall coordinate with agency ethics officials serving in those components.

(ii) Agency determination. A component of the United States Government shall determine if it is a party to or has a direct and substantial interest in a matter in accordance with its own internal procedures. It shall consider all relevant factors, including whether:

(A) The component has a financial interest in the matter;

(B) The matter is likely to have an effect on the policies, programs, or operations of the component;

(C) The component is involved in any proceeding associated with the matter, e.g., as by having provided witnesses or documentary evidence; and

(D) The component has more than an academic interest in the outcome of the matter.

Example 1 to paragraph (j): An attorney participated in preparing the Government's antitrust action against Z Company. After leaving the Government, she may not represent Z Company in a private antitrust action brought against it by X Company on the same facts involved in the Government action. Nor may she represent X Company in that matter. The interest of the United States in preventing both inconsistent results and the appearance of impropriety in the same factual matter involving the same party, Z Company, is direct and substantial. However, if the Government's antitrust investigation or case is closed, the United States no longer has a direct and substantial interest in the case.
SOURCE: 73 FR 36186, June 25, 2008, unless otherwise noted.

AUTHORITY: 5 U.S.C. App. (Ethics in Government Act of 1978); 18 U.S.C. 207; E.O. 12674, 54 FR 15159, 3 CFR, 1989 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547, 3 CFR, 1990 Comp., p. 306.

Current through April 21, 2011; 76 FR 22602

**End of Document**                                        © 2011 Thomson Reuters. No claim to original U.S. Government Works.