UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 08-80736-CIV-MARRA/JOHNSON

JANE DOE 1 and JANE DOE 2,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

_____/

### MOTION FOR LIMITED INTERVENTION OF JEFFREY EPSTEIN

This is a motion by Jeffrey Epstein pursuant to Federal Rules of Civil Procedure 24(a) and 24(b) to intervene for the limited purpose of seeking a protective order and responding to the motions of Jane Doe 1 and Jane Doe 2 for disclosure, evidentiary use, and widespread dissemination of the plea negotiation letters and emails between his lawyers and federal prosecutors. Those letters and emails were written in furtherance of plea negotiations, encouraged by the broad protections of Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), and the constitutional right to effective assistance of counsel. They are privileged, confidential, not discoverable, and inadmissible as evidence at any proceeding in this case.

### I. MANDATORY AND DISCRETIONARY INTERVENTION ARE PROPER

Intervention is proper as a matter of right under Federal Rule of Civil Procedure 24(a) because Mr. Epstein has an interest in protecting his privileged and confidential plea negotiations, and "disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest . . . ." FED. R. CIV. P. 24(a). Unless allowed to intervene, Mr. Epstein could suffer the injustice of having his privilege and confidentiality claims erased without ever having been heard.

*See El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 716 F. Supp. 2d 1257, 1262 (S.D. Fla. 2010), *quoting In re Grand Jury Subpoena (Newparent Inc.)*, 274 F.3d 563, 570 (1st Cir. 2001) (in the context of the attorney-client privilege, ruling that colorable claims of privilege are a textbook example of the right to intervene as of right); *Appeal of Hughes*, 633 F.2d 282, 286 (3d Cir. 1980) ("The governing rule in these circumstances is that the possessor of the claimed privilege or right may intervene to assert it").

Discretionary intervention is also proper under Rule 24(b) because Mr. Epstein's interests in protecting his plea negotiations "share with the main action a common question of law or fact." FED. R. CIV. P. 24(b). That common question of law involves the privileged and confidential nature of Mr. Epstein's plea negotiations, and the unprecedented request of Jane Doe 1 and Jane Doe 2 to use those negotiations as evidence to vacate the product of Mr. Epstein's plea bargain. This is plainly prohibited by Rule 410, and for good reason. The "central feature" of Rule 410 is that "the accused is encouraged candidly to discuss his or her situation in order to explore the possibility of disposing of the case through a consensual arrangement." *United States v. Herman*, 544 F.2d 791, 797 (5th Cir. 1977). To allow Jane Doe 1 and Jane Doe 2 to now "introduce statements uttered in reliance on the rule would be to use the rule as a sword rather than a shield." *Id.*

## II. THE OBJECTION OF JANE DOE 1 AND JANE DOE 2

As required by Local Rule 7.1, we asked counsel for Jane Doe 1 and Jane Doe 2 whether they objected to Mr. Epstein's limited intervention. Counsel responded that they "oppose the motion on timeliness and other grounds." Mr. Epstein's motion is timely for the reasons set forth below. As to the "other grounds" that Jane Doe 1 and Jane Doe 2 may advance, counsel for both plaintiffs previously admitted that Mr. Epstein has a right to intervene.

First, they argued in their opposition to the intervention of attorneys Black, Weinberg, and Lefkowitz that Mr. Epstein "is the real party in interest" and that "harm from the release of the materials (if any) could be only to Jeffrey Epstein." *Jane Doe 1 and Jane Doe 2's Response To Motion To Intervene of Roy Black, Martin Weinberg, and Jay Lefkowitz* [DE 78] at 6.

Second, also in opposing the intervention of attorneys Black, Weinberg, and Lefkowtiz, the plaintiffs argued that "[o]nly Epstein has an interest in the validity of the non-prosecution agreement . . . ." *Jane Doe 1 and Jane Doe 2's Response To Motion To Intervene of Roy Black, Martin Weinberg, and Jay Lefkowitz* [DE 78] at 4.

And third, in their *"Motion to Use Correspondence To Prove Violations of The Crime Victim's Rights Act And To Have Unredacted Pleadings Unsealed,"* filed five months ago, Jane Doe 1 and Jane Doe 2 expressly state that they do not object to Mr. Epstein's timely intervention:

> The victims have no objection to Epstein intervening in this case – at this time. If, however, Epstein delays intervention until after a reasonable period of time, the victims will argue that his motion to intervene is untimely.

[DE 51 at 8].

### III.  MR. EPSTEIN'S MOTION TO INTERVENE IS TIMELY

We address at the outset what has *not* yet happened in this litigation:

There has been no trial or adjudication on the merits of the claims and defenses, and this motion to intervene is not made on the eve of such trial.

There is no final judgment that would be undone or affected by Mr. Epstein's intervention. Nor is a final judgment imminent given the discussions about discovery and related matters addressed during the August 12, 2011 hearing.

There are no discovery cut off dates, and the motion to intervene is therefore not filed on the eve of such deadlines or after they have passed.

>There have been no evidentiary hearings or factual findings by the Court that would be undone by the motion to intervene. Rather than impede the litigation, Mr. Epstein's participation will aid the Court in ruling on the sensitive and novel legal issues concerning plea negotiations.
>
>Finally, time is not of the essence to Jane Doe 1 and Jane Doe 2 – after all, they ignored this litigation *for a year and a half* while they pursued money damages against Mr. Epstein. The Court's order dismissing this case for lack of prosecution, which is dated September 8, 2010, noted that there had been no activity in the case since April 2009. [DE 38].

A motion to intervene must be timely. But "[t]imeliness is not a word of exactitude or of precise measurable dimensions . . . [T]imeliness is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-64 (5th Cir. 1977). Those circumstances are considered in light of four factors:

>1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene.
>
>2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.
>
>3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.
>
>4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id.*

*1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene:*

Mr. Epstein's interests arose during the August 12, 2011 hearing, when the plaintiffs argued for the first time that their rights under the CVRA were violated not only by the government, but also by Mr. Epstein. Even though Mr. Epstein has no legal duties to the plaintiffs under the CVRA, the

plaintiffs argued at the hearing that Mr. Epstein was somehow responsible for the government's communications with each Jane Doe and that Mr. Epstein, a private citizen, caused the government to violate its obligations under the Act. According to the plaintiffs, Mr. Epstein "engineered" and "orchestrated" the claimed CVRA violations, and he "insisted that the rights of these victims" be violated. [Trans. August 12, 2011 at 33-34, 61]. The plaintiffs argued that because of this supposed conspiracy between Mr. Epstein and the government, the plaintiffs are entitled to copies of all the plea negotiation letters and emails, to use them as evidence in these proceedings seeking invalidation of the Non-Prosecution Agreement. *Id.* at 33-34, 61, 107-09.

When the plaintiffs articulated a supposed conspiracy directed by Mr. Epstein to use Assistant United States Attorneys to deny the plaintiffs their rights, it became clear that the plaintiffs' purpose in seeking the plea negotiations is to offer them as evidence against Mr. Epstein, in violation of Federal Rule of Evidence 410. This showed that Mr. Epstein's interests were being implicated in the ongoing litigation between the government and the Jane Does and that limited intervention was timely and warranted.

*2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case:*

Jane Doe 1 and Jane Doe 2 will suffer no prejudice if Mr. Epstein is allowed to intervene. As noted earlier, Jane Doe 1 and Jane Doe 2 ignored this case for a year and a half while they pursued claims for money damages against Mr. Epstein. They obviously do not view time as being of the essence and were in no hurry to litigate their claims, despite their knowledge that as of June 30, 2008 Mr. Epstein was in a county jail, and that as of the summer of 2009 he was serving a term of community control, which did not end until July of 2010.

Additionally, during the time period when the plaintiffs demonstrated no urgency and sought no expedited relief, Mr. Epstein, pursuant to his obligation under the Non-Prosecution Agreement, paid an attorney representative, Robert Josefsberg, substantial legal fees to represent many of the witnesses against him and settled many civil cases brought by the attorney representative. Mr. Epstein settled those cases in large part because one of the conditions of the Non-Prosecution Agreement was that Mr. Epstein waive certain defenses in civil litigation if certain identified plaintiffs sued him exclusively under the provisions of 18 U.S.C. § 2255. In short, Mr. Epstein met every condition of his Non-Prosecution Agreement with the U.S. Attorney's Office between June 30, 2008 and the Summer 2010, during which time there was inaction by the plaintiffs.

Counsel for the plaintiffs are aware that the provisions of 18 U.S.C. § 3771(d)(3) & (5)(B) require that CVRA claims be raised and resolved on an exigent basis, and that litigation, including appeals from adverse rulings, be expedited in order to avoid the current circumstance, where a plaintiff seeks to invalidate an agreement after a citizen has fully served his sentence and has been subjected to a myriad of collateral and adverse consequences, none of which can be reversed.

There is also no prejudice to the plaintiffs because there has been no trial or adjudication of the merits of the claims or defenses raised by the existing parties, depositions have not been taken, there have been no evidentiary hearings or factual findings by the Court, and there is no final judgment or decree that would be undone or affected by Mr. Epstein's intervention.

In their *"Motion to Use Correspondence To Prove Violations of The Crime Victim's Rights Act And To Have Unredacted Pleadings Unsealed,"* Jane Doe 1 and Jane Doe 2 argue that any motion to intervene by Mr. Epstein would be untimely if filed "after the date on which the government must respond to the victims' motion for a finding of violation of the CVRA," because

6

"that is when the victims must begin drafting a reply pleading." *Id.* This argument of inconvenience does not go far because many of the issues raised by Mr. Epstein parallel the issues raised by attorneys Black, Weinberg, and Lefkowitz as well as those raised during the August 12, 2011 hearing, and Jane Doe 1 and Jane Doe 2 do not have to file their responsive pleadings addressing those issues for one more month.[1] Thus, by the time Jane Doe 1 and Jane Doe 2 would have to respond to the merits of Mr. Epstein's motion for a protective order, they will have already done most if not all of the work involved in addressing the common legal issues. Allowing Mr. Epstein to intervene will bring the plaintiffs no undue prejudice.

*3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied*:

The issues concerning Mr. Epstein's plea negotiations are significant. As both sides expressed to the Court during the hearing on August 12, 2011, there are no reported cases that address these precise facts. As far as we know, in our combined decades of experience as criminal defense attorneys, there has been no case where third parties in a civil case have sought to discover, much less use, plea negotiations as evidence to vacate the product of the client's plea bargain *years after the client has served a prison sentence, served a year of community control, completed his entire sentence, and paid enormous sums of money to the attorney representing persons bringing or threatening to bring lawsuits against him for money damages.* To adjudicate these issues without Mr. Epstein's intervention would bring him irreparable harm, especially because if his plea negotiations are disclosed, Mr. Epstein will forever lose the benefit of their confidentiality and

---

[1] The government has two weeks to respond to the supplemental brief to be filed by attorneys Black, Weinberg, and Lefkowitz, and Jane Doe 1 and Jane Doe 2 then have two weeks after that to file their response. [DE 91 & 92].

privilege.

*4. The existence of unusual circumstances militating either for or against a determination that the application is timely*:

At least two unusual circumstances militate for a determination that the motion to intervene is timely and should be granted. First, the plaintiffs ignored this case for a year and a half, waiting until this Court dismissed it for lack of prosecution to pay it any attention. Their main concern during all that time was their claims for money against Mr. Epstein. They can now hardly complain that Mr. Epstein's motion to intervene is untimely.

Second, the Court's ruling on the issues concerning Mr. Epstein's plea negotiations will reach far beyond the parties in this case and will impact every criminal investigation and prosecution in this and other Districts. Releasing the plea negotiation letters and emails and using them as evidence to invalidate the bargain itself, as Jane Doe 1 and Jane Doe 2 request, will chill the ability of lawyers and clients to engage in candid plea discussions with the government. This will ultimately crowd the dockets of the district courts, where judges rely on plea negotiations to dispose of 96.1% of all criminal cases.[2] The ruling urged by Jane Doe 1 and Jane Doe 2 will also shift the ethical and constitutional obligations of all criminal defense attorneys, because few criminal defense lawyers would consider entering into plea discussions and making candid written statements during plea negotiations if those statements are later discoverable and could be used against the client in a yet-unfiled lawsuit by yet-unknown plaintiffs at some unknown time in the future. No lawyer would agree to have open discussions with a prosecutor about resolving a criminal matter or to make

---

[2] The Bureau of Justice Statistics of the Department of Justice reports that as of 2005, only 3.9% of all federal criminal cases proceed to trial. These statistics are reported at www.ojp.usdoj.gov/bjs/pub/html/fjsst/2005/fjs05st.htm.

written submissions of their positions and views of the evidence and law, if plea negotiations could be used to damage a client in a future civil case. With these additional serious interests at stake, the motion to intervene should not be denied as untimely.

### IV. Conclusion

Mr. Epstein's motion for a limited intervention is timely and should be granted as of right under Rule 24(a) or, alternatively, as a matter within the Court's discretion under Rule 24(b).

If allowed to intervene, Mr. Epstein would file the attached motion for a protective order in response to the motion of Jane Doe 1 and Jane Doe 2 for disclosure of the defense plea negotiation letters and emails [DE 50 at 5], their motion to use these letters and emails as substantive evidence in their quest to invalidate the Non-Prosecution Agreement [DE 51], and their motion to disseminate the letters and emails to the media [DE 51 at 7].

We certify that on September 2, 2011, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Office: (305) 371-6421
Fax: (305) 358-2006

By _____/S/_____
**ROY BLACK, ESQ.**
Florida Bar No. 126088
**JACKIE PERCZEK, ESQ.**
Florida Bar No. 0042201
*On Behalf of Jeffrey Epstein*

9