UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA/JOHNSON

JANE DOES #1 AND #2,

    Plaintiffs,

vs.

UNITED STATES,

    Defendant.
_____/

## ORDER

THIS CAUSE is before the Court upon Plaintiffs' Motion for Finding of Violations of the Crime Victims' Rights Act (DEs 48, 52), Plaintiffs' Motion to Have Their Facts Accepted Because of the Government's Failure to Contest Any of the Facts (DE 49), Plaintiffs' Motion for Order Directing the U.S. Attorney's Office Not to Withhold Relevant Evidence (DE 50), and Bruce E. Reinhart's Motion to Intervene or in the Alternative for a *Sua Sponte* Rule 11 Order (DE 79).[1]  All motions are fully briefed and ripe for review, and the Court has heard oral arguments on all motions.  The Court has carefully considered the briefing and the parties' arguments and is otherwise fully advised in the premises.

---

[1] The Court is awaiting supplemental briefing on the Motion to Intervene of Roy Black, Martin Weinberg, and Jay Lefkowitz (DE 56) and will rule on that motion after it is fully briefed. Also, because the proposed interveners seek intervention to request a protective order against disclosure of certain correspondences at issue in Plaintiffs' Motion to Use Correspondence to Prove Violations of the Crime Victims' Rights Act and to Have Their Unredacted Pleadings Unsealed (DE 51), the Court will defer ruling on the latter motion until the intervention motion is ripe for review.

**Background**[2]

Plaintiffs Jane Doe #1 and Jane Doe #2 are alleged victims of federal sex crimes committed by Jeffrey Epstein in Palm Beach County. Between 2001 and 2007, Epstein sexually abused multiple underage girls at his Palm Beach mansion, including Plaintiffs. In 2006, the Federal Bureau of Investigation ("FBI") opened an investigation into allegations that Epstein was inducing underage girls to engage in sexual acts. The case was eventually presented to the United States Attorney's Office for the Southern District of Florida, which accepted it for investigation. The Palm Beach County State Attorney's Office was also investigating similar allegations against Epstein. Plaintiffs allege that the FBI and U.S. Attorney's Office's investigation developed a strong case for a federal prosecution against Epstein based on "overwhelming" evidence.

In June 2007, the FBI delivered to Jane Doe #1 a standard victim-notification letter, which explained that the case against Epstein was "under investigation" and notified Jane Doe #1 of her rights under the Crime Victims' Rights Act ("CVRA"). In August 2007, Jane Doe #2 received a similar notification letter.

In September 2007, Epstein and the U.S. Attorney's Office began plea discussions. The negotiations led to an agreement under which Epstein would plead guilty to two state felony offenses for solicitation of prostitution and procurement of minors for prostitution and the U.S.

---

[2] This background discussion is based on the allegations in Plaintiffs' Petition for Enforcement of Crime Victims' Rights Act (DE 1) and the Statement of Material Facts in Plaintiffs' Motion for Finding of Violation of the Crime Victims' Rights Act (DEs 48, 52). These allegations are not yet supported by evidence and the Court relies on them here solely to provide the context for the threshold legal issues addressed in this order. As discussed below, further factual development is necessary to resolve the additional issues raised in Plaintiffs' motions.

Attorney's Office would agree not to prosecute Epstein for federal offenses. On September 24, 2007, Epstein and the U.S. Attorney's Office executed a Non-Prosecution Agreement ("NPA") under these terms.

Plaintiffs contend that the U.S. Attorney's Office did not confer with them regarding the plea discussions and, in fact, intentionally kept secret the negotiations and the NPA. From September 24, 2007, the day on which the NPA was executed, through June 2008, the U.S. Attorney's Office did not notify either Plaintiff of the existence of the NPA.

During this period, Plaintiffs communicated multiple times with the FBI and U.S. Attorney's Office, but neither Plaintiff was informed of the NPA. On January 10, 2008, the FBI sent letters to Plaintiffs advising them that "[t]his case is currently under investigation," but failing to disclose the existence of the NPA. On January 32, 2008, Jane Doe #1 met with FBI agents and attorneys from the U.S. Attorney's Office to discuss her abuse by Epstein. The government did not disclose the existence of the NPA. In mid-June 2008, Plaintiffs' counsel contacted the Assistant United States Attorney ("AUSA") handling their case to discuss the status of the investigation. The AUSA did not disclose the existence of the NPA. On June 27, 2008, the U.S. Attorney's Office notified Plaintiffs' counsel that Epstein was scheduled to plead guilty in state court on June 30, 2008. The U.S. Attorney's Office did not disclose the existence of the NPA nor the relationship between Epstein's state plea and the U.S. Attorney's Office's agreement to forgo federal charges. On July 3, 2008, Plaintiffs' counsel sent a letter to the U.S. Attorney's Office stating Jane Doe #1's desire that it bring federal charges against Epstein.

On July 7, 2008, Jane Doe #1 filed a petition in this Court to enforce her rights under the CVRA.[3] Jane Doe #1 alleged that she believed plea discussions were under way between Epstein and the U.S. Attorney's Office, and that the government, by failing to notify her of this development, had violated her rights under the CVRA.  The United States responded to the petition on July 9, 2008, arguing that (1) a federal indictment had never been returned against Epstein and therefore the CVRA did not attach, and (2) nevertheless, the U.S. Attorney's Office had used its best efforts to comply with the CVRA.  The government's response also disclosed that the U.S. Attorney's Office had entered into the NPA with Epstein.

On July 11, 2008, this Court held a hearing on Jane Doe #1's petition, at which Jane Doe #2 was added as a plaintiff.  At the hearing, Plaintiffs explained that their petition did not present an emergency and that therefore an immediate resolution was not necessary.  On August 14, 2008, the Court held a status conference and ordered the United States to turn over the NPA to all identified victims, including Plaintiffs, and further ordered the parties to work out the terms of a protective order governing the NPA's disclosure.

This action was relatively inactive for the next year and one-half while Plaintiffs litigated civil actions against Epstein.  After those cases settled, Plaintiffs attempted to resolve their CVRA dispute with the U.S. Attorney's Office.  On March 18, 2011, after the parties' settlement efforts failed, Plaintiffs filed a series of motions, which the Court now addresses in turn, along with Bruce E. Reinhart's Motion to Intervene.

---

[3] Jane Doe #2 joined this action after Jane Doe #1 filed the initial Petition for Enforcement of Crime Victims' Rights Act.

**I.    Motion for Finding of Violations of the Crime Victims' Rights Act**

The CVRA was designed to protect victims' rights and ensure them involvement in the criminal-justice process. *United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007); *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016 (9th Cir. 2006) ("The [CVRA] was enacted to make crime victims full participants in the criminal justice system."). The statute enumerates the following eight rights:

>  (1) The right to be reasonably protected from the accused.
>
>  (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
>  (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
>
>  (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.
>
>  (5) The reasonable right to confer with the attorney for the Government in the case.
>
>  (6) The right to full and timely restitution as provided in law.
>
>  (7) The right to proceedings free from unreasonable delay.
>
>  (8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a).

If a prosecution is underway, the CVRA grants victims standing to vindicate their rights in the ongoing criminal action. 18 U.S.C. § 3771(d)(3). If, however, a prosecution is not underway, the victims may initiate a new action under the CVRA in the district court of the

district where the crime occurred.[4]  *Id.*  The statute also tasks the district courts and the prosecutors with the responsibility of protecting these rights.  *See* 18 U.S.C. § 3771(b)(1) ("[T]he court shall ensure that the crime victim is afforded the rights described in subsection (a)."); § 3771(c)(1) ("Officers and employees of the Department of Justice . . . shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a).").

Here, Plaintiffs first argue that as a matter of law the CVRA's protections attach before a formal charge is filed against the criminal defendant.  Accordingly, Plaintiffs contend that the CVRA applied here and that the U.S. Attorney's Office violated their CVRA rights; namely, their rights to confer, to be treated with fairness, and to accurate and timely notice of court proceedings.  Based on these violations, Plaintiffs request that this Court set a briefing schedule and hearing on the appropriate remedy, which according to Plaintiffs is to invalidate the non-prosecution agreement.

The United States argues that as a matter of law the CVRA does not apply before formal charges are filed, i.e., before an indictment or similar charging document, and therefore does not apply here because formal charges were never filed against Epstein.  The United States further argues that even if the CVRA applied here, the U.S. Attorney's Office complied with its requirements.

The Court first addresses the threshold issue whether the CVRA attaches before the government brings formal charges against the defendant  The Court holds that it does because the

---

[4] Here, because no criminal case was pending, Plaintiffs filed their petition as a new matter in this judicial district, which the Clerk of Court docketed as a civil action.

statutory language clearly contemplates pre-charge proceedings. For instance, subsections (a)(2) and (a)(3) provide rights that attach to "any public court proceeding . . . involving the crime." Similarly, subsection (b) requires courts to ensure CVRA rights in "any court proceeding involving an offense against a crime victim." Court proceedings involving the crime are not limited to post-complaint or post-indictment proceedings, but can also include initial appearances and bond hearings, both of which can take place before a formal charge. By way of example, under Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure, upon arrest the defendant must be taken before a magistrate judge "without unnecessary delay" for an initial appearance. If the arrest takes place on a weekday, "without unnecessary delay" will typically require that the initial appearance occur the following morning, which will often be within twenty-four hours of arrest. *See United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973) (holding that the government satisfied Rule 5's "without unnecessary delay" requirement by bringing the defendant before the magistrate judge on the first weekday morning following the arrest). By contrast, Rule 5(b) requires that where the defendant is arrested without a warrant, the government must file the complaint "promptly." The Supreme Court has interpreted "promptly" under Rule 5(b) as generally requiring that the complaint be filed within forty-eight hours of arrest. *Cnty. Of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). It is therefore possible that where the defendant is arrested on a weekday without a warrant, the initial appearance—which may also involve the detention or bond hearing under Rule 5(d)(3)—will take place before the government files the criminal complaint.

Subsection (c)(1) requires that "Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the *detection, investigation*, or

prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights in subsection (a)." (Emphasis added). Subsection (c)(1)'s requirement that officials engaged in "detection [or] investigation" afford victims the rights enumerated in subsection (a) surely contemplates pre-charge application of the CVRA.

Subsection (d)(3) explains that the CVRA's enumerated rights "shall be asserted in the district court in which a defendant is being prosecuted for the crime or, *if no prosecution is underway*, in the district court in the district in which the crime occurred." (Emphasis added). If the CVRA's rights may be enforced before a prosecution is underway, then, to avoid a strained reading of the statute, those rights must attach before a complaint or indictment formally charges the defendant with the crime.

This interpretation is consistent with other federal decisions that have addressed the scope of the CVRA. For instance, in *In re Dean*, 527 F.3d 391 (5th Cir. 2008), the court held that subsection (a)(5)'s "right to confer" applied before any prosecution is underway. *Id.* at 394. Specifically, the court explained:

> The district court acknowledged that "there are clearly rights under the CVRA that apply before any prosecution is underway." Logically, this includes the CVRA's establishment of victims' "reasonable right to confer with the attorney for the Government." At least in the posture of this case (and we do not speculate on the applicability to other situations), the government should have fashioned a reasonable way to inform the victims of the likelihood of criminal charges and to ascertain the victims' views on the possible details of a plea bargain.

*Id.* at 394 (internal citation and quotation marks omitted). Federal district courts have reached similar conclusions. *See, e.g.*, *United States v. Rubin*, 558 F. Supp. 2d 411, 417 n.5 (E.D.N.Y. 2008) (discussing victims' "ability to seek pre-prosecution relief" under the CVRA); *United States v. Okun*, No. 08-132, 2009 WL 790042, at *2 (E.D. Va. Mar. 24, 2009) ("[T]he Fifth

8

Circuit has noted that victims acquire rights under the CVRA even before prosecution. This view is supported by the statutory language, which gives the victims rights before the accepting of plea agreements and, therefore, before adjudication of guilt."); *United States v. BP Prods N. Am. Inc.*, No. 07-434, 2008 WL 501321, at *11 (S.D. Tex. Feb. 21, 2008) ("There are clearly rights under the CVRA that apply before any prosecution is underway."), *mandamus denied in part*, *In re Dean* 527 F.3d 391 (5th Cir. 2008).

The United States argues that because the CVRA accords rights related to "any court proceeding," 18 U.S.C. §§ 3771(b)(1), (d)(3), and "in the case," § 3771(b)(5), the CVRA applies only after formal charges are filed. The Court finds this argument unavailing. First, as discussed above, "court proceedings" can occur before formal charges are filed. Similarly, subsection (a)(5)'s reference to the right to confer with "the attorney for the Government in the case," is not limited to post-charge proceedings, as the United States is represented by attorneys in each criminal case at, for example, initial appearances and bond hearings.[5] Last, the government's interpretation ignores the additional language throughout the statute that clearly contemplates pre-charge protections, such as subsection (c)(1)'s mandate that U.S. agencies involved at the "detection" and "investigation" stage use their best efforts to accord victims their enumerated rights under the CVRA and subsection (d)(3)'s provision that victims may vindicate their CVRA

---

[5] For this reason, the Court respectfully disagrees with the interpretation adopted in *In re Petersen*, No. 10-298, 2010 WL 5108692 (N.D. Ind. Dec. 8, 2010), upon which the United States relies. *See id.* at *2 (holding that a "victim's 'right to be treated with fairness and with respect for [his or her] dignity and privacy' may apply before any prosecution is underway and isn't necessarily tied to a 'court proceeding' or 'case,'" but concluding that "the right 'to confer with the attorney for the Government in the case' . . . arise[s] only after charges have been brought against a defendant and a case has been opened"). *But see In re Dean*, 527 F.3d at 394 (holding that under subsection (a)(5), "the government should have fashioned a reasonable way to inform the victims of the likelihood of criminal charges").

9

rights even if "no prosecution is underway." *See United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("[W]e read the statute to give full effect to each of its provisions.  We do not look at one word or term in isolation, but instead we look to the entire statutory context.") (citation omitted).

The Court also rejects the United States' argument that pre-charge CVRA rights could impair prosecutorial discretion and decision-making.  Any encroachment into the prosecutors' discretion is expressly limited by the CVRA itself, which provides: "Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." 18 U.S.C. § 3771(d)(6).  As the court explained in *Rubin*, "there is absolutely no suggestion in the statutory language that victims have a right independent of the government to prosecute a crime, set strategy, or object to or appeal pretrial or in limine orders . . . . In short, the CVRA, for the most part, gives victims a voice, not a veto." 558 F. Supp. at 418; *see also BP Prods N. Am.*, 2008 WL 501321, at *15 ("Even under an expansive approach, the reasonable right to confer on a proposed plea agreement and the government's obligation to provide notice of that right is subject to the limit that the CVRA not impair prosecutorial discretion.").  Thus, to the extent that the victims' pre-charge CVRA rights impinge upon prosecutorial discretion, under the plain language of the statute those rights must yield.

Having determined that as a matter of law the CVRA can apply before formal charges are filed, the Court must address whether the particular rights asserted here attached and, if so, whether the U.S. Attorney's Office violated those rights.  However, the Court lacks a factual record to support such findings and must therefore defer ruling on these two issues pending the limited discovery discussed below.

**II.     Motion to Have Their Facts Accepted Because of the Government's Failure to Contest Any of the Facts**

For the reasons stated on the record at the August 12, 2011 hearing on this motion, the Court will deny Plaintiffs' request to have their facts accepted as true.

**III.    Motion for Order Directing the U.S. Attorney's Office Not to Withhold Relevant Evidence**

Plaintiffs request an order from the Court "directing the U.S. Attorney's Office not to suppress material evidence relevant to this case." (DE 50 at 1). Specifically, Plaintiffs seek all information and material known to the government that may be favorable to the victims regarding possible violations of their rights under the CVRA. The United States opposes the motion, arguing that neither the CVRA nor the Federal Rules of Civil Procedure impose a duty upon the U.S. Attorney's Office to provide evidence to Plaintiffs here.

At the August 12, 2011 hearing on this motion, the United States agreed that this Court, under its inherent authority to manage this case, could impose discovery obligations on each party. Because the Court finds that some factual development is necessary to resolve the remaining issues in this case, it will permit Plaintiffs the opportunity to conduct limited discovery in the form of document requests and requests for admissions from the U.S. Attorney's Office. Either party may request additional discovery if necessary.

Because the Court will allow this limited factual development, it is unnecessary to decide here whether the CVRA or the Federal Rules of Civil Procedure provide discovery rights in this context. The Court therefore reserves ruling on Plaintiffs' motion.

### **IV.     Bruce E. Reinhart's Motion to Intervene or in the Alternative for a *Sua Sponte* Rule 11 Order**

Bruce E. Reinhart seeks leave to intervene as a party-in-interest under Rule 24(b) of the Federal Rules of Civil Procedure. Reinhart seeks to intervene to file a motion for sanctions based on allegedly "unfounded factual and legal accusations made about Movant in Plaintiffs' Motion for Finding of Violations of the Crime Victims' Rights Act." (DE 79 at 1). In that motion, Plaintiffs alleged that Reinhart, a former Assistant U.S. Attorney, "joined Epstein's payroll shortly after important decisions were made limiting Epstein's criminal liability" and improperly represented Epstein victims in follow-on civil suits. (DE 48 at 22). Plaintiffs contend that such conduct "give[s], at least, the improper appearance that Reinhart may have attempted to curry [favor] with Epstein and then reap his reward through favorable employment." (DE 48 at 23). Reinhart takes great offense to these accusation—which he contends are false, irrelevant to the CVRA claims, and gratuitous—and seeks intervention to rebut these allegations and move for sanctions.

Under Rule 24(b) of the Federal Rules of Civil Procedure, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." It is "wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th 2006). The Court will deny Reinhart's request to intervene.

First, the Court finds that Reinhart's claim does not share a common question of law or fact with the CVRA action. Reinhart claims that two paragraphs of Plaintiffs' forty-page motion make groundless and bad-faith accusations against his integrity and character. However, the veracity of Plaintiffs' two paragraphs—i.e., whether Reinhart used his position at the U.S. Attorney's Office to ingratiate himself with Epstein and advance his career in private practice—involves no common questions with the Plaintiffs' claims that the U.S. Attorney's Office violated their CVRA rights through the process in which it entered into the NPA with Epstein. Indeed, Reinhart's motion argues that the allegations against him are "irrelevant" and that Plaintiffs "do[] not make any effort to connect these allegations to the relief [they] seek[]." (DE 79 at 2).

Second, even if these accusations shared common questions with Plaintiffs' CVRA claims, the Court would exercise its discretion and deny intervention. The Court cannot permit anyone slighted by allegations in court pleadings to intervene and conduct mini-trials to vindicate their reputation. Absent some other concrete interest in these proceedings, the Court does not believe that the allegations here are sufficiently harmful to justify permissive intervention. Reinhart has publicly aired his opposition to and denial of Plaintiffs' contentions, both on this docket and in open court, and the Court finds that further proceedings on this issue are unwarranted. For the same reason, the Court declines to conduct a *sua sponte* Rule 11 inquiry.

**Conclusion**

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Plaintiffs' Motion for Finding of Violations of the Crime Victims' Rights Act (DEs 48, 52) is GRANTED IN PART. The Court concludes that the CVRA can apply before formal charges are filed. The

Court defers ruling on the merits of Plaintiffs' CVRA claims until the parties complete the discovery ordered herein.

It is further ORDERED AND ADJUDGED that Plaintiffs' Motion to Have Their Facts Accepted (DE 49) is DENIED.

The Court reserves ruling Plaintiffs' Motion for Order Directing the U.S. Attorney's Office Not to Withhold Relevant Evidence (DE 50) pending the discovery ordered herein.

It is further ORDERED AND ADJUDGED that Bruce E. Reinhart's Motion to Intervene or in the Alternative for a *Sua Sponte* Rule 11 Order (DE 79) is DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this 26th day of September, 2011.

_____
KENNETH A. MARRA
United States District Judge