**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 08-80736-Civ-Marra/Johnson**

**JANE DOE #1 and JANE DOE #2**

  **v.**

**UNITED STATES**
_____/

**JANE DOE #1 AND JANE DOE #2'S RESPONSE TO GOVERNMENT'S SEALED
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

  COME NOW Jane Doe #1 and Jane Doe #2 (also referred to as "the victims"), by and through undersigned counsel, to respond to the Government's Sealed Motion to Dismiss for Lack of Subject Matter Jurisdiction.  The Court should deny the motion.

  Because the Government has filed a motion to dismiss alleging that the victims' pleadings are facially deficient, the Court must assume the truth of the victims' allegations – specifically that the Government and Epstein deliberately conspired to enter into a secret non-prosecution agreement in violation of the victims' rights under the Crime Victims' Rights Act (CVRA).   Given such allegations (and, indeed, even without such allegations), this Court possesses broad remedial powers to craft an appropriate remedy for the violations.  One such remedy is an order invalidating the non-prosecution agreement as illegal, thereby affording the victims an opportunity to confer with the Government about whether it should file federal criminal charges against Epstein for sexually abusing them.  Such a remedy would not violate Epstein's constitutional rights because he was and is a party to the illegal agreement – and, indeed, he orchestrated the illegality.  In addition, the victims are seeking numerous other

1

remedies that are within the Court's power to award.  Accordingly, the Governments' motion to dismiss on grounds that the Court lacks any power to address the CVRA violations alleged by the victims should be dismissed.

I.      **IN REVIEWING THE GOVERNMENT'S MOTION TO DISMISS, THE COURT MUST ASSUME THE TRUTH OF THE VICTIMS' ALLEGATIONS – SPECIFICALLY THAT THE GOVERNMENT AND ESPTEIN DELIBERATELY CONSPIRED TO ENTER INTO A SECRET NON-PROSECUTION AGREEMENT IN VIOLATION OF THE VICTIMS' CVRA RIGHTS.**

Because the Government is filing its motion to dismiss more than three years into this case, it dresses up its claim as a challenge to "subject matter jurisdiction."  The Government then argues that it is raising "both a legal and factual challenge to the Court's subject matter jurisdiction."  Gov't Mot. Dismiss at 1 n.1.  On this basis, the Government claims to be free to raise extrinsic evidence outside the complaint, "such as testimony and affidavits."  *Id.* at 1.n.1 (*citing Makro Capital of America, Inc. v. UBS AG,* 543 F.3d 1254, 1258 (11th Cir. 1999)).

To the extent the Government is attempting to raise a "factual" challenge to jurisdiction, the Government's argument fails for one simple reason:  It has presented no facts!  As the Court is well aware, the victims still have pending a "summary judgment" motion in which they have alleged 53 specific undisputed facts. DE #48.  The Court, however, has reserved ruling on that motion, explaining "the Court lacks a factual record to support such findings and must therefore defer ruling on these two issues pending the limited discovery discussed below."  Order, 9/26/11 (DE #99) at 10.

The Government's position is far weaker than the victims'.  At least the victims alleged 53 undisputed facts as the basis for their motion, supporting each and every fact with citations to the limited record in this case.  In contrast, the Government's motion to dismiss alleges no facts

whatsoever, much less evidentiary support for such facts.  Accordingly, the Court should reject any factual challenge to the victims' cause of action and move forward with the discovery that the Court previously ordered.

With regard to the *legal* challenge the Government is raising, the Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs." *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1291 (11th Cir. 2010).  In the current posture of this case, the victims have pending a motion for "summary judgment" with 53 proposed undisputed facts.  DE #48 at 3-23.  The court should accordingly accept all these facts as true and construe them in the light most favorable to the victims.  Those facts allege a deliberate conspiracy between the Government and Epstein to violate the victims' CVRA rights in the course of executing the non-prosecution agreement.  *See, e.g.,* DE #48 at 34-36 (discussing allegations of "affirmative misconduct").  This issue before the Court, then, is whether it possesses subject matter jurisdiction to review allegations from crime victims that prosecutors and defense attorneys conspired to violate congressionally-mandated rights in the CVRA.

The Government's motion also appears to assume that the victims are alleging that the Government has violated only one of their CVRA rights (i.e., the right to confer with prosecutors).  In fact, the victims are alleging that the Government violated *three* of their CVRA rights, namely: (1) their "reasonable right to confer" with prosecutors, 18 U.S.C. § 3771(a)(5); (2) their right "to be treated with fairness and with respect for the victim's dignity," 18 U.S.C. § 3771(a)(8); and (3) their right to "reasonable, accurate and timely notice of any public court proceedings . . . involving the crime . . . ."  18 U.S.C. § 3771(a)(2).  *See* DE #48 at 36 (discussing each of these three rights separately); DE #77 at 15-19 (same).

II.     **THE CVRA GIVES THE COURT BROAD POWER TO CRAFT APPROPRIATE REMEDIES FOR VIOLATIONS OF THE RIGHTS IT CONFERS.**

Even given allegations of three separate and deliberate CVRA violations, the Government maintains that this Court is powerless to respond.  In the Government's view, the victims "lack standing to pursue the remedies that they are seeking for the alleged CVRA violations," Gov't Mot. Dismiss at 2.  Before turning to the specifics of this claim, it is important to understand the remedial structure that surrounds the CVRA.  Since the earliest days of our nation, it has been settled law that "where there is a legal right, there is also a legal remedy . . . .."  *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted).  Moreover, "[i]f the right is created by a federal statute, the federal courts have the power to fashion an appropriate remedy."  *Intracoastal Transp., Inc. v. Decatur County, Georgia* 482 F.2d 361, 371 (5th Cir. 1973).  Beyond these general principles, the CVRA itself requires this Court to protect victims' rights, emphasizing that "[i]n any court proceeding involving an offense against a crime victim, the court *shall ensure* that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added).

When a violation of federal law is established, "federal courts generally have the power to grant any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."  *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 784 (6th Cir. 1996) (internal quotation omitted).  Federal courts should "presume the availability of all appropriate remedies [for a federal right of action] unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66 (1992).  Congress has "expressly indicated" a few,

narrowly-drawn limitations on remedies in the CVRA.  These limitations, however, are not applicable to this case.

Congress limited certain legal remedies under the CVRA, in particular providing that the CVRA did not create a new cause of action for damages and attorney's fees.  18 U.S.C. § 3771(d)(6).  It also provided a specific provision regarding "limitation on relief":

> (5) Limitation on relief— In no case shall a failure to afford a right under this chapter provide grounds for a new trial. A victim may make a motion to re-open a plea or sentence only if—
> (A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied;
> (B) the victim petitions the court of appeals for a writ of mandamus within 14 days; and
> (C) in the case of a plea, the accused has not pled to the highest offense charged.
> This paragraph does not affect the victim's right to restitution as provided in title 18, United States Code.

18 U.S.C. § 3771(d)(5).  As is readily apparent, these limitations only apply to crime victims' efforts to obtain a "new trial" or to "re-open a plea or sentence."  The victims' pleadings here do not ask for a "new trial" – no trial in this case was ever held.  Likewise, they do not ask to "re-open" a plea, much less a sentence – Epstein never pled guilty to any crime in federal courts (and his plea in state court was not to charges involving them and was apparently not reviewable in federal court).  Instead, the victims seek (among other remedies) the invalidation of an illegal non-prosecution agreement so that they can confer with the Government about an appropriate prosecution of the crimes Epstein committed against them.  Accordingly, none of the specifically-provided "limitations on relief" apply to this case.

In light of the narrow reach of this "limitation" language, the CVRA clearly leaves open all other remedies, including in particular equitable remedies.  The "federal courts have

5

historically had broad authority to fashion equitable remedies . . . ."  *Hardison v. Cohen*, 375 F.3d 1262, 1266 (11th Cir. 2004).  The Eleventh Circuit has expressly required district courts to fashion appropriate equitable remedies when plaintiffs have proven a violation of statutory provisions.  *See, e.g., Alabama Hospital Ass'n v. Beasley,*  702 F.2d 955, 962 (11th Cir. 1983) (in light of statutory violation, we "accordingly remand to the district court so that it may devise an appropriate equitable remedy.").  And the CVRA is obviously "remedial legislation" that should be broadly construed to achieve its remedial purposes. *Edwards v. Kia Motors of America, Inc.,* 554 F.3d 943, 948 (11th Cir 2008)**.**

A good illustration of the broad power of district courts to remedy CVRA violations comes from the Fifth Circuit's decision in *In re Dean*, 527 F.3d 391 (5th Cir. 2008).  There, the Fifth Circuit found a violation of crime victims' right to confer with prosecutors regarding a plea agreement. The Circuit, however, declined to grant its own remedy, instead remanding to the district court.   "We are confident, however, that the conscientious district court will fully consider the victims' objections and concerns in deciding whether the plea agreement should be accepted."  *Id.* at 396.  Likewise, here, the onus falls on this Court to determine how best to remedy the Government's CVRA violations alleged by the victims.

## III.   THE VICTIMS ARE ENTITLED TO A WIDE ARRAY OF REMEDIES FOR THE GOVERNMENT'S DELIBERATE CVRA VIOLATIONS.

The Government contends that the Court should dismiss this case because the only "legal" relief that the victims have sought is setting aside the non-prosecution agreement and that they are not entitled to any such remedy.  The Government's argument fails for five separate reasons.  First, because the issue of remedy is interwoven with the merits to the victims' claims,

a dismissal before reaching the merits is inappropriate.  Second, in any event, the victims are entitled to have the Court invalidate the non-prosecution agreement because it is illegal.  Third, entirely apart from invalidating the agreement the victims are entitled to seek a wide range of "legal" and equitable remedies apart from, or in addition to, invalidation of the illegal agreement. Fourth, at the very least, the issues raised in this case should be regarded as ones that are capable of repetition and should not be allowed to evade review.  And fifth, Epstein's presence in the case is not required to grant the victims' relief.

### A.   Because The Government's Motion Goes to the Merits of the Victims' Arguments, A Dismissal Is Not Appropriate.

The victims have repeatedly stated that they believe that the proper time for briefing remedial issues in this case is *after* the Court makes its ruling on what CVRA violations the Government has committed.  Settled law holds that "the nature of the remedy is to be determined by the nature and scope of the . . . violation."  *Nichols v. Hopper*, 173 F.3d 820, 824 (11th Cir. 1999) (internal quotation omitted).   And, "[a]t the initial pleading stage, a plaintiff may establish standing based on general factual allegations of injury."   *Young Apartments, Inc. v. Town of Jupiter, Florida*, 529 F.3d 1027, 1038 (11th Cir. 2008).

In this case, however, it is clear that the Government's alleged "jurisdictional" challenge actually is deeply intertwined with the merits of this case.  As a result, the Court should not dismiss the case but allow it to proceed to a conclusion on the merits.  As the Eleventh Circuit has held, *"[i]f a jurisdictional challenge does implicate the merits of the underlying claim then[] the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case . . . .* Judicial economy is

best promoted when the existence of a federal right is directly reached . . . ." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (emphasis added) (internal citation omitted).

In this case, it is quite clear that the Government's challenge directly "implicates the merits of the underlying claim." Many of the remedial issues turn on the extent to which the Government and Epstein conspired to violate the victims of their rights. For this reason alone, the Court should deny the Government's motion to dismiss.

**B.    If the Victims Prove the Agreement is Illegal, They Would Be Entitled to Have the Non-Prosecution Agreement Declared Illegal.**

The main argument in the Government's motion to dismiss is that this Court would be powerless to set aside the non-prosecution agreement, even were the victims to prove a deliberate conspiracy to illegally violate their CVRA rights. As the victims have previously explained, however, ample precedent supports the power of this Court to set aside the agreement if it was arrived at illegally.[1] When other plea arrangements have been negotiated in violation of law, they have been stricken by the courts. For example, *United States v. Walker*, 98 F.3d 944 (7th Cir. 1996), held that where a sentence on a new crime could not run concurrently with a probation revocation the defendant was then serving – contrary to the assumption of the parties to the plea agreement – the defendant was not entitled to specific performance of the plea agreement. The Court explained that the case was one "in which the bargain is vitiated by illegality . . . ." *Id.* at 947. Moreover, even though the defendant had served some prison time

---

[1] *See* Victim's Motion Finding of Violation of Rights (DE #48) at 37-39 (collecting case law on setting aside illegal plea agreements). The Government studiously ignores these arguments in newly-filed motion to dismiss. Should the Government attempt to "sandbag" the victims by raising new arguments for the first time in its reply brief, the victims would then respectfully seek leave to file a sur-reply to these new arguments.

8

under the agreement, that did not mean he was entitled to specific performance of the agreement. *Id.* at 947. The defendant had "forfeited" the right to seek specific performance of the agreement.

Here, of course, exactly the same is true: the non-prosecution agreement is "vitiated" by illegality – namely, the fact that the parties negotiated it in violation of the victims' rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771. Moreover, Epstein has "forfeited" any right to seek specific performance of the non-prosecution agreement. As the victims will prove as this case moved forward, he was a party to – and, indeed, the instigator of – the Government's CVRA violations. Thus, unlike the *Walker* case where the agreement was an accident, here the illegal agreement was a deliberate plan. In such circumstances, any equitable claim Epstein has for specific performance of the non-prosecution agreement disappears.

Other cases reach similar conclusions. *See, e.g., Craig v. People*, 986 P.2d 951, 959-60 (Colo. 1999) (because "neither the prosecutor nor the trial court have authority to modify or waive the mandatory parole period," such "is not a permissible subject of plea negotiations," and thus, even if "the trial court erroneously approves of such an illegal bargain" such plea is "invalid" and thus will not be specifically enforced). Nor can the defendant claim some right to specific performance of an illegal non-prosecution agreement. *See State v. Garcia*, 582 N.W.2d 879, 881-82 (Minn. 1998) (plea agreement for 81-month sentence, but court added 10-year conditional release term because, under facts of case, sentence without such release term is "plainly illegal," and thus remedy of specific performance not available); *State v. Wall*, 348 N.C. 671, 502 S.E.2d 585, 588 (1998) (plea agreement was for sentence to be concurrent with one not yet completed, but state statute mandates consecutive sentence on facts of this case; "defendant

9

is not entitled to specific performance in this case because such action would violate the laws of this state"); *Ex parte Rich*, 194 S.W.3d 508, 515 (Tex. Crim. App. 2006); (where "the plea bargain seemed fair on its face when executed, it has become unenforceable due to circumstances beyond the control of [the parties], namely the fact that one of the enhancement paragraphs was mischaracterized in the indictment, resulting in an illegal sentence far outside the statutory range," proper remedy is plea withdrawal, as "there is no way of knowing whether the State would have offered a plea bargain within the proper range of punishment that he deemed acceptable"); *State v. Mazzone*, 212 W.Va. 368, 572 S.E.2d 891, 897 (2002) (where plea agreement was that defendant would plead guilty to two felony counts of felon in possession of firearm and prosecutor would dismiss remaining six counts re other offenses with prejudice, and all parties erroneously believed these two crimes were felonies, lower court "correctly resolved this unfortunate predicament by holding that a plea agreement which cannot be fulfilled based upon legal impossibility must be vacated in its entirety, and the parties must be placed, as nearly as possible, in the positions they occupied prior to the entry of the plea agreement").

Rather than respond to these specific examples of courts setting aside illegal agreements, the Government's motion relies on two cases that stand for the generic proposition that the Government must abide by its promises in plea agreements. *See* Gov't Mot. Dismiss at 4 (*citing Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Harvey*, 869 F.2d 1439, 1443 (11th Cir. 1989)). But the very point of all the cases cited by the victims in the previous paragraph is the Government can *not* abide by illegal promises, even where it has accidentally entered into some kind of an agreement with the defendant to that effect. And, this case is truly

10

unique because rather than an accidental illegal agreement, it involves (as the victims will prove) a deliberate illegal agreement designed to violate their rights.

Accepting the Government's argument that this Court cannot set aside the illegal agreement would allow the Government by private arrangement with a criminal to supersede congressional mandates for keeping crime victims informed.  Just as the Government cannot illegally agree to run a sentence on a new crime concurrently with a probation revocation, *United States v. Walker*, 98 F.3d 944 (7th Cir. 1996), so too here it cannot illegally agree not to prosecute a sex offender without first conferring with his victims, treating them fairly, and giving them timely and accurate notice of court hearing.

Not only are the Government's arguments without merit, but the Government simply lacks standing to raise them.  The Government complains that setting aside the non-prosecution agreement would harm *Epstein*'s constitutional rights.  But this is an argument that must be presented by Epstein.  The Government will obviously suffer no harm if this Court invalidates the non-prosecution agreement.  To possess standing to raise a claim, a litigant "must show . . . it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 180 (2000).  The Government cannot show any such injury from a declaration that the non-prosecution agreement is illegal, and accordingly the Court should reject its argument on this basis as well.

Finally, a plea agreement is, in essence, a contract between a criminal defendant and the Government.  *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).  Accordingly, plea agreements are governed by applicable principles of contract law.  *Allen v. Thompson*, 161 F.3d

667, 671 (11th Cir. 1998); *United States v. Meyers*, 32 F.3d 411, 413 (9th Cir. 1994). One such fundamental principle of contract law is that contracts entered into in violation of law are void, and no legal rights arise from the formation of such a contract. *Shaughnessy v. D'Antoni*, 100 F.2d 422, 424 (5th Cir. 1938); *accord McMullen v. Hoffman*, 174 U.S. 639, 654 (1899) ("[N]o court will lend its assistance in any way to carrying out the terms of an illegal contract. . . . nor will they enforce any alleged rights directly springing from such contract."); *Shlay v. Montgomery*, 802 F.3d 918, 922 (7th Cir. 1986) ("There is no question that contracts which are in violation of law are null and void."); *Total Medical Management, Inc. v. United States*, 104 F.3d 1314, 1319–20 (Fed. Cir. 1997) (holding that a plainly illegal contract "is a nullity and void *ab initio*"). Because illegal agreements are void *ab initio*, such a contract "is ordinarily treated as rescinded." *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1022 (7th Cir. 2002). And a court cannot enforce such an illegal agreement to the detriment of an innocent third party. *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 182 (5th Cir. Unit A Sept. 1981).[2] This is particularly true where a party has "unclean hands," which is an equitable doctrine that "provides that one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness will appeal in vain to a court of conscience." *In re Kingsley*, 518 F.3d 874, 878 (11th Cir. 2008).

The victims request an opportunity to brief all these issues at greater length – once discovery in this case is completely. But the victims have certainly alleged facts supporting the conclusion that the non-prosecution agreement is illegal and that the Government (and Epstein)

---

[2] "Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit." *United States v. Brown*, 342 F.3d 1245, 1246 n.1 (11th Cir. 2003).

had unclean hands in arriving at the agreement.  For all these reasons, the victims will be able to prove that the Court should set aside the non-prosecution agreement as the appropriate remedy in this case.

### C.   The Victims Are Entitled to a Range of Other Remedies for Deliberate Violation of Their Rights.

For all the reasons just explained, the Court should deny the Government's motion to dismiss because the victims are entitled to move forward and seek the remedy of invalidation of the non-prosecution agreement.  Entirely apart from that remedy, however, the victims are entitled to seek – and are seeking – numerous other remedies.  The Government's motion to dismiss for lack of "redressability" should be denied in light of these other remedies.

The victims have argued consistently throughout these proceedings that the proper time for a full discussion of the details of remedies is after the Court determines the merits of the case. But the Government contends that the time to discuss these issues is now – on its motion to dismiss.  Even though this puts the remedial "cart" before the merits "ox," the victims can lay out numerous other remedies that they are seeking in this case.  To be sure, even with these remedies, it is possible that some of the victims' injuries will not be addressed.  But "a party satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to [her]self.  [She] need not show that a favorable decision will relieve [her] *every* injury."  *281 Care Committee v. Arneson*,  638 F.3d 621, 631 (8th Cir. 2011) (emphasis in original) (internal citation omitted).  Even where "a court may not be able to return the parties to the *status quo* ante," so long as "a court can fashion *some* form of meaningful relief" it should hear the case. *Church of Scientology of California v. U.S.*, 506 U.S. 9, 12 (1992).

Here, numerous discrete remedies lie within the Court's power to award.  In particular, the victims are asking the Court to award all of the following remedies:

- A ruling from this Court that, contrary to the current understanding of the U.S. Attorney's Office, if after consultation with the victims the Office determined that prosecution of Epstein for crimes committed against Jane Doe #1 and Jane Doe #2 was appropriate, the Constitution would permit such a prosecution.

- A declaration that the Government entered into the non-prosecution agreement in violation of Jane Doe #1 and Jane Doe #2's rights under the CVRA;

- A declaration that the non-prosecution agreement is accordingly illegal;

- A declaration invalidating the illegal non-prosecution agreement in whole, or in the alternative, a declaration invalidating the illegal non-prosecution agreement to the extent that it purports to bar prosecution of Epstein's crimes against Jane Doe #1 and Jane Doe #2;An order from this Court that the Government provide Jane Doe #1 and Jane Doe #2 all information in its possession, including documents and correspondence, about why it decided not to prosecute Epstein's crimes against them;

- An order from this Court releasing to Jane Doe #1 and Jane Doe #2 all grand jury material relating, directly or indirectly, to Epstein's sex offenses (and conspiracy to commit sex offenses) against Jane Doe #1 and Jane Doe #2;

- An order from this Court directing an appropriate supervisor from the U.S. Attorney's Office to meet with Jane Doe #1 and Jane Doe #2, to explain in detail why it decided not to prosecute Epstein's crimes against them and confer with them about the case and about what steps might be taken to insure that Epstein is held accountable for the sex offenses he has committed;

- An order from this Court referring the issue of the crime victims' rights violations for investigation to the administrative authority within the Justice Department that handles CVRA complaints, pursuant to 18 U.S.C. § 3771(f)(2)(A), and to any other appropriate Justice Department entity;

- A finding by this Court that there has been misconduct by at least one DOJ attorney in violation of the victims' rights;

- An order from this Court referring the issue of the crime victims' rights violations for possible disciplinary sanctions to the Justice Department, pursuant to 18 U.S.C. § 3771(f)(2)(C);

- An injunction from this Court directing the U.S. Attorney's Office to treat Jane Doe #1 and Jane Doe #2 with "fairness" in this case as required by 18 U.S.C. § 3771(a)(8) of the CVRA, to "confer" as required by 18 U.S.C. § 3771(a)(5), and to provide accurate and timely notice of future case events as required by 18 U.S.C. § 3771(a)(2);

- A letter for apology from the U.S. Attorney's Office for violating Jane Doe #1 and Jane Doe #2's rights;

- A monetary sanction imposed against the U.S. Attorney's Office, to be paid to Jane Doe #1 and Jane Doe #2 directly or to any other appropriate person or entity;[3]

- An order establishing the precise rule regarding the timing of the obligations of the U.S. Attorney's Office to crime victims, including the victims in this case;

- Award of restitution to the victims, including all forms of restitution provided in 18 U.S.C. § 2259(b) (providing for counseling expenses, lost income, attorneys' fees, and other forms of restitution);

- An award of attorney's fees and costs from this Court under the Court's inherent authority to enter such an award;[4]

- The remedies the victims propose in their sealed supplemental pleading on remedies; and

- Any other remedy that the Court deems just and proper.[5]

These remedies address the violations that the victims are alleging. Most important, a declaration that the non-prosecution agreement is illegal and void would assist the victims in

---

[3]   Note: the victims are not seeking "damages" under the CVRA, but rather another appropriate sanction. *Cf.* 18 U.S.C. § 3771(d)(6) (providing that the CVRA does not "authorize" a cause of actions for "damages").

[4]   The victims are, of course, aware that the CVRA provides that it does not authorize a crime victim's claim for "damages." 18 U.S.C. § 3771(d)(6). The victims intend to argue, however, that the Court possesses the power to award attorney's fees based on other sources outside the CVRA (including its inherent power) and therefore a fee award is appropriate in this case. The victims respectfully request an opportunity to file a supplemental brief on the Court's authority to award such relief if the Court requires further information on this subject.

[5]   These specific remedies are against the Government. The victims may also have, in addition, specific remedies against individuals.

various ways (including ways described in the victims' supplemental sealed pleading on remedies). A party who seeks a finding that a challenged governmental action is void has obviously made an allegation that can be addressed by a favorable decision from a court. *See, e.g., LaRoque v. Holder*, 650 F.3d 777, 791 (D.C. Cir. 2011) (allowing case to proceed where plaintiff made non-frivolous allegations that government actions were illegal and thus void).

Moreover, these proposed remedies protect the victims' rights directly. For example, they protect the right to "reasonably confer," 18 U.S.C. § 3771(a)(5), by setting up a conference with prosecutors where the victims can fully understand what happened in this case.[6] These remedies also help protect the victims' right to be treated with "fairness" by disclosing information about what happened in this case and specifically the manner in which their rights were violated and the potential reason for the violations. These remedies help to protect and insure victims' rights by acknowledging the rights and the fact that their rights were violated.

These remedies also insure, by way of an injunction, that the victims will receive their rights in the future, including accurate and timely notice of future court events. These remedies will provide attorney's fees for the victims – a claim for attorney's fees alone establishes the required constitutional standing to proceed with a case. *See, e.g., Castro County, Texas v. Crespin,* 101 F.3d 121, 126-27 (5th Cir. 1996). The remedies also provide equitable relief for the harms the victims have suffered, such as a letter of apology from the Government and injunction against future violation of the CVRA. A request for equitable relief is sufficient to establish

---

[6] So far in this case, the Government has never given the victims any specifics about its handling of the case. If the Court believes that the details of the victims' previous meetings with the Government are important to resolving this motion, the victims respectfully request an opportunity to provide those details to the Court.

standing to proceed.  *See Township of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 155 (3rd Cir. 2011) (request for equitable relief creates standing); *Amnesty International USA v. Clapper*, 638 F.3d 118, 140 (2d Cir. 2011) (request for injunction sufficient to confer standing to proceed).

 And on top of all that, these remedies also provide a way to insure that those who were responsible for violating their rights are appropriately reviewed for possible sanction by the Justice Department.  For example, as the Court knows, the Government has previously declined to investigate the victims' complaint that their rights were violated during the Epstein investigation on the grounds that it is Government "policy to refrain from investigating issues or allegations that were, are being, or that could have been addressed in the course of litigation, unless a court has made a specific finding of misconduct by a DOJ attorney . . . ."  Letter from Robin C. Ashton to Professor Paul G. Cassell, May 6, 2001, attached as Exhibit 1 to Victim's Mot. File Supp. Auth. DE #82.  Accordingly, an order by this Court making "a specific finding of misconduct by a DOJ attorney" would allow the victims to obtain a Government investigation into the circumstances of this case.[7]

 The Supreme Court has made clear that among the factors the Court should consider when reviewing standing challenges relating to a federal statute is whether Congress intended "to rely on private litigation to ensure compliance with the Act."  *Bennett v. Spear*, 520 U.S. 154, 166 (1997).  Here there can be no doubt that Congress intended private litigation to enforce the CVRA, because the Act itself contains a "standing" provision allowing victims to assert their

---

 [7]  To be clear, the victims at this time are not alleging deliberate misconduct by the line attorney who handled the matter, as the decisions in this case about not notifying crime victims appear to have been made by supervisory personnel.

rights in district court.  18 U.S.C. § 3771(d)(1) & (d)(3).  The Act also has some "limitations" on remedies that do not apply to the remedies the victims are seeking, as explained above.  The Act then *requires* this Court to "ensure" that the victims' rights are respected.  18 U.S.C. § 3771(b)(1).  In light of all this, this Court must redress the injuries that the victims have alleged.  As the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while giving meaning to the rights we establish." 150 CONG. REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added).  The proper "procedure" this Court should follow in this case is simply to allow the victims' case to proceed and then award the appropriate remedy or remedies at the case's concluson.[8]

> **D.**   **Even if No Remedy is Possible in this Case, the Court Should Decide the Merits Because the Issue is Capable of Repetition Yet Would Otherwise Evade Review.**

For all the reasons just explained, the Court clearly is in a position to address the CVRA violations alleged by the Jane Doe #1 and Jane Doe #2.  Even assuming for sake of argument it was not, however, the Court would still clearly possess the ability to review the Government's violations.  A well-recognized principle is that a Court will review an issue that is "capable of repetition, yet evading review."  *See, e.g., Moore v. Ogilvie*, 394 U.S. 814, 816 (1969); *Swanson v. Worley*, 490 F.3d 894, 903 n.10 (11th Cir. 2007).  If the Court dismisses the victims' case here,

---

[8]   The Government seems to think that the fact that the victims have not filed any motion seeking particular remedies has some bearing on this case.  The procedures the victims should follow to protect their rights are not completely clear.  Accordingly, concurrently with this pleading, the victims a filing a motion to have the Court award them all the remedies they seek.

the Government will be free to ignore victims' rights the next time it finds the CVRA to be inconvenient when negotiating a plea, and then make the same "lack of remedy" argument it is advancing here.  The Court should not allow an important federal law – the CVRA – to be evaded in this fashion.  This case presents important issues concerning the proper administration of Congress' statute conferring rights on crime victims.  The Court should decide those issues.

E.      **The Government's Claim that Epstein Must Be a Party to this Case to Reject the Non-Prosecution Agreement is Flawed and Premature.**

The Government also suggests that this Court will be unable to order relief in this case because the victims have not formally joined Epstein as a party to these proceedings.  Accordingly, in the Government's view, it is not possible for this Court to invalidate the non-prosecution agreement.  Gov't Mot. Dismiss at 5-6.

As explained above, the Government lacks "standing" to raise Epstein's arguments for him.  In any event, with regard to alleged "due process" considerations that the Government claims prevent setting aside the non-prosecution agreement, the Government fails to acknowledge that Epstein currently has pending before the Court a motion for "limited" intervention in this very case.  DE #93.  Nor does it acknowledge the victims' response to that motion, arguing that Epstein cannot limit his intervention to merely a "limited" basis and, more important, that he has waived his right to challenge any invalidation of the non-prosecution agreement by his deliberate decision to wait to intervene in this case until the Court had made various substantive rulings.  DE #96.  For the reasons expressed by the victims in their pleadings there, the Court should reject the Government's argument here.

In the alternative the Court should find that Epstein's due process interests have been protected. All that "due process" requires is "an *opportunity* to be heard." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (emphasis added) (internal citation omitted). Epstein has plainly had the opportunity to be heard in this case – he has simply chosen not to avail himself of it by standing on the sidelines.[9] As a result, Epstein has simply waived whatever due process right he might otherwise possess. *See, e.g., Krieger v. Fadely* 211 F.3d 134, 135 (D.C. Cir. 2000) (finding waiver of right to heard argument where litigant waited months to raise the issue, possibly for tactical reasons).

The Government also appears to argue that Epstein is an indispensable party that must be joined in this case. Gov't Mot. Dismiss at 4-5. The Government's argument that the case must dismissed for lack of joinder should rejected, at least at this earlier juncture, for several reasons. First, although the Government does not cite the applicable rule, the Government's argument appears to be one based on Federal Rule of Civil Procedure 19(a), which in certain cases requires all "indispensable" parties to be present for a case to proceed. Perhaps the reason that the Government does not cite the applicable civil rule is that it has yet to state clearly whether it is willing to abide by the civil rules in this case. *See, e.g.,* Gov't Resp. Mot. Order Not Withhold Evid., DE #59 at 6-7 (refusing to take a position on whether civil rules apply or not). Indeed, the Government has yet to even make its initial productions as required by Rule 26 in civil cases. The Government should not be permitted to cherry pick the rules of civil procedure, relying on those that it likes and dispensing with those that it does not.

---

[9] Epstein, however, has sent in his surrogates to litigate in this case, including his criminal defense attorneys Roy Black et al. and an attorney who has represented persons close to him, Bruce Reinhart.

Second, the Government's argument provides no basis for entirely dismissing the victims' case.  Clearly the Court can award some of the proposed remedies the victims seek without affecting Epstein in any way, as some of the remedies lie only against the Government. For instance, an injunction requiring compliance by the Government with the CVRA does not create any harm to Epstein, and thus the victims should be permitted to proceed.

Third, whether Epstein is truly an indispensable party must await the development of a factual record in this case.  The victims should accordingly be allowed to proceed with discovery in the case and the issue of Epstein's indispensability litigated later.

Fourth, Epstein himself indicated an intention to intervene at some future point in the case.  He has explained that if the Court finds a CVRA violation, then "Epstein's interests with respect to the validity of the Agreement will become ripe and subject to intervention, rather than being simply speculative as they are now and contingent on how the Court rules between now and then."   Epstein's Omnibus Reply Support Mot. Limited Intervention, DE #108 at 13 n.3.  It is therefore premature to say whether or not Epstein will voluntarily appear in the case.

Fifth, as the victims have argued, Epstein has waived any rights he may have to participate in this case by intentionally sitting on the sidelines.

Finally, in any event, if Epstein is a required party to the victims' action, the victims seek leave to either serve Epstein directly or to have the Government do so under its obligations to use its "best efforts" to protect victims' rights, 18 U.SC. 3771(c)(1).

For all these reasons, the Government's motion to dismiss should be denied.

## IV.  THE GOVERNMENT'S "RIPENESS" ALLEGATION ALSO LACKS MERIT.

The Government finally argues that the victims' claims are somehow not yet "ripe" for decision, even though the victims have been attempting to vindicate their interests for more than three years.  The Government's argument seems to be that because the Government is willing to meet with victims and talk about the case now, the victims' allegation of a violation of the right to confer is not yet ripe.

The Government's argument is specious.  As is clear from the victims' pleadings, the victims are alleging not merely on-going violations of their right to confer, but also fully-completed violations of their right to confer that took place between about August 2007 through about July 2008, when the Government and Epstein deliberately concealed a secret non-prosecution agreement from the victims.  *See, e.g.,* Victims' Mot. Finding Violations of CVRA, DE #48 at 1-2 (citing specific actions in 2007 and 2008 that constituted CVRA violations of the right to confer).   Clearly litigation about whether the Government illegally hid the agreement from the victims in 2007 and 2008 is "ripe" for decision.  To show an issue is ripe for decision, a party must show "an actual injury already sustained."  *Warner Cable Communications, Inc. v. City of Niceville*, 911 F.2d 634, 640 (11th Cir. 1990).   Here the victims have plainly alleged injuries "already sustained" – specifically, violations of their CVRA rights in 2007 and 2008.

The Government's argument is also incomplete.  The Government's argument is predicated on the fact that the *only* right the Government violated was their right to confer.  But the victims have also alleged violations of their right to be treated with fairness and their right to reasonable and accurate notice of court proceedings.  These additional claims are clearly "ripe" for adjudication, because the facts surrounding them have already occurred – i.e., the

Government treated the victims unfairly in (at least) 2007 and 2008 and failed to provide proper notice as required by the CVRA in June 2008.

Finally, the Government's argument is simply wrong.  The Government thinks that because it is willing to meet with the victims *after* it has made the decision to not to prosecute Epstein for federal sex offenses he committed against them that it has discharged its obligations under the CVRA.  Nothing could be further from the truth.  Senator Kyl stated emphatically that "[w]hen a case is resolved through a plea bargain without the victim's knowledge or participation, a grave injustice has been committed by the authorities."  Jon Kyl et al*., On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 LEWIS & CLARK L. REV. 581, 602 (2005).  That "grave injustice" is exactly what the authorities committed here – the Government illegally entered into an agreement disposing of the victims' cases "without the victim's knowledge."  Under the CVRA, prosecutors must "confer in some reasonable way with the victims *before* ultimately exercising its broad discretion."  *In re Dean*, 527 F.3d at 395 (emphasis added) (internal citations omitted).  The victims' argument that the Government failed to do so here is "ripe" for adjudication.

Finally, even if the Government somehow has an argument that it has now ceased violating the victims' rights – i.e., it is now willing to confer with them – that would not deprive this Court of the ability to decide this case.  "It has long been the rule that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case . . . . "  *Christian Coalition of Florida, Inc. v. U.S.*, ---F.3d---, 2011 WL 55553651 at *10 (11th Cir. 2011).  Boiled down, the Government's argument seems to be that while it may have violated

the CVRA in 2007 and 2008, it is has now learned its lesson and stopped violating the CVRA in 2011. Even if that is true, that voluntary cessation argument does not deprive this Court of the ability to review this case.

## CONCLUSION

The Court should deny the Government's motion to dismiss.

DATED:  December 5, 2011

<div style="margin-left: 50%;">

Respectfully Submitted,

s/ Bradley J. Edwards
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
Florida Bar No.: 542075
E-mail: brad@pathtojustice.com

*and*


Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
   University of Utah
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

Attorneys for Jane Doe #1 and Jane Doe #2

</div>

## CERTIFICATE OF SERVICE

The foregoing document was served on December 5, 2011, on the following using the

Court's CM/ECF system:

Dexter Lee
A. Marie Villafaña
Assistant U.S. Attorneys
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov
Attorneys for the Government

Roy Black, Esq.
Jackie Perczek, Esq.
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, FL 33131
(305) 37106421
(305) 358-2006

Martin G. Weinberg, P.C.
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700
(617) 338-9538