# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-80736-CIV-MARRA

JANE DOE #1 and JANE DOE #2,
    petitioners,

vs.

UNITED STATES OF AMERICA,
    respondent.

_____/



FILED by _____ D.C.

JUN 1 8 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA – W.P.B.

## ORDER DENYING GOVERNMENT'S MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION &
## ORDER LIFTING STAY OF DISCOVERY

**THIS CAUSE** is before the court on the government's motion to dismiss for lack of subject

matter jurisdiction [DE 119], the petitioners' response in opposition [DE 127] and the government's

reply [DE 147]. For reasons stated below, the court has determined to deny the motion.

### I. Preface

The petitioners in this action seek to vacate a "non-prosecution agreement" ("the agreement")

between the United States Attorney's Office for the Southern District of Florida (USAO/SDFL) and

Jeffrey Epstein (Epstein) pursuant to the Crime Victims' Rights Act of 2004 (CVRA), 18 U.S.C.

§3771. Under the agreement, Epstein agreed to (1) plead guilty to two then pending state court

charges, solicitation of prostitution and solicitation of minors to engage in prostitution (a charge

requiring him to register as a sex offender), in violation of Fla. Stat. §§796.07 and 796.03 and

(2) make a binding recommendation for an eighteen-month sentence in county jail followed by

twelve months of community control. In exchange for Epstein's performance, the USAO/SDFL

agreed to (1) defer prosecution of related federal offenses against Epstein which had been

investigated by the Federal Bureau of Investigation (FBI) [1] in favor of prosecution by the State of Florida and (2) refrain from instituting criminal charges against certain alleged co-conspirators of Epstein. Further, the USAO/SDFL and Epstein expressed their "anticipat[ion]" that the "agreement will not be made part of any public record. " Additionally, the USAO/SDFL promised to provide Epstein advance notice before disclosing the agreement in response to a Freedom of Information Act request or compulsory process commanding disclosure [DE 48-5, pp. 2-15].

## II. Factual Background

As outlined in their CVRA petition and supplemental pleadings filed in this action, petitioners allege the following sequence of events, which the court assumes to be true at the motion to dismiss stage:[2]

1. In 2006, the Federal Bureau of Investigation opened an investigation into allegations that Epstein had been inducing minor females to engage in commercial sexual activity over the preceding five year period of time. The United States Attorney's Office for the Southern District of Florida accepted the case for prosecution, and in June, 2007 and August, 2007, the FBI issued standard

---

[1]

The agreement enumerated certain federal offenses which the FBI and the United States Attorney's Office determined may have been committed by Epstein between 2001 through 2007, including conspiracy to use and the use of facilities of interstate commerce to persuade, induce or entice minor females to engage in prostitution in violation of 18 U.S.C. §2422(b); conspiracy to travel and travel in interstate commerce for purpose of engaging in illicit sexual conduct with minor females in violation of 18 U.S.C. § 2423(b); knowingly recruiting, enticing and obtaining persons under the age of eighteen years to engage in commercial sex acts in violation of 18 U.S.C. §1591(a)(1).

[2]

See Cole v. United States, 755 F.2d 873 (11th Cir. 1985)(in reviewing motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b), reviewing court must assume as true all "factual" allegations in the complaint).

victim notification letters to the petitioners  Jane Doe No. 1 and Jane Doe No. 2.

2.  On September 24, 2007, the USAO/SDFL entered into the above-described non-prosecution agreement with Epstein without first conferring with petitioners, and  without alerting them to the existence of the agreement either  before or promptly after the fact.[3]  Petitioners claim they were kept in the dark about the agreement for roughly  nine months  - with no mention of the federal deal  made in intervening correspondence and verbal communications between petitioners, the FBI and the local United States Attorney's Office.[4]

3.  On June 27, 2008, the Assistant United States Attorney assigned to the Epstein case contacted  petitioners' counsel to advise that  Epstein was scheduled to plead guilty to certain state court charges on  June 30, 2008,  without mentioning that the anticipated plea in the state court  was a term of the pre-existing  non-prosecution agreement with the federal authorities.

4. On July 3, 2008, petitioners' counsel sent a letter to the USAO/SDFL advising that  Jane

---

[3]The government appears to concede the non-conferral, stating in its reply brief:

While it may be true that the USAO-SDFL did not inform Petitioners and confer with them about the Non-Prosecution Agreement before it signed that agreement, the USAO-SDFL had conferred with both of the Petitioners about the potential prosecution of Epstein and was aware that Jane Doe #1 wished to see Epstein prosecuted and that, at that time, Jane Doe #2 had expressed open hostility toward any prosecution of Epstein.

[DE 147, page 31].

[4]

The post-agreement communications are alleged to include a  May 30, 2008 letter from the USAO/SDFL to a recognized victim advising that the case "is currently under investigation" and that "it can be a lengthy process and we request your continued patience while we conduct a through investigation."  In addition, the USAO/SDFL allegedly sent a letter to the victims' counsel in June, 2008, asking them to submit a letter expressing the victims' views on why federal charges should be filed against Epstein -- without mentioning that the USAO/SDFL had already entered into the non-prosecution agreement.

Doe No. 1 wished to see federal charges brought against Epstein.

### III. Procedural History

5. On July 7, 2008, Jane Doe No. 1 filed an "emergency" petition under the CVRA, contending that Epstein was currently involved in plea negotiations with the USAO/SDFL, which "may likely result in a disposition of the charges in the next several days." [CVRA Petition, DE 1, ¶3]. Claiming to be wrongfully excluded from those discussions, Jane Doe 1 asserted the violation of her CVRA rights to confer with federal prosecutors; to be treated with fairness; to receive timely notice of relevant court proceedings and to receive information about her right to restitution. As relief, she requested entry of an injunction directing the United States Attorney's Office to "comply with the provisions of the CVRA prior to and including any plea or other agreement with [Epstein] and any attendant proceedings."

6. On July 9, 2008, the government filed its response, disclaiming application of the CVRA to pre-charge negotiations with prospective defendants. Alternatively, the government contended it did use its "best efforts" to comply with CVRA notice and conferral requirements in its dealings with Jane Doe 1.

7. On July 11, 2008, the court entertained a hearing on the initial petition. During the course of that proceeding, the court allowed an amendment of the petition to include Jane Doe No. 2 as a complainant. The government acknowledged at that time that both petitioners met the definition of "crime victims" under the CVRA.

4

8.  Over the course of the next eighteen months, the CVRA case stalled as  petitioners pursued collateral civil claims against Epstein. The CVRA case was administratively closed on September 9, 2010, and then re-opened at  petitioners' request on October 28, 2010. Since then, petitioners have submitted a  "Motion for Finding of Violations of the CVRA" and a supporting statement of facts [DE 48].

9. On September 26, 2011, the court entered its order partially granting the petitioners' motion for a  finding of violations of the CVRA,  recognizing that the CVRA can apply before formal charges are filed against an accused.  The court deferred  ruling on the merits of the motion pending development of a  full factual record, and  authorized petitioners  to conduct limited discovery in the form of requests for production of documents and requests for admissions directed to the U.S. Attorney's Office, with  leave  for either party to request additional discovery as appropriate  [DE 99].

10.  On November 8, 2011, the government  moved to dismiss the entire CVRA proceeding for lack of subject matter jurisdiction [DE 119], and successfully sought a stay of discovery pending resolution of that  motion [DE 121, 123].   In its current motion to dismiss, the government first contends that  "even assuming that the CVRA was violated as petitioners claim, petitioners lack standing to seek redress for those violations" because the  remedy petitioners seek- - a vacating or re-opening of the non-prosecution agreement – is not a  legally  viable option at this juncture. Alternatively, the government argues that petitioners' CVRA claims are not "constitutionally ripe" because petitioners  have  a present  ability to confer with  prosecutorial authorities in other jurisdictions, namely the United States Attorney's Offices of the  District of New Jersey and New York, which share  jurisdiction and venue over the federal offenses potentially chargeable  against

5

Epstein for crimes committed in this District. Thus, the government asserts that it is premature and speculative for petitioners to bring a claim for the prospective denial of CVRA conferral rights, rendering their current claims constitutionally unripe. These arguments are addressed, in turn, in the discussion which follows.

## IV. Discussion

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). To satisfy Article III's minimum standing requirements, a plaintiff must generally show (1) it has suffered an injury in fact – i.e. the invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-561.

Here, the government contends petitioners are unable to satisfy the third prong of this test on the theory it is legally impossible for petitioners to obtain the relief which they seek - the vacating of the non-prosecution agreement as a predicate to the full and unfettered exercise of their CVRA conferral rights – and that they are therefore unable to show a likelihood that the CVRA injury alleged will be redressed by a favorable decision in the case. More specifically, the government contends that rescission of an otherwise valid plea or non-prosecution agreement (i.e. an agreement containing no illegal terms or conditions) is prohibited by constitutional Due Process guarantees - even if entered in violation of the CVRA. Alternatively, the government argues that even if the court could set the agreement aside and order the government to confer with petitioners before arriving at a final prosecutorial decision regarding Epstein, the gesture would be futile. The

6

government claims that the United States Attorney's Office for the Southern District of Florida would still be legally bound to abide by the terms of the September 24, 2007 agreement,[5] eliminating the possibility that exercise of petitioners' conferral rights under the CVRA might lead to a different federal charging outcome.

The court disagrees. As a threshold matter, the court finds that the CVRA is properly interpreted to authorize the rescission or "re-opening" of a prosecutorial agreement - including a non-prosecution arrangement – reached in violation of a prosecutor's conferral obligations under the statute. Clearly, the statute contemplates such a result where, under the "enforcement and limitations" provision, § 3771(d)(5), the conditions under which "[a] victim may make a motion to re-open a plea or sentence" in order to remedy a failure to afford a right provided under the CVRA are specifically prescribed. If the government's theory was correct, i.e. that no otherwise valid plea may be disturbed, notwithstanding a CVRA violation, as a matter of constitutional due process guarantees -- the statutory prescriptions for "re-opening" a plea or sentence reached in violation of the CVRA would effectively be nullified. The court will not embrace such a strained construction of the statute.

------------------------------

[5]

The government acknowledges that the USAO/SDFL has been recused by the Department of Justice for prospective responsibility of any further criminal investigation or potential prosecution of Epstein relating to his alleged sexual activities with minor females in the Southern District of Florida, and that responsibility for any future prosecutorial action arising out of Epstein's alleged criminal activity in this district has now been assigned to the United States Attorney's Office for the Middle District of Florida [Government Motion to Dismiss, page 8, n. 8][DE 119]. However, it contends, without explanation, that the September 24, 2007 non-prosecution agreement would still constrain the Middle District of Florida United States Attorney's Office "due to that office's recusal-based derivative prosecutorial responsibilities in the Southern District of Florida" [Government Motion to Dismiss, page 12, n. 13][DE 119].

Although this particular statutory enforcement provision expressly refers to the re-opening of a "plea" or "sentence" – events falling in the post-charge stage of criminal proceedings – the court concludes that the statute is properly interpreted impliedly to authorize a "re-opening" or setting aside of pre-charge prosecutorial agreements made in derogation of the government's CVRA conferral obligations as well.

First, the court concludes that the "reasonable right to confer ... in the case " guaranteed by the CVRA at §3771(a)(5) is properly read to extend to the pre-charge stage of criminal investigations and proceedings, certainly where -- as here-- the relevant prosecuting authority has formally accepted a case for prosecution. The case law and legislative history of the statute support such an expansive reading of the statutory mandate. *See United States v. BP Products North America, Inc.*, 2008 WL 501321 at * 11-15 (S.D. Tex. 2008)(unpub), citing 150 Cong. Rec. S2460, S4268 (daily ed. Apr 22, 2004)(statement of Senator Feinstein)(explaining that the right to confer was "intended to be expansive," applying to "any critical state or disposition of the case") and *United States v. Heaton*, 458 F. Supp. 2d 1272 (D. Utah 2006)(government motion to dismiss charge of using facility of interstate commerce to entice minors to engage in unlawful sexual activity would not be granted until government consulted with victim); *United States v. Ingrassia*, 2005 WL 2875220 at *17 n. 11 (Senate Debate supports view that contemplated mechanism for victims to obtain information on which to base their input was conferral with prosecutor concerning any critical stage or disposition of the case), and United States Department of Justice, Attorney General Guidelines for Victim and Witness Assistance 30 (2005)("Responsible officials should make reasonable efforts to notify identified victims of, and consider victims' views about, prospective plea negotiations.")

8

In short, there is no logical reason to treat a "non-prosecution agreement" which the government employs to dispose of contemplated federal charges any differently from a "plea agreement" employed to dispose of charged offenses in interpreting remedies available under the CVRA. Where the statute expressly contemplates that a "plea" may be set aside if entered in violation of CVRA conferral rights, it necessarily contemplates that a "non-prosecution" agreement may be set aside if entered in violation of the government's conferral obligations.

Thus, in their petition and supplemental pleadings, Jane Doe 1 and 2 have identified a remedy which is likely to redress the injury complained of – the setting aside of the non-prosecution agreement as a prelude to the full unfettered exercise of their conferral rights *at a time that will enable the victims to exercise those rights meaningfully.* *See BP Products North America, supra* at \*14 ("Section 3771(c)(1) requires government officials to use best efforts to give victims notice of their rights under subsection (1), including the right to confer, at a time that will enable the victims to exercise these rights meaningfully"). Thus, petitioners do not lack constitutional standing because of an inability to identify a remedy for their alleged injury.

Nor is the court persuaded by the government's "futility" argument, derived from its stated perception that the United States Attorney's Office for the Southern District of Florida (and derivatively the United States Attorney's Office for the Middle District of Florida) would be constrained to honor the terms of the September 24, 2007 agreement even if the court were to set it aside and order the government to confer with the victims before reaching a final charging decision.

The fallacy with this strand of the government's standing argument derives from its misidentification of the alleged injury sought to be remedied in the case: The victims' CVRA injury is *not* the government's failure to prosecute Epstein federally – an end within the sole control of the government. Rather, it is the government's failure to confer with the victims before disposing of contemplated federal charges. This injury can be redressed by setting aside the agreement and requiring the government to handle its disposition of the Epstein case in keeping with the mandates of the CVRA, including the pre-charge conferral obligations of the government.

The court rejects the notion that a victim must show the likelihood or at least a possibility of a prosecution as a pre- requisite to demonstrating standing for redress of conferral rights under the CVRA - which is the fundamental premise of the government's futility argument. What the government chooses to do after a conferral with the victims is a matter outside the reach of the CVRA, which reserves absolute prosecutorial discretion to the government. 18 U.S.C. §3771 (d)(6)("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction").

While the law of standing does require, as a general proposition, that a federal plaintiff show some logical nexus between the asserted injury and the claim sought to be adjudicated (i. e. a likelihood that the relief sought is likely to vindicate the injury), *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S. Ct. 1146, 35 L.Ed. 2d 536 (1973), these requirements apply only in the *absence* of a statute expressly conferring standing. *Id.* at 617 n. 3 ("[] Congress may enact statutes creating leal rights, the invasion of which creates standing, even though no injury would exist without the statute"), citing *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 212, 93 S. Ct. 364, 368, 34 L.Ed. 2d 415 (1972). It is apparent, through the passage of the CVRA, that Congress has enacted

10

a statute expressly conferring certain legal rights upon "crime victims," the invasion of which creates standing to seek relief under the CVRA, even though no cognizable injury would exist without the statute. It is also apparent that the petitioners in this case meet the definition of "crime victims" conferred with standing to assert the subject CVRA claims.

The CVRA at §3771(e) defines a "crime victim" as " a person directly and proximately harmed as a result of the commission of a Federal offense." In the Eleventh Circuit, a two-part test is employed to determine whether an individual qualifies as a crime victim under this statute: First, the court must identify the behavior constituting the "commission of a Federal offense." Second, the court must identify the direct and proximate effects of that behavior on parties other than the United States. *In re Stewart*, 552 F.3d 1285 (11th Cir. 2008). If the criminal behavior causes a party direct and proximate harmful effect, the party is considered a victim under the CVRA. *Id* at 1288.

The non-prosecution agreement at issue refers to five distinct federal sex offense crimes involving minors contemplated against Epstein, the direct and proximate harmful effects of which were allegedly visited upon the petitioners, plainly qualifying them as crime victims within the meaning of the CVRA. As such, they have standing to assert rights under the CVRA, as they have done in this case. *See e.g. United States v. Thetford*, ___ F. Supp. 2d ____, 2013 WL 1309851 (N.D. Ala. 2013). Presented with these claims, the court is obligated to decide whether, as crime victims, petitioners have asserted valid reasons why the court should vacate or re-open the non-prosecution agreement reached between Epstein and the USAO/SDFL. Whether the evidentiary proofs will entitle them to that relief is a question properly reserved for determination upon a fully

11

developed evidentiary record.<sup>6</sup>

      In sum, the petitioners' standing is expressly conferred by the CVRA, which limits its

protections to "crime victim(s)," defined as "person[s] directly and proximately harmed as a result

of the commission of a Federal offense ..." 18 U.S.C. §3771(e).   The court finds and the government

does not dispute that petitioners are persons "directly and proximately harmed" as the result of

federal offenses allegedly committed by Epstein. This concludes the proper confines of the standing

inquiry.

---

<sup>6</sup>

      Recognizing the need for a developed evidentiary record, the court accordingly rejects the government's related "estoppel" argument as an independent attack on petitioners' constitutional standing to sue.  In this vein, the government argues that the petitioners are legally precluded from seeking rescission of the non-prosecution agreement under any scenario because they had, but forfeited, an opportunity to press for rescission at an early stage in these CVRA proceedings-- *before* Epstein performed his part of the bargain (i.e. before he served jail time on the two state charges).   Due to petitioners' counsel's initial "indecision" on whether to seek rescission, as expressed at an earlier hearing held in August 2008, the government argues that "[e]ven assuming arguendo that the CVRA would allow a victim to seek rescission of a non-prosecution agreement between the government and an uncharged individual, petitioners' action would legally preclude them from obtaining such a remedy in these proceedings."

      Whether petitioners are estopped from seeking vindication of their CVRA conferral rights via the vehicle of rescission or a "re-opening" of the non-prosecution agreement due to an earlier litigation posture assumed in this case-- as the government contends -- implicates a fact-sensitive equitable defense which must be considered in the historical factual context of the entire interface between Epstein, the relevant prosecutorial authorities and the federal offense victims – including an assessment of the allegation of a deliberate conspiracy between Epstein and federal prosecutors to keep the victims in the dark on the pendency of negotiations between Epstein and federal authorities until well after the fact and presentation of the non-prosecution agreement to them as *a fait accompli.* As with threshold questions going to the existence of the alleged CVRA violations, questions pertaining to this equitable defense are properly left for resolution after development of a full evidentiary record.

**B. Ripeness**

The "ripeness doctrine," under which a plaintiff lacks standing if his claim is not ripe, aims to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies. *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013); *Brennan v. Roman Catholic Diocese of Syracuse New York, Inc.*, 322 Fed. Appx. 852, 2009 WL 941765 (11th Cir. 2009)(unpub).

In this case, the government contends that the petitioners' CVRA conferral claims are not constitutionally ripe because petitioners do not allege they have sought and have been denied conferral with all federal prosecutorial authorities having potential jurisdiction over Epstein's federal sex crimes in the Southern District of Florida. Specifically, the government argues that the United States Attorney's Office of the Districts of New Jersey and New York share jurisdiction with the United States Attorney's Office for the Southern District of Florida over federal sex offenses allegedly committed by Epstein in the Southern District of Florida, and that petitioners' CVRA conferral claims are not ripe unless and until all other relevant prosecutorial authorities refuse or fail to confer with them regarding federal offenses chargeable against Epstein.

The court summarily rejects this argument. Petitioners have alleged a violation of their CVRA conferral rights against a federal prosecutorial authority which formally accepted the case against Epstein for prosecution. Whether conferral rights do or do not exist with prosecutorial authorities in some other jurisdiction does not detract from the ripeness of this claim against a local federal prosecutorial authority which did actively investigate potential charges against Epstein in this district and formally resolved those charges with the challenged non-prosecution agreement at

13

issue in this action.

### III. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The government's motion to dismiss for lack of subject matter jurisdiction [DE 119] is **DENIED**.

2. The stay of discovery pending ruling on the government's motion to dismiss entered November 8, 2011 [DE# 123] is **LIFTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 18th day of June, 2013.

Kenneth A. Marra
United States District Judge

cc. All counsel

_ SEALED
✓ NOT SEALED