# Appendix D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA

JANE DOE #1 and JANE DOE #2,

      Petitioners,

vs.

UNITED STATES,

      Respondent.

_____/

**RESPONDENT'S SEALED MOTION TO STAY DISCOVERY PENDING
RULING UPON RESPONDENT'S MOTION TO DISMISS**

Respondent, by and through its undersigned counsel, files its Motion to Stay Discovery Pending Ruling upon Respondent's Motion to Dismiss, and states:

I.      <u>FACTUAL BACKGROUND</u>

On September 26, 2011, the Court issued its omnibus Order on a number of pending motions related to the Petitioners' Crime Victims' Rights Act ("CVRA") Claim (DE99). In that Order, the Court determined that it would allow the Petitioners "the opportunity to conduct *limited* discovery in the form of document requests and requests for admissions from the U.S. Attorney's Office" in order to allow "*limited* factual development." (*Id.* at 11 (emphasis added).) The Court ordered that the discovery should address only "whether the particular [CVRA] rights asserted here attached and, if so, whether the U.S. Attorney's Office violated those rights." (*Id.* at 10.)

On October 3, 2011, Petitioners served on Respondent their First Request for Production to the Government Regarding Information Relevant to Their Pending Action Concern (sic) The Crime

Victims Rights Act. The request for production contains twenty-five lengthy requests for documents, each containing Petitioners' editorial narrative as a preface to stating what documents are being sought, and many with several sub-parts.[1]

A review of Petitioners' requests for documents shows that they go well beyond the two issues for which the Court authorized limited discovery.  For example, Petitioners seek many documents pertaining to the criminal investigation of Jeffrey Epstein, including the prosecution memo and drafts of the indictment prepared in the case, despite the fact that those documents would be covered by the rules governing grand jury secrecy.  *See* Request for Production No. 1.  Petitioners also seek discovery regarding issues that occurred long after the negotiation of the Non-Prosecution Agreement and, in fact, long after the Petitioners filed their action.  For example, in Requests 17 and 18, Petitioners ask for documents and correspondence created as recently as August 2011, approximately three years after the latest of the relevant facts in the case. Petitioners seek documents regarding the handling of the December 10, 2010 letter from petitioners' counsel to the U.S. Attorney, asking for an investigation of various alleged improprieties occurring in the negotiation of the non-prosecution agreement with Epstein (Request for Production No. 17).  This allegation of misconduct was referred to the Department of Justice's Office of Professional Responsibility.  How this complaint was investigated, and what OPR relied upon, has no relevance to the issues pending in this case.  Moreover, some of Petitioners' requests not only seek documents that have no bearing to this CVRA litigation, but they also seek communications that are protected from discovery,

---

[1]The Requests for Production are attached hereto as Exhibit A.  The Respondent disagrees with much of the Petitioners' narrative, including, for example, "As the Government will recall, the victims have asked the Government to stipulate to undisputed facts in this case.  The Government has declined."

including by the attorney-client privilege.

It is plain that petitioners intend to go well beyond the issues relevant to this CVRA lawsuit. The CVRA lawsuit is not a vehicle to question and challenge the manner in which the United States exercised its prosecutorial discretion, or to delve into whether individual members of the U.S. Attorney's Office had engaged in misconduct (Request for Production Nos. 19 and 22).

On November 7, 2011, Respondent filed a Sealed Motion to Dismiss for Lack of Subject Matter Jurisdiction explaining that Petitioners lack standing to pursue the relief they seek and that, because Petitioners still have the opportunity to confer with an attorney for the government and to pursue charges against Jeffrey Epstein in other Districts, their claim is not ripe.[2]  Pursuant to Eleventh Circuit law, Respondent respectfully requests that the Court stay discovery in the matter pending its resolution of that motion, especially where Petitioners' Request for Production is overbroad and unduly burdensome.

II.    DISCOVERY SHOULD BE STAYED PENDING THIS COURT'S RULING UPON RESPONDENT'S MOTION TO DISMISS.

The Motion to Dismiss for Lack of Subject Matter Jurisdiction establishes that the Petitioners lack standing to pursue the relief they seek, that the claims raised in the petition in these proceeding are not ripe, and that these proceedings must therefore be dismissed for lack of subject matter jurisdiction.

Because the question of this Court's subject matter jurisdiction presents a threshold issue, and a lack of subject matter jurisdiction will foreclose any further proceedings in this case, the

---

[2]In particular, the Motion explains that ███████████████████████████████████████ ██████████████████████ the alleged crimes committed by Epstein against Petitioners Jane Doe No. 1 and Jane Doe No. 2 could also be investigated and charged in the Southern District of New York and the District of New Jersey, along with other federal districts.

3

United States requests that this Court stay all proceedings and discovery in this case until after the Court has addressed and resolved the question of the Court's continued jurisdiction over this case. Indeed, any such issue concerning the Court's subject matter jurisdiction must properly be addressed and resolved before this Court takes any further action in the case.  *E.g.*, *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (holding that "the district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue" and that "the district court erred in failing to first address its power to act"); *id.* at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."); *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues."); *see also, e.g.*, *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").  Moreover, resolution of this threshold jurisdictional question before any further action is taken by the Court or required of the parties will prevent the further unnecessary expenditure of time and resources in this case by both the Court and the parties, including significant public resources.  Under such circumstances, a stay of proceedings is warranted and appropriate.  *See, generally*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997) (approving judicial intervention and resolution of claims-dispositive issues before proceedings continue in a case in order to avoid, *inter alia*, "unnecessary costs to the litigants and to the court system" and "damage [to] the integrity and the public's perception of the federal judicial system"); *Gilbert v. Ferry*, 401 F.3d 411, 415-16 (6th Cir. 2005) (approving issuance of stay while subject matter jurisdiction issues were addressed), *modified on other grounds*, 413 F.3d 578

(6th Cir. 2005).

As further explained in *Chudasama*, "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins. Such a dispute always presents a pure legal question; there are no issues of fact because the allegations in the pleading are presumed to be true." *Id.* at 1367 (citation omitted). The *Chudasama* court also noted that "discovery imposes several costs on the litigant from whom discovery is sought." *Id.* The burdens include the time spent searching for and compiling relevant documents, and the time, expense, and aggravation of preparing for and attending depositions. *Id.* Moreover, the party propounding discovery also incurs costs. *Id.*

Respondent bears the burden of demonstrating good cause and reasonableness, in order to obtain a stay of discovery. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006). Respondent submits this Court lacks jurisdiction because petitioners lack constitutional standing because it cannot provide a remedy. As the Eleventh Circuit in *Chudasama* observed, "neither the parties nor the court have any need for discovery before the court rules on the motion." 123 F.3d at 1367 (citation omitted). Such is the situation in the instant case. Respondent respectfully submits that good cause exists to grant a stay of discovery, and it is reasonable for this Court to do so because Respondent's motion to dismiss is both meritorious and potentially case-dispositive.

On November 7, 2011, Respondent's counsel attempted to confer with Brad Edwards,

Petitioners' counsel, regarding Petitioners' position on this motion, but was unable to do so.

DATED:  November 7, 2011                    Respectfully submitted,

                                            WIFREDO A. FERRER
                                            UNITED STATES ATTORNEY

By:  _____

                                            DEXTER A. LEE
                                            Assistant U.S. Attorney
                                            Fla. Bar No. 0936693
                                            A. MARIE VILLAFAÑA
                                            99 N.E. 4th Street
                                            Miami, Florida   33132
                                            (305) 961-9320
                                            Fax:  (305) 530-7139
                                            E-mail:  dexter.lee@usdoj.gov
                                            Attorney for Respondent

## CERTIFICATE OF SERVICE

The undersigned hereby certifies and affirms that a copy of the foregoing was served via

United States Mail this 7th day of November, 2011, upon Counsel for Petitioners Jane Doe #1 and

Jane Doe #2, accompanied by a copy of the November 7, 2011 Sealed Order Granting Government's

Motion for Limited Disclosure of Grand Jury Matter. Pursuant to the Order regarding the disclosure

of Grand Jury Information, a copy was not served upon the proposed intervenors.

                                            _____
                                            DEXTER A. LEE
                                            ASSISTANT U.S. ATTORNEY

6

<u>SERVICE LIST</u>

Jane Does 1 and 2 v. United States,
Case No.  08-80736-CIV-MARRA/JOHNSON
United States District Court, Southern District of Florida


Brad Edwards, Esq.,
The Law Offices of Brad Edwards & Associates, LLC
2028 Harrison Street, Suite 202
Hollywood, Florida   33020
(954) 414-8033
Fax:  (954) 924-1530

Paul G. Cassell
S.J. Quinney College of Law at the
University of Utah
332 S. 1400 E.
Salt Lake City, Utah 84112
(801) 585-5202
Fax: (801) 585-6833
E-mail: casselp@law.utah.edu
Attorneys for Jane Doe # 1 and Jane Doe # 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 08-80736-Civ-Marra/Johnson**

JANE DOE #1 and JANE DOE #2,

    **Plaintiffs**

    **v.**

UNITED STATES,

    **Defendants**

_____/

**JANE DOE #1 AND JANE DOE #2'S FIRST REQUEST FOR PRODUCTION**
**TO THE GOVERNMENT REGARDING INFORMATION RELEVANT TO THEIR**
**PENDING ACTION CONCERN THE CRIME VICTIMS RIGHTS ACT**

COME NOW Jane Doe #1 and Jane Doe #2 ("the victims"), by and through undersigned counsel, and request the defendant United States (hereinafter "the Government") to produce the original or best copy of the items listed herein below for inspection and/or copying, pursuant to the Court's Order (DE #99) directing discovery in this case.

**BACKGROUND**

As the Government will recall, the victims have asked the Government to stipulate to undisputed facts in this case. The Government has declined. Accordingly, the victims filed their Motion for Finding of Violations of the Crime Victims' Rights Act and Request for a Hearing on Appropriate Remedies (DE 48) (the victims' "summary judgment motion") along with a Motion to Have Their Facts Accepted Because of the Government's Failure to Contest Any of the Facts (DE 49).

On September 26, 2011, the Court denied the victims' motion to have their facts accepted (DE 99 at 11). At the same time, however, the Court has ordered discovery to develop the

factual record concerning the summary judgment motion (DE 99 at 11).   The Court reserved ruling on the victims' motion for an order directing the Government not to suppress relevant evidence (DE 99 at 11).

On September 28, 2011, the victims requested that the Government voluntarily provide documents concerning this case.  The Government declined to provide even a single document. Accordingly, the victims now seek the following information relevant to their pending summary judgment motion.

## DISCOVERY REQUESTED

The numbered discovery requests below should all be construed in light of the definitions of terms provided at the end of the requests.

1.   In the victims' currently-pending summary judgment motion, the victims contend that the Government conducted an extensive criminal investigation into Jeffrey Epstein's sexual exploitation of young girls, including Jane Doe #1 and Jane Doe #2 between 2001 and 2008. The victims also contend that the FBI and other federal agencies established that Epstein operated a large criminal enterprise that used paid employees and underlings to repeatedly find and bring minor girls to him.  In deferring ruling on the victims' summary judgment motion, the Court noted that the victims had alleged that the FBI and the U.S. Attorney's Office's "investigation developed a strong case for a federal prosecution against Epstein based on 'overwhelming' evidence."  DE 99 at 2.  The Court, however, also noted that this was an allegation that needed "further factual development."   DE 99 at 2 n.2.  Please provide all documents, correspondence, and other information that supports these victims' allegations, including:

  (a)  the FBI case file on the Epstein case;

  (b)  all documents, correspondence, witness statements, FBI 302s, and other similar information, that the Government collected as part of its case against and/or investigation of Epstein, including any information provided to Epstein or receive from Epstein as part of "discovery" or exchange of information concerning the case;

  (c)  all documents, correspondence, witness statements, and other similar information that the Government received from any federal, state, local, or other law enforcement agency regarding sex offenses committed against children by Jeffrey Epstein;

  (d)  the 82-page prosecution memorandum (a/k/a "pros memo") outlining numerous federal sexual offenses committed by Epstein (and any attachments to that memorandum) and the 53-page draft indictment for numerous federal

offenses that the Government developed in this case and any similar successor or predecessor document; and

(e) Any other prosecution memorandum regarding Jeffrey Epstein (and any documents attached to that memorandum) and all draft federal indictments that were prepared regarding Epstein. Please also provide all documents, correspondence, and other information regarding these prosecution memoranda and the draft federal indictments.

2. Throughout their pending summary judgment motion, the victims contend that they received only limited notifications from the Government (and, in particular, the U.S. Attorney's Office acting through FBI agents) about the plea negotiations that occurred with Jeffrey Epstein and the non-prosecution agreement that was ultimately reached. Please provide all documents, correspondence and other information regarding victim notifications in this case, including (but not limited to):

a) All crime victims notifications (and draft notifications) sent to Jane Doe #1 and Jane Doe #2 and the other identified victims of Epstein's offenses;

b) All correspondence, documents, and other information regarding negotiations between the Government and Epstein's defense attorneys concerning the extent and nature of notifications to be made to Epstein's victims;

c) All correspondence, documents, and other information regarding discussions between the Government, the FBI, the Palm Beach Police Department, the Palm Beach County State Attorney's Office, and Epstein's defense attorneys concerning the extent and nature of notifications to be made to Epstein's victims;

d) All correspondence, documents, and other information regarding "marching orders" that were given to FBI agents regarding the information that they could provide to the victims about the negotiations and the non-prosecution agreement;

e) All correspondence, documents, and other information regarding information that could be given to attorneys for the victims about the non-prosecution agreement, including information about what could be told to Brad Edwards (counsel for Jane Doe #1 and Jane Doe #2) about the non-prosecution agreement;

f) All correspondence, documents, and other information regarding Epstein's awareness that his victims (including Jane Doe #1 and Jane Doe #2) would not be notified of the non-prosecution agreement (and its ultimate presentation in court) or given a chance to confer regarding the plea negotiations he was conducting with the Government.

3. The victims allege in their pending summary judgment motion that the Government negotiated a non-prosecution agreement with Epstein and that among the subjects covered in that non-prosecution agreement was a confidentiality provision that precluded disclosing the agreement to them and to other victims. Please provide all draft plea agreements (both state and federal) and non-prosecution agreements prepared either by attorneys for the Government or by attorneys for Epstein, as well as any correspondence, documents or other information pertaining to these agreements and to any confidentiality provision in these agreements. Please indicate that date on which each of these proposed agreements was drafted and by whom.

4.   The victims allege in their pending summary judgment motion that the Government was interested in finding a place to conclude any plea agreement that would effectively keep Epstein's victims (most of whom resided in or about West Palm Beach) from learning what was happening through the press.   Please provide all correspondence, documents, and other information pertaining to negotiations between the Government and Jeffrey Epstein concerning the court and/or location in which Jeffrey Epstein would enter any guilty plea (including in particular any negotiations concerning concluding the plea in Miami or other location outside of West Palm Beach).

5.   The victims allege in their pending summary judgment motion that part of the plea negotiations with Epstein involved Epstein's efforts to make sure that the victims would be represented in civil cases against Epstein by someone who was not an experienced personal injury lawyer.   Please provide all correspondence, documents, and other information pertaining to negotiations between the Government and Jeffrey Epstein regarding any legal representation of the victims in civil cases against Epstein, including any negotiations about what kinds of representation should be provided in a plea agreement or non-prosecution agreement.

6.   The victims allege in their pending summary judgment that the Government wanted the non-prosecution agreement with Epstein concealed from public view because of the intense public criticism that would have resulted had the agreement been disclosed and/or the possibility that victims would have objected in court and convicted the judge not to accept the agreement. Please provide all correspondence, documents, and other information concerning the Government's and/or Epstein awareness or discussion of this possible public criticism and/or victim objections.

7.   The victims allege in their pending summary judgment motion that the Government was aware that it potentially had obligations under the CVRA to notify the victims about the non-prosecution agreement and any related state court plea agreement.   Please provide all correspondence, documents, and other information regarding the Government's awareness of its potential CVRA obligations in this case and regarding any discussions between the Government and Epstein concerning these CVRA obligations in this case.  This should include any objections raised by Epstein to any notification of the victims (including Jane Doe #1 and Jane Doe #2) and any Government response to these objections.  This should also include any correspondence and information about whether the CVRA applied to the victims.

8.   The victims allege in their pending summary judgment motion that, after Epstein signed the non-prosecution agreement, his performance was delayed while he used his significant social and political connections to lobby the Justice Department to obtain a more favorable plea deal (including lobbying components of the Justice Department in Washington, D.C., including the Child Exploitation Obscenity Section).  Please provide all correspondence, documents, and other information regarding Epstein's lobbying efforts to persuade the Government to give him a more favorable plea arrangement and/or non-prosecution agreement, including efforts by former President Bill Clinton, Andrew Albert Christian Edward (a/k/a Prince Andrew, Duke of York), Harvard Law Professor Alan Dershowitz, Ken Starr, Lillian Sanchez, Jay Lefkowitz, and Roy Black on his behalf.

9.   On January 10, 2008, Jane Doe #1 and Jane Doe #2 received letters from the FBI advising them that "this case is currently under investigation."  Please provide all documents, correspondence, and other information relating to those representations being made by the FBI to Jane Doe #1 and Jane Doe #2, including all information about whether the FBI was aware of the non-prosecution agreement at that time and about whether Epstein was aware of the notifications being made to the victims.

10.  In their pending summary judgment motion, the victims have alleged that the FBI was led to believe that their investigation of Epstein was going to produce a federal criminal prosecution and that the FBI was also misled by the U.S. Attorney's office about the status of the case. Please provide all documents, correspondence, and other information relating to these allegations, including:

    a)   All documents, correspondence, and other information relating to discussions between the U.S. Attorney's Office and the FBI concerning the status of the investigation and the plea discussions with Epstein, as well as what kind of charges would appropriately be filed against Epstein;

    b)   All documents, correspondence, and other information relating to the U.S. Attorney's Office's representations to the FBI and any other state or local law enforcement agency about how this case was being handled; and

    c)   All documents, correspondence, and other information relating to whether the FBI would support the position of the U.S. Attorney's Office that it has not violated the rights of Epstein's victims in this case.

11. In their pending summary judgment motion, the victims have alleged that they had various meetings with Government prosecutors and/or agents (including FBI agents).  Related to these meetings, they also allege that in mid-June 2008, their attorney (Bradley J. Edwards) discussed with an AUSA involved in the case the need for filing federal charges and that the AUSA asked the attorney to send a letter about why such charges should be filed without disclosing the existence of a previously-signed non-prosecution agreement.  The victims further allege that on about July 3, 2008, their attorney sent a letter urging the filing of federal charges against Epstein.  Please provide all documents, correspondence, and other information regarding these meetings with the victims and their legal counsel, including meetings with the victims on October 26, 2007, and January 31, 2008, and the contact with their legal counsel in mid-June 2008.  Please also provide all documents, correspondence, and other information related to contacts between the Government and the National Crime Victim's Law Institute (NCVLI) concerning possible legal representation or other assistance to the victims by NCVLI.

12. In their pending summary judgment motion, the victims allege that in mid-June 2008, their attorney (Bradley J. Edwards) discussed with an AUSA involved in the case the need for filing federal charges and that the AUSA asked the attorney to send a letter about why such charges should be filed without disclosing the existence of the non-prosecution agreement.  The victims further allege that on about July 3, 2008, their attorney sent a letter urging the filing of federal charges against Epstein. Please provide all documents, correspondence, and other information regarding these contacts, including e-mails and correspondence generated as a result of the attorney's inquiry and any action that was taken in response to the letter that he sent.

13. In their pending summary judgment motion, the victims allege that on or about June 27, 2008, the Government learned that Epstein would be entering his plea to state charges on about June 30, 2008.  Please provide all documents, correspondence, and information regarding:

    a)  How the Government Office learned that the plea was going to be entered;

    b)  How the Government notified victims about the entry of the guilty plea; and

    c)  The contents of the notifications given to the victims about the entry of the guilty, including whether the victims were informed about the non-prosecution agreement and about whether the entry of this plea would preclude prosecution of crimes Epstein had committed against them.

14. In their pending summary judgment motion, the victims have alleged that the Government and Epstein worked together to keep the existence of the non-prosecution agreement secret, including declining comment about the existence of such an agreement when asked about it when his guilty plea in state court became public knowledge.  Please provide all documents, correspondence, and information about the Government's and Epstein's efforts to keep the existence of the non-prosecution agreement secret, including all e-mails and correspondence about "declining comment" or similar devices to keep the non-prosecution agreement secret.

15. In their pending summary judgment motion, the victims allege that at all materials times, it would have been practical and feasible for the Government to have kept the victims informed about the discussions concerning the non-prosecution agreement.  The victims further allege that on about July 9, 2008, the U.S. Attorney's Office provided notice to Jane Doe #1 of some of the terms of the agreement between it and Jeffrey Epstein.  The victims also received a "corrected" notification letter on about September 3, 2008.  Please provide all documents, correspondence, and other information about these notifications, including:

    a)  any information about whether these notifications should or should not include some mention of the non-prosecution agreement;

    b)  any information about the contents of these notifications;

    c)  any communications between the Government and Epstein's counsel regarding what the notifications should contain, including any communication on or about July 9, 2008, objecting to parts of the draft;

    d)  Any communications between the Government and Epstein's counsel about which parts of the non-prosecution agreement were operative (including whether Part 3 was operative);

    e)  Any communications between the Government and Epstein's counsel regarding the September 3, 2008, corrected notification letter; and

    f)  any documents, correspondence, and other information regarding the practicality and feasibility of providing notice to the victims of the existence of the agreement, which shall include any correspondence related to meeting with the victims or notifying them in any way of the non-prosecution agreement.

16. In their pending summary judgment motion, the victims allege that one of the senior prosecutors in the U.S. Attorney's Office joined Epstein's payroll shortly after important decisions were made limiting Epstein's criminal liability – and improperly represented people close to Epstein.  In light of this fact, the peculiar nature of the non-prosecution agreement

reached in this case, and other information in the possession of the victims, it is also possible that other improper relationships exist between Government agents and Epstein.  Please provide any documents, correspondence, and other information regarding the possibility of any improper relationship, including:

    a) Attorney Bruce Reinhart's involvement in and/or awareness of any aspect of the Government's criminal investigation and/or possible prosecution/non-prosecution of Epstein;

    b) Attorney Bruce Reinhart's involvement in and/or awareness of the Government's interest in any witness, subject, or target of the Epstein investigation, including Sarah Kellen, Ghislaine Maxwell, Nadia Marcinkova, Lesley Groff, ██████, Louella Ruboyo, Larry Morrison, Larry Visoki, David Rogers, William Hammond, and Robert Roxburgh;

    c) All documents, correspondence, and other information reflecting telephone calls (including telephone logs and telephone billing statements) made by or received by Reinhart from Jeffrey Epstein, the Florida Science Foundation, Jack Goldberger, Alan Dersowitz, Roy Black, Ken Starr, Lillian Sanchez, and any other person involved with the criminal defense of Jeffrey Epstein, including telephone calls to and from Jack Goldberger and the Florida Science Foundation;

    d) All documents, correspondence, and other information (including, for example, e-mails) that were sent to, copied to, or sent by Reinhart in which the word "Epstein," "Kellen, "Ruboyo," "Morrison," "Visoki," "Rogers," "Hammond," Roxburgh," "Villafana, " "Florida Science Foundation," "Starr," "Black," "Goldberger," "Jeffrey," "Australian," "Lewis," "Sanchez," "358 El Brillo Way" appears and which are connected to or related to Jeffrey Epstein, Jack Goldberger, or the Jeffrey Epstein investigation or prosecution;

    e) All documents, correspondence, and other information (including for example e-mails) of a similar nature that indicate that <u>any</u> other Government prosecutor has represented (or discussed representing) a person or entity related to Jeffrey Epstein or has received business or funds from a person or entity related to Jeffrey Epstein;

    f) All documents, correspondence, and other information that indicate or suggest that <u>any</u> Government prosecutor or investigator (including state and local prosecutor or investigator) has had any form of business, social, personal, or other relationship with Jeffrey Epstein or a person or entity related to Jeffrey Epstein; and

    g) All documents, correspondence, and other information that indicate or suggest that <u>any</u> Government prosecutor or investigator (including state and local prosecutor or investigator) would receive anything of value, directly or indirectly from Jeffrey Epstein or a person or entity related to Jeffrey Epstein (including any charitable contributions to be made by Epstein to any entity).

17. In December 2010, the victims sent a letter to the U.S. Attorney's Office for the Southern District of Florida, requesting that the Office investigate whether "improper influences" were brought to bear during the negotiations involving the possible prosecution (and ultimately the non-prosecution) of Jeffrey Epstein.  That letter led to a reference of the matter to the Office of

Professional Responsibility (OPR) in the Justice Department in Washington, D.C., which began some kind of an inquiry/investigation.  Please provide:

    a) All documents, correspondence, and other information collected by the Office of Professional Responsibility (OPR) and any other component of the Justice Department (including the FBI) in response to the victims' letter;

    b) All documents, correspondence, witness statements, and other information collected as part of OPR's inquiry/investigation;

    c) All documents, correspondence, witness statements and other information collected as part of any criminal inquiry/investigation that was initiated as a result of that letter, including any inquiry/investigation into criminal conflict of interest violations (such as 18 U.S.C. § 205 and § 207);

    d) All documents, correspondence, witness statements, and other information collected by any federal investigative agency that was triggered by OPR's inquiry/investigation, including any FBI inquiry/investigation regarding any improper influences or criminal or ethical violations that may have been committed by government attorneys during the handling of the Epstein investigation and/or prosecution;

    e) Any documents, correspondence, and other information regarding the accuracy or inaccuracy of Bruce Reinhart's sworn statements (found in DE 79-1 at p. 31) that he "did not participate in any way in the Office's investigation of Epstein;" that he "was not involved in any of the Office's decisionmaking with regard to the Epstein matter;" and that he "never learned any confidential, non-public information about the Epstein matter;"

    f) Any documents, correspondence, or other information regarding the circumstances that lead OPR to send a letter to the victims on May 6, 2011, indicating that they would not provide any further assistance to the victims in connection with their allegations that improper influences were brought to bear on the Epstein case;

    g) Any document, correspondence, e-mail, memoranda, or other information prepared by OPR, the FBI, or other Justice Department Component as a result of or following up on the victims' December 2010 letter concerning the Epstein case; and

    h) Any documents, correspondence, or other information that OPR has collected or obtained regarding the Epstein investigation and/or prosecution.

18. At a couple points during the prosecution of this action, including in approximately December 2010 and most recently after the August 2011 hearing, the Justice Department in Washington, D.C., discussed or determined that the U.S. Attorney's Office for the Southern District of Florida (USAO SDFL) was "conflicted out", or may be conflicted out, of handling various issues related to the Epstein case because it suffered from a conflict of interest.  The Justice Department accordingly sent various issues related to the Epstein case (and, on information and belief, issues related to Jane Doe #1 and Jane Doe #2) to the Department of Justice and to a United States Attorney's Office in another District.  Please provide all documents, correspondence, and other information regarding the potential conflicts of interest that the Justice Department discussed or determined existed for the USAO SDFL, as well as any referral that was made to Main Justice or to any other District, including any documents that

were transmitted to any other District regarding the conflict and regarding what was to be investigated.

19. In March 2011, former U.S. Attorney Alexander Acosta sent a three-page letter to the news media in which he claimed that when Government attorneys began investigating Epstein, Epstein launched "a yearlong assault on the prosecution and the prosecutors." Shortly thereafter, Jeffrey Epstein's defense attorney Roy Black sent a responsive letter to Alexander Acost's letter to the news media in which he claimed that he did not pry into the personal lives of prosecutors but merely pointed out misconduct and over-reaching by certain people involved in the Epstein investigation. Please provide all documents, correspondence and other information that supports or contradicts Acosta's allegations in his letter, including any information that the Justice Department received from Epstein attacking the prosecutors and investigators working on the case. Please also provides all documents, correspondence, information about misconduct and over-reaching that was provided by Black and that the Government found that supported or contradicted such allegations.

20. In their pending summary judgment motion, the victims have alleged that Epstein's guilty plea to state charges was intended to be the consummation of a non-prosecution agreement that barred prosecution of federal offenses committed against them. They have further alleged that Epstein entered such a guilty plea on or about June 30, 2008. Please provide all documents, correspondence, and other information between the Government and state and local prosecutors and police agencies (including The Palm Beach Police Department and Palm Beach State Attorney's Office) regarding the Epstein investigation and ultimate Epstein plea.

21. In their pending summary judgment motion, the victims have alleged that correspondence in the possession of the Government will support their claims. Please provide all documents, correspondence, and other information between Government attorneys/officials (including both federal and state prosecutors) and attorneys for Jeffrey Epstein (or non-attorney acting on Epstein's behalf) relating to (1) negotiations involving the possible prosecution (and ultimately the non-prosecution) by federal or state agencies for sex offenses, including sex offenses committed against Jane Doe #1 and Jane Doe #2, (2) Epstein's entry of state guilty pleas for related sex offenses; (3) a non-prosecution agreement entered into between Epstein and the Government that barred his prosecution for offenses committed against Jane Doe #1 and Jane Doe #2; (4) the fulfillment of Epstein's and/or the Government's obligations under the non-prosecution agreement and/or the state guilty pleas Epstein entered; (5) any work release or other conditional release of Epstein from confinement; (6) any designation of Epstein as a sex offender or restrictions on him contacting victims of his offenses (including Jane Doe #1 and Jane Doe #2); and (7) any termination of supervision or parole of Epstein. This information should include unredacted e-mails, letters, and correspondence of any type between government prosecutors working on the case (including, but not limited to, federal prosecutors Alexander Acosta, Jeffrey H. Sloman, Matt Menchel, Andy Lourie, Ann Marie Villafana, Dexter Lee, and Bruce Reinhart and state prosecutors Dahlia Weiss, Lana Belolovek, and others involved in the Epstein investigation) and defense attorneys representing Epstein (including, but not limited to, Roy Black, Jay Lefkowitz, Jack Goldberger, Martin Weinberg, Gerald Lefcourt, Michael Tien, Guy Lewis, Lilly Ann Sanchez, Ken Starr, Alan Dershowitz) and agents acting in support of Epstein (including, but not limited to former President Bill Clinton and Andrew Albert Christian Edward

(a/k/a Prince Andrew, Duke of York).  This should also include letters of recommendation or similar communications submitted to any Government official vouching for or providing support for Jeffrey Epstein.

22. As you know, throughout their pending summary judgment motion, the victims have alleged that they were not properly notified of plea negotiations with Jeffrey Epstein and were denied their right to confer by the Government and that instead the Government gave Epstein generous concessions through the plea negotiations.  Please provide any documents, correspondence and other information that reflects or discusses any consideration of any type that Epstein had previously provided or offered to provide to the Government (or any individual within the Government, in either his official or private capacity) or any person previously employed by the Government and involved in the Epstein investigation or prosecution.  The documents, correspondence, and other information should include any information discussing:

     (a) Any donation or offer to donate, directly or indirectly, either funds, services, or any other valuable consideration to any person or entity;

     (b) Any offer to assist, directly or indirectly, any person to obtain employment, business opportunities, business clients, real estate, office properties;

     (c) Any offer to assist the Government or law enforcement agencies in the investigation or prosecution of any federal or state criminal offense;

     (d) Any consideration that Epstein had provided to Government or law enforcement agencies in the past; and

     (e) Any other consideration of any type that Epstein offered to provide or had provided in the past that could provide a basis for the Government extending Epstein a more generous or lenient plea bargain or non-prosecution agreement than would be received by any other similarly situated child abuse suspect.

23. The Crime Victims' Rights Act, 18 U.S.C. § 3771(c)(1), requires the Government to use its "best efforts" to protect the rights of crime victims.  Please provide all documents, correspondence, and other information that will assist Jane Doe #1 and Jane Doe #2 in protecting their rights under the CVRA, including all documents, correspondence, and other information that the Government previously identified as being helpful to the victims but refused to provide based on its legal interpretation (now rejected by the Court) that the CVRA did not apply to this case because no indictment was filed.

24. In the course of its investigation of Epstein and negotiations with Epstein, the Government (i.e., federal investigators and prosecutors) shared documents, correspondence, and information with other persons outside the federal government, including state and local prosecuting and law enforcement agencies, prosecuting and law enforcement agencies in other countries, Epstein's legal counsel, legal counsel for crime victims, and other entities.  Please provide all documents, correspondence, and other information that the Government shared with any entity or person outside the federal government, including all correspondence (including e-mails) with those entities or persons.

25.  After the victims had made extensive efforts to try and reach a stipulated set of facts in this case, in March 2011 the Government refused to negotiate about such facts.  Accordingly, at that time the victims filed various motions to obtain evidence in this case and, at the same time,

the victims voluntarily made all initial disclosures on their part that are required by Federal Rule of Civil Procedure 26(a)(1).  Please provide all initial disclosures required by the Federal Rules of Civil Procedure, including all disclosures required by Rule 26(a)(1).

## DEFINITIONS

For the purpose of construing the foregoing discvery requests, the following terms are defined:

The term "documents" means and includes, without limitation, all writings of any kind, including the originals and all non-identical copies or drafts, whether different from the original by reason of any notation made on such copy or draft or otherwise including, without limitation, correspondence, memoranda, notes, diaries, statistics, letters, e-mails, electronic computer files, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice communications, offers, notations of any sort of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer print-outs, teletypes, facsimiles, invoices, work sheets and all drafts, alterations, modifications, changes, and amendments of any of the foregoing, graphic or aural writs, records or representations of any kind including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, mechanical or electric records or representations of any kind including, without limitation, tapes, cassettes and disc recordings, and writings and printed material of every kind.

The term "correspondence" means any tangible object that conveys information or memorializes information that was conveyed in tangible or oral form including, but not limited to, writings, letters, memoranda, reports, notes, e-mails, telephone logs, telephone billing information, telephone recordings, and interoffice communications.

The term "Epstein's victims" means any person that the Government identified as a possible victim of a sex offense committed by Jeffrey Epstein, including Jane Doe #1, Jane Doe #2, all victims identified in attachment to the non-prosecution agreement entered into by Epstein, and another person that the Government investigated as a possible victim of Epstein's sex offenses.

The term "Government" means the federal government, including all employees of and components of the United States Department of Justice (such as, the Office of the Attorney General, the Office of the Deputy Attorney General, the Criminal Divisions, the Office of Professional Responsibility, the Child Exploitation and Obscenity Section, the U.S. Attorney's Offices for the Southern District and Middle District of Florida, and the Federal Bureau of Investigation) and other federal government agencies with law enforcement responsibilities related to the Epstein case (such as the Internal Revenue Service).  This request for production seeks all documents, correspondence, and other information held by all of these entities, including all employees of and components of the Justice Department that worked on or were in any way involved the Epstein investigation and/or that possess information relevant to the victims' claims.

The term "including" means containing within the request, but not limiting the request.

The term "witness statement" means any document or other recording in any form (including oral form) reflecting, recording, or otherwise memorializing a statement made or information conveyed by a potential witness, including for example FBI 302's.  The term includes information collected by any law enforcement, prosecuting or government agency, including all federal, state, and local law enforcement agencies located in Washington, D.C., or Florida.

## NO GRAND JURY TRANSCRIPTS SOUGHT

If any of the foregoing requests cover grand jury transcripts, do not provide the grand jury transcript.  If any of the foregoing requests include documents that quote directly from a grand jury transcript, please redact that particular quotation.

## PRIVILEGE LOG

If you believe that any document, correspondence, or other information requested in this request is subject to a privilege and if you intend to assert that privilege, please provide a "privilege log" consistent with Local Rule 26.1(g), including a description a document that is consistent with Local Rule 26.1(g)(3)(B).  Your privilege log should include the type of document, general subject matter of the document, date of the document, and author and addressee of the document or correspondence.

## REDUCING UNDUE BURDEN

If you believe that complying with any of the foregoing requests would be unduly burdensome, please contact victims counsel – Bradley J. Edwards – to discuss ways to reduce any such burden.

DATED: October 3, 2011

Respectfully Submitted,

s/ Bradley J. Edwards
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
Florida Bar No.: 542075
E-mail: brad@pathtojustice.com

*and*

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
  University of Utah
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

Attorneys for Jane Doe #1 and Jane Doe #2

## CERTIFICATE OF SERVICE

The foregoing document was served on October 3, 2011, on the following via US Mail and E-Mail Transmission:

Dexter Lee
A. Marie Villafaña
Assistant U.S. Attorneys
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov
Attorneys for the Government

Roy Black, Esq.
Jackie Perczek, Esq.
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, FL 33131
RBlack@royblack.com
Attorneys for Proposed Intervenors Roy Black et al.

Respectfully Submitted,

*S/ Bradley J. Edwards*
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

IN RE:

**GRAND JURY PROCEEDINGS**
**FEDERAL GRAND JURY 05-02(WPB) AND**
**FEDERAL GRAND JURY 07-103(WPB)**
_____/

**Sealed Order Granting**
**Government's Motion for Limited Disclosure of Grand Jury Matter**

# UNDER SEAL



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:

**GRAND JURY PROCEEDINGS**
**FEDERAL GRAND JURY 05-02(WPB) AND**
**FEDERAL GRAND JURY 07-103(WPB)**
_____/

### Sealed Order Granting
### Government's Motion for Limited Disclosure of Grand Jury Matter

This cause comes before the Court on the Government's *Sealed Ex Parte Motion for Limited Disclosure of Grand Jury Matter Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i)*. After careful consideration of the grounds raised in said motions, and the Court being otherwise advised in the premises,

IT IS HEREBY ORDERED that the Government's *Motion for Limited Disclosure of Grand Jury Matter Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i)* is GRANTED. The Government is authorized to disclose in *Jane Doe No. 1 and Jane Doe No. 2 v. United States*, Case No. 08-80736-Civ-Marra (S.D. Fla.),



IT IS FURTHER ORDERED that disclosure pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i) shall be conditioned on the following:

(1) the disclosure of the aforementioned grand jury information shall be limited to filings made under seal in Case No. 08-80736-Civ-Marra;

(2) the service of filings containing the aforementioned grand jury information shall be limited to counsel for Petitioners Jane Doe No. 1 and Jane Doe No. 2 and for the government in Case No. 08-80736-Civ-Marra, and shall be accompanied by a copy of this Order; and

(3) further dissemination by any person or entity receiving disclosure of the grand jury information authorized to be disclosed by this Order shall be limited to the individual Petitioners in Case No. 08-80736-Civ-Marra, and any dissemination of such grand jury information shall be accompanied by a copy of this Order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this ____7____ day of November, 2011.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE