# Appendix F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA/JOHNSON

JANE DOE #1 AND JANE DOE #2,

      Petitioners,

vs.

UNITED STATES,

      Respondent.

_____/

### UNITED STATES' SEALED REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In their *Response to Government's Sealed Motion to Dismiss for Lack of Subject Matter Jurisdiction* (DE 127) and their *Sealed Supplemental Response Regarding Remedies* ("Sealed Resp."), Petitioners attempt to establish both their standing in these proceedings and this Court's subject matter jurisdiction over the proceedings. Notwithstanding Petitioners' arguments, however, this Court lacks subject matter jurisdiction over these proceedings because Petitioners lack Article III standing and because the claims raised by Petitioners are not constitutionally ripe.

**I.      The Claims Raised in the Petition Must Be Dismissed for Lack of Subject Matter Jurisdiction Because the Petitioners Lack Standing to Bring Those Claims.**

In their responses to the government's motion to dismiss, Petitioners attempt to establish standing by arguing that the Non-Prosecution Agreement is an illegal agreement that can be set aside in these CVRA proceedings and by asserting, at the eleventh hour, that they are entitled to nearly two dozen additional civil remedies for the claimed violations of the CVRA. Petitioners' efforts, however, are unavailing. Petitioners' claimed CVRA violations/injuries cannot be redressed by the remedies they seek, Petitioners accordingly lack standing to pursue their CVRA

1

claims, and these proceedings must therefore be dismissed for lack of subject matter jurisdiction.[1]  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81, 185 (2000); *Florida Wildlife Federation, Inc. v. South Florida Water Management Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011); *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1161 (11th Cir. 2007); *Scott v. Taylor*, 470 F.3d 1014, 1018 (11th Cir. 2006); *National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003).

**A.    *This Court Must Address the Subject Matter Jurisdiction Issues Raised by the Government Before Allowing These Proceedings to Continue***

As a threshold matter, Petitioners have argued that this Court cannot dismiss these proceedings at this time for lack of standing because the standing issues raised by the government are intertwined with the ultimate merits of their CVRA claims.  DE 127 at 7-8.  That is not so.  Although the government disputes Petitioners' claims that the government's actions violated the CVRA,[2] the government's standing arguments have "assum[ed] *arguendo* that

---

[1]  Petitioners nonetheless contend that, even if no remedy is available to them, they can circumvent constitutional standing requirements by invoking the "capable of repetition, yet evading review" exception for mootness.  DE 127 at 18.  However, "if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 170 (2000).  Moreover, the "capable of repetition, yet evading review" exception is inapplicable in this case because it only applies "where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna,* 523 U.S. 1, 17 (1998)).  Neither of those circumstances exists here.

[2]  For example, the United States has disputed throughout these proceedings that the CVRA grants victims a statutory right to confer with the attorney for the government before federal criminal charges are instituted, and it further contends that Petitioners' claims that they were denied timely notice of court proceedings as required by 18 U.S.C. § 3771(a)(2) are frivolous; the only court proceedings that have taken place in connection with Epstein's criminal offenses were state court proceedings involving state criminal offenses, for which the CVRA does not

Petitioners' rights under the CVRA were violated when Epstein and the USAO-SDFL entered into the Non-Prosecution Agreement." Mot. to Dismiss at 3. Indeed, the basis of the government's motion is that, even assuming that the CVRA was violated as Petitioners claim, Petitioners lack standing to seek redress for those violations, and that these proceedings must accordingly be dismissed for lack of subject matter jurisdiction.

Under these circumstances, this Court is obligated to address and resolve the question of whether it has subject matter jurisdiction before proceeding any further with this matter. *E.g.*, *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (holding that "the district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue" and that "the district court erred in failing to first address its power to act"); *id.* at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."); *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues."); *see also, e.g.*, *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

---

require notice, *see, e.g.*, 18 U.S.C. § 3771(a)(2), (b)(1); *cf.* 18 U.S.C. § 3771(a)(2)(A), (C) (curtailing notice rights and obligations even for *federal* proceedings when they involve a state crime); *United States v. Guevara-Toloso*, 2005 WL 1210982, *2 (E.D.N.Y. 2005) (recognizing that the CVRA does not require notice of public court proceedings based on violations of state criminal law), and, in any event, AUSA Villafaña provided Petitioners with pre-hearing notice of those state proceeding – in which Epstein pled guilty to state criminal charges – upon the government's learning that the state plea hearing had been scheduled, DE 14 at ¶ 11; DE 48 at ¶ 41.

**B.**     *Petitioners Lack Standing to Seek Rescission of the Non-Prosecution Agreement Between the USAO-SDFL and Epstein*

In an effort to establish standing and circumvent the requirements of *Santobello v. New York*, 404 U.S. 257, 262 (1971), and its progeny, Petitioners argue that the Non-Prosecution Agreement between the USAO-SDFL and Epstein is an illegal contract that is void and cannot be enforced by the courts.  Petitioners, however, do not actually contend that any term or promise in the Non-Prosecution Agreement is illegal or prohibited by law – and they certainly cite no law establishing that any provision of the agreement is illegal.  Indeed, Petitioners have acknowledged, and this Court has also recognized, that the USAO-SDFL and Epstein can legally enter into an agreement containing the terms and promises in the Non-Prosecution Agreement. *See, e.g.*, DE 15 (July 11, 2008 Hr'g Tr.) at 22 (setting forth Petitioners' agreement that "it is within [the government's] discretion" to "decide on [its] own that . . . the agreement was fair after [the government] ha[s] talked with the victims"); *see also id.* at 6-7 (Court's recognition that government "can agree to prosecute or it can agree to going forward with the agreement it had already reached and after consulting [Petitioners] and in taking into consideration [Petitioners'] views, decide to go forward anyway"); DE 99 at 4 (citing 18 U.S.C. § 3771(d)(6) and recognizing that CVRA does not constrict prosecutorial discretion regarding charging and handling of criminal matters).

Because the Non-Prosecution Agreement in this matter does not contain terms or promises prohibited by law (and is therefore not an illegal agreement), it is legally distinct from the "illegal agreements" in the cases cited by Petitioners. S*ee* DE 127 at 8-11; DE 48 at 37-39. The plea agreements in the cases relied upon by Petitioners contained (or were challenged as containing) unlawful terms or promises that, to be performed, would have required the respective courts to impose legally prohibited sentences; such unlawful terms/promises, unlike the lawful

4

terms in the Non-Prosecution Agreement, could not be enforced.  *See State v. Garcia*, 582 N.W.2d 879, 881-83 (Minn. 1998) (plea agreement promised a sentence that did not contain a statutorily-required 10-year conditional release term and would have required court imposition of an unlawful sentence); *State v. Wall*, 348 N.C. 671, 676, 502 S.E.2d 585, 588 (1998) (holding that court could not impose a concurrent sentence that was prohibited by law despite fact that defense and prosecution understood plea agreement to promise such a concurrent sentence); *Ex parte Rich*, 194 S.W.3d 508, 514-15 (Tex. Crim. App. 2006) (holding that court could not impose a sentence prohibited by law despite plea agreement which called for a sentence that "exceed[ed] the statutory range of punishment"); *State v. Mazzone*, 212 W.Va. 368, 371, 374, 572 S.E.2d 891, 894, 897 (2002) (holding that court could not enforce plea agreement that called for court to unlawfully sentence the defendant by treating two misdemeanor offenses as felony offenses); *see also United States v. Walker*, 98 F.3d 944, 946-47 (7th Cir. 1996) (concluding that judge was not compelled to impose a concurrent sentence where judge had erroneously represented at defendant's arraignment that any sentence in the case would be concurrent with a sentence that the defendant was already serving – a legally erroneous construction of 18 U.S.C. § 3858(b) – and where rescission "would [have] restore[d] the defendant to the approximate status quo ante"); *Craig v. People*, 986 P.2d 951, 959-60, 961-93 (Colo. 1999) (holding that plea agreement made no unlawful promises, but concluding that court would not have been required to impose an unlawful sentence without a statutorily-required parole term if the plea agreement had promised such an unlawful sentence).

Apparently recognizing that the Non-Prosecution Agreement and its terms are not unlawful, Petitioners instead claim that the agreement is illegal because it "was arrived at illegally" when the USAO-SDFL allegedly acted in violation of 18 U.S.C. § 3771 by failing to

5

confer with Petitioners about the Non-Prosecution Agreement before entering into that agreement with Epstein. DE 127 at 8; *see also id.* at 9 (contending that agreement was "negotiated . . . in violation of the victims' rights"). Even assuming *arguendo* that § 3771 was violated when the USAO-SDFL and Epstein entered into the Non-Prosecution Agreement, any such failing in the manner in which the USAO-SDFL and Epstein "arrived at" the Non-Prosecution Agreement would not make the otherwise lawful agreement – which the government had the prosecutorial discretion to negotiate and enter, *see* 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.") – illegal or void *ab initio*. Indeed, if § 3771 had made the agreement illegal and void *ab initio*, then Epstein would never have been legally required to abide by the otherwise lawful terms of the Non-Prosecution Agreement. Yet, § 3771 clearly would not have provided Epstein any relief from his obligations under the Non-Prosecution Agreement. On the contrary, the CVRA makes clear that "[a] person accused of the crime may not obtain any form of relief" pursuant to the Act. 18 U.S.C. § 3771(d)(1). Thus, at most, a government failure to comply with § 3771 when entering into an otherwise legal agreement might arguably make that agreement *voidable*, like when there is fraud or duress in the making of a contract, but it would not make the agreement *void*.[3]

---

[3]   "A void contract is no contract at all; it binds no one and is a mere nullity. . . . A voidable contract, on the other hand, is one to which one or more of the parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract or to extinguish the power of avoidance by ratifying the contract." 17A Am. Jur. 2d Contracts § 10; *see also* Restatement (Second) of Contracts § 7 & cmts. a, e. Because the Petitioners' claims and noncompliance with the CVRA would at most make the Non-Prosecution Agreement voidable, not void, the cases cited by Petitioners concerning void agreements, *see* DE 127 at 12, are inapposite.

A voidable agreement, however, is not automatically subject to rescission. On the contrary, contract law – which governs the Non-Prosecution Agreement[4] – has long established that the actions of a party seeking the rescission or cancellation of a contract may bar such relief:[5]

> Where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.

*Hendricks v. Stark*, 99 Fla. 277, 285, 126 So. 293, 296-97 (Fla. 1930) (internal quotation omitted); *see, e.g.*, *United States v. Baird*, 218 F.3d 221, 230-31 (3d Cir. 2000) (recognizing that "'[u]ntil the party who has the power of avoidance elects to exercise it, the contract remains intact. Moreover, even though one of the parties has the power of avoidance, he may extinguish that power by ratification of the contract.'") (quoting John E. Murray, Jr., *Murray on Contracts* § 17, at 31 (3d ed. 1990)); *AVVA-BC, LLC v. Amiel*, 25 So. 3d 7, 11 (Fla. 3d DCA 2009) ("[W]here a party seeking rescission has discovered grounds for rescinding an agreement and either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or accepts the benefits thereof, he will be held to have waived his right to

---

[4]   "Nonprosecution agreements, like plea bargains, are contractual in nature, and are therefore interpreted in accordance with general principles of contract law." *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998); *see also Taylor v. Singletary*, 148 F.3d 1276, 1284 (11th Cir. 1998) ("When enforcing an immunity agreement, we look to the terms of the agreement itself, determined by applying common law contractual principles."); *United States v. Thompson*, 25 F.3d 1558, 1562 (11th Cir. 1994) ("In determining the extent of immunity afforded a defendant under an immunity agreement, a court should apply basic principles of contract law").

[5]   Ordinarily, rescission of an agreement is a remedy reserved to the parties to that agreement or those in contractual privity with them. *See, e.g.*, *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (holding that "the first requirement of a suit for rescission under Florida law" is "that the parties to the lawsuit lie in contractual privity").

rescind.") (reversing judgment rescinding agreement) (quotation omitted); Restatement (Second) of Contracts § 380(1)-(2) (power to avoid, *i.e.*, to rescind or cancel, a voidable contract is lost if party seeking to avoid contract "manifests to the other party his intention to affirm [the contract] or acts with respect to anything that he has received in a manner inconsistent with disaffirmance"); Restatement (Second) of Contracts § 380 cmt. a ("A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract.  Such action is known as 'affirmance' and has the effect of ratifying the contract."); 17A Am. Jur. 2d Contracts § 11 ("The defect in a voidable contract may be cured by ratification by the party at whose instance it might have been avoided, and ratification may be express or implied by the conduct of the parties.") (footnotes omitted).

When a party delays in seeking rescission, especially when the delay prevents restoration of the status quo, or when the party treats the agreement as binding or seeks a benefit or performance under that agreement, that party is thereafter foreclosed from seeking rescission of the agreement.  *See, e.g.*, *Abbadessa v. Moore Business Forms, Inc.*, 987 F.2d 18, 23-24 (1st Cir. 1993) (holding that voidable contacts could not be rescinded where parties seeking rescission on basis of duress treated agreements as binding and sought benefits pursuant to the agreements) (applying New Hampshire law); *Diffenderfer v. Heublein, Inc.*, 412 F.2d 184, 188-89 (8th Cir. 1969) (concluding that contract, even if procured by duress, was ratified by actions of alleged victim who later acquiesced in a course of action under contract); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) (concluding that "[a] prerequisite to rescission is placing the other party in status quo" and that "a party who accepts the proceeds and benefits of a contract remains subject to the burdens the contract places upon him") (internal quotation omitted); Restatement (Second) of Contracts § 380; *see also Barnette v. Wells Fargo*

8

*Nevada Nat. Bank of San Francisco*, 270 U.S. 438, 444-46 (1926) (holding that cancellation of conveyance was precluded by delay in seeking that remedy and affirmative action evincing election to allow agreement to stand); *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."); *Rood Co. v. Bd. of Public Instruction of Dade County*, 102 So. 2d 139, 141-42 (Fla. 1958) (holding that rescission/cancellation of an agreement is not available as a remedy where it is not sought promptly, the agreement is ratified, or benefits are sought or accepted pursuant to the agreement); 17A Am. Jur. 2d Contracts § 11 ("If a person wants to rely upon the invalidity of a voidable contract, he or she must disclaim it and refuse to permit anything to be done under it to the extent it concerns him or her."); 25 Am. Jur. 2d Duress and Undue Influence § 31 (contract that is voidable due to duress is ratified if, *inter alia*, the victim delays in seeking relief from the contract, "affirmatively acknowledges the validity of the contract," or "allow[s] other persons to act on the contract in such a way as would be to their detriment if the contract was not upheld"); *cf. Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1355 (11th Cir. 2011) ("'Ratification of an agreement occurs where a person expressly or impliedly adopts an act or contract entered into in his or her behalf by another without authority.'") (quoting *Deutsche Credit Corp. v. Peninger,* 603 So.2d 57, 58 (Fla. 5th DCA 1992) (citations omitted)).

The actions that Petitioners have taken since learning of the Non-Prosecution Agreement legally preclude them from seeking rescission of the Non-Prosecution Agreement.  When Petitioners had the opportunity to address rescission of the Non-Prosecution Agreement before the terms of that agreement were performed – that is, before Epstein served the state court sentence that was induced by the agreement – they withdrew their request that this Court treat the

matter as an emergency requiring expedited resolution.  *See* DE 15 at 25-26; DE 99 at 4 ("Plaintiffs explained that their petition did not present an emergency and that therefore an immediate resolution was not necessary.").  Then, rather than unqualifiedly seeking rescission or cancellation of the Non-Prosecution Agreement because of asserted violations of the CVRA, Petitioners instead opted to evaluate the Non-Prosecution Agreement and its potential benefits to them, as well as the possibility that they could make use of the agreement in their planned civil lawsuits against Epstein.  *See* DE 27 (Aug. 14, 2008 Hr'g Tr.) at 6 ("[I]f the agreement was designed to protect these victims in a criminal as well as a civil context, and we are going to be filing civil cases against Mr. Epstein, and this agreement, undoubtedly it will play a big role in the amount of protection the victims have been allotted, as well as the course of action in the civil cases."); *id.* at 18 (announcing that Petitioners would be "evaluat[ing] the effect of th[e] [Non-Prosecution] agreement and whether or not we're going to continue to pursue this case").  Indeed, Petitioners explained to the Court that rescission of the Non-Prosecution Agreement would likely not serve their best interests.  *See id.* at 4 ("[B]ecause of the legal consequences of invalidating the current agreement, it is likely not in my clients' best interest to ask for the relief that we initially asked for.").  Moreover, after announcing their indecision to pursue the setting aside of the Non-Prosecution Agreement, and after seeking permission to disclose the Non-Prosecution Agreement to others, Petitioners had no pending request for any particular form of relief from this Court – and certainly no pending request to rescind the Non-Prosecution Agreement – for more than 18 months.  *See* Case Docket Sheet; DE 99 at 4 ("This action was relatively inactive for the next year and one-half while Plaintiffs litigated civil actions against Epstein."); *see also* DE 27 at 16.  Instead, Petitioners deferred any effort to have the Court set

aside the Non-Prosecution Agreement and allowed Epstein to serve the state prison sentence that he accepted in reliance on and as part of his agreement with the USAO-SDFL.

While Petitioners delayed their decision and efforts to rescind the Non-Prosecution Agreement, Petitioners contemporaneously advanced the obligations that Epstein had undertaken in the Non-Prosecution Agreement, demanding that Epstein perform pursuant to the Non-Prosecution Agreement in the civil lawsuits that they had instituted against him.   Indeed, Petitioners and other asserted victims of Epstein relied upon the Non-Prosecution Agreement when seeking civil relief against Epstein in their civil lawsuits and affirmatively advanced the terms of the Non-Prosecution Agreement as a basis for civil relief from Epstein.   *See, e.g.*, Compl. ¶¶ 18-20, ████ *v. Epstein*, Case No. 50-2008-CA-████ (Fla. 15th Jud. Cir.) (asserting, on Sept, 10, 2008, that Epstein's "agreement with the Federal Government acknowledge[ed] that ████ was a victim of his conduct" and that Epstein was "thus estopped by his . . . agreement with the Federal Government from denying the acts alleged in this Complaint, and must effectively admit liability to the Plaintiff") (attached as Exhibit A);[6] Am. Compl. ¶¶ 20-22, ████ *v. Epstein*, Case No. 50-2008-CA-████ (Fla. 15th Jud. Cir.) (asserting same on Dec. 23, 2008) (attached as Exhibit B); Compl. ¶¶ 18-20, ████ *v. Epstein*, Case No. 50-2008-CA-████ (Fla. 15th Jud. Cir.) (asserting, on Sept, 10, 2008, that Epstein's "agreement with the Federal Government acknowledge[ed] that ████ was a victim of his conduct" and that Epstein was "thus estopped by his . . . agreement with the Federal Government from denying the acts alleged in this Complaint, and must effectively admit liability to the Plaintiff") (attached as Exhibit C); Am. Compl. ¶¶ 20-22, ████ *v. Epstein*, Case No. 50-2008-CA-████ (Fla. 15th Jud. Cir.) (asserting same on Dec.

---

[6]   Petitioners have previously cited to and relied upon their complaints in ████ *v. Epstein*, Case No. 50-2008-CA-████ (Fla. 15th Jud. Cir.), and ████ *v. Epstein*, Case No. 50-2008-CA-████ (Fla. 15th Jud. Cir.), in these proceedings.   *See* DE 48 at ¶ 1.

23, 2008) (attached as Exhibit D) *see also* First Am. Compl. ¶¶ 32-33, *Doe v. Epstein*, Case No. 08-80893-CIV-MARRA (S.D. Fla.) ("assert[ing] a cause of action against the Defendant, Jeffrey Epstein, pursuant to [18 U.S.C. § 2255] and the [Non-Prosecution] agreement between the Defendant, Jeffrey Epstein, and the United States Government"); Compl. ¶¶ 19-20, ███ *v. Epstein*, Case No. 09-████-CIV-Cohn (S.D. Fla.) (asserting that plaintiff was "covered by" provisions of the Non-Prosecution Agreement between the government and Epstein and that Epstein was thus "estopped by his plea and agreement with the Federal Government from denying the acts alleged in [the] Complaint, and must effectively admit liability to the Plaintiff, ███, including admitting liability for all counts enumerated in this Complaint").[7]

Thus, Petitioners abandoned their initial request for immediate court intervention; announced that "it is likely not in [Petitioners'] bests interest to ask for the relief that [Petitioners] initially asked for" because of "the legal consequences of invalidating the [Non-Prosecution Agreement]"; delayed any identification of the relief that they intended to seek for their claimed CVRA violations; and sought to enforce the terms of the Non-Prosecution Agreement to obtain civil relief from Epstein in their civil lawsuits. Even assuming *arguendo* that the CVRA would allow a victim to seek rescission of a non-prosecution agreement between the government and an uncharged individual, Petitioners' actions would legally preclude them from obtaining such a remedy in these proceedings. *See, e.g.*, *Blinco*, 400 F.3d at 1312; *Rood*, 102 So. 2d at 141-42; *AVVA-BC*, 25 So. 3d at 11; Restatement (Second) of Contracts § 380(1)-(2) & cmt. a.

Additionally, in light of Petitioners' conduct with respect to the Non-Prosecution Agreement, Petitioners' reliance on *In re Dean*, 527 F.3d 391 (5th Cir. 2008), *see* DE 127 at 6,

---

[7]   This court may take judicial notice of its records. *See United States v. Rey*, 811 F. 2d 1453, 1457 n.5 (11th Cir. 1987).

fails to support their efforts to seek rescission of the agreement. In *In re Dean*, in response to the victims' mandamus petition, the appellate court ordered a stay that allowed the victims to litigate their CVRA rights in a manner that safeguarded their role in the criminal justice process while maintaining the status quo. *See* 527 F.3d at 393 (order "directed the district court to take no further action to effect the plea agreement"). Indeed, the proceedings were still at a point where no sentence had been imposed or served and where the district court could still "consider the victims' objections and concerns in deciding whether the plea agreement should be accepted." *Id.* at 396; *see* Fed. R. Crim. P. 11(c)(3), (e). In contrast, no steps were taken by Petitioners to request or ensure the maintenance of the status quo in this matter. Instead, Petitioners abandoned their initial requests for emergency relief under the CVRA, failed to pursue the expedited enforcement contemplated by the CVRA, deferred making a decision to seek rescission of the Non-Prosecution Agreement, allowed Epstein to continue serving his state court sentence in accordance with the Non-Prosecution Agreement, and allowed their CVRA petition to languish before this Court as they pursued civil lawsuits against Epstein in which they invoked the terms of the Non-Prosecution Agreement as a basis for relief. Thus, in stark contrast to *Dean*, rescission has become unavailable as a remedy because the status quo cannot be restored and because Petitioners have acted in a manner that has ratified the Non-Prosecution Agreement. *See Mazzoni Farms*, 761 So. 2d at 313 (concluding that "[a] prerequisite to rescission is placing the other party in status quo"); *Renfrow v. First Mortg. America, Inc.*, 2011 WL 2416247, *3 (S.D. Fla. June 13, 2011) (Marra, J.) ("restoring the parties to the *status quo ante* is an element of a rescission claim"); *see also, e.g.*, *Blinco*, 400 F.3d at 1312; *AVVA-BC*, 25 So. 3d at 11; Restatement (Second) of Contracts § 380.

13

In sum, under the circumstances present in this matter, the Non-Prosecution Agreement is not subject to being set aside, rescinded, or canceled – regardless of whether or not the government failed to comply with the CVRA.  On the contrary, *Santobello* and its progeny require the USAO-SDFL to continue to abide by the terms of the Non-Prosecution Agreement, and due process precludes this Court from rescinding the agreement when one of the parties to that agreement (Epstein) is not a party to the proceedings.[8]  *See* Mot. to Dismiss at 3-5. Accordingly, because of their own actions and inaction, Petitioners cannot obtain redress for any alleged CVRA injury caused by the Non-Prosecution Agreement, and they accordingly lack standing to proceed with these proceedings.

    **C.**    ***Because the CVRA Does Not Provide for Civil Remedies, Petitioners Cannot Obtain Redress for Claimed CVRA Injuries Through Their Requests for Civil Remedies.  Accordingly, Petitioners Lack Standing in These Proceedings.***

Confronted with the government's jurisdictional challenge to their request to have this Court set aside the Non-Prosecution Agreement, Petitioners list – for the first time after more than three years of litigation – more than a dozen additional civil remedies which they now seek for their claimed violations of the CVRA.  *See* DE 127 at 14-15; Sealed Resp. at 3-4.  In doing

---

[8]  Petitioners contend that the government lacks standing to argue that a court order setting aside the Non-Prosecution Agreement would amount to a constitutional violation of Epstein's rights and would require the government to act unconstitutionally.  DE at 127 at 11.  That argument – that the government cannot object to being compelled to violate the constitutional rights of individuals, rights which the Constitution charges the government with protecting, and cannot seek to prevent the court from committing constitutional error – defies credulity.  *See, e.g.*, *In re Paradyne Corp.*, 803 F.2d 604, 608 n.7 (11th Cir. 1986) ("The government has standing to seek disqualification of defense attorneys facing potential conflicts of interest due to the government's interest in preventing reversals of convictions on sixth amendment grounds . . . .").  Indeed, it is ironic that such an argument is made in a proceeding under the CVRA, which charges the government with ensuring that the rights of third parties – crime victims – are protected in criminal proceedings.  *See* 18 U.S.C. § 3771(c)(1).  Here, moreover, the government is not seeking affirmative relief or court intervention, but is instead seeking both to ensure that it discharges its own duties and obligations in a constitutional manner and to prevent a constitutional violation from occurring.

so, Petitioners presume that the CVRA authorizes some form of civil suit or civil cause of action through which they can pursue a panoply of civil legal and equitable remedies. That assumption, however, is erroneous. The CVRA does not contemplate civil litigation, and the civil remedies that Petitioners seek are simply unavailable under the CVRA.

As courts have recognized, the CVRA's function is to protect crime victims from the perpetrators of the crimes against them and to provide those victims with the opportunity to participate in the federal criminal justice process involving those crimes. *See United States v. Moussaoui,* 483 F.3d 220, 234 (4th Cir. 2007) ("The CVRA was designed to protect victims and guarantee them some involvement in the criminal justice process."); *see also, e.g.*, *In re Gyamfi*, 362 F. App'x 385, 386 (4th Cir. 2010) (same); *In re Siler*, 571 F.3d 604, 609 (6th Cir. 2009) ("The CVRA provides the district court with authority to protect the victim's limited right to participate in the criminal trial process.").

To protect the rights conferred on crime victims by § 3771(a) and to secure *contemporaneous* victim participation in the criminal justice process, the CVRA created a very specific procedural enforcement scheme designed to quickly resolve issues affecting victims' rights. 18 U.S.C. § 3771(d); *see, e.g.*, *id.* § 3771(d)(3) (requiring district court to "take up and decide any motion asserting a victim's right forthwith"); *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 55 (1st Cir. 2010) ("The CVRA plainly envisions that crime victims' petitions challenging a denial of their rights will be taken up and decided in short order. It requires expeditious consideration by the district court [and] quick appellate review . . . ."). That enforcement scheme, however, does not contemplate or authorize the filing of any civil lawsuit or any other civil litigation by a crime victim, nor does it create any civil remedy for a violation of the CVRA. *See, e.g.*, *Moussaoui,* 483 F.3d at 234 ("The rights codified by the CVRA . . . are

15

limited to the criminal justice process . . . ."); *In re Gyamfi*, 362 F. App'x at 386 (holding that "petitioner was not entitled to the protections of 18 U.S.C. § 3771 in his district court proceedings which were civil in nature"). Indeed, the CVRA expressly provides that there is "[n]o cause of action" in the enforcement scheme established by § 3771(d). *See* 18 U.S.C. § 3771(d)(6) (providing for "No cause of action.").

Instead of authorizing a victim to institute a civil action, the CVRA created a specific victims-rights-enforcement scheme within the federal criminal justice process – indeed, within Title 18 of the United States Code, which addresses "Crimes and Criminal Procedure."[9] That rights-enforcement scheme is based on the filing of a "motion asserting a victim's rights" – not a civil complaint or a civil lawsuit. 18 U.S.C. § 3771(d)(3); *see Sieverding v. U.S. Dept. of Justice*, 693 F. Supp. 2d 93, 110 (D.D.C. 2010) (recognizing that it is "only through a motion" that the CVRA "permits" individuals to assert statutory rights arising under the CVRA, such as the "right to confer" and "'discuss . . . allegations of criminal acts and [DOJ's] decisions to prosecute or not prosecute'") (citing 18 U.S.C. § 3771(d)(3)); *see also, e.g.*, *In re Antrobus*, 563 F.3d 1092, 1097 (10th Cir. 2009) ("The CVRA contemplates that individuals asserting victim status *may bring a motion in the district court* even when criminal proceedings are not ongoing, and that the district court's denial of such a motion is reviewable by mandamus.") (citing 18 U.S.C. § 3771(d)(3); emphasis added); *compare* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").[10] The CVRA allows the filing of such a motion "in the

---

[9]   More specifically, the CVRA is found in Part II of Title 18, which is the part of the United States Code specifically devoted to "Criminal Procedure."

[10]   Unlike other legislation, *see, e.g.*, 26 U.S.C. § 6110(d)(3) (allowing nonparty intervention in certain tax proceedings to protect a taxpayer's identity), the CVRA also does not grant victims a right to intervene in court proceedings. *See Brandt v. Gooding*, 636 F.3d 124, 136 (4th Cir. 2011) ("[T]he CVRA's plain language makes no reference to intervention; the Act therefore grants no privilege, much less an unconditional right, to intervene.") (quotation omitted).

district court in which a defendant is being prosecuted for the crime, or if no prosecution is underway, in the district court in the district in which the crime occurred."   18 U.S.C. § 3771(d)(3).  By allowing a victim to file a motion "in the district court in the district in which the crime occurred" even when "no prosecution is underway," the CVRA grants all victims the same avenue of relief – a motion through which to assert their rights within the criminal justice system.  *Id.*  But nothing in the CVRA grants any victim a civil enforcement option or any additional remedies by virtue of the facts that a prosecution has not been instituted and that the CVRA thereby authorizes the victim to file his § 3771(d)(3) motion as a freestanding miscellaneous proceeding.  18 U.S.C. § 3771.  On the contrary, the CVRA charges courts with ensuring victim rights in "court proceeding[s] involving an offense against a crime victim," not in civil proceedings.  18 U.S.C. § 3771(b)(1).  Finally, the CVRA also creates a process for expedited review by a court of appeals of the denial of a motion authorized by § 3771.  18 U.S.C. § 3771(d)(3).

Apparently dissatisfied with the rights-enforcement scheme created by Congress, Petitioners seek to engraft an entire civil remedial scheme onto the CVRA despite the fact that the legislatively-created enforcement scheme for CVRA rights is found in the criminal justice process, contemplates no civil proceedings, and provides for no causes of action.  *See* DE 127 at 4-5.  The cases cited by Petitioners, *see* DE 127 at 4, 6, do not advance their efforts to expand the CVRA into a civil remedial scheme.  Those cases support the unremarkable proposition that courts generally have power to grant appropriate relief for recognized civil causes of action,[11] but, as previously explained, *there is no civil cause of action* under the CVRA.  The CVRA

---

[11] Notably, Petitioner quoted from the *dissent* in *Intracoastal Transp., Inc. v. Decatur County*, 482 F.2d 361 (5th Cir. 1973); the majority actually held that the act it was considering created no private cause of action, and it remanded the case "with directions to dismiss appellees' complaint."  *Id.* at 367-68.

creates no causes of action and only provides for the filing of a "motion" to enforce victim rights in "court proceeding[s] involving an offense against a crime victim," *i.e.*, within a criminal proceeding.  Indeed, as explained above, the CVRA contains a "carefully crafted and detailed enforcement scheme," the existence of which "provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."  *United States States v. Monzel*, 641 F.3d 528, 542 (D.C. Cir.), *cert. denied*, No. 11-85, __ S. Ct. __, 2011 WL 3055311 (Nov. 28, 2011) (quoting *Mertens* v. *Hewitt Associates*, 508 U.S. 248, 254 (1993)); *see United States* v. *Hunter*, 548 F.3d 1308, 1315 (10th Cir. 2008) (declining to "to read additional remedies" into the CVRA beyond those expressly contained in the Act); *see also Karahalios v. Nat'l Fed'n of Fed. Employees,* 489 U.S. 527, 533 (1989) ("[I]t is . . . an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.") (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19 (1979)); *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,* 414 U.S. 453, 458 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."); *McDonald v. Southern Farm Bureau Life Ins. Co.*, 291 F.3d 718, 725 (11th Cir. 2002) ("When Congress creates certain remedial procedures, we are, 'in the absence of strong indicia of contrary congressional intent, . . . compelled to conclude that Congress provided precisely the remedies it considered appropriate.'") (quoting *Karahalios,* 489 U.S. at 533).  Moreover, the additional civil remedies that Petitioners seek to engraft onto the CVRA are not recognized remedies within the criminal justice system, of which the CVRA is a part.  Such civil remedies are simply incompatible with criminal proceedings, and, notwithstanding Petitioners' arguments, there is nothing whatsoever in the CVRA to indicate that Congress was taking the novel step of

introducing a far-flung civil remedial scheme into the criminal justice process through the CVRA.

Because the panoply of civil remedies requested by Petitioners are unavailable in these proceedings under the CVRA, Petitioners lack standing to pursue those remedies, and this Court must accordingly dismiss the proceedings for lack of subject matter jurisdiction.

**D.**     ***The Remedies Petitioners Seek Cannot Serve to Remedy Their Claimed CVRA Injuries, and Petitioners Thus Lack Standing in These Proceedings.***

In their responses to the government's motion to dismiss, Petitioners have advanced a variety of civil remedies in an effort to establish standing. They have done so without providing any legal or factual support for the availability of those specific remedies under the circumstances present in this matter. For the reasons set forth above, the Court need not reach or consider these civil remedies because they are unavailable under the CVRA. Nonetheless, the United States here provides a brief, non-comprehensive explanation of why these remedies would be unavailable to Petitioners even if the CVRA remedial scheme did not independently preclude civil remedies.

1.   *Declaratory Relief*

In the instant matter, Petitioners seek the following forms of declaratory relief.

- A ruling from this Court that, contrary to the current understanding of the U.S. Attorney's Office, if after consultation with the victims the Office determined that prosecution of Epstein for crimes committed against Jane Doe #1 and Jane Doe #2 was appropriate, the Constitution would permit such a prosecution (DE 127 at 14, Bullet 1);

- A declaration that the Government entered into the non-prosecution agreement in violation of Jane Doe #1 and Jane Doe #2's rights under the CVRA (*Id.* at Bullet 2; Sealed Response, at 3, Bullet 2);

- A declaration that the non-prosecution agreement is accordingly illegal (*Id.* at Bullet 3); and

19

• A declaration invalidating the illegal non-prosecution agreement in whole, or in the alternative, a declaration invalidating the illegal non-prosecution agreement to the extent that it purports to bar prosecution of Epstein's crime against Jane Doe #1 and Jane Doe #2 (*Id.* at Bullet 4).

While a district court is provided "ample" jurisdiction in deciding whether to entertain a declaratory judgment action, it is well-settled that the declaratory judgment act permits adjudication only when there is an "actual" case or controversy. *See Bush Truck Leasing v. Dynamex*, No. 11-80026-CIV, 2011 WL 5508813, at *2 (S.D. Fla. Nov. 9, 2011) ("The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose."); *see also Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act . . . specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy.") (internal citation omitted); *see further Nutrasweet Co. v. Ajinomoto Co.*, 423 F. Supp. 2d 450, 453 (D. Del. 2006) (noting that an action for declaratory judgment may be brought in order to resolve an "actual controversy" between "interested" parties).

The analysis for whether there is an actual controversy to support the entry of declaratory relief is similar to the "case and controversy" requirement under Article III of the Constitution. *Irwin v. Miami-Dade County Pub. Schools*, No. 06-23029, 2009 WL 497650, at *5 (S.D. Fla. Feb. 25, 2009) (citing *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). Moreover, the requirement of "actual controversy" encompasses concepts such as ripeness, standing and the prohibition against advisory judicial rulings. *Nutrasweet Co.*, 423 F. Supp. 2d at 453 (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)).

Because, as previously addressed, Petitioners lack standing, this Court lacks subject

matter jurisdiction to make the requested declarations.

Assuming *arguendo* that Petitioners had Article III standing to seek declaratory relief, Petitioners claim still fails because declaratory relief serves only to clarify the legal relationship between the parties and does not serve to make factual determinations, which is precisely what Petitioners seek here.  *See Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (citing *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009); *Eisenberg v. Standard Ins. Co.*, No. 09-80199, 2009 WL 1809994, at *3 (S.D. Fla. June 25, 2009)).

Additionally, declaratory judgment is inappropriate to adjudicate past conduct.  *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009) (quoting *Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993)).  *See also, Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, LPI*, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002) (finding that a declaration that involves the adjudication of past conduct serves no useful purpose).  In *Beazer Homes*, plaintiff, a potential real estate purchaser, conceded that a declaration by the district court that stated only that defendant land owner had violated its contractual duties of confidentiality and not to market would not be useful because such a declaration would not guide the parties' future conduct in continuing to perform under the real estate purchase and sale contract.  *See Beazer Homes*, 235 F. Supp. 2d at 494.

The government and Epstein entered into the Non-Prosecution Agreement in 2008.  Through this action, Petitioners now – more than 3 years later – seek a finding by this Court that, *inter alia*, the Non-Prosecution Agreement is illegal.  Such a finding would serve no prospective useful purpose where the Petitioners have ratified the Non-Prosecution Agreement as discussed above.

2.   *Injunctive Relief*

A district court may grant a preliminary injunction only if the movant establishes the following:  (1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (4) an injunction would not disserve the public interest.  *See North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008).[12]   Because a preliminary injunction is an extraordinary and drastic remedy, it is not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites.  *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).  Petitioners did not satisfy their burden in this case.  Indeed, Petitioners are not able to do so.

Petitioners ask this Court to enter

> • An injunction . . . .directing the U.S. Attorney's Office to treat Jane Doe #1 and Jane Doe #2 with "fairness" in this case as required by 18 U.S.C. §3771(a)(8) of the CVRA, to "confer" as required by 18 U.S.C. §3771(a)(5), and to provide accurate and timely notice of future case events as required by 18 U.S.C. § 3771(a)(2) (DE 127, at 15, Bullet 10).

Petitioners request is no more than a request that this Court order the government to comply with the CVRA.  The government is already bound to do so by statute.  Therefore, Petitioners cannot establish that they will be irreparably harmed without the entry of an injunction ordering the government to take steps that it is already bound to do.

Petitioners also seek:

---

[12]   The movant must meet the same four factor test when seeking a permanent injunction except that a movant must prove actual success on the merits rather than a likelihood of success on the merits.  *A Choice for Women v. Butterworth*, 54 F. Supp. 2d 1148, 1154 (S.D. Fla. 1998) (citing *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

- An order from this Court directing an appropriate supervisor from the U.S. Attorney's Office to meet with Jane Doe #1 and Jane Doe #2, to explain in detail why it decided not to prosecute Epstein's crimes against them and confer with them about the case and about the steps might be taken to insure that Epstein is held accountable for the sex offenses he has committed (DE 127, at 14, Bullet 6);

- An order establishing the precise rule regarding the timing of the obligation of the U.S. Attorney's Office to crime victims, including the victims in this case (DE 127, at 14, Bullet 13);

- A ruling from this Court that the non-prosecution agreement is not a "global" resolution of Epstein's criminal liability for sex offenses committed against young girls in Florida in that it does not bar prosecution in New York City and New Jersey for conspiracy and RICO offenses related to these offenses (Sealed Response, at 3, Bullet 1);[13] and

- An injunction from this Court forbidding the Government from relying on the non-prosecution agreement in making any decision about whether or not to prosecute Epstein for other crimes (*Id.* at Bullet 3).

Even if civil injunctive relief were cognizable under the CVRA,[14] any such order by this Court would be in direct contravention of the CVRA and the constitutional doctrine of separation of powers.  "Although the CVRA is meant to be liberally construed within the confines of the rights guaranteed, there is absolutely no suggestion in the statutory language that victims have a right independent of the government to prosecute a crime [or] set strategy."  *United States v. Rubin*, 558 F. Supp. 2d 411, 417-18 (E.D.N.Y. 2008).  "Quite to the contrary, the statute itself provides that '[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.'"  *Rubin*, 558 F. Supp. 2d at 418 (quoting the CVRA).  Simply stated, the CVRA "gives crime victims a voice but not a veto."  *United States v. Turner*, 367 F. Supp. 2d 319, 331 (E.D.N.Y. 2005); *see also Rubin*, 558 F. Supp. 2d at

---

[13]  It must be noted that this is the position advanced by the government at all times.

[14]  The government does not waive its prior argument that nothing in the CVRA "shall be construed to authorize a cause of action for damages, or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages."  18 U.S.C. § 3771(d)(6).

424 ("The right to be heard does not give the victims of a crime veto power over any prosecutorial decision, strategy or tactic regarding bail, release, plea, sentencing or parole.") (citing *In re W.R. Huff*, 409 F.3d 555, 564 (2d Cir. 2005) ("Nothing in the CVRA requires the Government to seek approval from crime victims before negotiating or entering into a settlement agreement.")); *United States v. Drier*, 682 F. Supp. 2d 417, 421 (S.D.N.Y. 2010) (same); *see further United States v. BP Prods. N. Am. Inc.*, 610 F. Supp. 2d 655, 727 (S.D. Tex. 2009) ("The purpose of the conferral right is not to give victims a right to approve or disapprove a proposed plea in advance or to participate in plea negotiations [but rather] . . . for victims to provide information to the government, obtain information from the government, and to form and express their views to the government and court.").

Lastly, "federal district courts cannot order a United States Attorney to conduct an investigation or to initiate a prosecution because it would violate the doctrine of separation of powers." *O'Connor v. Nevada*, 507 F. Supp. 546, 549 (D. Nev. 1981) (citing *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965)[15] ("Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case . . . and courts are not to interfere with the free exercise of the discretionary powers of the [United States attorneys] in their control over criminal prosecutions.").

Additionally, Petitioners request

  - A letter for apology from the U.S. Attorney's Office for violating Jane Doe #1 and Jane Doe #2's rights (DE 127, at 14, Bullet 11).

---

[15] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The remedy of "apology" is not cognizable, either within the meaning of the CVRA or as a general remedy that a court has the power to order, under any provision.  *See Devonish v. Atlantic County Justice Facility*, No. 10-1866 (JBS), 2010 WL 3024858, at *3 (D.N.J. 2010).  To the extent Petitioners' requested relief regarding an apology can be construed as a request for injunctive relief against the government, such a claim fails to state a claim as a matter of law.  *See Burkes v. Tranquilli*, No. 08-474, 2008 WL 2682606, at *4 (W.D. Pa. 2008) (citing *Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) ("Here, the district court exceeded its equitable power when it ordered [defendant] to apologize.")).  In *Woodruff*, the Ninth Circuit affirmed its prior holding that courts "are not commissioned to run around getting apologies" and reasoned that the law is not usually concerned with procuring apologies to make morally right a legal wrong done to the plaintiff.  *Woodruff*, 29 F. App'x at 346 (6th Cir. 2002) (quoting *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974).  Undeniably, a court may not order a defendant to speak in a manner that may well contravene the beliefs the defendant holds.  *See Woodruff*, 29 F. App'x at 346.  Because Petitioners do not provide any support to the contrary, their request for an apology must fail.

3.  *Discovery Requests*

Among the remedies that Petitioners urge this Court support a finding of jurisdiction, are the following discovery requests:

- An order from this Court that the Government provide Jane Doe #1 and Jane Doe #2 all information in its possession, including documents and correspondence, about why it decided not to prosecute Epstein's crimes against them (DE 127, at 14, Bullet 4);

- An order from this Court releasing to Jane Doe #1 and Jane Doe #2 all grand jury material relating, directly or indirectly, to Epstein's sex offenses (and conspiracy to commit sex offenses) against Jane Doe #1 and Jane Doe #2 (*Id.* at Bullet 5);

- An order from this Court that the Government provide Jane Doe #1 and Jane Doe #2 all information it is possession, including documents and correspondence, that they could use to present to the U.S. Attorney's Office in the Southern District of New York and the District of New Jersey to help persuades those offices to initiate criminal prosecutions of Epstein (Sealed Response, at 3, Bullet 4);

- An order from this Court pursuant to Fed. R. Crim. R. 6(e)(3)(E) releasing the grand jury material that the Governmental has referred to in its sealed pleading helping to establish venue over Epstein's sex offenses in the Southern District of New York and the District of New Jersey (*Id.* at 4, Bullet 5); and

- An order from this Court directing the U.S. Attorney's Office to report to Jane Doe #1 and Jane Doe #2 whether the U.S. Attorney's Office for the Southern District of New York and the District of New Jersey currently have or have ever had an investigation to Epstein for sex offenses against young girls (*Id.* at 4, Bullet 6).

The CVRA only grants to Petitioners a right to confer with the government.  It does "not authorize an unbridled gallop to any and all information in the government's files."  *Rubin*, 558 F. Supp. 2d at 425; *see also United States v. Moussaoui*, 483 F.3d 220, 235 (4th Cir. 2007) (noting that it was a wise strategy for the civil plaintiffs' to abandon their argument that the CVRA together with the Air Transportation Safety and System Stabilization Act bestowed upon a district court in a civil matter the power to order disclosure of documents to victims, as nothing in either of those acts empowered the district court to do so); *United States* v. *Hunter*, 548 F.3d 1308, 1317 (10th Cir. 2008) (following holding "that the CVRA does not provide 'victims' with a right of access to the government's files"); *cf. In re Siler*, 571 F.3d 604, 609 (6th Cir. 2009) (holding that "the CVRA does not provide an independent right to obtain PSRs"); *Kenna v. United States*, 453 F.3d 1136, 1137 (9th Cir. 2006) (affirming the district court's rejection of victim's argument that the CVRA conferred a general right for crime victims to obtain disclosure of PSRs).  The CVRA provides victims with rights associated with the defendant's trial, such as notice of proceedings against the defendant, the right to be heard at a proceeding, and the right to

confer with the government's attorney, but is silent as to documents offered during the trial.  *See In re Siler*, 571 F.3d at 609-10.

Petitioners' belief that they are entitled to grand jury records also fails.  The traditional rule of grand jury secrecy may be set aside under certain circumstances prescribed by Fed. R. Crim. P. 6(e).  The Supreme Court has explained that a party seeking disclosure of grand jury materials must make a showing of a "particularized need."  *Id.* (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)).  Petitioners cannot make such a showing. Moreover, the documents they seek to make available to the Southern District of New York and the District of New Jersey are already available to prosecutors and grand juries in those districts. *See* ████████████████████████.

### 4.  *Monetary Damages*

Petitioners argue that they are entitled to the following forms of monetary relief:

- A monetary sanction imposed against the U.S. Attorney's Office, to be paid to Jane Doe #1 and Jane Doe #2 directly or to any other appropriate person or entity (DE 127, at 14, Bullet 12);

- An award of attorney's fees and costs from this Court under the Court's inherent authority to enter such an award (*Id.* at Bullet 15); and

- An award of attorney's fees and costs from this Court under the Court's inherent authority to enter such an award for Jane Doe #1 and Jane Doe #2's presentations to the Offices in the Southern District of New York and the District of New Jersey (Sealed Response, at 3, Bullet 7).

The CVRA expressly negates any such remedies.  Congress has protected against such unintended implication of those remedies because the CVRA establishes several rights for crime victims, including the "right to be reasonably protected from the accused," to timely notice of various events, to proceedings free from unreasonable delay, to be treated with fairness and with respect for dignity and privacy, and "to confer with the attorney for the Government in the case."

*See* 13A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3531.6 (3d ed. 2011).  However, § 3771(d)(6) provides that the act does not authorize a cause of action for breach of which the United States or any of its officers or employees could be held liable in damages.

The doctrine of sovereign immunity bars an award of attorneys' fees against the United States unless there is express statutory authorization for such an award.  *Joe v. United States*, 772 F.2d 1535, 1536 (11th Cir. 1985).  Waivers of sovereign immunity are to be strictly construed in favor of the sovereign.  *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 590 (1941)).   The CVRA does not provide for attorney's fees against the United States, and thus, Petitioners argument that they are entitled to attorney's fees is without merit.

Petitioners also seek an

- Award of restitution to the victims, including all forms of restitution provided in 18 U.S.C. §2259(b) (providing for counseling expenses, lost income, attorneys' fees, and other forms of restitution) (DE 127, at 14, Bullet 14).

Pursuant to the CVRA, Petitioners are entitled to "[t]he right to full and timely restitution as provided in law."  18 U.S.C. § 3771(a)(6).  Congress modified a crime victim's entitlement to restitution through the use of "in law" recognizing that there would be numerous situations when it would be impossible for restitution.  *See In re W.R. Huff*, 409 F.3d at 563.  The statute pursuant to which Petitioners urge this Court to award restitution, however, does not make *the United States* liable for restitution for harms caused by others.  Therefore, Petitioners are not entitled to restitution in this case.

5. *Remaining Relief Requested*

Petitioners also seek the following:

- An order from the Court referring the issue of the crime victims' rights violations for investigation to the administrative authority within the Justice

Department that handles CVRA complaints, pursuant to 18 U.S.C. § 3771 (f)(2)(A), and to any other appropriate Justice Department entity (DE 127, at 14, Bullet 7);

- A finding by this Court that there has been misconduct by at least one DOJ attorney in violation of the victims' rights (DE 127 at 14, Bullet 8); and

- An order from this Court referring the issue of the crime victims' rights violations for possible disciplinary sanctions to the Justice Department, pursuant to 18 U.S.C. § 3771(f)(2)(c) (DE 127, at 14, Bullet 9).

Section (f) of the CVRA sets forth a procedure to promote compliance. Pursuant to that section, "the Attorney General, or the designee of the Attorney General, shall be the final arbiter of" a crime victim's complaint, which determination is not subject to "judicial review." *See* 18 U.S.C. § 3771(f); *see also* 28 C.F.R. 45.10. This Court cannot rewrite the CVRA to include additional measures of compliance. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 1, 19 (1979)). Because there is no indicia of a contrary congressional intent, Congress provided precisely the remedies it considered appropriate in section (f). *See Middlesex County Sewerage*, 453 U.S. at 15.

## II.   Petitioners' CVRA Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction Because They Are Not Constitutionally Ripe.

Petitioners have claimed that the government violated the CVRA by denying them: the "reasonable right to confer" with prosecutors, when the USAO-SDFL entered into the Non-Prosecution Agreement with Epstein, *see* 18 U.S.C. § 3771(a)(5); the right to be "treated with fairness and with respect for victim's dignity," when the USAO-SDFL entered into the Non-Prosecution Agreement without informing them, *see id.* § 3771(a)(8); and the right to "reasonable, accurate, and timely notice of any public court proceedings . . . involving the

crime," when the USAO-SDFL notified Petitioners about Epstein's state court plea hearing, *see id.* § 3771(a)(2). *See* DE 127 at 3, 22-23. This Court must dismiss these proceedings for lack of subject matter jurisdiction because those CVRA claims asserted by Petitioners that are not frivolous are not constitutionally ripe.[16]

While it may be true that the USAO-SDFL did not inform Petitioners and confer with them about the Non-Prosecution Agreement before it signed that agreement, the USAO-SDFL had conferred with both of the Petitioners about the potential prosecution of Epstein and was aware that Jane Doe #1 wished to see Epstein prosecuted and that, at that time, Jane Doe #2 had expressed open hostility toward any prosecution of Epstein. *See, e.g.*, DE 14 at ¶¶ 4, 7; *see also* DE 48 at ¶ 8. In any event, as the government has explained, *see* Mot. to Dismiss at 10-11, the Non-Prosecution Agreement did not dispose of any federal criminal charges against Epstein: no such charges were ever brought against Epstein, and no such charges were resolved. Although the Non-Prosecution Agreement may have limited the USAO-SDFL's capacity to prosecute Epstein in the Southern District of Florida for his federal offenses against Petitioners,[17] the USAO-SDFL did not bargain away the possibility of federal criminal charges being instituted in other districts based on the alleged sexual acts that Epstein committed against the Petitioners. Mot. to Dismiss at 10-11. Such charges can still potentially be pursued in other districts, such as

---

[16] Petitioners' claim that the government violated the CVRA by providing improper notice of Epstein's 2008 state court plea is a purely historical, completed event that may be ripe, but, as previously explained, *see supra* note 2, that claim is frivolous because the CVRA does not require notice of state court proceedings and because Petitioners were nonetheless provided notice of Epstein's state court plea hearing. In any event, a frivolous claim under § 3771(a)(2) cannot ripen Petitioners' other CVRA claims.

[17] In exchange, Epstein, *inter alia*, entered guilty pleas to state charges that required him to serve an 18-month state court sentence and that require him to register as a sex offender, and Epstein agreed to waive challenges to liability if identified victims chose to sue him, as contemplated in the Non-Prosecution Agreement, under 18 U.S.C. § 2255. And, as explained above, Petitioners invoked the agreement in their civil suits against Epstein.

the Southern District of New York and the District of New Jersey, *see id.*, and, accordingly, Petitioners have simply not been denied the opportunity to confer with federal prosecutors about the potential filing and disposition of such charges.

Petitioners nonetheless refer to the available option of conferring with U.S. Attorney's Offices in districts where Epstein is still subject to potential federal prosecution as a "supplemental" remedy for claimed CVRA violations.   But contrary to Petitioners' characterization, that option is not a *remedy* for a CVRA violation; rather, the existence of that option demonstrates *the absence of a CVRA violation* because Petitioners have not yet been denied – and may never be denied – the ability to confer with prosecutors about the filing and disposition of potential federal criminal charges against Epstein for the offenses he committed against Petitioners.[18]   The Non-Prosecution Agreement and the actions of the USAO-SDFL simply have not deprived Petitioners of opportunities provided for by the CVRA.

Although Petitioners have been made aware of the possibility that federal criminal charges for Epstein's offenses could be still instituted in districts such as the Southern District of New York and the District of New Jersey, Petitioners informed members of the USAO-SDFL in a December 2011 telephone conference that they were not willing – at least not yet – to exercise that option and reach out to those other districts to request that they pursue federal charges against Epstein.  *See also* Sealed Resp. at 2 (revealing that Petitioners have not yet attempted to contact prosecutors in other districts).  Instead, Petitioners have expressed skepticism about the availability of that option – without ever exploring it – because "it is not clear [to them] exactly

---

[18]   Because there has not yet been any denial of the right to confer, Petitioners' discussion of the voluntary cessation doctrine, *see* DE 127 at 23-24, misses the mark and is entirely premature. Nevertheless, it bears noting that the "'the Supreme Court had held almost uniformly that voluntary cessation [by a government defendant] moots the claim.'"  *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1351 (11th Cir. 2011) (alteration by court; quoting *Beta Upsilon Chi Upsilon Chapter v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009)).

how the prosecutors [in those other districts] would prosecute Epstein for sex offenses committed against [Petitioners] in Florida." *Id*. at 2.

Petitioners apparently fail to appreciate that a federal prosecution of the "substantive sex offenses" that Epstein committed against them in Florida requires an interstate commerce link or some other basis for federal jurisdiction. *See id.* The potentially applicable federal criminal statutes addressing those sexual offenses by Epstein contain jurisdictional commerce clause links such as "using the mail or any facility or means of interstate or foreign commerce," "travel[ing] in interstate commerce," or engaging in specified conduct "in or affecting interstate or foreign commerce." 18 U.S.C. §§ 2422(b), 2423(b), 1591(a).[19] Moreover, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed," and "[a]ny offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." 18 U.S.C. § 3237(a). As the government has previously explained, *see* Mot. to Dismiss at 8-9, ███████████████████████ ██████████████████████████ the Southern District of New York and the District of New Jersey have jurisdiction and venue to charge Epstein for the sexual offenses that he committed against the Petitioners in Florida.[20] The fact that Petitioners may be concerned

---

[19] The Non-Prosecution Agreement has disclosed that Epstein was under investigation by the USAO-SDFL for potential violations of 18 U.S.C. §§ 2422(b), 2423(b), and 1591(a)(1). DE 48 Ex. E at 1-2.

[20] If the Court should deem it necessary to the resolution of this issue, underlying factual support establishing the jurisdiction and venue of the Southern District of New York and the

about their ability to convince prosecutors in those districts to file charges against Epstein does not implicate the CVRA.   The CVRA grants victims a reasonable right to confer with prosecutors, not a right to convince prosecutors to institute criminal charges.  In any event, all of the investigative materials that were gathered in the investigation conducted by the USAO-SDFL can be disclosed to federal prosecutors and grand juries in those districts upon their request.  *See* ███████████████████████.

Here, where Petitioners have not even contacted the districts that could potentially file criminal charges against Epstein, a claim that Petitioners have been denied the opportunity to confer with the attorney for the government about the filing and disposition of criminal charges against Epstein is premature and constitutionally unripe.  "This is plainly the type of hypothetical case that [a court] should avoid deciding."  *Association for Children for Enforcement of Support, Inc. v. Conger*, 899 F.2d 1164, 1166 (11th Cir. 1990).  Any speculation by Petitioners that they might prospectively be denied the opportunity to confer with the government about still-legally-viable federal charges against Epstein simply cannot ripen Petitioners' claims.  *See id.* (recognizing that courts "do not generally decide cases based on a party's predicted conduct").

Petitioners' CVRA claim that they were not treated with fairness and respect is similarly unripe.  That claim is inextricably intertwined with Petitioners' complaints about the manner in which the USAO-SDFL handled and communicated with Petitioners about the Non-Prosecution Agreement and thereby deprived Petitioners of their rights to confer under § 3771(a)(5).  The unfairness and lack of respect perceived by Petitioners, however, is unfounded given that potential federal charges remain available and Petitioners retain the option to confer with prosecutors about the filing and disposition of those charges.  Indeed, a claim of unfair treatment

District of New Jersey can be made available to the Court ██████████████████████ ████████████████████████████.

cannot be ripe where the circumstances that ostensibly make the treatment unfair – a claimed deprivation of the right to confer about the filing and disposition of charges – have not yet occurred and may never occur.[21]

For these reasons, Petitioners' claims in these proceedings should be dismissed for lack of subject matter jurisdiction.  *See, e.g.*, *In re Jacks*, 642 F.3d 1323, 1332 (11th Cir. 2011); *Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir. 1994); *see also Jacksonville Property Rights Ass'n, Inc. v. City of Jacksonville*, 635 F.3d 1266, 1276 (11th Cir. 2011), *reh'g & reh'g en banc denied*, Case No. 09-15629, 435 F. App'x 914 (11th Cir. Jun. 29, 2011) (Table).

/ / /

/ / /

/ / /

---

[21] To the extent that Petitioners claim unfair treatment based on alleged government misrepresentations that there was an ongoing government investigation of Epstein after the September 2007 signing of the Non-Prosecution Agreement, the record belies that claim and instead indisputably demonstrates that, even after the signing of the Non-Prosecution Agreement, the government's investigation in fact continued.  *See, e.g.*, DE 48 Ex. H (report in ongoing investigation); DE 14 ¶ 3 (referring to May 2008 interview by federal agents).  Indeed, the Non-Prosecution Agreement did not call for a suspension of the government's investigation until Epstein executed a plea agreement with the State Attorney's Office, an event that did not occur until June 2008.  DE 48 at ¶ 41 & Ex. E at 5.

## Conclusion

For the reasons set forth above and in the United States' *Sealed Motion to Dismiss for Lack of Subject Matter Jurisdiction*, the United States respectfully requests that this Court enter an order dismissing the Petitioners' claims and these proceedings for lack of subject matter jurisdiction.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:

Dexter A. Lee
Assistant United States Attorney
Florida Bar No. 0936693
99 N.E. 4th Street
Miami, Florida 33132
Tel: (305) 961-9320; Fax: (305) 530-7139
Email: dexter.lee@usdoj.gov

Eduardo I. Sánchez
Assistant United States Attorney
Florida Bar No. 877875
99 N.E. 4th Street
Miami, Florida 33132
Tel: (305) 961-9057; Fax: (305) 536-4676
Email: eduardo.i.sanchez@usdoj.gov

A. Marie Villafaña
Assistant United States Attorney
Florida Bar No. 0018255
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Tel: (561) 820-8711; Fax: (561) 820-8777
Email: ann.marie.c.villafana@usdoj.gov

Attorneys for Respondent

35

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *United States' Sealed Reply in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction* was served via United States Mail this 24th day of January, 2012, upon Counsel for Petitioners Jane Doe #1 and Jane Doe #2, accompanied by a copy of the November 7, 2011 *Sealed Order Granting Government's Motion for Limited Disclosure of Grand Jury Matter.* Pursuant to the Order regarding the disclosure of Grand Jury Information, a copy was not served upon the proposed intervenors.

A. Marie Villafaña
Assistant United States Attorney

## SERVICE LIST

*Jane Does 1 and 2 v. United States*,
Case No. 08-80736-CIV-MARRA/JOHNSON
United States District Court, Southern District of Florida

Brad Edwards, Esq.,
Farmer, Jaffe, Weissing,
Edwards, Fistos & Lehrman, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
Fax: (954) 524-2822
E-mail: brad@pathtojustice.com

Paul G. Cassell
S.J. Quinney College of Law at the
University of Utah
332 S. 1400 E.
Salt Lake City, Utah 84112
(801) 585-5202
Fax: (801) 585-6833
E-mail: casselp@law.utah.edu

Attorneys for Jane Doe # 1 and Jane Doe # 2



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:

**GRAND JURY PROCEEDINGS**
**FEDERAL GRAND JURY 05-02(WPB) AND**
**FEDERAL GRAND JURY 07-103(WPB)**

_____/

### Sealed Order Granting
### Government's Motion for Limited Disclosure of Grand Jury Matter

This cause comes before the Court on the Government's *Sealed Ex Parte Motion for Limited Disclosure of Grand Jury Matter Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i)*. After careful consideration of the grounds raised in said motions, and the Court being otherwise advised in the premises,

IT IS HEREBY ORDERED that the Government's *Motion for Limited Disclosure of Grand Jury Matter Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i)* is GRANTED. The Government is authorized to disclose in *Jane Doe No. 1 and Jane Doe No. 2 v. United States*, Case No. 08-80736-Civ-Marra (S.D. Fla.),



IT IS FURTHER ORDERED that disclosure pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i) shall be conditioned on the following:

(1) the disclosure of the aforementioned grand jury information shall be limited to filings made under seal in Case No. 08-80736-Civ-Marra;

(2) the service of filings containing the aforementioned grand jury information shall be limited to counsel for Petitioners Jane Doe No. 1 and Jane Doe No. 2 and for the government in Case No. 08-80736-Civ-Marra, and shall be accompanied by a copy of this Order; and

(3) further dissemination by any person or entity receiving disclosure of the grand jury information authorized to be disclosed by this Order shall be limited to the individual Petitioners in Case No. 08-80736-Civ-Marra, and any dissemination of such grand jury information shall be accompanied by a copy of this Order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this _____ 7 _____ day of

November, 2011.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

2

# Exhibit A

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: **50 2008 CA 0** ███ **XXXXMB AD**

███,

        Plaintiff,

vs.

JEFFREY EPSTEIN,

        Defendant.

        :
        :
        :
        :
        :
        :
        :
        :
        :

## COMPLAINT

Plaintiff, ███, by and through her undersigned counsel, sues the Defendant, Jeffrey Epstein, and alleges:

1.    This is an action in an amount in excess of $15,000.00, exclusive of interest and costs and is within the jurisdictional limits of this Court.

2.    This Complaint is brought under a fictitious name in order to protect the identity of the Plaintiff because this Complaint makes allegations of sexual assault and child abuse of a then minor.

3.    At all times material to this cause of action, the Plaintiff, ███ (hereinafter referred to as "Plaintiff"), was a resident of Palm Beach County, Florida.

4.    At all times material to this cause of action, the Defendant, Jeffrey Epstein, had a residence located at 358 El Brillo Way, West Palm Beach, Palm Beach County, Florida.

5.    Defendant, Jeffrey Epstein, is currently a citizen of the State of Florida, as he currently resides in West Palm Beach, Florida at the Palm Beach County Jail and has the intention to remain in Florida.  This is substantiated by the residence that he maintains at 358 El Brillo Way, West Palm Beach, Florida where he spends the majority of his time, and intentions to remain at that address permanently are further evidenced by his statements to the Court during his State Plea colloquy on June 30, 2008, case number 06CF009454AMB, taken before the Honorable Judge Dale Pucillo, wherein he indicated that after his release from the Palm Beach County Jail he intends to reside permanently at his home at 358 El Brillo Way, West Palm Beach, Florida, and he plans to work in West Palm Beach, Florida as well.

6.    At all times material to this cause of action, the Defendant, Jeffrey Epstein, was an adult male born in 1953.

7.    At all times material, the Defendant, Jeffrey Epstein, owed a duty unto Plaintiff to treat her in a non-negligent manner and to not commit intentional or tortious or illegal acts against her.

8.    All of the allegations within this Complaint occurred in West Palm Beach, Florida.

## FACTUAL ALLEGATIONS

9.    Upon information and belief, the Defendant, Jeffrey Epstein, has demonstrated a sexual preference and obsession for minor girls.

10.    The Defendant, Jeffrey Epstein, developed a plan, scheme, and criminal enterprise that included an elaborate system wherein the then minor Plaintiff was brought to the Defendant,

Jeffrey Epstein's residence by the Defendant's employees, recruiters, and assistants.  When the assistants and employees left the then minor Plaintiff and other minor girls alone in a room at the Defendant's mansion, the Defendant, Jeffrey Epstein, himself would appear, remove his clothing, and direct the then minor Plaintiff to remove her clothing.  He would then perform one or more lewd, lascivious, and sexual acts, including, but not limited to, masturbation, touching of the then minor Plaintiff's sexual organs, coercing or forcing the then minor Plaintiff to perform oral sex on him, using vibrators or sexual toys on the then minor Plaintiff, coercing the then minor Plaintiff into sexual acts with himself or others, and digitally penetrating the then minor Plaintiff. He would then pay the Plaintiff for engaging in this sexual activity.

11.     The Plaintiff was first brought to the Defendant, Jeffrey Epstein's mansion in 2002 when she was a fourteen-year old in middle school.

12.     The then minor Plaintiff was a vulnerable child without adequate parental support at all times material to this Complaint.  The Defendant, Jeffrey Epstein, a wealthy financier with a lavish home, significant wealth, and a network of assistants and employees, used his resources and his influence over a vulnerable minor child to engage in a systematic pattern of sexually exploitive behavior.

13.     Beginning in approximately August 2002 and continuing until approximately September 2005, the Defendant, Jeffrey Epstein, coerced, induced and/or enticed the impressionable, vulnerable, and economically deprived then minor Plaintiff to commit various acts of sexual misconduct.   These acts included, but were not limited to, fondling and inappropriate and illegal sexual touching of the then minor Plaintiff, forcing the then minor Plaintiff into oral sex, sexual misconduct and masturbation of the Defendant, Jeffrey Epstein, in

the presence of the then minor Plaintiff, handling and fondling of the then minor Plaintiff's sexual organs for the purpose of masturbation, and encouraging the then minor Plaintiff to become involved in prostitution; Defendant, Jeffrey Epstein, committed numerous criminal sexual offenses against the then minor Plaintiff including, but not limited to, sexual battery, solicitation of prostitution, coercing a minor into a life of prostitution, and lewd and lascivious assaults upon the person of the then minor Plaintiff.

14.    In addition to the direct sexual abuse and molestation of the then minor Plaintiff, Defendant, Jeffrey Epstein, instructed, coerced and otherwise induced the then minor Plaintiff to bring him numerous other minor children for the purposes of further satisfying his deviant sexual attraction to minors.   Defendant, Jeffrey Epstein, used his money, wealth and power to unduly and improperly manipulate and influence the then minor Plaintiff to bring him these other minor girls in exchange for money.   This influence led the then minor Plaintiff away from the life of a middle school aged child and into a delinquent lifestyle.

15.    The acts referenced above in paragraphs 10 through 14, committed by Defendant, Jeffrey Epstein, against the then minor Plaintiff were committed in violation of numerous criminal State statutes condemning the sexual exploitation of minor children, prostitution, sexual performances by a child, lewd and lascivious assaults, sexual battery, contributing to the delinquency of a minor and other crimes, specifically including, but not limited to, those criminal offenses outlined in Chapters 794, 800, 827 and 847 of the Florida Statutes, as well as those designated in Florida Statutes §796.03, §796.07, §796.045, §796.04, §796.09, §39.01, and §827.04.

16.   The above-described acts took place in Palm Beach County, Florida at the residence of the Defendant, Jeffrey Epstein.  Any assertions by the Defendant, Jeffrey Epstein, that he was unaware of the age of the then minor Plaintiff are belied by his actions and rendered irrelevant by the provisions of applicable Florida Statutes concerning the sexual exploitation and abuse of a minor child.  The Defendant, Jeffrey Epstein, at all times material to this cause of action, knew and should have known of the Plaintiff's minority.

17.   The above-described acts were perpetrated upon the person of the then minor Plaintiff on numerous occasions.

18.   In June 2008, in the Fifteenth Judicial Circuit in Palm Beach County, Florida, the Defendant, Jeffrey Epstein, entered pleas of "guilty" to various Florida state crimes involving the solicitation of minors for prostitution and the procurement of minors for the purposes of prostitution.

19.   As a condition of that plea, and in exchange for the Federal Government not prosecuting the Defendant, Jeffrey Epstein, for numerous federal offenses, Defendant, Jeffrey Epstein, additionally entered into an agreement with the Federal Government acknowledging that ▅▅▅ was a victim of his conduct.

20.   The Plaintiff is included in the list of victims identified by the Federal Government as victims of the Defendant, Jeffrey Epstein's illegal conduct.  The Defendant, Jeffrey Epstein, is thus estopped by his plea and agreement with the Federal Government from denying the acts alleged in this Complaint, and must effectively admit liability to the Plaintiff.

## COUNT I

### Sexual Exploitation, Sexual Abuse and/or Sexual Assault of a Minor

21.     The Plaintiff repeats and realleges paragraphs 1 through 20 above.

22.     Defendant, Jeffrey Epstein, tortiously assaulted Plaintiff sexually on numerous occasions between approximately August 2002 and approximately September 2005, and further sexually exploited her and contributed to her delinquency during that time.  Defendant's acts were outrageous, egregious, intentional, unlawful, offensive and harmful.

23.     The sexual assaults were in violation of the numerous state statutes described in paragraph 15 above, and the assaults and acts of exploitation were committed by Defendant, Jeffrey Epstein, willfully and maliciously.

24.     As a direct and proximate result of Defendant, Jeffrey Epstein's assaults on the Plaintiff, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor.  The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses.  The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life.  These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this

Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT II

### Cause of Action Pursuant to Florida Statute 796.09

25.     The Plaintiff adopts and realleges paragraphs 1 through 20 above.

26.     The allegations contained herein in Count II are a separate and distinct legal remedy.

27.     Defendant, Jeffrey Epstein, was a wealthy and powerful man, and Plaintiff was an economically disadvantaged and impressionable minor.

28.     Defendant, Jeffrey Epstein, used his vast wealth and power to coerce Plaintiff into prostitution and/or coerced her to remain in prostitution.

29.     Defendant, Jeffrey Epstein, coerced Plaintiff into prostitution in one or more of the following ways:

      A.     Domination of her mind and body through exploitive techniques;

      B.     Inducement;

      C.     Promise of greater financial rewards;

      D.     Exploitation of a condition of developmental disability, cognitive limitation, affective disorder, and/or substance dependency;

      E.     Exploitation of human needs for food, shelter or affection;

      F.     Exploitation of underprivileged and vulnerable economic condition or situation;

G.    Use of a system of recruiting other similarly situated minor girls to further coerce and induce Plaintiff into the lifestyle of prostitution; and

H.    Exploitation through demonstration of abundant wealth and power to impress a young and vulnerable then minor Plaintiff and to coerce her into prostitution.

30.    As a direct and proximate result of the offenses committed by Defendant, Jeffrey Epstein, against Plaintiff pursuant to Florida Statutes §769.09, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT III

### Intentional Infliction of Emotional Distress

31.     The Plaintiff adopts and realleges paragraphs 1 through 20 above.

32.     The Defendant, Jeffrey Epstein's conduct towards the then minor Plaintiff was intentional and reckless.

33.     The Defendant, Jeffrey Epstein, deliberately and recklessly inflicted mental suffering upon the then minor Plaintiff.

34.     The Defendant, Jeffrey Epstein's conduct was outrageous in character, and so extreme in degree, going beyond all bounds of decency.

35.     The Defendant, Jeffrey Epstein's intentional, deliberate and reckless conduct caused severe emotional distress to the Plaintiff.  Defendant, at the time he committed these numerous sexual assaults on Plaintiff, had a specific intent to harm the then minor Plaintiff and his conduct did so harm the Plaintiff.

36.     As a direct and proximate result of the Defendant, Jeffrey Epstein's intentional and reckless conduct, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with the Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor.  The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses.  The Plaintiff has suffered a loss of income, a loss of the capacity to

earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ████, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.


## COUNT IV

### <u>Civil Remedy for Criminal Practices</u>

37.     The Plaintiff realleges paragraphs 1 through 20 above.

38.     The allegations contained herein in Count IV are a separate and distinct legal remedy.

39.     The Defendant, Jeffrey Epstein, participated in an enterprise, or conspired or endeavored to so participate, through a pattern of criminal activity in violation of Florida Statutes §772.103(3)-(4).

40.     The Defendant, Jeffrey Epstein, participated in this pattern of criminal activity by engaging in at least two of the following acts of criminal misconduct with the same or similar intents, results, accomplices, victims, and methods of commission within a five year period:

A.     Procuring for prostitution, or causing to be prostituted, any person who is under the age of 18 years in violation of Florida Statutes Chapter 796;

B.     Forcing, compelling, or coercing another to become a prostitute in violation of Florida Statutes §796.04;

C.     Acts of battery in violation of Florida Statutes Chapter 784;

     D.     Act of lewdness in violation of Florida Statutes Chapter 800;

     E.     Sexual performance or exploitation of a child in violation of Florida Statutes §827.071; and

     F.     Other crimes involving contributing to the delinquency of a child, sexual abuse of a child, and coercing a child into prostitution.

41.     Under the Defendant, Jeffrey Epstein's plan, scheme, and enterprise, the Defendant, Jeffrey Epstein, paid employees and underlings to repeatedly find and bring him minor girls in order for the Defendant to solicit, induce, coerce, entice, compel or force such girls to engage in acts of prostitution and sexual misconduct.

42.     The Plaintiff was the victim of the Defendant, Jeffrey Epstein's plan, scheme, and enterprise. The Plaintiff was called on the telephone and transported by various individuals to the Defendant, Jeffrey Epstein's residence, where she was placed in a room along with the Defendant, enticed to commit acts of prostitution, battery, and sexual exploitation. The Defendant, Jeffrey Epstein, conspired with his assistants and employees and various adults and minor children in order to accomplish his enterprise of seeking out, gaining access to, and exploiting minor children such as the Plaintiff.

43.     After introducing Plaintiff into prostitution, he enticed her to remain in prostitution and be a part of his deviant sexual lifestyle through exploitive techniques, such as offering additional money to Plaintiff in exchange for her bringing him additional minor girls to sexually abuse and commit sexual crimes against.

WHEREFORE, under the provisions of Florida Statutes Chapter 772, the Plaintiff demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, treble

damages, costs and attorneys' fees, and such other and further relief as this Court deems just and

proper, and hereby demands trial by jury on all issues triable as of right by a jury.

DATED this <u>10th</u> day of <u>September,</u> 2008.

THE LAW OFFICE OF BRAD EDWARDS &
ASSOCIATES, LLC
Attorneys for Plaintiff
2028 Harrison Street
Suite 202
Hollywood, Florida 33020
Telephone:    954-414-8033
Facsimile:    954-924-1530

Jay Howell, Esquire
Florida Bar #225657
JAY HOWELL & ASSOCIATES, P.A.
Co-Counsel for Plaintiff
644 Cesery Boulevard
Suite 250
Jacksonville, Florida  32211
Telephone:    904-680-1234
Facsimile:    904-680-1238

STATE OF FLORIDA · PALM BEACH COUNTY
I hereby certify that the
foregoing is a true copy
of the record in my office.
THIS 19 DAY OF JANUARY 20 12
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

By: _____
Brad Edwards
Florida Bar #542075

# Exhibit B

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:   50 2008 CA ████ XXXXMB AD

███,

         Plaintiff,     :

vs.                 :

JEFFREY EPSTEIN and    :
SARAH KELLEN,        :

         Defendants.   :

_____ :

## AMENDED COMPLAINT

Plaintiff, ███, by and through her undersigned counsel, sues the Defendants, Jeffrey Epstein and Sarah Kellen, and alleges:

1.    This is an action in an amount in excess of $15,000.00, exclusive of interest and costs and is within the jurisdictional limits of this Court.

2.    This Complaint is brought under a fictitious name in order to protect the identity of the Plaintiff because this Complaint makes allegations of sexual assault and child abuse of a then minor.

3.    At all times material to this cause of action, the Plaintiff, ███ (hereinafter referred to as "Plaintiff"), was a resident of Palm Beach County, Florida.

Page 1 of 17

4.     At all times material to this cause of action, Defendant, Jeffrey Epstein, had a residence located at 358 El Brillo Way, West Palm Beach, Palm Beach County, Florida.

5.     Defendant, Jeffrey Epstein, is currently a citizen of the State of Florida, as he currently resides in West Palm Beach, Florida at the Palm Beach County Jail and has the intention to remain in Florida.  This is substantiated by the residence that he maintains at 358 El Brillo Way, West Palm Beach, Florida where he spends the majority of his time, and intentions to remain at that address permanently are further evidenced by his statements to the Court during his State Plea colloquy on June 30, 2008, case number 06CF009454AMB, taken before the Honorable Judge Dale Pucillo, wherein he indicated that after his release from the Palm Beach County Jail he intends to reside permanently at his home at 358 El Brillo Way, West Palm Beach, Florida, and he plans to work in West Palm Beach, Florida as well.

6.     At all times material to this cause of action, Defendant, Jeffrey Epstein, was an adult male born in 1953.

7.     Defendant, Sarah Kellen, is a citizen and resident of the State of New York.

8.     At all times material to this cause of action, Defendant, Sarah Kellen, was an adult female.

9.     At all times material to this cause of action, the Defendants, Jeffrey Epstein and Sarah Kellen, owed a duty unto Plaintiff to treat her in a non-negligent manner and to not commit intentional or tortious or illegal acts against her.

10.     All of the allegations within this Complaint occurred in West Palm Beach, Florida.

## FACTUAL ALLEGATIONS

11      Upon information and belief, Defendant, Jeffrey Epstein, has demonstrated a sexual preference and obsession for minor girls.

12.      Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, developed a plan, scheme, and criminal enterprise that included an elaborate system wherein the then minor Plaintiff was brought to the Defendant, Jeffrey Epstein's residence by the Defendant's employees, recruiters, and assistants, including Defendant, Sarah Kellen.  When the assistants and employees left the then minor Plaintiff and other minor girls alone in a room at the Defendant's mansion, Defendant, Jeffrey Epstein, himself would appear, remove his clothing, and direct the then minor Plaintiff to remove her clothing.  He would then perform one or more lewd, lascivious, and sexual acts, including, but not limited to, masturbation, touching of the then minor Plaintiff's sexual organs, coercing or forcing the then minor Plaintiff to perform oral sex on him, using vibrators or sexual toys on the then minor Plaintiff, coercing the then minor Plaintiff into sexual acts with himself or others, and digitally penetrating the then minor Plaintiff. He would then pay the Plaintiff for engaging in this sexual activity.

13.      The Plaintiff was first brought to Defendant, Jeffrey Epstein's mansion in 2002 when she was a fourteen-year old in middle school.

14.      The then minor Plaintiff was a vulnerable child without adequate parental support at all times material to this Complaint.  The Defendant, Jeffrey Epstein, a wealthy financier with a lavish home, significant wealth, and a network of assistants and employees, including Defendant, Sarah Kellen, used his resources and his influence over a vulnerable minor child to engage in a systematic pattern of sexually exploitive behavior.

15.     Beginning in approximately August 2002 and continuing until approximately September 2005, Defendant, Jeffrey Epstein, coerced, induced and/or enticed the impressionable, vulnerable, and economically deprived then minor Plaintiff to commit various acts of sexual misconduct.  These acts included, but were not limited to, fondling and inappropriate and illegal sexual touching of the then minor Plaintiff, forcing the then minor Plaintiff into oral sex, sexual misconduct and masturbation of Defendant, Jeffrey Epstein, in the presence of the then minor Plaintiff, handling and fondling of the then minor Plaintiff's sexual organs for the purpose of masturbation, and encouraging the then minor Plaintiff to become involved in prostitution; Defendant, Jeffrey Epstein, committed numerous criminal sexual offenses against the then minor Plaintiff including, but not limited to, sexual battery, solicitation of prostitution, coercing a minor into a life of prostitution, contributing to the delinquency of a minor, and lewd and lascivious assaults upon the person of the then minor Plaintiff.

16.     In addition to the direct sexual abuse and molestation of the then minor Plaintiff, Defendant, Jeffrey Epstein, instructed, coerced and otherwise induced the then minor Plaintiff to bring him numerous other minor children for the purposes of further satisfying his deviant sexual attraction to minors.  Defendant, Jeffrey Epstein, used his money, wealth and power to unduly and improperly manipulate and influence the then minor Plaintiff to bring him these other minor girls in exchange for money.  This influence led the then minor Plaintiff away from the life of a middle school aged child and into a delinquent lifestyle.

17.     The acts referenced above in paragraphs 12 through 16, committed by Defendant, Jeffrey Epstein, against the then minor Plaintiff were committed in violation of numerous criminal State statutes condemning the sexual exploitation of minor children, prostitution, sexual

performances by a child, lewd and lascivious assaults, sexual battery, contributing to the delinquency of a minor and other crimes, specifically including, but not limited to, those criminal offenses outlined in Chapters 794, 800, and 827 of the Florida Statutes, as well as those designated in Florida Statutes §796.03, §796.07, §796.045, §796.04, §796.09, §39.01, §450.151, and §827.04.

18.    The above-described acts took place in Palm Beach County, Florida at the residence of the Defendant, Jeffrey Epstein. Any assertions by Defendants, Jeffrey Epstein and Sarah Kellen, that they were unaware of the age of the then minor Plaintiff are belied by their actions and rendered irrelevant by the provisions of applicable Florida Statutes concerning the sexual exploitation and abuse of a minor child. The Defendants, Jeffrey Epstein and Sarah Kellen, at all times material to this cause of action, knew and should have known of the Plaintiff's minority.

19.    The above-described acts were perpetrated upon the person of the then minor Plaintiff on numerous occasions.

20.    In June 2008, in the Fifteenth Judicial Circuit in Palm Beach County, Florida, Defendant, Jeffrey Epstein, entered pleas of "guilty" to various Florida state crimes involving the solicitation of minors for prostitution and the procurement of minors for the purposes of prostitution.

21.    As a condition of that plea, and in exchange for the Federal Government not prosecuting Defendant, Jeffrey Epstein, for numerous federal offenses, Defendant, Jeffrey Epstein, additionally entered into an agreement with the Federal Government acknowledging that the Plaintiff was a victim of his conduct.

22.     The Plaintiff is included in the list of victims identified by the Federal Government as victims of the Defendant, Jeffrey Epstein's illegal conduct.  Defendant, Jeffrey Epstein, is thus estopped by his plea and agreement with the Federal Government from denying the acts alleged in this Complaint, and must effectively admit liability to the Plaintiff.

### COUNT I

**Sexual Exploitation, Sexual Abuse and/or Sexual Assault of a Minor**
**Against Defendant, Jeffrey Epstein**

23.     The Plaintiff adopts and realleges paragraphs 1 through 22 above.

24.     Defendant, Jeffrey Epstein, tortiously assaulted Plaintiff sexually on numerous occasions between approximately August 2002 and approximately September 2005, and further sexually exploited her and contributed to her delinquency during that time.  Defendant's tortious acts were intentional and these acts are described in the preceding paragraphs.

25.     In sexually abusing, assaulting and exploiting Plaintiff in the manner described in paragraphs 1 through 22, Defendant, Jeffrey Epstein, violated a duty to refrain from committing criminal actions that proximately caused damages to Plaintiff.  A violation of any criminal statute constitutes a breach of that duty and also negligence per se.  The Florida Statutes which Epstein violated include, but may not be limited to:

A.     Chapters 794 – Sexual Battery;

B.     Chapter 800 – Lewdness; Indecent exposure;

C.     Section 827.04 – Contributing to the delinquency of a child;

D.     Section 827.071 – Sexual performance by a child;

E.     Section 796.03 – Procuring a minor for prostitution;

F.     Section 796.07 – Crimes against prostitution;

    G.    Section 796.045 – Sex trafficking;

    H.    Section 796.04 – Forcing, compelling, or coercing another to become a prostitute;

    I.    Section 450.151 – Hiring or employing minor; infliction of pain and suffering; and

    J.    Section 39.01 (67) – Sexual abuse of a child

26.    As a direct and proximate result of Defendant, Jeffrey Epstein's assaults and acts of exploitation on Plaintiff, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, █████, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT II

### Cause of Action Pursuant to Florida Statute 796.09
### Against Defendant, Jeffrey Epstein

27.    The Plaintiff adopts and realleges paragraphs 1 through 22 above.

28.     The allegations contained herein in Count II are a separate and distinct legal remedy.

29.     Defendant, Jeffrey Epstein, was a wealthy and powerful man, and Plaintiff was an economically disadvantaged and impressionable minor.

30.     Defendant, Jeffrey Epstein, used his vast wealth and power to coerce Plaintiff into prostitution and/or coerced her to remain in prostitution.

31.     Defendant, Jeffrey Epstein, coerced Plaintiff into prostitution in one or more of the following ways:

      A.     Domination of her mind and body through exploitive techniques;

      B.     Inducement;

      C.     Promise of greater financial rewards;

      D.     Exploitation of a condition of developmental disability, cognitive limitation, affective disorder, and/or substance dependency;

      E.     Exploitation of human needs for food, shelter or affection;

      F.     Exploitation of underprivileged and vulnerable economic condition or situation;

      G.     Use of a system of recruiting other similarly situated minor girls to further coerce and induce Plaintiff into the lifestyle of prostitution; and

      H.     Exploitation through demonstration of abundant wealth and power to impress a young and vulnerable then minor Plaintiff and to coerce her into prostitution.

32.     As a direct and proximate result of the offenses committed by Defendant, Jeffrey Epstein, against Plaintiff pursuant to Florida Statutes §796.09, the Plaintiff has in the past

Page 8 of 17

suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT III

### Intentional Infliction of Emotional Distress
### Against Defendant, Jeffrey Epstein

33.     The Plaintiff adopts and realleges paragraphs 1 through 22 above.

34.     The Defendant, Jeffrey Epstein's conduct towards the then minor Plaintiff was intentional and reckless.

35.     The Defendant, Jeffrey Epstein, deliberately and recklessly inflicted mental suffering upon the then minor Plaintiff.

36.     The Defendant, Jeffrey Epstein's conduct was outrageous in character, and so extreme in degree, going beyond all bounds of decency.

Page 9 of 17

37.     The Defendant, Jeffrey Epstein's intentional, deliberate and reckless conduct caused severe emotional distress to the Plaintiff. Defendant, at the time he committed these numerous sexual assaults on Plaintiff, had a specific intent to harm the then minor Plaintiff and his conduct did so harm the Plaintiff.

38.     As a direct and proximate result of the Defendant, Jeffrey Epstein's intentional and reckless conduct, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with the Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ██████ demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT IV

### Civil Remedy for Criminal Practices
### Against Defendants, Jeffrey Epstein and Sarah Kellen

39.     The Plaintiff adopts and realleges paragraphs 1 through 22 above.

40.     The allegations contained herein in Count IV are a separate and distinct legal remedy.

41.     The Defendants, Jeffrey Epstein and Sarah Kellen, participated in an enterprise, or conspired or endeavored to so participate, through a pattern of criminal activity in violation of Florida Statutes §772.103(3)-(4).

42.     Defendants, Jeffrey Epstein's and Sarah Kellen's enterprise included, at a minimum, a group of individuals associated in fact to assist Defendant, Jeffrey Epstein, in recruiting and procuring minor girls and obtaining criminal gratification of his illegal sexual interest in minor girls.

43.     The persons constituting the enterprise included a group of individuals associated in fact.  These individuals include Defendants, Jeffrey Epstein and Sarah Kellen, and Nadia Marcinkova, as well as other persons unknown at this time.

44.     The criminal enterprise had a definite structure.  The enterprise operated together on a continuing basis, with largely the same personnel for a common purpose.

45.     The shared purpose of the enterprise was to satisfy Defendant, Jeffrey Epstein's illegal interest in having sexual activities with minor girls.

46.     The enterprise was not a mere informal conspiracy, but had a definite hierarchical structure.  Defendant, Jeffrey Epstein, served informally but effectively as the leader, C.E.O. or "boss" of this organization, directing his underlings how to recruit and procure young girls for his sexual activities and when to bring the girls to his mansion.  Defendant, Jeffrey Epstein's key "lieutenant" in the organization was Defendant, Sarah Kellen, who served as both his scheduler and a recruiter/procurer of the girls.  This was an important function, as the recruiting was necessary to satisfy Defendant, Jeffrey Epstein's desire to abuse a large number of different minor girls with different (albeit similar) physical attributes and the scheduling was necessary to

insure that the minor girls would be brought to Defendant, Jeffrey Epstein's mansion to be sexually abused and prostituted at a time when Defendant, Jeffrey Epstein was there (but not at the same time, when they might learn of other girls' identities and possibly become emboldened to report his activities to law enforcement).

47.    Scheduling was also necessary to ensure secrecy, so that as few persons as possible were aware that minor girls were coming at unusual hours to Defendant, Jeffrey Epstein's mansion.

48.    Defendant, Sarah Kellen, also needed (directly or indirectly) to make transportation arrangements for many of the girls, as they were often too young to drive themselves to and from the mansion. Nadia Marcinkova also served as a recruiter and helped Defendant, Jeffrey Epstein, satisfy his criminal sexual desires by, on occasion, directly participating in sexual abuse and prostitution of the minor girls.

49.    Defendant, Jeffrey Epstein, Defendant, Sarah Kellen, and Nadia Marcinkova all took steps to conceal the existence of the enterprise and to discourage the girls from reporting the sexual abuse and prostitution to law enforcement or other authority figures. Defendant, Jeffrey Epstein, also used otherwise-legitimate business activities to help further the purpose of the criminal enterprise. These apparently legitimate activities provided "cover" for Defendant, Jeffrey Epstein, Defendant, Sarah Kellen, and their associates to commit the crimes.

50.    Defendant, Jeffrey Epstein, also maintained the appearance of an upstanding and prominent banker and investor to discourage the minor girls from reporting the abuse to law enforcement. By projecting an image of financial power (and, relatedly, strong political connections to prominent politicians and current and former government officials and personal

connections to prominent scientists), Defendant, Jeffrey Epstein, hoped to discourage the minor girls from reporting what he was doing to them by making it appear that they would not be believed.    These business activities helped Defendant, Jeffrey Epstein, secure the financial resources to commit the crimes against the minor girls and to pay for prostituting them.

51.    For example, the activities paid for maintaining the mansion where the girls were abused and paid for the cellular telephones and other means of communications that were used to recruit and procure the girls.   The business activities also helped to provide the funds to pay Defendant, Sarah Kellen, and Nadia Marcinkova large sums of money to participate in the illegal enterprise and make payments to the girls for performing sexual acts.

52.    This enterprise produced a course of conduct that lead to a pattern of criminal activity involving more than 100 instances of sexual abuse and prostitution of minor girls.   This enterprise was the vehicle for Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, to commit his crimes against Plaintiff and other minor girls and operated on a continuing basis from at least as early as June 2002 to November 2005 (and, in regard to witness tampering and harassment, through at least early 2008).   The enterprise enabled Defendant, Jeffrey Epstein, to sexually abuse and prostitute the Plaintiff on numerous occasions.

53.    The usual and daily activities of the criminal enterprise included scheduling meetings, activities, and other events for Defendant, Jeffrey Epstein – including scheduling "private time" in his mansion for Defendant, Jeffrey Epstein, to commit sexual crimes against minor girls.   Defendant, Sarah Kellen, served as Defendant, Jeffrey Epstein's scheduler, scheduling both otherwise-lawful activities to provide "cover" for Defendant, Jeffrey Epstein, as well as the illegal sexual activities.

54.     The exact frequency with which the sexual crimes took place varied and is not known; however, when Defendant, Jeffrey Epstein, was in West Palm Beach, Florida, it often occurred on a weekly or daily basis (and, in some instances, took place on several times during a single day).

55.     The scheduling was designed to secure a private place in Defendant, Jeffrey Epstein's mansion when few other persons would be present at the mansion, so as to reduce the chance of detection of Defendant, Jeffrey Epstein's sexual abuse and prostitution as well as to make it more difficult for the minor girls to report his actions to law enforcement or other authorities.

56.     The usual activities of the enterprise also included maintaining the mansion and securing means of communication (i.e., cellular telephones) to recruit minor girls and procure them for prostitution. The activities further included arranging transportation for the girls to and from the mansion if it was necessary.

57.     The enterprise also attempted to make Defendant, Jeffrey Epstein, appear to be an upstanding and law-abiding member of the community and a successful businessperson. The enterprise served as the usual way in which Defendant, Jeffrey Epstein, would obtain sexual gratification.

58.     The criminal acts of Defendants, Jeffrey Epstein and Sarah Kellen, occurred repeatedly over a substantial period of time and were not isolated events.

59.     Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, committed repeated (more than 20) criminal acts of sexual abuse against Plaintiff from approximately August 2002 to September 2005.

60.     In addition, since November 2005 and through the early part of 2008 (and perhaps later), Defendant, Jeffrey Epstein, and others acting at his direction have attempted to discourage the victims of his crimes from reporting his crimes and cooperating with law enforcement.  For example, persons acting at the direction of Defendant, Jeffrey Epstein, have aggressively attempted to "interview" the victims or to "tail" the victims in their cars.  They also harassed a victim shortly before she was to testify at a grand jury investigating Defendant, Jeffrey Epstein. These efforts have been made not for legitimate investigative reasons but rather for the purpose of discouraging the victims from cooperating with law enforcement (and, in at least one case, the investigating grand jury) and from filing civil lawsuits to vindicate their rights.

61.     The Defendants, Jeffrey Epstein and Sarah Kellen, participated in this pattern of criminal activity by engaging in at least two of the following acts of criminal misconduct with the same or similar intents, results, accomplices, victims, and methods of commission within a five year period:

A.     Procuring for prostitution, or causing to be prostituted, any person who is under the age of 18 years in violation of Florida Statutes Chapter 796;

B.     Forcing, compelling, or coercing another to become a prostitute in violation of Florida Statutes §796.04;

C.     Acts of battery in violation of Florida Statutes Chapter 784; and

D.     Sexual performance or exploitation of a child in violation of Florida Statutes §827.071.

62.     Under the plan, scheme, and enterprise, Defendant, Jeffrey Epstein, paid employees and underlings to repeatedly find and bring him minor girls in order for the

Defendant, Jeffrey Epstein, to solicit, induce, coerce, entice, compel or force such girls to engage in acts of prostitution and sexual misconduct.

63.     The Plaintiff was the victim of the Defendants, Jeffrey Epstein's and Sarah Kellen's plan, scheme, and enterprise.  The Plaintiff was called on the telephone and transported by various individuals, including Defendant, Sarah Kellen, to the Defendant, Jeffrey Epstein's residence, where she was placed in a room along with the Defendant, Jeffrey Epstein, enticed to commit acts of prostitution, battery, and sexual exploitation.  The Defendant, Jeffrey Epstein, conspired with Defendant, Sarah Kellen, and his other assistants and employees and various adults and minor children in order to accomplish his enterprise of seeking out, gaining access to, and exploiting minor children such as the Plaintiff.

64.     After introducing Plaintiff into prostitution, Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, enticed Plaintiff to remain in prostitution and be a part of his deviant sexual lifestyle through exploitive techniques, such as offering additional money to Plaintiff in exchange for her bringing him additional minor girls to sexually abuse and commit sexual crimes against.

65.     As a direct and proximate result of Defendant, Jeffrey Epstein's assaults and acts of exploitation on Plaintiff, as assisted by Defendant, Sarah Kellen, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor.  The then minor Plaintiff incurred medical and

psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, under the provisions of Florida Statutes Chapter 772, the Plaintiff demands judgment against the Defendants, Jeffrey Epstein and Sarah Kellen, for compensatory damages, treble damages, costs and attorneys' fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been provided by facsimile and United States mail to: Robert D. Critton, Esquire and Michael J. Pike, Esquire, Burman, Critton, et al., Attorneys for Defendant, 515 North Flagler Drive, Suite 400, West Palm Beach, Florida 33401, this 23rd day of December, 2008.

THE LAW OFFICE OF BRAD EDWARDS &
ASSOCIATES, LLC
Attorneys for Plaintiff
2028 Harrison Street - Suite 202
Hollywood, Florida 33020
Telephone:   954-414-8033
Facsimile:   954-924-1530

Jay Howell, Esquire
Florida Bar #225657
JAY HOWELL & ASSOCIATES, P.A.
Co-Counsel for Plaintiff
644 Cesery Boulevard - Suite 250
Jacksonville, Florida  32211
Telephone:   904-680-1234
Facsimile:   904-680-1238

STATE OF FLORIDA · PALM BEACH COUNTY
I hereby certify that the foregoing is a true copy of the record in my office.
THIS 19 DAY OF January, 20 12
SHARON R. BOCK
CLERK & COMPTROLLER
By
DEPUTY CLERK

By:
Brad Edwards
Florida Bar #542075

Page 17 of 17

# Exhibit C

IN THE CIRCUIT COURT OF THE 15th
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: _____

███,

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

50 2008 CA 0 ███ XXXXWB

## COMPLAINT

Plaintiff, ███, by and through her undersigned counsel, sues the Defendant, Jeffrey Epstein, and alleges:

1.     This is an action in an amount in excess of $15,000.00, exclusive of interest and costs and is within the jurisdictional limits of this Court.

2.     This Complaint is brought under a fictitious name in order to protect the identity of the Plaintiff, ███, because this Complaint makes allegations of sexual assault and child abuse of a then minor.

3.     At all times material to this cause of action, the Plaintiff, ███ (hereinafter referred to as "Plaintiff"), was a resident of Palm Beach County, Florida.

4.     At all times material to this cause of action, the Defendant, Jeffrey Epstein, had a residence located at 358 El Brillo Way, West Palm Beach, Palm Beach County, Florida.

Page 1 of 12

5.     Defendant, Jeffrey Epstein, is currently a citizen of the State of Florida, as he currently resides in West Palm Beach, Florida at the Palm Beach County Jail and has the intention to remain in Florida.  This is substantiated by the residence that he maintains at 358 El Brillo Way, West Palm Beach, Florida where he spends the majority of his time, and intentions to remain at that address permanently are further evidenced by his statements to the Court during his State Plea colloquy on June 30, 2008, case number 06CF009454AMB, taken before the Honorable Judge Dale Pucillo, wherein he indicated that after his release from Palm Beach County Jail he intends to reside permanently at his home at 358 El Brillo Way, West Palm Beach, Florida, and he plans to work in West Palm Beach, Florida as well.

6.     At all times material to this cause of action, the Defendant, Jeffrey Epstein, was an adult male born in 1953.

7.     At all times material, the Defendant, Jeffrey Epstein, owed a duty unto Plaintiff to treat her in a non-negligent manner and to not commit intentional or tortious or illegal acts against her.

8.     All of the allegations within this Complaint occurred in West Palm Beach, Florida.

## FACTUAL ALLEGATIONS

9.     Upon information and belief, the Defendant, Jeffrey Epstein, has demonstrated a sexual preference and obsession for minor girls.

10.    The Defendant, Jeffrey Epstein, developed a plan, scheme, and criminal enterprise that included an elaborate system wherein the then minor Plaintiff was brought to the Defendant,

Jeffrey Epstein's residence by the Defendant's employees, recruiters, and assistants.  When the assistants and employees left the then minor Plaintiff and other minor girls alone in a room at the Defendant's mansion, the Defendant, Jeffrey Epstein, himself would appear, remove his clothing, and direct the then minor Plaintiff to remove her clothing.  He would then perform one or more lewd, lascivious, and sexual acts, including, but not limited to, masturbation, touching of the then minor Plaintiff's sexual organs, using vibrators or sexual toys on the then minor Plaintiff, coercing the then minor Plaintiff into sexual acts with himself, and digitally penetrating the then minor Plaintiff.  He would then pay the Plaintiff for engaging in this sexual activity.

11.     The Plaintiff was first brought to the Defendant, Jeffrey Epstein's mansion in 2002 when she was a fourteen-year old in middle school.

12.     The Defendant, Jeffrey Epstein, a wealthy financier with a lavish home, significant wealth, and a network of assistants and employees, used his resources and his influence over a vulnerable minor child to engage in a systematic pattern of sexually exploitive behavior.

13.     Beginning in approximately July 2002 and continuing until approximately September 2005, the Defendant, Jeffrey Epstein, coerced and/or enticed the impressionable, vulnerable, and economically deprived then minor Plaintiff to commit various acts of sexual misconduct.  These acts included, but were not limited to, fondling and inappropriate and illegal sexual touching of the then minor Plaintiff, sexual misconduct and masturbation of the Defendant, Jeffrey Epstein, in the presence of the then minor Plaintiff, and encouraging the then minor Plaintiff to become involved in prostitution; Defendant, Jeffrey Epstein, committed numerous criminal sexual offenses against the then minor Plaintiff including, but not limited to,

sexual battery, solicitation of prostitution, procurement of a minor for the purposes of prostitution, and lewd and lascivious assaults upon the person of the then minor Plaintiff.

14.     In addition to the direct sexual abuse and molestation of the then minor Plaintiff, Defendant, Jeffrey Epstein, instructed, coerced and otherwise induced the then minor Plaintiff to bring him numerous other minor children for the purposes of further satisfying his deviant sexual attraction to minors.  Defendant, Jeffrey Epstein, used his money, wealth and power to unduly and improperly manipulate and influence the then minor Plaintiff to bring him these other minor girls in exchange for money.  This influence led the then minor Plaintiff away from the life of a middle school aged child and into a delinquent lifestyle.

15.     The acts referenced above in paragraphs 10 through 14, committed by Defendant, Jeffrey Epstein, against the then minor Plaintiff were committed in violation of numerous criminal State statutes condemning the sexual exploitation of minor children, prostitution, sexual performances by a child, lewd and lascivious assaults, sexual battery, contributing to the delinquency of a minor and other crimes, specifically including, but not limited to, those criminal offenses outlined in Chapters 794, 800, 827 and 847 of the Florida Statutes, as well as those designated in Florida Statutes §796.03, §796.07, §796.045, §796.04, §796.09, §39.01, and §827.04.

16.     The above-described acts took place in Palm Beach County, Florida at the residence of the Defendant, Jeffrey Epstein.  Any assertions by the Defendant, Jeffrey Epstein, that he was unaware of the age of the then minor Plaintiff are belied by his actions and rendered irrelevant by the provisions of applicable Florida Statutes concerning the sexual exploitation and

abuse of a minor child. The Defendant, Jeffrey Epstein, at all times material to this cause of action, knew and should have known of the Plaintiff's minority.

17.     The above-described acts were perpetrated upon the person of the then minor Plaintiff regularly and on numerous occasions.

18.     In June 2008, in the Fifteenth Judicial Circuit in Palm Beach County, Florida, the Defendant, Jeffrey Epstein, entered pleas of "guilty" to various Florida state crimes involving the solicitation of minors for prostitution and the procurement of minors for the purposes of prostitution.

19.     As a condition of that plea, and in exchange for the Federal Government not prosecuting the Defendant, Jeffrey Epstein, for numerous federal offenses, Defendant, Jeffrey Epstein, additionally entered into an agreement with the Federal Government acknowledging that ██████ was a victim of his conduct.

20.     The Plaintiff is included in the list of victims identified by the Federal Government as victims of the Defendant, Jeffrey Epstein's illegal conduct. The Defendant, Jeffrey Epstein, is thus estopped by his plea and agreement with the Federal Government from denying the acts alleged in this Complaint, and must effectively admit liability to the Plaintiff.

## COUNT I

### Sexual Exploitation, Sexual Abuse and/or Sexual Assault of a Minor

21.     The Plaintiff repeats and realleges paragraphs 1 through 20 above.

22.     Defendant, Jeffrey Epstein, tortiously assaulted Plaintiff sexually on numerous occasions between approximately July 2002 and approximately September 2005, and further

Page 5 of 12

sexually exploited her and contributed to her delinquency during that time. Defendant's acts were outrageous, egregious, intentional, unlawful, offensive and harmful.

23.     The sexual assaults were in violation of the numerous state statutes described in paragraph 15 above, and the assaults and acts of exploitation were committed by Defendant, Jeffrey Epstein, willfully and maliciously.

24.     As a direct and proximate result of Defendant, Jeffrey Epstein's assaults on the Plaintiff, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT II

### Cause of Action Pursuant to Florida Statute 796.09

25.     The Plaintiff adopts and realleges paragraphs 1 through 20 above.

26.     The allegations contained herein in Count II are a separate and distinct legal remedy.

27.     Defendant, Jeffrey Epstein, was a wealthy and powerful man, and Plaintiff was an economically disadvantaged and impressionable minor.

28.     Defendant, Jeffrey Epstein, used his vast wealth and power to coerce Plaintiff into prostitution and/or coerced her to remain in prostitution.

29.     Defendant, Jeffrey Epstein coerced Plaintiff into prostitution in one or more of the following ways:

        A.     Domination of her mind and body through exploitive techniques;

        B.     Inducement;

        C.     Promise of greater financial rewards;

        D.     Exploitation of a condition of developmental disability, cognitive limitation, affective disorder, and/or substance dependency;

        E.     Exploitation of human needs for food, shelter or affection;

        F.     Exploitation of underprivileged and vulnerable economic condition or situation;

        G.     Use of a system of recruiting other similarly situated minor girls to further coerce and induce Plaintiff into the lifestyle of prostitution; and

H.      Exploitation through demonstration of abundant wealth and power to impress a young and vulnerable then minor Plaintiff and to coerce her into prostitution.

30.     As a direct and proximate result of the offenses committed by Defendant, Jeffrey Epstein, against Plaintiff pursuant to Florida Statutes §769.09, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT III

### Intentional Infliction of Emotional Distress

31.     The Plaintiff adopts and realleges paragraphs 1 through 20 above.

32.    The Defendant, Jeffrey Epstein's conduct towards the then minor Plaintiff was intentional and reckless.

33.    The Defendant, Jeffrey Epstein, deliberately and recklessly inflicted mental suffering upon the then minor Plaintiff.

34.    The Defendant, Jeffrey Epstein's conduct was outrageous in character, and so extreme in degree, going beyond all bounds of decency.

35.    The Defendant, Jeffrey Epstein's intentional, deliberate and reckless conduct caused severe emotional distress to the Plaintiff. Defendant, at the time he committed these numerous sexual assaults on Plaintiff, had a specific intent to harm the then minor Plaintiff and his conduct did so harm the Plaintiff.

36.    As a direct and proximate result of the Defendant, Jeffrey Epstein's intentional and reckless conduct, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with the Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this

Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT IV

### Civil Remedy for Criminal Practices

37.    The Plaintiff realleges paragraphs 1 through 20 above.

38.    The allegations contained herein in Count IV are a separate and distinct legal remedy.

39.    The Defendant, Jeffrey Epstein, participated in an enterprise, or conspired or endeavored to so participate, through a pattern of criminal activity in violation of Florida Statutes §772.103(3)-(4).

40.    The Defendant, Jeffrey Epstein, participated in this pattern of criminal activity by engaging in at least two of the following acts of criminal misconduct with the same or similar intents, results, accomplices, victims, and methods of commission within a five year period:

A.    Procuring for prostitution, or causing to be prostituted, any person who is under the age of 18 years in violation of Florida Statutes Chapter 796;

B.    Forcing, compelling, or coercing another to become a prostitute in violation of Florida Statutes §796.04;

C.    Acts of battery in violation of Florida Statutes Chapter 784;

D.    Act of Lewdness in violation of Florida Statutes Chapter 800;

E.    Sexual performance or exploitation of a child in violation of Florida Statutes §827.071; and

F.    Other crimes involving contributing to the delinquency of a child, sexual abuse of a child, and coercing a child into prostitution.

41.    Under the Defendant, Jeffrey Epstein's plan, scheme, and enterprise, the Defendant, Jeffrey Epstein, paid employees and underlings to repeatedly find and bring him minor girls in order for the Defendant to solicit, induce, coerce, entice, compel or force such girls to engage in acts of prostitution and sexual misconduct.

42.    The Plaintiff was the victim of the Defendant, Jeffrey Epstein's plan, scheme, and enterprise. The Plaintiff was called on the telephone and transported by various individuals to the Defendant, Jeffrey Epstein's residence, where she was placed in a room along with the Defendant, enticed to commit acts of prostitution, battery, and sexual exploitation. The Defendant, Jeffrey Epstein, conspired with his assistants and employees and various adults and minor children in order to accomplish his enterprise of seeking out, gaining access to, and exploiting minor children such as the Plaintiff.

43.    After introducing Plaintiff into prostitution, he enticed her to remain in prostitution and be a part of his deviant sexual lifestyle through exploitive techniques, such as offering additional money to Plaintiff in exchange for her bringing him additional minor girls to sexually abuse and commit sexual crimes against.

WHEREFORE, under the provisions of Florida Statutes Chapter 772, the Plaintiff, ▮▮▮, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, treble

damages, costs and attorneys' fees, and such other and further relief as this Court deems just and

proper, and hereby demands trial by jury on all issues triable as of right by a jury.

DATED this 10th day of September, 2008.

THE LAW OFFICE OF BRAD EDWARDS &
ASSOCIATES, LLC
Attorneys for Plaintiff
2028 Harrison Street
Suite 202
Hollywood, Florida 33020
Telephone:    954-414-8033
Facsimile:    954-924-1530

Jay Howell, Esquire
Florida Bar #225657
JAY HOWELL & ASSOCIATES, P.A.
Co-Counsel for Plaintiff
644 Cesery Boulevard
Suite 250
Jacksonville, Florida   32211
Telephone:    904-680-1234
Facsimile:    904-680-1238

By: _____
Brad Edwards
Florida Bar #542075

STATE OF FLORIDA • PALM BEACH COUNTY
I hereby certify that the
foregoing is a true copy
of the record in my office.
THIS 19 DAY OF January, 20 12
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

Page 12 of 12

# Exhibit D

IN THE CIRCUIT COURT OF THE 15th
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:    50 2008 CA ███ XXXXMB AD

█████

            Plaintiff,                    :
                                          :
vs.                                       :
                                          :
JEFFREY EPSTEIN and                       :
SARAH KELLEN,                             :
                                          :
            Defendants.                   :
_____       :

## AMENDED COMPLAINT

Plaintiff, ███ , by and through her undersigned counsel, sues the Defendants, Jeffrey
Epstein and Sarah Kellen, and alleges:

1.    This is an action in an amount in excess of $15,000.00, exclusive of interest and
costs and is within the jurisdictional limits of this Court.

2.    This Complaint is brought under a fictitious name in order to protect the identity
of the Plaintiff because this Complaint makes allegations of sexual assault and child abuse of a
then minor.

3.    At all times material to this cause of action, the Plaintiff, ███ (hereinafter
referred to as "Plaintiff"), was a resident of Palm Beach County, Florida.

4.      At all times material to this cause of action, Defendant, Jeffrey Epstein, had a residence located at 358 El Brillo Way, West Palm Beach, Palm Beach County, Florida.

5.      Defendant, Jeffrey Epstein, is currently a citizen of the State of Florida, as he currently resides in West Palm Beach, Florida at the Palm Beach County Jail and has the intention to remain in Florida. This is substantiated by the residence that he maintains at 358 El Brillo Way, West Palm Beach, Florida where he spends the majority of his time, and intentions to remain at that address permanently are further evidenced by his statements to the Court during his State Plea colloquy on June 30, 2008, case number 06CF009454AMB, taken before the Honorable Judge Dale Pucillo, wherein he indicated that after his release from the Palm Beach County Jail he intends to reside permanently at his home at 358 El Brillo Way, West Palm Beach, Florida, and he plans to work in West Palm Beach, Florida as well.

6.      At all times material to this cause of action, Defendant, Jeffrey Epstein, was an adult male born in 1953.

7.      Defendant, Sarah Kellen, is a citizen and resident of the State of New York.

8.      At all times material to this cause of action, Defendant, Sarah Kellen, was an adult female.

9.      At all times material to this cause of action, the Defendants, Jeffrey Epstein and Sarah Kellen, owed a duty unto Plaintiff to treat her in a non-negligent manner and to not commit intentional or tortious or illegal acts against her.

10.     All of the allegations within this Complaint occurred in West Palm Beach, Florida.

## FACTUAL ALLEGATIONS

11      Upon information and belief, Defendant, Jeffrey Epstein, has demonstrated a sexual preference and obsession for minor girls.

12.     Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, developed a plan, scheme, and criminal enterprise that included an elaborate system wherein the then minor Plaintiff was brought to the Defendant, Jeffrey Epstein's residence by the Defendant's employees, recruiters, and assistants, including Defendant, Sarah Kellen. When the assistants and employees left the then minor Plaintiff and other minor girls alone in a room at the Defendant's mansion, Defendant, Jeffrey Epstein, himself would appear, remove his clothing, and direct the then minor Plaintiff to remove her clothing. He would then perform one or more lewd, lascivious, and sexual acts, including, but not limited to, masturbation, touching of the then minor Plaintiff's sexual organs, using vibrators or sexual toys on the then minor Plaintiff, coercing the then minor Plaintiff into sexual acts with himself or others, and digitally penetrating the then minor Plaintiff. He would then pay the Plaintiff for engaging in this sexual activity.

13.     The Plaintiff was first brought to Defendant, Jeffrey Epstein's mansion in 2002 when she was a fourteen-year old in middle school.

14.     The Defendant, Jeffrey Epstein, a wealthy financier with a lavish home, significant wealth, and a network of assistants and employees, including Defendant, Sarah Kellen, used his resources and his influence over a vulnerable minor child to engage in a systematic pattern of sexually exploitive behavior.

15.     Beginning in approximately July 2002 and continuing until approximately September 2005, Defendant, Jeffrey Epstein, coerced, induced and/or enticed the impressionable,

vulnerable, and economically deprived then minor Plaintiff to commit various acts of sexual misconduct. These acts included, but were not limited to, fondling and inappropriate and illegal sexual touching of the then minor Plaintiff, sexual misconduct and masturbation of Defendant, Jeffrey Epstein, in the presence of the then minor Plaintiff, and encouraging the then minor Plaintiff to become involved in prostitution; Defendant, Jeffrey Epstein, committed numerous criminal sexual offenses against the then minor Plaintiff including, but not limited to, sexual battery, solicitation of prostitution, procurement of a minor for the purposes of prostitution, and lewd and lascivious assaults upon the person of the then minor Plaintiff.

16.    In addition to the direct sexual abuse and molestation of the then minor Plaintiff, Defendant, Jeffrey Epstein, instructed, coerced and otherwise induced the then minor Plaintiff to bring him numerous other minor children for the purposes of further satisfying his deviant sexual attraction to minors. Defendant, Jeffrey Epstein, used his money, wealth and power to unduly and improperly manipulate and influence the then minor Plaintiff to bring him these other minor girls in exchange for money. This influence led the then minor Plaintiff away from the life of a middle school aged child and into a delinquent lifestyle.

17.    The acts referenced above in paragraphs 12 through 16, committed by Defendant, Jeffrey Epstein, against the then minor Plaintiff were committed in violation of numerous criminal State statutes condemning the sexual exploitation of minor children, prostitution, sexual performances by a child, lewd and lascivious assaults, sexual battery, contributing to the delinquency of a minor and other crimes, specifically including, but not limited to, those criminal offenses outlined in Chapters 794, 800, and 827 of the Florida Statutes, as well as those

designated in Florida Statutes §796.03, §796.07, §796.045, §796.04, §796.09, §39.01, §450.151, and §827.04.

18.    The above-described acts took place in Palm Beach County, Florida at the residence of the Defendant, Jeffrey Epstein.  Any assertions by Defendants, Jeffrey Epstein and Sarah Kellen, that they were unaware of the age of the then minor Plaintiff are belied by their actions and rendered irrelevant by the provisions of applicable Florida Statutes concerning the sexual exploitation and abuse of a minor child.   The Defendants, Jeffrey Epstein and Sarah Kellen, at all times material to this cause of action, knew and should have known of the Plaintiff's minority.

19.    The above-described acts were perpetrated upon the person of the then minor Plaintiff on numerous occasions.

20.    In June 2008, in the Fifteenth Judicial Circuit in Palm Beach County, Florida, Defendant, Jeffrey Epstein, entered pleas of "guilty" to various Florida state crimes involving the solicitation of minors for prostitution and the procurement of minors for the purposes of prostitution.

21.    As a condition of that plea, and in exchange for the Federal Government not prosecuting Defendant, Jeffrey Epstein, for numerous federal offenses, Defendant, Jeffrey Epstein, additionally entered into an agreement with the Federal Government acknowledging that the Plaintiff was a victim of his conduct.

22.    The Plaintiff is included in the list of victims identified by the Federal Government as victims of the Defendant, Jeffrey Epstein's illegal conduct.  Defendant, Jeffrey

Epstein, is thus estopped by his plea and agreement with the Federal Government from denying the acts alleged in this Complaint, and must effectively admit liability to the Plaintiff.

## COUNT I

### Sexual Exploitation, Sexual Abuse and/or Sexual Assault of a Minor Against Defendant, Jeffrey Epstein

23.     The Plaintiff adopts and realleges paragraphs 1 through 22 above.

24.     Defendant, Jeffrey Epstein, tortiously assaulted Plaintiff sexually on numerous occasions between approximately July 2002 and approximately September 2005, and further sexually exploited her and contributed to her delinquency during that time.  Defendant's tortious acts were intentional and these acts are described in the preceding paragraphs.

25.     In sexually abusing, assaulting and exploiting Plaintiff in the manner described in paragraphs 1 through 22, Defendant, Jeffrey Epstein, violated a duty to refrain from committing criminal actions that proximately caused damages to Plaintiff.   A violation of any criminal statute constitutes a breach of that duty and also negligence per se.  The Florida Statutes which Epstein violated include, but may not be limited to:

A.     Chapters 794 – Sexual Battery;

B.     Chapter 800 – Lewdness; Indecent exposure;

C.     Section 827.04 – Contributing to the delinquency of a child;

D.     Section 827.071 – Sexual performance by a child;

E.     Section 796.03 – Procuring a minor for prostitution;

F.     Section 796.07 – Crimes against prostitution;

G.     Section 796.045 – Sex trafficking;

H.      Section 796.04 – Forcing, compelling, or coercing another to become a prostitute;

I.      Section 450.151 – Hiring or employing minor; infliction of pain and suffering; and

J.      Section 39.01 (67) – Sexual abuse of a child

26.     As a direct and proximate result of Defendant, Jeffrey Epstein's assaults and acts of exploitation on Plaintiff, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ███, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT II

### Cause of Action Pursuant to Florida Statute 796.09
### Against Defendant, Jeffrey Epstein

27.     The Plaintiff adopts and realleges paragraphs 1 through 22 above.

28.     The allegations contained herein in Count II are a separate and distinct legal remedy.

29.     Defendant, Jeffrey Epstein, was a wealthy and powerful man, and Plaintiff was an economically disadvantaged and impressionable minor.

30.     Defendant, Jeffrey Epstein, used his vast wealth and power to coerce Plaintiff into prostitution and/or coerced her to remain in prostitution.

31.     Defendant, Jeffrey Epstein, coerced Plaintiff into prostitution in one or more of the following ways:

     A.     Domination of her mind and body through exploitive techniques;

     B.     Inducement;

     C.     Promise of greater financial rewards;

     D.     Exploitation of a condition of developmental disability, cognitive limitation, affective disorder, and/or substance dependency;

     E.     Exploitation of human needs for food, shelter or affection;

     F.     Exploitation of underprivileged and vulnerable economic condition or situation;

     G.     Use of a system of recruiting other similarly situated minor girls to further coerce and induce Plaintiff into the lifestyle of prostitution; and

     H.     Exploitation through demonstration of abundant wealth and power to impress a young and vulnerable then minor Plaintiff and to coerce her into prostitution.

32.     As a direct and proximate result of the offenses committed by Defendant, Jeffrey Epstein, against Plaintiff pursuant to Florida Statutes §796.09, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of

dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ▮▮▮, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages, attorney's fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

### COUNT III

#### Intentional Infliction of Emotional Distress
#### Against Defendant, Jeffrey Epstein

33. The Plaintiff adopts and realleges paragraphs 1 through 22 above.

34. The Defendant, Jeffrey Epstein's conduct towards the then minor Plaintiff was intentional and reckless.

35. The Defendant, Jeffrey Epstein, deliberately and recklessly inflicted mental suffering upon the then minor Plaintiff.

36. The Defendant, Jeffrey Epstein's conduct was outrageous in character, and so extreme in degree, going beyond all bounds of decency.

37. The Defendant, Jeffrey Epstein's intentional, deliberate and reckless conduct caused severe emotional distress to the Plaintiff. Defendant, at the time he committed these

numerous sexual assaults on Plaintiff, had a specific intent to harm the then minor Plaintiff and his conduct did so harm the Plaintiff.

38.     As a direct and proximate result of the Defendant, Jeffrey Epstein's intentional and reckless conduct, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with the Defendant, Jeffrey Epstein, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. The then minor Plaintiff incurred medical and psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, the Plaintiff, ████, demands judgment against the Defendant, Jeffrey Epstein, for compensatory damages and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT IV

### Civil Remedy for Criminal Practices
### Against Defendants, Jeffrey Epstein and Sarah Kellen

39.     The Plaintiff adopts and realleges paragraphs 1 through 22 above.

40.     The allegations contained herein in Count IV are a separate and distinct legal remedy.

Page 10 of 17

41.     The Defendants, Jeffrey Epstein and Sarah Kellen, participated in an enterprise, or conspired or endeavored to so participate, through a pattern of criminal activity in violation of Florida Statutes §772.103(3)-(4).

42.     Defendants, Jeffrey Epstein's and Sarah Kellen's enterprise included, at a minimum, a group of individuals associated in fact to assist Defendant, Jeffrey Epstein, in recruiting and procuring minor girls and obtaining criminal gratification of his illegal sexual interest in minor girls.

43.     The persons constituting the enterprise included a group of individuals associated in fact.  These individuals include Defendants, Jeffrey Epstein and Sarah Kellen, and Nadia Marcinkova, as well as other persons unknown at this time.

44.     The criminal enterprise had a definite structure.  The enterprise operated together on a continuing basis, with largely the same personnel for a common purpose.

45.     The shared purpose of the enterprise was to satisfy Defendant, Jeffrey Epstein's illegal interest in having sexual activities with minor girls.

46.     The enterprise was not a mere informal conspiracy, but had a definite hierarchical structure.  Defendant, Jeffrey Epstein, served informally but effectively as the leader, C.E.O. or "boss" of this organization, directing his underlings how to recruit and procure young girls for his sexual activities and when to bring the girls to his mansion.  Defendant, Jeffrey Epstein's key "lieutenant" in the organization was Defendant, Sarah Kellen, who served as both his scheduler and a recruiter/procurer of the girls.  This was an important function, as the recruiting was necessary to satisfy Defendant, Jeffrey Epstein's desire to abuse a large number of different minor girls with different (albeit similar) physical attributes and the scheduling was necessary to

insure that the minor girls would be brought to Defendant, Jeffrey Epstein's mansion to be sexually abused and prostituted at a time when Defendant, Jeffrey Epstein was there (but not at the same time, when they might learn of other girls' identities and possibly become emboldened to report his activities to law enforcement).

47.     Scheduling was also necessary to ensure secrecy, so that as few persons as possible were aware that minor girls were coming at unusual hours to Defendant, Jeffrey Epstein's mansion.

48.     Defendant, Sarah Kellen, also needed (directly or indirectly) to make transportation arrangements for many of the girls, as they were often too young to drive themselves to and from the mansion.  Nadia Marcinkova also served as a recruiter and helped Defendant, Jeffrey Epstein, satisfy his criminal sexual desires by, on occasion, directly participating in sexual abuse and prostitution of the minor girls.

49.     Defendant, Jeffrey Epstein, Defendant, Sarah Kellen, and Nadia Marcinkova all took steps to conceal the existence of the enterprise and to discourage the girls from reporting the sexual abuse and prostitution to law enforcement or other authority figures.  Defendant, Jeffrey Epstein, also used otherwise-legitimate business activities to help further the purpose of the criminal enterprise.  These apparently legitimate activities provided "cover" for Defendant, Jeffrey Epstein, Defendant, Sarah Kellen, and their associates to commit the crimes.

50.     Defendant, Jeffrey Epstein, also maintained the appearance of an upstanding and prominent banker and investor to discourage the minor girls from reporting the abuse to law enforcement.  By projecting an image of financial power (and, relatedly, strong political connections to prominent politicians and current and former government officials and personal

connections to prominent scientists), Defendant, Jeffrey Epstein, hoped to discourage the minor girls from reporting what he was doing to them by making it appear that they would not be believed.  These business activities helped Defendant, Jeffrey Epstein, secure the financial resources to commit the crimes against the minor girls and to pay for prostituting them.

51.     For example, the activities paid for maintaining the mansion where the girls were abused and paid for the cellular telephones and other means of communications that were used to recruit and procure the girls.  The business activities also helped to provide the funds to pay Defendant, Sarah Kellen, and Nadia Marcinkova large sums of money to participate in the illegal enterprise and make payments to the girls for performing sexual acts.

52.     This enterprise produced a course of conduct that lead to a pattern of criminal activity involving more than 100 instances of sexual abuse and prostitution of minor girls.  This enterprise was the vehicle for Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, to commit his crimes against Plaintiff and other minor girls and operated on a continuing basis from at least as early as June 2002 to November 2005 (and, in regard to witness tampering and harassment, through at least early 2008).  The enterprise enabled Defendant, Jeffrey Epstein, to sexually abuse and prostitute the Plaintiff on numerous occasions.

53.     The usual and daily activities of the criminal enterprise included scheduling meetings, activities, and other events for Defendant, Jeffrey Epstein – including scheduling "private time" in his mansion for Defendant, Jeffrey Epstein, to commit sexual crimes against minor girls.  Defendant, Sarah Kellen, served as Defendant, Jeffrey Epstein's scheduler, scheduling both otherwise-lawful activities to provide "cover" for Defendant, Jeffrey Epstein, as well as the illegal sexual activities.

54.     The exact frequency with which the sexual crimes took place varied and is not known; however, when Defendant, Jeffrey Epstein, was in West Palm Beach, Florida, it often occurred on a weekly or daily basis (and, in some instances, took place on several times during a single day).

55.     The scheduling was designed to secure a private place in Defendant, Jeffrey Epstein's mansion when few other persons would be present at the mansion, so as to reduce the chance of detection of Defendant, Jeffrey Epstein's sexual abuse and prostitution as well as to make it more difficult for the minor girls to report his actions to law enforcement or other authorities.

56.     The usual activities of the enterprise also included maintaining the mansion and securing means of communication (i.e., cellular telephones) to recruit minor girls and procure them for prostitution.  The activities further included arranging transportation for the girls to and from the mansion if it was necessary.

57.     The enterprise also attempted to make Defendant, Jeffrey Epstein, appear to be an upstanding and law-abiding member of the community and a successful businessperson.  The enterprise served as the usual way in which Defendant, Jeffrey Epstein, would obtain sexual gratification.

58.     The criminal acts of Defendants, Jeffrey Epstein and Sarah Kellen, occurred repeatedly over a substantial period of time and were not isolated events.

59.     Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, committed repeated (more than 20) criminal acts of sexual abuse against Plaintiff from approximately July 2002 to September 2005.

60.     In addition, since November 2005 and through the early part of 2008 (and perhaps later), Defendant, Jeffrey Epstein, and others acting at his direction have attempted to discourage the victims of his crimes from reporting his crimes and cooperating with law enforcement.  For example, persons acting at the direction of Defendant, Jeffrey Epstein, have aggressively attempted to "interview" the victims or to "tail" the victims in their cars.  They also harassed a victim shortly before she was to testify at a grand jury investigating Defendant, Jeffrey Epstein.  These efforts have been made not for legitimate investigative reasons but rather for the purpose of discouraging the victims from cooperating with law enforcement (and, in at least one case, the investigating grand jury) and from filing civil lawsuits to vindicate their rights.

61.     The Defendants, Jeffrey Epstein and Sarah Kellen, participated in this pattern of criminal activity by engaging in at least two of the following acts of criminal misconduct with the same or similar intents, results, accomplices, victims, and methods of commission within a five year period:

A.     Procuring for prostitution, or causing to be prostituted, any person who is under the age of 18 years in violation of Florida Statutes Chapter 796;

B.     Forcing, compelling, or coercing another to become a prostitute in violation of Florida Statutes §796.04;

C.     Acts of battery in violation of Florida Statutes Chapter 784; and

D.     Sexual performance or exploitation of a child in violation of Florida Statutes §827.071.

62.     Under the plan, scheme, and enterprise, Defendant, Jeffrey Epstein, paid employees and underlings to repeatedly find and bring him minor girls in order for the

Defendant, Jeffrey Epstein, to solicit, induce, coerce, entice, compel or force such girls to engage in acts of prostitution and sexual misconduct.

63.     The Plaintiff was the victim of the Defendants, Jeffrey Epstein's and Sarah Kellen's plan, scheme, and enterprise.  The Plaintiff was called on the telephone and transported by various individuals, including Defendant, Sarah Kellen, to the Defendant, Jeffrey Epstein's residence, where she was placed in a room along with the Defendant, Jeffrey Epstein, enticed to commit acts of prostitution, battery, and sexual exploitation.  The Defendant, Jeffrey Epstein, conspired with Defendant, Sarah Kellen, and his other assistants and employees and various adults and minor children in order to accomplish his enterprise of seeking out, gaining access to, and exploiting minor children such as the Plaintiff.

64.     After introducing Plaintiff into prostitution, Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, enticed Plaintiff to remain in prostitution and be a part of his deviant sexual lifestyle through exploitive techniques, such as offering additional money to Plaintiff in exchange for her bringing him additional minor girls to sexually abuse and commit sexual crimes against.

65.     As a direct and proximate result of Defendant, Jeffrey Epstein's assaults and acts of exploitation on Plaintiff, as assisted by Defendant, Sarah Kellen, the Plaintiff has in the past suffered, and will in the future suffer, physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and other damages associated with Defendant, Jeffrey Epstein, assisted by Defendant, Sarah Kellen, controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor.  The then minor Plaintiff incurred medical and

psychological expenses and the Plaintiff will in the future suffer additional medical and psychological expenses. The Plaintiff has suffered a loss of income, a loss of the capacity to earn income in the future, and a loss of the capacity to enjoy life. These injuries are permanent in nature and the Plaintiff will continue to suffer these losses in the future.

WHEREFORE, under the provisions of Florida Statutes Chapter 772, the Plaintiff demands judgment against the Defendants, Jeffrey Epstein and Sarah Kellen, for compensatory damages, treble damages, costs and attorneys' fees, and such other and further relief as this Court deems just and proper, and hereby demands trial by jury on all issues triable as of right by a jury.

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been provided by facsimile and United States mail to: Robert D. Critton, Esquire and Michael J. Pike, Esquire, Burman, Critton, et al., Attorneys for Defendant, 515 North Flagler Drive, Suite 400, West Palm Beach, Florida 33401, this 23ʳᵈ day of December, 2008.

THE LAW OFFICE OF BRAD EDWARDS &
ASSOCIATES, LLC
Attorneys for Plaintiff
2028 Harrison Street - Suite 202
Hollywood, Florida 33020
Telephone:    954-414-8033
Facsimile:    954-924-1530

Jay Howell, Esquire
Florida Bar #225657
JAY HOWELL & ASSOCIATES, P.A.
Co-Counsel for Plaintiff
644 Cesery Boulevard - Suite 250
Jacksonville, Florida  32211
Telephone:    904-680-1234
Facsimile:    904-680-1238

STATE OF FLORIDA · PALM BEACH COUNTY
I hereby certify that the
foregoing is a true copy
of the record in my office.
THIS 19 DAY OF January 20 12
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

By: _____
Brad Edwards
Florida Bar #542075