UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA

JANE DOE #1 and JANE DOE #2,

    Petitioners,

vs.

UNITED STATES OF AMERICA,

    Respondent.
_____/

RESPONDENT'S OPPOSITION TO PETITIONERS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS THAT ARE NOT PRIVILEGED

Respondent, by and through its undersigned counsel, files its Opposition to Petitioners' Motion to Compel Production of Documents That Are Not Privileged (D.E. 225), and state:

I.    THE GOVERNMENT HAS ASSERTED VALID PRIVILEGES TO DISCLOSURE OF THE REQUESTED DOCUMENTS

The government has provided adequate privilege logs which inform petitioners and the Court of the privilege being asserted, as well as the nature of the documents, in accordance with Fed.R.Civ.P. 26(b)(5)(A)(ii).  Petitioners argue that the privilege log is inadequate, and that "[a]s a result of the Government's failures, it is impossible to even begin to determine which of the Government's assertions of privilege are valid." D.E. 225 at 1.

Petitioners' complaints about the privilege log are baseless "[b]ecause the adequacy of privilege log entries depends on whether the other parties will be able to assess the validity of the privilege claim, the entries should be evaluated not in a vacuum, but in light of information that the parties can be presumed to possess." In re Methyl Tertiary Butyl Ether Products Liability Litigation, 898 F.Supp.2d 584, 590 (S.D.N.Y. 2012)(footnote omitted).  Petitioners object to

every item on the privilege log on the grounds of "Inadequate Log," and "No Factual Underpinnings." D.E. 224-1.  This rote invocation of objections should be rejected because petitioners can be presumed to know what these documents are.  The government invoked the work product doctrine for a number of documents, including a file folder entitled, "Mann Act/Travel to Have Sex w/minor," containing attorney research and handwritten notes.  D.E. 224-1 at 32.  Petitioner's objections include an "Inadequate Log," and "No Factual Underpinnings."   Petitioners' attorneys are presumed to know that the criminal case involving Jeffrey Epstein involved allegations that Epstein had improper sexual contact with minors, since their two clients were sexually abused by Epstein.   Further, they are presumed to know what the Mann Act prohibits, and how a federal prosecutor might conduct research to determine if a Mann Act violation could be successfully prosecuted against Epstein.  Such legal research and handwritten notes, would reflect the mental impressions and strategies of the prosecutor.

The Government's use of categorical privileges, to cover broad classes of documents, is also permitted.  In <u>Federal Deposit Ins. Corp. v. Fidelity and Deposit Company of Maryland</u>, 2013 WL 2421770 (S.D.Ind. 2013), the Court stated that "it agrees with FDIC that individually logging and listing the 12,000 electronic documents is unduly burdensome and unlikely to yield additional information as to whether the documents are protected."  <u>Id.</u> at *8.

     A.     Attorney-Client Privilege

Petitioners' argument that the attorney-client privilege is inapplicable because the government owes a fiduciary duty to the crime victims under 18 U.S.C. § 3771(c)(1), is also incorrect.  First, petitioners provide no authority for their claim that the CVRA creates a fiduciary relationship between the government and a crime victim.  Second, in <u>United States v. Jicarilla Apache Nation</u>, 131 S.Ct. 2313 (2011), the Supreme Court reversed the Court of Federal

Claims' finding that the government was required to produce documents in litigation involving the Jicarilla Apache Nation. The Tribe had instituted a breach of trust action against the United States, claiming the government had mismanaged funds held in trust for the Tribe. The Tribe sought various documents in discovery, which included materials for which the government claimed were protected by the attorney-client privilege. The Court of Federal Claims applied the fiduciary exception to the attorney-client privilege, applied in the context of common law trust, and found the documents were not privileged. 131 S.Ct. at 2319.

The Supreme Court reversed, finding the government is not a private trustee, and the trust defined between the government and the Tribe was governed by statutes, rather than the common law. Id. at 2323. Further, the United States did not obtain legal advice as a "mere representative" of the Tribe, nor was the Tribe the "real client" for whom that advice was intended. Id. at 2326. Assuming any fiduciary relationship exists between the government and a crime victim, such a relationship would be based on the CVRA, not the common law. Further, the government would be managing any trust relationship as a sovereign function, pursuant to the plenary authority of Congress, not as a private trustee. Therefore, the fiduciary exception does not apply.

Also inapplicable is the crime-fraud exception to the attorney-client privilege, invoked by petitioners. D.E. 225 at 2. The courts apply a two-part test to determine if the crime-fraud exception applies to a communication between a lawyer and his client. In re Grand Jury Investigation (Schroeder), 842 F.2d 1223 (11th Cir. 1987). First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second,

there must be a showing that the attorney's assistance was obtain in furtherance of the criminal or fraudulent activity or was closely related to it. Id. at 1226(citations omitted).

In this case, the counsel are Assistant U.S. Attorneys, supervisory Assistant U.S. Attorneys, the United States Attorney, and Department of Justice attorneys. At issue are confidential communications occurring during the criminal investigation of Epstein conducted by the FBI and the U.S. Attorney's Office. The exception does not apply since neither the U.S. Attorney's Office nor the DOJ were "retained" in furtherance of a crime or fraud. Federal law enforcement agencies do not retain attorneys to prosecute cases they investigate. U.S. Attorneys are appointed and have the duty to "prosecute for all offenses against the United States." 28 U.S.C. § 547(1).

Further, it is not a crime to fail to afford a crime victim a right provided under 18 U.S.C. § 3771(a), nor is it a fraud. Section 3771(d)(6) provides that "[n]othing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages." Since the deprivation of any right under the CVRA cannot be the basis of a claim for damages, there is no monetary value attached to such rights. Without actual injury, petitioners cannot establish a claim for fraud in the inducement. PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V., 598 F.3d 802, 808-09 (11th Cir. 2010).

The United States Government is entitled to assert evidentiary privileges like any other litigant, in both criminal and civil litigation. In United States v. Zingsheim, 384 F.3d 867 (7th Cir. 2004), a district court had a standing order requiring the government to provide extra details whenever it requested that a defendant receive a lower sentence due to substantial assistance in

4

the apprehension or prosecution of other offenders.   These extra details included

> c) a copy of a recommendation approved and signed by an individual holding a supervisory position in a the law enforcement agency with whom the defendant cooperated (multiple agencies require multiple submissions), d) a written recommendation of a supervisor in the office of the prosecutor (e.g. United States Attorney, local district attorney or state attorney general), and e) a written report from the downward departure committee which shall include the names and signatures of the committee members who considered the matter, the date(s) the matter was considered, and the recommendations(s) of the committee together with any dissenting view(s).  Failure to adhere to this policy will result in the motion being summarily denied without prejudice.

Id. at 869.

The Seventh Circuit observed that, "[j]udges may not demand that litigants surrender evidentiary privileges as a condition of adjudication:  what a 'privilege' means is an entitlement to withhold information even if it would bear on the merits of a disputed issue." Id. at 871.  As to specific privileges, the appellate court noted that, "[t]he attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government." Id. 871-72(citations omitted).  Thus, e-mails between the FBI and the U.S. Attorney's Office, in the Epstein case, are privileged.

In his affidavit, petitioners' counsel assails the adequacy of the privilege log, and contends that the attorney-client privilege has been waived in certain instances.  D.E. 225-1 at 13-14.   As an example, petitioners contend that the attorney-client privilege has been waived as to the 7/08/08 email from A. Marie Villafana to A. Acosta, J. Sloman, Ki. Atkinson, and FBI re proposed response to Goldberger's letter re victim notification. D.E. 225-1 at 14, ¶ 71.  He claims the emails were not internal to the U.S. Attorney's Office, but were also sent to the FBI, and concludes, "[b]ut the FBI is a law enforcement investigative agency, not an agency that provides legal advice."   Petitioners do not appear to understand that the U.S. Attorney's Office

5

is rendering legal advice to a client agency, the FBI, who investigated Epstein and brought the case to the U.S. Attorney's Office for potential prosecution. Zingsheim, 384 F.3d at 871-72("[t]he attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government."). Similarly, the 9/17/07 e-mail from A. Marie Villafana to J. Richards and N. Kuyrkendall re status update, is protected by the attorney-client privilege. D.E. 225-1 at 14-15, ¶ 73. Petitioners recognize that Richards and Kuyrkendall are FBI agents, but apparently believe that communications between the U.S. Attorney's Office, regarding a case brought by the FBI, to the FBI agents investigating the case, are not privileged communications. Petitioners' view is incorrect since the FBI is a client agency in the prosecution of Epstein, and the communication was made to the client agency.

      B.      Attorney Work-Product

As to work-product, the Zingsheim court noted that, "[t]he work-product privilege applies to many other discussions between prosecutors and investigating agents, both state and federal. Id. at 872, citing FTC v. Grolier, Inc., 462 U.S. 19 (1983). Therefore, the government is entitled to invoke the work product privilege for written documents and communications prepared in anticipation of the criminal prosecution of Jeffrey Epstein, which contain mental impressions, theories, opinions, factual information, and conclusions regarding the case.

Petitioners erroneously maintain that documents not prepared in anticipation of the CVRA litigation do not enjoy the protection of the work-product doctrine. D.E. 225 at 3. In FTC v. Grolier, supra, the Supreme Court examined Fed.R.Civ.P. 26(b)(3) and remarked that, "the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." 462 U.S. at 25(emphasis in original). Frontier Refining, Inc. v. Gorman-Rupp Company, Inc., 136 F.3d 695, 703 (9th Cir.

1998)("Based on the compelling dicta in *Grolier* and the reasoning set out in the circuit court opinions cited above, we conclude that the work product doctrine extends to subsequent litigation."). Therefore, materials prepared in anticipation of the Epstein criminal case are covered by the work product doctrine.

Similarly unavailing is petitioners' contention that the work product doctrine is inapplicable because they are making a claim that public prosecutors violated their public responsibilities under the CVRA. D.E. 225 at 5. They rely upon U.S. v. Arthur Young & Company, 465 U.S. 805 (1984), a case involving a summons served by the IRS upon an accounting firm. The IRS summons was issued pursuant to authority granted by 26 U.S.C. § 7602, which authorizes the Secretary of the Treasury to summon and "examine any books, papers, records, or other data which may be relevant or material" to a particular tax inquiry. Id. at 813. The court of appeals found that the tax accrual workpapers prepared by Arthur Young were exempt from disclosure under a work-product immunity.

The Supreme Court reversed as to the work-product immunity. As to § 7602, the Court observed that, "[w]e are unable to discern the sort of 'unambiguous directions from Congress' that would justify a judicially created work-product immunity for tax accrual workpapers summoned under § 7602." Id. at 816. The Court also found no "fitting analogue" to the attorney work-product doctrine because an independent certified public accountant performs a different role than a private attorney. "By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client." Id. at 817.

Arthur Young is inapplicable because a public prosecutor occupies a different role than the independent auditor. Under 28 U.S.C. § 516, "[e]xcept as otherwise provided by law, the

7

conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."  A Department of Justice attorney takes direction from the Attorney General and his delegates, in the conduct of litigation, rather than serving some abstract public responsibility.   The Attorney General determines how to serve the public interest.  The work product privilege exists to provide a working attorney with a "zone of privacy" within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories.  Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980).  The purpose of the doctrine is to protect the adversary trial process itself, by preventing adversaries from probing each other's thoughts and plans concerning a case.  Id.

Communications regarding a case by DOJ attorneys are protected by the work product doctrine.   In Menasha Corporation v. U.S. Department of Justice, 707 F.3d 846 (7th Cir. 2013), the Seventh Circuit held that communications between DOJ attorneys from the Environmental Enforcement Section and the Environmental Defense Section, both subcomponents of the DOJ's Environment and Natural Resources Division, were exempt from disclosure under the FOIA because they were covered by the attorney work product doctrine.  In doing so, the appellate court rejected Menasha's claim that, because the Environmental Enforcement Section and Environmental Defense Section were representing federal agencies with conflicting interests, the work product privilege was forfeited.  Id. at 848-850.  The Environmental Enforcement Section represented the interests of the Environmental Protection Agency, which seeks to enforce environmental laws, while the Environmental Defense Section, which defends the United States from suits to enforce environmental laws, represented the interests of the Corps of Engineers.  The Seventh Circuit found this to be "of no moment" since the United States was the only

8

federal party and was represented by the Justice Department. Id. at 850. Any conflicts between the two sections within the Environment and Natural Resources Division would be resolved by the Assistant Attorney General heading the Environment and Natural Resources Division. Id. at 850-52.

Noteworthy for this case is the Seventh Circuit's observation that, "[a]ll this is irrelevant to work product privilege, which shields the wrangles within the client's legal team from the opposing party." Id. at 852. Petitioners are not entitled to peek at the discussions within the U.S. Attorney's Office regarding the potential prosecution of Epstein, or communications within the U.S. Attorney's Office, or between components of the DOJ and the U.S. Attorney's Office, about the appropriate application of the CVRA.

II.     THE LAW ENFORCEMENT INVESTIGATIVE PRIVILEGE APPLIES

The government has asserted the law enforcement investigative privilege in response to petitioners' request for documents from the FBI case file in the Epstein investigation, and investigative materials from the U.S. Attorney's Office for the Epstein matter. Petitioners dispute the applicability of this privilege in the declaration of one of their attorneys. D.E. 225-1 at 21-23.

The investigation into Jeffrey Epstein was called Operation Leap Year. Exhibit A, Declaration of FBI Special Agent E. Nesbitt Kuyrkendall, ¶ 2. Contrary to petitioners' assertion (D.E. 225-1 at 22, ¶ 112), Operation Leap Year remains an open case. Kuyrkendall Decl., ¶ 7. Further, disclosure to third parties of the interview reports of the young women sexually abused by Mr. Epstein would cause embarrassment to the young women. Id., ¶ 3. These young women suffered emotionally, and some were referred by the FBI to mental health professionals to assist them. Id., ¶ 5.

The disclosure of information contained in the FBI investigative file, to third parties, would not merely cause further embarrassment, but could result in additional psychological trauma, disruption of family relationships, disruption of professional careers, and possible public release of personal information.  Id., ¶ 6.

Disclosure of information from the FBI investigative file would also reveal sensitive FBI investigative and operational methods, procedures, and techniques.  Id., ¶ 4.  Information contained within an FBI investigative file, if revealed, might compromise the effective use of such methods in future cases.  Id.  The FBI's investigative tools must remain confidential so that law enforcement can retain an element of surprise, and prevent the use of countermeasures by targets and suspects to thwart effective law enforcement.  Id.

The purpose of the law enforcement privilege "is to prevent disclosure of law enforcement techniques and procedures. to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Department of Investigation of the City of New York, 856 F.2d 481, 484 (2nd Cir. 1988)(citations omitted).  In this action under the CVRA, the government's interest in confidentiality far outweighs petitioners need for the information.  In re United States Department of Homeland Security, 459 F.3d 565, 570 (5th Cir. 2006).   Therefore, the law enforcement investigative privilege applies.

   III.   DELIBERATIVE PROCESS PRIVILEGE

The government has invoked the deliberative process privilege for a number of documents because they are pre-decisional, and are the recommendations, opinions, or deliberations of government officials.  "The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of

10

public scrutiny." Moye, O'Brien, O'Rourke, Hogan & Pickert v. National Railroad Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004), citing Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001).

Government counsel has been working with the Office of the Deputy Attorney General to obtain the appropriate declaration invoking the deliberative process privilege. By separate motion, the government will be requesting an enlargement of time of ten (10) days, to obtain and file this declaration.

IV. THE PRIVACY ACT, 5 U.S.C. § 552a(b)(11), REQUIRES A COURT TO ENGAGE IN A BALANCING TEST BEFORE DISCLOSURE CAN BE ORDERED

Petitioners contend that the Privacy Act does not apply in the context of court-compelled disclosures for discovery. D.E. 225 at 7. They cite to 5 U.S.C. § 552a(b)(11), which provides that permits an agency to disclose a record "pursuant to the order of a court of competent jurisdiction." In Perry v. State Farm Fire & Casualty Company, 734 F.2d 1441 (11th Cir. 1984), the Eleventh Circuit observed that, "[r]elease is allowed when a court of competent jurisdiction so orders." Id. at 1447, citing 5 U.S.C.A. § 552a(b)(11). Continuing, the Court stated, "[r]equests for court orders under § 552a(b)(11) should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure." Id.(citations omitted).

A court order compelling disclosures for discovery does not qualify as a § 552a(b)(11) order unless the court has engaged in the balancing described in Perry. Since this required balancing has not been done, the Privacy Act applies and precludes disclosure by the government.

## CONCLUSION

The government has validly asserted privileges that preclude disclosure of the requested

11

documents to petitioners.   Therefore, petitioners' motion to compel production should be denied.

DATED:  September 3, 2013        Respectfully submitted,

                                 WILFREDO A. FERRER
                                 UNITED STATES ATTORNEY


By:   _s/ Dexter A. Lee_____
       DEXTER A. LEE
       Assistant U.S. Attorney
       Fla. Bar No. 0936693
       99 N.E. 4th Street, Suite 300
       Miami, Florida  33132
       (305) 961-9320
       Fax:  (305) 530-7139
       E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR RESPONDENT

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                __s/ Dexter A. Lee_____
                                DEXTER A.  LEE
                                Assistant U.S. Attorney

SERVICE LIST

Jane Does 1 and 2 v.  United States,
Case No.  08-80736-CIV-MARRA/JOHNSON
United States District Court, Southern District of Florida
Bradley J. Edwards, Esq.,
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
Fax:  (954) 524-2822
E-mail: brad@pathtojustice.com

Paul G. Cassell
S.J. Quinney College of Law at the

University of Utah
332 S. 1400 E.
Salt Lake City, Utah 84112
(801) 585-5202
Fax: (801) 585-6833
E-mail: casselp@law.utah.edu

Attorneys for Jane Doe # 1 and Jane Doe # 2

Roy Black
Jackie Perczek
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida  33131
(305) 371-6421
Fax:  (305) 358-2006
E-mail:  rblack@royblack.com
         jperczek@royblack.com

Attorneys for Intervenors