# COMPOSITE EXHIBIT 3

# The Washington Post <small>Print</small>

# Eleventh Circuit rules that discovery can move forward on my Crime Victims' Rights Act case

### By Paul Cassell Updated: April 21 at 9:41 am

On Friday, the 11th Circuit ruled that discovery can move forward in an important Crime Victims' Rights Act case that my co-counsel, Brad Edwards, and I are pursuing. The narrow issue before the court was whether prosecutors and defense attorneys could assert some sort of "privilege" to prevent crime victims from reviewing the correspondence that lead to a plea bargain. More broadly, the ruling means that the victims will have a chance to return to the district court and seek to invalidate a plea agreement that (we alleged) was consummated in violation of their rights. I hope that the case will ultimately set an important precedent that federal prosecutors can't keep victims in the dark about the plea deals that they reach.

Here are the important facts, taken from the 11th Circuit's opinion: The case arose in 2006, the FBI began investigating allegations that wealthy investor Jeffrey Epstein had sexually abused dozens and dozens of minor girls. The U.S. Attorney's Office for the Southern District of Florida accepted Epstein's case for prosecution, and the FBI issued victim notification letters to my two clients, minors Jane Doe No. 1 and Jane Doe No. 2, in June and August 2007. Extensive plea negotiations ensued between the prosecutors and Epstein. On Sept. 24, 2007, the prosecutors entered into a non-prosecution agreement with Epstein in which they agreed not to file any federal charges against Epstein in exchange for his guilty plea to minor Florida offenses (e.g., solicitation of prostitution). Not only did the prosecutors neglect to confer with the victims before they entered into the agreement with Epstein, they also concealed its existence for at least nine months. For example, the prosecutors sent post-agreement letters to the victims reporting that the "case is currently under investigation" and explaining that "[t]his can be a lengthy process and we request your continued patience while we conduct a thorough investigation."

On June 27, 2008, the prosecutors informed my co-counsel, Brad Edwards, that Epstein planned to plead guilty to the Florida charges three days later. But the prosecutors failed to disclose that Epstein's pleas to those state charges arose from his federal non-prosecution agreement and that the pleas would bar a federal prosecution. As a result, the victims did not attend the state court proceedings.

On July 7, 2008, Edwards and I filed a petition alleging that Jane Doe No. 1 was a victim of federal sex crimes committed by Epstein and that the United States had wrongfully excluded her from plea negotiations. We also alleged that the federal prosecutors had violated her rights under the Crime Victims' Rights Act (CVRA) —

specifically her rights to confer with the government, to be treated with fairness, to receive timely notice of relevant court proceedings, and to receive information about restitution. The United States responded by claiming that it used its "best efforts" to comply with the rights afforded to victims under the CVRA, but that the act did not apply to pre-indictment negotiations with potential federal defendants.

After Jane Doe No. 2 joined the initial petition, the district court (Marra, J.) found that both women qualified as "crime victims" under the CVRA. The district court later rejected the government's argument that the act only applies after the filing of a federal criminal indictment. (I've written a law review article about the issue of how early crime victims' rights attach in the criminal process, which can be downloaded here.)

Among other relief, we sought rescission of the non-prosecution agreement as a remedy for the violation of the victims' rights. To make the case for such a remedy, we moved for discovery of the correspondence between the U.S. and Epstein's attorneys during the plea negotiations. Epstein's attorneys intervened, arguing that Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11 create a privilege for plea negotiations, barring release of the correspondence. They also argued that the court should find that the materials were protected under the work product doctrine or, alternatively, should be protected under a new "common-law privilege for plea negotiations."

The district court first ruled that rescission of the plea agreement was a possible remedy under the act. The court then ruled that we were entitled to review the correspondence, rejecting all of Epstein's arguments.

On Friday, the 11th Circuit affirmed the district court's ruling that we could review the plea correspondence. At pp. 18-22 of its published opinion, the court concluded that there was no basis for restricting access to such correspondence when crime victims have a legitimate need to review it. The court rejected, for example, the work product argument because plea discussions are not confidential:

> Disclosure of work-product materials to an adversary waives the work-product privilege. See, e.g., *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988); *In re Doe*, 662 F.2d 1073, 1081–82 (4th Cir. 1981). Even if it shared the common goal of reaching a quick settlement, the United States was undoubtedly adverse to Epstein during its investigation of him for federal offenses, and the intervenors' disclosure of their work product waived any claim of privilege. . . .

The court also declined to recognize a new privilege for plea bargaining, finding the relationship between prosecutors and defense attorneys did not need special protection:

> As a last-ditch effort, the intervenors contend that "[i]f more is needed in addition to the plain language of Rule 410 to preclude disclosure of the correspondence to plaintiffs, it can be found in the conjunction of Rule 410, the work-product privilege, and the Sixth Amendment right to the effective assistance of counsel in the plea bargaining process," but this novel argument fails too. As explained above, Rule 410

does not create a privilege and the intervenors waived any work-product privilege. The intervenors concede too that the right to counsel under the Sixth Amendment had not yet attached when the correspondence was exchanged. *Lumley v. City of Dade City, Fla.,* 327 F.3d 1186, 1195 (11th Cir. 2003) ("[T]he Sixth Amendment right to counsel ordinarily does not arise until there is a formal commitment by the government to prosecute," such as a "formal charge, preliminary hearing, indictment, information, or arraignment."). The "conjunctive" power of three false claims of privilege does not rescue the correspondence from disclosure. . . .

The Supreme Court has identified several considerations relevant to whether a court should recognize an evidentiary privilege—the needs of the public, whether the privilege is rooted in the imperative for confidence and trust, the evidentiary benefit of the denial of the privilege, and any consensus among the states, *Jaffee v. Redmond,* 518 U.S. 1, 10–15 (1996)—but none of these considerations weighs in favor of recognizing a new privilege to prevent discovery of the plea negotiations. Although plea negotiations are vital to the functioning of the criminal justice system, a prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate. Their adversarial relationship, unlike the confidential relationship of a doctor and patient or attorney and client, warrants no privilege beyond the terms of Rule 410. *See Jaffee,* 518 U.S. at 10. But the victims would enjoy an evidentiary benefit from the disclosure of plea negotiations to prove whether the United States violated their rights under the Act.

Moving forward, this case raises the important issue of what kinds of remedies are available for violations of the Crime Victims' Rights Act. Our complaint alleges that, prodded by Epstein, the federal prosecutors deliberately concealed the sweetheart plea deal they had reached with him to avoid public criticism of the deal. I am hopeful that in future district court proceedings, we will be able to prove that clear violation of the CVRA and then obtain the remedy of invalidating the illegally-negotiated plea deal.

© The Washington Post Company

Follow us on

Friday, May 2, 2014 | 3:56 p.m.

Subscribe | Today's paper | Customer care

Sign In | Register

# Palm Beach Daily News

the shiny sheet

Search

Posted: 12:00 a.m. Monday, April 21, 2014

# Appeals court rules against sex offender

## Attorneys for underage victims seek to overturn 'sweetheart plea.'

**Related**

By Michele Dargan

Daily News Staff Writer

Underage victims of billionaire sex offender Jeffrey Epstein are entitled to correspondence between federal prosecutors and Epstein's attorneys related to his sweetheart plea deal, a federal appeals court ruled Friday.

This is one more step in the fight by victims' attorneys Brad Edwards and Paul Cassell to overturn the secret deal, which saved Epstein from facing serious federal charges and serving significant prison time.

If Epstein had been found guilty on federal charges, statutory penalties ranged from 10 years to life in prison.

Instead, the sealed pact was part and parcel of Epstein's acceptance of a state plea deal. Epstein pleaded guilty to soliciting a minor for prostitution and soliciting prostitution. He received an 18-month sentence, in a vacant wing of the Palm Beach County Stockade, and was let out on work release six days a week for up to 16 hours a day.

Edwards and Cassell represent Jane Doe No. 1 and Jane Doe No. 2, who say the U.S. Attorney's Office violated the Crime Victims' Rights Act by signing the federal non-prosecution agreement in 2007 without notifying the victims. Their case is pending in U.S. District Court in West Palm Beach.

The 24-page published opinion says U.S. District Judge Kenneth Marra did not err in his June 2013 ruling, when he ordered the correspondence turned over to the victims.

**"Sweetheart plea'**

"We're now going to get a complete picture of the negotiations that led to this sweetheart plea arrangement," said Cassell, a former federal judge. "We think it will show the part of the discussion to keep the victims in the dark about what was happening. If that's what the correspondence shows, we'll use that as part of our argument for throwing out the plea."

Cassell said he anticipates that 500 pages of correspondence should be released early this week.

The opinion by the three-judge panel ruled against Epstein's arguments that the correspondence was protected by an attorney's work-product privilege. The court says privilege was waived when attorneys voluntarily sent the correspondence to federal prosecutors during negotiations.

"Disclosure of work-product materials to an adversary waives the work-product privilege," the ruling says.

The ruling also dismissed Epstein's claims that a federal rule of evidence protects his plea correspondence. That rule applies only to defendants who withdraw a guilty plea. Because he pleaded guilty, that doesn't apply, the ruling says.

"While respectful of the panel's decision, given issues of overriding importance to the criminal justice system regarding the need for continued confidentiality for communications between defense lawyers and prosecutors, we will be petitioning the court of appeals for further review," said Boston based attorney Martin Weinberg, who represents Epstein.

The U.S. Attorney's Office failed to notify victims prior to striking a non-prosecution agreement with Epstein on Sept. 24, 2007, and didn't tell them of the agreement's existence for at least nine months, the ruling says.

On June 27, 2008, the U.S. Attorney's Office told the victims that Epstein planned to plead guilty to state charges three days later. But federal prosecutors failed to disclose that his pleas to the state charges arose from his federal non-prosecution agreement and would bar federal charges.

Jane Does No. 1 and No. 2, who were, respectively, 12 and 13 at the time they were victimized, received confidential monetary settlements in civil cases.

They are among more than two dozen underage girls who filed lawsuits or settled claims against Epstein. All alleged they were lured to his Palm Beach mansion to give him sexually charged massages and/or sex in exchange for money.

"A well-connected billionaire got away with molesting many girls," Edwards said. "These girls should at least know how and why he was able to get away with these crimes. This ruling will allow us access to the documents that will provide insight into how that happened. I suspect that the answers revealed by these documents will ultimately allow us to invalidate that agreement and permit prosecution of Mr. Epstein."

### More News

We Recommend

- Appeals-court decision in Epstein case rights a terrible wrong (Palm Beach Daily News)
- Memorial service set for former 'Daily News' reporter (Palm Beach Daily News)
- Ernest S. Johnston Jr. (Palm Beach Daily News)
- Choosing plants? There's always something new (Palm Beach Daily News)
- State restripes Royal Palm intersections (Palm Beach Daily News)
- Eunice "Penny" Jacobs (Palm Beach Daily News)

From Around the Web

- Bad Neighborhoods: How to Read the Warning Signs Before You Move in (realtor.com)
- The 5 Most Dangerous Cities in the U.S. (AARP)
- Stunning Photos Of Leonardo DiCaprio's For Sale Home (Lonny Magazine)
- Rosie O'Donnell Is Buying Olivia Newton-John's Florida Estate For $5.6 Million... See The Pictures (Lonny)
- Andy Griffith's Widow to Raze His Home (AARP)
- Supermodel Heidi Klum's Kid Is Growing Up Gorgeous (StyleBistro)

[?]

### Comments

If you would like to post a comment please Sign in or Register

| Cancel | Edit comment |

2 Comment(s)
Comment(s) 1-2 of 2



- Posted by THEPALMBEACHER1 at 3:02 p.m. Apr. 21, 2014
- Report Abuse

Its inconceivable to see articles like this!! USUALLY, one gets charged with statutory rape, child molestation, etc., and its Guaranteed that they will do prison time.. Now, If your a "BILLIONAIRE", you can BUY yourself freedom, and throw money to the victims and say adios!!!! Its OBVIOUS, payments, kickbacks, DONATIONS, financial promises are all part of this deal.. Where is the JUSTICE SYSTEM? Where is the State Attorney, The JUDGES? People go to jail for petty thefts, illegal drugs, assault, battery, domestic violence, but this case is PROOF that the LEGAL system can be BOUGHT for the right price!!! Its OBVIOUS this individual has a severe mental problem, a sexual predator, who would ship young girls like human trafficking back and forth via his private jets.. Its no different than "THE BACKPAGE" girls being exploited by their pimps

being housed in cheap motels along federal hwy. for GUY LIKE THIS to get their sexual perversions satisfied!! Read the entire case and see that young girls flowed thru Palm Beach South Ocean Blvd and South County Rd ,to his El Brillo "MANSION OF PERVERSION" with this guy as its Master!! For people to think "Palm Beach" has the "Elite", the "Upper Crust" of society, it also is home to some of the worst thieves, sexual predators, financial criminals the world has ever known!! Mr. Epstein has Billions of Dollars, and can afford the Best Criminal Attorneys, yet Can't or WON'T get Professional Mental Help with his sexual desires and fascination with young girls. And the Court systems goes along with him!!! Unbelievable..



- Posted by Adios at 3:12 p.m. Apr. 22, 2014
- Report Abuse

I agree with the post by the palm bleacher. This guy is a perv and needs to sit out of society. When listening to his depositions, he pretended to be insulted by the questions being asked of him and his lawyer shut it down quickly. What remains to be seen is if the soon to be released files will bear the fruit we all hope it does. My worry is that the tracks will be covered and he will not get his due.

His opinion of himself allows him to think he did nothing wrong and these BABIES he molested were not of his place in society and were simply objects to be thrown away. What would he think if someone did that to his BABIES if he has any? I can bet that the full force of his money would work against whomever played with his kids.......bloody gross!

2 Comment(s)
Comment(s) 1-2 of 2

. &lt;img height="1" width="1" src="http://segments.adap.tv/data/?p=recruemediallc&amp;type=gif&amp;segment= 84&amp;add=true

sun-sentinel.com/news/palm-beach/fl-jeffrey-epstein-federal-court-of-appeals-20140421,0,6594687.story

# Sun Sentinel

## Victims win right to see negotiations that led to 'lenient' plea agreement for billionaire sex offender

### Latest in legal saga involving Jeffrey Epstein, 61, financier convicted of procuring minor for prostitution

By Brett Clarkson, Sun Sentinel

7:43 PM EDT, April 21, 2014

Did a Palm Beach billionaire being investigated for having sex with young girls use his wealth to negotiate a lenient and secret agreement that saw him avoid federal prosecution?

advertisement

Attorneys for two victims, known only as Jane Doe 1 and 2, may soon get an answer thanks to an appeals court ruling against financier and sex offender Jeffrey Epstein, 61.

The ruling, issued Friday, orders federal authorities to disclose the correspondence that took place between Epstein's attorneys and federal prosecutors when they were negotiating a 2007 agreement, which allowed him to escape federal prosecution if he pleaded guilty to state charges that carried a lesser penalty.

"We're trying to figure out if Epstein used his political connections and great wealth to secure this kind of arrangement, that was unheard of, frankly, if you look at these charges," said Paul Cassell, an attorney for the women.

Epstein is a native New Yorker who according to media reports built a huge fortune as a money manager and owns several properties including a primary residence in Manhattan, a Palm Beach mansion and his own island in the Caribbean. At one point he counted among his friends former President Bill Clinton, Donald Trump and other high-powered figures.

The appeal court decision described the background of Epstein's case, stating that in 2006, the Federal Bureau of Investigation "began investigating allegations that Jeffrey Epstein had sexually abused several minor girls."

In September 2007, federal prosecutors struck the non-prosecution deal with Epstein, but didn't tell the victims, court filings say.

"Not only did the United States neglect to confer with the victims before it entered into the agreement with Epstein, it also failed to notify them of its existence for at least nine months," Circuit Judge William H. Pryor wrote in the appeals court decision.

In June 2008, Epstein pleaded guilty to a state charge of procuring a person under the age of 18 for prostitution and was sentenced to 18 months in prison. He spent 13 months behind bars, and is registered as a sex offender in Florida.

The situation also resulted in civil suits being filed against Epstein, who according to media reports settled claims from about two dozen young women who alleged he paid them for sexual massages at his Palm Beach mansion, some as young as 14, according to media reports.

To the attorneys who represent the Jane Does 1 and 2, the sentence was much lighter than the years, or possibly decades, that Epstein could've spent behind bars had he been prosecuted in the federal system.

They're hoping that the correspondence, ordered released by the Eleventh Circuit Court of Appeals, will shed light on what they say is an unusually lenient deal.

"I can say that I've been teaching criminal law for more than two decades and I have never seen a plea agreement as lenient as this one, for hands-on sex offenders," said Cassell, who is based in Salt Lake City.

But one of Epstein's attorney's, Martin Weinberg, based in Boston, disputed those characterizations. Weinberg said Monday that the plea agreement was "reached in good faith" and that "it's not a fair conclusion" to describe the agreement as either improper or tainted by Epstein's wealth.

"It's Mr. Cassell's hope that this correspondence may support that theory, but the reality is that the U.S. Attorney's Office made a responsible judgment in how to implement the law," Weinberg said.

Weinberg said he was concerned about the potential impact the ruling would have on the ability of criminal defense attorneys and prosecutors to communicate confidentially.

He also said he and Epstein co-counsel, Miami criminal defense attorney Roy Black, will ask the Atlanta-based appeals court to review the decision.

As for the Jane Does, who are now over 18, it's just the latest development in a long legal saga, another one of their attorneys said.

"They're pretty numb at this point to favorable news because they've heard this before and nothing's happened," said Fort Lauderdale attorney Brad Edwards.

Edwards and Cassel said their goal is to have Epstein's plea agreement deemed to be in violation of federal victims' rights legislation and invalidated. Edwards said Epstein should face a new prosecution.

Edwards also said he was first told by the U.S. Attorney's Office that he would receive the correspondence documents on Monday, but was then told that they weren't ready yet. Cassell said the documents number 500 pages.

In an email, Annette Castillo, spokeswoman for the U.S. Attorney's Office, Southern District of Florida, said the office couldn't comment.

*bsclarkson@tribune.com, 561-243-6609 or Twitter @BrettClarkson_*

Copyright © 2014, South Florida Sun-Sentinel



Resize text  A  A  A

# Appellate ruling could force feds to reconsider sex charges against Palm Beacher Epstein

Posted: 9:25 p.m. Monday, April 21, 2014

BY DAPHNE DURET - PALM BEACH POST STAFF WRITER

A federal appellate court has moved two young victims of billionaire sex offender Jeffrey Epstein a step closer to wiping out a plea deal that prosecutors made behind their backs.

The 11th Circuit Court of Appeals ruled Friday that the underage victims were entitled to see all correspondence between federal prosecutors and Epstein's lawyers regarding a secret 2007 plea deal that kept Epstein from federal charges in exchange for an 18-month work-release sentence in state prison.

The plea negotiations took place as Epstein litigated a series of now-settled civil claims surrounding allegations that he had sex in his Palm Beach mansion with dozens of underage girls.

The two victims who are seeking the documents are not identified in court documents. They were 12 and 13 at

the time of their liaisons with Epstein, who pleaded guilty to two prostitution solicitation charges. The girls reached an out-of-court settlement with him.

In ruling that the correspondence should be public, the appellate court authorized the release of more than 500 pages of documents. The victims' lawyers would use the documents to prove that, by keeping the agreement secret, prosecutors violated a federal act aimed at protecting victims' rights.

A win in that battle could invalidate Epstein's agreement with federal prosecutors, allowing them to reconsider criminal charges, but this time with input from the victims.

Epstein's lawyers argued that the correspondence constituted confidential plea negotiations and therefore should not be shared with the victims' lawyers.

"Although plea negotiations are vital to the functioning of the criminal justice system, a prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate," the appellate justices wrote, calling the prosecutor-defense attorney relationship adversarial.

They upheld a 2013 ruling by U.S. District Court Judge Kenneth Marra. He ordered the release of all the plea documents, but only federal prosecutors complied.

The victims' attorneys, Brad Edwards and Paul Cassell, have called the ruling a victory for the rights of victims to be heard, even in cases like Epstein's, where federal prosecutors ultimately never filed charges. The victims were unaware of the plea agreement until three days before Epstein pleaded to the state charges in June 2008. A federal deal had been in place for nine months by then.

Had prosecutors filed charges and negotiated a plea with Epstein in federal court, they would be barred from seeking any additional punishment against him. But because his plea agreement to a sex solicitation charge came in state court, federal prosecutors theoretically could charge him again.

Still, Epstein's lawyers could argue that the only reason he agreed to the state sentence was because he believed it would free him of the federal charges for good. Edwards said Epstein's attorneys have made parts of those arguments in pre-trial hearings, and he expects them to appeal Friday's ruling. Epstein's Boston-based attorney, Martin Weinberg, told the Palm Beach Daily News he would appeal.

"While respectful of the panel's decision, given issues of overriding importance to the criminal justice system regarding the need for continued confidentiality for communications between defense lawyers and prosecutors, we will be petitioning the court of appeals for further review," Weinberg told the paper.

Invalidating Epstein's plea would force federal prosecutors to meet with the alleged victims to hear their comments on whether to pursue charges against Epstein. They still could decline.

"You can't force the federal government to prosecute anyone," Edwards said. "But we're hoping that if maybe

we get some new eyes on the case and the circumstances are different, things will change."

## In this Section

 Palm Beach County Sheriff's Office offers salute to 16 fallen in the line of duty over the decades

Free movie at Boynton's Dewey Park on Friday

Boynton Beach officers stop to investigate Camaro, witness theft of BMW; pursuit ends in crash

Greenacres single-family home development moving forward

Our Economy: Gardens complex lands 3 sizeable businesses

Morning commute on I95, turnpike clear of crashes from Boca to Vero

Find out how to work on the Riviera Beach marina development

Royal Palm Beach Publix sells Fantasy 5 ticket now worth more than $111K

Sun, rain today and mostly rain Saturday in Palm Beach County, TCoast

3 NYPD officers arrested in separate gun incidents

PREVIOUS: LOCAL
**Tequesta crash sends seven people to hospitals**

NEXT: OPINION
**Commentary: Has GM pulled a Pinto?**

## Popular on MyPalmBeachPost.com

| All Comments (0) | Post a Comment |

## COMMENTS

**Post comment**

