UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:08-cv-80736-Civ-KAM

JANE DOE 1 and JANE DOE 2

v.

UNITED STATES
_____/



### JANE DOE 1 AND JANE DOE 2'S RESPONSE IN OPPOSITION TO EPSTEIN'S MOTION FOR A PROTECTIVE CONFIDENTIALITY ORDER

COME NOW Jane Doe 1 and Jane Doe 2 (also referred to as "the victims"), by and through undersigned counsel, to file this response in opposition to Epstein's Motion for a Protective Confidentiality Order (DE 247). Epstein's motion is a thinly-disguised attempt to relitigate issues already covered by the court's earlier ruling eleven months ago (DE 188), which allowed the victims to file correspondence relating to Epstein's non-prosecution agreement in the public court file. Rather than reverse its previous ruling, this Court should reaffirm it – and allow the important issues presented by this case to be litigated in the light of day.

### BACKGROUND

Because of Epstein's penchant for relitigating issues that have already been decided, it is necessary to recount the litigation that has already gone on in this case regarding confidentiality, including the Court's directive in DE 188 allowing filing of materials in the public court file.

On March 21, 2011, the victims filed what was essentially a Motion For Summary Judgment in this case, explaining why (in their view) the Government had violated its obligations under the Crime Victims' Rights Act (CVRA) to notify them of court hearings, to

1

confer with them regarding plea discussions, and to treat them with fairness. DE 48. The motion contained 53 alleged undisputed facts. Some of those facts rested on correspondence between the prosecutors and Epstein's legal defense team – correspondence that the victims had received in 2010 as part of a civil case against Epstein (hereinafter referred to as the "2010 plea correspondence"). Because the victims were aware that Epstein objected to the use of this correspondence, they filed a redacted copy of their pleading in the open court file – i.e., a copy in which the quotations from the 2010 correspondence had been blacked out. They simultaneously filed a motion to use that correspondence in this case and to place an unredacted copy of the summary judgment motion and attached correspondence in the open court file. DE 51. On April 7, 2011, the Government filed a partial opposition to the victims' motion. DE 60. On May 2, 2011, the victims' replied to this response  DE 74.

Meanwhile, on April 7, 2011, three of Epstein's criminal defense attorneys – Roy Black, Jay Lefkowitz, and Martin Weinberg – filed a motion to intervene in this case for the purpose of challenging the victims' motion to use the correspondence and to place an unredacted copy of the summary judgment motion and attached correspondence in the court file. DE 56 at 4 (challenging victims' motion, DE 51). On May 2, 2011, the victims responded in opposition to the motion to intervene. DE 78. On May 2, 2011, the three defense attorneys replied in support of their intervention motion. DE 80.

On August 12, 2011, this Court held a hearing on the various pending motions, and during the hearing raised various questions about whether the defense attorneys were the proper intervenors on issues of confidentiality. Shortly after the hearing, on September 2, 2011, Epstein filed a motion for limited intervention on issues relating to a protective order for the

2

correspondence. DE 93. His pleading included, as Exhibit 1, a proposed motion for a protective order regarding the correspondence that he intended to file if granted leave to intervene. DE 93, Exhibit 1. On September 16, 2011, the victims filed a response in objection to Epstein's motion. DE 96; the Government responded as well. DE 98.

On September 26, 2011, the Court entered an order allowing discovery to move forward in the case. DE 99. In September and October, further briefing continued on the intervention motions. DE 100, 106, 108, 115.

On March 29, 2013, this Court granted both the motion to intervene filed by Epstein and the motion to intervene filed by Epstein's three defense attorneys. DE 158, DE 159. Accordingly, on April 17, 2012, Epstein and his three defense attorneys both filed motions for a protective order. DE 161, 162. The victims responded in opposition. DE 167. Epstein and his attorneys replied. DE 169.

On June 18, 2013, the Court sided with the victims on all the confidentiality issues. DE 188. The Court expressly rejected all of the arguments by Epstein and his attorneys for not releasing the correspondence publicly. The Court began: "At the outset, the court observes that the intervenors' privilege objections to public release of the correspondence in question were previously rejected by Magistrate Judge Linnea Johnson in a discovery order entered in a parallel civil lawsuit . . . ." DE 188 at 3. The Court saw "no reason to revisit" that ruling. *Id.* at 4. The Court then rejected all of the intervenors' "privilege" arguments about why the materials were confidential. The Court concluded that the materials should no long be kept under seal:

> Accordingly, the court rejects the privileges asserted by intervenors as bases for maintaining the correspondence and related pleadings incorporating the correspondence under seal in this proceeding. Finding the asserted privileges

3

> inapplicable, the court finds no legitimate compelling interest which warrants the continued suppression of this evidentiary material under seal in this proceeding. S*ee generally United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005) (reversing order sealing document in drug trafficking conspiracy prosecution in order to protect cooperating defendants and confidential informants where unsupported by record finding to rebut presumption of openness of court proceedings), and shall therefore grant petitioners' motion to unseal the correspondence. While the court shall also grant the petitioners' motion to use the evidence as proof of alleged CVRA violations to the extent it shall allow petitioners to proffer the evidence in support of their CVRA claims, this order is not intended to operate as a ruling on the relevance or admissibility of any particular piece of correspondence, a matter expressly reserved for determination at the time of final disposition.

DE 188 at 9-10. The Court then entered the language that is central to this notice: "The [victims] are directed to file unredacted pleadings, including attached correspondence, *in the open court file.* However, before placing the materials in the court file, petitioners are directed to carefully review each page of the correspondence in question and to [make appropriate redactions for victim names and other identifying information] . . . . The petitioners shall file unredacted pleadings in the court file in conformity with the above prescriptions within TWENTY (20) DAYS from the date of entry of this order. DE 188 at 10 (entered June 18, 2013) (emphasis added). On the same day, the Court denied the Government's motion to dismiss the case and directed that discovery proceed. DE 189.

Epstein and his attorneys quickly sought a stay of the ruling from this Court. DE 193. They also filed notices of appeal with the Eleventh Circuit. On July 8, 2013, the Court denied the request for a stay, but granted a temporary stay to allow the Eleventh Circuit to review the issue. DE 206. On September 23, 2013, the Eleventh Circuit entered a stay pending its review of the matter. Following briefing and argument, on April 18, 2014, the Eleventh Circuit ruled in favor of the victims, affirmed this Court's decision, and simultaneously lifted its stay. *Jane Doe*

4

*No. 1 v. United States*, ---F.3d---, 2014 WL 1509015, No. 13-12923 at 23. The Circuit explained that "[a]lthough plea negotiations are vital to the functioning of the criminal justice system, a prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate. Their adversarial relationship, unlike the confidential relationship of a doctor and patient or attorney and client, warrants no [new] privilege . . . ." Slip op. at 21-22.

On April 24, 2014, Epstein and his attorneys sought a stay of the Eleventh Circuit's order pending review of a petition for rehearing en banc. The next day, the Eleventh Circuit denied that stay.

On May 2, 2014, the U.S. Attorney's Office provided 541 pages of correspondence between prosecutors and Epstein's defense attorneys that lead up to Epstein's non-prosecution agreement (hereinafter referred to as the "2014 correspondence").[1]

That same day, Epstein filed a motion for a protective order over the correspondence. DE 247. Epstein specifically moved the Court to restrict dissemination of the same materials that this Court and the Eleventh Circuit had both found to be non-confidential. Epstein asked the Court to enter:

> a Protective Confidentially Order which (1) limits the dissemination of certain Confidential Discovery Material ("CDM") described below, to a designated list of the Plaintiffs' counsel and support staff, and (2) prohibits any party from filing pleadings, briefs, memorandums or exhibits purporting to reproduce, quote,

---

[1] The Government has failed to produce a significant amount of the correspondence that the Court had directed it to produce. These failures do not involve isolated pieces of correspondence, but rather entire substantial categories. The victims have requested this additional information from the Government and have been told, in essence, that it is being compiled. The victims are preparing an appropriate motion to bring these failures to the Court's attention and to request appropriate remedial action.

5

> paraphrase or summarize any CDM or portions thereof, absent leave of the Court to file the document or portion thereof under seal in accordance with Local Rules of the United States District Court for the Southern District of Florida.

DE 247 at 1-2. The alleged "Confidential Discovery Material" included the same correspondence that was at issue in DE 188. *See* DE 247, Exhibit 1 (proposing that the Court enter a protective order regarding "all correspondence between the United States Attorney's Office and the Intervenors . . . that was the subject of the Court's Order of June 18, 2013 (Doc. 188) . . . ."). Epstein's new motion does not discuss the Court's earlier (June 18, 2013) direction to the victims to file unredacted pleadings (and accompanying material) in the open court file. That same day, Epstein's counsel sent an e-mail to victims counsel stating that Epstein "would ask that you await a ruling prior to any dissemination."

On May 6, 2014, the victims filed a notice of intent to comply with Court's earlier (June 18) direction to file unredacted copies of the pleadings in the file. The victims explained that in light of the lengthy procedural history just recounted, "and to avoid any confusion, the victims wanted to give notice that on May 8, 2014, they intend to comply with the Court's June 18, 2013, directive." DE 248.

The next day, on May 7, 2014, the Court entered an order regarding the notice of intent to comply:

> On April 18, 2014, the Eleventh Circuit affirmed several orders of this Court, and lifted the stay it had imposed in relation to one of the orders. However, no mandate has been issued thus far. Accordingly, petitioners should not comply with the Order Granting Petitioners' Motion to Proffer Government Correspondence in Support of CVRA Claims & Granting Motion to Unseal Correspondence and Related Unredacted Pleadings of Petitioners (DE 188) until further order of this Court.

DE 249 at 1.

The CA11 has not yet issued its mandate.

## ARGUMENT

### I. IT IS ALREADY THE "LAW OF THE CASE" THAT MATERIAL RELATING TO THE NON-PROSECUTION AGREEMENT CAN BE PROFFERED BY THE VICTIMS IN PUBLIC COURT FILINGS.

If the Court has a sense of déjà vu in reviewing Epstein's motion for a protective order, it is because the Court has already looked at the same arguments – and rejected them. As the foregoing history makes clear, the victims previously moved for leave to use the correspondence to prove violation of the non-prosecution agreement. And the Court agreed, subject only to the reservation that the Court would determine the actual relevance at the appropriate hearing:

> Accordingly, the court rejects the privileges asserted by intervenors as bases for maintaining the correspondence and related pleadings incorporating the correspondence under seal in this proceeding. Finding the asserted privileges inapplicable, *the court finds no legitimate compelling interest which warrants the continued suppression of this evidentiary material under seal in this proceeding. . . .* While the court shall also grant the petitioners' motion to use the evidence as proof of alleged CVRA violations to the extent it shall allow petitioners to proffer the evidence in support of their CVRA claims, this order is not intended to operate as a ruling on the relevance or admissibility of any particular piece of correspondence, a matter expressly reserved for determination at the time of final disposition.

DE 188 at 9-10 (emphasis added). Accordingly, the issue has already been settled once – and the Court should not revisit it. *See United States v. Stinson,* 97 F.3d 466, 469 (11th Cir.1996) (discussing law of the case doctrine); *see also Singh v. George Washington Univ.,* 383 F.Supp.2d 99, 101 (D.D.C. 2009) (internal quotation omitted) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

7

It is the law of the case that the victims can "use the evidence as proof of alleged CVRA violations" and that there is "no legitimate compelling interest" supporting sealing the material.[2] Epstein does not even discuss this prior ruling. That is reason enough to reject his motion.

## II. EPSTEIN'S PROPOSED PROTECTIVE ORDER WOULD PREVENT THE PUBLIC FROM LEARNING ABOUT MATTERS OF CONSIDERABLE PUBLIC CONCERN.

Even if the Court were inclined to revisit the issue, it should reach the same conclusion it reached earlier: the victims pleadings in this case should generally be placed in the public court file.[3] It is important to understand the breadth of the protective order that Epstein is seeking. Epstein pretends that his proposed order is a narrow one merely limiting the public access to discovery – citing various cases about whether the public can demand to have access to discovery produced in civil or criminal cases. DE 247 at 6-7. But the protective order Epstein seeks to have entered extends far more broadly and appears to be specifically designed to prevent the public from learning about the victims arguments in this case. In particular, Epstein's proposed order provides that entire "documents" must be sealed if they contain any reference to the plea correspondence or other alleged "confidential" material:

> In the event that [a victim] intends to file [plea correspondence] with the court in support of . . . a non-discovery motion (e.g., motion for summary judgment or any other dispositive or substantive motion), the filing party shall take appropriate

---

[2] To be precise, it is actually the law of *two* cases that the material can be released. *See* DE 188 at 3 ("At the outset, the court observes that the intervenors' privilege objections to public release of the correspondence in question were previously rejected by Magistrate Judge Linnea Johnson in a discovery order entered in a parallel civil lawsuit . . . .").

[3] The victims note that their pleadings should "generally" be placed in the public court file, because there are few, specialized pieces of information that should be redacted before public filing – such as the names of sexual assault victims, grand jury information, and private telephone numbers. The victims intend to perform such redactions, so those issues are not raised by Epstein's motion for a protective order.

8

> action to insure that *the documents* receive proper *protection from public disclosure* and shall seek leave of Court to file *the document* under seal in accordance with local rules.

DE 247-1 at 5 (emphases added).

In light of his request for sealing of "documents," if the Court were to grant Epstein's motion, the net effect would be to essentially have the significant and critical parts of this litigation carried on in secret. For example, the public would be denied access to the victims' summary judgment motion – a "document" that will rely heavily on the correspondence and which will demonstrate (the victims believe) a carefully orchestrated plan by Epstein to keep his non-prosecution agreement hidden from the victims and, more broadly the public. Indeed, it seems clear that the majority of documents filed in this case by the victims in the future will rely to some extent on the underlying correspondence. If Epstein's motion is granted, the docket in the case will essentially become a black hole.

It is a fundamental premise of American criminal justice that the public is entitled to know what happens in a criminal case. The Supreme Court has repeatedly held that "[t]he knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power . . . ." *Richmond Newspapers, Inc.,* 448 U.S. 555, 596 (1980) (internal quotation omitted). An open criminal process "assure[s] the public that procedural rights are respected, and that justice is afforded equally," while on the other hand sentencing without the public present " breed[s] suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law." *In re Hearst Newspapers, L.L.C.,* 641 F.3d 168, 177 (5th Cir. 2011 (*quoting Richmond Newspapers, Inc.,* 448 U.S. at 595). There is also a well-recognized "'community therapeutic value' to having an open proceeding, because

9

of the concerns and emotions of members of the public who have been affected by a crime or crimes." *Richmond Newspapers, Inc.,* 448 U.S. at 570.

In light of this strong interest in public access to criminal proceedings, the Eleventh Circuit has instructed that the district courts must make substantial findings before sealing records in criminal cases before it. For instance, in *United States v. Ochoa-Vasque*, 428 F.3d 1015 (11th Cir. 2005), the Eleventh Circuit reversed an order from this Court that had sealed pleadings in a criminal case, emphasizing the importance of the public's historic First Amendment right of access to the courts. To justify sealing, "a court must articulate the overriding interest along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 1030.

Here there is no overriding interest in keeping the pleadings secret. To the contrary, there is an overriding interest in having these matters exposed to public light. There is considerable public interest in the question of how a serial child molester could arrange such a lenient plea agreement with the U.S. Attorney's Office. And, more importantly, there is great public interest in how he could have received immunity for a multitude of sex crimes while his victims were under the mistaken belief that he was being prosecuted the way any other person would have been. There has long been suspicion that Jeffrey Epstein was receiving favorable treatment in the criminal investigation because of his wealth and power. *See, e.g.,* Abby Goodnough, *Questions of Preferential Treatment Are Raised in Florida Sex* Case, N.Y. TIMES, Sept. 3, 2006, at 19 (noting questions that the public had been left "to wonder whether the system tilted in favor of a wealthy, well-connected alleged perpetrator and against very young girls who are alleged victims of sex crimes"). Indeed, the interest in the matter is strong enough that the

widely-viewed television program *Law and Order: Special Victim Unit* devoted an episode to the case, suggesting in its plot that federal government had intervened improperly to prevent effective prosecution. *See* Law & Order *Commemorates Jeffrey Epstein's Taste for Teen Hookers*, http://gawker.com/#!5751094/law--order-commemorates-jeffrey-epsteins-taste-for-teen-hookers.

The public interest in this case also relates to Epstein's political and financial connections. For example, the *Financial Times* reported on July 21, 2011, that "Prince Andrew is to step down as Britain's special representative for trade and investment, just five months after being at the centre of a media firestorm over his links to Jeffrey Epstein a US businessman convicted of sex offences." http://www.ft.com/cms/s/0/78dba2c2-b383-11e0-b56c-00144feabdc0.html#axzz31RjGpH6l. The American media, too, has commented on these relations. *See, e.g.,* Jose Lambiet, *Prince's Friendship with Pedophile Causes Furor Across the Pond*, PALM BEACH POST, Mar. 9, 2011, at 2B.

In light of all this interest, it appears that Epstein's motivation in keeping entire "documents" sealed is to block the public from learning about what happened during the investigation of his crimes, rather than any legitimate purpose. The Court should not prevent public scrutiny of this case by departing from its normal rules and placing critical documents under seal.

### III. EPSTEIN HAS FAILED TO ESTABLISH EITHER A LEGAL BASIS OR FACTUAL "GOOD CAUSE" FOR A PROTECTIVE ORDER.

Epstein claims that he can establish some sort of "good cause" for a protective order. But his arguments on this point lack a legal basis and are factually far-fetched.

With regard to the legal basis for his motion, Epstein cites Rule 26(c) of the Federal Rules of Civil Procedure. DE 247 at 1. But that rule has absolutely no bearing on the correspondence at issue. Rule 26(c) applies, by its plain terms, to "[a] party or any person *from whom discovery is sought* may move for a protective order . . . ." Fed. R. Civ. P. 26(c) (emphasis added). *Epstein* has not been asked to produce any correspondence. Rather, the victims' discovery request has been directed to the U.S. Attorney's Office for the Southern District of Florida. And it was that Office that produced the correspondence. This fact simply highlights the non-confidential nature of the correspondence. If Epstein did not want something revealed, then he should have told his attorneys to keep it out of their correspondence sent to the prosecutors.

With regard to the factual basis for his motion, Epstein contends that his defense attorneys' "lengthy arguments may or may not have had any influence on the government's decision making and, therefore, their relevance is particularly remote." DE 247-7. But the victims have argued precisely the contrary. For example, the victims' summary judgment motion alleges that Epstein's defense attorneys insisted on, and obtained, a confidentiality provision in the non-prosecution agreement that blocked disclosure of it to the victims. DE 48 at 10. The motion also alleges that because of pressure from Epstein's defense attorneys, the Government stopped making victim notifications. *Id.* at 13. In short, what the defense attorneys and prosecutors discussed and agreed to lies at the heart of this case.

The 2014 correspondence that the victims have just received makes clear (in their view) that their allegations are well-founded. By way of example, here are a few excerpts from the

correspondence where Mr. Epstein's attorneys urged the United States Attorney's office against notifying the victims - an effort that was ultimately successful:

Jay Lefkowitz, on behalf of Jeffrey Epstein, wrote to Alex Acosta on October 10, 2007: "**Communication to Identified Individuals.**" "…Neither federal agents nor anyone from your Office should contact the identified victims to inform them of the resolution of the case, including appointment of the attorney representative and the settlement process. Not only would that violate the confidentiality of the Agreement, but Mr. Epstein also will have no control over what is communicated to the identified individuals at this most critical stage. We believe it is essential that we participate in crafting a mutually acceptable communication to the identified individuals."

In another letter from Jay Lefkowitz to Alex Acosta, this one dated November 29, 2007, he writes, "More fundamentally, we don't understand the basis for your Office's belief that it is appropriate for any letter to be sent to these individuals at this stage – before Mr. Epstein has either entered a plea or been sentenced. We respectfully disagree with your view that you are required to notify the alleged victims pursuant to the Justice for All Act of 2004." Later in that same letter, Lefkowitz addresses the United States Attorney's Office's suggestion that the victims should have the right to be heard at any plea or sentencing, and in response he writes, "…encouraging these individuals to participate in the state sentencing will have the effect of creating a media frenzy that will surely impact the sentence Mr. Epstein received – precisely what your Office promised to avoid."

Continuing to lobby the United States Attorney's Office against involving the victims in the process, in a December 11, 2007 letter to Acosta, Lefkowitz wrote, "**C. Right of the Alleged**

13

**Victims to be Notified:** As we have expressed to you previously, we do not agree with your Office's assertion that it is either an obligation and even appropriate for the USAO to send a victim notification letter to the alleged victims." He continues, "Your interpretation of §3771 is erroneous because the rights conferred by statute indicate that these rights are for the notification and appearance at public proceedings involving the crime for which the relevant individual is a victim. As you know, the public proceeding in this matter will be in state court for the purpose of the entry of a plea on state charges. Therefore, 18 U.S.C. §3771 clearly does not apply to "victims" who are not state "victims.""

On December 26, 2007, Lefkowitz sent a lengthy letter to Acosta, in relevant part, explaining, "The Attorney General Guidelines caution federal prosecutors from providing notice to potential witnesses in instances where such notice could compromise the defendant's due process rights. This is particularly true, as here, if the notice includes confidential information, including the conditions of the confidential deferred-prosecution agreement or non-prosecution agreement. In light of these concerns, we respectfully request that you reconsider sending notices to the alleged victims pursuant to §3771."

In addition to providing insight into the efforts of the defense attorneys to exclude the victims from the process entirely, there is also extensive communication regarding the extreme efforts taken to prevent the public from learning of the plea as well. In fact, on September 24, 2007, Lefkowitz sent an email to the United States Attorney's Office with a one-line message – "Please do whatever you can to keep this from becoming public."

It seems Epstein's motives in his motion for protective order remain the same as they were during his negotiation with the Government – prevent the public from knowing what they,

in concert with the government, successfully prevented the victims and the public from knowing the first time. In an effort to show some sort of good cause for his order, Epstein alleges that the victims' counsel have made "inflammatory statements" about the case. DE 247 at 8. But the illustrations that Epstein provides do not show statements made to inflame, but rather statements made to inform. For example, Epstein complains about the media "quoting" the victims' pleadings or about victims' counsel hoping that the case will "inspire" victims to report sex offenses. DE 247 at 8-9. These are not improper statements. To the extent they related to Epstein, they simply provide information to the public about what is happening in this complicated proceeding – and simply summarize public record materials. Indeed, the newspaper articles that Epstein attaches show many quotations from Epstein's defense attorneys discussing the case as well. The statements made by both victims counsel and defense counsel are proper, because the Rules of Professional Conduct plainly allow discussion with the media about "information contained in a public record." ABA R. Prof. Conduct 3.6(a)(2).

Epstein also complains about his name being "dragged through the metaphorical mud before a jury has made any determination of wrongdoing." DE 247 at 12 (internal quotation omitted). But in this case, Epstein has already admitted "wrongdoing" – by entering a plea agreement to state sex felonies and then securing a non-prosecution agreement to resolve his criminal exposure for dozens of other sex offenses (at least in this judicial district). Part of that plea agreement required him to register as a sex offender. He currently appears in the Florida sex offender registry. *See* http://offender.fdle.state.fl.us/offender/flyer.do?personId=62762. What Epstein is really complaining about is not the *publicity* associated with the victims' CVRA lawsuit, but rather the *fact* of the victims' lawsuit. Having used his vast resources to secure a

favorable plea agreement, Epstein does not want anyone to be able to publicly suggest that this plea agreement was unduly lenient and kept secret from victims who might have been able to object and block it. But that is what the victims have alleged, in detail, in their pleadings to this Court – and the evidence in support of their allegations is continuously mounting, as the 2014 correspondence abundantly suggests. There is no "good cause" for keeping the victims' allegations – and their supporting evidence – shrouded in secrecy under a protective order.

### IV. THE PROTECTIVE ORDER THAT EPSTEIN PROPOSES WOULD PRODUCE CONSIDERABLE UNDERTAINTY AND FOLLOW-ON LITIGATION.

In addition to blocking public access to information about this case, Epstein's proposed protective order is so ambiguously drafted that it would spawn all sorts of follow-on litigation. Indeed, counsel for the victims wonder whether that is Epstein's goal: to divert the time and attention of the victims (and the Court) away from the merits of the case and into satellite litigation about compliance with the protective order.

The potential ambiguities the protective would create are legion. We list just a few of them here to illustrate the problems.

For starter, the proposed protective order contains all sorts of boilerplate language about the "parties" to the case having to comply. *See, e.g.,* DE 247-1 at 3, ¶ 5(v)(b) ("All *parties* and their respective counsel . . . shall take all steps reasonably necessary to prevent disclosure of the [correspondence] . . . .") (emphasis added). And yet, Epstein is not a "party" to this case. He is a "limited intervenor." The extent to which the terms of the agreement apply to an intervenor is uncertain.

The next problem is that the proposed order applies to "correspondence between the United States Attorney's Office and the Intervenors." DE 247-1 at 3, ¶ 1. If we understand the the current posture of this case correctly, the "Intervenors" who would have protected correspondence are only three persons: Jeffrey Epstein, Roy Black, and Martin Weinberg. *See* DE 247 (describing the intervenors as Epstein, Black, and Weinberg). But the vast bulk of the correspondence was not generated by these three people. Of course, none of the correspondence bears Epstein's name on it. And as for attorneys Black and Weinberg, they appear to have been involved in a tiny fraction of the correspondence (if any). The vast bulk of the correspondence was drafted by other attorneys, including Kenneth W. Starr, Jay P. Lefkowitz, Gerald P Lefcourt, Alan Dershowitz, Joe D. Whitley, Stephanie D. Thacker, and Lilly Ann Sanchez. It is not clear whether the motion is designed to cover these persons and, if so, what standing Roy Black (for instance) would have to be litigating issues pertaining to, for example, correspondence written by Kenneth W. Starr.

The protective order will also create delay and questions about briefing schedules. The protective order purports to establish a need for a court hearing every time a pleading is filed that touches on "confidential" material. In fact, it seems to operate to "toll" briefing on substantive questions. *See* DE 247-1 at 3, ¶ 12(b) (after filing of pleading with protected material, the "motion filing and briefing schedule shall be *adjusted and tolled* to provide sufficient time for the Court to consider and rule on the motion seeking permission to file the document(s) under seal.").

All these ambiguities are sure to create abundant litigation – as a just a quick perusal of Epstein's litigation tactics in this case in the past will attest. And to what end? Both this Court

17

and the 11th Circuit have rejected Epstein's arguments that the correspondence somehow contains any "confidential" material. *See, e.g., In re Roy Black et al.*, No. 13-12923, slip op. at 20 (April 18, 2014) ("The conjunctive power of three false claims of privilege [by Epstein] does not rescue the correspondence from disclosure."). No confidential relationship exists between prosecutors and defense attorneys. There is simply no reason for the Court to depart from its ordinary rules and the law of the case.

To be clear, the victims are not seeking to simply release the discovery in this case to anyone that they want. Instead, all that the victims ask is to be able to litigate their case in the ordinary, public fashion that the Court follows for vast majority of its cases: by filing their pleadings in the open court file.

## CONCLUSION

The Court should deny Epstein's motion for a protective order (DE 247).

DATED: May 16, 2014

Respectfully Submitted,

/s/ Bradley J. Edwards
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
E-mail: brad@pathtojustice.com

*and*

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the

18

        University of Utah
        332 S. 1400 E.
        Salt Lake City, UT 84112
        Telephone: 801-585-5202
        Facsimile: 801-585-6833
        E-Mail: cassellp@law.utah.edu[4]

        *Attorneys for Jane Doe 1 and Jane Doe 2*

---

[4] The daytime business address indicated above is for identification purposes and does not imply institutional endorsement by the University of Utah of the legal positions advanced in this pleading.

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on May 16, 2014, on the following using the Court's CM/ECF system:

Dexter Lee
A. Marie Villafaña
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov

*Attorneys for the Government*

Roy Black, Esq.
Jackie Perczek, Esq.
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Boulevard, Suite 1300
Miami, FL 33131
Email: pleading@royblack.com
(305) 37106421

Jay P. Lefkowitz
 Kirkland & Ellis, LLP
601 Lexington Avenue
New York, NY 10022
Email: lefkowitz@kirkland.com
(212) 446-4970

Martin G. Weinberg, P.C.
20 Park Plaza, Suite 1000
Boston, MA 02116
Email: owlmgw@att.net
(617) 338-9538

*Criminal Defense Counsel for Jeffrey Epstein*

/s/ Bradley J. Edwards

20