UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA/JOHNSON

JANE DOE 1 and JANE DOE 2,　　:
　　　　　　　　　　　　　　　　　:
　　　　Plaintiffs,　　　　　　　:
v.　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　:
UNITED STATES OF AMERICA,　:
　　　　　　　　　　　　　　　　　:
　　　　Defendant.　　　　　　　:
. . . . . . . . . . . . . . . . . . . . . . . . . . . . :

**LIMITED INTERVENOR JEFFREY EPSTEIN'S RESPONSE TO ORDER
REQUESTING JUSTIFICATION FOR SUPPLEMENTAL PROTECTIVE ORDER**

A few days ago, on January 21, 2015, the plaintiffs' lawyers filed *Plaintiffs' Response To Motion For Limited Intervention By Alan M. Dershowitz*. [DE 291]. This is a 40-page pleading addressing whether the Court should allow Professor Dershowitz to intervene. At the very end, on page 38, the Plaintiffs quote from a 2007 plea and settlement negotiation letter that Epstein's defense lawyers sent to the government. The quote, in its entirety, is five or six words. The quote is redacted from the public filing but it is obvious that the quoted language is but a few words, not even a complete sentence.

The letter from which the plaintiffs have taken this small quote is itself 23 single-spaced pages, supported by seven separately-appended exhibits. The Court has received a copy of the letter and its exhibits under seal. The Court can see that this letter, dated in July of 2007, two months before the execution of the Non-Prosecution Agreement, is a classic plea negotiation letter, addressing a variety of legal issues involving federalism, state law, state vs. federal prosecutions, legal precedent interpreting federal statutes, rules of statutory construction, and a variety of other

issues involving the interpretation of federal criminal statutes. The letter and its exhibits have no bearing on the CVRA claims raised by the plaintiffs or on Professor Dershowitz's motion to intervene.

Yet the plaintiffs propose to publicly file *the entire* 23-page defense settlement letter and all of its exhibits in the public record, as an exhibit to their opposition to Professor Dershowitz's intervention. Without a protective order, such a public filing would make the entire defense settlement letter and all of its exhibits instantly accessible via Pacer to the worldwide media for dissemination.

We have seen similar tactics before. In prior civil litigation with Mr. Epstein, one of plaintiffs' lawyers, Mr. Edwards, through his counsel, filed a motion for summary judgment along with a statement of facts that was appended as an exhibit. The statement of facts itself contained a number of attachments, one of which constituted a wholesale dump into the public record of the state court all of the settlement negotiation letters and emails sent by the government to Epstein's counsel during the federal investigation.[1] This filing by the plaintiffs' lawyer was made without regard for the relevance of the many government written communications to the issues raised in the pleading. The lawyers simply cited a few matters, then dumped an entire package of letters and emails as purported exhibits.

Good cause exists to issue the additional Protective Confidentiality Order proposed by Mr. Epstein here. The lawyers and parties in this case are already bound by a Protective Confidentiality Order issued by this Court on September 21, 2014, finding that "Epstein has shown good cause to

---

[1] At the time, in the fall of 2010, plaintiffs' counsel did not yet have the settlement letters that Mr. Epstein's lawyers had sent to the government.

prevent potential dissemination of the correspondence between the government and the intervenor to the press for the purposes of generating publicity." [DE 255 at 4]. The order followed Epstein's motion seeking protection from the constant leaks, comments, and inflammatory accusations made by the plaintiffs' lawyers to the national and international media, as well as to various online outfits of varying reputations. The recent filings, comments, and exclusives granted to gossip reporters show that the frolic with the media has not abated.

The Protective Confidentiality Order presently in place is not sufficient to protect the plea negotiation letters and emails from media dissemination. *Id.* Although the Order restricts the "disclosure of the correspondence in question" to "court personnel, court reporters, petitioners' attorneys who are counsel of record in this case and their paralegal and clerical staff, retained consulting or testifying experts and consultants, and additional persons upon the agreement of the parties and the Intervenors," *id.,* the Order does not provide any protection when those documents are converted into exhibits and filed as a public record with the Court.

The temporary seal order we have jointly proposed is appropriate and should issue. The order will temporarily prevent the disclosure of plea and settlement negotiations, which have been confidential by longstanding tradition in our justice system. The proposed order will protect these communications until the Court has had an opportunity to rule on a motion to unseal. The order is temporary and gives all parties and the public an opportunity to move to unseal pleadings or exhibits. These temporary precautions are appropriate because Mr. Epstein and his legal counsel will be irreparably harmed if what are historically confidential plea negotiations are wrongly filed in the public record, making their way around the world on the Internet in minutes, before the Court has an opportunity to rule.

Neither the plaintiffs nor the public will suffer harm from this protective order. And, to the extent that the public has an interest in the matter, it would favor considered review by the Court prior to the release of the communications.   Without the requested order, all protections of confidentiality will have been irretrievably lost if the Court later determines that the public filing of these settlement communications was unnecessary or inappropriate.

## I. THE LAW

During discovery, pursuant to Federal Rule of Civil Procedure 26(c), the Court may enter a protective order to prevent the public disclosure of certain information, or to limit how that information is used in the litigation.   We believe this Court's inquiry is guided generally by the following Eleventh Circuit cases:

* *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304 (11th Cir. 2001).

* *FTC v. Abbvie Prod. LLC*, 713 F.3d 54, (11th Cir. 2013).

* *Newman v. Graddic*, 696 F.2d 796 (11th Cir. 1983).

These cases provide the framework for evaluating whether a temporary protective order is appropriate and set forth the legal standard under which the Court evaluates our request.

## 1.   THE STANDARD FOR EVALUATING THE REQUEST FOR A PROTECTIVE CONFIDENTIALITY ORDER IS 'GOOD CAUSE'

Citing *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013 (11th Cir. 1992), and *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985), the Court has requested that we set forth "the extraordinary circumstances or particularized needs necessitating a seal in this case." [DE 286]. However, we do not believe that we have to meet an "extraordinary circumstances or particularized needs" standard because we are not asking that the Court seal the entire court record, as happened

in *Brown* and *Wilson*.

Instead, because we are seeking only that the Court temporarily seal discrete documents rather than complete pleadings or an entire docket, the "good cause" standard of Rule 26(c) applies. *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001) ("The district court required Firestone to meet a compelling interest standard. To the extent this was predicated on a constitutional right of access, it was error").

### a.    Heightened Scrutiny Applies When A Party Seeks To Seal An Entire Court Record

In narrow circumstances, the common-law right to access court records "demands heightened scrutiny of a court's decision to conceal records from the public and the media." *Chicago Tribune*, 263 F.3d at 1310.  This happens "[w]here the trial court conceals the record of an entire case, making no distinction between those documents that are sensitive or privileged and those that are not ..." *Id.* Then, "it must be shown that the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to that interest." *Id.* (citing *Wilson*, 759 F.2d at 1571; *Brown*, 960 F.2d at 1015-16).  In such cases, "heightened scrutiny is necessitated by the fact that entire civil cases otherwise open to the public are erased as if they never occurred."  *Id.*  "An example of this unusual circumstance is provided by *Wilson*, where the entire record, including 'pleadings, docket entries, orders, affidavits . . . depositions . . . and transcripts or court reporter's notes of hearings or trial proceedings,' were all sealed by the court . . . ." *Chicago Tribune*, 263 F.3d at 1311.

### b.    'Good Cause' Applies When A Party Seeks To Seal Particular Individual Court Documents

However, when the parties seek a protective order sealing specific discovery materials that are filed in the Court's public record, the Court evaluates the request under the "good cause"

5

standard of Rule 26, which balances the asserted right of access against the other party's interest in keeping the information confidential. *Chicago Tribune*, 263 F.3d at 1309. "The test for whether a judicial record can be withheld from the public is *a balancing test* that weighs 'the competing interests of the parties' to determine whether there is *good cause* to deny the public the right to access the document." *FTC v. Abbvie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citing *Chicago Tribune*, 263 F.3d at 1312) (emphasis added).

"Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion. Where discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure." *Chicago Tribune*, 263 F.3d at 1310. Accordingly, "where a third party seeks access to material disclosed during discovery and covered by a protective order, the constitutional right of access, like Rule 26, requires a showing of good cause by the party seeking protection." *Id*.

2.      **THE COMMON-LAW RIGHT OF ACCESS**

     **a.  There Is No Common-Law Right To Access Materials Exchanged In Discovery**

Even though the Eleventh Circuit held that the plea and settlement negotiations in this case are subject to *discovery*, this Court has correctly ruled that there is no public common-law right of access to materials simply because the materials are exchanged as part of the discovery process. [DE 255 at 3-4]. This finding is supported not only by the Eleventh Circuit cases cited throughout this pleading but also by the Supreme Court, which upheld a protective order against a First Amendment challenge finding that information learned during the discovery process is not subject to public release in part because of the risk that information that may never be admitted at trial could jeopardize the rights of litigants or third parties:

> There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but, if publicly released, could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times Co. v. Rhinehard*, 467 U.S. 20, 35 (1984).

The Eleventh Circuit has "repeatedly acknowledged the private nature of discovery" and that "[a] court may restrict distribution of discovery material even if there 'certainly is a public interest in knowing more' about its contents."  *Tillman v. C.R. Bard, Inc.*, Case No. 3:13-cv-222-J-34JBT (M.D. Fla. March 13, 2014), *2014 U.S. Dist. LEXIS 41406*, at *6, quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984); *Looney v. Moore*, No. 2:13-CV-00733-KOB (N.D. Ala. April 7, 2014), *2014 U.S. Dist. LEXIS 48349*, at *3, citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1316 (11th Cir. 2001) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the *sole purpose* of discovery is to assist trial preparation") (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986; emphasis in original). *See also Anderson*, 799 F.2d at 1441 ("Historically, discovery materials were not available to the public or press") (citation omitted);  *In re: Denture Cream Prod. Liability Litigation*, No. 09-2051-MD-Altonaga/Simonton (S.D. Fla. Jan. 18, 2013), 2013 U.S. Dist. LEXIS 8114, at *37 ("the common law right of access to judicial proceedings does not apply to discovery materials, 'as these materials are neither public documents nor judicial records'") (quoting *Chicago Tribune*, 263 F.3d at 1311; citation omitted).

Placing limitations on the dissemination and use of pretrial discovery is particularly important since "[t]he overwhelming majority of documents disclosed during discovery are likely irrelevant to the underlying issues . . . ." *Abbvie Prod.*, 713 F.3d at 63.  Therefore, "[s]uch documents, prior

to admission into the record in support of a motion or as evidence at trial, 'play no role in the performance of Article III functions' of a federal judge." *Travelers Indemnity Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CSH) (D. Conn. Aug. 5, 2013), *2013 U.S. Dist. LEXIS 110400*, at *37, (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

**b.      There Is A Common-Law Presumptive, Though Not Unfettered, Right To Access Materials Exchanged In Discovery**

There is a common-law presumptive right to access records filed with the Court as attachments or exhibits to motions not related to discovery. This common-law right of access "establish[es] a general presumption that criminal and civil actions should be conducted publicly" and "includes the right to inspect and copy public records and documents." *Chicago Tribune*, 263 F.3d at 1311. It is "an essential component of our system of justice" and "is instrumental in securing the integrity of the process." *Id.*

However, "[t]he right to inspect and copy is not absolute" and this Court's "exercise of discretion in deciding whether to release judicial records should be informed by a sensitive appreciation of the circumstances that led to the production of the particular document in question . . . . [T]he common-law right of access requires a balancing of competing interests." *Id.* The Court considers several factors including "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, [and] whether access is likely to promote public understanding of historically significant events." *Abbvie Prod.*, 713 F.3d at 62 (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir.1983)).

Whether the plaintiffs' CVRA rights were violated is an issue that is extrinsic from the detailed exchanges of emails and letters that constitute the plea and non-prosecution negotiations

between Mr. Epstein's counsel and the government.  Providing a temporary protection to those letters and emails subject to a motion to unseal will fairly accommodate the public's right of access and the rights of parties to pursue Sixth Amendment mandated plea negotiations in good faith and subject to the traditional practice of relative confidentiality.

### c.    A Protected Document Does Not Automatically Lose Its Status Simply Because It Is Filed As An Exhibit To A Motion

A document that is subject to a protective order does not lose its protected status simply because a party appends it to a motion and files it as an exhibit.  "[W]here a party has sought the protection of Rule 26, the fact that sealed material is subsequently submitted in connection with a substantive motion does not mean that the confidentiality imposed by Rule 26 is automatically forgone." *Chicago Tribune*, 263 F.3d at 1313.  Thus, "[b]efore disclosure is appropriate, a court must first conduct the common-law right of access balancing test. Because in this context the common-law right of access, like the constitutional right, requires the court to balance the respective interests of the parties, the . . . common-law right to the [protected] documents filed in connection with [a] motion . . . may be resolved by the Rule 26 good cause balancing test." *Id*.[2]

### 3.    GOOD CAUSE AND THE BALANCING TEST

The Supreme Court has indicated a number of relevant factors that this Court considers in resolving the balancing test. Writing for the majority in *Nixon,* Justice Powell stated that this Court "look[s] to whether the records are sought for such illegitimate purposes as to promote public

---

[2] A variety of documents or communications are considered confidential, and they would not lose their status simply because an adversary files them with the Court. For example: jury deliberations, classified government information, attorney-client communications, identity of news sources, identity of informants, corporate financial data, marketing research, trademark and patent information, pricing information, proprietary data, medical information, certain family court records, financial affidavits, grand jury proceedings, adoption records, and many others.

scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Newman v. Graddic*, 696 F.2d 796, 803 (11th Cir. 1983) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. at 598-603 & n. 11).

"Although difficult to define in absolute terms," the term 'good cause' "generally signifies a sound basis or legitimate need to take judicial action.  The Eleventh Circuit has identified four factors the Court can consider: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987).

## II.
### THERE IS GOOD CAUSE TO ISSUE THE PROTECTIVE CONFIDENTIALITY ORDER

Even though the Eleventh Circuit has ruled that the negotiations in this case are not *privileged* and therefore must be produced in discovery, the communications are still *confidential* and should be afforded protection against public dissemination in a high-profile case where there are valid heightened concerns that voluminous settlement negotiations will be dumped in the court record simply to make them available to the gossip media.

### a. Plea And Settlement Negotiations Have Been Confidential By Longstanding Tradition

Plea negotiation and settlement communications have no tradition of being publicly accessible.  To the contrary, these communications have been confidential by longstanding tradition, and for good reason.  The settlement/plea negotiation process is a critical component of the criminal justice system and one with serious Sixth Amendment implications once formal charges have been brought. "Plea bargains are . . . central to the administration of the criminal justice system" because

10

ours is "a system of pleas, not a system of trials." *Lafler v. Cooper*, 132 S.Ct. 1376, 1388 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012). This system cannot function properly unless counsel are assured that their communications with prosecutors will not later be subject to disclosure to the press and worldwide media, to the detriment of their client. The need for open and frank exchanges of information and opinions during plea/settlement negotiations lies at the heart of Fed. R. Evid. 410, which "creat[es], in effect, a privilege of the defendant." *United States v. Mezzanatto*, 513 U.S. 196, 205 (1995).

The "central feature" of Rule 410 "is that the accused is encouraged candidly to discuss his or her situation in order to explore the possibility of disposing of the case through a consensual arrangement." *United States v. Herman*, 544 F.2d 791, 797 (5th Cir. 1977). The Rule is derived from "the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him." *Id.* at 796.

Thus, while courts have recognized that settlement materials sometimes may be discoverable, negotiations are rarely admissible as evidence at trial. *See, e.g., In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (reversing district court for admitting settlement agreement at trial); *Apple, Inc. v. Samsung Electronics Co.,* Case No. 11-CV-01846-LHK (N.D. Cal. Nov. 7, 2013), *2013 U.S. Dist. LEXIS 160337*, at **51-54 (barring parties from relying on settlement agreement at trial under Fed. R. Evid. 403).[3] And because plea negotiations, "if publicly released, could be damaging to reputation and

---

[3]*See Wagner v. Wastiffs*, Case No. 2:08-cv-431 (S.D. Ohio May 14, 2013), *2013 U.S. Dist. LEXIS 68349* (denying motion to compel discovery of settlement agreement on relevancy grounds); *Duncan v. Phoenix Supported Living, Inc.*, No. 2:05-cv-1 (W.D.N.C. Sept. 12, 2006), *2006 U.S. Dist. LEXIS 66742*, at **9-11 (finding settlement communications non-discoverable as "not .. likely to lead to the disclosure of admissible evidence" and would tend to chill settlement efforts).

privacy," doing so would likely constitute an "abuse of [a court's] processes." *Seattle Times*, 467 U.S. at 35.  For these reasons, it is appropriate to limit the dissemination and use of discovery concerning settlement discussions, even if the communications themselves are not privileged. *See Charles E. Hill & Associates, Inc. v. ABT Electronics, Inc.*, 854 F. Supp. 2d 427, 430 (E.D. Tex. 2012) (designating discovery material including settlement communications as "Outside Counsel Eyes Only Confidential Information" and cautioning parties that while the court was allowing the discovery, the court intended to later weigh relevance carefully  in part because settlement negotiations are "always suspect to some degree and are often littered with unreal assertions and unfounded expectations . . . and are not always grounded in facts or reason").

Finally, criminal defense lawyers negotiate with prosecutors in an environment of confidentiality, fostered by the protections of Rules 410 and 11.  These rules encourage a process of searching and honest disclosures, and parties expect that their negotiations, and the information they exchange, will be protected from future use by an adversary.  And because criminal defense lawyers are *required,* by ethical and constitutional considerations, to engage in plea negotiations to discharge their duty to represent the client's *best interest*, they do so with the well-founded expectation that communications made during those negotiations will not later be used *to harm the client*.

      **b.**     **Mr. Epstein And His Defense Counsel Negotiated With A Reasonable And Principled Expectation Of Confidentiality Based On Their Combined Decades Of Experience As Criminal Defense Lawyers**

Mr. Epstein and his counsel had, at the time of the negotiations, and continue to have a reasonable expectation of confidentiality in their settlement negotiations with the government.  This

is because confidentiality of plea negotiations is essential to ensure that defense counsel can fulfill their constitutional and professional obligations to provide their clients with effective representation during the plea negotiation process, whether the client is a target of an advanced grand jury investigation, as Epstein clearly was, or has already been charged with criminal offenses. And, the public has a strong interest in the effective functioning of the criminal settlement/plea negotiation process, which is critical to the very ability of the criminal justice system to function at all. The effective functioning of that system is dependent on counsel's freedom to engage in the open and candid discussions which lie at the heart of effective plea/settlement negotiation.

Additionally, the private interests at stake are profoundly important. In most criminal cases, it is the negotiations with the prosecution, not a judge or jury, which will determine who goes to jail and for how long. A system in which counsel must evaluate every statement they contemplate making to a prosecutor in the course of plea/settlement negotiations because of the damage it may later cause to their clients if subject to disclosure to the media hinders the effective assistance required by the Sixth Amendment. In the pre-indictment context where, as here, negotiations are conducted during an ongoing grand jury investigation, counsel's ethical and professional responsibilities to achieve the best result possible for their clients are no less real or important. Counsel would not be able to effectively fulfill those responsibilities if they fear that they cannot communicate with prosecutors openly and frankly, without tempering or censoring their plea/settlement communications to avoid making statements that could later come back to haunt their clients in TMZ, the National Enquirer or the grocery store tabloids.

### c.    The Harm Extends To Mr. Epstein, His Counsel, And Beyond

We know of no case that has authorized the wholesale public filing of private and

confidential communications from attorneys seeking to resolve a criminal matter favorably to their clients to government prosecutors. Such public filing would drastically reshape the landscape of criminal settlement negotiations and would overturn expectations of privacy and confidentiality on which criminal defense attorneys have reasonably relied for many decades in negotiating with government attorneys on behalf of their clients. As the Court knows, such communications often necessarily involve explicit or implicit admissions regarding their client's conduct, legal opinions, and opinions regarding acceptable resolutions of the matter.

### d. The Danger Is Real

Our fear that all the settlement and plea negotiation letters will be simply dumped as purported exhibits to motions even when not relevant is not a hypothetical concern.  We have a principled reason to be concerned that the plaintiffs' attorneys will convert classic discovery that is not a public record, not subject to public access, and historically a confidential record, into an attachment to a publicly filed pleading without any (or, at a minimum, without sufficient) cause. This would then convert the correspondence from something to which the public traditionally has no right, into something presumptively public.

This is not a speculative concern. This happened previously in the civil case, and then again last week with the lawyers quoting five or six words from a 23-page defense letter and using this as an apparent pretext to attempt to get the entire defense letter and its exhibits into the public record. Given the limited or non-existent relevance of the entire 23-page defense letter and its exhibits to the quotation from it and more generally to the Dershowitz intervention issues, it appears that the filing seeking to make this letter public was done for press consumption, to satisfy a craving for what is sensational or scandalous. The plea and settlement negotiation letters and emails should not

14

become fodder for dissemination simply because they are attached as purported exhibits to a public filing. The 23-page defense letter and exhibits that the plaintiffs have filed under seal as Exhibit 30 to *Plaintiffs' Response To Motion For Limited Intervention By Alan M. Dershowitz* should remain sealed.

> **e.     The Proposed Confidentiality Order Correctly Resolves The Court's Balancing Task**

The protective order proposed by the parties does not seek a permanent sealing of the correspondence. Rather, the order would operate to temporarily seal the materials, giving all parties and the public a right to move to unseal. We would then have an opportunity to respond if there is no public interest in the exhibit or no interest in quoting from the exhibit, and we would have an opportunity to request that the Court keep the documents under seal. The Court could then rule on any pending motions to seal or unseal.

The Court should issue the proposed protective order, temporarily sealing the settlement communications and giving all parties an opportunity to move to unseal the materials they believe should be part of the public record. This result would correctly resolve the Court's balancing tasks under Rule 26 and Eleventh Circuit precedent.

> **f.     The Proposed Protective Confidentiality Order Would Meet A Heightened Scrutiny Standard In Any Event**

For all the reasons stated above, we believe that the Proposed Protective Confidentiality Order could properly issue even if the parties were required to show "extraordinary circumstances or particularized needs necessitating a seal in this case." [DE 286].

### III.
### A STAY WOULD BE APPROPRIATE

If the Court is not inclined to issue the requested protective order, we respectfully request a stay pending appeal under *Chicago Tribune*: "The district court ordered the documents unsealed, but, granting in part Firestone's motion to stay disclosure pending appeal, delayed the unsealing. We granted Firestone's emergency motion for a stay pending Firestone's appeal." *Chicago Tribune*, 263 F.3d at 1308.

### IV.
### CONCLUSION

The Supreme Court has cautioned that access to public filings may be denied "where court files might . . . become a vehicle for improper purposes," such as "to gratify private spite or promote public scandal." *Nixon*, 435 U.S. at 598 1306.

This is a widely watched and reported case. Mr. Epstein and a host of other individuals have been the subject of the most outlandish and offensive attacks, allegations, and plain inventions. The media frenzy has not been fed by Mr. Epstein or the government. Issuing the limited protective order is precisely the type of discretionary judicial management power that this Court has over its records and proceedings. "Simply stated, the purpose of discovery is to resolve legal disputes between parties, not to provide newsworthy material." *Chicago Tribune*, 263 F.3d at 1316. The proposed protective order should issue.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN
& STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
Telephone (305) 371-6421
Fax (305)358-2006


By:        s/Roy Black
           _____
           **ROY BLACK, ESQ.**
           Florida Bar No. 126088
           rblack@royblack.com
           **JACKIE PERCZEK, ESQ.**
           Florida Bar No. 0042201
           jperczek@royblack.com
           *On behalf of Jeffrey Epstein*


           **MARTIN G. WEINBERG, P.C.**
           20 Park Plaza
           Suite 1000
           Boston, MA 02116
           Telephone: (617) 227-3700
           Fax: (617) 338-9538


By:        s/Martin G. Weinberg
           _____
           **MARTIN G. WEINBERG, ESQ.**
           Massachusetts Bar No. 519480
           owlmgw@att.net
           *On behalf of Jeffrey Epstein*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed by my office via CM/ECF,

this 26th day of January, 2015.

By:      s/Roy Black
         ROY BLACK, ESQ.