IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA/JOHNSON

JANE DOE 1 and JANE DOE 2,    )
                              )
        Plaintiffs,           )
v.                            )
                              )
UNITED STATES OF AMERICA,     )
                              )
        Defendant.            )

**NON-PARTIES THE PALM BEACH POST AND PALM BEACH DAILY NEWS'
MOTION TO INTERVENE TO OPPOSE INTERVENOR EPSTEIN'S MOTION
FOR ENTRY OF A SUPPLEMENTAL PROTECTIVE ORDER (DOC. 261)**

The Palm Beach Post and Palm Beach Daily News ("Media Intervenors")[1] respectfully move this Court to intervene for the limited purpose of responding to Intervenor Jeffrey Epstein's Motion for a Supplemental Protective Order (Doc. 261).

In connection therewith, Media Intervenors respectfully submit this incorporated Memorandum of Law in support of their Motion to Intervene, in opposition to Epstein's Motion for a Supplemental Protective Order (Doc. 261), and in response to the Court's Order inquiring whether there is justification for the request in Epstein's motion that an entire category of documents be filed under seal.  (Doc. 286.)

**INTRODUCTION**

This matter involves claims by two Jane Doe Plaintiffs against the United States, alleging that the Government violated the Crime Victims' Rights Act in connection with entering into a non-prosecution agreement with Intervenor Jeffrey Epstein in exchange for his offer to plead guilty to certain Florida state offenses.  As the Media Intervenors

---

[1] The Palm Beach Post and Palm Beach Daily News are both owned by Cox Media Group, LLC, which is itself owned by Cox Enterprises, Inc., a privately held corporation.

understand it, part of the evidence in this case will focus on plea negotiations between Epstein and the Government and contemporaneous correspondence relating to those negotiations. Such plea negotiation correspondence will be relevant to the central issue in this case – whether the Plaintiffs were afforded their rights under the Crime Victims' Rights Act notwithstanding Intervenor Epstein's wealth and access to influential legal representation. As such, the evidence will bear on a question of profound public concern: in this instance, did our justice system live up to its commitment to treat all who come before it with basic fairness and dignity?

After the Eleventh Circuit affirmed this Court's ruling that the correspondence was not privileged under the numerous grounds proffered by Epstein and other intervenors (Doc. 254), the Court granted in part Intervenor Epstein's motion for a discovery protective order. (See Doc. 255.) However, in connection with the protective order, Epstein filed a supplemental motion to "require that any party would be required to file under seal any portion of the plea negotiation correspondence between the Government and Epstein's counsel, whether offered as an exhibit or quoted from in the content of a pleading or motion." (Doc. 261 at 1.) In response, the Court appropriately requested justification for such a sweeping order, which would require the parties to submit filings "setting forth the extraordinary circumstances or particularized needs necessitating a seal in this case." (Doc. 286 at 1.)

Because Intervenor Epstein's proposed order improperly reverses the burden of proof with respect to the sealing of court records and is in direct conflict with the presumption of public access to records filed with the court, Media Intervenors respectfully request that the Court permit them to intervene for the limited purpose of

responding to the issues raised by Epstein's Motion and further request that the Court deny Epstein's Motion in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     It is Well-Established that the Press Has a Right to Intervene to Oppose the Sealing of Records.**

Pursuant to well-established authority from the United States Supreme Court and the Eleventh Circuit Court of Appeals, the media has a right to intervene in criminal and civil actions to oppose the sealing of records and the closure of court proceedings.   In Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n. 25 (1982), the Supreme Court held that "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion'" from access to court proceedings and records.   Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n. 25 (1982) (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 401 (1979) (Powell, J., concurring)).

Based on such authority, the Eleventh Circuit has repeatedly and consistently recognized the appropriateness of allowing the public and the press to intervene in connection with the sealing of records or closure of court proceedings.  See Brown v. Advantage Engineering, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992) ("Because it is the rights of the public . . . that are at stake, any member of the public has standing to . . . unseal the court file in the event the record has been improperly sealed."); In re Petition of Tribune Co., 784 F.2d 1518, 1521 (11th Cir. 1986) ("The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records."); Newman v. Graddick, 696 F.2d 796, 800 (11th Cir.

3

1983) ("This Court has upheld the press's standing to seek access in suits to which it is not a party.")

Based on this well-established authority, Media Intervenors request that they be permitted to intervene in this action.

**II.     The First Amendment Provides the Public and Press With a Presumptive Right of Access to Court Records, Which Epstein Improperly Seeks to Reverse.**

As this Court has previously recognized (see Doc. 286), pursuant to the First Amendment to the United States Constitution and well-established federal case law, the public's right of access to judicial proceedings and records is beyond dispute. See generally Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) ("Press-Enterprise II"); Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) ("Press-Enterprise I"); Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980). "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." Brown, 960 F.2d at 1016.

As the Eleventh Circuit explained in an opinion by then Chief Judge Roney, "open judicial proceedings serve many important purposes." Newman, 696 F.2d at 801. Among the many benefits of access are: "informed public opinion critical to effective self-government," "public understanding of the legal process and citizens' rights within it," the "quality and . . . integrity of the factfinding process," "heighten[ed] respect for the judicial process[,] by fostering an appearance of fairness," "a check on the judiciary, such checks being the distinctive feature of our constitutional form of government," and providing "security for testimonial trustworthiness." Id. (citations omitted).

4

Moreover, this right of access extends to all records filed with the court in connection with pretrial motions addressing substantive issues raised by the lawsuit. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2011) ("Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common-law right of access includes the right to inspect and copy public records and documents.")

Any party seeking to seal judicial records bears a substantial burden.  As set forth in Bridgestone/Firestone, "[w]here the trial court conceals the record of an entire case, making no distinction between those documents that are sensitive or privileged and those that are not, it must be shown that 'the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to that interest.'" Bridgestone/Firestone, Inc., 263 F.3d at 1311 (quoting Wilson v. American Motors Corp., 759 F.2d 1568, 1571 (11th Cir. 1985).)  Such scrutiny is necessitated when "pleadings, docket entries, orders…." are sealed.  Id.  (citation omitted).  See also Newman, 696 F.2d at 802 ("where, as in the present case, the [court] attempts to deny access [to judicial proceedings] in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to that interest")  (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982)).

Where parties seek a more isolated sealing in connection with substantive motions, courts are instructed to engage in a Rule 26(c) "good cause" analysis, i.e., undertaking an examination into whether the party seeking to seal the record has brought a valid ground for the issuance of a protective order and can show that its interest in

5

confidentiality outweighs the public's interest in access.  Bridgestone/Firestone, Inc., 263 F.3d at 1313.  However, even in such instances, the law is clear that the threshold *presumption* is that the public and press will be given access to the records of the Court.  As the Eleventh Circuit has explained, any record filed with "[a] motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive, is subject to the public right of access."  Romero v. Drummond Company, Inc., 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995).)  See also id., 480 F.3d at 1245 ("[m]aterial filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access"); Federal Trade Commission v. Abbvie Products, 713 F.3d 54, 64, (11th Cir. 2013) ("[W]e determine whether a document is a judicial record [and therefore subject to the presumption of public access] depending on the type of filing it accompanied.  A complaint and its exhibits, which are integral to the 'judicial resolution of the merits of any action,' are surely 'subject to the common law right.'") (quoting Bridgestone/Firestone, Inc., 263 F.3d at 1312).)

By his Motion, Epstein requests that the Court enter an order that would systematically require  "any party . . . to file under seal any portion of the plea negotiation correspondence between the Government and Epstein's counsel, whether offered as an exhibit or quoted from in the content of a pleading or motion."  (Doc. 261 at 1.)  Under Epstein's proposal, all such correspondence would be filed under seal without regard to its specific content and without individual consideration by the Court.  Only after a record was filed under seal would a party or Intervenor have an opportunity to ask the

6

Court to unseal the record.  (See Doc. 261-1 at 2 (proposed order requiring filings be made under seal with later opportunity to unseal).)

This improperly reverses the burden of proof and would effectively put the Court in an impossible administrative position.  The plea negotiation correspondence would be filed under seal by the parties, and the press would soon be insisting that it be unsealed, but the Court would have no detailed and specific basis explain its sealing in the first place.  The sealing would have occurred in a sweeping fashion without any proper, particularized showing in the record to justify the sealing at the outset.   By seeking a blanket sealing order, regardless of the nature of the communication and regardless of the type of motion to which it is attached, Epstein is attempting to reverse the burden of proof and circumvent the law requiring that he show "good cause" for the sealing of any court records. [2]  This is simply improper.  See Davis v. Prince, 753 F. Supp.2d 561, 567 (E.D. Va. 2010) (rejecting proposed protective order which would allow the parties to determine "good cause" without a prior determination by the court).  The Court's Order correctly observed that it needs "extraordinary circumstances" and "particularized needs" to justify sealing records, and Epstein cannot attempt to meet that burden with a sweeping request that everything pertaining to the negotiation correspondence be systematically sealed at the outset.

---

[2] While Intervenor Epstein characterizes the requested sealing as limited and subject to the "good cause" standard, given Plaintiffs' statements as to the importance of the correspondence to their action and likely frequency of reference, it is unclear at this time whether the "good cause" or higher "compelling interest" standard would apply as these records begin to be filed.

**III.     There is No Basis for Intervenor Epstein's Sweeping Order.**

Even if Epstein were not attempting to reverse the burden of proof in an improperly sweeping fashion, Epstein has also failed to show "good cause."  It is undeniable that the public's interest in this case is significant and legitimate.  Indeed, the Government's communications with Epstein's counsel and the Plaintiffs go to the "heart of the interest protected by the right of access: 'the citizen's desire to keep a watchful eye on the workings of public agencies …[and] the operation of government.'"  Romero, 480 F.3d at 1246 (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)).  The public is understandably interested in the evidence that the Government claimed to have in connection with its investigation of Epstein, how the Government chose to negotiate a just resolution based on that evidence, and what the Government chose to communicate to the alleged victims.  These are issues that go to the core of the fairness of our justice system.  They are matters of legitimate public concern.

In contrast to the readily apparent public interest in this matter, Epstein has offered no valid interest in sealing these records.  In Epstein's Response to the Court's Order (Doc. No. 295), Epstein spends a significant portion of his brief challenging the tactics of Plaintiffs' counsel, which is curious given that Plaintiffs' counsel consented to Epstein's motion until the Court raised its concerns.  More importantly, the Eleventh Circuit has previously rejected the argument that concerns about future abusive filings can justify sealing.  See Federal Trade Commission, 713 F.3d at 64 (observing that Rule 11 sanctions, actions for wrongful civil proceedings, and a district court's authority to strike scurrilous pleadings provide "sufficient remedies" to address" the "potential for abuse").

8

Epstein then resorts to arguing that because plea negotiations usually are not public and are generally covered by Fed. R. Evid. 410, that too should justify sealing. (See Doc. No. 295 at 11-13.)  But, the Eleventh Circuit has already rejected at length the argument that evidentiary rules about *admissibility* can be stretched into privileges to conceal such records generally.  See Eleventh Circuit Slip Op. at 19 ("Rule 410 does not bar disclosure of the correspondence written by the attorney-intervenors.") (Doc 188). Epstein is, of course, correct that the communications between defense attorneys and prosecutors are not routinely disclosed to the public in a typical criminal case, but that is no justification to seal them in the rare circumstances present before the Court in which such records become relevant evidence in a civil action challenging the fairness of our justice system's treatment of alleged sexual assault victims.  See id. at 3 ("Not only did the United States neglect to confer with the victims before it entered into the agreement with Epstein, it also failed to notify them of its existence for at least nine months.").  See also  Unites States v. Haller, 837 F.2d 84, 86-87 (2d Cir. 1988) (finding a right of access to plea agreements and hearings which "allow[s] public scrutiny of the conduct of courts and prosecutors" in connection with the "most common form of adjudication of criminal litigation").

Stripped of overstated rhetoric about the "landscape of criminal settlement negotiations," the true source of Epstein's objection to the disclosure of the plea negotiation correspondence appears to be concerns about his reputation.  (See Doc 295 at 14 (objecting to an earlier release of the correspondence that was purportedly done "to satisfy a craving for what is sensation and scandalous").)  However, courts have repeatedly concluded that reputational concerns do not justify sealing of records.  See,

9

e.g., Wilson, 759 F.2d at 1570-71 ("[S]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access.") (citation omitted); Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (risk that a plaintiff may suffer some embarrassment is not enough" to overcome the "customary and constitutionally-embedded presumption of openness in judicial proceedings"); Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.") (cited and quoted in State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., 2013 WL 1212818, at *2 (M.D. Fla. March 25, 2013)); Davis v. Reynolds, 890 F.2d 1105 (10th Cir. 1989) (holding that witnesses' interest in preserving privacy and preventing embarrassment was not an "overriding interest" to justify closure); Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983) ("A naked conclusory statement that publication of the Report will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.").

Because Intervenor Epstein's requested protective order reverses the burden of proof and offers no legitimate justification for sealing of any kind, the Media Intervenors respectfully request that Intervenor Epstein's Motion be denied.

## **CONCLUSION**

For the foregoing reasons, Media Intervenors request that Intervenor Epstein's Motion for a Supplemental Protective Order be denied.

DATED this 2nd day of February, 2015.

Respectfully submitted,

s/Rachel E. Fugate
Rachel E. Fugate
Florida Bar No. 0144029
Thomas & LoCicero PL
601 South Boulevard
Tampa, Florida 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
Email:rfugate@tlolawfirm.com

OF COUNSEL

Thomas M. Clyde (*pro hac application forthcoming*)
Lesli N. Gaither (*pro hac application forthcoming*)
Kilpatrick Townsend & Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email:tclyde@kilpatricktownsend.com
Email:lgaither@kilpatricktownsend.com

Counsel for Media Intervenors The Palm Beach Post and Palm Beach Daily News

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 2, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and which will be electronically notified to all counsel of record and is available for viewing and downloading from the Court's CM/ECF system by all counsel of record.

s/ Rachel E. Fugate