UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA

JANE DOE #1 and JANE DOE #2,

        Petitioners,

vs.

UNITED STATES OF AMERICA,

        Respondent.

_____/

RESPONDENT'S OPPOSITION TO JANE DOE NO. 1 AND JANE DOE NO. 2's
PROTECTIVE MOTION PURSUANT TO RULE 15 TO AMEND THEIR PETITION
TO CONFORM TO EXISTING EVIDENCE AND TO ADD JANE DOE NO. 3
AND JANE DOE NO. 4 AS PETITIONERS

Respondent United States, by and through its undersigned counsel, files its Opposition to

Jane Doe No. 1 and Jane Doe No. 2's Motion pursuant to Rule 15 to Amend their Petition to

Conform to Existing Evidence and to Add Jane Doe No. 3 and Jane Doe No. 4 as Petitioners,

and states:

     I.     THE CAREFUL BALANCE THAT CONGRESS STRUCK WITH THE
           CVRA COUNSELS AGAINST THE EXPANSION OF THESE CVRA
           PROCEEDINGS TO INCLUDE ADDITIONAL CLAIMS OR PARTIES.

    Petitioners have filed their "protective" motion to amend their petition and to add two

new petitioners, Jane Doe No. 3 and Jane Doe No. 4.  As the Government has previously

explained (*see, e.g.*, D.E. 290 at 1-2), these CVRA proceedings are ancillary criminal

proceedings, see Fed.R.Crim.P. 60, Advisory Committee Note (2008 Adoption) (discussing

rule's implementation of CVRA provisions for federal judicial proceedings), and the Rules of

Criminal Procedure do not contemplate or permit any addition of parties such as petitioners seek.

Thus, in determining whether to expand the CVRA proceedings initiated by Jane Doe No. 1 and

Government Exhibit A
Case No. 08-80736-CIV-MARRA

Jane Doe No. 2 to include additional claimants and additional claims, the Court must consider whether there is a basis to do so in light of the CVRA's statutory scheme, the manner in which the CVRA has been integrated into the Federal Rules of Criminal Procedure, and how the CVRA has been interpreted by the Courts.

Prior to the CVRA, crime victims were not and could not become parties to a criminal prosecution because nonparty intervention does not exist to prosecute a criminal case.  The CVRA does not disturb this foundational principle:  crime victims are still not parties to a prosecution, and they may not become parties to it, either in the trial court or on appeal.  Under our Constitution, a wrongdoer is prosecuted not by a private prosecutor working for the victim but instead by a public official on behalf of (and in the name of) the sovereign who represents "the interests of society as a whole." Ferri v. Ackerman, 444 U.S. 193, 202-03 (1979).  The Constitution places the power to prosecute crimes in the hands of disinterested public officials in the Executive Branch.  See U.S. Const. art. II, § 3 (duty to "take Care that the Laws be faithfully executed"); United States v. Armstrong, 517 U.S. 456, 467 (1996) ("power to prosecute" is "one of the core powers of the Executive Branch").  There is no history of "any private prosecution of federal crimes." Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 816 n.2 (1987) (Scalia, J., concurring).  While victims clearly have an interest in the outcome of criminal litigation that deserves recognition, the Framers determined that Due Process required an independent prosecutor.

> Prosecution by someone with conflicting loyalties "calls into question the objectivity of those charged with bringing a defendant to judgment."  It is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters.  . . .
>
> Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor.  That state official has the power to employ the full

Government Exhibit A
Case No. 08-80736-CIV-MARRA

machinery of the state in scrutinizing any given individual.  Even if a defendant is
ultimately acquitted, forced immersion in criminal investigation and adjudication
is a wrenching disruption of everyday life.  For this reason, we must have
assurance that those who would wield this power will be guided solely by their
sense of public responsibility for the attainment of justice.

Young, 481 U.S. at 810, 814 (quoting Vasquez v. Hillery, 474 U.S. 254, 263 (1986)).

The CVRA's statutory scheme maintains this balance.  Thus, the provisions of the CVRA

were imported into the Federal Rules of Criminal Procedure (see Fed. R. Crim. P. 60; Advisory

Committee Note (2008 Adoption); Kenna v. United States District Court, 435 F.3d 1011, 1016

(9th Cir. 2006) (CVRA was a legislative compromise enacted after an attempt to pass a

constitutional amendment protecting victims' rights failed); United States v. Alcatel-Lucent

France, SA, 688 F.3d 1301, 1305 (11th Cir.) ("[G]enerally a citizen lacks standing to contest the

policies of a prosecuting attorney when the citizen has not been prosecuted or threatened with

prosecution.  In the absence of a private remedy under the [Victim and Witness Protection Act],

we held that the victim was a collateral entity to the proceeding and her interests were separate

and distinct from the interests of the government and the defendant in this criminal case.")

(internal quotation and brackets omitted), cert. denied, , 133 S. Ct. 806 (2012).  In rejecting a

victim's argument for a loosening of the procedural rules, the Alcatel-Lucent Court noted that

the "rights that the CVRA enumerates . . . do not vest a victim with a substantive interest in the

outcome of a sentencing proceeding.  . . .  And as we noted in *Johnson*, these underlying

principles do not afford a crime victim a substantive interest in the outcome of a criminal trial."

Alcatel-Lucent, 688 F.3d at 1306 (citing United States v. Johnson, 983 F.2d 216, 219 (11th Cir.

1993)).

Against this backdrop, where the Eleventh Circuit has determined that the CVRA must be

strictly construed, this Court should decline to enlarge these proceedings to allow additional

3

claims and additional petitioners, in violation of the CVRA's time constraints set forth in 18 U.S.C. § 3771(d)(5).

> II.     UNDER THE FEDERAL RULES OF CIVIL PROCEDURE,
>         FED.R.CIV.P. 15 GOVERNS ATTEMPTS TO AMEND A
>         <u>PETITION TO ADD NEW PETITIONERS</u>

To the extent that this Court nonetheless treats these CVRA proceedings as akin to a civil action, the amendment of a pleading to add parties to an ongoing proceeding would be governed under the Federal Rules of Civil Procedure by Fed.R.Civ.P. 15, not by Fed.R.Civ.P. 21. Even applying the Rules of Civil Procedure, moreover, the motions should be denied because they are untimely.

As to the motion to add Jane Doe No. 3 and Jane Doe No. 4, petitioners still maintain such motion is governed by Fed.R.Civ.P. 21, entitled "Misjoinder and Nonjoinder of Parties." Petitioners have not identified which party is misjoined, or which party needs to be joined in order for this CVRA proceeding to properly go forward.  With only one defendant, the United States of America, there cannot be any issue regarding severing any claim against a party.

On the specific issue of adding a new party, and whether Rule 15 or Rule 21 applies to the addition of a party under the Federal Rules of Civil Procedure, the Fifth Circuit resolved this issue in <u>McLellan v. Mississippi Power & Light Co.</u>, 526 F.2d 870 (5th Cir.), <u>vacated in part on other grounds</u>, 545 F.2d 919 (5th Cir. 1977).  Plaintiff McLellan filed suit against his former employer, defendant Mississippi Power and Light Company, for discharging him for violating company policy by filing a voluntary petition in bankruptcy.  <u>Id.</u> at 871.  Defendant filed a timely motion to dismiss.  While the motion was pending, McLellan filed an amended complaint under Rule 15, without leave of the Court, seeking to add two new parties, the International Brotherhood of Electrical Workers and the local of that union.  The district court held that the

4

Government Exhibit A
Case No. 08-80736-CIV-MARRA

unions were additional parties that could be added only pursuant to Fed.R.Civ.P. 21, which

required leave of court.  Since leave was not obtained by plaintiff, the district court dismissed the

complaint as to the unions.

On appeal, the Fifth Circuit posed the question:

> Which rule takes precedence if a party attempts to drop or add
> parties by an amended pleading filed before a responsive pleading
> is served?  May the amending party file his amendment as a matter
> of course (first sentence of Rule 15) or must he obtain leave (Rule
> 21)?  The district court cases are divided.  The question has not
> been squarely decided at the circuit level.  The District Court in
> this case gave precedence to Rule 21.  We reach the opposite
> conclusion.

Id. at 872-73 (footnotes omitted).  The Fifth Circuit noted that Rule 15 was the more specific

rule, since it "sets forth a particular means by which a party attempts to add or drop parties – by

amendment to his pleadings – as opposed to Rule 21's more general treatment of the overall

subject matter of dropping and adding parties."  Id at 873 (citation omitted).  See also Galustian

v. Peter, 591 F.3d 724, 730 (4th Cir. 2010), and Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66

(10th Cir. 1993) ("To the extent that Plaintiffs' motion to supplement sought the addition of a

party, it is controlled by Rule 15(a) because it is actually a motion to amend.").

McLellan thus rejects the argument made by petitioners that Rule 21 applies because it is

more specific.  D.E. 310 at 15-16, citing International Broth. of Teamsters v. AFL-CIO, 32

F.R.D. 441, 442 (E.D.Mich. 1963).  Since it is a precedential decision of the Eleventh Circuit,

McLellan is binding authority.  Accordingly, if the Federal Rules of Civil Procedure are applied

to petitioners' motion to add Jane Doe No. 3 and Jane Doe No. 4, Rule 15 would govern the

resolution of that motion.

5

III.     PETITIONERS' MOTION TO AMEND THEIR PETITION SHOULD BE
         DENIED

Petitioners seek to amend their petition in two ways:  (1) add references to the non-prosecution agreement and allege that the government concealed its existence; and (2) add Jane Doe No. 3 and Jane Doe No. 4 as petitioners.   Both requests should be denied.

"Although '[l]eave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'" Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003) (citation omitted).  Petitioners became aware of the non-prosecution agreement during the hearing on July 11, 2008 (D.E. 311 at 4), and received a copy of the non-prosecution agreement pursuant to this Court's order of August 21, 2008 (D.E. 26).

Jane Doe No. 1 and Jane Doe No. 2 became familiar enough with the non-prosecution agreement to both invoke its provisions in their lawsuits against Jeffrey Epstein under 18 U.S.C. § 2255.[1]  United States' Reply in Support of Its Motion to Dismiss for Lack of Subject matter Jurisdiction, D.E. 205-6, Exhibits A – D.  From its inception, the premise of their CVRA lawsuit was that the government failed to consult with them prior to what they believed would be the disposition of the federal investigation against Epstein.  D.E. 1, ¶¶ 3,4.  They knew, at the time their petition was filed, that Epstein had "recently been prosecuted and pleaded guilty, on June 30, 2008, in the Circuit Court for Palm Beach County to various similar state offenses including solicitation of minors for prostitution."  D.E. 1, ¶ 2.  Once they received the non-prosecution

---

[1] Jane Doe No. 3, who seeks to be added as a party, also wasted little time in utilizing the non-prosecution agreement to seek money damages from Epstein.  After receiving written notice in January 2009 from the U.S. Attorney's Office of Epstein's guilty pleas and the potential of obtaining compensation from Epstein, Jane Doe No. 3 contacted Robert Josefsberg, Esq., the attorney referenced in the notification letter, and a lawsuit was filed on May 1, 2009, on her behalf.  D.E. 290-2.  Despite living in Australia, Jane Doe No. 3 had no difficulties in accessing courts in the State of Florida to assert and litigate her damage claim against Epstein.

6

Government Exhibit A
Case No. 08-80736-CIV-MARRA

agreement in August 2008, petitioners knew what the government had negotiated with Epstein and could have fully assessed any alleged impact of that agreement on their CVRA rights. Still, they waited over six years – until February 2015 – to try and amend their petition.

Petitioners have no explanation for the six-year delay in seeking to amend their petition. "Although the district court should err on the side of allowing amendment, leave to amend should not be given automatically." Chitimachia Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982), citing Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981).  The Fifth Circuit observed that the "[m]ere passage of time need not result in a denial of leave to amend, but delay becomes fatal at some period of time." Id. citing Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir. 1981).  Further, "[w]hen there has been an apparent lack of diligence, the burden shifts to the movant to prove that the delay was due to excusable neglect."  690 F.2d at 1163.

Petitioners make repeated references to legal authorities noting that leave to amend should be granted liberally.  D.E. 311 at 6-7.  However, while leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), "parties seeking the benefit of the rule's liberality have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment."  Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989).

Petitioners seek rescission of the non-prosecution agreement, as a remedy for the alleged failure of the U.S. Attorney's Office to consult with them about the agreement before entering into it.  Had they promptly sought to amend their petition after receiving the non-prosecution agreement in August 2008, Jeffrey Epstein could have been put on notice that the validity of the Agreement was being challenged.  Further, others who were invoking and relying upon the

Government Exhibit A
Case No. 08-80736-CIV-MARRA

Agreement to seek compensation against Epstein also would have been placed on notice. Now, six years later, petitioners seek to rescind the Agreement, long after individuals have exacted benefits from the Agreement, and fulfilled obligations imposed by it. Because of their delay—as well as their election not to pursue their right to a prompt disposition of their CVRA claims, *see* 18 U.S.C. § 3771(d)(3) (requiring district court to "take up and decide" a CVRA claim "forthwith")—they have allowed the legal and factual landscape and the rights and obligations of third parties (both Epstein and his victims) to change and become settled.

Inasmuch as "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay," <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 ($2^d$ Cir. 1990) (citations omitted), petitioners must explain why it took over six years to amend their petition. They have provided no satisfactory explanation for the delay, and their the motion to amend should be denied.

IV.    PETITIONERS' MOTION TO ADD JANE DOE NO. 3 AND JANE DOE NO. 4
       <u>SHOULD ALSO BE DENIED</u>

A.    Undue Delay by Jane Doe No. 3 and Jane Doe No. 4

In January 2009, Jane Doe No. 3 received a letter from the U.S. Attorney's Office, notifying her that Jeffrey Epstein entered a plea of guilty to violations of Florida statutes pertaining to felony solicitation of prostitution and procurement of minors to engage in prostitution. D.E. 290-1. She was also told that, in light of the guilty plea and sentence, the United States had agreed to defer federal prosecution, subject to certain conditions. These conditions included a mechanism for compensating the victims of Epstein's sexual abuse, which was explained in detail. D.E. 290-1 at 2. Further, Jane Doe No. 3 was told that there was litigation between the United States and two victims regarding the disclosure of the entire agreement between the United States and Epstein. D.E. 290-1 at 3. The letter suggested that,

8

"Mr. Josefsberg can provide further guidance on this issue, or if you select another attorney to represent you, that attorney can review the Court's order in the matter …."  The case style and number was provided in the letter.

Jane Doe No. 3 was sufficiently motivated to contact Mr. Josefsberg "within days" of receiving the letter from the U.S. Attorney's Office, despite residing in a foreign country.  D.E. 290-2 (Complaint), ¶ 29.   She "diligently and repeatedly pursued a good faith viable settlement of her claims against Defendant.  Unable to reach a settlement, this lawsuit followed."  Id.

Petitioners assail the Government for not providing Jane Doe No. 3 an accurate description of the CVRA litigation in the September 3, 2008 letter.  D.E. 311 at 12; D.E. 310 at 13-14.  In her declaration of February 5, 2015, Jane Doe No. 3 laments that the Government should have told her what was really going on (D.E. 310-1, ¶ 37), but provides no explanation why she did not consult with Mr. Josefsberg about the CVRA litigation, as the letter from the U.S. Attorney's Office recommended.[2]  Since she was in contact with Mr. Josefsberg's office in January 2009, and was "diligently and repeatedly" pursuing a settlement of her money damages claim against Epstein between January and May 2009.  Jane Doe No. 3 had access to legal counsel who could answer her questions about the CVRA litigation, if she had asked them.  Jane Doe No. 3 had no difficulty in understanding that she had a cause of action against Epstein, and how she could assert that claim.  Despite her attempts to rationalize her actions in January 2009,

---

[2] In their reply, petitioners refer to Podhurst Orseck, P.A., and contend that, "[t]hat firm had to work within the confines of that Government assignment and direction and therefore could not, and did not, inform Jane Doe No. 3 of a right to participate in this CVRA case which was aimed at invalidating the very agreement through which this law firm was mandated to operate."  D.E. 310 at 14.  Nowhere in Jane Doe No. 3's February 5, 2015 declaration does she even mention that she asked Mr. Josefsberg about the CVRA litigation or claim that he declined to address her question.  Further, petitioners provide no support for their assertion that Mr. Josefsberg could not answer Jane Doe No. 3's questions about the CVRA lawsuit.  Indeed, the agreement never precluded Mr. Josefsberg from answering his clients' questions nor representing them in the manner he deemed best protected their interests.

Government Exhibit A
Case No. 08-80736-CIV-MARRA

it is clear that any CVRA claim that might have been available to her did not peak her interest as much as the 18 U.S.C. § 2255 action against Epstein.  A reasonable person in Jane Doe No. 3's position would have known that she might have a claim under the CVRA, and would have consulted with her attorney regarding the CVRA lawsuit mentioned in the September 3, 2008 letter.[3]

Petitioners argue there is no undue delay because this Court did not enter a scheduling order.  D.E. 311 at 10-11.  The absence of a scheduling order does not exempt the new victims from the normal requirements of timeliness and promptness in Fed.R.Civ.P. 15.  The lack of a scheduling order does not give license to petitioners to wait six years before adding two new petitioners, when the Federal Rules of Civil Procedure would preclude such action.

As to Jane Doe No. 4, she was represented by petitioners' attorneys as early as 2012, yet she waited two years before seeking to be added to this lawsuit.  There is no justification for this delay.

---

[3] In her haste to justify her action in 2007, telling S/A Slater that she did not want to be bothered about the Epstein matter again, Jane Doe No. 3 confuses the FBI with the U.S. Attorney's Office. In her February 5, 2015 declaration, Jane Doe No. 3 asserts that, "[o]n September 3, 2008, the FBI sent a victim notification letter to me.  This was the first written communication I had received from the FBI.  The letter was attached as Exhibit 1 to my earlier statement."  D.E. 310-1, ¶ 34.  Exhibit 1 to her earlier statement of January 19, 2015 (D.E. 291-1), is the notification letter from the United States Attorney's Office, Southern District of Florida, signed by Assistant U.S. Attorney A. Marie Villafana, on behalf of United States Attorney R. Alexander Acosta. D.E. 291-1 at 17-20.  Jane Doe No. 3 even goes so far as to state that, "[t]his kind of written communication, on official FBI stationary (sic), is the way that I thought the FBI really communicated with people they wanted to talk to.  The fact that I got this official letter from them made me wonder even more whether that (sic) the call I had received earlier was really from the FBI."  D.E. 310-1, ¶ 34.  Exhibit 1 is on the letterhead of the U.S. Attorney's Office, not the FBI.  Notwithstanding her post hoc attempts to explain her actions, it nonetheless remains undisputed that Jane Doe No. 3 asked the government in early 2007 not to bother her again about Epstein.

Government Exhibit A
Case No. 08-80736-CIV-MARRA

       B.      The Government Would Be Prejudiced by the Addition of Jane Doe No. 3 and Jane Doe No. 4

The addition of the new victims would prejudice the Government since it would inject new issues into this litigation.  Jane Doe No. 3 does not dispute that she was contacted in 2007 by a person "with a plain sounding name," claiming to be with the FBI.  D.E. 310-1, ¶ 25.  She states she did answer some basic questions, which is consistent with FBI Special Agent Slater's account.  S/A Slater Declaration, D.E. 304-1, ¶ 7.  She also admits that the conversation "probably didn't even last three minutes," D.E. 310-1, ¶ 27, which comports with S/A Slater's account.  D.E. 304-1, ¶ 8.  Jane Doe No. 3 claims she became very uncomfortable, and "she told him nothing more about Epstein."  D.E. 310-1, ¶ 27.  In her April 7, 2011 interview with Mr. Scarola, Jane Doe No. 3 stated that she was contacted in 2007 by someone claiming to be with the FBI, she was fearful, and told the person to "please don't bother me about this again."  D.E. 290-3 at 17-18.

Jane Doe No. 3 was in her early twenties when S/A Slater called her in Australia.  As an adult, she was entitled to make decisions regarding whether to cooperate in the FBI's investigation of Jeffrey Epstein.   She told S/A Slater that she did not want to be bothered about the Epstein matter again.  D.E. 304-1, ¶ 7; D.E. 290-3 at 17-18.

In their motion, petitioners claim that the facts surrounding this exchange are highly disputed, when they are not.  D.E. 311 at 16.  Jane Doe No. 3 admits that the conversation with the person, in 2007, purported to be from the FBI last "didn't even last three minutes," and she told the person not to bother her again.  Further, petitioners argue at length that this brief phone conversation was not a proper notification of her rights under the CVRA.  D.E. 311 at 17-18.

The Government never suggested that S/A Slater's phone conversation with Jane Doe No. 3, in January – February 2007, constituted compliance with notifying her of her rights under

Government Exhibit A
Case No. 08-80736-CIV-MARRA

the CVRA.  Agent Slater contacted Jane Doe No. 3 to investigate allegations that Epstein had sexually abused her.  D.E. 304-1, ¶ 6.  When she told Slater that she did not want to be bothered, she was making a choice she was entitled to make.  Under 18 U.S.C. § 3771(a)(8), a crime victim has the right "to be treated with fairness and with respect for the victim's dignity and privacy."  The Government respected her right to privacy by acceding to her expressed request that she not be bothered again.[4]

Inasmuch as Jane Doe No. 3 requested not to be bothered again, the Government was relieved of any arguable further obligation to contact her or consult with her, and the Government was certainly not obligated to notify her of the later-negotiated non-prosecution agreement prior to its execution in September 2007.  Thus, Jane Doe No. 3 fails to state a claim under the CVRA because she is not a victim entitled to the rights accorded in § 3771(a)(1)-(8), because she chose, in 2007, to waive those rights.

As to Jane Doe No. 4, the Government would be prejudiced since she is injecting a new claim, that the Government is obligated to accord CVRA rights to victims who are not even known to the Government.  Jane Doe No. 4 also would expand the scope of the litigation by requiring a determination of whether or not she is, in fact, a "victim" of a federal offense committed by Jeffrey Epstein.  Cf. In re Stewart, 552 F.3d 1285, 1288-89 (11th Cir. 2008) (on mandamus review, determining that petitioners were "crime victims" of charged offense as defined under CVRA).  While this Court and others have discussed the CVRA's contemplation

---

[4] Petitioners maintain that, while the Government sent the notification letter on September 3, 2008 to Jane Doe No. 3 in Australia, it never sent its standard victim notification letter to her, as it did for other victims.  D.E. 311 at 17 n.6.  The initial phone contact by the FBI with Jane Doe No. 3 occurred in January – February 2007, during which Jane Doe No. 3 told S/A Slater that she did not want to be bothered anymore.  There was no reason—and no obligation—to send her a standard victim notification letter after this conversation, since she had requested not to be bothered.

12

of a victim's rights applying prior to the filing of charges, "the universe of such rights clearly has

its logical limits.  For example, the realm of cases in which the CVRA might apply despite no

prosecution being 'underway,' cannot be read to include the victims of uncharged crimes that the

government has not even contemplated.  It is impossible to expect the government, much less a

court, to notify victims of their rights if the government has not verified to at least an elementary

degree that a crime has actually taken place[.]"  United States v. Rubin, 558 F.Supp. 2d 411, 419

(E.D.N.Y. 2008).

> V.    ANY AMENDMENT TO ADD JANE DOE NO. 3 AND JANE DOE NO. 4
> WOULD NOT RELATE BACK UNDER RULE 15(c)(1)(B)

Petitioners attempt to sidestep the statute of limitations bar by arguing that their proposed

amendment would "relate back" to the original filing date of the petition, July 2008.  D.E. 311 at

13-20.  Petitioners' argument fails to note the distinctions between amending to add plaintiffs, as

opposed to defendants, and the different legal implications between the two.

In Leachman v. Beech Aircraft Corp., 694 F.2d 1301 (D.C. Cir. 1981), plaintiff Heather

Leachman sued the aircraft manufacturer, Beech Aircraft, on December 2, 1977, for damages

due to the crash of one of its airplanes, piloted by Leachman's husband William, which occurred

on December 6, 1976.  Id. at 1302-03.  Because the airplane crash was still under investigation,

the parties agreed that Beech would not have to respond to the complaint, until such time as

plaintiff notified Beech of its intention to proceed with the lawsuit.

However, in May 1978, the parties filed a Stipulation of Dismissal, without prejudice,

where the defendant Beech Aircraft agreed to waive any statute of limitations defenses should

the plaintiff refile the action before May 1, 1979.  Id. at 1303.  This deadline for refiling was

twice extended, to December 1, 1979, and finally to March 1, 1980.

On February 22, 1980, Leachman and Northern Counties Lumber, Inc., filed a complaint

Government Exhibit A
Case No. 08-80736-CIV-MARRA

against Beech.  Northern Counties, the owner of the plane, was wholly owned by William Leachman at the time of the crash, and now owned by Mrs. Leachman.  Beech sought dismissal of the complaint based upon the statute of limitations, which was granted by the district court.

As to the dismissal of Northern Counties, the appellate court rejected Northern Counties' argument that the amendment related back under Rule 15(c).  The District of Columbia Circuit relied in part upon a Fifth Circuit case, Williams v. United States, 405 F.2d 234 (5th Cir. 1968), where a mother had sued the United States, under the Federal Tort Claims Act, on behalf of her minor son, who had been injured by an Army firecracker.  The mother sued initially as next friend of her injured son, but after the two year statute of limitations had elapsed, sought to amend the complaint to appear as a party plaintiff in her own right, seeking recovery for loss of services.  694 F.2d at 1308.

In Williams, the Fifth Circuit dealt with the issue of whether the Government had notice under Rule 15(c), such that it would not be prejudiced by the amendment by plaintiff Williams to add a claim in her own right.  The Court observed that in determining whether the adversary had fair notice, the usual emphasis of "conduct, transaction or occurrence" is on the operational facts which give rise to a claim by the particular party based on any one or all of the theories conjured up, whether timely or belatedly.  However, "when it comes to a late effort to introduce a new party, something else is added."  Continuing, the Court stated:

> Not only must the adversary have had notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts give rise to distinct claims (or defenses) among distinct claimants (or defendants).

405 F.2d at 238.

The Leachman court found "persuasive the emphasis by the court in Williams on the need

14

to limit relation back of claims asserted by new plaintiffs in some way beyond the 'conduct, transaction, or occurrence' test that applies to relation back of amendments generally."  694 F.2d at 1309.  The rationale for imposing an additional requirement under such circumstances was provided by the Court:

> Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed.  That would allow the tardy plaintiffs to benefit from the diligence of the other victims and, most importantly, could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run.  Even if, as here, there was no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose.  At some point, defendants should have notice of who their adversaries are.

Id.  The appellate court affirmed the district court's determination that Northern Counties' claim was barred by the statute of limitations.  Id. at 1310.

Jane Doe No. 3 and Jane Doe No. 4 make the same argument as Northern Counties in contending that their claims relate back to the claims filed by Jane Doe No. 1 and Jane Doe No. 2 in July 2008.  They contend that their claims arise out of the same conduct as in the original petition.  D.E. 311 at 15.  Under Williams and Leachman, it is not enough that Jane Doe No. 3 and Jane Doe No. 4 were also sexually abused by Epstein, and claim they were entitled to be consulted before the non-prosecution agreement was signed.[5]  The government must also have had fair notice that a legal claim existed in the new plaintiff being brought in, such as the knowledge that Mrs. Williams, who sued as next friend on behalf of her minor son, would have her own claim for loss of services.  The Government had no knowledge that Jane Doe No. 3 had or intended to assert a potential CVRA claim for failure to consult, since she told FBI Special Agent Slater in January – February 2007 that she did not want to be bothered any more.  As to

---

[5] The Government assumes, arguendo, that Jane Doe No. 4 was in fact sexually abused by Epstein.

Government Exhibit A
Case No. 08-80736-CIV-MARRA

Jane Doe No. 4, petitioners do not dispute that she unknown to the Government.  If the Government did not even know of her existence, it could not have had any notice of a potential CVRA claim by her.

Another case rejecting an attempt by proposed new plaintiffs to join an existing lawsuit, after the statute of limitations had expired, is <u>Asher v. Unarco Material Handling, Inc.</u>, 596 F.3d 313 (6th Cir. 2010).  The original plaintiffs were allegedly injured by carbon monoxide gas at a Wal-Mart Distribution center in London, Kentucky, between November 29 and December 12, 2005.  <u>Id.</u> at 315.  They filed their complaint on November 21, 2006.  On March 22, 2007, the plaintiffs filed a motion for leave to add thirty-three new plaintiffs.  <u>Id.</u> at 316.  Defendants moved for summary judgment against the new plaintiffs, arguing that their claims were barred by Kentucky's one-year statute of limitations.  The district court granted the defendants' summary judgment motion, rejecting the proposed plaintiffs' argument that their amended complaint related back to the original complaint.

On appeal, the proposed plaintiffs argued that the legal authorities pertaining to the application of relation back under Rule 15 when new defendants were being added, should not apply when new plaintiffs were being added.  <u>Id.</u> at 317-18.  They argued that all the proposed plaintiffs' claims arose out of the same occurrence of which the defendant was already aware, due to the pending lawsuit, and defendant would not be prejudiced.  In response, the appellate court stated:

> Although the new plaintiffs are correct that our prior decisions applying this rule involved plaintiffs' attempt to add defendants after the statute of limitations expired, they offer no authority or persuasive justification for treating plaintiffs differently from defendants and allowing untimely plaintiffs to ride piggyback on the claims of timely plaintiffs.  Indeed, the plain language of Rule 15(c) does not authorize the exception advanced by the new plaintiffs.

16

Government Exhibit A
Case No. 08-80736-CIV-MARRA

Id. at 318.  Further, while the Court noted cases allowing the application of the relation-back doctrine amendments to add new plaintiffs, those cases involved changes to correct a misnomer or misidentification of a proper party plaintiff already in the lawsuit.  Since the plaintiffs were not seeking to do either, the Court rejected the plaintiffs' relation-back argument, finding that "they attempted to circumvent the statute of limitations, adding new parties and new claims."  Id. at 319.

The proposed plaintiffs in Asher made the same argument as petitioners in this case, that the defendant had notice of their claims because they were aware of the original plaintiffs' timely claims.  The appellate court rejected this argument, citing this passage from Young ex rel. Nutramax Litig. Trust v. Lepone, 305 F.3d 1 (1st Cir. 2002):

> [W]e repudiate the conceit that an action filed by one plaintiff gives a defendant notice of the impending joinder of any or all similarly situated plaintiffs.  Such a rule would undermine applicable statutes of limitations and make a mockery of the promise of repose.

596 F.3d at 320.  Jane Doe No. 3 and Jane Doe No. 4 cannot do an end-around the statute of limitations by piggybacking their CVRA claims onto the timely filed claims of Jane Doe No. 1 and Jane Doe No. 2.

VI.     JANE DOE NO. 3'S CVRA CLAIM IS BARRED BY THE CVRA ITSELF, OR 28 U.S.C. § 2401

Petitioners dispute whether any statute of limitations exists in the CVRA, or whether 28 U.S.C. § 2401(a) applies, and even if one exists, whether it bars their claims as being untimely.  D.E. 310 at 5-9.

"Statutes of limitations, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have

Government Exhibit A
Case No. 08-80736-CIV-MARRA

been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944).

A.      CVRA Limitations Period

The policy underlying statutes of limitations applies no less to claims arising under the CVRA.  18 U.S.C. § 3371(d)(3) provides for enforcement of rights by the filing of a motion for relief in the court where the defendant is being prosecuted, or if no prosecution is underway, in the district court in which the crime occurred.  Stringent time limits are placed upon the movant, district court, and court of appeals in adjudicating a claim for relief under the CVRA. §3771(d)(5) provides that a victim may make a motion to reopen a plea or sentence only if the victim asserted the right to be heard before or during the proceeding at issue, and such right was denied; and, the victim petitioned the court of appeals for mandamus within 14 days.  While this case does not involve a motion to reopen a plea or sentence, the circumstances are very similar to petitioners' claims, as this court has found.  Indeed, § 3771(d)(5) is the authority upon which this Court has relied to conclude that it has authority to re-open or set aside a pre-charge prosecutorial agreement based upon a CVRA violation.  D.E. 189 at 7-8.

The petitioners in this case are seeking to set aside the Non-Prosecution Agreement and have made public statements that they are seeking renewed prosecution of Jeffrey Epstein.  In this matter, as set forth in the Non-Prosecution Agreement, the federal government deferred prosecution in favor of the original prosecution by the State of Florida.  In reliance on the Non-Prosecution Agreement, Jeffrey Epstein entered a guilty plea to both of the charges filed against

18

Government Exhibit A
Case No. 08-80736-CIV-MARRA

him – the highest offenses charged – he gave up his right to contest those charges and waived his right to appeal the sentences imposed.  Epstein also gave up the right to contest liability in civil lawsuits filed by victims identified by the Government, including Jane Doe No. 3.  The CVRA's limitation on actions requires victims to assert their rights promptly and consistently in recognition of the fact that, unlike in a civil matter, it is not possible to put Epstein back in the position he was before he entered his guilty plea.

Congress's intent that victims must address their claims to the courts with dispatch should apply with equal force to CVRA claims presented in cases where there is no prosecution underway, as in this case.  Prompt presentation of claims allows the courts to adjudicate the disputes before evidence is lost, memories fade, and witnesses disappear.  Additionally, where the relief sought is rescission of an agreement between the government and the defendant, prompt adjudication promotes efficiency by forestalling reliance upon the agreement, and disrupting settled expectations of the parties.

Petitioners maintain that the limitations period for prosecuting offenses against children, 18 U.S.C. § 3282, should apply in this case.  D.E. 310 at 8-9.  In their view, since the Government may prosecute a defendant for the sexual abuse of a child under the age of 18 "during the life of the child, or for ten years after the offense, whichever is longer," their claims are timely.  That would mean an adult, who was sexually abused as a child, has his or her entire lifetime to assert a claim under the CVRA.  If this were truly the limitations period applicable to CVRA actions, there would be no reason to believe it would not also apply to cases where criminal charges have actually been filed.  He or she could challenge the denial of the right to confer under § 3771(a)(5) at any time, even after the defendant was sentenced, direct appeal concluded, and the defendant completed his sentence—and could do so notwithstanding non-

19

Government Exhibit A
Case No. 08-80736-CIV-MARRA

compliance with the prerequisites established by § 3771(d)(5).

Such an interpretation contradicts the entire rationale of statutes of limitation – to prevent stale claims, where memories have faded, evidence has been discarded, and witnesses cannot be located.  It is also contrary to the scheme Congress constructed in the CVRA as the sole basis and means "to re-open a plea or sentence" under the CVRA.  18 U.S.C. § 3771(d)(5).  Moreover, to the extent the text of the CVRA is deemed not to provide a sufficiently specific statute of limitations for a CVRA motion/petition seeking to set aside a prosecutorial agreement, it makes sense to apply 28 U.S.C. § 2401, in which Congress expressly evinced its intent to deny individuals any more than six years to assert a claim against the United States.

B.      The Overseas Exception in 28 U.S.C. § 2401(a) Does Not Apply to
        Jane Doe No. 3

Jane Doe No. 3 contends that, even if 28 U.S.C. § 2401(a) were to apply, her claim is nonetheless timely because the statute was tolled during the period she was residing overseas. D.E. 310 at 10-13.   She relies upon the last sentence of § 2401(a), which provides that, "[t]he action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."

Despite petitioners' argument to the contrary (D.E. 310 at 12-13), courts do have the authority to interpret statutory provisions enacted long ago, to determine if the provision should be literally applied when conditions have changed such that the rationale for the provision no longer exists.   That is not just the opinion of the Government, but the United States Supreme Court as well:

> It is a case where there was presented a definite evil, in view of
> which the legislature used general terms with the purpose of
> reaching all phases of that evil; and thereafter, unexpectedly, it is
> developed that the general language thus employed is broad
> enough to reach cases and acts which the whole history and life of

Government Exhibit A
Case No. 08-80736-CIV-MARRA

> the country affirm could not have been intentionally legislated
> against.  It is the duty of the courts, under those circumstances, to
> say that, however broad the language of the statute may be, the act,
> although within the letter, is not within the intention of the
> legislature, and therefore cannot be within the statute.

Holy Trinity Church v. United States, 143 U.S. 457, 516-17 (1892).

In Webb v. United States, 21 Cl.Ct. 137 (1990), the Court of Claims was presented with a claim for military back pay during the period December 1, 1950 through February 1, 1954. Webb enlisted in the U.S. Army and was ordered to Korea, where he was captured in December 1950.  He was a prisoner of war for three years, until 1953.  When the armistice was signed, Webb refused to be repatriated to the United States, to protest against U.S. involvement in the war.  Id. at 138.  He lived in China for six years; then traveled to Poland in 1960.  Webb continued to live in Poland until returning to the United States in 1985 to visit his sister.  Id.  In April 1987, he filed his claim for back pay.

The Court of Claims, on its own, raised the issue of its jurisdiction under 28 U.S.C. § 2501, which contains a six-year limitations period, and a clause providing that, "[a] petition on the claim under legal disability or beyond the seas at the time the claim accrues may be filing within three years after the disability ceases."  Section 2401(a) contains a time limit materially identical  to the one in § 2501.  John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 145 (2008) (Ginsburg, J., dissenting).  Relying upon Holy Trinity, the Court of Claims held that the "beyond the seas" provision did not toll the statute of limitations:

> The "beyond the seas" provision understandably could have been
> valuable in those bygone days of transoceanic sailing ships when
> communication was bad and a claimant would have difficulty in
> timely registering his complaint from overseas.  In the second half
> of the twentieth century, however, it is absurd for plaintiff to say
> that while he was voluntarily out of the country he could not timely
> pursue his claim.  As the facts show, at all times after his claim
> accrued, the courts were open and he could have presented a claim

21

Government Exhibit A
Case No. 08-80736-CIV-MARRA

by mail to the Army or the court.

21 Cl.Ct. at 141.

In interpreting the "beyond the seas" provision,  the Court considered Congress's intention not to allow any tolling provision to be controlled by a claimant's voluntary conduct. Id. at 141.  Like Jane Doe No. 3, Webb also claimed that he was fearful of returning to the United States.  The Court of Claims found that Webb, despite living in China, had access to the courts and, while living in Poland, could have gone to the U.S. Embassy in Krakow to inquire about his claim for back military pay.  Id.  The Court found Webb was not operating under a "legal disability" at the time his claim accrued, when he was released from POW status.  Even if living in China was construed as a legal disability, the Court found that Webb could have instituted suit when he left China or while living in Poland.  Id. at 142.

The logic in Webb, which was decided in 1990, and examined Webb's conduct from 1953 to 1987, applies with equal force in this case.  While living in Australia, Jane Doe No. 3 had ready access to courts in the United States and faced no obstacle in pursuing a claim.  She had no trouble finding her way to the federal courthouse in 2009 when she instituted her action against Epstein under 18 U.S.C. § 2255.  She had no difficulty communicating with her present lawyer about Epstein two years later, in 2011, and providing him and *his* lawyer with a recorded telephonic interview for him to file in *his* civil litigation with Epstein.  D.E. 290-3.  She was notified of the CVRA lawsuit years earlier in the same September 3, 2008 letter that informed her of Epstein's pleas of guilty in Florida state court, and the availability of an action under 18 U.S.C. § 2255 against Epstein.  She was under no legal disability which prevented her from asserting a CVRA claim in the same district court where she filed her 18 U.S.C. § 2255 lawsuit.

The limitations period in 28 U.S.C. § 2401(a) is a jurisdictional condition attached to the

22

government's waiver of sovereign immunity, and as such must be strictly construed.  <u>Center for Biological Diversity v. Hamilton</u>, 453 F.3d 1331, 1334 (11th Cir. 2006), <u>citing</u> <u>Spannaus v. Dept. of Justice</u>, 824 F.2d 52, 55 (D.C. Cir. 1987).  "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996)(citations omitted).  Jane Doe No. 3's claim accrued in 2008, when she became aware of the criminal investigation of Epstein, and the possibility of filing a lawsuit against him.  Section 2401(a) bars her claim.

      VII.    THE MOTION TO ADD JANE DOE NO. 3 AND JANE DOE NO. 4 SHOULD BE DENIED

      There are separate and independent reasons for denying the motion to add Jane Doe No. 3 and Jane Doe No. 4.  First, the motion is untimely since the litigation has been going on for over six years.  Jane Doe No. 3 was aware of the criminal investigation of Epstein in 2007, and the non-prosecution agreement in January 2009, yet she waited until December 2014 to assert her claim.  Jane Doe No. 4 was represented by counsel as early as 2012, but did not act until December 2014.  Second, the addition of the two new petitioners would inject new issues into the litigation, such as whether the Government owes any duty under the CVRA to communicate with an adult (Jane Doe No. 3) after she has asked the Government not to bother her anymore, and whether the Government owed any duty under the CVRA to an asserted victim (Jane Doe No. 4) who was not even known to the Government.  Third, the claims asserted by the proposed new petitioners are futile, for different reasons.  Jane Doe No. 3's claim is barred both by the statute of limitations in 28 U.S.C. § 2401(a) and by the CVRA itself.  Jane Doe No. 4 fails to state a claim since the Government never owed a duty under the CVRA to a victim that was unknown to the Government.  Any attempt to argue that the Government should have known of Jane Doe No. 4's existence as a victim would be barred by 18 U.S.C. § 3771(d)(6), which

Government Exhibit A
Case No. 08-80736-CIV-MARRA

provides that, "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."  How the Government conducted its criminal investigation of Epstein, and what it should have done to search for unknown, never-identified potential victims like Jane Doe No. 3, are matters consigned to the prosecutorial discretion of the Attorney General and his subordinates.

Additionally, the motion to amend the petition should also be denied as untimely. Petitioners knew of the non-prosecution agreement in August 2008, but waited until December 2014 to amend their petition to reflect that a non-prosecution agreement was negotiated in September 2007.

DATED:  February 23, 2015                    Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY


By:       s/ Dexter A. Lee_____
DEXTER A. LEE
Assistant U.S. Attorney
Fla. Bar No. 0936693
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR RESPONDENT

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

__s/ Dexter A. Lee_____
DEXTER A.  LEE
Assistant U.S. Attorney

24

SERVICE LIST
Jane Does 1 and 2 v.  United States,
Case No.  08-80736-CIV-MARRA/JOHNSON
United States District Court, Southern District of Florida

Bradley J. Edwards, Esq.,
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
Fax:  (954) 524-2822
E-mail: brad@pathtojustice.com

Paul G. Cassell
S.J. Quinney College of Law at the
University of Utah
332 S. 1400 E.
Salt Lake City, Utah 84112
(801) 585-5202
Fax: (801) 585-6833
E-mail: casselp@law.utah.edu

Attorneys for Jane Doe # 1 and Jane Doe # 2

Roy Black
Jackie Perczek
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida  33131
(305) 371-6421
Fax:  (305) 358-2006
E-mail:  rblack@royblack.com
           jperczek@royblack.com

Attorneys for Intervenors

Government Exhibit A
Case No. 08-80736-CIV-MARRA