# EXHIBIT 1

2015 WL 1297782 (Fla.Cir.Ct.) (Trial Pleading)
Circuit Court of Florida.
Eleventh Judicial Circuit
Civil Division
Dade County

Jean-Luc BRUNEL, et al.,

v.

Jeffrey EPSTEIN, et al.

No. 14-21348-CA-01.
January 26, 2015.

**Amended Verified Complaint for Legal & Equitable Relief and Damages**

Joe Titone, Attorney, FL Bar #: 203882, 621 S.E. 5th Street, Pompano Beach, Florida 33060, (954) 729-6490, (954) 941-2232 (Fax), Joetitone708 @comcast.net

COME NOW the Plaintiffs, Jean-Luc Brunei and MC2 Model & Talent Miami, LLC, by and through undersigned counsel, and sues Defendants Jeffrey Epstein, Tyler McDonald, and Tyler McDonald d/b/a/ Yi.Org for legal relief, equitable relief and defamation, and states as follows:

1. Venue is proper in Dade County, Florida as Defendants Tyler McDonald and Tyler McDonald d/b/a Yi.Org do business in Dade County, Plaintiff Jean-Luc Brunei resides in Dade County, Florida, and Plaintiff MC2 Model & Talent Miami, LLC, has an office in Dade County. The causes of action and damages against Defendant Jeffrey Epstein accrued in Dade County, Florida, due to specific acts by Epstein there, and accordingly, venue is appropriate there. Florida Statute 47.011.

2. Florida Statute 48.193(l)(a)(l) ("long-arm") authorizes service on both out-of-state Defendants (Tyler McDonald, and Tyler McDonald d/b/a/ Yi.Org).

3. Jurisdiction is proper in the Circuit Court as this action seeks relief in excess of fifteen-thousand dollars ($15,000).

*FACTUAL ALLEGATIONS AS TO DEFENDANT JEFFREY EPSTEIN*

4. Plaintiff Jean-Luc Brunei is the owner of Plaintiff modeling agency known as "MC2 Model & Talent Miami" ("MC2"). MC2 began operations in October 2005 and has offices in New York, Miami, and Tel Aviv.

5. Defendant Jeffrey Epstein ("Epstein") is a hedge-fund manager with a residence in Palm Beach County, Florida. Defendant has been the subject of significant media coverage due to charges brought against him involving sexual contact with minors. (Composite Exhibit A attached).

6. Plaintiff Brunei and Epstein have known one another since the inception of Plaintiff MC2.

7. Plaintiff Brunei operated his modeling agency, Plaintiff MC2, without incident until Epstein was first charged in Palm Beach County with unlawful sexual contact with a minor in 2006. He was convicted of soliciting prostitution from a minor and sentenced to eighteen months in prison, of which he served thirteen months. He remains a registered sex offender in Florida as of this day.

8. **First,** after the initial criminal charges against Epstein were filed in Palm Beach County, Plaintiffs were widely implicated in the media as being "linked" to Epstein. These false stories caused both Plaintiffs a tremendous loss of business.

9. Plaintiffs lost multiple contacts and business in the modeling business as a direct result of Epstein's illegal actions. For example, several photographers will not work with MC2 due to the adverse publicity surrounding Epstein and his illegal activities, and the publicity falsely linking Plaintiffs with those activities; namely, sex trafficking, (Composite Exhibit A).

10. One example of such a photographer was Michael Avedon, who worked with MC2 on photo shoots, Avedon stopped answering Plaintiffs' emails and phone calls after having known Plaintiff for some time. Upon meeting Avedon out one night, Avedon stated to Plaintiff Brunei he had "found out some information" from some friends of his and that he could not associate his name with MC2.

11. This statement by Avedon was no doubt a reference to the alleged and false links between Plaintiffs and Epstein's illegal activities with under-aged girls. This incident clearly illustrates an example of lost business on Plaintiffs' behalf.

12. The second example of a business relationship that was terminated due to Epstein's intentional and illegal activities was a very recent one, involving an overseas agency, Modilinos Model Agency. The owner stated that the model to be placed with MC2 "found some article in internet, which changed her position and she preferred to be placed with another agency." This was relayed to Plaintiff Brunei by e-mail dated October 15, 2014. This amply demonstrates that Epstein's intentional & illegal activities continue to cost Plaintiffs' business income. (Exhibit B attached).

13. A third example of a lost business relationship can be found in an e-mail dated October 17, 2014 (Exhibit C attached). The director of the 1 Mother Agency, Vladmir Yudashkin, states that a specific model will not sign with Plaintiff MC2 due to her fear that Plaintiffs' will force her into illegal activities. The model bases her fears upon the stories on the internet falsely implicating Plaintiffs as being involved with illegal activities with young models. This is another example of a false link between Epstein and Plaintiffs, costing Plaintiffs' business income.

14. A fourth example of a lost business relationship can be found in a second e-mail dated October 17, 2014 (Exhibit D attached). Manuela Martinez of Mega Partners, a Brazilian modeling agency, states to Plaintiff Brunei that her agency has been unable to work with Plaintiff MC2 for the past five to six years because of the sex trafficking allegations against Plaintiffs . This reference is clearly to the false allegations online regarding sex trafficking that were based in the false link between Epstein and Plaintiffs.

15. A fifth example of a lost business relationship can be found in an e-mail dated on Plaintiff's behalf was an e-mail dated August 27, 2010 from Michelle Stockman of Agence France Presse. (Exhibit E attached). Agence France Presse is a newswire service with a worldwide reach. Stockman wanted to meet with Plaintiff Brunei to arrange a model shoot with MC2. However, due to the adverse publicity surrounding Plaintiffs as a result of Epstein's illegal activities, Plaintiff Brunei was forced to forego (and lose) this business opportunity because he needed to keep a low-profile at this time.

16. A sixth example of lost business due to Epstein's intentional and illegal activities can be found in an e-mail dated December 12, 2014. (Exhibit F attached). Michael Sanka, a talent scout who had worked with Plaintiffs for a number of years, informed Plaintiff Brunei that he cannot sign any new models for Plaintiff Brunei's MC2 agency due to the false sex trafficking allegations online. Sanka goes on to state that Plaintiff Brunei's MC2 agency will not attract any new models if Plaintiff Brunei does not clear up the false allegations.

17. A seventh example of lost business due to Epstein's intentional and illegal activities can be found in an e-mail from Fox Fashion Agency (Exhibit G attached). This e-mail clearly states that Fox has placed models with Plaintiff MC2 in the past with absolutely no problems. However, because of the false internet trafficking links between Plaintiffs and Epstein, Fox states that it cannot place anymore models with Plaintiff MC2 until the allegations are cleared up.

18. Before the false links between Plaintiff and Epstein surfaced, Plaintiff Brunei was earning a great deal of revenue from MC2 Miami.

19. The false links between Plaintiffs and Epstein began to surface online in about 2005-2006. Then, in 2006, Plaintiffs received a letter of credit from Epstein at 5% interest. Plaintiffs then made an investment totaling one-million dollars with Elite Paris, to start a company.

20. Next, Plaintiff Brunei started the company, "E Management", to work with Elite Models in Paris, Plaintiff had to close it almost immediately, because Elite didn't send any models to Plaintiff MC2 for fear of being linked to Epstein.

21. Because the false links between Plaintiffs and Epstein began to gain strength online, Elite Paris severed the agreement due entirely to these false links. Plaintiff Brunei lost his investment of one-million dollars because of this loss of business.

22. Plaintiffs lost potentially ten-million dollars in profits due to this initial one-million dollar loss.

23. Additionally, a former financial controller of MC2, Maritza Vasquez, stated in a 2012 deposition that Plaintiff Brunei had never done anything inappropriate or illegal with any underage model. (Exhibits HI & H2 -Transcript of Deposition of Maritza Vasquez).

24. Maritza Vasquez was fired from her job at Plaintiff MC2 for embezzling company funds, and had criminal charges filed against her (Composite Exhibit I attached). She was also the source of the false information linking Plaintiffs to sex trafficking in the articles written by Conchita Sarnoff of the website Jezebel (Composite Exhibit A, p.2-7).

25. The deposition testimony of Maritza Vasquez referred to above clearly demonstrates that Plaintiff Brunei has clean hands and was never involved in sex trafficking. All of Plaintiffs' damages came solely from Epstein's conduct.

26. Additionally, Plaintiff Brunei has had significant delays in obtaining his visa to come to the U.S. These delays were also the result of the false link between Plaintiffs and Epstein. As a result of these delays, Plaintiffs lost a considerable amount of time & money. International travel is a significant component of Plaintiff Brunei's MC2 modeling business. Plaintiff Brunei has been forced to cancel his latest visa application as a result of the delays. (Exhibit J -Composite - Visa Docs).

27. As a result of the notoriety and tremendous publicity surrounding Epstein's criminal charges, and the media linkage of Epstein to Plaintiffs regarding illegal activities, Plaintiffs lost a tremendous amount of business and revenue.

28. Plaintiff Brunei's agency MC2 has lost millions of dollars in revenue since the media revealed that Plaintiffs and Epstein were associated. In fact, Plaintiff MC2 was worth millions of dollars; now, due to the illegal actions of Epstein, MC2 is almost worthless.

29. At no time did Epstein ever publicly state that Plaintiffs had no role whatsoever in the Epstein's illegal activities.

30. As a result of Epstein's illegal activities and his association with Plaintiffs, Plaintiffs continue to lose money and suffer damages to this day. (Exhibit K attached, Jeff Fuller email, 11-12-14).

31. Plaintiff Brunei will need to spend millions of dollars in order to restore his business to what it was once worth - money that the Plaintiff Brunei does not have.

32. Plaintiff Brunei continues to own and operate Plaintiff MC2 to this day, their names never having been cleared from the massive and totally negative media coverage involving Epstein and his illegal activities. Plaintiffs have been, and continue to be, irreparably harmed by these false internet-based links to Epstein. (Exhibits R & S attached).

33. **Second**, Plaintiff Brunei was also told by Epstein to leave the Palm Beach area in anticipation of a deposition of Plaintiff Brunei in a criminal case against Epstein. On the direct advice of Epstein, Plaintiff Brunei went to Europe and Asia for a period of time. This was done for the sole purpose of delaying Plaintiff Brunei's deposition.

34. As a direct result of Plaintiff Brunei's travels, his deposition was delayed twice. When it was finally scheduled for November 2009, Plaintiff Brunei was in fact available (Exhibit L attached). However, a medical emergency in the family of his attorney further delayed this deposition (Exhibit M attached). It was never rescheduled and he was never deposed.

35. This was a blatant example of obstruction of justice in the criminal case. Epstein was solely responsible for telling Plaintiff Brunei to leave the area. Plaintiff Brunel lost a huge opportunity to clear his name, and that of his agency, Plaintiff MC2.

36. **Third,** as a result of all of the facts stated above, Plaintiff Brunei was under tremendous psychological pressure throughout this period of time.

37. This psychological pressure resulted in Plaintiff Brunei avoiding business contacts as set forth above. This pressure also directly caused Plaintiff Brunei to avoid certain social contacts during this period of time.

38. Plaintiff Brunei became extremely withdrawn and anxious at this time.

39. Epstein's conduct was the direct cause of Plaintiff Brunei's psychological state. The press was reporting extensively on the lurid details of Epstein's illegal activities with the under-

40. As stated above, the press reports were erroneously connecting both Plaintiffs to Epstein's illegal activities. (Composite Exhibit A attached).

41. Epstein's illegal activities were outrageous and extreme; they involved receiving massages from the under-aged girls while the girls were nude or nearly-nude; penetration of the girls with a finger or object; or full-intercourse.

42. These activities described above caused Plaintiff Brunel severe emotional distress. In fact, Plaintiff Brunel has recently undergone psychotherapy with a local psychologist, Dr. Royce N. Jalazo, as a result of Epstein's actions and the negative results on his business. (Exhibits N & O attached).

43. Plaintiff Brunel is emotionally destroyed as a result of Epstein's actions and the resultant effects on his business. He has been on medications to deal with the effects of this. (Composite Exhibit P - Medical History).

44. Plaintiffs have been damaged by the conduct of Defendant Epstein, and have accordingly retained undersigned counsel to represent him in this matter, and are obligated to pay counsel a reasonable fee for his services.

*FACTUAL ALLEGATIONS AS TO DEFENDANTS TYLER MCDONALD & TYLER MCDONALD D/B/A YI.ORG*

45. Defendant Tyler McDonald ("McDonald") is the owner/operator of Yi.Org and also does business as Yi.Org - Defendant Tyler McDonald d/b/a Yi.org ("McDonald d/b/a Yi.Org"). Defendant McDonald resides in the state of Washington. Yi.Org is a website hosting service based in Vancouver, British Columbia, Canada.

46. In about 2009, Yi.org, by and through the actions of its owner, McDonald, began hosting websites that contained hyperlinks that contained blatantly false and extremely disparaging information about Plaintiffs. (Exhibit Q attached - hyperlink screenshot).

47. These links clearly and falsely associated Plaintiffs with illicit escort services in the state of Florida; information which Defendants McDonald and McDonald d/b/a Yi.Org knew, or should have known, was false.

48. These links have damaged Plaintiff Brunel's reputation as an owner of a well-established modeling agency with offices in New York and Miami, Plaintiff MC2.

49. These links have also damaged the reputation of both Plaintiffs.

50. The combined damage to the reputation to both Plaintiffs has resulted in a significant loss of revenue to Plaintiff MC2, and accordingly, to Plaintiff Brunel.

51. Plaintiff MC2's revenues have fallen to a mere fraction of what they were before the appearance of the links on Yi.Org.

52. Both Defendants McDonald d/b/a Yi.Org and McDonald assisted in the dissemination of the false and negative information that damaged Plaintiffs' reputation and directly caused damages to Plaintiffs.

53. Plaintiff Brunel continues to own and operate Plaintiff MC2 to this day, both names still harmed by the false and negative association with escort services in Florida.

54. Accordingly, Plaintiffs have been severely damaged by information on websites hosted by Yi.Org, which is maintained, owned and operated by Defendants McDonald d/b/a Yi.Org and McDonald.

55. The information disseminated by the websites hosted by Defendants McDonald d/b/a Yi.Org and McDonald was false and defamatory to the extreme regarding Plaintiffs alleged involvement with escort services in the state of Florida.

56. Defendants McDonald d/b/a Yi.Org and McDonald have made no attempt to clear the names of Plaintiffs with regard to the false and defamatory information disseminated by the websites they hosted.

57. Plaintiffs continue to do business to this day, their names never having been cleared from the negative information disseminated by Defendants McDonald d/b/a Yi.Org and McDonald.

58. Plaintiffs have been damaged by the conduct of Defendants McDonald d/b/a Yi.Org and McDonald, and have accordingly retained undersigned counsel to represent him in this matter, and are obligated to pay counsel a reasonable fee for his services.

### COUNT I - EQUITABLE RELIEF FOR LOSS OF BUSINESS
### AND REVENUE - AS TO DEFENDANT JEFFREY EPSTEIN

59. The allegations contained in paragraphs 1 through 44 above are re-alleged and incorporated herein by reference.

60. Plaintiffs have lost a significant amount of business revenue because of the actions of Defendant Epstein set forth above.

61. Plaintiffs have no adequate legal remedy to make him whole as a result of the damages suffered in the form of lost business revenue due to the actions of Defendant Epstein.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

62. Accordingly, Plaintiffs seeks to become whole by the payment of damages by Defendant Epstein to compensate him for his losses.

WHEREFORE, PLAINTIFFS request judgment against DEFENDANT as follows:

A. Damages in excess of fifteen-thousand dollars; trial by jury and

B. Grant other such relief as is appropriate.

### COUNT II - OBSTRUCTION OF JUSTICE - EQUITY - AS TO DEFENDANT JEFFREY EPSTEIN

63. The allegations contained in paragraphs 1 through 44 above are re-alleged and incorporated herein by reference.

64. Plaintiff was forced to commit illegal acts by traveling away from the sight of the deposition and during the time period of the deposition,

65. Defendant Epstein attempted to subvert justice and this attempt contributed to the destruction of Plaintiff's business, Plaintiff MC2. Plaintiff Brunel lost substantial time away from his business and incurred expenses in following Epstein's commands.

66. Plaintiffs were substantially damaged as a direct result of Epstein's actions. WHEREFORE, PLAINTIFFS request judgment against DEFENDANT as follows:

A. Damages in excess of fifteen-thousand dollars; trial by jury and

B. Grant other such relief as is appropriate.

### COUNT HI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### UPON PLAINTIFF BRUNEL - AS TO DEFENDANT JEFFREY EPSTEIN

67. The allegations contained in paragraphs 1 through 44 above are re-alleged and incorporated herein by reference.

68. Defendant Epstein recklessly inflicted emotional distress upon Plaintiff Brunel by engaging in illegal conduct with under-aged girls, which was falsely linked to Plaintiffs.

69. This illegal conduct was extreme and outrageous by any standard.

70. This extreme and outrageous conduct was the direct cause of extreme emotional distress in Plaintiff Brunel.

WHEREFORE, PLAINTIFF BRUNEL requests judgment against DEFENDANT as follows:

A. Damages in excess of fifteen-thousand dollars; trial by jury and

B. Grant other such relief as is appropriate

### COUNT IV - EQUITABLE RELIEF FOR LOSS OF BUSINESS AND REVENUE
### - AS TO DEFENDANTS TYLER MCDONALD AND MCDONALD D/B/A YI.ORG

71. The allegations contained in paragraphs 1 through 3 & 45 through 58 above are realleged and incorporated herein by reference.

72. Plaintiff, through his agency MC2, has lost a significant amount of business revenue because of the actions of Defendants McDonald d/b/a Yi.Org and McDonald set forth above.

73. Plaintiffs have no adequate legal remedy to make him whole as a result of the damages suffered in the form of lost business revenue due to the actions of both Defendants.

74. Accordingly, Plaintiffs seek to become whole by the payment of damages by both Defendants to compensate him for his losses.

WHEREFORE, PLAINTIFFS request judgment against DEFENDANTS as follows:

A. Damages in excess of fifteen-thousand dollars; trial by jury and

B. Grant other such relief as is appropriate.

### *COUNT V - DEFAMATION AGAINST PLAINTIFFS - AS TO DEFENDANTS TYLER MCDONALD AND MCDONALD D/B/A YI.ORG*

75. The allegations contained in paragraphs 1 through 3 & 45 through 58 above are realleged and incorporated herein by reference.

76. Defendants McDonald d/b/a Yi.Org and McDonald published or caused to be published, false statements about Plaintiffs using their domain hosting service.

77. Defendants McDonald d/b/a Yi.Org and McDonald knew, or should have known, that the statements about Plaintiffs were false.

78. These published statements were read by the internet users who viewed the false statements.

79. Plaintiffs' business reputations were severely damaged as a result.

WHEREFORE, PLAINTIFFS request judgment against DEFENDANTS as follows:

A. Damages in excess of fifteen-thousand dollars; trial by jury and

B. Grant other such relief as is appropriate.

### *COUNT VI - EQUITABLE RELIEF FOR REPAIR OF BUSINESS REPUTATION - AS TO DEFENDANTS TYLER MCDONALD & TYLER MCDONALD D/B/A/ YI.ORG*

80. The allegations contained in paragraphs 1 through 3 & 45 through 58 above are realleged and incorporated herein by reference.

81. Plaintiffs have also suffered a significant loss of their business reputations as a direct result of the actions of Defendants McDonald d/b/a Yi.Org and McDonald.

82. Plaintiffs have no adequate legal remedy to make them whole as a result of the damages suffered in the form of lost business reputations due to the actions of both Defendants.

83. Accordingly, Plaintiffs seeks to restore their business reputations by the payment of damages by both Defendants to compensate them for their loss of reputations. WHEREFORE, PLAINTIFFS request judgment against DEFENDANTS as follows:

A. Damages in excess of fifteen-thousand dollars; trial by jury and

B. Grant other such relief as is appropriate.

*/s/ Joe Titone*

Joe Titone

Attorney

FL BAR #: 203882

621 S.E. 5th Street

Pompano Beach, Florida 33060

(954) 729-6490

(954) 941-2232 (FAX)

Joetitone708@comcast.net

*VERIFICATION*

STATE OF FLORIDA )

COUNTY OF MIAMI DADE)

JEAN-LUC BRUNEL, being duly sworn according to law, upon his oath, deposes and says:

I have read the foregoing complaint and all the allegations contained therein. All such allegations are true based upon my personal knowledge, information and belief.

<<signature>>

JEAN-LUC BRUNEL

Sworn and subscribed to before me this *1* day *AUGUST*, 2014.

<<signature>>

NOTARY PUBLIC

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.