### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**Case No. 9:08-80736-Civ-Marra/Johnson**

**JANE DOE #1 and JANE DOE #2**

     **v.**

**UNITED STATES**

_____/

### JANE DOE NO. 1 AND JANE DOE NO. 2'S MOTION TO COMPEL ANSWERS TO SUPPLEMENTAL REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION

COME NOW Jane Doe No. 1 and Jane Doe No. 2 (the "victims"), by and through undersigned counsel, to file this motion to compel the Government either to provide answers to certain requests for admission and requests for production involving Epstein lawyer Alan Dershowitz or, in the alternative, to properly assert privilege over these discovery requests.

On April 11, 2015, the victims sent a Second Request for Admissions and a Second Request for Production to the Government, seeking to discover information relevant to various aspects of this case. On June 18, 2015, the Government provided answers to some of the discovery requests.   But with regard to the discovery requests concerning information about one of Jeffrey Epstein's defense attorneys, Alan Dershowitz, the Government refused to provide any information, other than to indicate that responsive documents exist.   The parties agreed that it would be appropriate to submit to the Court, via this motion to compel, the issue of whether the victims' discovery requests are "reasonably calculated to lead to discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).   If the Court agrees with the victims that the requests are

reasonably calculated to lead to admissible evidence, then the Government would either produce that information or an appropriate privilege log.[1]

The discovery requests regarding one of Epstein's defense attorneys – Alan Dershowitz - are reasonably calculated to lead to the discovery of admissible evidence.  For example, if the discovery supports the argument that the Government negotiated the non-prosecution agreement (NPA) directly with a co-conspirator of Epstein's who was an attorney on the case, then the victims would have suffered a direct violation of the their "right to be treated with fairness," 18 U.S.C. § 3771(a)(8) – and the other violations of their CVRA rights would be even more flagrant than they already appear.  In addition, such information would go directly to important motive issues in this case.  Such information would strongly support the victims' central claim that the Government and Epstein, through his attorneys, worked together to conceal the NPA from the victims to prevent them from raising any objection.  Similarly, the information sought could demonstrate the Government's failure to confer about the full scope of the immunity provided by the non-prosecution agreement (NPA).  It could also provide the victims additional ability to seek a remedy

---

[1] Before filing this motion, victims' counsel also sent a draft of this pleading to counsel for Jeffrey Epstein and for Alan Dershowitz and asked if they thought that the motion was an appropriate way to proceed.  Epstein's counsel did not respond.  Dershowitz's counsel objected to any effort to obtain discovery about the Government's knowledge about his potential involvement in Epstein's crimes.  At this point, victims' counsel asked Dershowitz's counsel if they would be willing to ask the Government to voluntarily provide whatever information they had about Dershowitz to the victims counsel to avoid the need for filing this motion altogether. In early October, Dershowitz's counsel agreed to contact the Government and speak to them and get back to victims' counsel.  But since then, Dershowitz's counsel has not responded about the status of the inquiry to the Government.  And, so far as victims' counsel can determine, discussions about obtaining cooperation for voluntarily production have come to a standstill.  Accordingly, victims' counsel are required to proceed by way of a motion to the court. To give Dershowitz an opportunity to raise any concerns directly with the Court, victims' counsel have filed these pleadings under seal, with a copy to Dershowitz.

against co-conspirators who obtained immunity through the NPA, including potentially Dershowitz.  Accordingly, the Court should grant the motion to compel.

## FACTUAL BACKGROUND

On April 11, 2015, the victims sent a Second Request for Admissions (RFAs) and a Second Request for Production (RFPs) to the Government, seeking to discover information relevant to aspects of this case.  *See* Attachment 1 and Attachment 2.  Some of those discovery requests concerned one of Epstein's criminal defense attorneys – Alan Dershowitz.  For example, in Request for Production 3(g), the victims requested information in the Government's possession about Dershowitz being present in the company of females under the age of 18 with Epstein or on Epstein-controlled property.  RFP 3(g).  As another example, in Request for Production 3(m), the victims sought information in the Government's possession "suggesting that Dershowitz had a motive for approval of, or would receive a benefit from, a non-prosecution agreement (NPA) with Epstein that extended to any 'potential co-conspirator of Epstein.'"[2] And as another example, in Request for Admission 24, the victims asked the Government to admit that as a "part of its criminal investigation of Jeffrey Epstein between 2005 and the date on which the investigation concluded, the Government collected or became aware of information suggesting that Alan Dershowitz was in close proximity to Jeffrey Epstein at a time when young females (under the age of 18) were also in close proximity to Epstein."

---

[2]The Court will recall that the NPA ultimately reached in this case between the Government and Epstein blocked prosecution for sex offenses committed not only by Epstein, but also by any "potential co-conspirator" of Epstein.  NPA at 5.

3

After extensions of time agreed to by the victims, on June 18, 2015, the Government provided answers to some of the discovery requests. But with regard to the discovery requests concerning information about Dershowitz, the Government refused to provide any information. The Government's central reason for not producing those documents was that "[t]he factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent" to the issues of the Government's Crime Victims' Rights Act (CVRA) duties. As support for that position, the Government pointed out that this Court had previously stricken allegations made about Dershowitz and proffered in support of her motion to join this action. *See* Corrected Motion for Joinder (DE 280); Order Denying Motion to Join (DE 324). As a fallback position, in some instances, the Government asserted that the information sought was barred from discovery pursuant to law enforcement investigative privilege and work product doctrine.

In discussions since then, the victims asked the Government whether it has responsive documents to the Dershowitz requests, since otherwise it would make no sense to waste the Court's time deciding the validity of the Government's objections or privilege claims if the information requested did not exist in the first place. In response, the Government has agreed that it "does have some responsive materials to Supplement Discovery Request 3, pertaining to Alan Dershowitz. We have not examined some of the materials which we believe may be responsive, but believe that, if there is responsive information, it would likely be located in those documents." E-mail from Dexter Lee to Victim's Counsel (June 30, 2015). The parties have jointly agreed to submit to the Court the dispute about the discoverability of this information.

**DISCUSSION**

The victims' discovery requests for information about Alan Dershowitz are well-founded and are reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, the Court should order the Government to produce the information.

## I.     THE VICTIMS' DISCOVERY REQUESTS ARE WELL-FOUNDED.

To pursue discovery on an issue, a party must have a "good faith basis" for believing discoverable information exists.  *See In re Southeast Banking Corp,* 204 F.3d 1322, 1328 (11th Cir. 2000).  Accordingly, counsel for Jane Doe 1 and Jane Doe 2 represent that they have a good faith basis for seeking the requested discovery concerning Alan Dershowitz's potential role as a co-conspirator in the federally investigated sexual crimes of his close personal friend, Jeffrey Epstein. The abuse took place before Dershowitz began actively negotiating a plea deal for Epstein on the sex abuse charges at the center of this case.

Because the good faith basis has been challenged, counsel represent that they have received credible information that underage girls were trafficked by Epstein for sexual purposes to various powerful individuals.  Counsel have also received credible information that Alan Dershowitz was one of Epstein's powerful friends with direct knowledge of Epstein's sexual abuse of underage girls.  Jane Doe 3, who was identified by the Federal Government as one of Epstein's underage sexual abuse victims has identified Alan Dershowitz as an Epstein friend to whom she was trafficked by Epstein.  Dershowitz would later play a significant role in negotiating the NPA on Epstein's behalf.  Indeed, as discussed at greater length below, Dershowitz helped negotiate an agreement that extended immunity from federal prosecution in the Southern District of Florida not only to Epstein, but also to "any potential co-conspirators of Epstein." NPA at 5.  And, as alleged

5

throughout the case, the provisions of this agreement were concealed from Epstein's victims to ensure that it was approved – all at the behest of Epstein's legal defense team, a team that included Dershowitz.  In fact, to this day, the Government has not informed the victims of the names of all of the individuals who received immunity through the NPA for their participation in crimes committed against these victims.

The good faith basis for the victims' belief is confirmed not only by affidavits, documents, and other evidence in the possession of counsel for Jane Doe 1 and Jane Doe 2,[3] but also by the fact that rather than simply denying that it has any such information, the Government has instead confirmed that it possesses some responsive information but objects to producing that information.

## II.   THE COURT'S EARLIER RULING ON DERSHOWITZ ALLEGATIONS SPECIFICALLY RECOGNIZED THAT DISCOVERY REQUESTS COULD BE MADE ABOUT HIM.

In its answers to the victims' discovery requests, the Government repeatedly notes that this Court had stricken earlier allegations about sexual abuse by Dershowitz.  The Government apparently contends that this action means that the Court has already ruled that any discovery about Dershowitz is barred.

The Court has not made any such decision.  Instead, the Court handed down a carefully-crafted order that struck allegations by one victim as being impertinent to her motion to join this case.  DE 324.  The Court first ruled that it was unnecessary to add additional plaintiffs to this case beyond Jane Doe 1 and Jane Doe 2.  The Court explained that other victims could testify as fact

---

[3] Victims' counsel have not attached any affidavits or other supporting evidence at this time.  Should the Government contest that such a basis exists (or should the Court request further information), counsel will file this supporting evidence in its reply.

witnesses in the cases to appropriate facts.  *Id.* at 7.  The Court emphasized that other victims "*can*

participate in this litigated effort to vindicate the rights of similarly situated victims – there is no

requirement that the evidentiary proof submitted in this case come only from the named parties."

*Id.* at 8 (emphasis in original).

Of particular importance to this motion, in its earlier ruling the Court specifically stated

that other victims could participate in this case on some issues, including discovery issues:  "The

necessary 'participation' of [other victims] . . . in this case can be satisfied by offering their

properly supported – and *relevant*, *admissible*, and *non-cumulative* – testimony as needed, whether

through testimony at trial . . . or affidavits *submitted to support the relevancy of discovery requests*

. . . ."  DE 324 at 8 (second emphasis added).

The Court also pointed out that the ultimate issue in this case was "a determination of

whether the Government violated the rights of Jane Doe 1, Jane Doe 2, and all 'other similarly

situated victims' under the CVRA.  [Other victims] . . . may offer relevant, admissible, and non-

cumulative evidence that advances that determination, but their participation as listed parties is not

necessary in that regard."  *Id.* at 9 (emphasis deleted).  The Court also noted that "[t]he Court

expresses no opinion at this time whether any of the attestations made by [other victims] . . . in

support of their motion will be" admissible in later proceedings.  *Id.* at 9 n.5.

Accordingly, we turn now to explaining why the victims' discovery requests about

Dershowitz are entirely appropriate.

## III.    THE VICTIMS' DISCOVERY REQUESTS ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

Jane Doe 1 and Jane Doe 2's have propounded discovery requests regarding Dershowitz seeking information that is highly relevant to the case. Accordingly, the requests easily meet the governing standard that they be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b).

### A. The Legal Standard for Evaluating a Discovery Request is Not Strict Relevancy, But Rather Whether the Request is Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

The Government has objected to the victims' discovery requests, and accordingly bears the burden of proving the validity of its objections. *Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 670 (S.D. Fla. 2012) ("The burden of persuasion is on the party objecting to the discovery."). At various points in its responses to the victims' discovery requests, the Government seems to suggest that the requests must be assessed against a standard of trial "relevancy." In fact, discovery requests extend far more broadly than relevancy at trial. As this Court has explained: "The courts have long held that relevance for discovery purposes is much broader than relevance for trial purposes." *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) (citing *Dunkin' Donuts, Inc. v., Mary's Donuts, Inc.,* No. 01–0392, 2001 WL 34079319, *2 (S.D.Fla. Nov. 1, 2001) (emphases deleted)). This Court has previously explained the "broad" scope of discovery under Fed. R. Civ. P. 26(b):[4]

> The scope of discovery under Rule 26(b) is broad: parties may obtain discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action. Information is relevant if it is "germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence. Thus, under Rule 26 relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear

---

[4] This Court has "repeatedly held that the Federal Rules of Civil Procedure govern the general course of this proceeding. DE 330 at 23 (internal quotation omitted).

on any issue that is or may be in the case.   Discovery is not limited to the issues raised by the pleadings because discovery itself is designed to help define and clarify the issues.

*Donahay v. Palm Beach Tours & Transp., Inc*., 242 F.R.D. 685, 687 (S.D. Fla. 2007) (internal quotations omitted).   The Federal Rules of Civil Procedure are broadly written and "strongly favor full discovery whenever possible."   *Farnsworth v. Procter and Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985).   Thus, as this Court has previously ruled in this case, the bottom line is that "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action."   DE 330 at 17 (*citing Milinazzo v. State Farms Ins. Co.*, 247 F.R.D. 691, 695-96 (S.D Fla. 2007)).

### B.  Discovery About Dershowitz's Involvement in Epstein's Crimes is Highly Relevant to this Action.

Discovery about Dershowitz's involvement in Epstein's crimes directly and immediately bears on the subject matter of this action, for multiple reasons.

### 1.  Right to be "Treated with Fairness" Issues.

Jane Doe No. 1and Jane Doe No. 2 have raised multiple violations of their rights under the CVRA, including a broad, over-arching claim of a violation of their right "to be treated with fairness" under 18 U.S.C. § 3771(a)(8). *See* DE 48 at 36.  The fact that a secret plea deal could be negotiated by an attorney who was himself involved in his clients crime's would demonstrate unfairness. Indeed, it may be useful to step back for a moment and consider the broader picture regarding Dershowitz's involvement.

So far as we have been able to determine, this may be a truly unprecedented case.  An attorney involved in negotiating a plea agreement for a sex trafficking conspiracy is himself

9

involved in that conspiracy.  And then that attorney helps to negotiate a NPA that provides immunity for all "potential co-conspirators" – including conspirators who are unnamed.  And then that the attorney pressures the Government into concealing that agreement from the victims … until it is too late for them to object.  The potential for conflicts, undue pressure, and other violations of the normal rules regarding criminal cases and victims' rights is readily apparent.  The victims should be able to pursue discovery to show that they have been treated unfairly in this highly questionable process.

Interestingly, Dershowitz himself has conceded that his involvement in Epstein's crimes would be highly relevant to this case.  In a media interview on CNN, Dershowitz was asked about allegations that he was involved in Epstein's crimes.  He admitted that his involvement would help rescind the NPA:

> [The victims] want to be able to challenge the plea agreement. I was one of the lawyers who organized the plea agreement. I got the very good deal for Jeffrey Epstein. . . . And if they [i.e., victims' counsel] could find a lawyer who helped draft the agreement who also was a criminal, having sex – wow – *that could help them blow up the agreement*.

http://www.cnn.com/2015/01/06/us/dershowitz-sex-allegation/ (Jan. 6, 2015) (emphasis added).

It is also important to understand that, in contrast to the normal handling of victim notifications in other criminal cases, in this case the defense team remarkably became highly involved in dictating to the Government not only what kinds of victims' notifications would be made but whether the victims would be notified at all.  While it is standard practice not to negotiate with defense attorneys on victim notifications, *see* DE 213-1, Gov't Answer to RFA 2(b), in this case the Government has already specifically admitted that Epstein's defense attorneys shaped the victims notifications it provided.  *See* DE 213-1, Gov't Answer to RFA 2(a) ("The government

admits that, after Epstein's attorneys learned of the notification that the government planned to provide to Jane Doe #2 . . . , Epstein's attorneys contacted the USAO and objected to the procedures for notification and the legal bases therefor.  The government further admits that the USAO considered those objections when evaluating what notification to provide to victims."); Gov't Answer to RFA2(c) ("The government admits that, as a result of objections lodged by Epstein's attorneys, the government reevaluated the notifications that it had intended to provide to victims and, as a result of that reevaluation, the USAO altered the scope, nature, and timing of notifications that it had contemplated providing to victims.").   For example, the correspondence makes clear that, as part of the negotiations, the U.S. Attorney's Office never sent a notification letter that had been drafted regarding the status of the case.  DE 48 at 13.  Instead, as a result of discussions with the defense team, the Government sent a misleading letter that the case was "currently under investigation."  *Id.*   The victims are thus developing evidence demonstrating a "conspiracy between the Government and defense counsel to deliberately conceal vital information from the victims."   DE 266 at 7.  This Court has previously stated that evidence of such a conspiracy is "one method of proof" that is appropriate in this case.  DE 330 at 15.

The fact that an important attorney on the defense team had strong personal reasons for resolving the case without a public trial – and without the existence of a broad NPA becoming known – bears directly on the existence of that conspiracy.  And more important, by itself, the Government's negotiations with a participant in Epstein's crimes while concealing those negotiations from Epstein's victims, would be a violation of the CVRA's over-arching right to fairness.   The victims clearly should be permitted to pursue discovery supporting their argument

11

that a member of the legal defense team was also part of the criminal conspiracy that had abused the victims – and thus that they were treated unfairly.

Discovery on this fairness issue becomes even more important in light of the fact that the Government is now apparently preparing to unleash an attack on the victims.  As the Court will recall from the recent status conference, the Government has represented that it is preparing to argue that the victims (who were minors at the time) were somehow "complicit" in the sexual abuse committed against them.  *See* Tr. Nov. 23, 2015, at 4.  Against the backdrop of this kind of an attack, the victims have an even great need to be able to show the full unfairness of the process that produced the non-prosecution agreement.

### 2. Dershowitz's Involvement Bears Directly on the Government's Motive for Violating the Victims' CVRA Rights.

At the center of this case is the NPA Dershowitz helped to negotiate for his client, Jeffrey Epstein.  As the Court recalls, the victims contend that "[a] reasonable inference from the evidence is that the U.S. Attorney's Office – pushed by Epstein – wanted the non-prosecution agreement kept from public view because of the intense public criticism that would have resulted from allowing a politically-connected billionaire who had sexually abused more than 30 minor girls to escape from federal prosecution with only a county court jail sentence."  DE 48 at 11.  The victims also contend that another reasonable inference "is that the Office wanted the agreement concealed at this time because of the possibility that the victims could have objected to the agreement in court and perhaps convinced the judge reviewing [part of] the agreement[5] not to accept it."  *Id.*

---

[5] No judge ever reviewed the NPA; instead, a Florida state court judge only reviewed the plea agreement that lead to Epstein serving the county jail sentence.

Jane Doe 1 and Jane Doe 2 are seeking discovery to obtain all available evidence indicating that Alan Dershowitz was not merely an attorney and close social friend of Epstein, but also a co-conspirator.  Given the conspirator immunity provision in the NPA (discussed at length in the next subsection), Dershowitz was thus in a position to benefit from the NPA – but only if the NPA was approved.  To have the NPA approved, the Government and the defense needed to keep the agreement secret from the victims, who could have objected to it before it became final.  Of course, the victims allege that keeping the agreement secret from them violated their CVRA rights.  Thus, discovery on this issue goes to the heart of this case by reinforcing the motive for the Government (pushed by Epstein and his lawyers) to deliberately violate the victims' CVRA rights.

An important part of the strategy to secure the approval would have been keeping Jane Doe 1, Jane Doe 2, and the other victims unaware of the agreement.  Concealing the agreement from the victims would have prevented them from using their CVRA right to confer, 18 U.S.C. § 3771(a)(5), to try and dissuade the Government from moving forward with the deal.  And concealing the agreement from the victims would have also have meant that they would not receive "reasonable, accurate, and timely notice" of the court proceedings associated with the NPA – specifically, Epstein's state court guilty plea that was a critical part of the NPA.[6]  Finally, concealing the agreement from the victims was the only way to prevent the victims from knowing that other co-conspirators were getting immunity through the NPA – another provision that would

---

[6] In their summary judgment motion, Jane Doe 1 and Jane Doe 2 will prove that they (and presumably many other similarly-situated victims) did not attend Epstein's guilty plea hearing because they did not think it had anything to do with their cases.  As a result, they lost their only opportunity to see the man who had sexually abused them appear in court.  (The plea degree was orchestrated so that a single, consolidated plea-and-sentence proceeding was held.)

certainly have been met with strong objection by the victims.  Thus, the relevance of Dershowitz's involvement follows in a clear and direct sequence, clearly bearing on this case.

This chain of logic bears on an issue that is highly contested in this case: motive.  The victims have repeatedly alleged that they were kept in the dark about the NPA.  Government has repeatedly asserted either that it did reveal the NPA to the victims or, at a minimum, that it had benign motivations for not doing so.  For example, the victims requested that the Government admit that "[d]uring its negotiations with Jeffrey Epstein's defense attorneys, the U.S. Attorney's Office was aware that publicly disclosing the non-prosecution agreement with Jeffrey Epstein would likely have led to public criticism of the agreement"; the Government flatly denied that this was true.  DE 213-1 (denying RFA #4).  Similarly, the victims asked the Government to admit that "Epstein insisted on, and the U.S. Attorneys' Office agreed to, a provision in the non-prosecution agreement that made the agreement secret."  RFA #9(a).  In response, the Government admitted only that "at Epstein's insistence, the USAO agreed to a provision in the non-prosecution agreement that provided as follows: [quoting provision].  Except as otherwise admitted above, the government denies Request No. 9(a)." DE 213-1 (responding to RFA #9(a)).  The victims also requested that the Government admit that "[w]hen Epstein was pleading guilty to the state charges discussed in the non-prosecution agreement, both the U.S. Attorney's Office and Epstein's defense attorneys were working to keep the existence of the non-prosecution agreement confidential." RFA #14.  In response, the Government conceded only that "the USAO and Epstein's defense attorneys sought to keep the document memorializing the non-prosecution agreement confidential, but denies that they sought at that time to keep the existence of the non-prosecution agreement confidential." DE 231-1 (responding to RFA #14).   As a result of all this disputes (and many

others like them), "Motive is clearly in dispute in this case . . . ."  DE 266 at 10.[7]  All reasons for

the defense team to insist on concealing the NPA from the victims – and thus to pressure the

Government to agree to deliberately conceal the NPA – will directly help the victims prove that

the Government intentionally concealed the NPA from the victims.

Issues pertaining to motive can always be pursued, particularly when a case is in a

discovery phase. It is well known that "[m]otives affect behavior.  Thus, although 'motive' is not

an essential element of any charge, claim, or defense, evidence that a person has a particular motive

can be relevant to an ultimate fact in both civil and criminal cases."  David P. Leonard, *Character

and Motive in Evidence Law*, 34 Loy. L.A. L. Rev. 439, 439 (2001); *see, e.g., United States v. Hill*,

643 F.3d 807, 843 (11th Cir. 2011) ("motive is always relevant in a criminal case, even if it is not

an element of the crime.") (internal quotation omitted); *Cohen v. Trump*, No. 10-CV-0940-GPC-

WVG, 2015 WL 3966140, at *5 (S.D. Cal. June 30, 2015) ("motive is not an element of any

offense, yet courts routinely admit evidence of motive").  Indeed, Federal Rule of Evidence 404

expressly allows evidence of "other crimes" and "wrongs" to establish "motive," even though

motive is not an actual element of any crime. *See* Fed. R. Evid. 404(b)(2).Discovery regarding

Dershowitz's personal motivations for conspiring with the Government to violate the victims'

CVRA rights goes to the heart of this case.

Also tied into the motives of the Government and Dershowitz is another curious provision

in the NPA – the confidentiality provision – which directly interfered with the CVRA rights of the

---

[7] In any event, a fact need not be in dispute to be relevant to a case.  *See Old Chief v. United
States*, 519 U.S. 172, 179 (1997).

victims. The NPA provided that: "The parties anticipate that this agreement will not be made part of any public record. If the United States receives a Freedom of Information Act request or any compulsory process commanding disclosure of the agreement, it will provide notice to Epstein before making the disclosure." NPA at 5. In their previously-filed summary judgment motion, the victims have alleged that by "entering into such a confidentiality agreement, the U.S. Attorney's Office put itself in a position that conferring with the crime victims (including Jane Doe #1 and Jane Doe #2) about the non-prosecution agreement would violate the terms of the agreement . . . Indeed, even notifying the victims about the agreement would presumably have violated the provision." DE 48 at 10.

Whether the Government told the victims about the NPA is very much in dispute in this case. *See, e.g.,* Gov't Answers to 2d RFAs #13, #14. The Government has conceded, however, that it did not make one of the victims' attorneys (Bradley J. Edwards) aware of the NPA before it was entered, Gov't Answers to 2d RFAs #18, even though it was discussing with him the need for him to send a letter about why the victims wanted Epstein prosecuted. DE 48 at 20.

The Government has admitted that, after receiving a request from Epstein defense counsel on September 24, 2007 to "[p]lease do whatever you can to keep this from becoming public," the U.S. Attorney's Office "did take some steps to keep the non-prosecution agreement from becoming public." Gov't Answer to 2d RFA #12. The Government further admits that during a "November 21, 2007, meeting between a representative of the USAO-SDFL and representatives of the Epstein defense team, the Epstein defense team members, including Alan Dershowitz, discussed with the representative of the USAO-SDFL some of the provisions of the Epstein non-prosecution

16

agreement." Gov't Answer to 2d FRA #16.[8]   That would seem to make clear that the Dershowitz

was familiar with the terms of the NPA, but the Government has also admitted that it has "received

communications from Epstein's defense team reflecting that Alan Dershowitz familiar with the

non-prosecution agreement containing a term providing that 'the United States also agrees that it

will not institute any criminal charges against any potential co-conspirators of Epstein' if Epstein

'successfully fulfills all of the terms and conditions" of the NPA.  Gov't Answer to 2d RFA #18.[9]

In light of all this, the confidentiality provision in the NPA will be an important part of any

trial, with the victims and the Government disputing how the provision came to be drafted, what

the provision means, and how it operated before Epstein entered his guilty plea in state court.  The

victims will argue, among other things, that Dershowitz and the defense team wanted to keep the

NPA secret to assure that the victims could not object to it before it was finalized, that the

confidentiality provision illegally barred disclosure of the NPA to the victims, and that it operated

as intended up to the time that Epstein plead guilty – that is, the provision succeeded in keeping

the victims in the dark about the NPA.  As the Court is aware, the victims have sought to obtain

---

[8] From correspondence that the victims have received, it appears that the blank check immunity provision was already included in the NPA well before November 2007.

[9] The issue of defense involvement in the CVRA violations will also be relevant to defeating Epstein's argument that discharging CVRA obligations is the responsibility of the Government, and only the Government.  *See, e.g.,* DE 207 at 11 ("the duties and obligations imposed by the CVRA apply solely to the government; . . . [Epstein] had no obligations to the [victims] under the CVRA.  The dispute regarding whether the government violated the [victims'] rights under the CVRA is one between the [victims] and the government").  If the Court accepts Epstein's argument, then it may be impossible for the victims to obtain a remedy that allow Epstein's prosecution.  To defeat Epstein's argument, the victims will need evidence that Epstein himself is responsible for helping to orchestrate the CVRA violations.  Evidence that Epstein's \ defense attorney (and close friend) Alan Dershowitz was also implicated in the sexual trafficking efforts will allow the victims to directly make that argument, by demonstrating that the defense orchestrated the CVRA violations and those should be held accountable for them.

the Government's internal discussions about how the confidentiality provision operated, but the Court sustained the Government's work product objections to production of this information.  *See, e.g.* DE 329-1 at 6 (asserting work product privilege over "emails between Alex Acosta, Marie Villafaña, Andrew Lourie, and Rolanda Garcia regarding Lefkowitz email about keeping agreement from becoming pubic and confidentiality provision in agreement"); DE 330 at 45 (sustaining objection).[10]   Accordingly, the victims are now pursuing other avenues to address the confidentiality issues.  Clearly Dershowitz's motivations for wanting to negotiate an iron-clad confidentiality provision with the Government are relevant to that inquiry.

### 3.   Failure to Confer About Who Was Being Immunized.

Information about Dershowitz's involvement in the case is also critical because it will help demonstrate that the Government failed to reasonably confer with the victims.   Specifically, the information will show that the Government did not confer about who was being immunized by the NPA.

A curious part of the NPA is that it contained a sweeping provision that provided immunity in the Southern District of Florida not only to Epstein, but also to '"*any potential co-conspirators of Epstein*, including but not limited to Sarah Kellen, Adriana Ross, Lesley Groff, or Nadia Marcinkova." DE 280 at 4 (*quoting* NPA at 5) (emphasis added).  This provision is very unusual – a proverbial "blank check" blocking federal criminal prosecution of not only the four listed co-

---

[10]   The Court will also note that the Government produced most of its internal emails concerning crime victims notifications not in July 2013, but only on June 23, 2015 in DE 329-1. Thirteen days later, the Court sustained the Government's objections.  DE 330.  The net effect of the Government's unexplained 23-month delay in producing a privilege log for the victim-related emails was that the victims never had an opportunity to provide briefing on why those particular emails should have been produced to them.

conspirators, but also people who are not specifically identified.  The Government has admitted that the "U.S. Attorney's Office for the Southern District of Florida[] does not ordinarily include in its non-prosecution agreement a provision extending immunity from prosecution to 'any potential co-conspirators of [a defendant/target]."  Gov't Answer to Second RFA #2 (Attachment 3).[11]

One of the points that the victims will press in their summary judgment motion (and, if necessary, at trial) is that the Government did not confer with them about the fact that the NPA would bar prosecution not only of Epstein, but also others involved with his crimes.  As one example, Jane Doe No. 1 was sexually abused by Nadia Marcinkova – and yet the Government never told her that the NPA blocked prosecution of Marcinkova for those crimes.  And, as another example specifically relevant to this motion, the victims were never told that the NPA blocked prosecution of Dershowitz for his crimes against the victims.

The Government has admitted (and related correspondence confirms) that Dershowitz was directly involved in negotiating the NPA with the Government.   Without attempting to exhaustively catalogue Dershowitz's interactions with the Government, it is clear that on June 26, 2007, Dershowitz was one of the defense lawyers who met with prosecutors in an attempt to arrange a deal.  Gov't Answer to Second RFA #6.  Dershowitz and another attorney sent a follow up letter on July 6, 2007.  *Id.*   The Government has admitted that it ultimately agreed to add the blank check immunity provision "at the request of the Epstein legal team."  *Id.*   And

---

[11] The Government refused to answer Victims RFA 3, which sought admission that non-prosecution agreements ordinarily extend immunity to specifically-identified persons, claiming that it would be too burdensome to make such an "historical assessment."

correspondence that the victims' have received reveals that on September 16, 2007, a prosecutor wrote to the defense team "I would prefer not to highlight for the judge all of the other crimes and all of the other persons that we could charge." *Id.*

Clearly, evidence that Dershowitz was a co-conspirator of Epstein's and was thus immunized by the NPA will help to prove the victims' case. The CVRA promises victims that they will have "[t]he reasonable right to confer with the attorney for the Government in the case." 18 U.S.C. § 3771(a)(5). It appears that the Government may argue at trial that it told at least some of the victims some things about the NPA and Epstein. But so far as we can determine, the Government will not be argue that it told the victims that the NPA was going to block prosecution of others involved with Epstein, including specifically Dershowitz.

Related to this point is that evidence of Dershowitz's involvement in Epstein's crimes will also be pivotal at the remedy stage of these proceedings. Most obviously, it will go to the scope of the relief that the victims can obtain. As the Court is aware, one of the remedies that the victims seek is invalidation of the NPA's prohibition of prosecuting Epstein, thereby permitting them to confer with the Government about bringing Epstein to justice for the crime he committed against. But the victims also intend to seek to invalidate the co-conspirator immunity provision with respect to a limited number of other individuals, including Dershowitz. This will permit them to confer with the Government about holding Dershowitz accountable for his crimes and for his illegal role in helping Epstein engage in sex trafficking.

The Court has already received briefing from the victims and the Government on the remedy issue – and has prospectively allowed Epstein to intervene on any issue involving rescission of the NPA. DE 246. The fact that Dershowitz is also currently covered by the provision

will thus be relevant to the scope of the remedy that the victims can obtain and the persons that they can seek to have prosecuted.

### 4.  Interface Issues.

The Court has previously ruled that the victims' CVRA claim "implicates a fact-sensitive equitable defense which must be considered in the factual context of the entire interface between *Epstein*, the relevant prosecutorial authorities and the federal offense victims . . . ." DE 189 at 12n.6 (emphasis added). Part of that "entire interface" is Epstein's defense team – which included Dershowitz.  As this Court recently explained in rejecting the victims request for certain grand jury information, such information is "not part of the 'interface' that occurred between *Epstein*, prosecuting authorities, and the victims." DE 330 at 7.  Information about a member of the defense team being criminally involved in the crimes of the man he is defending is an obvious part of the interface and provides vital "factual context" about a dubious and secret non-prosecution agreement.

### CONCLUSION

There are numerous reasons, recounted above, that clearly establish that the requests at issue are reasonably calculated to lead to the discovery of admissible evidence.  The Court should order the Government to answer Jane Doe No. 1 and Jane Doe No. 2's discovery requests regarding Alan Dershowitz, either by producing the information or compiling a proper privilege log.

DATED: December 28, 2015

Respectfully Submitted,

/s/ Bradley J. Edwards

21

Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
E-mail: brad@pathtojustice.com

*And*

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah[*]
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone:801-585-5202
Facsimile:801-585-6833
E-Mail:<u>cassellp@law.utah.edu</u>

*Attorneys for Jane Does No. 1, 2, 3 and 4*

---

[*]This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on December 28, 2015, on the following

using the Court's CM/ECF system or, for non-parties, by separate email service:

Dexter Lee
A. Marie Villafaña
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov

*Attorneys for the Government*

Roy Eric Black
Jacqueline Perczek
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard
Suite 1300
Miami, FL 33131
305-371-6421
Fax: 358-2006
Email: pleading@royblack.com

*Attorneys for Jeffrey Epstein*

Kendall Coffey, Fla. Bar No. 259681
kcoffey@coffeyburlington.com
Gabriel Groisman, Fla. Bar No. 25644
ggroisman@coffeyburlington.com
Benjamin H. Brodsky, Fla. Bar No. 73748
bbrodsky@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, PH1
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

Thomas E. Scott , Jr.
Cole Scott & Kissane

23

Dadeland Centre II Suite 1400
9150 S Dadeland Boulevard
Miami, FL 33156
305-350-5381
Fax: 305-373-2294
Email: thomas.scott@csklegal.com

*Attorneys for Alan Dershowitz*

/s/ Bradley J. Edwards