# ATTACHMENT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-Civ-Marra/Johnson

JANE DOE 1 and JANE DOE 2,

    Plaintiffs

    v.

UNITED STATES,

    Defendant
_____/

### JANE DOE 1 AND JANE DOE 2'S SECOND REQUEST FOR ADMISSIONS TO THE GOVERNMENT REGARDING QUESTIONS RELEVANT TO THEIR PENDING ACTION CONCERNING THE CRIME VICTIMS RIGHTS ACT

COME NOW Jane Doe 1 and Jane Doe 2 ("the victims), by and through undersigned counsel, and request the defendant United States (hereinafter "the Government") to admit or deny the following facts within 30 days:

### BACKGROUND

As the Government will recall, the victims have asked the Government to stipulate to undisputed facts in this case. The Government has declined. Accordingly, the victims filed their Motion for Finding of Violations of the Crime Victims' Rights Act and Request for a Hearing on Appropriate Remedies (DE 48) (the victims' "summary judgment motion"). On September 26, 2011, the Court has ordered discovery to develop the factual record concerning the summary judgment motion (DE 99 at 11). The Court reserved ruling on the victims' motion for an order directing the Government not to suppress relevant evidence (DE 99 at 11). The Court allowed the victims to propound requests for admission to the Government. In a recent ruling, the Court also made clear that this case will be decided based on a determination of whether the

Government "violated the rights of Jane Doe 1, Jane Doe 2, and all 'other similarly situated victims' under the CVRA." DE 324 at 9 (allowing "participation" by Jane Doe 3 and 4 at trial as witnesses and in discovery matters via affidavit).

## **DISCOVERY REQUESTED**

The numbered requests for admissions below should all be construed in light of the definitions of terms provided at the end of the requests. Where the request for admission has separate, lettered sub-parts, please admit or deny each separate sub-part:

1. The U.S. Attorney's Office for the Southern District of Florida's does not ordinarily include in its plea agreements a provision extending immunity from prosecution to "any potential co-conspirators of [a defendant/target]."

2. The U.S. Attorney's Office for the Southern District of Florida's does not ordinarily include in its non-prosecution agreements a provision extending immunity from prosecution to "any potential co-conspirators of [a defendant/target]."

3. Most of the immunity provisions in the plea agreements and non-prosecution agreements entered into by the U.S. Attorney's Office for the Southern District of Florida extend immunity only to specifically-identified persons.

4. Ordinarily the U.S. Attorney's Office for the Southern District of Florida will require a defendant or target seeking immunity from prosecution for other persons to provide a list of those persons and a general description or "proffer" of what those persons have done.

5. On or about July 6, 2007, the U.S. Attorney's Office for the Southern District of Florida received a letter from defense attorneys Gerald Lefcourt and Alan Dershowitz arguing against federal prosecution of Epstein.

6. As reflected in the July 6, 2007, letter, Alan Dershowitz had met with the U.S. Attorney's Office as Epstein's defense counsel on or about June 26, 2007.

7. On or about September 16, 2007, as reflected in correspondence denoted US_Atty_Cor_0032, an Assistant U.S. Attorney working on the Epstein matter:
    (a) agreed to add in a co-conspirator immunity provision to the proposed non-prosecution agreement;
    (b) did so at the request of the Epstein legal defense team; and
    (c) wrote "I would prefer not to highlight for the judge all of the other crimes and all of the other persons that we could charge."

8. On or about September 16, 2007, as reflected in correspondence denoted US_Atty_Cor_0032, the U.S. Attorney's Office was concerned that if it highlighted for a

 judge all of the other crimes and all of the other persons that it could charge, then the judge might have rejected a proposed resolution of the case.

9. The Government, including the U.S. Attorney's Office for the Southern District of Florida, possesses documents reflecting the "other persons" (mentioned in the September 16, 2007, correspondence) that have not been made available to Jane Doe 1 and Jane Doe 2.

10. Between on or about September 16, 2007, and July 5, 2008, the Government, including the U.S. Attorney's Office for the Southern District of Florida and the FBI, had evidence supporting felony federal criminal charges against Epstein for:

    (a) Travel with intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b);
    (b) Sex trafficking of Jane Doe 3 in interstate commerce, in violation of 18 U.S.C. § 1591;
    (c) Sex trafficking of Jane Doe 3 in foreign commerce, in violation of 18 U.S.C. § 1591;
    (d) Conspiracy in violation of 18 U.S.C. § 371 to commit the above listed offenses;
    (e) Federal sex crimes involving Jane Doe 1;
    (f) Federal sex crimes involving Jane Doe 2;
    (g) Federal sex crimes involving Jane Doe 3; and
    (h) Federal sex crimes involving Jane Doe 4.

11. When, on or about September 21, 2007, an AUSA handling the Epstein matter wrote to Barry Krischer, a state prosecutor, and stated: "Glad we could get this worked out for reasons I won't put in writing.  After this is resolved I would love to buy you a cup at Starbucks and have a conversation," the AUSA was concerned about public discovery of the non-prosecution agreement before it had been consummated.

12. After receiving a request from Epstein defense counsel Jay Lefkowitz on September 24, 2007, to "[p]lease do whatever you can to keep this [i.e., the non-prosecution agreement and related matters] from becoming public" [RFP MIA 000281], the U.S. Attorney's Office did take some steps to keep the non-prosecution agreement from becoming public.

13. From September 24, 2007, through June 2008, the Government, including U.S. Attorney's Office for the Southern District of Florida, did not notify the following persons of the existence of the non-prosecution agreement:
    (a) Jane Doe 1;
    (b) Jane Doe 2;
    (c) Jane Doe 3;
    (d) Jane Doe 4;
    (e) Other victims listed in the annex or appendix to the non-prosecution agreement; and
    (f) other victims similarly situated to Jane Does 1 and 2.

14. From September 24, 20067, through June 2008, the U.S. Attorney's Office did not inform the following persons that the non-prosecution agreement would block prosecution of

federal sex offenses committed against them by Jeffrey Epstein and his potential co-conspirators:
   (a) Jane Doe 1;
   (b) Jane Doe 2;
   (c) Jane Doe 3;
   (d) Jane Doe 4;
   (e) other victims listed in the annex or appendix to the non-prosecution agreement; and
   (f) other victims similarly situated to Jane Does 1 and 2.

15. On November 21, 2007, representatives of the U.S. Attorney's Office for the Southern District of Florida met with representatives of the Epstein defense team, including Alan Dershowitz [RFP WPB-001980].

16. During the November 21, 2007, meeting, Alan Dershowitz discussed with representatives of the U.S. Attorney's Office for the Southern District of Florida provisions of the Epstein non-prosecution agreement.

17. On or before July 3, 2008, the U.S. Attorney's Office for the Southern District of Florida received communications from the Epstein defense team reflecting that Dershowitz was familiar with the Epstein non-prosecution agreement that extended immunity to any "potential co-conspirator" of Epstein's.

18. As of July 3, 2008, the Government had not made attorney Bradley J. Edwards aware that it had already entered into a binding non-prosecution agreement with Jeffrey Epstein that would precluded prosecution of:
   (a) Jane Doe 1;
   (b) Jane Doe 2;
   (c) Another young woman, with a last name beginning with "R", who was a client of Edwards'; and
   (d) Any other victim similarly situated to Jane Doe 1 and 2.

19. The Government, including the U.S. Attorney's Office for the Southern District of Florida and FBI, did not attempt to identify Jane Doe 4 as a sexual abuse victim of Epstein's at any time before July 9, 2008.

20. The first written communication that Jane Doe 3 had from the Government about the Epstein matter was a victim notification letter sent on or about September 3, 2008.

21. In drafting the September 3, 2008, victim notification letter sent to Jane Doe 3 and others, the U.S. Attorney's Office for the Southern District of Florida:
   (a) Decided to describe this CVRA case as "litigation between the United States and two other victims regarding the disclosure of the entire agreement between the United States and Mr. Epstein"; and
   (b) Decided not to describe this CVRA case as involving the potential invalidation of the non-prosecution agreement.

22. FBI agents met with Jane Doe 3 in Australia in 2011 and:
    (a) Brought photographs with them of persons who might have sexually abused Jane Doe 3;
    (b) Collected photographs and other materials from Jane Doe 3 that helped corroborate the information she provided to them;
    (c) Later conducted further investigation into possible acts of sexual abuse committed against Jane Doe 3.

23. As part of its criminal investigation of Jeffrey Epstein between 2005 and the date on which the investigation concluded (sometime after 2011, the exact date being unknown to the victims), the Government collected or became aware of information that Alan Dershowitz has been to:
    (a) Jeffrey Epstein's mansion in Palm Beach, Florida;
    (b) Jeffrey Epstein's mansion in New York City;
    (c) Jeffrey Epstein's "Zorro" ranch in New Mexico;
    (d) Jeffrey Epstein's island in the U.S. Virgin Island; and
    (e) An airplane owned or controlled by Jeffrey Epstein.

24. As part of its criminal investigation of Jeffrey Epstein between 2005 and the date on which the investigation concluded, the Government collected or became aware of information suggesting that Alan Dershowitz was in close proximity to Jeffrey Epstein at a time when young females (under the age of 18) were also in close proximity to Epstein.

25. Between 2005 and April 2015, the Government has investigated allegations or acquired information about whether Alan Dershowitz was involved with Epstein's sexual abuse of young females (under the age of 18).

26. As part of its criminal investigation of Jeffrey Epstein between 2005 and the date on which the investigation concluded, the Government collected surveillance videos, photographs, or other images of:
    (a) Jane Doe 1;
    (b) Jane Doe 2;
    (c) Jane Doe 3;
    (d) Jane Doe 4; and
    (e) Other victims similarly situated to Jane Doe 1 and Jane Doe 2.

27. As a result of the non-prosecution agreement that it entered into with Jeffrey Epstein, it is not currently possible for the U.S. Attorney's Office for the Southern District of Florida (or any office that has stepped into the place of the Office due to recusal) to prosecute for any sex offenses they may have committed against Jane Doe 1, 2, 3, or 4, or other similarly situated victims the following persons:
    (a) Alan Dershowitz;
    (b) Ghislaine Maxwell; and
    (c) Jean Luc Brunel.

28. As of the date of this request, the U.S. Attorney's Office for the Southern District of Florida has not yet:
    (a) provided to the victims all the discovery to which they are entitled; and
    (b) certified to the court that it has provided all discovery to which the victims are entitled.

## **DEFINITIONS**

For the purpose of construing the foregoing discovery requests, the following terms are defined:

The term "documents" means and includes, without limitation, all writings of any kind, including the originals and all non-identical copies or drafts, whether different from the original by reason of any notation made on such copy or draft or otherwise including, without limitation, correspondence, memoranda, notes, diaries, statistics, letters, e-mails, electronic computer files, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice communications, offers, notations of any sort of conversation, telephone calls, meetings or other communications, bulletins, printed matter, computer print-outs, teletypes, facsimiles, invoices, work sheets and all drafts, alterations, modifications, changes, and amendments of any of the foregoing, graphic or aural writs, records or representations of any kind including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures; and electronic, mechanical or electric records or representations of any kind including, without limitation, tapes, cassettes and disc recordings, and writings and printed material of every kind.

The term "correspondence" means any tangible object that conveys information or memorializes information that was conveyed in tangible or oral form including, but not limited to, writings, letters, memoranda, reports, notes, e-mails, telephone logs, telephone billing information, telephone recordings, and interoffice communications.

The term "victims" means any person that the Government identified as a possible victim of a sex offense committed by Jeffrey Epstein, including Jane Doe 1, 2, 3, and 4, and all victims identified in attachment to the non-prosecution agreement entered into by Epstein, and another person that the Government investigated as a possible victim of Epstein's sex offenses.

The term "Government" means the federal government, including all employees of and components of the United States Department of Justice (such as, the Office of the Attorney General, the Office of the Deputy Attorney General, the Criminal Divisions, the Office of Professional Responsibility, the Child Exploitation and Obscenity Section, the U.S. Attorney's Offices for the Southern District and Middle District of Florida, the Southern District of New York, the District of New Mexico, and the District of the U.S. Virgin Islands, and the Federal Bureau of Investigation), the Federal Aviation Administration, the Bureau of Immigration and Customs Enforcement, and any other federal government agencies with law enforcement responsibilities related to the Epstein case (such as the Internal Revenue Service). This request for production seeks all documents, correspondence, and other information held by all of these entities, including all employees of and components of the Justice Department that worked on or

were in any way involved the Epstein investigation and/or that possess information relevant to the victims' claims.

The term "including" means containing within the request, but not limiting the request.

## PRIVILEGE LOG

If you believe that any request for admission is subject to a privilege and if you intend to assert that privilege, please provide a "privilege log" consistent with Local Rule 26.1(g), including a description a document that is consistent with Local Rule 26.1(g)(3)(B).  Your privilege log should include a specific identification of the privilege being asserted and the basis for the privilege.

DATED: April 11, 2015

Respectfully Submitted,

s/ Bradley J. Edwards
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
Florida Bar No.: 542075
E-mail: brad@pathtojustice.com

*and*

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
  University of Utah[*]
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

Attorneys for Jane Does 1, 2, 3 and 4

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah