**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:08-80736-Civ-Marra/Johnson**

**JANE DOE #1 and JANE DOE #2**

      **v.**

**UNITED STATES**
_____/

### JANE DOE NO. 1 AND JANE DOE NO. 2'S REPLY IN SUPPORT OF MOTION TO COMPEL ANSWERS TO SUPPLEMENTAL REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION

COME NOW Jane Doe No. 1 and Jane Doe No. 2 (the "victims"), by and through undersigned counsel, to file this reply in support of their motion to compel the Government either to provide answers to certain requests for admission and requests for production involving Epstein lawyer Alan Dershowitz or, in the alternative, to properly assert privilege over these discovery requests.

The discovery requested is clearly relevant to this case. In their motion to compel, the victims explained at length four specific reasons why the requested information is important to the victims' claims. In response, the Government ignores several of the reasons and offers no convincing response to the others. In particular, the Government fails to contest the fact that Dershowitz's participation in plea discussions regarding Epstein's sex offenses while also a witness to or co-conspirator in the activity would be, in and of itself, a violation of the victims' right to fairness. 18 U.S.C. § 3771(a)(8). And the Government also fails to acknowledge that (in stark contrast to normal criminal cases) Dershowitz and other members of the Epstein defense team were deeply involved in crafting the timing and content of victim notifications in this case.

Given that the Government is disputing the victims' argument that they never received appropriate victim notifications about Epstein's non-prosecution agreement (NPA), Dershowitz's various motives to conceal the NPA and to pressure the Government into delaying victim notifications goes to central issues in this case.

Nor has the Government established any undue burden in responding to the discovery. The Government has not provided any affidavits supporting its position. Moreover, the RFAs that the victims have propounded could probably be answered in about an hour. And the RFPs at issue could be likewise complied with very rapidly. Accordingly, the Court should grant the motion to compel.

## I.  THE VICTIMS' MOTION IS TIMELY.

The Government initially raises a technical procedural argument, contending that the victims' motion is "untimely."   The Government notes that it first objected to producing the materials in question on June 17, 2015.  The Government then cites S.D. Fla. Local Rule 26.1(h)(1), which directs that motions to compel should be filed within 30 days "of the occurrence of grounds for the motion."  The Government claims that because it first refused to produce the materials on June 17, any motion to compel was due within 30 days.

The Government, however, obscures the fact that following its initial refusal to produce the materials, victims' counsel attempted to confer and resolve the dispute with months of discussions between them, Government counsel, and third-party counsel for Mr. Dershowitz. Without going into all of the details of these discussions held over the months,[1] it is enough to note

_____

[1] The victims viewed these discussions as confidential settlement discussions between counsel.  If the Court would like description of all the discussions, victims' counsel would be

for present purposes that, promptly after the Government's refusal to produce, victims' counsel contacted Government counsel first to confirm that responsive documents indeed existed, then about how to resolve the issue through this Court's intervention or preferably without court intervention.  In none of these discussions did the Government ever raise a 30-day deadline.  Instead,  victims' counsel's contact with the Government lead to back-and-forth discussion, which included (for example) a July 15, 2015, email from victims' counsel to Government counsel, which included a copy of a draft motion to compel.  When further discussions were unable to secure voluntary production of the documents, on October 6, 2015, victims' counsel contacted Mr. Dershowitz's counsel to inform them of the proposed motion to compel (which was included as a draft in the email) and see whether any alternative ways of handling the matter were possible.  Discussions followed with Mr. Dershowitz's counsel in an attempt to gain an agreement to voluntary production of the requested materials from the Government, which included an email sent on December 10, 2015, from victims' counsel to Mr. Dershowitz's counsel attempting to resolve the issue.  Victim's counsel, unable to get agreement from either the Government or Mr. Dershowitz's counsel concluded that efforts to secure voluntary compliance with the requests had failed and left with no alternative filed this motion to compel.  The final "grounds for the motion" thus did not occur until sometime after December 10, 2015.  The victims' motion was filed within 30 days of December 10.

Even if the "grounds" for the motion are deemed to have occurred back in June, the Local Rule provides for filing of a motion within thirty days "absent a showing of reasonable cause for

happy to provide emails and other information.

later filing." S.D. Fla. Local Rule 26.1(h)(1). In this case, the Court had previously directed victims' counsel to confer not only with the Government, but also with affected third parties. In a previous ruling, the Court reminded all counsel in the case that "[p]rior to filing certain motions, counsel is required to confer 'with all parties *or non-parties* who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion.'" DE 326 at 14 (citing S.D. Fla. Local R. 7.1(a)(3) (emphasis in original)). After victims counsel had completed conferring with Government counsel, additional conference with Dershowitz's counsel took additional time[2] – providing "reasonable cause" for a later filing. In fact, victims' counsel went well beyond the required conference with other counsel in an attempt to avoid filing the motion altogether.

Finally, it is important to emphasize that the Government does not allege that any prejudice resulted from the victims' delaying filing the motion to compel while they conferred with various counsel. A trial date has not yet been set. Indeed, both sides have yet to file any summary judgment motions. In such circumstances, the Government offers no good reason for the Court to decline to review the issues properly presented in the motion to compel.

## II. THE VICTIMS' MOTION SEEKS PRODUCTION OF MATERIALS THAT ARE HIGHLY RELEVANT TO THE CASE.

Under Rule 26, the victims may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).[3] The Government contends that the discovery involving Dershowitz is not relevant to any of the issues in the case.

---

[2] Victims' counsel also provided an advance copy of a draft of the motion to compel to Epstein's counsel. Epstein's counsel never responded in any way.

[3] The Government implies that recent amendments to Rule 26 somehow alter the issues

4

The Government makes this claim generally, without responding to the four specific arguments that the victims had detailed in their initial motion.  For each of those four reasons, the Government's relevancy objection should be denied.

### A. Discovery About Dershowitz Is Directly Relevant to the Right to be "Treated with Fairness" Issues.

In the opening motion, the victims' first argument was that evidence of Dershowitz's knowledge of Epstein's criminal conduct, as a witness or co-conspirator and not just as Epstein's legal counsel, would be highly relevant to right to be "treated with fairness" issues.  Victims' Mot. at 9 (*citing* 18 U.S.C. § 3771(a)(8)).  The victims' explained specifically how Dershowitz's personal knowledge of and involvement in any aspect of Epstein's crimes would have, by itself, constituted a breakdown in the fair criminal process to which they were entitled.  The victims also quoted Dershowitz himself, who had publicly stated that such evidence "could help [the victims] blow up the agreement."  Victims' Mot. at 10 (citing CNN program).

The Government's response to this argument is unclear.  It does not specifically discuss the right to fairness issue anywhere – a search for the word "fairness" in the Government's brief produces nothing and the brief fails to even cite (much less discuss) 18 U.S.C. § 3771(a)(8).  The Government does drop a footnote in which it states that the victims are accusing Dershowitz of

---

before the Court.  *See* Gov't Resp. at 3.  But the recent amendments "do not change the definition of relevance. Instead, they reemphasize and highlight requirements already present in the Rules, like proportionality. . . . It remains true today both that claims and defenses provide discovery's outer bounds and that the court is inclined to err in favor of discovery rather than against it."  S*teel Erectors, Inc. v. AIM Steel Int'l, Inc*., No. CV415-208, 2016 WL 53881, at *3 (S.D. Ga. Jan. 4, 2016) (internal quotation omitted).

"having a conflict of interest in his representation of Mr. Epstein," Gov't Resp. at 6 n.3, and then collects two court cases holding that defense counsel's involvement in his client's crime constitutes a "per se" conflict of interest. *Id.* But this point would only seem to *strengthen* the victims' argument, not weaken it. The Government also mentions that the CVRA does not create "any obligations . . . in defense counsel . . . to less vigorously defend against government prosecutorial efforts. *Id.* at 6. But victims have never argued that the CVRA somehow restricts ordinary defense efforts. Instead, the victims' argument is that the CVRA entitles them to a criminal process in which ordinary rules are followed. *Cf.* Victims Mot. at 9-10 ("this may be a truly unprecedented case" and explaining ways in which it would be inherently unfair to the victims if a member of the defense team was also a witness or conspirator of any of the elements of the underlying crimes).

In addition, the Government never addresses the fact – specifically cited in the Victims' opening brief (Victims' Mot. at 11) – that the Court has already ruled that evidence demonstrating a conspiracy between the Government and defense counsel to conceal the NPA is an appropriate method of proof in this case. DE 330 at 15. Nor does the Government address the fact that its act of concealing its knowledge of Dershowitz's improper involvement in the plea discussions would be further evidence of a violation of the right to fairness. Victims' Mot. at 11. For all these reasons, the documents that the victims seek regarding Dershowitz's direct personal knowledge of Epstein's crimes is highly relevant to the victims' right to fairness claims.

### B. Discovery About Dershowitz is Directly Relevant to the Government's Motive for Violating the Victims' CVRA Rights.

As a separate and independent reason why their motion sought relevant materials, the victims explained that the evidence would bear directly on a central issue in this case: whether the

Government had a motive for concealing the NPA from the victims.  Here again, the Government does not directly contest the victims' arguments.  While the Government acknowledges the victims' argument, it claims that the victims "provide[] no rational explanation of how Dershowitz's alleged self-interest would be imputed or ascribed to the Government."  Gov't Resp. at 7.  But the victims' had spelled out the explanation in seven pages of detailed briefing – briefing that the Government does not challenge.  Victims' Mot. at 12-18.  The explanation includes the clear fact that if Dershowitz had an abnormally strong reason for wanting the NPA concealed, then he would have had strong reason to pressure the Government into violating its statutory obligations to notify victims.  *See, e.g.,* Victims' Mot. at 13 ("discovery on this issue goes to the heart of this case by reinforcing the motive for the Government (pushed by Epstein and his lawyers) to deliberately violate the victims' CVRA rights").  All motivations for any participant in the NPA negotiations to improperly conceal the NPA from the victims would be relevant to prove that the NPA was improperly concealed.  Any discovery demonstrating any such motivation is then relevant and should be permitted.

The Government attempts to argue that Dershowitz had no connection to the victim notifications in this case because he was "not related to the Government."  Gov't Resp. at 8.  But here again, the Government ignores the victims' argument that (in contrast to the way criminal cases usually proceed) "Epstein's defense attorneys shaped the victims notifications [the Government] provided."  Victims' Mot. at 10 (citing Government admissions to that effect).  Moreover, the victims explained at length their argument that Dershowitz had very strong reasons for wanting the NPA to be concealed from the victims before it was consummated in order to prevent the victims from raising objections with a judge.  Victims Mot. at 13-14.  The Government

7

has repeatedly denied throughout this litigation that it had any reason for wanting to conceal the

NPA. *See id.* at 14 (collecting Government discovery answers). Blocking discovery on this issue

would allow the Government to disclaim any motivation for violating the CVRA violations

without revealing that it was being pressed very hard to commit the violations. This would be

contrary to the long-standing evidentiary principle that evidence of motive for an action at issue in

a case is "always relevant." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011).

The victims also explained that discovery on this point would help prove how the NPA's

confidentiality provision operated. While the text of the confidentiality provision would seem to

demonstrate that the Government did not reveal the agreement's existence to any of the victims,

the Government strongly disputes that point. *See, e.g.,* DE 213-1 (responding to ARFA #9(a))

(cited in Victims' Mot. at 14). Indeed, the Government has even disputed the point that it was

aware that publicly revealing the agreement would have led to public criticism about the

agreement. DE 213-1 (denying RFA #4) (cited in Victims' Mot. at 14). Against the backdrop of

repeated Government objections to what will be important points in the victims' case, the victims

should be able to pursue limited discovery about the Government's and defense counsels'

intentions regarding the confidentiality provision.

### C.  Failure to Confer About Who was Being Immunized.

In their motion, the victims also explained that the requested discovery was potentially

important evidence helping to establish that the Government did not confer with the victims about

who was immunized under the NPA. Victims' Mot. at 18-21. The victims noted that they intend

to argue in their summary judgment motion (and, if necessary, at trial) that the Government failed

to confer with them about the sweeping and highly unusual provision in the NPA that blocked

8

prosecution of "any potential co-conspirator of Epstein." *Id.* at 18.  The victims also recounted evidence that Dershowitz appears to have been involved in securing the provision, and that the prosecution discussed with the defense team that it "would prefer not to highlight for the judge all of the other crimes and all of the other persons that we could charge." *Id.* at 20 (citing Sept. 16, 2007 email).  Evidence regarding Dershowitz's potential coverage in that provision will help to establish a violation of the victims' right to confer. *Id.* at 18-20 (discussing violation of 18 U.S.C. § 3771(a)(5).  The Government does not dispute any of this.

In addition to helping to establish a violation of the victims' rights, the information is also relevant to the remedies that the victims will be able to seek for the violations of their rights.  As an appropriate remedy for the violations, the victims intend to seek invalidation of the NPA's immunity provision to permit them to confer with the Government about prosecution of the various conspirators of the crime.  Victims' Mot. at 20-21.  Here again, the Government does not dispute that the requested discovery is directly relevant to this issue.

**D.  The Requested Evidence Is Directly Relevant to Equitable Defense Issues**

In their motion, the victims also explained that requested discovery was relevant to the equitable defense that the Government is planning to raise – i.e., responding to the Government's "fact-sensitive equitable defense which must be considered in the factual context of the entire interface between *Epstein*, the relevant prosecutorial authorities and the federal offense victims . . . . ." Victims' Motion at 21 (quoting DE 189 at 12 n.6 (emphasis added)).  Again, rather than respond to this argument, the Government simply ignores it.  The Government's silence raises the inference that the Government is well aware that the Dershowitz issues will be relevant to its equitable defense, but does not want to engage on the issue.  In any event, given that the "entire

9

interface" surrounding how the relevant parties interacted, this requested information is plainly relevant. As the victims argued in their motion – without any Government rejoinder – "[i]nformation about a member of the defense team being a fact witness or a co-conspirator with the man he is defending is an obvious part of the interface and provides vital 'factual context' about a dubious and secret non-prosecution agreement." Victims' Mot. at 21.

### III. THE REQUESTS ARE PROPORTIONAL TO THE NEEDS OF THE CASE.

The Government finally argues that, even if the materials are relevant, the Government would have to spend undue time and energy collecting them. Gov't Resp. at 7. The victims' motion to compel covers both their Requests for Admission (RFAs) and their Requests for Production (RFPs). It is useful to separate these two aspects of the motion, because the Government cannot possibly have any burdensomeness objection to the RFAs. And the narrow RFPs are also tailored to be in no way burdensome.

### A. Answering the Requests for Admission is Not Burdensome.

In the Government's response to the motion to compel, it focuses almost exclusively on the burden associated with producing various documents in response to the RFPs. But the victims have also sent to the Government RFAs, some of which require only simple "yes" or "no" or "admit" or "deny" answers. The Government has not explained why it cannot simply provide quick answers to these questions. For example, the Government could have simply answered based on its current knowledge (such as information possessed by the prosecution team handling the matter and the FBI agents that have worked on the case) without conducting any additional research. Victims' counsel would be happy to work with the Government to minimize any undue burden that might somehow exist in answering the questions.

10

It is also important to understand that the answers to the RFAs could help to significantly reduce subsequent litigation in this case.  Any issue that is admitted does not have to be litigated via a summary judgment motion or a trial.  If the Government answered the RFAs that have been submitted, those answers could immediately streamline litigation on those points.

The Court should, accordingly, direct the Government to answer the RFAs and, if they are going to require collecting some substantial new information, to confer with victims' counsel about how to more narrowly interpret the questions.  Such an approach would mean that the Government would likely have to spend less than one hour to provide complete answers to all the RFAs.

**B.  Answering the Requests for Production is Not Burdensome.**

With regard to the victims' request for production of documents, because it is resisting production, the Government bears the burden of establishing that "the information is of such marginal relevance that the potential harm occasioned by the discovery outweighs the benefit of production." *Arkansas River Power Auth. v. The Babcock & Wilcox Co.*, No. 14-CV-00638-CMA-NYW, 2016 WL 192269, at *4 (D. Colo. Jan. 15, 2016).  The Government does not discuss that Rule 26 specifically directs that, in making any proportionality determination, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

These factors all weigh in favor of allowing the discovery.  With regard to the "importance of the issues at stake," this case is a complex and long-running lawsuit involving substantial allegations that the Government violated the congressionally-protected rights of dozens of then-

11

minor sex abuse victims.  As explained above, the specific evidence being sought directly concerns

violations of the victims' rights to be treated with fairness. And the evidence would further help to

establish other important points (motive, failure to properly confer, and interface issues) that are

currently disputed in this case.  With regard to the parties' "relative access to relevant information,"

the Government has devoted vast resources through the FBI and other agencies to investigating

Jeffrey Epstein and his many co-conspirators.  Through those efforts, the Government collected

substantial evidence that is only in the possession and control of the Epstein camp or the

Government.  The victims have no way to collect that same information. With regard to "the

parties' resources," the United States Government possesses more resources than any other litigant

in the country, while the victims are represented by two pro bono attorneys.  With regard to the

importance of discovery in resolving the issues, the Government has previously refused to agree

to any kind of stipulations.  *See* DE 225-1 at 1-6 (recounting at length the victims' extensive, and

unsuccessful, efforts to narrow the range of disputes in this case).  The Government's refusal to

stipulate to any facts makes clear that the requested discovery is likely going to be quite important.

But perhaps the most important point is the tiny burden that the Government will face in

collecting much of the materials the victims have requested.  The victims have pointed the

Government to several specific documents that the Government could retrieve in, literally, a matter

of minutes.  For example, the victims have requested the documents regarding the circumstances

under which one of Epstein's employees, Alfredo Rodriguez, circled the name of "Alan

Dershowitz" in Jeffrey Epstein's directory of personal contacts (the "Holy Grail" document with

which the Court is familiar).  The party "resisting discovery must show specifically how *each*

discovery request is not relevant or otherwise objectionable." *Mckinney/Pearl Rest. Partners, L.P.*

12

*v. Metro. Life Ins. Co.,* No. 3:14-CV-2498-B, 2016 WL 98603, at *3 (N.D. Tex. Jan. 8, 2016) (emphasis added).   Surely this particular discovery request cannot in any way be regarded as unduly burdensome.

More broadly, the Government has failed to provide any explanation for its assertion about undue burden.  It is well known that most Justice Department records are maintained in a form that permits computerized word searches.  *See, e.g., Arrowgarp v. Department of Justice*, 99 F.Supp.3d 163 (D.D.C. 2015) (discussing using an individual's name as a "key word" for "electronic searches within a U.S. Attorney's Office); *Bloeser v. U.S. Dept. of Justice*, 811 F.Supp.2d 316, 320-21 (D.D.C. 2011) (discussing "keyword" search of "multiple electronic databases" accessible by the U.S. Justice Department).  These electronic files can be quickly and easily searchable through a "keyword" search.  *See, e.g., Hertz Schram PC v. F.B.I.*, 2014 WL 764682 at *6 (discussing the FBI's "main record system" of the Central Record System which the FBI "routinely searches . . . for documents responsive to FOIA requests using the Automated Case Support System"; noting that keyword searches are possible in the system).

The Government does not even begin to explain how running a quick keyword search for relevant "Dershowitz" materials would be unduly burdensome.  Additionally, the Government has apparently already identified responsive documents as they have specifically said in email, "the government does have some responsive material …pertaining to Alan Dershowtiz."   The party "seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden."  *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D. Ala. 1998).  Here, the Government has provided *no* evidence to substantiate its position on burdensomeness.

13

In an effort to insure that no undue burden was placed on the Government, the victims'

RFPs specifically offered to work with the Government to narrow any unduly burdensome request.

*See* RFPs, Attachment 2 to Victims' Motion at 8 ("If you believe that complying with any of the

foregoing requests would be unduly burdensome, please contact victims' counsel – Bradley J. Edwards

– to discuss ways to reduce any such burden.").   As the objecting party, the Government "has the

burden of clarifying explaining and supporting its objections."  *Roehrs v. Minnesota Life Ins. Co.*,

228 F.R.D. 642, 645 (D. Ariz. 2005).   Here again, there is simply no explanation for the

Government's failure to confer with victims' counsel about ways to minimize any difficulty.  If the

Government conferred with victims counsel, the victims' counsel could have pointed the Government

to specific documents and specific keyword searches that could be gathered in just a few hours.

## <u>CONCLUSION</u>

The Court should order the Government to answer Jane Doe No. 1 and Jane Doe No. 2's

discovery requests regarding Alan Dershowitz, either by producing the information or compiling

a proper privilege log.

<u>DATED: January 29, 2016</u>

Respectfully Submitted,

<u>/s/ Bradley J. Edwards</u>
Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
E-mail: brad@pathtojustice.com

*And*

14

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
  University of Utah[*]
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone:801-585-5202
Facsimile:801-585-6833
E-Mail:cassellp@law.utah.edu

*Attorneys for Jane Does No. 1, 2, 3 and 4*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on January 29, 2016, on the following using

the Court's CM/ECF system or, for non-parties, by separate email service:

Dexter Lee
A. Marie Villafaña
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
(561) 820-8711
Fax: (561) 820-8777
E-mail: Dexter.Lee@usdoj.gov
E-mail: ann.marie.c.villafana@usdoj.gov

*Attorneys for the Government*

Roy Eric Black
Jacqueline Perczek
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard
Suite 1300
Miami, FL 33131
305-371-6421
Fax: 358-2006
Email: pleading@royblack.com

*Attorneys for Jeffrey Epstein*

---

[*]This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah

Kendall Coffey, Fla. Bar No. 259681
kcoffey@coffeyburlington.com
Gabriel Groisman, Fla. Bar No. 25644
ggroisman@coffeyburlington.com
Benjamin H. Brodsky, Fla. Bar No. 73748
bbrodsky@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, PH1
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

Thomas E. Scott , Jr.
Cole Scott & Kissane
Dadeland Centre II Suite 1400
9150 S Dadeland Boulevard
Miami, FL 33156
305-350-5381
Fax: 305-373-2294
Email: thomas.scott@csklegal.com

*Attorneys for Alan Dershowitz*

/s/ Bradley J. Edwards

16