# EXHIBIT 26

## DECLARATION OF ▮

1. My name is ▮ and I was born ▮
2. I was molested by Jeffrey Epstein as a minor on dozens of occasions in his mansion in Palm Beach, Florida from around 2002 to 2005. I understand that evidence collected from Mr. Epstein's home showed conclusively that I was there as a minor, along with many other underage girls. Given how many girls Epstein was abusing, there could not have been any doubt in anyone's mind that had access to the testimonial and other evidence that Epstein molested me (and many others).
3. I cooperated fully with the FBI while they investigated Epstein's illegal activities with minors.
4. During the investigation, Epstein had investigators following and harassing me. I continued to cooperate with the investigation despite this intimidation.
5. In late 2007, FBI agents met in person with me. During this meeting, the agents explained that Epstein was also being charged in State court and may plea to state charges related to some of his other victims. I knew the State charges had nothing to do with me. During this meeting, the Agents did not explain that an agreement had already been signed that precluded any prosecution of Epstein for federal charges against me. I did not get the opportunity to meet or confer with the prosecuting attorneys about any potential federal deal that related to me or the crimes committed against me.
6. My understanding of the agents' explanation was that the federal investigation would continue. I also understood that my own case would move forward towards prosecution of Epstein.
7. Confirming my understanding, in about January 2008, I received a letter from the FBI that told me that "this case is currently under investigation. This can be a lengthy process and we request your continued patience while we conduct a thorough investigation." My understanding of this letter was that my case was still being investigated and the FBI and prosecutors were moving forward on the Federal prosecution of Epstein for his crimes against me.

8. At this time, I was not told about any non-prosecution agreement or any potential resolution of the federal criminal investigation I was cooperating in. If I had been told about a non-prosecution agreement, I would have objected.
9. Criminal prosecution of Epstein for crimes against me was extremely important to me. I wanted to be consulted by the prosecutors before any resolution. In light of the letter I had received, I had confidence that I would be contacted by the federal government before it reached any final resolution of the investigation into my case and that I would likely be needed to testify if the case went to trial, which I was willing and anxious to do.
10. When I had not heard from the prosecuting attorney for a while, I met with attorney Brad Edwards wanting him to find out when Epstein was going to be federally charged and prosecuted for the crimes he committed against me and others. Epstein's investigators were harassing me, and that interfered with my life dramatically. My attorney, Mr. Edwards, was hired to make sure the prosecutor knew how eager I was to have Jeffrey Epstein prosecuted, and I understand that he did convey that to the prosecutors numerous times in around June 2008.
11. At some point, I understood that Mr. Edwards was getting responses from the prosecutor that were making him suspicious of the motivations of the U.S. Attorney's Office. I then understood that Mr. Edwards' suspicions were that the prosecutors were conferring with Epstein and not with me and the other victims.
12. I authorized Mr. Edwards to do anything possible to ensure that Epstein was prosecuted, and that I was able to meet with prosecutors and participate in the process. I agreed to file a lawsuit against the U.S. Attorney's Office to get them to speak with me about any possible case resolution or the terms and to answer questions about the case, and to generally treat me fairly, to notify me about any court hearing, and to otherwise enforce my rights as a crime victim.

13. Towards the end of June, 2008, I did not attend Jeffrey Epstein's guilty plea hearing in state court involving another victim of Epstein's abuse. I did not have reasonable notice of the hearing, and I did not have any reason to attend that hearing because no one had told me that this guilty plea was related to the FBI's investigation of Epstein's abuse of me. I had always understood generally that the State and Federal criminal systems were different and that one had nothing to do with the other. Based on what the FBI had been telling me, I thought they were still investigating my case. If I had been told that this plea had some connection to blocking the prosecution of my case, I would have attended and tried to object to the judge and prevent that plea from going forward. Many other victims would have done the same. I think that after hearing from me and some of the other girls who were abused by Epstein, a judge would not have allowed such a plea deal to go forward. It is my belief that the US Attorney's Office and Epstein's attorneys conspired to prevent my attendance at this hearing as well as the attendance of the many other victims.

14. I learned about the existence of a secret non-prosecution agreement only in July 2008, after my lawyer had filed court pleadings trying to give me a chance to talk to prosecutors about my case. I would never have learned of that agreement if I had not authorized my attorney to sue the United States. Nobody would have.

15. I wanted to cooperate in the prosecution more than anything else in my life; I was scared of Epstein; I was scared of what he had done to me and others, and of how he was continuing to harass me, and also what he could do to me and others. The criminal case against Epstein was my main focus in life.

16. When I attended a court hearing with Mr. Edwards in federal court, I learned for the first time that my rights had been extinguished through a secret deal between the prosecutors and Mr. Epstein. I received no explanation about exactly how the deal occurred or about whether my rights were gone forever. The

prosecutors were, at that time, trying to even keep me from seeing a copy of the secret plea deal. I wanted to meet with the prosecutors and tell them why they should prosecute my case, but it became clear that without ever talking to me, they had bargained my case away.

17. In about 2010, I had the chance to meet with the U.S. Attorney, Mr. Wilfredo Ferrer. I told him all about how I had been mistreated in the process. Mr. Ferrer seemed to be interested in this, but nothing ever came of the meeting. And unfortunately it seems to me that Mr. Ferrer's office is continuing to try to block me and other girls from learning anything about the secret deal with Epstein or how our rights were violated, even though they know what they did was wrong.

18. I later came to understand that crime victims in the federal system have the right to meaningfully confer with the prosecutor for the government in the case, which at least means to explain how my case would be concluded; the right to be heard at important hearings; and the right to be treated with "fairness." I strongly believe that the way I was treated was unfair and violated my rights.

19. I think that the secret non-prosecution agreement should be declared illegal and that I should have the right to have crimes against me prosecuted by the U.S. Attorney's Office, and that Mr. Epstein should be treated the same as other defendants with less money and connections are treated for these crimes.

20. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28th, day of January, 2015.