# EXHIBIT

# 68

March 20, 2011

To whom it may concern:

I served as U.S. Attorney for the Southern District of Florida from 2005 through 2009.  Over the past weeks, I have read much regarding Mr. Jeffrey Epstein.  Some appears true, some appears distorted.  I thought it appropriate to provide some background, with two caveats: (i) under Justice Department guidelines, I cannot discuss privileged internal communications among Department attorneys and (ii) I no longer have access to the original documents, and as the matter is now nearly 4 years old, the precision of memory is reduced.

The Epstein matter was originally presented to the Palm Beach County State Attorney.  Palm Beach Police alleged that Epstein unlawfully hired underage high-school females to provide him sexually lewd and erotic massages.  Police sought felony charges that would have resulted in a term of imprisonment.  According to press reports, however, in 2006 the State Attorney, in part due to concerns regarding the quality of the evidence, agreed to charge Epstein only with one count of aggravated assault with no intent to commit a felony.  That charge would have resulted in no jail time, no requirement to register as a sexual offender and no restitution for the underage victims.

Local police were dissatisfied with the State Attorney's conclusions, and requested a federal investigation.  Federal authorities received the State's evidence and engaged in additional investigation.  Prosecutors weighed the quality of the evidence and the likelihood for success at trial.  With a federal case, there were two additional considerations.  First, a federal criminal prosecution requires that the crime be more than local; it must have an interstate nexus.  Second, as the matter was initially charged by the state, the federal responsibility is, to some extent, to back-stop state authorities to ensure that there is no miscarriage of justice, and not to also prosecute federally that which has already been charged at the state level.

After considering the quality of the evidence and the additional considerations, prosecutors concluded that the state charge was insufficient.  In early summer 2007, the prosecutors and agents in this case met with Mr. Epstein's attorney, Roy Black.  Mr. Black is perhaps best known for his successful defense of William Kennedy Smith.  The prosecutors presented Epstein a choice:  plead to more serious state felony charges (that would result in 2 years' imprisonment, registration as a sexual offender, and restitution for the victims) or else prepare for a federal felony trial.

What followed was a year-long assault on the prosecution and the prosecutors.  I use the word assault intentionally, as the defense in this case was more aggressive than any which I, or the prosecutors in my office, had previously encountered.  Mr. Epstein hired an army of legal superstars:  Harvard Professor Alan Dershowitz, former Judge and then Pepperdine Law Dean Kenneth Starr, former Deputy Assistant to the President and then Kirkland & Ellis Partner Jay Lefkowitz, and several others, including prosecutors who had formally worked in the U.S.

Attorney's Office and in the Child Exploitation and Obscenity Section of the Justice Department. Defense attorneys next requested a meeting with me to challenge the prosecution and the terms previously presented by the prosecutors in their meeting with Mr. Black. The prosecution team and I met with defense counsel in Fall 2007, and I reaffirmed the office's position: two years, registration and restitution, or trial.

Over the next several months, the defense team presented argument after argument claiming that felony criminal proceedings against Epstein were unsupported by the evidence and lacked a basis in law, and that the office's insistence on jail-time was motivated by a zeal to overcharge a man merely because he is wealthy. They bolstered their arguments with legal opinions from well-known legal experts. One member of the defense team warned me that the office's excess zeal in forcing a good man to serve time in jail might be the subject of a book if we continued to proceed with this matter. My office systematically considered and rejected each argument, and when we did, my office's decisions were appealed to Washington. As to the warning, I ignored it.

The defense strategy was not limited to legal issues. Defense counsel investigated individual prosecutors and their families, looking for personal peccadilloes that may provide a basis for disqualification. Disqualifying a prosecutor is an effective (though rarely used) strategy, as eliminating the individuals most familiar with the facts and thus most qualified to take a case to trial harms likelihood for success. Defense counsel tried to disqualify at least two prosecutors. I carefully reviewed, and then rejected, these arguments.

Despite this army of attorneys, the office held firm to the terms first presented to Mr. Black in the original meeting. On June 30, 2008, after yet another last minute appeal to Washington D.C. was rejected, Epstein pled guilty in state court. He was to serve 18 months imprisonment, register as a sexual offender for life and provide restitution to the victims.

Some may feel that the prosecution should have been tougher. Evidence that has come to light since 2007 may encourage that view. Many victims have since spoken out, filing detailed statements in civil cases seeking damages. Physical evidence has since been discovered. Had these additional statements and evidence been known, the outcome may have been different. But they were not known to us at the time.

A prosecution decision must be based on admissible facts known at the time. In cases of this type, those are unusually difficult because victims are frightened and often decline to testify or if they do speak, they give contradictory statements. Our judgment in this case, based on the evidence known at the time, was that it was better to have a billionaire serve time in jail, register as a sex offender and pay his victims restitution than risk a trial with a reduced likelihood of success. I supported that judgment then, and based on the state of the law as it then stood and the evidence known at that time, I would support that judgment again.

Epstein's treatment, while in state custody, likewise may encourage the view that the office should have been tougher. Epstein appears to have received highly unusual treatment while in jail. Although the terms of confinement in a state prison are a matter appropriately left to the

State of Florida, and not federal authorities, without doubt, the treatment that he received while in state custody undermined the purpose of a jail sentence.

Some may also believe that the prosecution should have been tougher in retaliation for the defense's tactics. The defense, arguably, often failed to negotiate in good faith. They would obtain concessions as part of a negotiation and agree to proceed, only to change their minds, and appeal the office's position to Washington. The investigations into the family lives of individual prosecutors were, in my opinion, uncalled for, as were the accusations of bias and / or misconduct against individual prosecutors. At times, some prosecutors felt that we should just go to trial, and at times I felt that frustration myself. What was right in the first meeting, however, remained right irrespective of defense tactics. Individuals have a constitutional right to a defense. The aggressive exercise of that right should not be punished, nor should a defense counsel's exercise of their right to appeal a U.S. Attorney to Washington, D.C. Prosecutors must be careful not to allow frustration and anger with defense counsel to influence their judgment.

After the plea, I recall receiving several phone calls. One was from the FBI Special Agent-In-Charge. He called to offer congratulations. He had been at many of the meetings regarding this case. He was aware of the tactics of the defense, and he called to praise our prosecutors for holding firm against the likes of Messrs. Black, Dershowitz, Lefkowitz and Starr. It was a proud moment. I also received calls or communications from Messrs. Dershowitz, Lefkowitz and Starr. I had known all three individuals previously, from my time in law school and at Kirkland & Ellis in the mid 90s. They all sought to make peace. I agreed to talk and meet with each of them after Epstein pled guilty, as I think it important that prosecutors battle defense attorneys in a case and then move on. I have tried, yet I confess that has been difficult to do fully in this case.

The bottom line is this: Mr. Jeffrey Epstein, a billionaire, served time in jail and is now a registered sex offender. He has been required to pay his victims restitution, though restitution clearly cannot compensate for the crime. And we know much more today about his crimes because the victims have come forward to speak out. Some may disagree with the prosecutorial judgments made in this case, but those individuals are not the ones who at the time reviewed the evidence available for trial and assessed the likelihood of success.

Respectfully,

R. Alexander Acosta
Former U.S. Attorney
Sothern District of Florida