# EXHIBIT 80

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-Civ-Marra/Johnson

JANE DOES #1 AND #2,

    Petitioners,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO
JANE DOES #1 AND #2'S MOTION TO HAVE
THEIR FACTS ACCEPTED BECAUSE OF
THE GOVERNMENT'S FAILURE TO CONTEST ANY OF THE FACTS [DE49]**

The United States, by and through the undersigned, hereby opposes Petitioners' Motion to have their "Statement of Undisputed Material Facts" accepted as true [DE49]. Petitioners argue that the Court should accept their Statement as true, despite its conclusory allegations and internal inconsistencies, solely because of the United States' failure to stipulate to the Statement. The Court should deny the motion because: (1) Petitioners have misstated that United States' efforts at reaching agreement on the Statement; (2) the "Undisputed Material Facts" are irrelevant, as Petitioners have previously acknowledged; (3) agreeing to the "Undisputed Material Facts" demanded by Petitioners would have required the United States to violated Federal Rule of Criminal Procedure 6(e) and/or constitutional and ethical mandates; and (4) the United States is not obligated to agree to any "facts," especially those that are incomplete or false.

## BACKGROUND

In DE 49, Petitioners ask the Court to accept as true their proposed "Statement of Undisputed Material Facts" contained in DE48 because they claim that the United States has failed "to advise the victims of what facts they are contesting." Petitioners then spend several pages making unsupported assertions and reciting from letters and email correspondence in an attempt to persuade the Court to adopt as true the Petitioners' averments even when the falsity of some of those "facts" is apparent from the text itself.

Contrary to their assertions, the Petitioners have *not* been attempting to negotiate with the government for more than 30 months. As set forth in the Procedural History Section of the United States' Opposition to Jane Doe #1 and Jane Doe #2's Motion for Finding of Violations of the Crime Victim Rights Act ("CVRA"), at the last hearing on the Petitioners' Emergency Petition, on August 14, 2008, counsel for Petitioners stated to the Court, "I believe that you *do* have a sufficient record, in that I don't think that – I think that we're in agreement that additional evidence does *not* need to be taken in the case for Your Honor to make a ruling." (DE27 at 4 (emphasis added).)

Thereafter, there was no contact regarding the CVRA petitioner for years – until the Court issued its administrative order closing the case. A flurry of activity ensued. Efforts were made to resolve the matter amicably, without success, including allowing the Petitioners, that is Jane Does #1 and #2, and their counsel, the opportunity to meet with the U.S. Attorney, as Jeffrey Epstein's attorneys did.[1]

Despite the Petitioners' earlier statement to the Court that no additional facts were needed, many hours were spent trying to revise the Petitioners' proposed statement of facts so that it would

---

[1]Only Jane Doe #1 and her counsel elected to attend a meeting with the U.S. Attorney.

2

contain only *facts*, not argument, not inferences, not incorrect innuendos.[2] Even after the U.S. Attorney's Office advised Petitioners that the Justice Department's position was that the CVRA's rights only attached upon the filing of federal criminal charges and, hence, that none of the Petitioners' proposed facts were relevant, further attempts were made. Petitioners' counsel, however, demonstrated no interest in proposed compromises. Specific factual corrections also were suggested and rejected.[3] Thus, counsel for Petitioners know that some of the proposed "undisputed material facts" are in fact disputed and, in many cases, wrong.

---

[2]The U.S. Attorney's Office also repeatedly reminded Mr. Cassell of the Justice Department's policy not to comment on the guilt or innocence of an unconvicted person. The ABA's Model Rule of Professional Conduct on the Special Responsibilities of a Prosecutor contains similar guidance. For example, there has been no civil or criminal finding by any judge or jury that:

> defendant Jeffrey Epstein (a billionaire with significant with significant political connections) sexually abused more than 30 minor girls at his mansion in West Palm Beach (*sic*), Florida, and elsewhere. Epstein performed repeated lewd, lascivious, and sexual acts on them, including (but not limited to) masturbation, touching of their sexual organs, using vibrators or sexual toys on them, coercing them into sexual acts, and digitally penetrating them. Because Epstein used a means of interstate commerce and knowingly traveled in interstate commerce to engage in abuse of Jane Doe #1 and Jane Doe #2 (and the other victims), he committed violations of federal law, including repeated violations of 18 U.S.C. § 2422.

(DE48 at 3-4 ¶ 1.) Jane Does No. 1 and No. 2 had the opportunity to prove these allegations at trial but elected to sign confidential settlement agreements where, presumably, there was no acknowledgement of criminal or civil liability. Respectfully, the U.S. Attorney's Office cannot express a factual position, immaterial to the present litigation, on whether Jeffrey Epstein ("Epstein") committed crimes (other than those to which he pled guilty in Palm Beach County Circuit Court).

[3]For example, Petitioners were repeatedly advised the Epstein lived in Palm Beach, not West Palm Beach. Even this simple correction was ignored. (*See* DE48 at 3-4.)

3

## ARGUMENT

I.     **ALL OF THE "UNDISPUTED FACTS" ARE IRRELEVANT.**

In their motion asking the Court to accept as true all of their purported "undisputed *material* facts," Petitioners rely on only two citations, the CVRA's "right to confer with the attorney *in the case*"[4] and Local Rule 88.10(O), which governs discovery in criminal cases.

Local Rule 88.10(O) reads: "The parties shall make every possible effort in good faith to stipulate to all facts or points of law the truth and existence of which is not contested and *the early resolution of which will expedite the trial*." (Emphasis added.) Contrary to Petitioners' suggestion, reaching agreement on Petitioners' "Statement of Undisputed Material Facts" would not expedite the resolution of this matter. As the United States has explained since August 1, 2008, at the very start of the litigation, (*see* DE19,) – and as *admitted by Petitioners* during the hearing on August 14, 2008, (*see* DE27 at 3) – no additional facts are needed for the Court to resolve the Emergency Petition and Petitioners' Motion seeking a finding that the CVRA was violated. The only material fact is that the United States Attorney's Office for the Southern District of Florida never filed federal

---

[4]Whether or not the CVRA applies is the central question in dispute in this matter because no federal criminal case was ever filed against Jeffrey Epstein and one is certainly not pending now. The undersigned knows of no case where the "right to confer with the attorney in the case" has been interpreted to allow victims to demand that the Government confer repeatedly – even after good faith efforts at reaching compromise have failed – in a case filed by victims against the Government pursuant to the CVRA. Nonetheless, Petitioners' argument seems to be that, because they aver that the CVRA applies, the Government's failure to accord them their very expansive reading of the CVRA's "right to confer" is a further violation of the CVRA. At least one court has noted and rejected this Catch-22: "the Court refuses to adopt an interpretation of [the CVRA] that prohibits the government from raising legitimate arguments in support of its opposition to a motion simply because the arguments in support of its opposition to a motion may hurt a victim's feeling or reputation. More pointedly, such a dispute is precisely the kind of dispute a court should not involve itself in since it cannot do so without potentially compromising its ability to be impartial to the government and defendant, the only true parties to the trial of the indictment." *United States v. Rubin*, 558 F. Supp. 2d 411, 428 (E.D.N.Y. 2008).

4

criminal charges against Jeffrey Epstein. That fact is undisputed.

Accordingly, all of the "facts" contained in Petitioners' statement are not "material" and the resolution of those "facts" will not "expedite the trial." Quite simply, all of the allegations, inferences, and innuendos contained in Petitioners' statement serve no purpose relevant to this litigation.

> II.  AGREEING WITH MANY OF PETITIONERS' "FACTS" WOULD HAVE VIOLATED FED. R. CRIM. P. 6(e) AND/OR CONSTITUTIONAL MANDATES.

Several of the "facts" that Petitioners include allege that Epstein and others have committed crimes for which they were never charged or convicted. Others refer to matters that were occurring before the grand jury. The Federal Rules of Criminal Procedure, constitutional mandates, and the ABA Model Rules on the Special Responsibilities of a Prosecutor address several of the items to which the Petitioners asked the Government to agree. The Government correctly refused to agree to those "facts," and the Petitioners cannot now use that refusal to ask the Court to adopt those "facts" as true.

> A.  Federal Rule of Criminal Procedure 6(e)

Rule 6(e) states that "an attorney for the government" "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B).[5] Courts have construed "a matter occurring before the grand jury" to include "events which have already occurred before the grand jury, such as a witness's testimony, [and] matters which will occur, such as statements which reveal the identity of persons who will be called to testify or which report when the grand jury will return an

---

[5]Petitioners have no similar obligation. *See* Fed. R. Crim. P. 6(e)(2)(A).

indictment."[6] *In re Grand Jury Investigation*, 610 F.2d 202, 216-17 (5th Cir. 1980).

While Petitioners were merely asking the Government to agree with their assertions of "fact" based upon materials Petitioners had received from counsel for Epstein, rather than asking the Government to make affirmative disclosures of grand jury material, "Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs." *In re Motions of Dow Jones & Co.,* 142 F.3d 496, 505 (D.C. Cir. 1998) (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994)). "[E]ven if material concerning the grand jury investigation had been disclosed to the public, the Government attorney . . . had a duty to maintain grand jury secrecy. This attorney could neither confirm nor deny the information presented by the 'external party.'" *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 1992 WL 119127 at *3 (D.D.C. May 13, 1992) (citing *Barry v. United States*, 740 F. Supp. 888, 891 (D.D.C. 1990) ("Rule 6(e) does not create a type of secrecy

---

[6]It is worth noting that, within the same case, a court can take differing positions on this. Compare:

> [T]he disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e). A discussion of actions taken by government attorneys or officials, e.g., a recommendation by the Justice Department attorneys to department officials that an indictment be sought against an individual does not reveal any information about matters occurring before the grand jury. Nor does a statement of opinion as to an individual's potential criminal liability violate the dictates of Rule 6(e).

With:

> Disclosures which expressly identify when an indictment would be presented to the grand jury, the nature of the crimes which would be charged, and the number of persons who would be charged run afoul of the secrecy requirements codified in Rule 6(e).

*In re Grand Jury Investigation*, 610 F.2d at 217, 218. In light of such conflicting directives, the government must err, if at all, on the side of treating all information related to grand jury proceedings as "matters occurring before the grand jury."

6

which is waived once public disclosure occurs. The Government is obligated to stand silent regardless of what is reported, accurate or not, by the press.").)

The reasons for Rule 6(e) are multiple:

> In addition to preventing adverse pretrial publicity about a person who may be indicted and subsequently tried, secrecy protects the reputation of a person under investigation who is not indicted. The secrecy requirement also encourages reluctant witnesses to testify without fear of reprisals from those against whom testimony is given, prevents tampering with grand jury witnesses in an effort to alter their trial testimony, and permits the grand jury to deliberate free from the influence of publicity. Finally, secrecy prevents disclosures to persons who may be interested in the investigation if the facts are known or might attempt to escape if they have reason to believe certain indictments will issue.

*United States v. Eisenberg*, 711 F.2d 959, 961 (11th Cir. 1983) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958)).

Several of the "facts" contained in Petitioners' submission contain allegations related to matters occurring before the grand jury. Pursuant to Fed. R. Crim. P. 6(e), the Government cannot confirm or deny the accuracy of those allegations.

### B. Due Process and the ABA Rule for Prosecutors

As noted above, one of the reasons behind 6(e) is to protect the reputations of persons who are under investigation but not indicted. This is a corollary to what the Court of Appeals found to be a due process protection afforded by the Fifth Amendment of the United States Constitution – namely, "that the liberty and property concepts of the Fifth Amendment protect an individual from being publicly and officially accused of having committed a serious crime, particularly where the accusations gain wide notoriety." *See In re Smith*, 656 F.2d 1101, 1106 (5th Cir. 1981) (citation

omitted).[7] In *Smith*, the petitioner filed a motion seeking to have his name stricken from the factual proffers of two criminal defendants. Smith had not been criminally charged or convicted. The Court of Appeals agreed with Smith, castigating the Government:

> no legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights. . . .
>
> [W]e completely fail to perceive how the interests of criminal justice were advanced at the time of the plea hearings by such an attack on the Petitioner's character. The presumption of innocence, to which every criminal defendant is entitled, was forgotten by the Assistant United States Attorney in drafting and reading aloud in open court the factual resumes which implicated the Petitioner in criminal conduct without affording him a forum for vindication.

*Id.* at 1106, 1107. The Court of Appeals ordered the District Court Clerk's Office to "completely and permanently obliterate and strike from the records of the pleas of guilty . . . any and all identifying reference to or name of Mr. Smith, the Petitioner, so that such references may not be used as a public record to impugn the reputation of Petitioner." *Id.* at 1107. The Court further ordered that all of the pleadings in the case be sealed. *Id.*

Courts have interpreted *Smith* to apply not only to references to unindicted co-conspirators in indictments and factual proffers, but also to motion papers. *See, e.g., United States v. Anderson*, 55 F. Supp. 2d 1163, 1168 (D. Kan. 1999) ("After carefully reviewing the government's moving papers on the conflict of interest issue, the court can find no reason why the government might have 'forgotten' the presumption of innocence in such a public pleading . . .") (citing *Smith*, 656 F.2d at 1107); *United States v. Holy Land Foundation*, 624 F.3d 685 (5th Cir. 2010) (Fifth Amendment rights of organization were violated when its name was listed among 246 unindicted coconspirators

---

[7]This opinion of the Fifth Circuit was made binding precedent in the Eleventh Circuit pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

in pre-trial brief).

The Model Rules further advise prosecutors not to engage in comments that "have a substantial likelihood of heightening public condemnation of the accused." (ABA Model Rule 3.8.)

In Petitioners' "Statement of Undisputed Material Facts," they included allegations related to crimes for which Epstein and several other individuals were neither charged nor convicted. Pursuant to *Smith* and its progeny, and as previously explained to Petitioners' counsel, the Government denies all such allegations, including but not limited to the allegations contained in paragraphs 1, 2, 4, 5, 10, 11, 17, 37, 52, and 53.[8]

### III. THERE IS NO LEGAL OBLIGATION THAT THE UNITED STATES ADMIT OR DENY THE PETITIONERS' "FACTS," MANY OF WHICH ARE FALSE.

Although docketed as a Civil Case, the CVRA does not provide for a civil cause of action. *See*, e.g., 18 U.S.C. § 3771(d)(6). Rather, the CVRA creates rights for victims in federal criminal cases where criminal charges have already been filed. 18 U.S.C. § 3771(b)(1) ("In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a)."); *see also* Fed. R. Crim. P. 60 (incorporating CVRA into Federal Rules of Criminal Procedure). Thus, there is no obligation in this case, as there might be in a case governed by the Federal Rules of Civil Procedure where sovereign immunity was waived, that requires the United States to make any evidentiary disclosures.

Petitioners next rely on Local Rule 88.10(O), which governs discovery in criminal cases. First, no standing discovery order has been entered because no criminal proceedings are pending.

---

[8] It should be noted that Petitioners preface many of these allegations with a *false* imprimatur of FBI findings. Compare, for example, paragraph 5 with the pages cited in support thereof.

Second, victims are not "parties" to criminal proceedings. *See, e.g., In re Amy Unknown*, ___ F.3d ___, 2011 WL 988882 at *2 (5th Cir. Mar. 22, 2011). ("Crime victims have not been recognized as parties, and the Federal Rules of Criminal Procedure do not allow them to intervene as parties to a prosecution."); *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 53 (1st Cir. 2010) ("Notwithstanding the rights reflected in the restitution statutes, crime victims are not parties to a criminal sentencing proceeding."). Third, many of Petitioners' asserted "facts" are not facts at all, but instead are inferences, legal conclusions, or innuendos. And, most importantly, many are plainly false.

As stated above, the United States does not believe that any of these issues are material to the resolution of the Emergency Petition or Jane Does #1 and #2's Motion for Finding of Violation of the CVRA [DE1 and DE48]. Nonetheless, to correct misstatements in the record, the United States points out the following examples of areas where Petitioners have included "undisputed facts" that are known to them to be in dispute.

Prior to Epstein's state court plea, Jane Doe #2 was represented by counsel for Epstein, was adverse to any investigation of Epstein, and contacted other potential victim-witnesses and advised them not to speak to investigators. When interviewed by the FBI and the U.S. Attorney's Office, Jane Doe #2 denied any sexual abuse by Epstein and said that Epstein was an "awesome man" and that she would marry him. Jane Doe #2 further expressed a belief to the government that Epstein should not be prosecuted.

Jane Doe #2 not only made the government's investigative efforts more difficult, she also made the victim notification process more difficult. A great deal of the complaints made by the Petitioners come from the delay between the time that Epstein signed the NPA on September 24,

2007, and when he actually entered his guilty plea on June 30, 2008. (*See* DE 48 at ¶¶ 25, 32, *et seq.*) As set forth in their "Statement of Undisputed Facts," this was the period when Epstein "sought higher level review within the Department of Justice." (*Id.* at ¶ 32.) As is known to Petitioners, but as they neglected to mention in their "Statement of Undisputed Material Facts," one of the unfounded allegations made against AUSA Villafaña by Epstein's counsel during the "higher level review" was that she "wrongfully" tried to include Jane Doe #2 among the list of Epstein's victims. Ironically, these same attempts to protect Jane Doe #2's rights are now being used by Jane Doe #2 to allege violations of the CVRA.

Petitioners also allege that the letters sent to Jane Doe #1 and Jane Doe #2 during the period when Epstein was pursuing Justice Department review, which stated that their cases were still under investigation, were false. Yet Petitioners know that the investigation was ongoing because, as stated in their own "Statement of Undisputed Material Facts," on "January 31, 2008, Jane Doe #1 met with FBI Agents and AUSA's from the U.S. Attorney's Office." (DE48 at 17.) And another individual represented by Petitioners' counsel was interviewed on May 28, 2008. These and other interviews were conducted so that, if Epstein did not follow through with the NPA, the Office would be ready to address that situation as appropriate. Thus, the investigation was, in fact, continuing.

The Petitioners also know that the terms of the NPA were disclosed to Jane Doe #1 shortly after the NPA was signed. Jane Doe #1 avers that she believed that Epstein agreed to pay damages to her, but agreed that he would still be federally prosecuted for criminal charges based on crimes allegedly committed against her. Petitioners aver that it is a "fact" that this was a "quite reasonable understanding." (DE48 at 12.) The Government denies that this is what Jane Doe #1 was told (*see* DE14), although there could have been an honest misunderstanding. The Government denies,

11

however, that it was "quite reasonable" to believe that a criminal defendant would agree to pay damages to Jane Doe #1 as part of his resolution of a criminal case involving another victim while still agreeing that he could be criminally charged for acts involving Jane Doe #1.

Furthermore, Petitioners know well that one of the reasons why the terms of the NPA were not disclosed to additional victims when Epstein began appealing to the Justice Department was because of concerns that, if Epstein did not follow through with the NPA and federal criminal charges were thereafter filed against him, Epstein's counsel would argue at trial that the victims had been told, *by the prosecution team*, that they would receive money if they claimed that they had been victimized by Epstein. This was not a frivolous concern; such allegations actually were raised by Epstein's counsel in depositions of some of the identified victims that were filed before this Court.

Petitioners also suggest that efforts were made to move proceedings to Miami to keep these Petitioners from learning of court proceedings. Yet, it is undisputed that Petitioners were notified, through counsel, of the only public court proceeding – Epstein's state court plea and sentencing – and were specifically invited to attend. The Petitioners also know that some of the victims in the case were terrified that their family members might learn of their connection to the investigation and that other victims had privacy concerns that were very different than those of Petitioners. Having the proceedings outside the glare of the victims' hometown press would have allowed those other victims to participate while maintaining some semblance of privacy.

Petitioners also reiterate baseless allegations made against AUSA Villafaña regarding the choice of the attorney-representative for the victims, despite knowing that: (1) the issue of the attorney-representative arose *after* the NPA was already negotiated; (2) the Justice Department investigated these allegations and found them to be meritless; and (3) the U.S. Attorney's Office

12

elected to use a Special Master (retired U.S. District Court Judge Edward Davis) to make the final selection.

The Petitioners also know that the AUSA, the agents, and the FBI's victim-witness coordinator obtained counseling services for some of the identified victims. And Petitioners are well aware that the AUSA even provided notifications of Epstein's work release status.

Paragraph 17 of Petitioners' filing also misstates a provision of the NPA. Petitioners stated that "[t]o obtain an attorney paid for by Epstein, the victim would have to agree to proceed exclusively under 18 U.S.C. § 2255 (i.e., under a law that provided presumed damages of $150,000 against Epstein[.]" Section 2255 actually provides *minimum* presumed damages of $150,000, not a "cap" of $150,000.

There are a number of additional inferences and legal conclusions interspersed in the "Statement of Undisputed Material Facts," which the Government denies. For example, contrary to Petitioners' contentions, the Government denies that notifying the victims about the NPA would have violated the NPA (DE48 at 10, ¶ 18); and that the U.S. Attorney's Office wanted the NPA to be kept confidential to avoid public criticism or to avoid victims from convincing "the judge reviewing the agreement not to accept it" (DE48 at 11, ¶ 19). The Government denies these and all other unsupported innuendos advanced by Petitioners.

## **CONCLUSION**

For the reasons set forth herein and in the United States' Response to Jane Does #1 and #2's Motion for Finding of Violations of the Crime Victims Rights Act and Request for a Hearing on Appropriate Remedies, the Petitioners' "Statement of Undisputed Facts" is completely irrelevant to the Court's determination of the merits of this case. As both of the parties agreed shortly after the

13

filing of the Emergency Petition, the Court had all of the relevant facts back in August 2008 and the matter was ready to be decided.

Petitioners cannot demand that the Government agree to their allegations, innuendos, and legal conclusions, especially when many of them would run afoul of Rule 6(e) and the Fifth Amendment and others are clearly false. Accordingly, Petitioners' Motion to Have Their Facts Accepted should be denied.

> Respectfully submitted,
>
> WIFREDO A. FERRER
> UNITED STATES ATTORNEY
>
> By:    s/ Dexter A. Lee
> DEXTER A. LEE
> Assistant U.S. Attorney
> Fla. Bar No. 0936693
> 99 N.E. 4th Street
> Miami, Florida 33132
> (305) 961-9320
> Fax: (305) 530-7139
> E-mail: dexter.lee@usdoj.gov
>
> Attorney for Respondent

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 7, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>    s/ Dexter A. Lee
> DEXTER A. LEE
> Assistant U.S. Attorney

SERVICE LIST

Jane Does 1 and 2 v. United States,
Case No. 08-80736-CIV-MARRA/JOHNSON
United States District Court, Southern District of Florida

Bradley J. Edwards, Esq.,
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
Fax: (954) 524-2822
E-mail: brad@pathtojustice.com

Paul G. Cassell
S.J. Quinney College of Law at the
University of Utah
332 S. 1400 E.
Salt Lake City, Utah 84112
(801) 585-5202
Fax: (801) 585-6833
E-mail: casselp@law.utah.edu

Attorneys for Jane Doe # 1 and Jane Doe # 2