# EXHIBIT 86



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

---

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

99 N.E. 4 Street
Miami, FL 33132
(305) 961-9100 - Telephone
(305) 530-6444 - Facsimile

DELIVERY BY FACSIMILE
Kenneth W. Starr, Esq
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017

    Re:  <u>Jeffrey Epstein</u>

Dear Mr. Starr:

  I write in response to your November 28th letter, in which you raise concerns regarding the Non-Prosecution Agreement between this Office and your client, Mr. Epstein. I take these concerns seriously. As your letter focused on the Section 2255 portion of the Agreement, my response will focus primarily on that issue as well. I do wish to make some more general observations, however.

  Section 2255 provides that "[a]ny person who, while a minor, was a victim of a violation of [enumerated sections of Title 18] and who suffers personal injury as a result of such violation . . . may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee." Thus, had this Office proceeded to trial, and had Mr. Epstein been convicted, the victims of his actions would have been able to seek to relief under this Section.

  The Non-Prosecution Agreement entered into between this Office and Mr. Epstein responds to Mr. Epstein's desire to reach a global resolution of his state and federal criminal liability. Under this Agreement, this District has agreed to defer prosecution for enumerated sections of Title 18 in favor of prosecution by the State of Florida, provided that the Mr. Epstein satisfies three general federal interests: (1) that Mr. Epstein plead guilty to a "registerable" offense; (2) that this plea include a binding recommendation for a sufficient term of imprisonment; and (3) that the Agreement not harm the interests of his victims. This third point deserves elaboration. The intent is to place the victims in the same position as they would have been had Mr. Epstein been convicted at trial. No more; no less.

  With this in mind, I turn to the language of the Agreement. Paragraph 8 of the Agreement provides:

    If any of the individuals referred to in paragraph (7), *supra*, elects to file suit pursuant
    to 18 U.S.C. § 2255, Epstein will not contest the jurisdiction of the United States

> District Court for the Southern District of Florida over his person and/or the subject matter,[1] and Epstein waives his right to contest liability and also waives his right to contest damages up to an amount as agreed to between the identified victim and Epstein, so long as the identified victim elects to proceed exclusively under 18 U.S.C. § 2255, and agrees to waive any other claim for damages, whether pursuant to state, federal, or common law. Notwithstanding this waiver, as to those individuals whose names appear on the list provided by the United States, Epstein's signature on this agreement is not to be construed as an admission of any criminal or civil liability other than that contained in 18 U.S.C. § 2255.

Although these two sentences are far from simple, they appear to incorporate our intent to narrowly tailor the Agreement to place the identified victims in the same position as they would have been had Mr. Epstein been convicted at trial. I would note that I have conferred with our prosecutors and have been told that Paragraph 8 was vigorously negotiated and that the final language was suggested largely by defense counsel.

The concerns raised in your letter with respect to Paragraph 8 fall within several general categories. First, you raise concerns regarding the nature of Section 2255. As you note,

> Section 2255 is a civil statute implanted in the criminal code; in contrast to other criminal statutes, Section 2255 fails to correlate payments to specific injuries or losses. Instead the statute presumes that victims have sustained damages of at least a minimum lump sum without regard to whether the complainants suffered actual medical, physiological or other forms of individualized harm.

These concerns were, I would expect, aired when Congress adopted this statute. Even if they were not, this provision is now law. Rule of law requires now requires this District to consider the victims' rights under this statute in negotiating this Agreement.

Second, you raise concerns regarding the identity-of-the-victims issue. Your concerns appear based on the belief that Paragraph 8 is a blanket waiver of liability with respect to any number of unnamed and undisclosed victims. I would invite you to confer with your co-counsel regarding this matter. Although the language of Paragraph 8 could be so construed, our First Assistant informed Mr. Lefkowitz some weeks ago that this was not our position. As Mr. Lefkowitz has noted, were Mr. Epstein convicted at trial, the plaintiff-victims in a subsequent Section 2255 suit would still have had some burden to prove that they were "victims." It is also the case, however, that were Mr. Epstein convicted at trial, the plaintiff-victims would not have to show that a violation of an enumerated section of Title 18 took place. Accordingly, our First Assistant informed Mr. Lefkowitz some weeks ago that we understood that if a victim-plaintiff elects to proceed to trial, Mr. Epstein's

---

[1] Although not identified as an issue by defense counsel, having reviewed this language, I note that Paragraph 8 raises the question of what is meant by "subject matter." I have conferred with the AUSA who negotiated this language, and have been informed that parties intended this to address issues of venue. This Office will not interpret this paragraph as any waiver of subject matter jurisdiction. Please inform me if defense counsel disagrees.

-2-

RFP MIA 000502

legal team might conduct due diligence to confirm the that victim-plaintiff in fact had inappropriate contact with Mr. Epstein. Once again, our interpretive principle is our intent to place the victim in the same position she would have been had Mr. Epstein proceeded to trial.

Third, you raise concerns regarding our decision not to create a restitution fund. Throughout the negotiations, defense counsel suggested several similar arrangements, including a Trust fund. Again, our decision not to create a fund flows from our belief that the Agreement should provide the same relief to the victims as they would have been entitled had we proceeded to trial. A restitution fund or trust fund would place an upper limit on the victims' recovery. It is not for this Office to make that decision for the victims. They may choose to walk away, they may choose to settle, or they may choose to sue. The choice should remain with each individual victim.[2]

Fourth, you raise concerns regarding the selection process for the attorney representative. As you may be aware, the suggestion that we appoint an attorney representative originated with defense counsel. Defense counsel, I believe, found it advantageous to attempt to negotiate a settlement of the many victims' claims with one attorney representative. My Office agreed to appoint such a representative, in part, because we too thought it valuable for the victims to have the advice of an attorney who could advise them of their choices: whether to walk away, to settle or to sue.

Since the signing of the Agreement, several issues have arisen with respect to this provision. First, I elected to assign this Office's right to appoint the representative to an independent third-party, former federal Judge Davis. I did this to avoid any suggestion that this Office's choice of representative was intended to influence the outcome of civil litigation. Second, your co-counsel expressed concerns similar to those raised in your letter regarding the criteria used to select the representative. These criteria were:

(1) Experience doing both plaintiffs' and defense litigation;
(2) Experience with state and federal statutory and common law tort claims;
(3) Ability to communicate effectively with young women;
(4) Experience litigating against large law firms and high profile attorneys who may test the veracity of the victims' claims;
(5) Sensitivity to the nature of the suit and the victims' interest in maintaining their privacy;
(6) Experience litigating in federal court in the Southern District of Florida;

---

[2] Your letter references *U.S. v Boehm*, No. 3:04CR00003 (D. Ala 2004) as a model for a restitution fund settlement. I asked our prosecutor to contact the AUSA in that case. In that matter, the District of Alaska sought out and obtained the consent of all the victims before entering into that settlement. In addition, they developed an elaborate procedure for deciding which victim would receive what. My view, in this case, is that those types of negotiations are better handled between Mr. Epstein and the victims' representatives, and that this Office should not act as intermediary. Finally, I would note that in *Boehm* as well, the victims' identities were not initially disclosed. As the AUSA wrote in that case: "This filing is made ex parte because Boehm, in his plea agreement, waived any rights he had pertaining to the selection of beneficiaries and the disbursement of funds to such beneficiaries."

-3-


(7) The resources to hire experts and others, while working on a contingency fee basis, in order to prepare for trial if a settlement cannot be reached (defense counsel has reserved the right to challenge such litigation); and

(8) The ability to negotiate effectively.

At my direction, our First Assistant provided our criteria to your co-counsel, Mr. Lefkowitz, in advance, and at co-counsel's request, he noted in our communication with Judge Davis, defense counsel's objection to criteria 7. I have now reviewed these criteria and find them balanced and reasonable. They appear designed to provide the victims with an attorney who can advise them on all their options, whether it be to walk away, to settle (as your client prefers), or to litigate. Again, our intent is not to favor any one of these options, but rather to leave the choice to each victim.

Fifth, you assert that this Office "has improperly insisted that the chosen attorney representative should be able to litigate the claims of the individuals," should a resolution not be possible. This issue, likewise, has already been raised and addressed in discussions between your co-counsel and our First Assistant. We understand your position that it would be a conflict of interest for the attorney representative to subsequently represent victim-plaintiffs in a civil suit. Your interpretation of the ethics rules may be correct, or it may be wrong. Far from insisting that the attorney representative can represent victim-plaintiffs in subsequent litigation, our First Assistant and I have repeatedly told defense counsel that we take no position on this matter. Indeed, I fully expect your defense team to litigate this issue with the attorney representative if a resolution is not reached.

I have responded personally and in some detail to your concerns because I deeply care about both the law and the integrity of this Office. I have responded personally and in some detail as well because your letter troubled me on a number of levels. My understanding of the negotiations in this matter informs my concerns.

The Section 2255 provision issue was first discussed at a July 31, 2007, meeting between FAUSA Sloman, Criminal Chief Menchel, West Palm Beach Chief Lourie, AUSA Villafaña, and two FBI agents who met with Roy Black, Gerald Lefcourt, and Lilly Ann Sanchez. On that date, the prosecutors presented a written, four-bullet-point term sheet that would satisfy the federal interest in the case and discussed the substance of those terms. One of these four points was the following provision:

> Epstein agrees that, if any of the victims identified in the federal investigation file suit pursuant to 18 U.S.C. § 2255, Epstein will not contest the jurisdiction of the U.S. District Court for the Southern District of Florida over his person and the subject matter. Epstein will not contest that the identified victims are persons who, while minors, were victims of violations of Title 18, United States Code, Sections(s) 2422 and/or 2423.

RFP MIA 000504

In mid August 2007, your defense team, dissatisfied with my staff's review of the case, asked to meet with me. Mr. Lefkowtiz indicated your busy schedule, and asked me to put off until September 7, 2007, so that you could attend. Mr. Lefkowitz also indicated that he might appeal my decision to Washington D.C., if my decision was contrary to his client's interest. I agreed to the September 7th meeting, despite the fact that our AUSA had an indictment ready for presentation to the grand jury. An explicit condition of that agreement, however, was an understanding between Mr. Lefkowitz and myself that any appeal to Washington would be undertaken expeditiously.

On September 7, 2007, I, along with FAUSA Sloman, AUSAs McMillan and Villafaña, and FBI agents, met with you, Mr. Lefkowitz, and Ms. Sanchez. I understood that you wished to present federalism-based concerns regarding our prosecution. To ensure a full consideration of your arguments, I invited Drew Oosterbaan, Chief of the Criminal Division's Child Exploitation and Obscenity Section, to travel from Washington to attend our meeting. During the September 7th meeting, your co-counsel, Mr. Lefkowitz, offered a plea resolution. The inclusion of a Section 2255 remedy was specifically raised and discussed at the September 7th meeting. Indeed, according to AUSA Villafaña's notes, you thanked her for bringing it to your attention. Again, no objection to the Section 2255 issue was raised.

After considering the arguments raised at the September 7th meeting, and after conferring with the FBI and with Chief Oosterbaan, our Office decided to proceed with the indictment. At that time, I reminded Mr. Lefkowitz that he had previously indicated his desire to appeal such a decision to the Attorney General, the Deputy Attorney General, or the Assistant Attorney General for the Criminal Division, and I offered to direct our prosecutors to delay the presentation of the indictment to allow you or he to appeal our decision if you so chose. He decided not to do so.

Instead, Mr. Epstein elected to negotiate the Non-Prosecution Agreement. These negotiations were detailed and time-consuming. Mr. Epstein's defense team, including yourself, Professor Dershowitz, former United States Attorney Guy Lewis, Ms. Lilly Ann Sanchez and Messrs. Roy Black, Jack Goldberger, Gerry Lefcourt and Jay Lefkowitz had the opportunity to review and raise objections to the terms of the Agreement. Again, no one raised objections to the Section 2255 language.

Since the signing of the Agreement, the defense team and our Office have addressed several issues that have arisen under the Agreement. Although the exchanges were at times a bit litigious, it appears that these issues have been resolved by mutual consent, some in favor of your client, some not so.

It is against these many previous foregone opportunities to object that I receive with surprise your letter requesting an 11th hour, after-the-fact review of our Agreement. Although it happens rarely, I do not mind this Office's decision being appealed to Washington, and have previously directed our prosecutors to delay filings in this case to provide defense counsel with the option of appealing our decisions. Indeed, although I am confident in our prosecutors' evidence and legal analysis, I nonetheless directed them to consult with the subject matter experts in the Criminal

-5-

Division's Child Exploitation and Obscenity Section to confirm our interpretation of the law before approving their indictment package. I am thus surprised to read a letter addressed to Department Headquarters that raises issues that either have not been raised with this Office previously or that have been raised, and in fact resolved, in your client's favor.

I am troubled, likewise, by the apparent lack of finality in this Agreement. The AUSAs who have been negotiating with defense counsel have for some time complained to me regarding the tactics used by the defense team. It appears to them that as soon as resolution is reached on one issue, defense counsel finds ways to challenge the resolution collaterally. My response thus far has been that defense counsel is doing its job to vigorously represent the client. That said, there must be closure on this matter. Some in our Office are deeply concerned that defense counsel will continue to mount collateral challenges to provisions of the Agreement, even after Mr. Epstein has entered his guilty plea and thus rendered the agreement difficult, if not impossible, to unwind.

Finally, I am most concerned about any belief on the part of defense counsel that the Agreement is unethical, unlawful or unconstitutional in any way.[3]

In closing, I would ask that you consult with co-counsel. If after consultations within the defense team, you believe that our Agreement is unethical, unlawful or unconstitutional, I would ask that you notify us immediately so that we can discuss the matter by phone or in person. I have consulted with the chief prosecutor in this case, who has advised me that she is ready to unwind the Agreement and proceed to trial if necessary or if appropriate.

I would reiterate that it is not the intention of this Office ever to force the hand of a defendant to enter into an agreement against his wishes. Your client has the right to proceed to trial. Although time is of the essence (I understand that certain filings are due to our Office no later than December 7th and that certain events must take place no later than December 14th), I am directing our prosecutors not to issue victim notification letters until this Friday at 5 p.m., to provide you with time to review these options with your client. We are available by phone or in person, in the interim, to

---

[3] It is not clear from your letter whether you believe that attorneys in this Office have acted improperly. Your letter, for example, alludes to the need to engage in an inquiry to assure that disclosures to potential witnesses did not undermine the reliability of the results of this federal investigation. As a former Department of Justice attorney, I am certain that you recognize that this is a serious allegation. I have raised this matter with AUSA Villafaña who informed me that the victims were not told of the availability of Section 2255 relief during the investigation phase of this matter. If you have specific concerns, I ask that you raise these with me immediately, so that I can make appropriate inquiries.

-6-

RFP MIA 000506

address any matters that might remain unaddressed in this letter. We expect a written decision by this Friday at 5 p.m., indicating whether the defense team wishes to reaffirm, or to unwind, the Agreement.

Sincerely,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

cc: Alice Fisher, Assistant Attorney General
Jeffrey Sloman, First Assistant U.S. Attorney
AUSA A. Marie Villafaña

RFP MIA 000507