# EXHIBIT 87

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

(212) 446-4800

www.kirkland.com

Jay P. Lefkowitz, P.C
To Call Writer Directly:
(212) 446-4970
lefkowitz@kirkland.com

Facsimile:
(212) 446-4900

December 11, 2007

<u>VIA FACSIMILE (305) 530-6444</u>

Honorable R. Alexander Acosta
United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132

Re: *Jeffrey Epstein*

Dear Alex,

I thank you for the opportunity to express my concerns with the Section 2255 component of the Non-Prosecution Agreement (the "Agreement"). I provide this submission as a good faith effort to communicate all of our concerns on this matter. I respectfully request that you consider the issues I discuss below in conjunction with the ethics opinion of Mr. Joe D. Whitley that I faxed to your Office on December 7.

## Background of Negotiations

I believe it is important for you to be aware of the full scope and substance of our communications with your Office with respect to first, the negotiations regarding the inclusion of the Section 2255 component and second, the process of implementation of its terms. Contrary to your Office's view, we do not raise our concerns about the Section 2255 component of the Agreement at the "eleventh hour." Since the very first negotiation of the Non-Prosecution Agreement between the USAO and Mr. Epstein, we have verbalized our objections to the inclusion of and specific language relating to Section 2255. Also, when negotiating the settlement portion of the federal plea agreement, we immediately sought an alternative to the 2255 language. In fact, for the sake of expediting any monetary settlements that were to be made and to allow for a quick resolution of the matter, we repeatedly offered that Mr. Epstein establish a restitution fund specifically for the settlement of the identified individuals' civil claims and that an impartial, independent representative be appointed to administer that fund. This option, however, was rejected by your Office. Notably, while in our December 4 letter to me, you indicate that the reason for the rejection of a fund was because it would place an upper limit on

Chicago    Hong Kong    London    Los Angeles    Munich    San Francisco    Washington, D.C.

RFP MIA 000025

## KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 11, 2007
Page 2

the victims' recovery, we placed no such limit on the amount that the alleged victims could recover.

Our objections regarding the Section 2255 component of the Agreement began as early as August 2 when, after receiving the USAO's proposed Non-Prosecution Agreement, we suggested that the 2255 component of the Agreement could be satisfied by the creation of a restitution fund:

> ...Mr. Epstein is prepared to fully fund the identified group of victims which are the focus of the Office -- that is, the 12 individuals noted at the meeting on July 31, 2007. This would allow the victims to be able to promptly put this behind them and go forwards with their lives. If given the opportunity to opine as to the appropriateness of Mr. Epstein's proposal, in my extensive experience in these types of cases, the victims prefer a quick resolution with compensation for damages and will always support any disposition that eliminates the need for trial.

See letter from Lily Ann Sanchez to Chief Matthew Menchel dated August 2, 2007.[1] For the duration of the negotiations, we then continued to encourage the use of a restitution fund in place of civil liability under Section 2255. For example, in our draft plea agreement sent to your Office on September 16, 2007, we included the following paragraph:

> Epstein agrees to fund a Trust set up in concert with the Government and under the supervision of the 15th Judicial Circuit in and for Palm Beach County. Epstein agrees that a Trustee will be appointed by the Circuit Court and that funds from the Trust will be available to be disbursed at the Trustee's discretion to an agreed list of persons who seek reimbursement and make a good faith showing to the Trustee that they suffered injury as a result of the conduct of Epstein. Epstein waives his right to contest liability or damages up to an amount agreed to by the parties for any settlements entered into by the Trustee. Epstein's waiver is not to be construed as an admission of civil or criminal liability in regards to any of those who seek compensation from the Trust.

See draft proposal sent from Jay Lefkowitz to Andrew Lourie dated September 15, 2007. In response, Ms. Villafana demanded that the Agreement contain language considering the inclusion of a guardian ad litem in the proceedings, despite the fact that, we are now led to believe that all but one of the women in question are in fact not minors. Interestingly, Ms. Villafana not only raises the same concerns that now have become issues with respect to the implementation of the Section 2255 component, she also believes that the creation of a trust would be in the victims' best interests. Villafana writes:

---

[1] It was not until after receipt of this letter that Mr. Menchel indicated to us that the scope of liability would encompass not just the 12 individuals named in the indictment, but "all of the minor girls identified during the federal investigation." See Menchel e-mail to Sanchez dated August 3, 2007.

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 3

> As I mentioned over the telephone, I cannot bind the girls to the Trust Agreement, and I don't think it is appropriate that a state court would administer a trust that seeks to pay for federal civil claims. *We both want to avoid unscrupulous attorneys and/or litigants from coming forward, and I know that your client wants to keep these matters outside of public court filings,* but I just don't have the power to do what you ask. Here is my recommendation. During the period between Mr. Epstein's plea and sentencing, I make a motion for appointment of the Guardian Ad Litem. The three of us sit down and discuss things, and *I will facilitate as much as I can getting the girls' approval of this procedure because, as I mentioned, I think it is probably in their best interests.* In terms of plea agreement language, let me suggest the following:
>
> The United States agrees to make a motion seeking the appointment of a Guardian ad Litem to represent the identified victims. Following the appointment of such Guardian, the parties agree to work together in good faith to develop a Trust Agreement, subject to the Court's approval, that would provide for any damages owed to the identified victims pursuant to 18 U.S.C. Section 2255. Then include the last two sentences of your paragraph 8.

*See* email from Villafana to Lefkowitz dated September 16, 2007 (emphasis added). However, notably, in the draft agreement that follows, Ms. Villafana keeps the same objectionable language and only adds a portion of what was suggested in her communication to us:

> Epstein agrees that, if any of the victims identified in the federal investigation file suit pursuant to 18 U.S.C. § 2255, Epstein will not contest the jurisdiction of the U.S. District Court for the Southern District of Florida over his person and/or the subject matter, and Epstein will not contest that the identified victims are persons who, while minors, were victims of violations of Title 18, United States Code, Sections(s) 2422 and/or 2423.
>
> The United States shall provide Epstein's attorneys with a list of the identified victims, which will not exceed forty, after Epstein has signed this agreement and has been sentenced. The United States shall make a motion with the United States District Court for the Southern District of Florida for the appointment of a guardian ad litem for the identified victims and Epstein's counsel may contact the identified victims through that counsel.

*See* draft non-prosecution agreement e-mailed from Villafana to Lefkowitz dated September 17, 2007. The inclusion of a guardian ad litem, however, only served to complicate matters. We continued to reiterate our objections to the inclusion of § 2255 in the Agreement repeatedly, as evidenced in an email from Ms. Villafana to myself on September 23, 2005 where she writes: "we have been over paragraph 6 [the then relevant 2255 paragraph] an infinite number of times." During negotiations, it was decided that an attorney representative be appointed in the place of a guardian ad litem -- not for the sake of litigating claims, but based on the belief that a guardian ad litem would not be appropriate for adults that are capable of making their own decisions. However, the USAO included into the Agreement that we pay for the attorney representative -- when originally Ms. Villafana stated that the representative could be paid for by us or the federal court. *See* e-mail from Villafana to Lefkowitz dated September 23, 2007.

RFP MIA 000027

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 4

The final agreement was very similar to what was proposed by Ms. Villafana in her initial draft agreement on July 31, 2007:

> The United States shall provide Epstein's attorney's with a list of individuals whom it has identified as victims, as defined in 18 U.S.C. § 2255, after Epstein has signed this agreement and has been sentenced. Upon the execution of this agreement, the United States, in consultation with and subject to the good faith approval of Epstein's counsel, shall select an attorney representative for these persons, who shall be paid for by Epstein. Epstein's counsel may contact the identified individuals through that representative.
>
> If any of the individuals referred to in paragraph (7), *supra*, elects to file suit pursuant to 18 U.S.C. § 2255, Epstein will not contest the jurisdiction of the United States District Court for the Southern District of Florida over this person and/or the subject matter, and Epstein waives his right to contest liability and also waives his right to contest damages up to an amount as agreed to between the identified individual and Epstein, so long as the identified individual elects to proceed exclusively under 18 U.S.C. § 2255, and agrees to waive any other claim for damages, whether pursuant to state, federal, or common law. Notwithstanding this waiver, as to those individuals whose names appear on the list provided by the United States, Epstein's signature on this agreement, his waivers and failures to contest liability and such damages in any suit are not to be construed as an admission of any criminal or civil liability.

*See* final plea agreement. The Agreement requires Mr. Epstein to waive jurisdiction and liability under 18 U.S.C. §2255 for the settlement of any monetary claims that might be made by alleged victims identified by the USAO (the "identified individuals"). Mr. Epstein is precluded from contesting liability as to civil lawsuits seeking monetary compensation for damages for those identified individuals who elect to settle the civil claims for the statutory minimum of either $50,000 (the amount set by Congress as of the date of the occurrences) or $150,000 (the amount currently set by statute) or some other agreed upon damage amount. Mr. Epstein must pay for the services of the selected attorney representative as long as they are limited to settling the claims of the identified individuals.

The implementation of the terms of the Agreement was just as contentious as was the drafting and negotiation this portion of the Agreement. The first major obstacle was a direct result of Ms. Villafana's improper attempt to appoint, Mr. Bert Ocariz, a close, person friend of her boyfriend's for the role of attorney representative. We objected in the strongest terms to such an appointment due to our serious concerns regarding the lack of independence of this and the appearance of impropriety caused by this choice. As a result, the USAO drafted an addendum to the Agreement. This addendum provides for the use of an independent third party to select the attorney representative and also specifies that Mr. Epstein is not obligated to pay the cost of litigation against him. Upon the decision that we would appoint an independent party to choose the attorney representative, we were engaged in consistent and constant dialogue with your staff as to the precise language that would be transmitted to the independent party to explain his or role.

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 5

At each juncture, the inclusion of a civil remedy in the Agreement has resulted in unending debates and disagreements with respect to the appropriate manner in which to implement the terms of the Section 2255 component. The main issues that have arisen since the drafting and execution of the final agreement include the process for the selection of an attorney representative; the scope of Mr. Epstein's waiver of liability and jurisdiction; the role of the attorney representative; the language contained in various drafts of the letter to the independent third party; the correct amount of minimum damages pursuant to Section 2255; the extent and substance of communications between the witnesses and alleged victims and the USAO and the FBI, particularly with respect to the settlement process; the language contained in the letters proposed to be sent to the alleged victims; and the extent of continued federal involvement in the state procedures of Mr. Epstein's state plea and sentence.

Notably, neither Section 2255, nor any other civil remedy statute, has been used as a prerequisite to criminal plea agreement and it is clear that the use of these terms creates unanticipated issues. Furthermore, the waiver of rights of which the USAO insisted is also not a traditional aspect of criminal resolutions. While we were reluctant and cautious about a Non-Prosecution Agreement in which a *criminal* defendant gives up certain rights to contest liability for a *civil* settlement, we did not believe there was room for contention given the USAO's, and specifically, Ms. Villafana's ultimatums that required that we acquiesce to these unprecedented terms.

### Concerns Regarding Section 2255

Mr Epstein unconditionally re-asserts his intention to fulfill and not seek to withdraw from or unwind the Agreement previously entered. He raises important issues regarding the implementation of the 2255 provisions not to unwind the provisions or invalidate the Agreement but instead to call attention to serious matters of policy and principles that you are requested to review.

As you will see below our main policy-related concerns are (1) the inclusion of Section 2255, a civil remedies statutes in a criminal plea agreement, (2) the blanket waiver of jurisdiction and liability as to certain unidentified individuals to whose claims the government has asserted they take no position, and (3) any communications between federal authorities, including your staff and the FBI, and witnesses and alleged victims and the nature of such communications. With respect to the interpretation of the terms of the Agreement, we do not agree with your Office's interpretation of the expansive scope of Mr. Epstein's agreement to waive liability and jurisdiction. Nor do we agree with your Office's view of the expansive role of the attorney representative. Below, I describe first, the policy implications and the practical problems that these terms have created or will create. Second, I describe points of contention as to the interpretation of various terms of the Section 2255 component of the Agreement.

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 6

## I. Policy Considerations

The inclusion of Section 2255 in a criminal plea agreement is unprecedented and raises significant policy-related concerns. Some of these issues can create and have created problems as to the ability of this component to (1) maintain the integrity and independence of the USAO, (2) serve its purpose, namely to provide fair and appropriate recovery to any victims in a prompt fashion, and (3) protect the rights of the defendant. While we appreciate your consideration of our concerns described below, we are also confident that your commitment to justice and integrity will cause you to consider any additional policy and ethical issues that the Section 2255 component raises.

### A. Government Involvement

The inclusion of Section 2255, a purely civil remedy, raises the risk of excessive government interference in private, civil matters. As Mr. Whitley states in his opinion, "... .unnecessary entanglement of the government in such cases and the use of federal resources could improperly influence such cases and create the appearance of impropriety." It is well established that the government should refrain from getting involved in lawsuits. However, to include Section 2255 in a federal agreement inherently exacerbates the risk of federal involvement in civil litigation and thus far, in practice, the inclusion of this statute, as opposed to the creation of a restitution fund, has resulted in continued federal involvement in this matter.

Federal criminal investigators and prosecutors should not be in the business of helping alleged victims of state crimes secure civil financial settlements as a condition precedent to entering non-prosecution or deferred prosecution agreements. This is especially true where the defendant is pleading to state crimes for which there exists a state statute allowing victims to recover damages. *See* Florida Statutes § 796.09. The fact that state law accounts for the ability of victims to recover truly eliminates the need for a waiver of liability under a federal statute.

Furthermore, the vehicle for the financial settlement under the Agreement requires restitution in a lump sum without requiring proof of actual injury or loss federal authorities should therefore be particularly sensitive to avoid causing a prejudiced and unfair result. Section 2255 is a civil statute implanted in the criminal code that in contrast to all other criminal restitution statutes fails to correlate payments to specific injuries or losses and instead presumes that victims under the statute have sustained damages of at least a minimum lump sum without regard to whether the complainants suffered actual medical, psychological or other forms of individualized harm. We presume that it is for this reason that Section 2255 has never before been employed in this manner in connection with a non-prosecution or deferred prosecution agreement.

RFP MIA 000030

## KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 11, 2007
Page 7

Mr. Epstein's blanket waiver of liability as to civil claims gives the appearance of impropriety. While your Office has, on several occasions, asserted that they take no position as to the claims of the individuals it identifies as "victims," the fact that they continue to promote the award of a civil settlement to these individuals is problematic. As you know, government contracts and plea agreement must not diminish or undermine the integrity of the criminal justice system. *See U.S. v. McGovern*, 822 F.2d 739, 743 (8th Cir. 1987) ("A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement and in accepting or rejecting the plea."). The requirement that Mr. Epstein blindly sacrifice his rights, as a civil litigant, to contest allegations made against him seem to contradict the principles of justice and fairness that are embedded in the tenets of the United States Attorney's Office.

I also assert that on both a principled and practical level, the mere involvement of your Office in the matter with respect to civil settlement is inappropriate. Even though we understood from you that federal involvement in this matter would cease after the attorney representative was selected, your Office continues to assert their obligation to be in contact with the alleged victims in this matter. Had we agreed to a restitution fund for the victims instead of the civil remedies provision, we would not have objected to your Office's communications with these individuals. However, because the alleged victims have the ability to recover damages based on a civil claim pursuant to the Agreement, we are concerned with your Office's ongoing efforts to stay involved in this matter. Contact with federal authorities at this point can only invite the possibility for impermissible or partial communications. Most recently, your Office sent us drafts of a letter that your Office proposed to send to the alleged victims (the "victim notification letter"). While the revised draft of this letter states that victims should contact the State Attorney's Office for assistance with their rights, there is no phone number provided for the office and instead, the letter provides the telephone number and an invitation to contact Special Agent Nesbitt Kuyrkendall of the FBI. Indeed, the letter as currently drafted invites not only contact between your Office and the victims, it also asserts that federal witnesses may become participants in a state proceeding, thus federalizing the state plea and sentencing in the same manner as would the appearance and statements of a member of your Office or the FBI.[2]

---

[2] We are concerned with the fact that some of the victims were previously notified, as Mr. Jeffrey Sloman states in his letter of December 6 letter. In your letter of December 4, you state that you would not issue the Victim Notification Letter until December 7. Thus, it is troubling to learn that some victims were notified prior to that date. Please confirm when the victims were notified, who was notified, the method of communication for the notification, and the individual who notified them.

RFP MIA 000031

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 8

The proposed victim notification letter asserts that the federal "victims" have the right to appear at Mr. Epstein's plea and sentence or to submit a written statement to be filed by the State Attorney. However, as agreed to in the federal non-prosecution Agreement, Mr. Epstein will be pleading to *state charges* and he will be sentenced for the commission of *state offenses*. The "victims" the government identifies relate only to the federal charges for which Mr. Epstein was under investigation. The draft victim notification letter cites Florida Statutes §§ 960.001(k) and 921.143(1) as the authority for allowing the alleged victims to appear or give statements, however these provisions apply only to "the victim of the crime for which the defendant is being sentenced . . ." Thus Florida law only affords victims of state crimes to appear or submit statements in criminal proceedings and the state charges for which Mr. Epstein will be sentenced are not coextensive with the federal investigation. Further, any questions at this point involving the charges against Mr. Epstein or the proper state procedures under which he will plead or be sentenced are appropriately made to the State Attorney's Office.

Continued federal involvement in this matter has led to an impropriety that was unanticipated as well. Ms. Villafana attempted to manipulate the terms of Mr. Epstein's settlement so that persons close to her would personally profit. Ms. Villafana inappropriately attempted to nominate Bert Ocariz for attorney representative, despite the fact that Mr. Ocariz turns out to be a very good personal friend of Ms. Villafana's boyfriend, a fact she assiduously kept hidden from counsel. We requested alternate choices immediately, but were told that Mr. Ocariz had been informed of the charges the government would bring against Epstein and in response, he asked in an e-mail whether his fees would be capped. Needless to say, we were alarmed that Ms. Villafana would attempt to influence the settlement process on such improper grounds. And even after the USAO conceded that it was inappropriate for its attorneys to select the attorney representative, Ms. Villafana continued to improperly lobby for Mr. Ocariz's appointment. On October 19, 2007, retired Judge Edward B. Davis, who was appointed by the parties to select the attorney representative, informed Mr. Epstein's counsel that he received a telephone call from Mr. Ocariz directly requesting that Judge Davis appoint him as the attorney representative in this matter. Although it is unclear how Mr. Ocariz even knows that Judge Davis has been chosen to administer the settlement process, it can only be understood as Ms. Villafana's attempts to compromise the fairness of the settlement process.

B. **Integrity of the Process and the Legitimacy of the Claims**

The waiver of liability Mr. Epstein must make in relation to Section 2255 endangers the legitimacy of the claims made by the alleged victims. There is a heightened risk that the alleged victims will make false and exaggerated claims once they are informed of Mr. Epstein's waiver under Section 2255 for the settlement of claims pursuant to the Agreement. Indeed, Mr. Whitley states, ". . .the Department [of Justice] should consider developing processes and procedures to ensure that the investigative process is insulated from such risks." It is also well settled that witnesses cannot be given any special treatment due to the fact that it may affect the reliability of

RFP MIA 000032

KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 11, 2007
Page 9

their testimony. Any and all communications between the federal authorities and the alleged "victims" and witnesses in this matter has the ability to influence the reliability of the testimony obtained and the validity of the civil settlements that result.

Thus, there is still a real concern that some of the statements that federal prosecutors relied upon in its prosecution of this matter may have been tainted. An inquiry is required to confirm that at the time witness statements were given, there were no communications made by federal agents regarding potential civil remedies. The government should not provide promises of guaranteed monetary settlements to encourage cooperation because they run the risk of seriously tainting the reliability of witness statements. While we by no means are accusing your Office of making improper communications at this point the fact that the award of a civil settlement, without any requirement to prove liability, is available to the identified individuals, raises cause for concern as to the nature of all communications that are made to the 'victims.'

You previously stated that the USAO's main objective with respect to the Section 2255 component of the Agreement was to "place the victims in the same position as they would have been had Mr. Epstein been convicted at trial." However, to accomplish this goal, your Office rejected using traditional terms that allow for the restitution of victims. Instead, your Office chose to insert itself into the negotiations, settlement, and potential litigation of a civil suit. With all due respect, we object to your Office's attempt to make the victims whole by requiring that Mr. Epstein deprive himself of rights accorded to him as a potential civil defendant. While we are aware one of the responsibilities of your Office is to provide for restitution for victims of crimes, this does not give the government the responsibility to enable alleged victims to collect a civil settlement.

Despite this concern, it should also be noted that, the Agreement, both as written and as interpreted by your Office significantly enlarges the victims' ability to recover from Mr. Epstein. For instance, if the individuals attempted to litigate against Mr. Epstein, they would have been determined to be victims only after a lengthy trial, in which they would have been thoroughly deposed, their credibility tested and their statements subject to cross-examination. The defendant, under these circumstances, would not have had pay the plaintiffs' legal fees. Moreover, these individuals would face significant evidentiary hurdles, unwanted publicity, and most importantly, no certainty of success on the merits. Therefore, the notion that your Office is merely attempting to restore these "victims" to the same position as they would have been had Mr. Epstein been convicted at trial misunderstands the Agreement and your Office's implementation of its terms.

C.  **Rights of a Defendant**

Requiring Mr. Epstein to make a blanket waiver of liability and jurisdiction as to unidentified victims whose claims to which the government takes no position can be construed as

RFP MIA 000033

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 10

violative of his Due Process rights. Furthermore, the fact that the statute at issue in this matter does not connect harm to the minimum amount available to the victim and simply includes a lump sum exacerbates the potential for injustice and an abridgement of Mr. Epstein's rights. At the very least, Mr. Epstein should be given the right to know the identity of the victims and the evidence upon which each one was identified as a victim by the government.

The USAO has provided no information as to the specific claims that were made by each identified individual, nor were we given the names or ages of the individuals or the time-frame of the alleged conduct at issue. The USAO's reluctance to provide Mr. Epstein with any information regarding the allegations against him leaves wide open the opportunity for misconduct by the federal investigators and eliminates the ability for Mr. Epstein and/or his agents to verify that the allegations at issue are grounded in factual assertions and real evidence. Indeed, the requirement that a target of federal criminal prosecution agree to waive his right to contest liability as to unnamed civil complainants creates at minimum an appearance of injustice, both because of the obvious Due Process concerns of waiving rights without notice of even the identity of the complainant and because of the involvement of the federal criminal justice system in civil settlements between private individuals. We reaffirm the right to test the veracity of the victims' claims as provided to us in the letter from you to Judge Davis dated October 25, 2007.

It has recently come to our attention that your staff has identified ▓▓▓▓▓ as a "victim" for purposes of Section 2255 relief. ▓▓▓▓▓ who initially and repeatedly refused to cooperate with federal authorities during the course of the investigation, only submitted to an interview after she was conferred with a grant of immunity. Surely this is not a demand typically made by someone who is a crime "victim". Moreover, ▓▓▓▓▓ sworn testimony does not suggest that she is a victim. ▓▓▓▓▓ has not only admitted that she lied to Mr. Epstein about her age claiming she was 18 years old, but that she counseled others to lie to Mr. Epstein in the same manner. ▓▓▓▓▓ also states that Mr. Epstein was clear with her that he was only interested in "women" who were of age and that most of the young women she brought to his home were indeed over 18 years of age. Moreover, while ▓▓▓▓▓ claims to have provided massages to Mr. Epstein, she does not allege to have engaged in sexual intercourse with Mr. Epstein; does not claim she provided him with oral sex; does not purport that Mr. Epstein penetrated her in any manner; denies Mr. Epstein ever used a vibrator, massager, or any type of "sex toy" on her; denies he touched her breasts, buttocks, or vagina; and states that she never touched Mr. Epstein's sexual organs — nor was she asked to do so by Mr. Epstein. Without a right to contest the liability of claims, ▓▓▓▓▓ will likely receive far more in civil damages than what would be she would have had Mr. Epstein been convicted.

In addition, the Agreement with the USAO only defers federal prosecution of Mr. Epstein; it does not assert a declination to prosecute, as was first contemplated in the negotiation of the Agreement. Any payments made and/or settlement agreements reached with the alleged

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 11, 2007
Page 11

victims prior to the foreclosure of any future federal prosecution carries the potential of being used as evidence against Mr. Epstein. Thus, to protect his rights as a defendant, Mr. Epstein should not be required to pay any of the alleged victims until after the threat of prosecution no longer exists.

## II. Misinterpretations of the Agreement

The contentiousness caused by the implementation of the Section 2255 portion of the Agreement has also been caused by what we believe are misinterpretations of the terms by your Office. These problems, which I describe below, are a practical outgrowth of the fact that civil settlement, as opposed to restitution, is considered in the Agreement.

### A. Role of the Attorney Representative

The USAO has improperly emphasized that the chosen attorney representative should be able to litigate the claims of individuals, which violates the terms, and deeply infringes upon the spirit and nature of, the Agreement. However, after the parties agreed to the appointment of an independent third party to select the representative, the government announced that the criteria for choosing an appropriate attorney representative would include that they be "a plaintiff's lawyer capable of handling multiple lawsuits against high profile attorneys." This interpretation of the scope of the attorney representative's role is far outside the common understanding that existed when we negotiated Mr. Epstein's settlement with the USAO. Moreover, we have made the USAO aware of the potential ethical problems that would arise should the selected representative be allowed to litigate *and* settle various claims against Mr. Epstein. The initial draft victim notification letter contained language that confirmed your Office's interpretation and indicated that Mr. Podhurst and Mr. Josefsberg, the selected attorney representatives, may "represent" the identified individuals. This language assumes that the selected representatives will agree to serve in the capacity envisioned by the USAO, which we believe is patently incorrect. To suggest this notion in a letter to victims who have limited or no knowledge of the ethical principles at issue will only lead to confusion, misunderstanding and disappointment among the identified individuals when they learn that such representation is foreclosed.

### B. Scope of Mr. Epstein's Waiver

Your Office has taken the position that Mr. Epstein waives liability beyond the settlement of claims and that he will waive liability even in lawsuits brought by the identified individuals. However, this overstates the scope of Mr. Epstein's waiver pursuant to the Agreement. Mr. Epstein has only agreed that he will waive the right to contest liability and jurisdiction for the purpose of settling claims with the alleged victims pursuant to Sections 7 through 8 of the Agreement and Addendum. Mr. Epstein has no obligation to waive this right to contest liability

RFP MIA 000035

## KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 11, 2007
Page 12

in any claim for damages -- by an enumerated "victim" or anyone else – where that party fails to settle her claims pursuant to the terms of the Agreement. The revised draft of the letter avoids this misinterpretation and directly quotes Paragraphs 7, 8, 9 and 10 of the Agreement. While we do not have any objection to including this portion of the Agreement in the proposed letter, we request that Paragraphs 7A, 7B, and 7C of the Addendum to the Agreement also be included because the language contained there in most clearly outlines the scope of Mr. Epstein's obligation to pay damages under the Agreement.

### C. Right of the Alleged Victims to Be Notified

As we have expressed to you previously, we do not agree with your Office's assertion that it is either an obligation and even appropriate for the USAO to send a victims notification letter to the alleged victims. The Justice for All Act of 2004 only contemplates notification in relation to available restitution for the victims of crimes. However, since Section 2255 is only one of many civil remedies, there is no requirement that the USAO inform alleged victims pursuant to the Justice for All Act of 2004. Notably, if the USAO had agreed to include a restitution fund in the Agreement as opposed to a civil remedy statute, the alleged victims would have the right to be notified pursuant to the relevant Act.

Further, we note that the reasons you cite in favor of issuing the proposed Victims Notification letter in your correspondence of December 4 are also inapplicable to this scenario. For instance, you cite 18 U.S.C. § 3771 for the proposition that your Office is obligated to provide certain notices to the alleged victims. However, 18 U.S.C. § 3771(a)(2) & (3) provide:

> A crime victim has the following rights:
>
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, *involving the crime* or any release or escape of the accused.
>
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at the proceeding.

(emphasis added). Your interpretation of § 3771 is erroneous because the rights conferred by the statute indicate that these rights are for the notification and appearance at public proceedings involving the crime for which the relevant individual is a victim. As you know, the public proceeding in this matter will be in state court for the purpose of the entry of a plea on state charges. Therefore, 18 U.S.C. § 3771 clearly does not apply to "victims" who are not state "victims." You additionally cite your Office's obligations under § 3771(c)(1) of the Justice for All Act of 2004. However, this subsection relates back to the "rights described in subsection (a)." Thus, since the rights set forth in subsection (a) only apply to the victims of the crimes for

RFP MIA 000036

## KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 11, 2007
Page 13

which the public proceeding is being held, the individuals identified by your Office have no rights to notification or appearance under this Act.

You further cite 42 U.S.C. § 10607(c)(1)(B) and (c)(3) which, you state, obligates your Office to inform victims of "any restitution or other relief" to which that victim may be entitled and of notice of the status of the investigation; the filing of charges against a suspected offender; and the acceptance of a plea. Although we do not believe this applies here for the same reasons stated above, we further assert that your proposed Victims Notification letter seeks to go beyond what is prescribed under 42 U.S.C. § 10607. Indeed, there is nothing in the statute that requires your Office to solicit witness testimony or statements for the purposes of Mr. Epstein's sentencing hearing. Furthermore, we assert that any notification obligation you believe you have under this statute should be addressed by Judge Davis.

We submit to you based on the policy concerns of including a civil remedies statute in a criminal agreement and requiring the waiver of a defendants' rights under that agreement creates a host of problems that, in this case, have led to a serious delay in achieving finality to the satisfaction of all parties affected. We appreciate your consideration of these issues and hope that we can find a solution that resolves our concerns.

Sincerely,

Jay P. Lefkowitz