# EXHIBIT 91

Jay Lefkowitz/New York/Kirkland-Ellis
02/29/2008 03:11 PM

To
cc
bcc

Subject  Fw: Epstein

Dear Alex,

I received the attached email from Jeff Sloman this week and to put it mildly, I was shocked. As you will recall, back at the beginning of January, when we both agreed that there were significant irregularities with the deferred prosecution agreement, you called a time-out. You had decided to ask Drew's Office to take a look at the matter and suggested that we would be hearing him within days.

At that time, we welcomed the development -- especially given that we had reason to be concerned that some of the individuals in your Office were not acting appropriately in relation to this matter. In particular, we were very concerned that one of your prosecutors had given a substantial amount of information to a New York Times reporter -- telling him not only about specific aspects of our plea negotiations, but also sharing with him details about your Office's theory concerning what laws you believe Mr. Epstein has violated. In broad strokes, Mr. David Weinstein told Mr. Thomas that the Office was contemplating charging Mr. Epstein under Sections 2422(b) (with a full discussion of principal liability), 2423, and 1591. He also complained about Mr. Epstein's lawyers and told Mr. Thomas not to "believe the spin from Mr. Epstein's high priced attorneys." Mr. Weinstein even informed Mr. Thomas that we had "asked for privately paid armed guards" as part of a house arrest proposal we had made. Even more surprising, he subsequently told Mr. Thomas that we had learned of the conversation, complained about it and suggested an explanation. Needless to say, we were very troubled by these conversations.

At this same time, we agreed that in order to provide Drew a sufficient amount of time to evaluate the matter, it made sense to move the deadline for state plea to March, which we did. I was therefore quite surprised to receive, in rapid succession, a call from Drew asking to begin the review process and then only two days later, an email from Jeff informing me of new and extremely short and arbitrary deadlines.

The one thing I had become certain about in this case was that you were sincere in your desire to ensure that the DOJ took a proper and principled position with respect to this matter, and that you fully accepted our desire, and our right, to appeal any adverse decision by your Office to the DOJ. In fact, on several occasions -- including our meeting before Thanksgiving in your Office -- you stated precisely as much to me. That is why I am so surprised by Jeff's latest email. We are very interested in having the meetings you suggested with Drew. It would be very unfortunate to begin the review process that you have asked Drew to conduct and at the same time artificially constrict it. As you know, the timing of a thorough review would cause no prejudice to the government's prosecution of Mr. Epstein. To the contrary, we hope that our dialogue with Drew will allow for the government to make a more informed decision concerning this matter.

We have been waiting eagerly for a call from Drew for nearly two months. Now that he is prepared to meet with us, it is unfair for Jeff to seek to impose artificial deadlines. Since I will be in trial next week, we are planning to begin our meetings with Drew during the second week in March.

I sincerely hope we can resolve this matter in the near future. To be clear -- at this stage -- we are not asking for anything but the same due process that you promised to afford to us when we last spoke in early January.

Best, Jay

cc: Jeff

RFP MIA 000469