# EXHIBIT 122

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-80736-CIV-MARRA/JOHNSON

JANE DOE #1 AND JANE DOE #2,

    Petitioners,

v.

UNITED STATES OF AMERICA,

    Respondent.

---

**VICTIMS' RESPONSE TO GOVERNMENT'S "NOTICE TO COURT REGARDING ABSENCE OF NEED FOR EVIDENTIARY HEARING" AND MOTION FOR PRODUCTION OF NON-PROSECUTION AGREEMENT AND OF REPORT OF INTERVIEW**

COME NOW the Petitioners, Jane Doe #1 and Jane Doe #2 (the "victims"), by and through their undersigned attorneys to file this Response to the Government's document styled as "Notice to Court Regarding Absence of Need for Evidentiary Hearing" as follows:

INTRODUCTION

At the conclusion of the oral argument on the victims' petition, victims Jane Doe #1 and Jane Doe #2 joined the Government in expressing to the Court a desire to work out a set of stipulated facts regarding this case. Towards that end, the Government sent a proposed set of stipulated facts to the victims' counsel (Exhibit 1 to this pleading) and, in turn, the victims' sent a responsive letter raising concerns about some of the Government's proposed stipulated facts and suggesting some additions and modifications (Exhibit 2 to this pleading). The victims also requested copies of two relevant documents from the Government: (1) the Non-Prosecution

Agreement with defendant Epstein that is at the center of this litigation and (2) the FBI's report of interview concerning a meeting with Jane Doe #1. These requests were also made in several telephone conversations with the attorney for the Government. Remarkably, rather than respond to the victims' suggestions, the Government has now suddenly reversed course and filed a terse document claiming an "absence of a need" for an evidentiary hearing. If anything, however, the victims' discussions with the Government have made clear that the Court should not enter judgment for the Government but rather should enter immediate judgment for the victims that the Government violated their rights under the CVRA. The Court should then schedule a hearing to determine the proper remedy for the violation of the victims' rights.

In particular, the Government now apparently admits that the Non-Prosecution Agreement it struck with Epstein in September 2007 contained an "express confidentiality provision." *See* Exhibit 1 to this pleading, Government's Proposed Stipulated Facts, at page 3, paragraph 6. Assuming that the Government honored its agreement with the defendant (a fact that the victims have proposed to stipulate to), the Government could not have "conferred" with the victims about the proposed arrangement over the next nine months because doing so would have violated its confidentiality obligations with the defendant. As a result, the Government plainly has not afforded the victims' their right to "confer" about the proposed arrangement under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(a)(5). In addition, the Government effectively misled the victims that it had reached a Non-Prosecution Agreement with Epstein, plainly violating the victims' rights to be treated with "fairness" under the CVRA, 18 U.S.C. §3771(a)(8). The Court should therefore find that the victims' rights have been violated.

The Court should also order the Government to produce the Non-Prosecution Agreement

to the victims. The victims are entitled to know what disposition has been made in their case. Moreover, that Agreement purportedly contains provisions pertaining to the civil liability of Epstein for crimes he has committed against Jane Doe #1 and Jane Doe #2. Epstein obviously knows what those provisions are. The victims are entitled to see those provisions and the surrounding document as well.

The Court should also order the Government to produce a report of interview with Jane Doe #1 from about October 26, 2007, during which the Government apparently claims that it discussed the plea arrangement with the victims.

Finally, after these documents are produced to the victims and the Court enters judgment that the victims' rights have been violated, the Court should schedule a hearing to determine the appropriate remedy for the violations of the victims' rights.

## THE VICTIMS' PROFFERED FACTS

The Government's latest submission takes the position that "after consideration" it is now unnecessary to hold an evidentiary hearing. The Government apparently believes that the Court could rule in its favor based on just two submitted undisputed facts. In taking this position, the Government apparently believes that there are no set of facts that could sustain judgment for the victims. To the contrary, however, the available facts require judgment for the victims that their rights under the CVRA have been violated.

Having attempted to confer with the Government about the facts in this case, counsel for the victims respectfully submit the following – and more complete -- set of facts that, on information and belief, they could establish if given the opportunity to do so:

In 2006, at the request of the Palm Beach Police Department, the Federal Bureau of

3

Investigation opened an investigation into allegations that Jeffrey Epstein had used facilities of interstate commerce to induce young girls between the ages of thirteen and seventeen to engage in prostitution (among other offenses). The case was presented to the United States Attorney's Office for the Southern District of Florida, which accepted the case for investigation. Jane Doe #1 and Jane Doe #2 were victims of sex crimes committed by Epstein while they were minors.

The U.S. Attorney's Office's investigation soon revealed that Epstein had committed federal sex crimes against Jane Doe #1 and Jane Doe #2. This made Jane Doe #1 and Jane Doe #2 "victims" protected by the Crime Victim's Rights Act, 18 U.S.C. § 3771. Accordingly, the U.S. Attorney's Office arranged to have victim notification letters sent to Jane Doe #1 and Jane Doe #2. For example, on about June 7, 2007, Assistant U.S. Attorney A. Marie Villafaña sent a letter to Jane Doe #1 that began: "Pursuant to the [CVRA], as a victim and/or witness of a federal offense, you have a number of rights." The letter then listed the various rights of victims under the CVRA. The U.S. Attorney's Office would not have sent such a letter to Jane Doe #1 if it did not believe that she was a victim and was protected by the CVRA.

By mid-2007, the U.S. Attorney's Office had ample information to file an indictment against Epstein charging multiple federal sex offenses. It elected not to file an indictment but instead to engage in pre-indictment plea discussions with Epstein.

In September 2007, Epstein and the U.S. Attorney's Office reached an agreement blocking any federal prosecution of the federal offenses he had committed. This Non-Prosecution Agreement barred federal charges for Epstein's sex offenses in favor of prosecution by Florida, so long as several preconditions were met. Those included a conviction on a state sex offense that reflected that the victims were minors at the time the crimes occurred and that

would require sex offender registration. While the Agreement barred federal criminal prosecution, it envisioned that the victims would pursue a civil rights action against Epstein for his sexual offenses against them. Most important for present purposes, the Agreement contained an express confidentiality provision, which prevented the Government from disclosing the terms of the Agreement to the victims or others before it was consummated. The Agreement was subsequently modified in October and December 2007. The Agreement has several addenda that are relevant to the Agreement. (To date, although requested to do so, the Government has refused to provide to the victims the final Non-Prosecution Agreement or any of its earlier versions.) Through his attorneys, Epstein was aware of the confidentiality provision and of the fact that it would block the Government from conferring with the victims about the plea arrangement.

On about October 26, 2007, FBI Special Agents E. Nesbitt Kuyrkendall and Jason Richards met in person with Jane Doe #1 at a restaurant. The Special Agents explained that there had been discussions with Epstein about a possible resolution of the charges against him. Consistent with the express confidentiality provision in the Non-Prosecution Agreement, the Special Agents did not disclose that the arrangement would bar any federal prosecution of Epstein. Nor did the Agents disclose that the Non-Prosecution Agreement had been finalized. Jane Doe #1's reasonable perception of the meeting was that only the State part of the Epstein investigation had been resolved, and that the federal investigation would continue, possibly leading to a federal prosecution. (While the Government has a report of interview regarding this meeting with the victim that could confirm the victims' understanding of the facts, the Government has refused Jane Doe #1's request to see the report.)

5

Following the signing of the Non-Prosecution Agreement and the modifications thereto by the U.S. Attorney's Office for the Southern District of Florida, Epstein received an unusual benefit that the Government does not ordinarily provide to other criminal defendants: his performance was delayed while he was given an opportunity to seek higher level review within the Department of Justice in Washington, D.C.

On around January 10, 2008, Jane Doe #1 and Jane Doe #2 received letters from the FBI advising them that "[t]his case is currently under investigation. This can be a lengthy process and we request you continued patience while we conduct a thorough investigation." The FBI sent these letters, under the direction of the U.S. Attorney's Office, because it believed that the CVRA applied to Jane Doe #1 and Jane Doe #2. The FBI did not notify Jane Doe #1 or Jane Doe #2 that the Non-Prosecution Agreement had been concluded four months earlier. Jane Doe #1 and Jane Doe #2 reasonably understood that a federal criminal investigation of Epstein was on-going and that federal criminal charges were possibility. At the time, Jane Doe #1 and Jane Doe #2 believed that criminal prosecution of Epstein was extremely important. They also desired to be consulted by the FBI and/or other representatives of the federal government about the prosecution of Epstein. In light of the letters that they had received around January 10 (among other things), they reasonably believed that they would be contacted before the federal government reached any final resolution of that investigation.

In the spring 2008, Jane Doe #1 contacted the FBI because Epstein's counsel was attempting to take her deposition and private investigators were harassing her. Assistant U.S. Attorney A. Marie Villafaña secured pro bono counsel to represent Jane Doe #1 and several other identified victims in connection with the criminal investigation. Pro bono counsel was able to

6

assist Jane Doe #1 in avoiding the improper deposition. AUSA Villafaña secured pro bono counsel by contacting Meg Garvin, Esq. of the National Crime Victims' Law Institute in Portland, Oregon, which is based in the Lewis & Clark College of Law. During the call, Ms. Garvin was not advised about the Non-Prosecution Agreement.

In mid-June 2008, Mr. Edwards contacted Assistant U.S. Attorney Villafaña to inform her that he represented Jane Doe #1 and, later, Jane Doe #2. Mr. Edwards asked to meet to provide information about the federal crimes committed by Epstein, hoping to secure a significant federal indictment against Epstein. AUSA Villafaña and Mr. Edwards discussed the possibility of federal charges being filed. At the end of the call, AUSA Villafaña asked Mr. Edwards to send any information that he wanted considered by the U.S. Attorney's Office in determining whether to file federal charges. Because of the confidentiality provision in the Non-Prosecution Agreement, Mr. Edwards was not informed of the Agreement's existence. Mr. Edwards was also not informed that any resolution of the criminal matter was imminent.

On July 3, 2008, Mr. Edwards sent to AUSA Villafaña a letter, a true and correct copy of which is attached as Exhibit 3. In the letter, Mr. Edwards indicated his desire that federal charges be filed against defendant Epstein. In particular, he wrote on behalf of his clients: "We urge the Attorney General and our United States Attorney to consider the fundamental import of the vigorous enforcement of our Federal laws. We urge you to move forward with the traditional indictments and criminal prosecution commensurate with the crimes Mr. Epstein has committed, and we further urge you to take the steps necessary to protect our children from this very dangerous sexual predator." When Mr. Edwards wrote this letter, he still had not been made aware that a Non-Prosecution Agreement had been reached with Epstein.

On about July 3, 2008, Jane Doe #1 and Jane Doe #2 learned, through telephones conversations had between Mr. Edwards and AUSA Villafaña, that the U.S. Attorney's Office and Epstein might be in the process of finalizing some sort of plea arrangement. Accordingly, they filed an emergency motion seeking to protect their rights under the CVRA, including in particular their right to confer about the proposed plea arrangement.

Mr. Edwards – and thus his clients -- first learned of the Non-Prosecution Agreement on or after July 9, 2008, when the Government filed its responsive pleading to Jane Doe's emergency petition. That pleading was the first public mention of the non-prosecution agreement and the first disclosure to Mr. Edwards and his clients. Epstein, through his attorneys, knew that the victims had not been informed about the plea arrangement.

On July 9, 2008, AUSA Villafaña sent a victim notification to Jane Doe #1 via her attorney, Mr. Edwards, which is attached as Exhibit 6 to the Villafaña Declaration. That notification contains a written explanation of some of the terms of the Non-Prosecution Agreement between Epstein and the U.S. Attorney's Office. A full copy of the terms was not provided. This was the first time that Jane Doe #1 was told that the arrangement blocked any possibility of federal criminal charges being filed against Epstein. A notification was not provided to Jane Doe #2 because the agreement limited Epstein's liability to victims whom the United States was prepared to name in an indictment.

On July 11, 2008, the Court held a hearing on the victims' emergency motion. During the hearing, the Government discussed in open court various provisions of the Non-Prosecution Agreement. At the conclusion of the hearing, victims' counsel and the Government agreed to

8

confer in an effort to determine the undisputed facts of the fact. The Court took the motion under advisement.

On July 16, 2008, the Government sent to Mr. Edwards a proposed set of undisputed facts, which is attached to this pleading as Exhibit 1.

On July 17, 2008, Mr. Edwards sent a response to the Government, which is attached to this pleading as Exhibit 2. The response made various suggestions to the proposed undisputed facts. The response also requested a copy of the Non-Prosecution Agreement and the Report of Interview with Jane Doe #1.

On July 29, 2008, rather than attempt to work with victims' counsel to draft a set of undisputed facts, the Government filed its "Notice to Court Regarding Absence of Need for Evidentiary Hearing."

At all times material to this statement of facts, it would have been easily practical and feasible for the Federal Government to inform Jane Doe #1 and Jane Doe #2 of the details of any proposed plea agreement with Epstein, including in particular the details of the Non-Prosecution Agreement. The reason that AUSA Villafaña and the FBI agents acting with her did not provide this information to Jane Doe #1 and Jane Doe #2 was because of the express confidentiality provision that had been entered into by the Federal Government and Epstein. This provision was requested by Epstein. The Government was under no obligation to enter into such an arrangement and would have been statutorily forbidden from entering into such an arrangement by the CVRA's requirement that it "confer" with the victims about any disposition of their cases.

## THE GOVERNMENT SHOULD BE DIRECTED TO CONFER WITH THE VICTIMS REGARDING THE UNDISPUTED FACTS OF THE CASE

The Government should be directed to confer with the victims about the facts in this case, rather than allowed to obscure the facts with its proposed "notice" that an evidentiary hearing is unnecessary. The reason that the Government abruptly terminated discussions about the facts with the victims seem obvious: The facts, if revealed, would plainly demonstrate that the victims did not receive their right under the CVRA to confer with the Government and to be treated fairly. The victims will not repeat all of their arguments from their earlier pleadings but would simply highlight for the Court the point that this case already reeks of favored treatment for a billionaire sex offender who has substantial influence. Regardless of how the Court proceeds, it should at least do so on the basis of fully developed factual record so that the victims and the public can be assured that justice has been done.

If anything, the facts in this case now call for immediate judgment in favor of the victims. Based on the Government's proposed stipulated facts (Exhibit 1 to this pleading), it is now obvious that the Government could not have fulfilled its statutory obligations to confer with the victims. As now admitted by the Government, in September 2007, it had entered into a Non-Prosecution Agreement with Epstein containing what it describes as "an express confidentiality provision." While the Government has refused to disclose the text of this provision (or, indeed, the Non-Prosecution Agreement itself), it is apparent that the Government could not have conferred with the victims about the Agreement while abiding by the confidentiality provision.

Likewise it is now apparent that the Government has not fulfilled its statutory obligation to treat the victims with fairness. The Government reached the Non-Prosecution Agreement with

10

Epstein in September 2007, yet affirmatively concealed that Agreement from the victims through a series of misleading statements and representations over the next nine months. For example, on around January 10, 2008, Jane Doe #1 and Jane Doe #2 received letters from the FBI advising them that "[t]his case is currently under investigation. This can be a lengthy process and we request your continued patience while we conduct a thorough investigation." As the Government well knew, however, a Non-Prosecution Agreement had already been reached with Epstein at that time – a fact not disclosed in the letter.

The victims therefore request judgment in their favor that their rights under the CVRA have been violated. In the alternative, the victims request that the Court direct that the Government confer in good faith with the victims to attempt to reach a set of stipulated facts that might form the basis for a final ruling in this case. As part of this conference, the victims request that the Government indicate which (if any) of the proposed facts set forth above it disputes.

## THE GOVERNMENT SHOULD BE REQUIRED TO PRODUCE THE NON-PROSECUTION AGREEMENT

Remarkably, the Government has yet to disclose to the victims the very Non-Prosecution Agreement that lies at the heart of this case. This failure becomes even more curious when assessed against the Government's proposed stipulation of facts, which included the proposed fact that the victims had been told about the "full terms" of the Agreement. The proposed stipulated facts that the Government sent to the victims included this proposed stipulation:

> On July 9, 2008, AUSA Villafaña sent a victim notification to Jane Doe #1 via her attorney, Bradley Edwards, which is attached as Exhibit 6 to the Villafaña Declaration. That notification contains a written explanation of the *full terms* of the agreement between Epstein and the U.S. Attorney's Office.

Contrary to its own proposed stipulation, the Government has never disclosed to the victims the

11

"full terms" of its Non-Prosecution Agreement with Epstein. To protect the victims' right to be treated with fairness, 18 U.S.C. § 3771(a)(8), it should be required to do so now.

Congress' main concern in passing the CVRA was that crime victims were "treated as non-participants in a critical event in their lives. They were kept in the dark by prosecutors too busy to care enough ... and by a court system that simply did not have a place for them." 150 CONG. REC. S4262 (Apr. 22, 2004) (statement of Sen. Feinstein). To remedy this problem, Congress gave victims "the simple right to know what is going on, to participate in the process where the information that victims and their families can provide may be material and relevant ... ." *Id.* To date, Jane Doe #1 and Jane Doe #2 do not know what has happened to their case, because they have not been told how it has been resolved. Of course, no possible harm to the Government can come from the release of the Agreement, as this criminal matter is now concluded – at least from the Government's perspective.

Production of the Non-Prosecution Agreement is also warranted because it has provisions in it that are designed to benefit Jane Doe #1 and Jane Doe #2. As described by the Government, the Agreement contains provisions in it that preclude Epstein from contesting civil liability for the sex offenses committed against a number of the victims, including Jane Doe #1. Obviously, Jane Doe #1 cannot take advantage of this provision if her attorneys are not able to review it. Jane Doe #1 and Jane Doe #2 intend to file civil suits against Epstein within the next few days. Epstein knows what is in the Non-Prosecution Agreement that may be helpful to him. Jane Doe #1 and Jane Doe #2 are entitled to see the Agreement for items that may be helpful to them.

Finally, Epstein is apparently taking advantage of provisions in the Non-Prosecution Agreement to stall civil suits against him. For example, in *Jane Doe v. Epstein et al.*, No. 08-

12

80804-MARRA/JOHNSON (S.D. Fla. 2008), on July 25, 2008, Epstein filed a motion for a stay. That motion claims that the civil action is "a counterpart to a pending federal criminal action." The basis for that claim, so far as Jane Doe #1 and Jane Doe #2 can tell, is the federal Non-Prosecution Agreement. Epstein should not be permitted to use provisions in the Agreement to his advantage in private litigation without disclosing those provisions to the parties he is opposing. Indeed, as a simple matter of fairness to the victims, *see* 18 U.S.C. § 3771(a)(5) (victims right to "fairness"), the provisions should be disclosed.

In sum, the Court should direct the Government to reveal to the victims what it has done to resolve the case by ordering production of the full Non-Prosecution Agreement and any accompanying addenda to the agreement.

### THE GOVERNMENT SHOULD BE REQUIRED TO PRODUCE THE REPORT OF INTERVIEW WITH JANE DOE #1

The Government apparently has a report of interview indicating that two named FBI agents met with Jane Doe #1 on about October 26, 2007. The Government, however, has declined to produce it.

The Government should be directed to produce this information to Jane Doe #1. Of course, a criminal defendant would be entitled to such a report. *See* Fed. R. Crim. P. 16(a)(1)(A) & (B). As an innocent victim in this matter, Jane Doe #1 should be treated with at least the same consideration. *See* 18 U.S.C. § 3771(a)(8) (victim's right to "be treated with fairness"). Jane Doe #1 requested this report in her letter regarding the proposed stipulated facts (see Exhibit 2 to this filing), a request that the Government has simply ignored.

13

## AFTER ENTERING JUDGMENT FOR THE VICTIMS' ON THE VIOLATION OF THEIR RIGHTS, THE COURT SHOULD SCHEDULE A HEARING ON THE APPROPRIATE REMEDY

For the reasons just explained, the Court should enter judgment for Jane Doe #1 and Jane Doe #2 on the violations of their rights under the CVRA and order the Government to produce the Non-Prosecution Agreement and the report of interview with Jane Doe #1. After doing that, the question then arises as to what is the proper remedy for the violations of victims' rights.

To be clear, at this time, the victims seek two things: (1) a judicial declaration that the Government violated their rights under the CVRA and an apology from the Government; and (2) a hearing to discuss the appropriate remedy under the circumstances. At the same time, the victims are *not* asking to have any provision in the Non-Prosecution Agreement establishing liability in a civil suit to be vacated or declared invalid. Because the possible connection between these two things raises complex legal issues, the victims respectfully request that the Court order a hearing at which the appropriate remedy can be discussed. The victims also need to review the full text of the Non-Prosecution Agreement and any accompanying addenda to make an appropriate determination about the remedy that they wish to pursue.

## CONCLUSION

The Court should find that the Government violated Jane Doe #1 and Jane Doe #2's rights under the CVRA to confer and to be treated with fairness during the negotiation and consummation of the Non-Prosecution Agreement. In the alternative, the Court should direct the Government to confer with the victims regarding what facts are undisputed in this matter and, should material facts actually be disputed, hold an evidentiary hearing regarding those facts. So that the victims can discuss these matters with the Government, the Court should order the

Government to provide to the victims the full Non-Prosecution Agreement (and accompanying addenda) that is central to this litigation as well as a report of interview with Jane Doe #1 from about October 26, 2007. The Court should then hold a hearing on the proper remedy for the violations of the victims' rights.

DATED this 1st day of August, 2008.

Respectfully Submitted,

THE LAW OFFICE OF BRAD EDWARDS & ASSOCIATES, LLC

By: s/ Brad Edwards
Brad Edwards, Esquire
Attorney for Petitioners
Florida Bar No. 542075
2028 Harrison Street
Suite 202
Hollywood, Florida 33020
Telephone: 954-414-8033
Facsimile: 954-924-1530
E-Mail: be@bradedwardslaw.com

Paul G. Cassell
Attorney for Petitioners
Pro Hac Vice
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Facsimile: 801-585-6833
E-Mail: cassellp@law.utah.edu

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Brad Edwards
Brad Edwards, Esquire
Attorney for Petitioner
Florida Bar No. 542075

## SERVICE LIST

Jane Doe 1 and Jane Doe 2
Case No.: 08-80736-CIV-MARRA/JOHNSON
United States District Court, Southern District of Florida

Dexter A. Lee,
Assistant U.S. Attorney
99 N.E. 4th Street
Miami, Florida 33132
Telephone: 305-961-9320
Facsimile: 305-530-7139