GOVERNMENT

EXHIBIT

D

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Jay P. Lefkowitz, P.C.
To Call Writer Directly:
(212) 446-4970
lefkowitz@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

December 21, 2007

**VIA FACSIMILE (305) 530-6444**

Honorable R. Alexander Acosta
United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132

Re: *Jeffrey Epstein*

Dear Alex:

We again extend our appreciation for meeting with us on December 14 and for carefully considering the issues we have raised both at that meeting and in our submissions to your Office. Having received your letter of December 19, we can see that you have made a significant effort to address our concerns regarding the § 2255 portion of the non-prosecution agreement (the "Agreement"), and we recognize that you have proposed some substantial and important modifications. Respectfully, however, I would suggest that your proposal raises several troubling questions that require careful consideration. We are authoring this letter to respond to your request that we set forth our position regarding §§ 2255 and 3771 as quickly as possible.

As we have all discovered, the problem of integrating in an unprecedented manner what is at its core a $150,000 minimum lump sum damage federal civil statute (§ 2255 in its current form) into a federal deferred/non-prosecution agreement that requires pleas of guilty to state criminal offenses that are correlated to state criminal restitution statutes but not to a disparate federal civil non-restitution statute has proved very challenging. The concomitant problem of how fairly to implement the § 2255 portions of the Agreement so that real victims, if any, who in fact suffered "personal injury as a result of [the] violation" if any of specified federal criminal statutes such as 18 U.S.C. § 2422(b) are placed in the same position as if there had been a trial and conviction also requires serious and careful consideration. In this letter, I want to highlight some specific concerns. *See also* Whitley Opinion.

First, your proposal regarding the § 2255 remedy provisions continues to ask us to *assume* that each and every woman not only was a victim under § 2255, but that the facts alleged could have been proven to satisfy each element of either § 2422(b) (the Internet luring statute) or § 2423 (the sex-tourism statute), within § 2255 of Title 18. Although we have been denied the

Chicago       Hong Kong       London       Los Angeles       Munich       San Francisco       Washington, D.C.

RFP MIA 000041

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 21, 2007
Page 2

list of alleged "victims" (and lack definitive information as to which federal statutes would serve as a predicate for each particular alleged victim), or even a firm number as to how many you suggest there are, we strongly believe that the *provable* conduct of Mr. Epstein with respect to these individuals fails to satisfy the requisite elements of either 18 USC § 2422(b) (which we understand from prior discussions to be the principal predicate offense upon which the § 2255 provisions rely) or 18 USC § 2423(b) (another predicate of § 2255 that has been the subject of discussions between the parties). *See* Stern Opinion. We believe that the problem arises from the incongruity that exists when attempting to fit a federal civil remedies statute into a criminal plea agreement. Again, I note that this problem could have been avoided had the government opted instead for a restitution fund as we suggested.

Our knowledge of the "list" of alleged victims is limited. However a prototypical example of a witness whom the government has requested we compensate and we believe is inaccurately labeled as a "victim" of a federal crime is ▇▇▇▇ (whom we have been told remains on the government's "list"). The transcript of her interview with the Palm Beach Police over a year before the FBI became involved in any investigation shows that Ms. ▇▇▇▇ admitted to lying about her age, that she did not engage in sexual intercourse with Mr. Epstein, and that she was never induced over the telephone, computer or any other means of communication required by § 2422(b). In fact, Ms. ▇▇▇▇ came to Mr. Epstein's home on only one occasion. She testified that she was informed about the opportunity to give a massage to Mr. Epstein not on a telephone, computer or any other facility of interstate commerce, but rather in a face-to-face discussion with a third party who was her friend (Ms. ▇▇▇▇ and who told her to lie to Mr. Epstein about her age. As such, it is simply impossible to shoehorn this conduct into any of the above-discussed federal statutes.

In addition, Mr. Epstein did not know of Ms. ▇▇▇▇ before she actually came to his home, did not induce or persuade her to come by phone, did not speak to her at all by phone prior to her visit, did not induce or persuade Ms. ▇▇▇▇ to bring an underage girl to his residence, and did not otherwise violate either the federal statute § 2422(b) nor the travel for the purpose statute § 2423(b). Indeed, in her statement, Ms. ▇▇▇▇ testified: "Haley told me to say I was 18 because Haley said . . . if you're not then he [Epstein] won't really let you in his house. So I said I was 18." (▇▇▇▇ Sworn Statement at 38-39). In fact, there is no evidence that Mr. Epstein expected an underage girl to visit him prior to his regular travel to Florida, his home of fifteen years. Thus the travel could not have been for the purpose of having illegal sexual contact and § 2423(b) is no more available as a predicate for § 2255 recovery than is § 2422(b). Never having reached the threshold violations enumerated under of § 2255, Ms. ▇▇▇▇ would still have to prove that she suffered a personal injury. Further, unknown to Mr. Epstein at the time, Ms. ▇▇▇▇ represented herself to be 18 not only to him but also to the public on her web page where she posted a nude photo clearly looking at least 18 years old.

At the December 14 meeting, we also discussed ▇▇▇▇ as emblematic of our concerns surrounding the government's selection of "victims." As you are aware, Ms. ▇▇▇▇

KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 21, 2007
Page 3

was identified in previous correspondence as a person who remained on the Government's list of "victims" even after (at least according to Ms. Villafana's letter) the list was subjected to careful multi-party review. Ms. ████ sworn statement clearly reflects the fact that she is not a "victim" under § 2422(b). She plainly admits that she suffered no injury; the conduct was consensual; she lied to Mr. Epstein about her age; she instructed others to lie about their ages; there was no sexual contact between herself and Mr. Epstein at any time; and there was never any inducement over the telephone, computer or through any other means of interstate commerce. We ask that you consider the most relevant highlights from her testimony offered below:

- **Consent**

  A: I said, I told Jeffrey, I heard you like massages topless. And he's like, yeah, he said, but you don't have to do anything that you don't feel comfortable with. And I said okay, but I willingly took it off. (████ Sworn Statement at 10)

- **Lied About Her Age**

  A: ... I had a fake ID anyways, saying that I was 18. And she just said make sure you're 18 because Jeffrey doesn't want any underage girls. (████ Sworn Statement at 8)

  * * * * *

  A: ... of course, he thought I was 18... (████ Sworn Statement at 13)

- **Instructed Others to Lie About Their Ages**

  A: ... I would tell my girlfriends just like ████ approached me. Make sure you tell him you're 18. Well, these girls that I brought, I know that they were 18 or 19 or 20. And the girls that I didn't know and I don't know if they were lying or not, I would say make sure that you tell him you're 18. (████ Sworn Statement at 22)

- **No Sexual Contact**

  Q: He never pulled you closer to him in a sexual way?

  A: I wish. No, no, never, ever, ever, no, never. Jeffrey is an awesome man, no. (████ Sworn Statement at 21)

- **No Inducement**

  A: No, I gave Jeffrey my number. And I said, you know, any time you want me to give you a massage again, I'll more than welcome to. (████ Sworn Statement at 8)

## KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 21, 2007
Page 4

\* \* \* \* \*

> A: Every girl that I brought to Jeffrey, they said they were fine with it. And like, for instance, ▓▓▓ -- ▓▓▓ a lot of girls begged me to bring them back. They wanted to come back for the money. And as far as I know, we all had fun there. (▓▓▓ Sworn Statement at 45)

The sworn testimony of ▓▓▓ contains explicit denials from the alleged "victim" herself that she suffered any physical, emotional, or personal injury as required by the express language of § 2255. Further, the sworn testimony of Ms. ▓▓▓ contains a complete disavowal that Mr. Epstein or anyone on his behalf used a facility of interstate commerce to knowingly persuade, coerce, entice, or induce her to engage in sexual offenses as required by § 2422(b). Likewise, the transcript provides no basis for a § 2423(b) violation in that Mr. Epstein had a residence in Palm Beach for over 10 years at the time of these events, traveled to Palm Beach for a myriad of legitimate reasons ranging from medical appointments to business appointments having nothing to do with a sexual objective, and could not be legally charged with traveling to his own home particularly in the absence of any provable nexus between the travel and a dominant purpose to engage in illicit sexual conduct. Although Ms. Villafana informed us during the December 14 meeting that she had a telephone toll record showing an out-of-state call to or from Ms. ▓▓▓ phone to a phone number associated with Mr. Epstein, such a record fails to prove the content of the call, the identity of the communicators, whether the call discussed or resulted in a plan for Ms. ▓▓▓ to visit Mr. Epstein's residence, whether any inducement occurred on the out of state call or, more importantly for purposes of the sex tourism statute, whether any travel was planned to Florida or resulted from the phone call. Ms. ▓▓▓ testimony is that she believed that at any time she was called by Mr. Epstein or anyone on his behalf, Mr. Epstein was already in Florida. She also testified to the absence of any sexual contact other than topless massages (topless massages are lawful in Florida at age 16, unless the definition of prostitution is unnaturally expanded). A complete transcript of the federal interview of Ms. ▓▓▓ has previously been provided to you.

Your wish to put these women in the same position as they would have been had there been a federal conviction assumes they are each legitimate victims of at least one of the two specific federal crimes enumerated under § 2255. We respectfully have to disagree with that assumption, and even your current formulation of § 2255 would prejudice Mr. Epstein in this regard.

Second, your proposal also effectively deprives Mr. Epstein of his opportunity to test the validity of these womens' claims — claims that would have been extensively tested at trial. In light of what we have already learned about ▓▓▓ and ▓▓▓ it is inappropriate to deny Mr. Epstein and his counsel the right to test the merits of each of these womens' cases, in order to verify that they in fact suffered "personal injury" as required by § 2255 and to assess whether they are in fact victims of any violations of § 2422(b) or § 2423(b) as also required by

**KIRKLAND & ELLIS LLP**

R. Alexander Acosta
December 21, 2007
Page 5

§ 2255. Given your Office's informing us that Ms. ███ remained on a reduced list of federal "victims" and given our understanding that Ms. ███ as well was one of those who is also on the list of persons the Government contends were victims of Mr. Epstein's alleged violation of federal law, we have a principled concern about adopting your recommended language which would leave Mr. Epstein without a basis to challenge the good faith premise of an application to recover $150,000.

    **Third**, the Agreement, even if modified in accord with your December 19 letter, would put the witnesses in a better position than if Mr. Epstein had been federally prosecuted rather than in an equal position and, in fact, encourages the witnesses to make unfounded claims with impunity. Had there been a conviction, these women would have been thoroughly cross-examined, for the veracity of their statements, their credibility and the foundations, if any, for claiming personal injury. Also, Mr. Epstein would have received, pursuant to either Brady or Jencks, material in the form of prior inconsistent statements made by these women before they learned of any financial benefit that may be available to them—evidence that should be considered in determining the credibility of their application for a substantial civil recovery. Furthermore, Mr. Epstein would be without the means to challenge whether the claimant could make out a prima facie case that she was a victim of a violation by Mr. Epstein of § 2422(b) or any other federal statute—a denial of his rights that would insulate potential claimants such as Ms. ███ and Ms. ███ from any challenge on this element even if under other circumstances a challenge would result in a summary judgment in Mr. Epstein's favor under Fed. R. Civ. P. 56. Lastly, the modified language recommended by you presupposes that Mr. Epstein would have been charged and convicted of substantive violations rather than charged and convicted of a conspiracy allegation. Conspiracy convictions are not amongst the predicates enumerated by § 2255 and do not, without more, result in the basis for a determination of "personal injury". Since our request to view the draft indictment was rejected on December 14, we have no means to know what it contained by way of allegations.

    **Fourth**, I want to respond to several statements in your letter that we believe require immediate correction. With regard to your first footnote, I want to be absolutely clear. We do not believe for one moment that you had prior knowledge of the AUSA's attempt to require us to hire the friend of her live-in boyfriend, and pay his fees on a contingency basis to sue Mr. Epstein. We realize you corrected that irregular situation as soon as you discovered it. We thought this was precipitated by our complaint, but have no real knowledge as to the timing of events. Furthermore, your letter also suggests that our objection to your Office's proposed victims notification letter was that the women identified as victims of federal crimes should not be notified of the state proceedings. That is not true, as our previous letter clearly states. Putting aside our threshold contention that many of those to whom 3771 notification letters are intended are in fact not victims as defined in the Attorney General's 2000 Victim Witness Guidelines—a status requiring physical, emotional or pecuniary injury of the defendant—it was and remains our position that these women may be notified of such proceedings but since they are neither witnesses nor victims to the state prosecution of this matter, they should not be informed of

## KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 21, 2007
Page 6

fictitious "rights" or invited to make sworn written or in-court testimonial statements against Mr. Epstein at such proceedings, as Ms. Villafana repeatedly maintained they had the right to do. Additionally, it was and remains our position that any notification should be by mail and that all proactive efforts by the FBI to have communications with the witnesses after the execution of the Agreement should finally come to an end. We agree, however, with your December 19 modification of the previously drafted federal notification letter and agree that the decision as to who can be heard at a state sentencing is, amongst many other issues, properly within the aegis of state decision making.

Your December 19 letter references Professor Dershowitz's position on the inapplicability of Florida Statute § 796.03. Professor Dershowitz made such arguments in the context of saying that he had been unable to discern, after great effort, and supported by years of experience, any basis for the application of § 2422(b) or other federal sex statutes to Mr. Epstein's conduct and that the federal statutes required more of a stretch to fit the facts than the proposed state statute to which Ms. Villafana wanted Mr. Epstein to plead. Professor Dershowitz also stated that Ms. Villafana had represented that it was she who had the facts to support, both the threatened federal charges of § 2422 and/or § 2423 and the proposed state charge of § 796.03 (which the parties understood to be the state charge of soliciting a minor, as Ms. Villafana's last letter clearly states). Only last week we learned for the first time that Ms. Villafana did not realize that the charge was actually for "procuring" not "soliciting". The charge (a pimp statute) of procuring a prostitute for a third party for financial gain is one for which Ms. Villafana now states she does not have the facts to support.

Furthermore, you suggest that we have purposefully delayed the date of Mr. Epstein's plea and sentencing in breach of the Agreement and now seek an "11th hour appeal" in Washington. I believe we have already responded to this objection satisfactorily, both in our discussion earlier this week and in the email I sent to you two days ago in which I specifically addressed this issue. Indeed, any impediment to the resolution at issue is a direct cause of the disagreements between the parties as to a common interpretation of the Agreement, and we have at all times made and will continue to make sincere efforts to resolve and finalize issues as expeditiously as possible. In fact, since the initiation of negotiations between Mr. Epstein's counsel and your Office, we have always proceeded in a timely manner and made several efforts to meet with the attorneys in your Office in person when we believed that a face-to-face meeting would facilitate a resolution.

Finally, the suggestion by your staff that you hold Mr. Epstein in breach of the Agreement by his failure to plea and be sentenced on October 26, 2007 is directly contradicted by Mr. Sloman's e-mail to me dated October 31 in which he states, "Your understanding from Jack Goldberger conforms to my understanding that Mr. Epstein's plea and sentence will take place on the same day. I understand that the plea and sentence will occur on or before the January 4th date." This has been our common understanding for some time, which we have now

KIRKLAND & ELLIS LLP

R. Alexander Acosta
December 21, 2007
Page 7

reiterated several times. With that said, please be advised that we are working for a quick resolution and do not seek to delay the proceedings.

Thank you again for your time and consideration. We look forward to your response to the concerns we have raised that have not yet been addressed.

I wish you a very happy and a healthy new year.

Sincerely,

Jay P. Lefkowitz

cc: Honorable Alice Fisher, Assistant Attorney General
Jeffrey H. Sloman, First Assistant U.S. Attorney

RFP MIA 000047