GOVERNMENT

EXHIBIT

K

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Kenneth W. Starr
To Call Writer Directly:
(213) 680-8440
kstarr@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

November 28, 2007

**VIA FACSIMILE**

Honorable Alice S. Fisher
Assistant Attorney General
Department of Justice
Criminal Division
950 Pennsylvania Avenue NW
Room 2107
Washington, DC 20530

Re:   *Jeffrey Epstein*

Dear Ms. Fisher:

I represent Jeffrey Epstein, who, as you may be aware, was the target of a dual investigation by both state and federal authorities in Florida for acts relating to his interactions with numerous young women. As you may also be aware, Mr. Epstein has entered into a Deferred Prosecution Agreement (the "Agreement") with the United States Attorney's Office for the Southern District of Florida (the "USAO") to resolve its criminal investigation of him. I am writing to request a meeting with you to discuss certain aspects of this case that I find especially troublesome.

As part of the agreement Mr. Epstein was required to sign to avoid a federal indictment, Mr. Epstein was required to waive jurisdiction and liability under 18 U.S.C. §2255 for the settlement of monetary claims that might be made by a group of unidentified alleged victims who will be identified by the USAO at some point in the future. Neither I, nor any of the other defense lawyers involved in this matter, have ever heard of such a procedure. And as part of this Agreement, Mr. Epstein is precluded from contesting liability as to civil lawsuits seeking monetary compensation for damages brought by any of the identified individuals who elect to settle their civil claims for the statutory minimum of either $50,000 (the amount set by Congress as of the date of the occurrences) or $150,000 (the amount currently set by statute) or some other agreed upon damage amount. We believe that the utilization of 18 U.S.C. § 2255 as a precondition of criminal plea agreements or non-prosecution agreements is highly unusual and requires careful consideration and additional guidance by your Office. We also believe that the

## KIRKLAND & ELLIS

Honorable Alice S. Fisher
November 28, 2007
Page 2

manner in which the USAO has interpreted the settlement process for these identified individuals under the Agreement requires guidance. These areas are more fully detailed below.*

*First.* Federal criminal investigators and prosecutors should not be in the business of promoting civil lawsuits as a condition precedent to entering non-prosecution or deferred prosecution agreements. This is especially true where the vehicle for the financial settlement under the Agreement requires payment in a lump sum without requiring proof of actual injury or loss — federal authorities should therefore be particularly sensitive to avoid causing a prejudiced and unfair result. 18 U.S.C. § 2255 is a civil statute implanted in the criminal code; in contrast to all other criminal restitution statutes, § 2255 fails to correlate payments to specific injuries or losses. Instead, the statute presumes that victims have sustained damages of at least a minimum lump sum without regard to whether the complainants suffered actual medical, psychological or other forms of individualized harm. We presume that it is for this reason that 18 U.S.C. § 2255 has never before been employed in this manner in connection with a non-prosecution or, as here, a deferred prosecution agreement. In short, the USAO is operating in uncharted territory.

*Second.* 18 U.S.C. § 2255 creates the potential for compromising witness testimony. Although generally the Government may promise or provide traditional consideration to potential witnesses, employing a civil statute that promises a lump sum payment to potential witnesses without proof of actual liability or damage provides an extraordinary incentive that is incompatible with the truth-seeking functions of the criminal justice system. Guidelines or other policy directives should be considered to control the extent to which witnesses are informed by investigators about the availability of such financial windfalls. Additionally, an inquiry is necessary in this specific case to assure that disclosures to potential witnesses did not undermine the reliability of the results of the federal criminal investigation of Mr. Epstein.

*Third.* The USAO has provided no information as to the specific claims made by each identified individual, nor were we provided the names or ages of those individuals or the time-frame of the alleged conduct. The USAO's reluctance to provide Mr. Epstein with *any* information with respect to the allegations against him leaves wide open the opportunity for misconduct by federal investigators. In addition, this information vacuum eliminates the ability for Mr. Epstein and/or his agents to verify that the allegations at issue are grounded in real evidence. Indeed, the requirement that a target of federal criminal prosecution agree to waive his right to contest liability as to *unnamed* civil complainants creates at minimum an appearance of injustice, both because of the obvious Due Process concerns of waiving rights without notice of

---

\* In addition to the areas identified below, it was and remains our position that federal prosecution of this matter is entirely inappropriate based on the prior application and legislative histories of the relevant federal statutes.

## KIRKLAND & ELLIS

Honorable Alice S. Fisher
November 28, 2007
Page 3

even the identity of the complainant(s) and because of the involvement of the federal criminal justice system in civil settlements between private individuals.

*Fourth.* The USAO has improperly insisted that the chosen attorney representative should be able to litigate the claims of individuals, which violates the terms of the Agreement and deeply infringes upon the spirit and nature of the Agreement. Initially, for the sake of expediting a settlement in this matter, we suggested that Mr. Epstein establish a restitution fund specifically for the settlement of the identified individuals' civil claims and that an impartial, independent representative be appointed to administer that fund. Notably, such a restitution fund was created in a federal case, *U.S. v. Boehm*, Case No. 3:04CR00003 (D. Alaska 2004). The federal prosecutors here rejected this idea, and they insisted that an attorney representative, paid for by Mr. Epstein, be appointed. Yet, there was no suggestion at the time that the attorney representative's duties included litigating claims on behalf of the identified individuals. However, after the parties agreed to the appointment of an attorney representative, the prosecutors announced that the criteria for choosing an appropriate attorney representative now included that the individual be "a plaintiff's lawyer capable of handling multiple lawsuits against high profile attorneys." This interpretation of the scope of the attorney representative's role is far outside the common understanding that existed when we negotiated Mr. Epstein's settlement with the USAO. Furthermore, we firmly believe that ethics rules preclude the representative from litigating claims on behalf of the identified individuals.

In sum, we believe that the actions undertaken in this matter by the USAO with respect to the 18 U.S.C. § 2255 provisions of the Agreement are highly unusual. We respectfully request a meeting with you at your earliest convenience to discuss the important issues raised by the USAO's conduct in this deeply policy-laden matter.

Sincerely,

*Kenneth W. Starr*

Kenneth W. Starr