GOVERNMENT

EXHIBIT

M

**U.S. Department of Justice**
Office of Justice Programs
*Office for Victims of Crime*

# ATTORNEY GENERAL GUIDELINES FOR VICTIM AND WITNESS ASSISTANCE



## May 2005

**FOREWORD**

We at the Department of Justice have a duty not only to uphold the rights of individuals who are accused or convicted of a crime but to protect the rights of the victims of crime. Dedicated professionals throughout the Department of Justice work to vindicate the rights of crime victims under law, to offer them aid through the Crime Victims' Fund, and generally to ease their interaction with the criminal justice system. Crime victims deserve no less.

This new edition of the *Attorney General Guidelines for Victim and Witness Assistance* will facilitate our critical work on behalf of crime victims. It incorporates the many provisions for crime victims' rights and remedies, including the Justice for All Act of 2004, that have been enacted since the publication of the last edition. It also includes new guidance on assisting the victims of certain crimes, such as human trafficking and identity theft, that may give rise to unique challenges. These updates and improvements will inform the efforts of victim assistance specialists and other personnel throughout the Department of Justice.

We will never be able to reverse the suffering of crime victims or restore all that they have lost. Nevertheless, the Department of Justice can do a great deal to minimize the frustration and confusion that victims of a crime endure in its wake. These *Guidelines* will help us discharge our obligation to do so.


_____
Alberto R. Gonzales
Attorney General of the United States

# CONTENTS

Foreword .................................................................................................................2

**Article I. Victims' Rights** ...............................................................................5
Best Efforts To Accord Rights ...........................................................................5
Rights of Crime Victims .....................................................................................5
Advice of Attorney ..............................................................................................5
Definition of Crime Victim .................................................................................5
Enforcement Mechanisms for Victims ...............................................................5

**Article II. General Considerations** ...............................................................7
Statement of Purpose ..........................................................................................7
Background ..........................................................................................................7
Construction of These *AG Guidelines* ..............................................................8
Definitions of "Crime Victim" ...........................................................................9
Application ..........................................................................................................9
Responsible Officials ........................................................................................10
Cases With Large Numbers of Victims ............................................................12
Cases Involving Juvenile Offenders ................................................................15
Victims' Declination of Services ......................................................................16

**Article III. Guidelines Applicable to All Components** ...........................17
Mandatory Reporting of Compliance With the *AG Guidelines* ....................17
Performance Appraisal ......................................................................................17
Sanctions ...........................................................................................................17
Mandatory Training ..........................................................................................17
Reporting Suspected Cases of Child Abuse .....................................................18
Victim Notification System ..............................................................................20
Victim Privacy ..................................................................................................20

**Article IV. Services to Victims and Witnesses** ........................................22
Investigation Stage ...........................................................................................22
Prosecution Stage ..............................................................................................26
Corrections Stage ..............................................................................................33

**Article V. Restitution** ...................................................................................37
Background ........................................................................................................37
Statutory Framework .........................................................................................37
Consideration Affecting the Recovery of Restitution ......................................38
Considerations in Plea Agreements ..................................................................39
Restitution Procedures ......................................................................................40
Sentencing .........................................................................................................43
Enforcement of Restitution ...............................................................................44
Interaction Between Restitution and Asset Forfeiture .....................................46
Limitation on Liability ......................................................................................47

**Article VI. Guidelines for Child Victims and Child Witnesses** .....................................**48**
    Statement of Purpose .....................................................................48
    General Guidelines .........................................................................48
    Investigation/Forensic Interviewing of Child Victims and Witnesses ........51
    Prosecutions Involving Child Victims and Child Witnesses .....................51

**Article VII. Guidelines for Victims of Domestic Violence, Sexual Assault, or Stalking** ..............................................................................**58**
    Statement of Purpose .....................................................................58
    General Guidelines .........................................................................58

**Article VIII. Guidelines for Victims of Terrorism and Other Mass Casualties** ........**62**
    Statement of Purpose .....................................................................62
    Identification of Victims ..................................................................62
    Provision of Services ......................................................................63
    Multijurisdictional Response to Domestic Terrorism and Mass
    Violence Victims ...........................................................................65
    Criminal Aviation Disasters ............................................................66

**Article IX. Guidelines for Victims of Human Trafficking** ...........................**67**
    Statement of Purpose .....................................................................67
    General Guidelines .........................................................................67
    Provision of Special Services for Victims of Human Trafficking ...............68

**Article X. Guidelines for Victims of Identity Theft** ...................................**73**
    Statement of Purpose .....................................................................73
    General Guidelines .........................................................................73

**Article XI. Nonlitigability** ................................................................**75**

## ARTICLE I.
## VICTIMS' RIGHTS

### A. Best Efforts To Accord Rights

Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described below. (18 U.S.C. § 3771(c)(1))

### B. Rights of Crime Victims

A crime victim[1] has the following rights under 18 U.S.C. § 3771(a):

1. The right to be reasonably protected from the accused.
2. The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
3. The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
4. The right to be reasonably heard at any public proceeding in the district court involving release, plea, [or] sentencing, or any parole proceeding.
5. The reasonable right to confer with the attorney for the Government in the case.
6. The right to full and timely restitution as provided in law.
7. The right to proceedings free from unreasonable delay.
8. The right to be treated with fairness and with respect for the victim's dignity and privacy.

### C. Advice of Attorney

The prosecutor shall advise the crime victim that the crime victim may seek the advice of an attorney with respect to the rights enumerated above. (18 U.S.C. § 3771(c)(2))

### D. Enforcement Mechanisms for Victims

The Justice for All Act of 2004 provides crime victims, as defined in article II.D.1, with two mechanisms for enforcing the rights enumerated above.

1. <u>Judicial Enforcement</u>. Crime victims, or the Government on their behalf, may move in Federal district court for an order enforcing their rights. (18 U.S.C. § 3771(d)(3)) "The district court shall take up and decide any motion asserting a victim's right forthwith. If

---

[1] A "crime victim" for purposes of these rights is a person who satisfies the definition in article II.D.1 of this document.

the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." (*Id.*)

2. <u>Administrative Complaint</u>. A crime victim may also file an administrative complaint if Department employees fail to respect the victim's rights. The Attorney General must take and "investigate complaints relating to the provision or violation of the rights of a crime victim" and provide for disciplinary sanctions for Department employees who "willfully or wantonly fail" to protect those rights. (18 U.S.C. § 3771(f)(2))

## ARTICLE II.
## GENERAL CONSIDERATIONS

### A. Statement of Purpose

The purpose of this document, the *Attorney General Guidelines for Victim and Witness Assistance* (the *AG Guidelines*), is to establish guidelines to be followed by officers and employees of Department of Justice investigative, prosecutorial, and correctional components in the treatment of victims of and witnesses to crime.

These *AG Guidelines* supersede the *Attorney General Guidelines for Victim and Witness Assistance* (2000).

### B. Background

The first Federal victims' rights legislation was the Victim and Witness Protection Act of 1982 (VWPA). Congress amended and expanded on the provisions of the 1982 Act in subsequent legislation, primarily the Victims of Crime Act of 1984, the Victims' Rights and Restitution Act of 1990, the Violent Crime Control and Law Enforcement Act of 1994, the Antiterrorism and Effective Death Penalty Act of 1996, the Victim Rights Clarification Act of 1997, and the Justice for All Act of 2004.

In VWPA, Congress made findings about the criminal justice system's treatment of crime victims. Congress recognized that without the cooperation of victims and witnesses, the criminal justice system would cease to function. Yet, often those individuals were either ignored by the system or simply viewed as "tools" to use to identify and punish offenders. Congress found that all too often a victim suffers additional hardship as a result of contact with the system. VWPA was enacted "(1) to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process; (2) to ensure that the Federal Government does all that is possible within limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of defendants; and (3) to provide a model for legislation for State and local governments." (Pub. L. No. 97-291, § 2)

In VWPA, Congress instructed the Attorney General to develop and implement guidelines for the Department of Justice consistent with the purposes of the Act. Congress set forth the objectives of the guidelines, which include the provision of services to victims; notification about protection, services, and major case events; consultation with the Government attorney; a separate waiting area at court; the return of property; notification of employers; and training for law enforcement and others. Congress also instructed the Attorney General to assure that all Federal law enforcement agencies outside the Department of Justice adopt guidelines consistent with the purposes of VWPA. (18 U.S.C. § 1512, Historical and Statutory Notes, Federal Guidelines for Treatment of Crime Victims and Witnesses in the Criminal Justice System). In conformance with the congressional directive, the Attorney General promulgated the *Attorney General Guidelines for Victim and Witness Assistance*. Periodically, the *AG Guidelines* have been revised to incorporate new legislative provisions.

Starting with VWPA and continuing through the later legislation, Congress established a list of victims' rights and directed the Justice Department and other departments and agencies of the Federal Government engaged in the detection, investigation, or prosecution of crime to make their "best efforts" to see that crime victims are accorded the rights. The list of rights, commonly referred to as the "victims' bill of rights," is now codified at 18 U.S.C. § 3771(a). Congress also defined a group of services that Federal agencies have the responsibility to provide to crime victims. The basic list of responsibilities appears in 42 U.S.C. § 10607. The Crime Control Act of 1990 later stated that those services "shall" be provided. Specialized provisions dealing with certain types of victims and crimes appear elsewhere in Titles 42 and 18. For example, provisions specifically dealing with child victims and witnesses appear in 18 U.S.C. § 3509.

Subsequent legislation has further expanded victims' rights in a variety of ways. The Violent Crime Control and Law Enforcement Act of 1994 established mandatory restitution for victims of four categories of crime: (1) domestic violence, (2) sexual assault, (3) the exploitation and abuse of children, and (4) telemarketing fraud. The Antiterrorism and Effective Death Penalty Act of 1996 expanded mandatory restitution to virtually all crimes committed in violation of Title 18 of the United States Code. (18 U.S.C. § 3663A) The Victim Rights Clarification Act of 1997 gives victims the right to attend a trial even though they may testify during the sentencing portion of the trial. (18 U.S.C. § 3510) The Victims of Trafficking and Violence Protection Act of 2000 protects immigrant victims of domestic violence, human trafficking, and other crimes from deportation in certain cases. (22 U.S.C. §§ 7101–7110; 8 U.S.C. § 1101(a)(15)(U)) The Justice for All Act of 2004 expanded and recodified the victims' bill of rights and gave victims standing to enforce those rights.

## C. Construction of These *AG Guidelines*

The foundation for these *AG Guidelines* is the Federal victims' rights laws. The core statutes are 18 U.S.C. § 3771 and 42 U.S.C. § 10607, but additional rights and requirements exist in other statutes and rules of criminal procedure. In the text of these *AG Guidelines*, all statutory requirements or rules of criminal procedure are followed by a direct citation to the applicable statute or rule. Guidelines that are purely Justice Department policy, as opposed to statutory law, will not be followed by a citation. Guidelines that are policy intended to implement a statutory right, provision, or procedural rule will be followed by a citation referring to the statute or rule.

The *AG Guidelines* use the word "shall" where "shall" appears in a statute. The use of the term "shall" means that the relevant guideline is mandatory, though room may remain for individual judgment in determining how best to comply with the guideline. When the *AG Guidelines* use the word "should," the employee is expected to take the action or provide the service described unless there is an appropriate, articulable reason not to do so. A strong presumption exists in favor of providing rather than withholding assistance and services to victims and witnesses of crime.

**D. Definitions of "Crime Victim"**

The term "crime victim" is defined differently by different Federal statutes. Unless otherwise noted, these *AG Guidelines* use the following definitions.

1.   Enforcement of Rights. For purposes of enforcing the rights enumerated in article I.B, a victim is "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia" (18 U.S.C. § 3771(e)) if the offense is charged in Federal district court. If a victim is under 18 years of age, incompetent, incapacitated, or deceased, a family member or legal guardian of the victim, a representative of the victim's estate, or any other person so appointed by the court may exercise the victim's rights, but in no event shall the accused serve as a guardian or representative for this purpose. (18 U.S.C. § 3771(e)) A victim may be a corporation, company, association, firm, partnership, society, or joint stock company. (1 U.S.C. § 1)

2.   Provision of Services. For purposes of providing the services described in these *AG Guidelines*, a victim is "a person that has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime." (42 U.S.C. § 10607(e)(2)) If a victim is an institutional entity, services may be provided to an authorized representative of the entity. If a victim is under 18 years of age, incompetent, incapacitated, or deceased, services may be provided to one of the following (in order of preference) for the victim's benefit:

   a.   A spouse.

   b.   A legal guardian.

   c.   A parent.

   d.   A child.

   e.   A sibling.

   f.   Another family member.

   g.   Another person designated by the court.

   (42 U.S.C. § 10607(e)(2))

**E. Application**

1.   Providers of Rights and Services. These *AG Guidelines* apply to those components of the Department of Justice engaged in investigative, prosecutorial, correctional, or parole functions within the criminal justice system. The *AG Guidelines* are intended to

9

serve as a model for guidelines on the fair treatment of crime victims and witnesses for other State and Federal law enforcement agencies.

Department components should encourage non-Department personnel specially assigned or deputized to work with Department components to learn and comply with the victims' rights laws and these *AG Guidelines*.

2. <u>Recipients of Rights and Services</u>. The majority of the rights and services in these *AG Guidelines* are applicable to victims of crime. Some provisions apply to witnesses to crime.

For purposes of determining the applicability of these *AG Guidelines* to any victim, refer to the definitions, *supra*, article II.D.

A person who is culpable for or accused of the crime being investigated or prosecuted should not be considered a victim for purposes of the rights and services described in these *AG Guidelines*. (18 U.S.C. § 3771(d)(1)) Nonetheless, a person who may be culpable for violations or crimes other than the crime being investigated or prosecuted may be considered a victim under this policy. For example, victims of involuntary servitude or trafficking may be considered victims for purposes of the prosecution of those crimes despite any legal culpability that the victims may have for ancillary immigration or prostitution offenses. In addition, criminal suspects who are subjected to excessive force by law enforcement officers and inmates who are victims of crime during their incarceration for other offenses may be considered victims. An inmate's detention, however, may prevent the inmate from exercising the rights and receiving the services normally afforded to victims. For example, Department personnel are not required by these *AG Guidelines* to transport inmates to court to attend hearings relating to crimes against those inmates.

A person whose injuries stem only indirectly from an offense is not entitled to the rights or services described in the *AG Guidelines*. Although bystanders are therefore not generally considered victims, there may be circumstances in which a bystander does suffer an unusually direct injury, and Department personnel have the discretion to treat this bystander as a victim.

## F. Responsible Officials

Pursuant to 42 U.S.C. § 10607(a), the Attorney General is required to designate persons in the Department of Justice who will be responsible for identifying the victims of crime and performing the services described in that section. These persons are referred to as "responsible officials" in the statute and throughout these *AG Guidelines*. (42 U.S.C. § 10607(a)) The designation of responsible officials for each component appears below and at the beginning of the sections indicating the stage in the process at which the relevant component operates. Responsible officials may delegate their responsibilities under these *AG*

*Guidelines* to subordinates in appropriate circumstances, but responsible officials remain obliged to ensure that all such delegated responsibilities are discharged.

The Attorney General designates the following responsible officials:

1. <u>Investigators</u>

    a. FBI—the special agent-in-charge of the division having primary responsibility for conducting the investigation.

    b. DEA—the special agent-in-charge of the division having primary responsibility for conducting the investigation.

    c. Bureau of Alcohol, Tobacco, Firearms and Explosives—the special agent-in-charge of the division having primary responsibility for conducting the investigation.

    d. U.S. Marshals Service—the U.S. Marshal in whose district the case is being conducted.

    e. Office of the Inspector General—the Inspector General.

2. <u>Prosecutors</u>

    a. For cases in which charges have been filed—the U.S. Attorney in whose district the prosecution is pending.

    b. For cases in which a litigating division of the Justice Department is solely responsible—the chief of the section having responsibility for the case. The chief of the section is responsible for performing the same duties under these *AG Guidelines* as are required of a U.S. Attorney. By agreement between the litigating division and the Executive Office for United States Attorneys (EOUSA), the responsible official from the litigating division may delegate some responsibilities to the U.S. Attorney in whose district the prosecution is pending.

    c. For cases in which the U.S. Marshals Service is the custodial agency—the U.S. Attorney in whose district the prosecution is pending.

3. <u>Corrections Officials</u>

    a. For cases in which the U.S. Marshals Service is the custodial agency—the U.S. Attorney in whose district the prosecution is pending.

    b.  For cases in which the Bureau of Prisons has become involved—the Director or Warden of each Bureau of Prisons (BOP) facility where the defendant is incarcerated.

4.  <u>Parole Officials</u>

    a.  For proceedings relating to the revocation of parole or the revocation of supervised release in the District of Columbia—the Chairman of the U.S. Parole Commission.

The responsible official shall designate the individual or individuals who will carry out victim-witness services in each Department of Justice investigating field office, corrections facility, parole office, U.S. Attorney's Office, and Justice Department litigating division. The responsible official shall instruct such designated individuals to comply with these *AG Guidelines* and shall delegate the authority to carry out the activities that are thereby required.

All responsible officials and other employees involved in complying with these regulations must cooperate with other components of the Department of Justice in providing victims with the services required by Federal law and by these *AG Guidelines*. In many instances when certain duties and responsibilities overlap, duplicative provision of services is not required, but responsible officials should promote coordination and interagency teamwork between Department employees and State, local, or tribal officials. At each stage in the provision of services, the transition of responsibility from one component of the Department of Justice to the next must include a sharing of information (in many cases prior to the actual transfer of responsibility). In this way, gaps in notification and other services are eliminated and crime victims receive uniform rather than fragmented treatment, starting from the initial investigation and continuing throughout their entire involvement with the Federal criminal justice system.

Responsible officials and the individuals they have designated should also work with the other Federal agencies that investigate and prosecute violations of Federal law to assist those agencies in providing these services to victims.

## G. Cases with Large Numbers of Victims

Individual and personal contact with victims is recommended whenever reasonably feasible. Although implementing these *AG Guidelines* is relatively straightforward in cases in which the number of victims is limited, doing so can present challenges as the number of victims grows into the hundreds and thousands. Department employees should use new technology and be creative in order to provide victims in large cases with the same rights and services as victims in smaller cases. In carrying out their obligations under the *AG Guidelines* in cases with large numbers of victims, responsible officials should use the means, given the circumstances, most likely to achieve notice to the greatest possible number of victims.

If the responsible official (as designated in these *AG Guidelines*) deems it impracticable to afford all of the victims of a crime any of the rights enumerated in 18 U.S.C. § 3771(a), the attorney for the Government should move the appropriate district court at the earliest possible stage for an order fashioning a reasonable procedure to effectuate those rights to the greatest practicable extent. (18 U.S.C. § 3771(d)(2))

1. <u>Identification</u>. Identification of victims is the responsibility of the investigative agency (*see* art. IV.A.2). Identifying and locating victims can be one of the most difficult victim assistance tasks in a case with a large number of victims. Both new technology and traditional law enforcement methods can be utilized to identify victims regardless of whether the case involves a large-scale mass violence crime or a large-scale economic crime. For example, officials may use notices on official Web sites or in print or broadcast media to ask victims to contact the agency. Access to a toll-free number can be arranged so that victims can both provide identification information and receive information about available assistance and services.

   Department employees may also work with hospitals, schools, employers, nonprofit organizations, faith-based organizations, and disaster-assistance centers (where appropriate) to reach out to victims and to secure identification and contact information.

   In large white-collar crime cases, names and addresses of victims may be obtainable from the defendants' records.

   For crimes involving aviation disasters, the FBI is the lead investigative agency and has specialized protocols for collecting passenger- and ground-casualty victim information.

2. <u>Notices and Referrals</u>. The optimal means of notifying and assisting crime victims will necessarily vary with the underlying offense and the victims' own circumstances. The anticipated needs of the victims and the likelihood of effecting actual notice should be the principal criteria for selecting the means to be used. In every case, Department employees should carefully evaluate the type of information relayed and the method of communicating the information to see that investigations are not compromised and that victims' privacy is not inadvertently invaded. Among the means of notifying victims are the following:

   a. Automated Victim Notification System. Department personnel should strive to use the Automated Victim Notification System (VNS) whenever possible in cases with large numbers of victims. With VNS, it is possible to send large numbers of victims an initial notification letter and to invite them either to request subsequent notifications by e-mail or to obtain new information as it develops through the VNS automated call center or the Internet. (As a general rule, the VNS project will provide only one mass mailing per case.) When victims' names and addresses are maintained in an electronic format, it may be possible to transfer that information directly into the system.

b. Electronic Mail. Notice and ongoing communications with victims in cases with large numbers of victims are also substantially facilitated by e-mail. (Because e-mail does not constitute a private and secure means of communication, Department employees should consider obtaining victims' express consent before using e-mail to transmit confidential communications.) Especially in cases in which more personal communication with the victims is called for, such as cases involving violent crime and identity theft, group e-mail lists can make communication with large numbers practicable. Department staff can send periodic updates to the victims about case events and can answer requests for referrals to social services in an efficient manner. E-mail is also one of the best ways to communicate with victims and witnesses in foreign countries.

c. Internet Web Sites. In light of increasingly widespread access to the Internet, Web sites can be created that contain information concerning the progress of investigations and prosecutions. Department employees should avoid posting any information on the Internet that is not for public dissemination. Information that would normally be appropriate for a press release, including the dates of a public court proceeding, is generally appropriate for the Internet. Department employees can place case information on public agency or office Web sites at a marginal cost to the Department.

d. Bridge or Conference Calls. Bridge calls or conference calls allow Department employees to speak to a large group of victims and witnesses in one telephone call. Each victim or witness who wants to participate in the call is told the date and time of the call and given a phone number and PIN. At the designated time, victims and witnesses call in, give their PIN, and are connected to the discussion.

e. Toll-Free Telephone Numbers. Budget permitting, a toll-free telephone number system may be established to permit victims to call in and receive information about the status of a matter or to allow Department employees to make outgoing calls to the victims to alert them to a change in status.

f. Town Meetings. When a crime results in a large number of victims who cannot be readily identified but reside in a limited geographic area, a well-publicized town meeting may be an effective way to identify victims, provide them with notice and pertinent information, and consult with them concerning the crime and the Government's investigation. Public meetings may be inappropriate for identifying or communicating with child victims or victims of certain highly sensitive crimes.

g. Private Groups. Private groups that comprise a significant number of victims of a particular crime may have newsletters or other methods of reaching their members. Some groups, including those organized by court-appointed receivers or plaintiffs' counsel in shareholder suits, may be willing to assist with

14

preparing and disseminating a newsletter targeted at victims or to assist in some other way.

3. <u>Participation</u>. Technology can be helpful in enabling large numbers of victims to participate in the criminal justice process. E-mail is one means of collecting victim impact statements from a large group located anywhere in the world. The closed-circuit televising of court proceedings has been used in several large cases with victims spread over a large geographic area.

If a courtroom's observation area is too small to accommodate all the victims who want to observe a proceeding, Department attorneys should consider advocating for moving the proceeding to a larger courtroom or providing a closed-circuit feed of the proceedings to another venue where victims can gather. Department attorneys should also consider advocating for the oral presentation in court of a representative sample of victim impact statements.

## H. Cases Involving Juvenile Offenders

1. <u>Generally</u>. Victims of juvenile offenders shall be considered victims for purposes of these *AG Guidelines* and shall be entitled to the normal rights and services except where Federal law specifically provides otherwise. The Federal Juvenile Delinquency Act restricts the type of information that may be disclosed to victims regarding investigations and proceedings of juvenile offenders (unless the juvenile has been transferred for criminal prosecution as an adult). (18 U.S.C. §§ 5031–5042)

   a. Investigative Stage. During the investigative stage, a victim should receive the services to which he or she would normally be entitled, but only a general statement about the progress of an investigation into the role of a juvenile suspect may be disclosed. Investigators and other department employees are cautioned that the name and other identifying data relating to a suspect who is known or believed to have been younger than 18 when the crime occurred should not be disclosed.

   b. Prosecutorial Stage

      (1) Prosecutors in juvenile cases should solicit and receive victims' views on appropriate disposition (not only whether the prosecutor should move to detain, dismiss, defer prosecution, or accept a plea, but also how severe a sentence is warranted). Prosecutors should tell victims that presentence reports and victim impact statements are not mandated at dispositional hearings but that a victim may prepare such a statement for the prosecutor to offer to the court. Upon request, prosecutors should make reasonable efforts to assist the victim in preparing an accurate victim impact statement. The prosecutor may also request that the court order the probation office to prepare a victim impact statement.

      (2) Prosecutors are not permitted to convey to the victim any prosecutorial information about the progress of a juvenile proceeding unless and until the court has found the juvenile to be delinquent. After a finding of delinquency, Federal law explicitly permits disclosure of information about the final disposition to the victim or, if the victim is deceased, to the victim's immediate family. (18 U.S.C. § 5038(a)(6)) Upon request, a victim should be apprised of the final disposition of the case and the sentence imposed on the offender.

   c. Corrections Stage. A victim should not be notified when the juvenile offender in his or her case has actually been released from custody unless the victim has requested such notification.

## I. Victim Declination of Services

Department employees are required, by law and under these *AG Guidelines*, to identify victims of crime, notify them of their rights, and offer them services as described in these *AG Guidelines*. Victims, however, are not required to exercise their rights or to accept these services and may choose at any point in the criminal justice process to decline to receive further services or assistance. Department employees need not provide services that victims have made an informed decision to decline. When a victim declines services, Department employees should attempt to ascertain whether the victim wants to decline all future services or only one or more specific services. In the latter case, responsible officials should continue to provide services that have not been declined. In any event, the responsible official should consider properly documenting the victim's informed declination of mandatory rights and services.

## ARTICLE III.
## GUIDELINES APPLICABLE TO ALL COMPONENTS

### A. Mandatory Reporting of Compliance with the *AG Guidelines*

The Director of the Office for Victims of Crime (OVC), has the statutory responsibility for monitoring Justice Department compliance with the *AG Guidelines*. (42 U.S.C. § 10603(c)(3)(A)) Responsible officials shall report to the Attorney General through the OVC Director about their compliance by means of an Annual Compliance Report containing the relevant data (including the numbers of crime victims offered services) requested by the OVC Director. The Annual Compliance Report shall be submitted to OVC by February 15 of the year following the year that is the subject of the report.

### B. Performance Appraisal

The annual work plans and performance appraisals of each appropriate Federal law enforcement officer, supervisor, investigator, prosecutor, corrections officer, and parole official (and appropriate staff of those agencies) shall encompass, as a required activity, implementation of and evaluation of adherence or nonadherence with the victims' rights and victims' and witnesses' services provisions set forth in these *AG Guidelines*. All investigative, prosecutorial, correctional, and postcorrectional components with responsibilities for providing rights and services to victims should include the discharge of such responsibilities among those components' criteria for reviews and evaluations. Verification of the institution of this recommendation must be included in the Annual Compliance Report.

### C. Sanctions

Pursuant to the Justice for All Act of 2004, 18 U.S.C. § 3771(f)(2)(C), disciplinary sanctions, up to and including suspension and termination of employment, may result from a willful or wanton failure to comply with provisions of Federal law pertaining to the treatment of crime victims.

### D. Mandatory Training

Responsible officials shall ensure that all employees whose primary responsibilities include contact with crime victims and witnesses receive a copy of these *AG Guidelines* and not less than 1 hour of training concerning the *Guidelines* and victims' and witnesses' rights within 60 days after assuming such responsibilities. Responsible officials shall also ensure that the same employees undergo additional training with respect to any changes in the *AG Guidelines* or the law relating to victims' rights within a reasonable time after such changes take effect.

The Deputy Attorney General may, from time to time, direct responsible officials to ensure that other Department employees undergo additional training with respect to victims' rights and these *AG Guidelines*.

**E. Reporting Suspected Cases of Child Abuse**

All Federal law enforcement personnel have obligations under State and Federal law to report suspected child abuse. All Federal employees should refer to their State child abuse reporting laws to determine the scope of the obligation in cases of suspected child abuse. State laws vary substantially. Some States require mandatory reporting of child abuse or neglect by all persons within their boundaries; others require such reporting only from individuals engaged in expressly listed occupations. When the suspected child abuse is observed on Federal lands, the Federal child abuse reporting law also applies. The Federal child abuse reporting law requires certain professionals (listed below) working on Federal land or in a federally operated (or contracted) facility, in which children are cared for or reside, to report suspected child abuse to an investigative agency designated by the Attorney General to receive and investigate such reports. (42 U.S.C. § 13031)

A report should be made even if the information inadvertently comes to the employee's attention, but not if the suspected child abuse has already been reported and is the subject of an existing report or investigation.

1. **<u>Sanctions for Failure To Report</u>. A covered professional who, while working on Federal land or in a federally operated (or contracted) facility, in which children are cared for or reside, learns of facts that give reason to suspect that a child has suffered an incident of child abuse and fails to report such facts in a timely fashion shall be guilty of a Class B misdemeanor.** (18 U.S.C. § 2258)

2. <u>Mandated Reporters (Covered Professionals)</u>. Persons engaged in the following professions and activities on Federal land or in a federally operated (or contracted) facility are subject to the Federal child abuse reporting requirements.

   a. Health Care Professionals. Physicians, dentists, medical residents or interns, hospital personnel and administrators, nurses, health care practitioners, chiropractors, osteopaths, pharmacists, optometrists, podiatrists, emergency medical technicians, ambulance drivers, undertakers, coroners, medical examiners, alcohol or drug treatment personnel, and persons performing a healing role or practicing the healing arts.

   b. Mental Health Professionals. Psychologists, psychiatrists, and other mental health professionals.

   c. Counselors. Social workers and licensed or unlicensed marriage, family, and individual counselors.

   d. Educators. Teachers, teacher's aides or assistants, school counselors and

guidance personnel, school officials, and school administrators.

    e.   Childcare Workers and Administrators.

    f.   **Law Enforcement. Law enforcement personnel, probation officers, criminal prosecutors, and juvenile rehabilitation or detention facility employees.**

    g.   Foster Parents.

    h.   Commercial Film and Photo Processors.

(42 U.S.C. § 13031(b))

3.   <u>Victim Assistance Personnel Should Report Child Abuse</u>. Victim-witness personnel and others with a degree or license in social work, medicine, nursing, mental health, or a similar profession may be mandatory reporters on that basis. In any event, Department of Justice policy is that victim-witness personnel should report suspected cases of child abuse as if they were mandatory reporters under 42 U.S.C. § 13031.

4.   <u>Agencies Designated by the Attorney General To Receive Reports</u>. Reports of child abuse on Federal lands or in federally operated (or contracted) facilities pursuant to 42 U.S.C. § 13031 shall be made to the local law enforcement agency or local child protective services agency that has jurisdiction to investigate reports of child abuse or to protect child abuse victims in the area or facility in question. When no such agency has entered into a formal written agreement with the Attorney General to investigate such reports, the FBI shall receive and investigate such reports. (28 C.F.R. Part 81, AG Order No. 1833-93 (Dec. 23 1993)) Reports of child abuse required by State or local law shall be made to the agency or entity identified in accordance with that law.

5.   <u>Verbal Reports Preferred</u>. The report of suspected child abuse should be made by a method best suited to giving immediate notice, usually verbally, in person or by telephone, or by facsimile. Reporters should document their report in the same manner that they document other important work-related actions. Responsible officials may develop written reporting forms for this purpose. (see 42 U.S.C. § 13031(e) (use of a form is encouraged, but shall not take the place of the immediate making of oral reports when circumstances dictate)). Reports may be made anonymously. Reports are presumed to have been made in good faith and reporters are immune from civil and criminal liability arising from the report unless they act in bad faith. (42 U.S.C. § 13031(f))

6.   <u>Reporting in Indian Country</u>. Reporting child abuse in Indian Country is governed by 18 U.S.C. § 1169 and 25 U.S.C. § 3203. Health care professionals, school employees and officials, childcare providers, social workers, mental health professionals and counselors, law enforcement officers, probation officers, workers in a juvenile rehabilitation or detention facility, or persons employed in a public agency who are

responsible for enforcing statutes and judicial orders, are among those required to report reasonable suspicions that a child has been or may reasonably be expected to be abused. (18 U.S.C. § 1169(a)(1)(H) (full list of mandated reporters)). Reports are to be made to the Federal, State, or tribal agency with primary responsibility for child protection or the investigation of child abuse within the portion of Indian Country involved. If the report involves a potential crime and either an Indian child is involved or the alleged abuser is an Indian, the local law enforcement agency (if other than the FBI) is required to make an immediate report to the FBI. (25 U.S.C. § 3203(b)(2)) The agency receiving the initial report is required to prepare a written report describing the child, the alleged abuser, and the available facts relating to the abuse allegation within 36 hours.
(25 U.S.C. § 3203(c)(1))

## F. Victim Notification System

For components participating in the automated Victim Notification System (VNS), victim contact information and notice to victims of events described in article IV of these *AG Guidelines* shall, absent exceptional circumstances (such as cases involving juvenile or foreign victims), be conducted and maintained using VNS. In order for VNS to provide timely victim notification during the investigative, prosecutorial, and correctional phases of a case, the responsible official must provide VNS with all necessary information before transferring notification responsibilities to the next responsible official. Responsible officials shall ensure that employees with responsibilities related to VNS have received and continue to receive adequate training on the proper use of VNS.

As of the publication date of these *AG Guidelines*, not all of the Department's litigating divisions participate in VNS. Regardless of whether a litigating division is a VNS participant, however, the attorney from the division who is handling the case must discharge the duties that are imposed upon a U.S. Attorney under these *AG Guidelines* if the division is solely responsible for the case. With respect to cases handled by the Criminal Division, the responsible official from the Criminal Division may delegate responsibilities to the U.S. Attorney in whose district the prosecution is pending pursuant to an agreement between the Criminal Division and the Executive Office for United States Attorneys (EOUSA).

## G. Victim Privacy

Consistent with the purposes of 18 U.S.C. § 3771(a)(8), Department employees engaged in the investigation or prosecution of a crime shall respect victims' privacy and dignity. In particular, Department employees should use their best efforts to respect the privacy and dignity of especially vulnerable victims, such as elderly or juvenile victims and victims of sex offenses or domestic violence. Employees with access to private victim information should not reveal that information to anyone who does not have a need to know it.

Responsible officials should take special note of the Department's policy disfavoring the subjection of sexual assault victims to polygraph examinations. (*See infra* art. VII.B.2.b.)

Although victim privacy must be respected, information that may be relevant to an ongoing crime or to an ongoing investigation or prosecution of a crime should be shared with the investigating agent or prosecuting attorney. Department employees who are directly involved in providing victim services should therefore inform victims, when relevant, that certain information pertaining to victims may be shared among Department employees and other law enforcement officials.

**ARTICLE IV.**
**SERVICES TO VICTIMS AND WITNESSES**

**A. Investigation Stage**

The investigative agency's responsibilities begin with the report of the crime and extend through the prosecution of the case. In some instances, when explicitly stated, the investigative agency's responsibility for a certain task is transferred to the prosecuting agency when charges are filed.

1. Designation of Responsible Officials. Application of article IV.A will be the responsibility of the following officials:

   a. In the FBI, the responsible official is the special agent-in-charge of the division having primary responsibility for conducting the investigation.

   b. In the DEA, the responsible official is the special agent-in-charge of the office having primary responsibility for conducting the investigation.

   c. In the Bureau of Alcohol, Tobacco, Firearms and Explosives, the responsible official is the special agent-in-charge of the office having primary responsibility for conducting the investigation.

   d. In the U.S. Marshals Service, the responsible official is the U.S. Marshal in whose district the case is being conducted.

   e. In the Office of the Inspector General, the responsible official is the Inspector General.

Responsible officials may delegate their responsibilities under these *AG Guidelines* to subordinates in appropriate circumstances, but responsible officials remain obliged to ensure that all such delegated responsibilities are discharged.

2. Identification of Victims. At the earliest opportunity after the detection of a crime at which it may be done without interfering with an investigation, the responsible official of the investigative agency shall identify the victims of the crime. (42 U.S.C. § 10607(b)(1)) Prior to the filing of criminal charges, components participating in the Victim Notification System (VNS) shall enter the name and available contact information for known victims in that system, and nonparticipating components shall provide the responsible prosecuting official with a list containing the names of and available contact information for known victims. In cases with large numbers of victims, the list shall, if practicable, be provided in an electronic format capable of being readily entered into VNS.

22

3. <u>Description of Services.</u>

    a.  Information, Notice, and Referral

        (1) Initial Information and Notice. Responsible officials must advise a victim pursuant to this section at the earliest opportunity after detection of a crime at which it may be done without interfering with an investigation. To comply with this requirement, it is recommended that victims be given a printed brochure or card that briefly describes their rights and the available services, identifies the local service providers, and lists the names and telephone numbers of the victim-witness coordinator or specialist and other key officials. Models for such brochures in several different languages are available from the Office for Victims of Crime. Personal contact should be made whenever reasonably feasible.[2] A victim must be informed of—

            (a) His or her rights as enumerated in 18 U.S.C. § 3771(a). (18 U.S.C. § 3771(c)(1))

            (b) His or her right entitlement, on request, to the services listed in 42 U.S.C. § 10607(c). (42 U.S.C. § 10607(b)(2)).

            (c) The name, title, business address, and telephone number of the responsible official to whom such a request for services should be addressed. (42 U.S.C. § 10607(b)(3))

            (d) The place where the victim may receive emergency medical or social services. (42 U.S.C. § 10607(c)(1)(A))

            (e) The availability of any restitution or other relief (including crime victim compensation programs) to which the victim may be entitled under this or any other applicable law and the manner in which such relief may be obtained. (42 U.S.C. § 10607(c)(1)(B))

            (f) Public and private programs that are available to provide counseling, treatment, and other support to the victim. (42 U.S.C. § 10607(c)(1)(C))

            (g) The right to make a statement about the pretrial release of the defendant in any case of interstate domestic violence, violation

---

[2] Contact by law enforcement agencies with foreign nationals residing in other countries must be coordinated with the appropriate officials of the host government through the FBI Legal Attaché Office responsible for the country in which the foreign national resides. In the immediate aftermath of a crime against a foreign national in the United States, the State Department will coordinate contact through the embassy or consulate for the country of which the victim is a citizen.

of a protection order, or stalking. At the earliest opportunity after detection of an interstate domestic violence or stalking offense or violation of a protective order at which it may be done without interfering with an investigation, the responsible official of the investigative agency shall inform the victim that he or she has the right to make a statement regarding the danger posed by the defendant for the purposes of determining pretrial release of the defendant or conditions of such release. (18 U.S.C. § 2263)

(h) The availability of payment for testing and counseling in cases of sexual assaults. The responsible official of the investigative agency shall inform victims of the Attorney General's obligation to provide for the payment of the cost of up to two anonymous and confidential tests of the victim for sexually transmitted diseases during the 12 months following the assault and the cost of a counseling session by a medically trained professional regarding the accuracy of such tests and the risk of transmission of sexually transmitted diseases to the victim as a result of the assault. (42 U.S.C. § 10607(c)(7))

The responsible official should advise the victim of a sexual assault that poses a "risk of transmission" of the Acquired Immunodeficiency Syndrome (AIDS) virus of the circumstances under which the court may order that a defendant be tested for this condition. The official should explain that such an order is only available after the defendant has been charged. (42 U.S.C. § 14011)

(i) The availability of services for victims of domestic violence, sexual assault, or stalking. Responsible officials should take appropriate steps to inform victims of domestic violence, sexual assault, or stalking. of assistance that may be available to them under programs that have received grants from the Attorney General, such as legal assistance services funded by grants under 42 U.S.C. § 3796gg-6, housing assistance for child victims of domestic violence, sexual assault, or stalking funded by grants under 42 U.S.C. § 13975, and other similar services. (*See also* art. VII (offering additional guidance for dealing with victims of domestic violence, sexual assault, or stalking))

(j) The option of being included in VNS. Victims shall be notified of their opportunity to receive notification of case developments through VNS as well as their right to decline to be included in the VNS database.

24

        (k) Available protections from intimidation and harassment. Whenever appropriate, victims should be notified of legal protections and remedies (including protective orders) that are available to prevent intimidation and harassment.

    (2) Referral. The responsible official designated in paragraph A.1 shall assist the victim in contacting the person or office responsible for providing the services and relief described in paragraph A.3. (42 U.S.C. § 10607(c)(1)(D)) When charges are filed, the responsibility for making referrals is transferred to the responsible official in the prosecutor's office.

    (3) Notice during the investigation. During the investigation of a crime, a responsible official shall provide the victim with the earliest possible notice concerning—

        (a) The status of the investigation of the crime, to the extent that it is appropriate and will not interfere with the investigation. (42 U.S.C. § 10607(c)(3)(A))

        (b) The arrest of a suspected offender. (42 U.S.C. § 10607(c)(3)(B))

b. Protection From Harassment/Intimidation. The responsible official of the investigative agency shall arrange for a victim to receive reasonable protection from a suspected offender and persons acting in concert with or at the behest of the suspected offender. (42 U.S.C. § 10607(c)(2)) Such arrangements may vary from aiding a victim in changing his or her telephone number to the extreme measure of proposing the victim for inclusion in the Federal Witness Security Program (which is available to witnesses only in limited situations and pursuant to very stringent admission guidelines). These *AG Guidelines* shall not be construed to require personal physical protection of a victim, such as by bodyguards. Department personnel should use their discretion and sound judgment when assessing and discussing possible threats and security measures with victims.

c. Return of Property Held as Evidence. At all times, a responsible official shall ensure that any property of a victim that is being held for evidentiary purposes is maintained in good condition and returned to the victim as soon as it is no longer needed for evidentiary purposes. (42 U.S.C. § 10607(c)(6)) There may be circumstances, however, in which a victim's property will inevitably deteriorate or will be damaged through legitimate use in the law enforcement process. Responsible officials may consider advising victims of such circumstances when they arise. Contraband shall not be returned to victims.

d. Notification to Victims' and Witnesses' Employers and Creditors. Upon request by a victim or witness, the responsible official should assist in notifying—

(1) The employer of the victim or witness if cooperation in the investigation of the crime causes his or her absence from work.

(2) The creditors of the victim or witness, when appropriate, if the crime or cooperation in its investigation affects his or her ability to make timely payments.

Upon filing of charges by the prosecutor, this responsibility transfers to the responsible official of the prosecutor's office.

e.  Payment for Forensic Sexual Assault Examinations. The responsible official or the head of another department or agency that conducts an investigation into a sexual assault shall pay, either directly or by reimbursement of the victim, the cost of a physical examination of the victim and the costs of materials used to obtain evidence. The department or agency conducting the sexual assault investigation shall be responsible for the cost of the examination unless payment is provided by other means. (42 U.S.C. § 10607(c)(7))

The sexual assault victim should be informed that he or she may choose to have the department or agency conducting the investigation pay the cost of the examination directly. In no case shall the victim be held responsible for payment of the examination or be required to seek reimbursement for the examination from his or her insurer. Moreover, in no case shall a victim of sexual assault be required to cooperate with law enforcement in order to be provided with a forensic medical examination free of charge.

f.  Logistical Information. Victims and witnesses should be provided information or assistance with respect to transportation, parking, childcare, translator services, and other investigation-related services. Upon filing of charges by the prosecutorial agency, this responsibility transfers to the responsible official of the prosecutorial agency.

g.  Programs for Department Employees Who Are Victims of Crime. Responsible officials should ensure that Department employees have access to an Employee Assistance Program as well as generally available victim assistance programs. Responsible officials should assist employees in accessing appropriate victim services.

## B. Prosecution Stage

The prosecution stage begins when charges are filed and continues through postsentencing legal proceedings, including appeals and collateral attacks.

1.  <u>Responsible Officials</u>. For cases in which charges have been instituted, the responsible official is the U.S. Attorney in whose district the prosecution is pending. For cases in

which a litigating division of the Department of Justice is solely responsible, the responsible official is the chief of the section having responsibility for the case. The Department attorney handling such a case shall perform the same duties under these *AG Guidelines* as are required of a U.S. Attorney. By agreement between the litigating division and EOUSA, the responsible official from the litigating division may delegate some responsibilities to the U.S. Attorney in whose district the prosecution is pending.

For cases in which the U.S. Marshals Service is the custodial agency and is housing Federal pretrial detainees (at the same time the offender is being prosecuted by the U.S. Attorney's Office), the responsible official for purposes of performing the duties of the corrections agencies contained in article IV.C shall be the U.S. Attorney in whose district the prosecution is pending.

Responsible officials may delegate their responsibilities under these *AG Guidelines* to subordinates in appropriate circumstances, but responsible officials remain obliged to ensure that all such delegated responsibilities are discharged.

2. <u>Services to Crime Victims</u>

    a. Victim and Witness Security. Department employees should consider the security of victims and witnesses in every case. Where necessary, prosecutors should inform the court of the threat level, risk, and resources available to create a reasonable plan to promote the safety of victims and witnesses. Department employees may make victims and witnesses aware of the resources that may be available to promote their safety, including protective orders, the Emergency Witness Assistance Program, the Federal Witness Security Program, and State and local resources. Prosecutors should consider moving for pretrial detention of the accused pursuant to 18 U.S.C. § 3142(f) when circumstances warrant it.

    b. Information, Notice, and Referrals

        (1) Notice of Rights. Officers and employees of the Department of Justice shall make their best efforts to see that crime victims are notified of the rights enumerated in 18 U.S.C. § 3771(a). (18 U.S.C. § 3771(c)(1))

        (2) Notice of Right To Seek Counsel. The prosecutor shall advise the crime victim that the crime victim can seek the advice of an attorney with respect to the rights described in 18 U.S.C. § 3771(a). (18 U.S.C. § 3771(c)(2)) If the victim is represented, statutorily mandated notifications and communications may still be directed to the victim, but the attorney for the victim should be copied on those notifications and communications whenever it is feasible to do so. For other types of communications, Department attorneys and their non-lawyer staff should consult and comply with applicable rules of professional conduct, which may regulate contact with represented persons.

27

(3) Notice of Right To Attend Trial. The responsible official should inform the crime victim about the victim's right to attend the trial regardless of whether the victim intends to make a statement or present any information about the effect of the crime on the victim during sentencing. (18 U.S.C. § 3510(a)) Even if the victim is to testify at trial, the victim may not be excluded unless the court finds, on a record of clear and convincing evidence, that the victim's testimony at trial would be altered by exposure to other testimony. If the prosecution would nevertheless prefer that the victim not attend the trial, the prosecutor should consider explaining to the victim the need for the victim's sequestration in an effort to obtain it voluntarily.

(4) Notice of Case Events. During the prosecution of a crime, a responsible official shall provide the victim, using VNS (where appropriate), with reasonable notice of—

   (a) The filing of charges against a suspected offender. (42 U.S.C. § 10607(c)(3)(C))

   (b) The release or escape of an offender or suspected offender. (18 U.S.C. § 3771(a)(2); 42 U.S.C. § 10607(c)(3)(E))

   (c) The schedule of court proceedings.

      (i) The responsible official shall provide the victim with reasonable, accurate, and timely notice of any public court proceeding or parole proceeding that involves the crime against the victim. In the event of an emergency or other last-minute hearing or change in the time or date of a hearing, the responsible official should consider providing notice by telephone or expedited means. This notification requirement relates to postsentencing proceedings as well. (18 U.S.C. § 3771(a)(2))

      (ii) The responsible official shall also give reasonable notice of the scheduling or rescheduling of any other court proceeding that the victim or witness is required or entitled to attend. (42 U.S.C. § 10607(c)(3)(D))

   (d) The acceptance of a plea of guilty or nolo contendere or the rendering of a verdict after trial. (42 U.S.C. § 10607(c)(3)(F))
   (e) If the offender is convicted, the sentence and conditions of supervised release, if any, that are imposed. (42 U.S.C. § 10607(c)(3)(G))

(5) Information about the criminal justice system. During the prosecution of a crime (if the victim has provided a current address or telephone number), a responsible official should provide the victim with general information about the criminal justice process, specifically including—

    (a) The role of the victim in the criminal justice process, including what the victim can expect from the system as well as what the system expects from the victim.

    (b) The stages in the criminal justice process of significance to a crime victim and the manner in which information about such stages can be obtained.

(18 U.S.C. § 1512 (Historical and Statutory Notes); *cf.* Pub. L. No. 97-291 § 6(a)(1)(C) and (D))

(6) Referrals. Once charges are filed, the responsible official shall assist the victim in contacting the persons or offices responsible for providing the services and relief listed in article IV.A.3.a(1).

    (a) The responsible official should take appropriate steps to inform victims of domestic violence, stalking, or sexual assault about assistance that may be available to them, such as legal assistance services funded by grants under 42 U.S.C. § 3796gg-6, shelter services funded by grants under the Family Violence Prevention and Services Act (42 U.S.C. § 10401 *et seq.*), and housing assistance for child victims funded by grants under 42 U.S.C. § 13975. Refer to article VII of these *AG Guidelines* for additional guidance on dealing with victims of domestic violence, stalking, or sexual assault.

    (b) The responsible official should take appropriate steps to inform immigrant victims of domestic violence that they may petition for immigration protections under the Battered Immigrant Women Protection Act of 2000, 8 U.S.C. §  1101(a)(15)(U).

c.  Consultation With a Government Attorney

(1) In General. A victim has the reasonable right to confer with the attorney for the Government in the case. (18 U.S.C. § 3771(a)(5)) The victim's right to confer, however, shall not be construed to impair prosecutorial discretion. (18 U.S.C. § 3771(d)(6)) Federal prosecutors should be available to consult with victims about major case decisions, such as dismissals, release of the accused pending judicial proceedings (when such release is for noninvestigative purposes), plea negotiations, and pretrial diversion. Because victims are not clients, may become adverse

to the Government, and may disclose whatever they have learned from consulting with prosecutors, such consultations may be limited to gathering information from victims and conveying only nonsensitive data and public information. Consultations should comply with the prosecutor's obligations under applicable rules of professional conduct.

Representatives of the Department should take care to inform victims that neither the Department's advocacy for victims nor any other effort that the Department may make on their behalf constitutes or creates an attorney-client relationship between such victims and the lawyers for the Government.

Department personnel should not provide legal advice to victims.

(2) Prosecutor Availability. Prosecutors should be reasonably available to consult with victims regarding significant adversities they may suffer as a result of delays in the prosecution of the case and should, at the appropriate time, inform the court of the reasonable concerns that have been conveyed to the prosecutor.

(3) Proposed Plea Agreements. Responsible officials should make reasonable efforts to notify identified victims of, and consider victims' views about, prospective plea negotiations. In determining what is reasonable, the responsible official should consider factors relevant to the wisdom and practicality of giving notice and considering views in the context of the particular case, including, but not limited to, the following factors:

(a) The impact on public safety and risks to personal safety.

(b) The number of victims.

(c) Whether time is of the essence in negotiating or entering a proposed plea.

(d) Whether the proposed plea involves confidential information or conditions.

(e) Whether there is another need for confidentiality.

(f) Whether the victim is a possible witness in the case and the effect that relaying any information may have on the defendant's right to a fair trial.

d.  Separate Waiting Area. During court proceedings, the responsible official shall ensure that a victim is provided with a waiting area removed from and out of the

sight and hearing of the defendant and defense witnesses. (42 U.S.C. § 10607(c)(4))

e.   Notification to Victims' and Witnesses' Employers and Creditors. Upon request by a victim or witness, the responsible official should assist in notifying—

(1) The employer of the victim or witness if cooperation in the investigation or prosecution of the crime causes his or her absence from work.

(2) The creditors of the victim or witness, where appropriate, if the crime or cooperation in its investigation or prosecution affects his or her ability to make timely payments.

f.   Logistical Information. Victims and witnesses should be provided with information or assistance with respect to transportation, parking, childcare, translator services, and other prosecution-related services.

g.   Limited Testing of Defendants In Sexual Assault Cases. (42 U.S.C. § 14011)

(1) Notice and Information. The responsible official should advise the victim of a sexual assault that poses a "risk of transmission" of the Acquired Immunodeficiency Syndrome (AIDS) virus of the circumstances under which the victim may obtain an order that the defendant be tested for this condition and that the results be shared with the victim.

(2) Procedure. The court may order such a test when the following requirements have been met:

(a) The defendant has been charged.

(b) The victim requests that the defendant be tested.

(c) The test would provide information necessary to the victim's health.

(3) Negative Test Results. If the initial test is negative and upon the request of the victim, the court may order followup testing and counseling on dates 6 and 12 months after the initial test. (42 U.S.C. § 14011(b)) The responsible official should assist the victim in requesting the followup testing and counseling when appropriate.

h.   Closed-Circuit Televising of Court Proceedings in Cases Involving a Change of Venue. If the court changes the trial venue out of the State in which the case was initially brought to a location that is more than 350 miles from the location in which the proceedings originally would have taken place, the court shall

31

order closed-circuit televising of the proceedings to the original location to permit victims who qualify under the statute to watch the trial proceedings. (42 U.S.C. § 10608) In any relevant case, the responsible official should, using VNS where appropriate, inform victims of the provision and, if requested by the victims, bring it to the court's attention and facilitate its implementation. In cases in which there has been no change of venue but the prosecution is occurring far from where most victims reside, prosecutors should consider moving for closed-circuit transmission of the proceedings to a forum that is more convenient for the victims.

i.   Programs for Department Employees Who Are Victims of Crime. The responsible official should ensure that Department employees who are victims of crime have access to an Employee Assistance Program.

3.   <u>Sentencing Proceedings and Victim Impact Statements</u>

a.   Victim Impact Statement

(1) When a defendant is convicted, a responsible official should inform victims—

(a) That the U.S. probation officer is required to prepare a presentence investigation report that includes a section assessing the financial, social, psychological, and medical impact of the crime on any individual against whom the offense was committed. (Fed. R. Crim. P. 32(d)(2)(B)) This section is called the "Victim Impact Statement," and it includes a provision on restitution.

(b) About how to communicate directly with the probation officer if they so desire.

(2) A responsible official should inform the probation officer about information in the Government's possession relevant to the topics addressed in the victim impact statement so that the presentence report will fully reflect the effects of the crime on victims as well as the appropriate amount of restitution, if any.

(3) The responsible official shall transmit the victim impact statement for an offender to the responsible official in the corrections stage.

b.   Sentencing

(1) Interests of Victims. Federal prosecutors should advocate for the interests of victims, including child victims, at the time of sentencing, including in the setting of conditions for supervised release (or parole,

32

where applicable) in a manner that is consistent with available resources and prosecutorial objectives.

(2) The Right of Victims To Be Reasonably Heard. If a victim (or a lawful representative appearing on behalf of the victim) is present and wants to make a statement at the sentencing of the convicted offender, the prosecutor should advocate for the victim's right to make a statement or present information in relation to the offender's sentence.

(3) Death Penalty Cases. If the Government decides to seek the death penalty, it must file notice with the court of its intention to do so. The notice sets forth the aggravating factors that the Government proposes to prove as justifying a death sentence. The factors for which notice is provided "may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense, the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." (18 U.S.C. § 3593(a))

(a) If the Government files the proper notice, the responsible official should notify the victim and appropriate family members of their potential opportunity to address the court during the aggravation portion of the sentencing hearing and of the date, time, and place of the scheduled hearing.

## C. Corrections Stage

1. <u>Responsible Officials</u>. For cases in which the U.S. Marshals Service is the custodial agency, housing Federal pretrial detainees (at the same time the offender is being concurrently prosecuted by the U.S. Attorney's Office), the responsible official is the U.S. Attorney in whose district the prosecution is pending. For cases in which BOP has become involved, the responsible official is the Director or Warden of the BOP facility where the defendant is incarcerated. In proceedings relating to the revocation of parole or the revocation of supervised release in the District of Columbia, the responsible official is the Chairman of the U.S. Parole Commission.

Responsible officials may delegate their responsibilities under these *AG Guidelines* to subordinates in appropriate circumstances, but responsible officials remain obliged to ensure that all such delegated responsibilities are discharged.

2. <u>Services to Victims</u>

a. Notice

(1) Custodial Release Eligibility Information. A responsible official of the custodial agency shall provide the victim with general information regarding the corrections process, including information about work release, furlough, probation, and eligibility for each. (42 U.S.C. § 10607(c)(8))

(2) Custodial Release Notification

    (a) As soon after trial as reasonably feasible, the responsible official shall provide a victim with notice (through VNS, where appropriate) of the—

        (i) Date on which an offender will be eligible for parole and the scheduling of a release hearing, if any, for the offender. (42 U.S.C. §§ 10607(c)(3)(G) and (c)(5)(A))

        (ii) Escape, work release, furlough, or any other form of release of the offender from custody. (42 U.S.C. § 10607(c)(5)(B))

        (iii) Death of the offender, if the offender dies while in custody. (42 U.S.C. § 10607(c)(5)(C))

    (b) When the victim is an inmate, the responsible official may take into consideration, in determining when notice is provided, the security of the offender inmate. (18 U.S.C. § 3771(c)(3)) If there is a serious security risk in informing an inmate victim of an offender's status, the corrections agency may time the notice to minimize that risk, even if the notification takes place after the event. This determination should be made on a case-by-case basis and should not be interpreted to prevent an inmate victim from providing written input in any parole proceeding. The notice requirement in this guideline applies even in cases in which a Department of Justice component is holding a defendant (such as a deportable alien) after time served.

(3) Notice Relating to the Revocation of Parole

    (a) When a proceeding relating to the revocation of parole is scheduled due to the offender's violation of the conditions of his parole (including the commission of a new crime), the responsible official shall (in cooperation with BOP, when appropriate) notify the victims of the crime for which parole or supervised release was imposed of the date and time of the revocation proceeding.

(b) The responsible official should also provide victims with the earliest possible notice of—

    (i)   The release or detention status of the offender.

    (ii)  The victims' rights to be heard at the parole proceeding, to confer reasonably with the attorney for the Government in the case, and to be treated with fairness and respect. (18 U.S.C. § 3771(a))

    (iii)  If the offender is found to have violated the conditions of parole or supervised release, the sentence imposed, the conditions of release (if applicable), and the availability of the BOP notification program.

(4) Prisoner Reentry. In anticipation of the offender's release from custody, the responsible official shall prepare the following:

    (a)  Victim impact statement. If the offender is subject to supervised release in a district other than the district in which the offender was sentenced, the responsible official shall ensure that the victim impact statement portion of the presentence investigation report is transmitted to the U.S. Probation Office in the supervising district.

    (b)  Notification. No later than 30 days prior to release of the offender, the responsible official shall provide a victim with notice of the date of the offender's release; the city and State in which the offender will be released; and, if the offender is subject to supervised release, the contact information for the supervising U.S. Probation Office. (<u>Note</u>: This renewed notification shall not be shared with the offender or his counsel, except as otherwise required by law.)

b.  Separate Waiting Area. During parole hearings, the responsible official should coordinate with the U.S. Marshals Service, BOP, or other entity responsible for the relevant facilities to ensure, where possible, that a victim is provided with a waiting area that is removed from and out of the sight and hearing of the inmate and the inmate's witnesses. (42 U.S.C. § 10607(c)(4))

c.  Programs for Department Employees Who Are Victims of Crime. Responsible officials should ensure that Department employees have access to an Employee Assistance Program. To the extent possible, responsible officials should assist employees with identity changes when they are needed to escape domestic violence, sexual assault, or stalking.

**ARTICLE V.**
**RESTITUTION**

## A. Background

"The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the sanctioning power of society does to punish its wrongdoers, it should also ensure that the *wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being*." S. Rep. No. 104-179, at 12, *reprinted in* 1996 U.S.C.C.A.N. 924, 925–26 (emphasis added). The Mandatory Victims Restitution Act of 1996 (MVRA) requires that restitution be imposed in a wide variety of circumstances and that the terms of payment "*shall be the shortest time in which full payment can reasonably be made*." (18 U.S.C. § 3572(d)(2) (emphasis added)) Other statutes also authorize the imposition of restitution as part of a criminal sentence.

The Justice for All Act of 2004 provides that victims have the right to "full and timely restitution." (18 U.S.C. § 3771(a)(6)) This provision does not give rise to an independent basis for seeking or awarding restitution, but it underscores the sense of Congress that restitution is a critical aspect of criminal justice. Prosecutors, victim-witness coordinators, investigators, probation officers, clerks of the court, and financial litigation units all share an important role in ensuring that victims receive full and timely restitution. DOJ employees working at each stage of a criminal case—investigating, charging, negotiating plea agreements, advocating for appropriate sentences, and enforcing criminal judgments—must give careful consideration to the need to provide full restitution to the victims of the offenses and should work together as authorized by law to ensure that full and timely restitution is paid. Indeed, the responsibility to pursue restitution does not end when restitution is ordered but continues until restitution has been paid or the liability to pay restitution terminates.

This article describes some of the mechanisms for recovering full and timely restitution. Other references, including the *Prosecutor's Guide to Criminal Monetary Penalties*, may be found on USABook Online, Topic: Restitution.

## B. Statutory Framework

Restitution, as part of a criminal sentence, can be imposed only as authorized by statute. Some form of restitution is authorized for virtually every Federal offense that inflicts a recoverable loss (as described in more detail below) on an identifiable victim. Most of the procedural guidelines governing the imposition of restitution—be it mandatory or discretionary—appear at 18 U.S.C. § 3664.

1. <u>Mandatory Restitution</u>. The MVRA requires courts to impose the full amount of restitution (without regard to the defendant's economic circumstances) in most of the commonly prosecuted Federal offenses, including virtually all Title 18 property offenses and all crimes of violence. (18 U.S.C. § 3663A) The only exception to mandatory restitution is for an offense against property with respect to which the court makes a finding from facts on the record either that (a) the number of identifiable

victims is so large that restitution is impracticable or (b) determining complex issues of fact related to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process. (18 U.S.C. § 3663A(c)(3))

In addition to offenses covered by MVRA, restitution is also required in certain cases involving sexual abuse, child abuse, and domestic violence. (18 U.S.C. §§ 2248, 2259, 2264, 2327) Other mandatory provisions apply to failure to pay legal child support obligations (18 U.S.C. § 228(d)); peonage, slavery, and human trafficking (18 U.S.C. § 1593); and the operation of illegal methamphetamine labs and drug labs (21 U.S.C. §§ 853(q), 856(a)).

The procedures for issuing restitution under these sections now match the relevant procedures for other types of mandatory restitution and restitution under the general restitution statute. These procedures are set forth in 18 U.S.C. § 3664.

2. <u>Discretionary Restitution</u>. The general restitution statute, 18 U.S.C. § 3663, provides that a court "may order" restitution for any Title 18 offense not covered by the mandatory restitution provisions of 18 U.S.C. § 3663(c). For drug offenses listed under 21 U.S.C. §§ 841, 848(a), 849, 856, 861, and 863, restitution may be ordered as long as the victim is not a participant.[3] Similarly, restitution may be ordered in air piracy offenses (unless they fall within the mandatory restitution provisions of 18 U.S.C. § 3663A(c)) and in any criminal case to the extent agreed to by the parties in a plea agreement. (18 U.S.C. § 3663(a))

If the sentencing court finds that the complication and prolongation of the sentencing process involved in ordering restitution outweigh the need to provide restitution to any victims, the court may decline to do so. (18 U.S.C. § 3663(a)(1)(B)(ii))

3. <u>Restitution as a Condition of Probation</u>. Restitution may also be ordered as a discretionary condition of probation and supervised release for any offense, and it is not limited in such circumstances to the offenses set forth in 18 U.S.C. §§ 3663(a) and 3663A(c)(1)(A) (offenses for which an order of full restitution is authorized). Restitution in this context expires with the term of parole or supervision. (18 U.S.C. § 3563(b)) Prosecutors should seek imposition of such a condition in appropriate cases.

## C. Considerations Affecting the Recovery of Restitution

1. <u>Charging Decisions</u>. When exercising their discretion, prosecutors shall give due consideration to the need to provide full restitution to the victims of Federal criminal offenses. This discretion is also governed by the Principles of Federal Prosecution,

---

[3] An order of "community restitution" for certain drug offenses may be imposed in cases in which no identifiable victim exists. The amount of such community restitution will be based on the amount of the public harm caused by a defendant in accordance with guidelines promulgated by the U.S. Sentencing Commission. (18 U.S.C. § 3663(c); U.S.S.G. § 5E1.1(d))

which currently are published in the *United States Attorney's Manual* at § 9-27.000. Even when a Federal offense has clearly been committed for which restitution could be imposed, other considerations may lead to a decision not to charge an offense. Those considerations include, but are not limited to, whether there is a substantial Federal interest, whether the person is subject to effective prosecution in another jurisdiction, and whether there exists an adequate noncriminal alternative to prosecution.

2. <u>Prejudgment Restraint of Assets</u>. If a decision is made to charge an offense, prosecutors should consider whether it is appropriate to seek the prior restraint of those assets that will be subject to the court's restitution order if the defendant is convicted. An injunction prior to sentencing, whether voluntary or pursuant to a properly supported motion, may prevent the dissipation or transfer of assets for the benefit of crime victims. (*See, e.g.*, 18 U.S.C. § 1345)

3. <u>Conferring with Victims</u>. Victims have the reasonable right to confer with the attorney for the Government in the case. (18 U.S.C. § 3771(a)(5); *see also*18 U.S.C. § 3664(d)(1): "[T]he attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution."))

## D. Considerations in Plea Agreements

In all plea discussions, prosecutors must consider "requesting that the defendant provide full restitution to all victims of all charges contained in the indictment or information, without regard to the counts to which the defendant actually plead[s]." (Pub. L. No. 104-132 § 209; 18 U.S.C. § 3551 note)

1. <u>Mandatory Restitution Offenses</u>. Section 3663A of Title 18 mandates that restitution be ordered for crimes of violence, for offenses against property under the criminal code (unless the court makes a special finding described in subsection (c)(3) of that section), and for offenses described in 18 U.S.C. § 1365, if an identifiable victim or victims suffered a physical injury or pecuniary loss. Several other previously enacted statutes also mandate restitution: 18 U.S.C. §§ 2248, 2259, 2264, and 2327. In cases that fall under these statutes, the court is obligated to impose a restitution order.

2. <u>Nonmandatory Restitution Offenses</u>. Even when restitution is not mandatory, Federal prosecutors should give careful consideration to seeking full restitution to all victims of all charges contained in the indictment or information as part of any plea agreement.

3. <u>Both Mandatory and Nonmandatory Restitution Offenses</u>. When an indictment contains both charges for which restitution is mandatory and charges for which restitution is not mandatory, prosecutors should give careful consideration to requiring either a plea to a mandatory restitution charge or an acknowledgment by the defendant in the plea agreement that a mandatory restitution charge gave rise to the plea agreement. Either step will trigger the application of the mandatory restitution provisions of 18 U.S.C. § 3663A. (18 U.S.C. § 3663A(c)(2))

4. <u>Application of the Sentencing Guidelines</u>. Prosecutors should be mindful that the *United States Sentencing Guidelines* generally require the imposition of restitution when it is authorized by law, and prosecutors should not enter into agreements on restitution that would violate the U.S.S.G. (U.S.S.G. § 5E1.1; USAM § 9-27.410 [now published at USAM § 9-27.400 *et seq.*]) Moreover, prosecutors should recognize that anticipatory payment of restitution is a factor to be considered in determining "acceptance of responsibility." (U.S.S.G. § 3E1.1, cmt. n.1(c))

5. <u>Approval of Plea Agreements by Supervisory Attorneys</u>. Supervisory attorneys who review plea agreements (as required by the "Principles of Federal Prosecution" (USAM § 9-27.450)) and assistant U.S. Attorneys who draft plea agreements should ensure that they comply with the law and with these *AG Guidelines*. The Principles of Federal Prosecution list the factors that should be considered when determining whether to enter into a plea agreement. These factors include, among other considerations, the effect that the plea agreement will have on the victim's right to restitution. (USAM §§ 9-27.420–430)

6. <u>Other Considerations</u>. In general, plea agreements should require the following:

   a. Accounting of Economic Circumstances. A defendant must provide a complete and accurate accounting of his or her economic circumstances, including the disposition of any illegally received funds, to both the U.S. probation officer and the prosecutor.

   b. Immediate Enforceability of Criminal Penalties. Any criminal monetary penalties must be paid immediately and may be enforced immediately (prosecutors should encourage the defendant to make payment toward his restitution obligation before the imposition of sentence. (U.S.S.G. § 3E1.1, cmt. n.1(c))

   c. Prepayment of Special Assessments. In order to reduce the administrative burden imposed on the United States Attorney's Office (USAO), the Bureau of Prisons, and the clerk of the court, statutorily required special assessments should be paid prior to sentencing.

**E. Restitution Procedures**

When seeking to have restitution imposed, prosecutors must follow the procedures that are set forth in 18 U.S.C. § 3664.

1. <u>Determining the Amount of Restitution</u>

   a. List of Amounts Subject to Restitution. An attorney for the Government is statutorily required to provide promptly to the probation office upon request a

list of the amounts subject to restitution. Prosecutors should provide such a list, if appropriate, even when it is not requested.

The statute further requires the attorney for the Government to consult "to the extent practicable" with all identified victims before providing this list. (18 U.S.C. § 3664(d)) Responsible officials should contact victims directly whenever practicable. In cases in which direct contact is impracticable, such as cases involving large numbers of victims, responsible officials may publish a notice in a manner designed to reach as many victims as possible.

b.   Verification of Loss. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the Government. (18 U.S.C. § 3664(e)) Because the attorney for the Government bears this burden, the attorney should work with the investigative agent to try to verify the amount of loss claimed by each victim. After the required consultation with the victims, the attorney for the Government may make an independent determination regarding the amount of the losses that can be proved by a preponderance of the evidence and that are appropriately attributable to the defendant's criminal conduct.

c.   Restitution in the Full Amount. In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's loss without regard to the economic circumstances of the defendant. (18 U.S.C. § 3664(f)(1)(A)) In other words, even though restitution may not be mandatory, it must be ordered in full if it is to be ordered at all. Thus, for purposes of discretionary restitution under § 3663, the amount of the loss and the defendant's economic circumstances may be considered by the court on the issue of *whether* to award restitution, but those factors are irrelevant to the *amount* of restitution ordered. (18 U.S.C. § 3663(a)(1)(B)(i))

d.   Deferral of Final Determination. If the victim's or victims' losses cannot be determined at least 10 days prior to sentencing, the attorney for the Government or the probation officer should so inform the court, and a date for final determination of the losses may be set for up to 90 days after the sentencing. (18 U.S.C. § 3664(d)(5))

e.   Amended Restitution Orders. Even after a final determination of restitution, a victim may petition the court for an amended restitution order within 60 days after discovering additional losses. A showing of good cause for failure to include such losses in the initial claim is required before such an order can be granted. (18 U.S.C. § 3664(d)(5))

f.   Fine as Impairment of Restitution. A fine shall be imposed only to the extent that it would not impair the defendant's ability to make restitution to a victim other than the United States. (18 U.S.C. § 3572(b))

g.   Report of the Probation Officer. After the attorney for the Government gives the probation officer the list of the amounts subject to restitution, the probation officer is required to include in the presentence report (or another report if a presentence report is not prepared) a complete accounting of losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. Each defendant is required to provide to the probation officer with an affidavit describing his or her financial resources, including a complete list of all assets owned or controlled as of the date on which the defendant was arrested, the financial needs and earning ability of the defendant and the defendant's dependents, and such other information as the court may require. (18 U.S.C. § 3664(d)(3)) If the number or identity of the victims cannot be ascertained, or other circumstances make it impracticable for the probation officer to complete the report for the court, the probation officer will so inform the court. (18 U.S.C. § 3664(a))

h.   Notice to Victims. Probation officers are responsible for notifying all identified victims of—

    (1)  The offense(s) of which the defendant was convicted.

    (2)  The amounts subject to restitution that were submitted to the probation officer.

    (3)  The victims' opportunity to submit information to the probation officer concerning the amount of their losses.

    (4)  The scheduled date, time, and place of the sentencing hearing.

    (5)  The availability of a lien in favor of the victims pursuant to 18 U.S.C. § 3664(m)(1)(B).

    (6)  The victims' opportunity to complete and file with the probation officer separate affidavits (on a form provided by the probation officer) relating to the amount of their losses subject to restitution.

        The statute permits the prosecutor's office to coordinate with the probation office in making such notices, and responsible officials should assist in providing this notice in whatever way possible. Much of this information should be provided to the victim through VNS. (18 U.S.C. § 3664(d)(2))

     i.   Additional Documentation. After reviewing the probation officer's report, the court may require additional documentation or hear testimony. (18 U.S.C. § 3664(d)(4)) These proceedings may be done in camera for privacy and are governed only by Fed. R. Crim. P. 32(i), chapter 227 (sentences), and chapter 232 (miscellaneous sentencing provisions). (18 U.S.C. § 3664(c))

2.   <u>Payment Provisions</u>. The attorney for the Government should advocate immediate payment of restitution, unless the interests of justice require otherwise. (18 U.S.C. § 3572(d)(1)) If the court finds that the interests of justice so require, the court may provide for payment on a date certain or in installments. (18 U.S.C. § 3572 (d)(1)) If the court does not require immediate payment, the length of time over which scheduled payments are made shall be the shortest time in which full payment can reasonably be made. (18 U.S.C. § 3572(d)(2)) Except in extraordinary circumstances, prosecutors should request that the court order a payment schedule that requires a defendant to pay restitution to the full extent of his or her financial ability. Prosecutors should not agree to a payment plan that precludes enforcement pursuant to 18 U.S.C. § 3613.

3.   <u>Change in Defendant's Economic Circumstances</u>. A restitution order must provide that the defendant notify the court and the Attorney General (through the United States Attorney's Office) of any material change in economic circumstances that might affect his or her ability to pay restitution. (18 U.S.C. § 3664(k)) This requirement should be in effect only for as long as the defendant remains liable for payment of restitution. Victims and the United States may also notify the court of any change in the defendant's economic condition. (18 U.S.C. § 3664(k)) After receiving notice of any material change in the defendant's economic circumstances, the U.S. Attorney's Office must then notify all of the victims of this change in circumstances and must certify to the court that the victims have been notified. After receiving this notification, the court may adjust the repayment schedule *sua sponte* or on the motion of any party. (18 U.S.C. § 3664(k))

If an incarcerated defendant who is obligated to pay restitution receives "substantial resources from any source," the defendant is required to apply the value of the resources to any unpaid restitution or fine. (18 U.S.C. § 3664(n)) During their incarceration, inmates who are liable for restitution should be encouraged to participate in programs that enhance their income and financial responsibility.

## F. Sentencing

When the court imposes a restitution obligation, the prosecutor should seek to ensure that the victims are clearly identified and that the amount due as restitution to each victim is clearly specified. If applicable, the court should also clearly specify joint and several liability and the order of distribution among victims.

Additionally, victims have the right "to be reasonably heard at any public proceeding in the district court involving . . . sentencing" (18 U.S.C. § 3771(a)(4)), which would include restitution.

When more than one defendant is liable for restitution, prosecutors should ordinarily seek the imposition of joint and several liability. (18 U.S.C. § 3664(h)) However, when the defendant had only a minimal role in the offense, the defendant has provided exceptional cooperation, or the administration of the restitution obligation would be more efficient if the extent of a defendant's liability is limited, the prosecutor may recommend to the court that liability be apportioned or limited as long as the net result is that each victim is entitled to receive full restitution from some combination of the defendants.

In limited circumstances, the court may determine that, even though full restitution is authorized, the imposition of full restitution is not required because there are too many victims or unduly complex issues of fact that outweigh the need to provide restitution. This exception does not apply to crimes of violence. (18 U.S.C. § 3663A(c)(3)) When this exception does apply, the prosecutor should nevertheless seek restitution for the benefit of the victims to the extent practicable.

If payment in full cannot be made at the date of sentencing, prosecutors should still seek to ensure that payment is made in the shortest time in which full payment can reasonably be made. (18 U.S.C. § 3572(d)(2)) Payment plans should not limit the ability of the United States or the victim to immediately and fully enforce the restitution obligation using all available remedies authorized by law.

## G. Enforcement of Restitution

Pursuant to § 209 of MVRA, Pub. L. No. 104-132, § 209 (codified as a note under 18 U.S.C. § 3551), the Attorney General was directed to issue guidelines to ensure that "orders of restitution made pursuant to the amendments made by this subtitle [the MVRA] are enforced to the fullest extent of the law."

Restitution owed to victims of crimes is a critical part of the criminal judgment. The primary means to enforce restitution obligations are found in 18 U.S.C. §§ 3572, 3612, 3613, 3613A, 3614, 3615, 3664 and 28 U.S.C. §§ 3001–3301. In addition, State law may be used to enforce an order of restitution.

1. <u>Enforcement by the United States</u>. Orders of restitution imposed under MVRA must be enforced to the fullest extent of the law. Restitution owed to victims of crimes is a critical part of the criminal judgment. The Financial Litigation Units in the U.S. Attorneys' Offices should take all steps possible to help ensure that this money is collected and that victims of crime are fully compensated for their losses. All prosecutors and victim-witness coordinators should support the mission of criminal debt collection. Cooperation and coordination with the Financial Litigation Unit is in fact part of the performance appraisal of criminal assistant U.S. Attorneys.

Each U.S. Attorney must develop and maintain a memorandum of understanding or plan, which shall include a policy for addressing both the imposition and enforcement of restitution obligations. The Executive Office for United States Attorneys will provide a suggested model memorandum of understanding. The memorandum of understanding should address the role of the prosecutors, probation officers, victim-witness assistance coordinators, Asset Forfeiture Unit, and Financial Litigation Unit. Each USAO should establish a priority scheme to ensure that the most important and collectible restitution obligations receive priority attention.

2. <u>Aggressive Efforts To Enforce Restitution</u>. The liability to pay a fine or restitution issued under MVRA lasts 20 years plus any period of incarceration or until the death of the defendant. (18 U.S.C. § 3613(c)) Absent a court-ordered stay on appeal, a defendant who fails to pay restitution that is due immediately or defaults on a payment plan should be aggressively pursued for collection of the debt. Under MVRA, criminal defendants have very limited property that is exempt from seizure. The only property that is exempt from enforcement is some of the same property that is exempt from an IRS levy for taxes. (18 U.S.C. § 3613(a)(1))

3. <u>Filing of Liens</u>. An order of restitution is a lien in favor of the United States on all property and rights to property of the person fined as if it were liability for unpaid taxes. (18 U.S.C. § 3613(c)) To guarantee enforcement to the fullest extent of the law, a lien should be filed by the United States in all cases in which restitution is ordered to a non-Federal victim and not immediately paid. For Federal victims, a lien should be filed in all cases in which restitution is ordered in an amount greater than $500 and not immediately paid.

4. <u>Notice to Victims of Certain Proceedings</u>. Victims are entitled to notice of postjudgment public court enforcement proceeding. (18 U.S.C. § 3771(a)(2)) The right to notice does not apply to non-court proceedings, such as depositions not conducted before a judge, nor does the right to notice apply to uncontested motions or orders that do not require a hearing. (For example, notice is not required for the entry of an uncontested Garnishment Disposition Order, even if the local practice is that such orders are only entered when the judge is actually on the bench as opposed to in chambers). Each U.S. Attorney's Office should devise a procedure for ensuring that victims receive proper and timely notice, such as through VNS.

5. <u>Discovery of Assets</u>. Additionally, discovery of the debtor's assets should be pursued, to include, but not limited to, the following: reviewing the presentence report for asset information; requesting a financial statement or completed interrogatories from the debtor regarding assets and liabilities or, in the case of an incarcerated debtor, consulting with the assigned case manager regarding assets and liabilities; inquiring whether any victims have information about the debtor's assets; requesting asset information from the prosecutor and case agent; and researching online property-locator services available to the Financial Litigation Unit.

6. <u>Further Investigation</u>. In cases in which the U.S. Attorney's Office has reason to believe that the debtor may have assets based on the inquiries and research set forth above or other information, a credit report should be obtained and, where practicable, the deposition of the defendant or other parties who may have knowledge of the debtor's assets should be conducted.

7. <u>Default</u>. If it is discovered that a defendant who has defaulted on payment of restitution has the ability to pay, a default hearing under 18 U.S.C. § 3613A, or resentencing pursuant to 18 U.S.C. § 3614, should be considered. All enforcement remedies, including those under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001–3308, should be pursued, including garnishment of the debtor's wages, execution of the debtor's nonexempt property, and filing of a fraudulent transfer action. A victim may be entitled to notice (see paragraph 4 under this subsection). A victim may also be entitled to be heard under 18 U.S.C. § 3771(a)(4) if the public proceeding is deemed to involve sentencing.

8. <u>Enforcement Proceedings</u>. All enforcement proceedings must be in accordance with the law and justice. Thus, for example, garnishments should not issue against property that is clearly exempt under 18 U.S.C. § 3613. Criminal actions for nonpayment should only be initiated when the defendant's failure to pay is willful. Enforcement actions should not be taken that will make a defendant a public charge or, absent circumstances approved by the U.S. Attorney, deprive the defendant's dependents of a residence. (A debtor is not entitled to use stolen money to provide himself a residence.) Enforcement actions should make economic and administrative sense. Victims may be entitled to notice and an opportunity to be heard in accordance with 18 U.S.C. §§ 3771(a)(2) and (a)(4) (also see paragraph 4 and 7 of this subsection).

9. <u>Enforcement for Debtors Who Are Under Supervision by the Probation Office</u>. Enforced collection remedies should only be used against debtors under the supervision of the probation office after consultation with that office.

## H. Interaction Between Restitution and Asset Forfeiture

Government attorneys prosecuting civil or criminal forfeiture cases should assist crime victims in obtaining restitution in the following manner. If a defendant has sufficient assets to pay immediately the restitution order without using property forfeitable to the Government, the defendant must use those assets (not the forfeitable property) to satisfy the restitution order. If a defendant does not have sufficient assets to pay immediately the restitution order without using forfeitable property, however, the Government may use the procedural provisions of the forfeiture statutes to preserve and recover forfeitable property and to apply such property toward satisfaction of the restitution order.

There are essentially three manners in which the United States can use assets seized for forfeiture to satisfy a defendant's restitution obligations: petitions for remission, petitions for restoration, and, in some cases, direct transfers prior to forfeiture.

The first method for compensating victims is through a Petition for Remission. (28 C.F.R. § 9.1 *et seq.*) Petitions for Remission are submitted by each individual victim to the Department of Justice's Asset Forfeiture and Money Laundering Section (AFMLS). This option is particularly useful when there are victims of offenses that underlie civil forfeitures but no companion criminal case and, thus, no order of restitution. It is also useful in cases that involve only corporate entities.

The second method for compensating victims is through a Petition for Restoration. *Department of Justice Forfeiture Policy Directive 02-1—Guidelines and Procedures for Restoration of Forfeited Property to Crime Victims via Restitution in Lieu of Remission* allows AFMLS to restore criminally forfeited assets to victims who are named in a judicial restitution order. The U.S. Attorney's Office submits the Petition for Restoration on behalf of victims by certifying that the victims named in the court's restitution order meet the criteria for restoration under the policy. This option is particularly useful when multiple victims have incurred only economic losses, when the interest of third-party claimants must be determined, or when property would be best liquidated by using asset forfeiture procedures.

The third method for compensating victims is through the termination of forfeiture proceedings before a final order of forfeiture is entered. At the request of the United States, the district court may order that funds seized but not finally forfeited to the United States be paid to the clerk of the court toward the satisfaction of the defendant's restitution obligation. This option is particularly useful when the assets seized are liquid and when there are no third-party claimants.

## I. Limitation on Liability

These *AG Guidelines* are issued in conformance with the statutory requirements of MVRA. Pursuant to that Act, nothing in §§ 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of Title 18 and arising out of the application of those sections, and therefore nothing in these *AG Guidelines*, shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States. (18 U.S.C. § 3664(p))

## ARTICLE VI.
## GUIDELINES FOR CHILD VICTIMS AND CHILD WITNESSES

### A. Statement of Purpose

These guidelines are intended to guide every Justice Department law enforcement officer, investigator, prosecutor, victim-witness professional, and staff member in the proper and appropriate treatment of child victims and witnesses. At all times, Department personnel should be aware of the trauma child victims and witnesses experience when they are forced to relive the crime during the investigation and prosecution of a criminal case, particularly while they are testifying in court. A primary goal of such officials, therefore, shall be to reduce the trauma to child victims and witnesses caused by their contact with the criminal justice system. To that end, Department personnel are required to provide child victims with referrals for services and should provide child witnesses with such referrals.

The basic victims' rights laws discussed elsewhere in these *AG Guidelines* apply equally to child victims. In addition, Congress has enacted laws that specifically address the issues raised by children's participation in the criminal justice process. Congress enacted the Victims of Child Abuse Act of 1990 (VCAA) in response to an alarming increase in reports of suspected child abuse made each year. To address this nationwide emergency, the 1990 VCAA requires certain professionals to report suspected cases of child abuse under Federal jurisdiction and amends the United States Criminal Code to ensure protection of children's rights in court and throughout the criminal justice system. (18 U.S.C. § 3509) Article VI of these *AG Guidelines* shall serve to ensure full implementation of VCAA by all investigative, prosecutorial, and correctional components of the Department of Justice. Guidelines dealing with the reporting of suspected child abuse appear in article III.E.

### B. General Guidelines

    1. <u>Privacy Protections for Child Victims and Witnesses</u>

        a. Confidentiality of Information. Department personnel should scrupulously protect children's privacy in accordance with 18 U.S.C. § 3509(d) and these *AG Guidelines*. Department personnel connected with a criminal proceeding involving a child victim or witness shall keep all documents that disclose the name or any other information concerning the child in a secure place and shall disclose the documents only to persons who by reason of their participation in the proceeding have reason to know the information. (18 U.S.C. § 3509(d)(1))

        b. Filing Under Seal. Any Department employee filing papers in court that disclose the name of or any other information concerning a child shall file the papers under seal. (See procedure described in 18 U.S.C. § 3509(d)(2))

        c. Motion To Render Nonphysical Identifying Information Inadmissible. Federal prosecutors should consider moving in any prosecution under chapter 110 or section 1466A of Title 18 for an order that the name, address, social security

48

number, and other nonphysical identifying information (other than the age or approximate age) of any minor who is depicted in any child pornography shall not be admissible and may be redacted from otherwise admissible evidence. (18 U.S.C. § 2252A(e))

d. Protective Orders. Federal prosecutors should seek protective orders whenever necessary to protect the privacy of a child. Prosecutors should be aware that "any person" may seek such an order. (18 U.S.C. § 3509(d)(3); *see also* 18 U.S.C. § 3509(b)(2)(E) (describing protective orders in the context of videotaped depositions))

e. Sanctions for Violating the Disclosure Rules. A knowing or intentional violation of the privacy protection accorded children in 18 U.S.C. § 3509 is a criminal contempt punishable by not more than one year's imprisonment, or fine, or both. (18 U.S.C. § 403)

f. Disclosure to Certain Persons. Title 18 U.S.C. § 3509 does not prohibit disclosure of a child's name or other information about the child to the defendant, the attorney for the defendant, and others listed in the statute including anyone to whom, in the opinion of the court, disclosure is necessary to the welfare and well-being of the child. (18 U.S.C. § 3509(d)(4))

2. Guardian *ad Litem*

a. Appointment. To protect the best interests of the child, the court may appoint a guardian *ad litem* for a child who was a victim of, or a witness to, a crime involving abuse or exploitation. (18 U.S.C. § 3509(h)(1)) Although 18 U.S.C. § 3509(h) by its terms applies only to cases in which a child is a victim of or witness to abuse or exploitation, prosecutors should consider whether moving for the appointment of a guardian *ad litem* would be appropriate in any case in which a child is a victim of or a witness to a crime.

b. Attendance at Proceedings. The court-appointed guardian *ad litem* may attend all the depositions, hearings, and trial proceedings in which a child participates, and make recommendations to the court concerning the welfare of the child. (18 U.S.C. § 3509(h)(2))

c. Access to Documents. The guardian *ad litem* may have access to all reports, evaluations, and records, except attorney's work product, necessary to effectively advocate for the child. Because of the grand jury secrecy provisions contained in Fed. R. Crim. P. 6(e), the extent of a guardian *ad litem's* access to grand jury materials is limited to the access routinely provided to victims and their representatives. (18 U.S.C. § 3509(h)(2))

d. Duties. The guardian *ad litem* shall marshal and coordinate the delivery of resources and special services to the child. (18 U.S.C. § 3509(h)(2))

*e.* Testimony. The guardian *ad litem* shall not be compelled to testify in any court action or proceeding concerning any information or opinion received from the child in the course of serving as a guardian *ad litem*. (18 U.S.C. § 3509(h)(2))

3. <u>Extension of Child Statute of Limitations</u>. The statute of limitations for offenses involving the sexual or physical abuse of a child under the age of 18 years is extended for the life of the child. (18 U.S.C. § 3283)

4. <u>Multidisciplinary Child Abuse Teams</u>

a. Definition and Purpose. A multidisciplinary child abuse team is a professional unit composed of representatives from health, social service, law enforcement, and legal service agencies to coordinate the assistance needed to handle cases of child abuse. (18 U.S.C. § 3509(a)(7)) The purpose of multidisciplinary teams is to maintain the credibility and reliability of the child's testimony as well as to monitor the child's safety and well-being throughout the case. The goals of the multidisciplinary team are (1) to minimize the number of interviews to which the child is subjected to reduce the risk of suggestibility in the interviewing process, (2) to provide needed services to the child, and (3) to monitor the child's safety and well-being.

b. Consultation with Multidisciplinary Child Abuse Teams. A multidisciplinary child abuse team shall be used when it is feasible to do so. (18 U.S.C. § 3509(g)(1)) Department personnel should use existing multidisciplinary teams in their local communities. Law enforcement personnel are encouraged to bring other professionals onto the teams. Local laws and guidelines concerning the teams may vary, and Federal personnel should become familiar with the local provisions. If no multidisciplinary team is in place in a particular community, Department personnel should develop a team if in their judgment it is feasible to do so.

c. Role of Multidisciplinary Child Abuse Teams. The role of the multidisciplinary child abuse team shall be to provide services that the members of the team in their professional roles are capable of providing, including—

(1) Case service coordination and assistance, including the location of services available from public and private agencies in the community. (18 U.S.C. § 3509 (g)(2)(F)) This includes child support services, court schools for children, and similar services.

(2) Medical diagnoses and evaluation services, including provision or interpretation of x-rays, laboratory tests, and related services, as needed, and documentation of findings. (18 U.S.C. § 3509(g)(2)(A))

(3) Telephone consultation services in emergencies and in other situations. (18 U.S.C. § 3509(g)(2)(B))

(4) Medical evaluations related to abuse or neglect. (18 U.S.C. § 3509(g)(2)(C))

(5) Psychological and psychiatric diagnoses and evaluation services for the child, parent or parents, guardian or guardians, or other caregivers, or any other individual involved in a case with a child victim or witness. (18 U.S.C. § 3509(g)(2)(D))

(6) Expert medical, psychological, and related professional testimony. (18 U.S.C. § 3509(g)(2)(E))

(7) Training services for judges, litigators, court officers, and others that are involved in child victim and child witness cases, in handling child victims and child witnesses. (18 U.S.C. § 3509(g)(2)(G))

## C. Investigation/Forensic Interviewing of Child Victims and Witnesses

Particularly in cases of child abuse, evidence from medical examinations and forensic interviews of children may provide the only corroboration for a successful prosecution of the case. Medical examinations provide documentation of the event and injuries, and forensic interviews gather factual information from a child to determine if the subject was the victim of a crime or witnessed a crime against another person. The forensic interview should be appropriate for the age and developmental level of the subject, but it should not be confused with a therapeutic interview that is conducted for the purpose of designing treatment for and providing treatment to a child.

1. Referral for Medical Exam. The first investigator responding to a report of child abuse or sexual abuse shall refer the child victim for an emergency medical examination.

2. Forensic Interviewing Procedures To Reduce Trauma to Children. Whenever possible, interviews of child victims and witnesses should be conducted by personnel properly trained in the techniques designed to best elicit truthful information from a child while minimizing additional trauma to the child.

## D. Prosecutions Involving Child Victims and Child Witnesses

1. Closing the Courtroom. When a child testifies, the court may order the exclusion from the courtroom of all persons, including members of the press, who do not have a direct interest in the case. Such an order may be made if the court determines, on the record, that requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to communicate effectively. An order to close the courtroom shall be narrowly tailored to serve the Government's specific compelling interest. Federal prosecutors should consider consulting an expert

when evaluating whether testifying in open court may cause a child "substantial psychological harm." (18 U.S.C. § 3509(e))

2. <u>Speedy Trial</u>. In a proceeding in which a child is called to give testimony, the court may *sua sponte* or on a motion by the attorney for the Government or a guardian *ad litem* designate the case as being of special public importance. Attorneys for the Government should consider moving the court to make such a designation in any case involving a child witness for the Government. In cases so designated, the court shall expedite the proceeding and ensure that it takes precedence over any other. The court shall ensure a speedy trial to minimize the length of time the child must endure the stress of involvement with the criminal justice process. When deciding whether to grant a continuance, the court shall take into consideration the age of the child and the potential adverse impact the delay may have on the child's well-being. The court shall make written findings of fact and conclusions of law when granting a continuance in cases involving a child. (18 U.S.C. § 3509(j))

3. <u>Stay of Civil Action</u>. If, at any time that a cause of action for recovery of compensation for damage or injury to the person of a child exists, a criminal action is pending which arises out of the same occurrence and in which the child is the victim, the civil action shall be stayed until the end of all phases of the criminal justice action, and any mention of the civil action during the criminal justice proceeding is prohibited. A criminal action is pending until its final adjudication in the trial court. (18 U.S.C. § 3509(k))

4. <u>Competency</u>

   a. Presumption. A child is presumed to be competent. (18 U.S.C. § 3509(c)(2); *see also* Fed. R. Evid. 601.)

   b. Requirements of Written Motion and Compelling Reasons. The court may conduct a competency examination of a child witness only upon written motion and offer of proof of incompetency by a party. To hold an examination, the court must determine on the record that compelling reasons exist. A child's age alone is not a compelling reason. Psychological and psychiatric examinations to assess the competency of a child witness shall not be ordered without a showing of compelling need. (18 U.S.C. §§ 3509(c)(3), (4), (9))

   c. Conduct of the Examination. A competency examination regarding a child witness shall be conducted out of the sight and hearing of a jury. Only persons listed in 18 U.S.C. § 3509(c)(5) are permitted to be present. Direct examination of the child shall normally be conducted by the court on the basis of questions submitted by the attorney for the Government and the attorney for the defendant, including a party appearing pro se. The court may permit an attorney, but not a party appearing pro se, to examine a child directly on competency, if the court is satisfied that the child will not suffer emotional trauma as a result of the examination. Federal prosecutors should consider

making this request of the court because in many instances questioning by a familiar person may be less traumatic for the child. Prosecutors should, however, be aware that defense attorneys likewise may make such a request. (18 U.S.C. §§ 3509(c)(7)) Questions asked shall be appropriate to the age and developmental level of the child, shall not be related to the issues at trial, and shall focus on determining the child's ability to understand and to answer simple questions. (18 U.S.C. § 3509(c)(8))

5. <u>Adult Attendant</u>. A child testifying at or attending a judicial proceeding has the right to be accompanied by an adult attendant to provide emotional support for the child. (18 U.S.C. § 3509(i))

The statute permits the court, at its discretion, to allow the adult attendant to remain in close physical proximity to or in contact with the child while the child testifies. The court may allow the adult attendant to hold the child's hand or allow the child to sit on the adult attendant's lap throughout the course of the proceeding. The adult attendant shall not provide the child with an answer to any question directed to the child during the course of the child's testimony or otherwise prompt the child. The image of the adult attendant, for the time the child is testifying by closed-circuit television or being deposed, shall be recorded on videotape contemporaneously with the image of the child. Federal prosecutors should inform children and their guardians of this right and facilitate its implementation. (18 U.S.C. § 3509(i))

6. <u>Testimonial Aids</u>. The court may permit a child to use anatomical dolls, puppets, drawings, mannequins, or any other demonstrative device the court deems appropriate for the purpose of assisting a child in testifying. (18 U.S.C. § 3509(*l*))

Federal prosecutors have a wide variety of demonstrative devices to choose from to assist children in testifying. Prosecutors should use their sound judgment in deciding which device to use. Some devices, such as anatomical dolls, should be used only after training on their proper use and careful consideration of the case law regarding their use.

7. <u>Alternatives to Live, In-Court Testimony by Child Victims</u>

a. Reasons. A Federal statute permits prosecutors to use live testimony by closed-circuit television and videotape depositions as alternatives to live, in-court testimony from child witnesses in cases involving offenses against children, when the court finds that the child is unable to testify in open court for any of the following reasons:

(1) The child is unable to testify because of fear.

(2) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

53

(3) The child suffers a mental or other infirmity.

(4) Conduct by defendant or defense counsel causes the child to be unable to continue testifying.

(18 U.S.C. § 3509(b)(1)(B)(i) - (iv) and (b)(2)(B)(i)(I) - (IV))

Notwithstanding the foregoing statutory authority, prosecutors should be aware that constitutional constraints arguably require three criteria to be satisfied before any alternative to live, in-court testimony can be used:

(1) In-court testimony would traumatize the child witness.

(2) The trauma would result from the presence of the defendant.

(3) The trauma would render the child witness unable to communicate.

*See Maryland* v. *Craig*, 497 U.S. 836 (1990); *cf. Crawford* v. *Washington*, 541 U.S. 36 (2004). Some Federal appellate courts have held as much. *See, e.g.*, *United States* v. *Bordeaux*, 400 F.3d 548 (8th Cir. 2005) (reversing a conviction obtained by way of two-way, closed-circuit testimony from a child victim, because the district court had failed to find that the child's "fear of the defendant was the dominant reason" for her inability to testify in open court). Prosecutors should therefore consider seeking to establish the presence of these three factors on the record before relying on alternatives to live, in-court testimony.

b.  Who May Apply. In a proceeding involving an alleged offense against a child, the following persons may apply to the court for an order for an alternative to live in-court testimony: the attorney for the Government; the child's attorney; a guardian *ad litem*; and the child's parent or legal guardian (videotaped depositions only). (18 U.S.C. § 3509(b)(1)(A) and (b)(2)(A))

c.  Child Victims' Live Testimony by Two-Way Closed-Circuit Television

(1) Timing. The person seeking the order shall apply for the order at least 5 days before the trial date, unless the court finds on the record that the need for such an order was not reasonably foreseeable.

(2) Preliminary Findings. The court shall support a ruling on the child's inability to testify with findings on the record. In determining whether the impact on an individual child (of one or more of the factors or reasons listed in paragraph 7.a. above) is so substantial as to justify an order allowing testimony by closed-circuit television, the court may question the child in chambers, or at some other comfortable place other

54

than the courtroom, on the record for a reasonable period of time, with the child attendant, the prosecutor, the child's attorney, the guardian *ad litem,* and the defense counsel present.

(3) Conduct of the Televised Proceeding. If the court orders the taking of the child's testimony by closed-circuit television, the attorney for the Government and the attorney for the defendant (not including a defendant appearing pro se) shall be present in a room outside the courtroom with the child and the child shall be subjected to direct and cross-examination. The only other persons who may be permitted in the room with the child during the child's testimony are the child's attorney or guardian *ad litem;* persons necessary to operate the closed-circuit television equipment; a judicial officer, appointed by the court; and other persons whose presence is determined by the court to be necessary to the welfare and well-being of the child, including an adult attendant, as described in 18 U.S.C. § 3509(i).

The child's testimony shall be transmitted by closed-circuit television into the courtroom for viewing and hearing by the defendant, jury, judge, and public. The defendant shall be provided with the means of private, contemporaneous communication with the defendant's attorney during the testimony. The closed-circuit television transmission shall relay the defendant's image and the voice of the judge into the room in which the child is testifying. (18 U.S.C. § 3509(b)(1))

d. Videotape Deposition of Child Victims. A court may issue an order that a deposition be taken of the child's testimony and that the deposition be recorded and preserved on videotape. If at the time of trial the court finds that the child is unable to testify for the reasons set out above, the court may admit into evidence the child's videotaped deposition in lieu of the child's testifying at the trial. (18 U.S.C. § 3509(b)(2)(C))

(1) Preliminary Finding. Upon receipt of an application for a videotaped deposition, the court is required to make a preliminary finding regarding whether at the time of trial the child is likely to be unable to testify in open court in the physical presence of the defendant, jury, judge, and public for any of the reasons listed in 7.a. above. If the court finds that the child is likely to be unable to testify in open court for any of these reasons, the court shall order that the child's deposition be taken and preserved by videotape.

(2) Conduct of the Deposition. The trial judge shall preside at the videotape deposition of a child and shall rule on all questions as if at trial. The only other persons who may be permitted to be present at the proceeding are the attorney for the Government; the attorney for the defendant; the child's attorney or guardian *ad litem;* persons necessary to operate the

videotape equipment; the defendant, subject to 18 U.S.C. § 3509(b)(2)(B)(iv); and, other persons whose presence is determined by the court to be necessary to the welfare and well-being of the child, including an adult attendant, as described in 18 U.S.C. § 3509(i).

(3) Defendant's Rights. The defendant shall be afforded the rights applicable to defendants during trial, including the right to an attorney, the right to be confronted with the witness against the defendant, and the right to cross-examine the child. (18 U.S.C. § 3509(b)(2)(B)(iii) and (iv))

(4) Procedures for Handling and Preserving the Videotape. Procedures for handling and preserving the child's videotape deposition are listed in 18 U.S.C. § 3509 (b)(2)(B)(v) and (b)(2)(F).

(5) Protective Order. In connection with the taking of a videotaped deposition, the court may enter a protective order to protect the privacy of the child. (18 U.S.C. § 3509(b)(2)(E))

8. <u>Victim Impact Statement</u>. The directives concerning victim impact statements appearing elsewhere in these *AG Guidelines* apply equally to cases in which children are victims. (18 U.S.C. § 3771(a)(4); *see supra* art. IV.B.3.a)

Responsible officials should obtain and report to the probation officer accurate information concerning a child's victimization. Children can prepare victim impact statements. Child victim impact statements should be in an age-appropriate format that permits the child to express his or her views concerning the personal consequences of his or her victimization at a level and in a form of communication commensurate with his or her age and ability.

To provide the probation officer with the most useful and accurate information possible, responsible officials should request information from the multidisciplinary child abuse team and other appropriate sources to determine the impact of the offense on the child victim and any other children who may have been affected.

9. <u>Sentencing</u>. A Federal prosecutor's responsibility for advocating the interests of victims at sentencing includes child victims. (Fed. R. Crim. P. 32; *see also supra* art. IV.B.3.b)

As with adult victims, at the earliest opportunity and within sufficient time for the victim to prepare a statement that can be presented at sentencing, the responsible official should notify the victim by available and reasonable means of the victim's right to address the court at sentencing and of the date, time, and place of the scheduled hearing. If the victim is present and if the victim wants to make a statement at the sentencing, the prosecutor should advise the court of the right of a victim to be reasonably heard at the sentencing hearing. (18 U.S.C. § 3771(a)(4))

Regardless of whether the victim is present, the right of allocution defined above may be exercised instead by a parent or legal guardian of the victim who is present at the sentencing hearing if the victim is below the age of 18 years or is incompetent. If the victim is deceased or incapacitated, this right of allocution by the victim may be exercised by one or more family members or relatives designated by the court and present at the sentencing hearing. (18 U.S.C. § 3771(e))

## ARTICLE VII.
## GUIDELINES FOR VICTIMS OF DOMESTIC VIOLENCE, SEXUAL ASSAULT, OR STALKING

With the passage of the Violence Against Women Act (VAWA) in 1994, Congress recognized that victims of domestic violence, sexual assault, or stalking have special needs. VAWA recognized the devastating consequences that violence has on victims, families, and society as a whole and acknowledged that these crimes require specialized responses to address unique barriers that prevent victims from seeking assistance and redress through the justice system.

### A. Statement of Purpose

These guidelines are intended to provide guidance on the special needs of victims of domestic violence, sexual assault, or stalking. Although the basic victims' rights laws and policies discussed elsewhere in these guidelines apply equally to victims of domestic violence, sexual assault, or stalking, this section focuses on provisions that are of particular importance for victims of these crimes. These crimes often cause mental and emotional trauma as well as physical injury. It may be more difficult for victims to report these crimes because of the associated social stigma and because the victims often have an ongoing relationship with the offender. In addition, these crimes are generally committed for the purpose of exerting power and control over the victim. These victims are in great danger of future violence after reporting and during the investigation and prosecution of the case. Appropriate responses in these cases can save lives, prevent future violence, and promote victim recovery. For these reasons, Department personnel involved in investigating and prosecuting cases involving domestic violence, sexual assault, or stalking should make victim safety a high priority. Although these crimes are commonly referred to as "violence against women" because the majority of victims are women, these guidelines apply to all victims, regardless of gender.

### B. General Guidelines

1.  Victims' Declination of Services. Victims are not required to accept services and may choose to decline to receive further services. When victims do so, Department personnel should determine specifically what information and services the victim wants to forgo. In addition, Department personnel should ensure that victims are making an informed decision about the rights and services available to them. (*See supra* art. II.I.)

2.  Privacy Protections for Victims of Domestic Violence, Sexual Assault, or Stalking. As discussed in article III.G, Department employees should use their best efforts to respect the privacy and dignity of especially vulnerable victims, including victims of domestic violence, sexual assault, or stalking. In sexual assault cases, special consideration should be given to the appropriateness of using two types of evidence:

    a.  Evidence about a victim's past sexual behavior or alleged sexual predisposition is generally inadmissible in court. Prosecutors should be aware of this evidentiary rule and use it when appropriate. (Fed. R. Evid. 412)

58

    b.   Policy Disfavoring Polygraphs of Sexual Assault Victims. Department employees should not request that sexual assault victims take a polygraph except in extraordinary circumstances.

3.   <u>Services for Victims of Domestic Violence, Sexual Assault, or Stalking at the Investigation Stage</u>. In addition to providing the services covered elsewhere in these *AG Guidelines* (*see supra* art. IV.A.3), responsible officials at the investigative stage should, when appropriate, give particular consideration to providing the following services to victims of domestic violence, sexual assault, or stalking:

    a.   Assistance in Developing a Safety Plan. A safety plan is an individualized plan developed by victims of crime to reduce the threats of harm that they and members of their family face. Safety plans include strategies to reduce the risk of physical violence and harm (such as obtaining a protective order) and strategies to maintain basic human needs, such as housing and income, despite the disruption caused by the victimization (including relocation, loss of employment, and physical injury). Victims may require, and responsible officials should consider providing, assistance in identifying potential risks to safety and well-being, options for addressing those risks, and the types of services and support that may be required from the criminal justice system and providers of community-based victim services.

    b.   Referrals to and Assistance in Accessing Victim Advocacy and Support Services in the Community. Victims of domestic violence, sexual assault, or stalking may need support for an extended period of time. It is therefore highly advisable to assist victims in accessing ongoing support, advocacy, and legal services from community-based victim service providers. Responsible officials should make referrals to and emphasize the benefits of victims making contact with community-based victim service programs.

    c.   Assistance in Enrolling in Address-Confidentiality Programs and Taking Other Safety Measures. Responsible officials should be familiar with any victim address-confidentiality program that exists in the jurisdiction and the requirements for enrollment in those programs. Such programs provide an alternate legal address for the victim and forward correspondence to the victim confidentially.

4.   <u>Services or Victims of Domestic Violence, Sexual Assault, or Stalking at the Prosecution Stage</u>. A prosecuting official's responsibilities include providing victims of any crime with certain information and notices, referrals to services, and consultation with the Government attorney. In cases involving victims of domestic violence, sexual assault, or stalking, Department personnel should refer with special care to these *AG Guidelines*. (*See supra* art. III.G (Victim Privacy); IV.B.2.d (Separate Waiting Area); IV.B.2.g. (Limited Testing of Defendants in Sexual Assault Cases); and IV.A.3.a(1)(g)

(Right to Make a Statement About Pretrial Release in an Interstate Domestic Violence, Stalking, or Violation of a Protective Order Case))

5. <u>Services for Victims of Domestic Violence, Sexual Assault, or Stalking at the Corrections Stage</u>. In cases involving victims of domestic violence, sexual assault, or stalking, Department personnel should refer with special attention to article IV.C.2.a.(2) (Custodial Release Notification).

6. <u>Mandatory Restitution for Victims of Sexual Abuse or Domestic Violence</u>. The Violence Against Women Act of 1994 requires courts to order full restitution in cases of sexual abuse (18 U.S.C. § 2248) and domestic violence (18 U.S.C. § 2264). In cases of domestic violence and sexual assault, Department personnel should consider the following when implementing restitution procedures:

   a. In order to protect the confidentiality of the victim's location, and to increase the likelihood of locating victims after an extended period of time, victims should be encouraged to provide an alternate contact, such as a family member, through whom they could be contacted in the event that restitution is ultimately collected.

   b. Because the victim and offender may own shared property, care should be taken to ensure that seizure of property from an offender for payment of restitution or fines does not impair the property rights of the crime victim.

7. <u>Immigration Relief for Victims of Domestic Violence, Sexual Assault, or Stalking</u>. Certain aliens who are victims of domestic violence, sexual assault, or stalking may be eligible for special immigration relief that would permit them to gain legal residence in the United States. Immigrant victims should be encouraged to consult with a qualified immigration law practitioner for advice concerning the full range of benefits for which they may be eligible.

   a. VAWA Self-Petitioning. The immigration provisions of the Violence Against Women Act allow certain battered immigrants to file for immigration relief without their abusers' assistance or knowledge. This relief is available only for the spouses and children of U.S. citizens or aliens lawfully admitted for permanent residence. (8 U.S.C. § 1154)

   b. S–5 Visa. An S–5 visa may be granted when the applicant has reliable information about an important aspect of a crime or the pending commission of a crime, is willing to share the information with law enforcement officials or to testify in court, and the applicant's presence in the United States is necessary to the successful investigation or prosecution of a case. (8 U.S.C. § 1101(a)(15)(S))

   c. U Visa. U visas may be available to aliens who have suffered substantial physical or mental abuse as a result of being the victims of certain crimes

60

designated by the Violence Against Women Act of 2000—including rape, domestic violence, trafficking, sexual assault, abusive sexual contact, and sexual exploitation—that violate Federal, State, or local laws and have occurred while in the United States (including in Indian Country and on military installations) or its territories or possessions. To be eligible for a U visa, the victim must possess information concerning the crime, and the U visa petition must include a certification from a Government official (as listed in the statute) stating that the victim is helping, has helped, or is likely to be helpful in the investigation or prosecution of the crime. Recipients of U visas are eligible for employment authorization and may, after 3 years, adjust their status to that of a lawful permanent resident in accordance with Federal law and regulations. In appropriate circumstances, these visas may be available to family members of the victim. (8 U.S.C. §§ 1101(a)(15)(U), 1184(p), 1255(l))

d.   T Visa. An immigrant victim of domestic violence, sexual assault, or stalking may also be a victim of a severe form of trafficking in persons. If so, he or she may be eligible for a T visa. (8 U.S.C. § 1101(a)(15)(T))

# ARTICLE VIII.
# GUIDELINES FOR VICTIMS OF TERRORISM AND OTHER MASS CASUALTIES

Some violent crimes may involve large numbers of victims who suffer physical injury, death, or extreme psychological injury. Terrorism involves extreme factors that exacerbate the impact on victims and challenge the ability of Department employees to meet victim assistance requirements and the complex needs of the victims. Responding to victims may be made more challenging due to the magnitude of the event, numbers of victims, where they reside, and where the crime occurred. Acts of terrorism affecting U.S. citizens overseas are investigated by the FBI and sometimes indicted by the Justice Department. If the crime occurs in another country, that country may arrest and prosecute those responsible. Investigations and prosecutions of terrorism crimes by other countries present difficult challenges for victims and the Justice Department officials who are responsible for providing services to these victims. Some FBI and Justice Department investigations may be pending for years and even decades, thus providing challenges for the component responsible for maintaining contact with victims and keeping them informed.

In addition to terrorism, other types of crime may involve large numbers of victims. Some of these crimes include aviation disasters and toxic spills caused by deliberate actions.

The term "mass violence" is not statutorily defined. For purposes of these *AG Guidelines*, "mass violence" means an intentional violent criminal act that results in physical, emotional, or psychological injury to so large a number of victims as to significantly increase the burden of victim assistance and compensation for the responding jurisdiction.

## A. Statement of Purpose

This article is intended to guide responsible officials and other Department employees, including investigators, prosecutors, and victim assistance personnel, in meeting the demands of assisting victims of crimes involving terrorism, mass violence, or large-scale casualties.

## B. Identification of Victims

Responsible officials shall determine who has suffered direct harm as a result of an act of terrorism or other form of mass violence. Determining who has suffered direct victimization as a result of terrorism or other crime of mass violence involving hundreds or thousands of individuals may be a difficult process. In some situations, it may be necessary for FBI agents and victim specialists to conduct a joint victim identification and intake process with organizations such as the Red Cross or local responding agencies. Accurate and timely identification of victims and development of contact information for surviving victims and family members of deceased victims may be complicated when nongovernmental relief agencies are the first to develop victim lists. Some relief organizations have taken the position that they are prohibited from sharing victim information with Government agencies. It may become necessary to subpoena victim names and contact information in such cases, but responsible officials should avoid taking such an adversarial approach if victim information can be obtained in a timely manner by other means. Responsible officials should

62

consider using any of the various means of identifying victims that are surveyed with respect to crimes involving large numbers of victims. (*See supra* art.II.G.1.) In cases involving terrorism or mass violence in a foreign country, the State Department should be consulted on its role in identifying and contacting victims.

In the event of a chemical or biological incident affecting large numbers of victims, Department personnel should coordinate with the Centers for Disease Control and Prevention and other responsible agencies to identify victims. The provision of information and assistance to victims as required by Federal law and these *AG Guidelines* may then be handled as it would be in response to other crimes involving large numbers of victims.

## C. Provision of Services

The component of the Justice Department with responsibility for investigating the crime shall begin the process of providing information and assistance to victims at the earliest practicable opportunity.

Families of victims may be asked to identify the legal next-of-kin or provide a single point-of-contact for purposes of receiving information, personal effects, or benefits. Nevertheless, given the mobility and complexity of families, responsible officials should consider defining broadly which family members are entitled to receive information relating to a pending investigation.

Mechanisms utilized to provide information and assistance should be designed to ensure equality of treatment and to promote access by the largest number of victims. Among the matters to be considered in cases involving large numbers of victims or geographically dispersed victims are the following:

1. Notifications. Various means of providing information to victims may be appropriate in cases involving terrorism and mass casualties. They include the following:

    a. Toll-free hotlines. Toll-free lines may be established to handle multiple cases or individual cases. They may be set up on a statewide, nationwide, or international basis. These hotlines should be updated regularly in order to maintain credibility with victims.

    b. Case-Specific Web Pages. Case-specific Web pages have the benefits of being cost efficient, maintainable over a long period of time, and unintrusive because use by victims is self-initiated. They may be used to post information as diverse as trial transcripts and information on attending the trial and coping with the emotional impact of the trial.

    c. Closed-Circuit Broadcast of Trial Proceedings. 42 U.S.C. § 10608 requires that victims have access to closed-circuit television (CCTV) viewing of trial proceedings when a change of venue is granted and a trial is moved out of state and more than 350 miles from the location in which the proceeding would

originally have been brought. The law does not address the situation in which the location of the crime and the prosecution is not in the vicinity where most or all of the victims reside or circumstances involving victims who live in many different States or countries. Whenever feasible, prosecutors should encourage the trial court to cooperate in making trial proceedings accessible to the greatest number of victims.

    d.  Informational Briefings. Not all case information is appropriately communicated to victims through writing, especially when victims or surviving family members have been extremely traumatized by the impact of the crime or the information provided is of an extremely personal or sensitive nature. Personal contact and communication can serve a number of important purposes, including building better relationships between victims and Government officials, ensuring that victims have an opportunity to ask questions about complex issues, allowing multiple victims to hear the same information at the same time, and providing an opportunity for victims of the same crime to share their experiences. Briefings can be held in person or via telephone bridge calls, video conferencing, or Internet Web casting.

2.  <u>Direct Assistance</u>. Victims of terrorism or mass violence may receive assistance with travel to and lodging near criminal justice proceedings, support for crisis and mental health counseling, access to "safe havens" or separate and secure designated areas near a courthouse or CCTV site for viewing a trial. In addition, the Department makes funding available for victim compensation and assistance programs in each State and territory. These programs complement Federal efforts and victims should be referred to them for assistance in matters beyond the scope of the Federal Government.

3.  *<u>Autopsies of Overseas Terrorism Victims</u>*. The Department has both investigative and humanitarian interests in having access to critical forensic evidence in terrorism cases, including the remains of U.S. citizen victims. The FBI exercises lead agency responsibility in terrorism cases under U.S. jurisdiction. Under optimal circumstances, recovery and processing of victim remains should be integrated into the investigation by the FBI. FBI officials should consult with families of victims on the issue of an autopsy and provide an explanation of the process, how remains will be returned to them, and how they can receive information about autopsy findings. FBI officials should give due consideration to religious and cultural concerns expressed by the family and try to accommodate their wishes to the extent possible. The FBI should coordinate the return of remains, personal effects, and death certificates to family members following any autopsy that it orders.

4.  <u>Return of Personal Effects</u>. A mass-casualty crime may require that Department personnel review all personal effects collected from the victims and their immediate vicinity. Sensitivity should be used in preparing and presenting personal effects to the victims' families. Department personnel should return personal effects to the legal next-of-kin or another individual who is legally authorized to receive the items.

Ensuring that surviving victims and family members receive personal effects and other property belonging to victims may be complicated by several factors: (1) the volume of personal effects retained for evidence or forensic testing, (2) the length of time items may need to be held, and (3) the condition of personal effects recovered after crimes involving high-impact weapons. Responsible officials should consider establishing operations, if authorized and funded by Congress, for processing personal effects or contracting with private companies that specialize in decontamination, cleaning, and restoration of personal effects.

5. <u>Prosecutions in Foreign Countries</u>. When arrests and prosecutions occur in other countries, the responsible official should attempt to facilitate the provision of information about those proceedings to victims (through VNS, if appropriate), including notification of key events and proceedings, information on the criminal justice system in that country, and summaries or updates on trial proceedings, sentencing, and any subsequent appeals. These efforts should involve coordination with the FBI Legal Attaché Office or U.S. Embassy or Consulate officials in the relevant country.

6. <u>Transition of Victim Responsibilities Between Responsible Officials</u>. Once a case reaches the prosecution phase following an indictment, the size of the victim population may necessitate joint efforts by victim assistance personnel from both the investigative and prosecutorial components. Responsible officials should ensure a smooth transition of responsibilities.

## D. Multijurisdictional Response to Domestic Terrorism and Mass Violence Victims

A mass-casualty crime occurring within the United States will necessitate a multilevel response by local, State, and Federal agencies and nongovernmental organizations. The National Response Plan designates the FBI as the lead agency for crisis management and the Federal Emergency Management Agency (FEMA) in the Department of Homeland Security (DHS) as the lead agency for consequence management when the President has declared a major disaster. Federal victim assistance personnel at the national and local levels should maintain effective relationships with State and local agencies and organizations, including State victim compensation and assistance programs, to ensure that the Department can discharge victim identification, notification, and assistance requirements and support the community response. Victim assistance should be built into local planning efforts and the roles and responsibilities of individual agencies included in planning and exercises.

Victim assistance personnel should also coordinate with the Center for Mental Health Services in the Department of Health and Human Services in arranging the delivery of appropriate mental health services to victims in the aftermath of terrorism or mass violence.

## E. Criminal Aviation Disasters

The Aviation Disaster Family Assistance Act of 1996 (ADFAA) includes specific requirements for providing assistance, information, and support to families of victims.

65

ADFAA applies to ground casualties as well as passengers and crew on board the aircraft. The National Transportation Safety Board (NTSB) is responsible for coordinating family assistance and ensuring that ADFAA is enforced, unless the cause of the disaster is suspected or known to be criminal. If so, the responsibility transfers to the FBI along with the lead for investigating the disaster.

**ARTICLE IX.**
**GUIDELINES FOR VICTIMS OF HUMAN TRAFFICKING**

**A. Statement of Purpose**

Trafficking victims are particularly vulnerable because of the circumstances of their victimization and require extra assistance to ensure that they are cared for and provided with essential services after rescue. Many of these victims are children, many do not speak English, and many are not in the United States legally. Therefore, although trafficking victims possess all the rights and access to benefits that other victims possess, they have also been granted additional rights and benefits under the Trafficking Victims Protection Act (TVPA) and the Trafficking Victims Protection Reauthorization Act (TVPRA) of 2003 (codified at 22 U.S.C. § 7101 *et seq.*) and regulations pursuant thereto. This section describes those rights and benefits and directs the responsible official to ensure that trafficking victims are aware of and are provided with them.

**B. General Guidelines**

1. <u>Responsible Officials</u>. With the following exceptions, the responsible officials are those officials designated in article IV of these *AG Guidelines*.

    a. Investigation Stage. In the investigation stage, the FBI shall take reasonable steps to ensure that victims are provided with their rights as described in this section immediately upon notification that potential trafficking victims have been located. If the FBI is not the initial investigative agency to encounter a potential victim, the responsible official at the U.S. Attorney's Office or Civil Rights Division shall take steps to ensure that the rights of the potential victim are enforced.

    b. Coordination with Other Agencies During Both Investigation and Prosecution Stages. In both the investigation and prosecution stages, the responsible officials should coordinate with officials from other departments—particularly the Department of Homeland Security and the Department of Health and Human Services—to enforce the rights of victims of severe forms of trafficking.

2. <u>Identification of Victims</u>. In identifying victims at the earliest stage of an investigation (42 U.S.C. § 10607(b)(1)), the responsible official should determine whether a potential victim meets the definition of a victim of a severe form of trafficking, which involves—

    a. Sex Trafficking. Recruiting, harboring, transporting, providing, or obtaining a person for the purpose of a commercial sex act in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or

67

     b.  Forced Labor. Recruiting, harboring, transporting, providing, or obtaining a person for labor or services through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

(22 U.S.C. § 7105(b)(1)(C))

## C. Provision of Special Services for Victims of Human Trafficking

1. <u>Generally</u>. Victims of severe forms of trafficking are eligible for special services discussed in this article of these *AG Guidelines*. The services are available without regard to whether an indictment is eventually filed or whether any indictment that is filed includes TVPA charges. U.S. citizen victims may not be eligible for these services because of their citizenship status, which entitles them to other programs not available to alien victims.

2. <u>Detention</u>

    a.  To the extent practicable and allowed by law, victims of severe forms of trafficking should not be formally detained. (28 C.F.R. § 1100.31(b))

    b.  If detention is necessary, such victims should not be detained in facilities inappropriate to their status as crime victims (unless they are themselves charged with a crime). (22 U.S.C. § 7105(c) and 28 C.F.R. § 1100.31(b))

    d.  Where appropriate and practicable, such victims should be housed separately from areas in which criminals are detained. (28 C.F.R. § 1100.31(b))

    e.  To the extent practicable, trafficking victims in Federal custody shall—

        (1)  Receive necessary medical care, mental health assessment and treatment, and other assistance. (22 U.S.C. § 7105(c)(1)(B) and 28 C.F.R. § 1100.31(c))

        (2)  If their safety is at stake or if there is danger of additional harm, be provided protection including—

            (a)  Measures to protect them and their family members from intimidation, threats of reprisals, and reprisals from traffickers and their associates. (22 U.S.C. § 7105(c) (1)(C)(i) and 28 C.F.R. § 1100.31(d))

            (b)  Affirmative steps to ensure that the victims' names and identifying information are not disclosed to the public. (22 U.S.C. § 7105(c)(1)(C)(ii) and 28 C.F.R. § 1100.31(d))

3. <u>Information</u>. Responsible officials shall provide victims with information about their rights and applicable services, including the following:

    a. Legal Services. Pro bono and low-cost legal services, including immigration services.

    b. Federal and State Benefits and Services. The types of services and benefits available to trafficking victims are contingent upon whether a victim has been subjected to an act that satisfies the TVPA definition of a severe form of trafficking, the victim's immigration status, and the victim's willingness to assist law enforcement. Victims who are minors and who have received benefits-eligibility letters and adult victims who have certification from the Department of Health and Human Services (HHS) are eligible for assistance that is administered or funded by Federal agencies to the same extent as refugees. Others may be eligible for more limited benefits. In addition, minor dependent children of victims of a severe form of trafficking are also eligible for services.

    c. Victim Service Organizations and Assistance Programs. Relevant organizations may include domestic violence shelters and rape crisis centers. In addition, OVC funds programs that provide specialized and comprehensive services to individuals who have been identified by Federal law enforcement officials as victims of a severe form of trafficking but have not yet been certified by HHS as described above. (A detailed list of OVC-funded programs to help victims of trafficking in persons is available at http://www.ojp.usdoj.gov/ovc/help/traffickingmatrix.htm).

    d. Protections available, especially against threats and intimidation, and remedies available as appropriate for the victim's circumstances.

    e. Rights of individual privacy and confidentiality issues.

    f. Victim compensation and assistance programs.

    g. Immigration benefits and programs.

    h. Restitution.

    i. Notification of case status.

    j. Availability of medical services.

    (28 C.F.R. § 1100.33)

4. <u>Translation and Interpretation Services</u>. Trafficking victims shall have access to information about their rights and to translation services. The responsible official shall ensure that trafficking victims have reasonable access to translation services and/or interpreter services if those victims are not able to communicate in English or are illiterate

in their own language. (28 C.F.R. § 1100.33) Interpreters should be thoroughly screened to ensure that they are not in any way involved in the trafficking or familiar with either the victims or the traffickers.

5. <u>Immigration Benefits.</u> If a Department employee learns that a victim or witness does not have legal status in the United States, the employee should determine whether immigration relief as provided by TVPA or other Federal law is appropriate to ensure the ability of the victim or witness to remain in the United States. Department personnel should not offer victims or witnesses legal advice about legal status issues but should refer victims and witnesses to services that provide referrals to legal counsel. TVPA provides two forms of immigration relief: (1) continued presence and (2) a T visa. Both forms of relief are available only to victims of a severe form of trafficking. Continued presence may be sought only by Federal law enforcement on behalf of potential witnesses, but a T visa may be sought independently by a victim. If a victim has concluded that he or she would like to pursue legal status by applying for a T visa, Department personnel should assist in the application process by providing, in a timely fashion, the supporting documentation that must come from the Department. As a general matter, types of legal status include—

   a. Continued Presence. Aliens who are victims of a severe form of trafficking and who are potential witnesses are eligible to remain in the United States. If the responsible official determines that an alien trafficking victim is a potential witness to a trafficking crime, the responsible official may request that the Department of Homeland Security permit the continued presence of the victim for 1 year. Continued presence also provides the victim with employment authorization. Law enforcement may seek extensions of continued presence when appropriate. (22 U.S.C. § 7105(c)(3); 28 C.F.R. § 1100.35(a))

   b. T Nonimmigrant Status

      (1) Individuals may apply for a T nonimmigrant visa for themselves if—

         (a) They are victims of a severe form of trafficking.

         (b) They are in the United States on account of trafficking.

         (c) They face extreme hardship involving unusual and severe harm if they were to be removed from the United States.

         (d) They have complied with any reasonable request for assistance in the investigation or prosecution of the trafficking activities.

      (TVPA Section 107(e); 8 C.F.R. § 214.11)

      (2) Recipients of T visas are eligible for employment authorization and may, after 3 years, adjust their status to that of a lawful permanent resident in accordance with Federal law and regulations. In appropriate

circumstances, T visas may be available to members of a victim's family.

(3) If warranted, the responsible official should support the application of a trafficking victim who has complied with any reasonable request for assistance in the investigation or prosecution by completing an I–914B form for a T visa.

(4) If a prosecutor determines that supporting a T visa would not be prudent in any case in which a trafficking victim seeks such a visa, the prosecutor must provide written justification for that determination to the U.S. Attorney for the district or, in the alternative, to the Office of the Assistant Attorney General for Civil Rights.

c. U Visa. U visas may be available to aliens who have suffered substantial physical or mental abuse as a result of being the victims of certain crimes designated by the Violence Against Women Act of 2000—including rape, domestic violence, trafficking, sexual assault, abusive sexual contact, and sexual exploitation—that violate Federal, State, or local laws and have occurred while in the United States (including in Indian Country and on military installations) or its territories or possessions. To be eligible for a U visa, the victim must possess information concerning the crime, and the U visa petition must include a certification from a Government official (as listed in the statute) stating that the victim is helping, has helped, or is likely to be helpful in the investigation or prosecution of the crime. Recipients of U visas are eligible for employment authorization and may, after 3 years, adjust their status to that of a lawful permanent resident in accordance with Federal law and regulations. In appropriate circumstances, these visas may be available to family members of the victim. (8 U.S.C. §§ 1101(a)(15)(U), 1184(p), 1255(l))

d. Significant Public Benefit Parole or Deferred Action. Witnesses, threatened family members, and victims for whom there is insufficient evidence to meet the TVPA victim criteria may be eligible for significant public benefit parole to enable them to enter or remain in the United States temporarily.

e. The responsible official shall assist alien trafficking victims who want to be repatriated rather than avail themselves of the immigration benefits provided in TVPA.

f. S–5 Visa. S–5 visas may be granted when the applicant has reliable information about an important aspect of a crime or the pending commission of a crime, is willing to share the information with law enforcement officials or to testify in court, and the applicant's presence in the United States is necessary to the successful investigation or prosecution of a case. (8 U.S.C. § 1101(a)(15)(S))

6. <u>Certification of Victims for Assistance</u>

    a.  HHS Certification. Adult victims are eligible for certification by the Department of Health and Human Services for benefits equivalent to those that are available to refugees if the victim has been granted continued presence and is willing to assist law enforcement or has made a bona fide application for T nonimmigrant status. Minor victims are not required to have either continued presence or a bona fide T visa to receive benefits. Instead, they receive services as provided by a letter of eligibility for benefits. (22 U.S.C. § 7105(b)(1)(A), (E))

    b.  The responsible official shall support the certification of a trafficking victim if the victim has complied with any reasonable request for assistance in the investigation or prosecution of trafficking activities. If a prosecutor concludes that such certification is not prudent, the prosecutor must provide written justification of that determination to the U.S. Attorney for the district or, in the alternative, to the Office of the Assistant Attorney General for Civil Rights.

## ARTICLE X.
## GUIDELINES FOR VICTIMS OF IDENTITY THEFT

### A. Statement of Purpose

This section contains special guidelines for ensuring that victims of identity theft are provided with the assistance that is appropriate to the unique circumstances of that crime. Responsible officials should therefore consult the other relevant provisions of these *AG Guidelines* in addition to this article when assisting victims of identity theft.

### B. General Guidelines

1. <u>Identification of Victims</u>. Individuals do not have to know that their identity was misused in order to be victims, nor does the victim have to have incurred a financial loss to be considered a victim. All individuals who have had financial or personal information compromised in an identity theft crime should be identified, and their names and contact information should be entered into VNS. The responsible official at the investigative phase should take a proactive approach to identifying victims, which may include creating and publicizing a toll-free hotline for citizens concerned that they may have been victimized and media advertising of a fraud case or investigation with instructions for potential victims to contact the investigative agency.

2. <u>Description of Services</u>. In general, Department personnel should consider consulting the Federal Trade Commission's Web site, www.consumer.gov/idtheft/law_howhelp.html, for information and guidance on assisting victims of identity theft.

    a. Referral. In addition to all other services required under these *AG Guidelines*, the responsible official should—

        (1) Refer victims to the particularly useful or relevant services specifically provided for victims of identity theft by other Federal agencies, including the Federal Trade Commission, as well as by nongovernmental organizations.

        (2) Refer victims to relevant credit reporting services.

        (3) Advise victims to file an individual police report.

    b. Notification to Victims' Employers and Creditors. If requested to do so by the victim, the responsible official should—

        (1) Assist in notifying creditors and employer. The responsible official should assist in contacting a victim's employer and credit card companies, mortgagee(s), and other creditors by letter or telephone call in order to notify them that the victim has been identified as a victim of an identity-theft crime.

(2) Inform creditors of the nature and status of the case. The responsible official should provide creditors with documentation relating to the case if requested, including appropriate charging sheets, plea agreements, and judgments.

(3) Notify creditors of availability of restitution. The responsible official should notify creditors that, if they absolve the victim of unlawfully incurred debt, they may become entitled to restitution from the perpetrator. (18 U.S.C. § 3664(j)(1))

3.  <u>Information From Businesses Available to Victims</u>

a.  The responsible official at the investigative phase should notify a victim of identity theft that business entities that have entered into commercial transactions with a person who has allegedly made unauthorized use of a means of identification of the victim may be required, at no cost to the victim, to provide copies of transaction records in their control. (15 U.S.C. § 1681g(e)(1))

b.  In making the notification under paragraph a, the responsible official shall avoid providing legal advice and shall not be responsible for assisting the victim in requesting the information and records to which the victim may be entitled under the law.

**ARTICLE XI.**
**NONLITIGABILITY**

These *AG Guidelines* provide only internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, or standards of conduct or care, substantive or procedural, enforceable at law by any person in any matter civil or criminal. These *AG Guidelines* shall not be construed to create, enlarge, or imply any duty or obligation to any victim, witness, or other person for which the United States or its employees could be held liable in damages. No limitations are hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.