GOVERNMENT

EXHIBIT

T

THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA


CASE NO.  08-80736-CIV-MARRA


IN RE:  JANE DOE,

      Plaintiff,

vs.


UNITED STATES OF AMERICA,


      Defendant.

_____/


                         Federal Courthouse

                         West Palm Beach, Florida

                         July 11, 2008

                         10:15 a.m.



     The above entitled matter came on for Emergency Petitioner for Enforcement of Crime Victim Rights before the Honorable Kenneth A. Marra, pursuant to Notice, taken before Victoria Aiello, Court Reporter, pages 1-32.


For the Plaintiff:  Bradley Edwards, Esquire


For the Defendant:  Dexter Lee, AUSA

                  Maria Villafana, AUSA

Page 2

1          (Call toOrder of the Court).

2          THE COURT: Good morning.  Please be seated.

3          This is the case of In Re:  Jane Doe, Case

4   Number 08-80736-Civ-Marra.  May I have counsel state

5   their appearances, please?

6          MR. LEE: Good morning, Your Honor.  May it

7   please the Court, for the United States of America,

8   we have Maria Villafana, Assistant United States

9   Attorney and Dexter Lee, Assistant United States

10  Attorney. And we have seated in the front row FBI

11  Special Agent Becker Kendall and Jason Richards.

12  Thank you, Your Honor.

13         MR. EDWARDS: Good morning, Your Honor.  Brad

14  Edwards on behalf of the petitioners. Petitioners

15  are also in the courtroom today.  This petition is

16  styled on her behalf.

17         THE COURT: Good morning.  All right.  We're

18  here on the petitioner's motion to enforce her

19  rights as a victim under 18 USC 3771.  I have

20  received the petition, the government's response and

21  the victim's reply, which was filed, I guess, this

22  morning.  So, You want to proceed, counsel?.

23         MR. EDWARDS: Yes, Your Honor.  You prefer me

24  at the podium?

25         THE COURT:  It is easier for us to hear you.

OFFICIAL REPORTING SERVICES, LLC (954) 467-8204

1   MR. EDWARDS: Your Honor, as a factual

2       background, Mr. Epstein is a billionaire that

3       sexually abused and molested dozens and dozens of

4       girls between the ages of 13 and 17 years old.  And

5       through cooperating victims, that evidence can be

6       proven. Because of his deviant appetite for young

7       girls, combined with his extraordinary wealth and

8       power, he may just be the most dangerous sexual

9       predator in U.S. history.  This petitioner is one of

10      the victims and she is in attendance today.  Another

11      one of Mr. Epstein's victims is also in attendance

12      today.  She would be able to provide evidence that

13      she provided-- that Mr. Epstein paid her to provide

14      him over 50 girls for the purposes of him to

15      sexually abuse.  Therefore, the undercurrents of the

16      petition are clear.  The plea bargain that was

17      worked out for Mr. Epstein in light of the offenses

18      that he committed is clearly unfair to the point

19      that if anybody looks at the information, it is

20      unconscionable.

21          THE COURT:  Well, I mean, is that for me?

22      That's not my role. That's the prosecutor's role to

23      apply, would it not? I can't force them to bring

24      criminal charges.  What do I have to do with that.

25          MR. EDWARDS: Okay.

1            THE COURT:  That may be

2    your opinion, that

3      may be your client's opinion, but I presume that the

4      government is aware that that's your client's

5      opinion.  How does that change anything?

6            MR. EDWARDS: That's my problem.  I'm not

7      sure that the government is aware that is

8      petitioner's opinion and that's why we're here

9      today, just to enforce the victim's rights under 18

10     USC 3771, Crime Victims Rights Act, and all we are

11     asking is to order that the plea agreement that has

12     been negotiated in this case--

13            THE COURT:  How do you know there is a plea

14     agreement?  The plea agreement is with the State of

15     Florida, wasn't it?

16            MR. EDWARDS: There was a state charge with

17     one victim that I'm aware of.  And the plea

18     agreement as to that one victim was 18 months in the

19     county jail. But along with that, the Palm Beach

20     County Sheriff investigating this case was getting

21     no action out of the local authorities and sent this

22     to the FBI.

23            THE COURT:  It was actually the Palm Beach--

24     Town of Palm Beach Police, not the Sheriff's Office.

25            MR. EDWARDS: I'm sorry, Judge.  And that's

1     why the FBI got involved because Michael Feeter  wrote a

2   scathing letter to the State Attorney about

3     Mr. Epstein receiving preferential treatment by

4     local authorities.

5          Before the FBI took the case, they went

6     behind the victim's back, and this is our motion,

7     without the victim's input and allowing her the

8     right to meaningfully confer with the government,

9     which is a right that she can assert at this time.

10    They worked out a plea deal where if Mr. Epstein

11    would plead to this other charge regarding another

12    victim in the state court case, they would agree to

13    not prosecute him for all of the federal charges of

14    what they were aware of in federal court..

15         THE COURT:  So that's already apparently

16    taken place, correct?

17         MR. EDWARDS: I don't know if it has taken

18    place. I'm not sure exactly what stage it is in.  I

19    know it is supposed to be attached at some point in

20    time to a state court plea.

21         THE COURT: Hasn't he already plead guilty,

22    though?

23         MR. EDWARDS: If he did plead guilty, it is

24    my understanding and belief that the agreement with

25    the federal government and with the U.S. Attorney's

1    Office wasn't signed on that day.  So it is still my  belief,

2    I could be wrong, but that that agreement

3    hasn't been completed as of this time.

4         THE COURT:  So let's assume it hasn't been

5    completed.

6         MR. EDWARDS: Okay.  Then petitioner would

7    like the right to confer with--

8         THE COURT:  You can go in the conference

9    room. We've got the FBI agents, you've got the

10   assigned prosecuting attorney.  You have got a

11   conference room.  You've got your client.  Go and

12   talk.  Confer.  And then it is up government to

13   decide what to do, correct?

14        MR. EDWARDS: In a way, Your Honor, that's

15   very similar to what happened in In Re: Dean and PB

16   case where there is a plea agreement negotiated and

17   then the victim gets the right to confer.

18        THE COURT:  It's already negotiated.  What

19   am I supposed to do?

20        MR. EDWARDS: Order that the agreement that

21   was negotiated is invalid and it is illegal as it

22   did not pertain to the rights of the victim.

23        THE COURT:  I can order you into the

24   conference room.  Then the government can do what it

25   chooses. It can agree to prosecute or it can agree

Page 7

1    to going forward with the agreement it had already  reached

2   and after consulting your client and in

3    taking into consideration your client's views,

4    decide to go forward anyway. I can't make them

5    prosecute him.  I can't-- All I can do is, at best,

6    say confer with the victim, consider the victim's

7    input before you make a decision or reconsider the

8    decision you already made in view of the victim's

9    input, if it is possible for you to do that.  So if

10   I invalidate the agreement, what's the best you can

11   get?  The right to confer?

12          MR. EDWARDS: Exactly.  That is all we can.

13          THE COURT: So why can't you go into the

14   conference room now, take as much time as you feel

15   you need and confer?

16          MR. EDWARDS: Judge, at this time I'd like to

17   move ore tenus to add the victim that's in the

18   courtroom to this conference with the U.S.

19   Attorney's Office.

20          THE COURT:  So is that Jane Doe 2 for

21   purposes of this?

22          MR. EDWARDS: Exactly, Your Honor.

23          THE COURT:  All right. Let me hear from the

24   government then.

25          MR. LEE:.  Good morning, Your Honor.  May it

1    please the Court.          Let me update the Court on the

2    status of

3    various matters.   The agreement to defer prosecution

4    to the State of Florida was signed and completed by

5    December of 2007.  Mr. Epstein's attorneys saught a

6    higher review within the Department of Justice and

7    it took a number of months for that to come to

8    fruition.  When it came to fruition, he ended up

9    pleading guilty on June 30, 2008 to two charges in

10   state court, and he was sentenced to a term of

11   incarceration of 18 months, with another 12 months

12   of community control after the completion of his

13   sentence, and he is currently incarcerated as we

14   speak.

15          We have two arguments, Your Honor.  First,

16   insofar as the right that they claim under

17   3771(a)(5), their right to confer in the case, we

18   respectfully submit that there was no case in

19   federal court and, indeed, none was contemplated if

20   the plea agreement was to be successfully completed,

21   since it contemplated the State of Florida sentence

22   on the criminal charges.  So as long as certain

23   conditions were met and certain federal interests

24   were vindicated, the federal government was

25   satisfied that this was an appropriate disposition.

Page 9

1        Insofar as the best effort, Your Honor, we  have cited

2    the Attorney General's guidelines.   The

3    guidelines do say that you should normally advise

4    victims of plea negotiations and the terms of the

5    plea, but they recognize that there are times when

6    they may not be appropriate or could cause some harm

7    or prejudice, and they set out six factors which are

8    to be considered, non-exhaustive factors.

9        We have advised, in the declaration of AUSA

10   Villafana that when the subject of having Mr.

11   Epstein concede that he would be convicted of an

12   enumerated offense for purposes of a cause of action

13   under 18 USC 2255, there was a rather strenuous

14   objection from Mr. Epstein's counsel that the

15   federal government was inducing some effort to

16   either fabricate claims, enhance claims or embellish

17   claims and if this agreement ultimately could not be

18   consumated, then we'd have a federal prosecution on

19   our hands, and we did not want to be in a positin of

20   creating additional impeachment material.

21        I can't say that the stand by Mr. Edwards

22   that the arguments of inducement in a subsequent

23   civil action can be made by any criminal victim,

24   that is true.  It is another thing for that

25   inducement to have come before the prosecution

OFFICIAL REPORTING SERVICES, LLC (954) 467-8204

Page 10

1        arguing about the credibility and veracity of the  individual.

2    That was a considerably strong point, in

3        essence, in not discussing those terms with the

4        victims as might ordinarily be done if those

5        considerations did not exist.

6            So, first, Your Honor, we believe that

7        3771(a)(5) does not apply.

8            THE COURT:  Well, what about the language in

9        the statute that suggests that a victim can bring a

10       claim or seek enforcement of his or her rights under

11       the statute before a case is filed?  What does that

12       refer to?

13           MR. LEE: Your Honor, we believe that's a

14       venue provision essentially telling an individual if

15       there is no exigent case, there is no case of United

16       States versus So And So, then you seek to enforce

17       your rights, then you can go in and do so in the did

18       court where the offense occurred.  This is not

19       saying, necessarily, that rights exist, but if you

20       believe they exist, here is the place where you're

21       going to have to lodge it, and the Court will have

22       to decide.

23           Now, there are certain of the eight rights

24       accorded in 3771(a) that could come up before any

25       charge is filed.  For instance, let's say somebody

Page 11

```
 1        believes that the perpetrator of the crime is going  to try to
 2     harm them or threatened them or
 3        intimidated them into not testifying or cooperating
 4        with the government and, of course, no indictment
 5        has been returned. If an individual went to the
 6        government and believed that the individual had not
 7        acted appropriately, they can go to the district
 8        court and say I need to have my rights under
 9        3771(a)(1) enforced because those people are
10        threatening me, and the government hasn't done
11        enough.  That would be a situation.
12            But we're talking really here about (a)(5),
13        which is the right to consult in the case and we
14        respectfully submit that there is not case until a
15        charge has been filed.
16            THE COURT:  So, what about the circuit case
17        that was actually pending case had to do with a plea
18        agreement in a pending case?
19            MR. LEE: Yes.  The distinction between the
20        Dean case and the instant case, Your Honor, is
21        this.  In Dean, they had negotiated with BP
22        Petroleum for a plea and it was always contemplated
23        that there was going to be a federal prosecution.
24        The distinction in this case was that there was
25        already a pending state prosecution and the
```

Page 12

1          objective for both sides was to keep it in state   court and

2     the federal government's objective was to

3          ensure that there were sufficient safeguards in the

4          state court proceedings and concessions made by Mr.

5          Epstein so that federal interests, particularly a

6          cause of action for damages for the victims of the

7          sexual exploitation could be preserved. So that's

8          the key distinction because there was no federal

9          case, there was no federal criminal charge

10         contemplate so long as the agreement could be

11         reached.

12              THE COURT:  All right.  So they want me to

13         invalidate your non-prosecution agreement.

14              MR. LEE: Your Honor, we respectfully submit

15         that 3771 does not grant authority of this Court to

16         do so.  In the Dean case, for instance, Your Honor,

17         there was a plea agreement that was entered into and

18         district court, of course, entertained a plea

19         agreement and exercised its judicial discretion in

20         terms of whether to accept it or not.  The victims

21         were encouraged to go to district court and say, you

22         know, we didn't hear about this.  We should have,

23         and we object to it for the following reasons.  The

24         district court take that into account.  There is no

25         plea agreement before this Court.  There will be no

Page 13

1      plea proceedings in this court.  That was all done  in state

2   court several weeks ago.  So that's another

3   basis for distinguishing Dean.

4           THE COURT:  All right.  So is there any

5   point in conferring with these victims?

6           MR. LEE: Your Honor, I will always confer,

7   sit down with Jane Doe 1 and 2, with the two agents

8   and Ms. Villafana. We'll be happy to sit down with

9   them.

10          THE COURT:  But it wouldn't make any

11   difference in terms of the outcome.  Would maybe

12   give them the benefit of your explanation of why you

13   did what you did and why you came to the conclusion

14   you did, but it is not going to change your decision

15   in any way.

16          MR. LEE: If it is going to change, it would

17   have to be done at a level higher than mine, Your

18   Honor.

19          THE COURT:  What was-- I didn't understand

20   your statement earlier that Mr. Epstein wanted some

21   kind of review of higher authority within the

22   Department in terms of whether or not the federal

23   government was going to insist on preserving any

24   civil claims.

25          MR. LEE: Your Honor, of the agreement was

Page 14

1       consumated by the parties in December of 2007.  Mr.  Epstein's

2    attorneys wanted a further review of the

3    agreement higher up within the Department of Justice

4    and they exercised their ability to do that.

5            THE COURT:  Meaning? Again, I'm trying to

6    understand.  He wasn't happy with the agreement that

7    he had signed?

8            MR. LEE: Basically, yes.  And was trying to

9    maintain that the agreement should be set aside or

10   more favorable terms.

11           THE COURT:  Now, in terms of -- You don't

12   dispute that Jane Doe 1 and 2-- First of all, do you

13   have an objection to Jane Doe 2 being added as a

14   petitioner in this case?

15           MR. LEE: No, I don't.

16           THE COURT:  I'll grant that request.

17           You don't dispute that they're victims

18   within the meaning of the Act.

19           MR. LEE: It depends to which -- There is one

20   Jane Doe-- Well, there is one individual who is one

21   of Mr. Edwards' clients who we do not believe to

22   been a victim.  If these are SN and CW, then we have

23   no objection and I can discuss-- If I may have a

24   moment, Your Honor.

25           Your Honor, thank you.  I have been

Page 15

1    corrected.  We have no objection.

2              THE COURT:  Okay.

3              MR. LEE: We agree they're victims.

4              THE COURT:  Now, what is your position,

5    then, regarding the right of a victim of a crime

6    that is potentially subject to federal prosecution

7    to be, to have input with the prosecutor, your

8    office, before a resolution or decision not to

9    prosecute is made?  Do you say that there is no

10   right to confer under those circumstances because

11   there is no "case pending" so any decision not to

12   prosecute, there is no right to confer but that

13   right to confer only is triggered once there is an

14   indictment or an information filed?

15             MR. LEE: That is correct, Your Honor.  The

16   Attorney General guidelines which were published in

17   May of 2005 provide that the rights in 3771(a)(1

18   through 8) accrue when a charge is filed in federal

19   court.  Now, that my change after the Dean

20   decision.  It is under consideration.  But that's

21   the government's position.

22             THE COURT:  All right.  And so -- Are you

23   saying all of the rights--

24             MR. LEE: Your Honor, some of the rights

25   clearly will only pertain after a charge has been

1

2      filed.  The one that pertains to notice of public  hearing,

3   public proceedings, though, can't apply

4      until there are public proceedings to be had.

5            Of course, these guidelines are a floor and

6      not a ceiling.  They're to be applied with common

7      sense.  If somebody-- If charges of assault were

8      being investigated and somebody would come in and

9      say the perpetrator whom you're investigating is

10      getting ready to indict has been threatening me,

11      following me, and I need help because he or she is

12      going to do something bad to me and try to take care

13      of me before I can testify in the grand jury, this

14      person would not be turned away because a charge

15      hasn't been filed yet.  Those guidelines would be

16      applied with common sense.

17            But specifically insofar as a (a)(5), which

18      is the right to consult with the attorney for the

19      government in the case, that would not accrue until

20      there is a days.  And, in our view, a case doesn't

21      come into being until charges are filed.

22            THE COURT:  And are there any reported

23   decisions that you are aware of where any court has

24   found a right to confer before charges are filed?

25            MR. LEE: I'm not aware of any, Your Honor.

Page 17

```
 1          THE COURT:  All right.  Thank you.

 2          MR. LEE: Thank you, Your Honor.

 3          THE COURT: Counsel?

 4          MR. EDWARDS: I would just like to address

 5     that Dean decision.  They're asking you that you

 6     just simply ignore it because the decision clearly

 7     was a decision made because as it is a direct result

 8     of a plea deal being worked out prior to the victims

 9     being able to speak.

10          THE COURT:  But there was a pending case,

11     though, correct?

12          MR. EDWARDS: As I understand the decision--

13          THE COURT: As I understand the plea deal, it

14     was negotiated prior to charges being filed.  Then

15     there was a filed case and then the court had the

16     ability to accept the plea or not.  And at that

17     point, you would have the ability to entertain or

18     assert an objection because you weren't consulted

19     about the plea.

20          So there was a proceeding or case in which

21     you can assert a right to confer.  How do you do

22     that before a case is filed?  How do you enforce the

23     government or force the government to consult about

24     not filing a case?  Every case they have to consult

25     with the victim before they decide not to prosecute?
```

Page 18

1          MR. EDWARDS: No, there are limitations.  I

2     think in my reply I refer to the case of U.S. V.  Rubin where

3   they discussed that very scenario

4     stating there at least has to be criminal charges

5     contemplate by the government before these rights

6     kick in.  The rights under (d)(3) and (a)(5), the

7     right to confer and the Dean case clearly states

8     clearly rights under the CBRA apply before

9     prosecution is under way.  Logically, this includes

10    the CBRA establishments of a victim's reasonable

11    right to confer with the attorney for the

12    government.  And, that's read in the plain reading

13    of the statutes as well.

14          This first case in interpreting it, I think

15    it's pretty clear the distinction they're making

16    between BP and this case.  Is it a distinction

17    withoua a real difference in that the court is

18    saying you have this right before the case is filed

19    which is exactly what we are saying.  And the result

20    in that case was they filed the case, later let him

21    plea out to some sweet deal.  And in this case, what

22    we have is they avoid that by deciding not to file.

23    Either way, you deprive the victim of their right

24    before making that decision.

25          And the main problem that the court had in

Page 19

```
 1      Dean, as it states, the victims do have rights when

 2      there is an impact and the eventual sent is  substantially

 3   less.  Whereas here, their input is

 4      received after the parties have reached a tentative

 5      deal.  Well, the government just stated the deal was

 6      reached back in October of 2007. However, attached

 7      to their response is a letter to my client

 8      petitioner, dated January 10, 2008, after the time

 9      then counsel just put on the record that the deal

10      was already finalized and it starts, the opening

11      paragraph talks about whether they wanted the

12      victims to have the right to confer.  It says, this

13      case is currently under investigation.  This is

14      January 2008.  This case has been a lengthy process

15      and we request your continued patience while we

16      conduct a thorough investigation.  Sounds like the

17      exact opposite of, we want you to come in and confer

18      and let us know what you really feel about this.

19           That is our biggest problem with what has

20      happened here, is that she just wasn't given a voice

21      and if somebody would have heard her, we believe

22      there would have been a different outcome.  To go

23      back into a room right now and talk, after there has

24      already been a plea negotiated without Your Honor

25      ordering that in this case the plea deal needs to be
```

Page 20

1        vacated, it is illegal and give her her rights.

2             THE COURT:  Well, would you agree or not  that Mr.

3    Epstein plead guilty to the state charges

4        probably at least, in part, in reliance upon the

5        fact that he had an agreement with the federal

6        government they weren't going to prosecute? Would

7        you concede that or would would present evidence to

8        that effect?

9             MR. EDWARDS: Of course we would. Yes, of

10   course. Sure.

11            THE COURT:  So you agree that Mr. Epstein is

12   now sitting in the Palm Beach County Jail a

13   convicted felon serving 18 months of imprisonment,

14   at least in material part, because he relied upon

15   the government's non-prosecution agreement?

16            MR. EDWARDS: Yes. I agree that he is sitting

17   there because he is guilty and maybe he took the

18   plea rather than going to trial and being found

19   guilty later in part because of this non-prosecution

20   agreement that was worked out behind the other

21   victims' backs.  I would agree with that.

22            THE COURT:  So he accepted the State's deal

23   in part because he knew he had an agreement from the

24   federal government that they weren't going to

25   prosecute.

Page 21

1              MR. EDWARDS: I presume.  I speculate that is

2         true.

3              THE COURT:  So you want me now, then, to set

4         aside the government's agreement with him because

5         there was no conferring, yet he has already accepted

6         a plea agreement and is sitting in custody, in part,

7         in reliance on that agreement.  I mean, I can undo

8         the agreement in your theory, but how do I-- Mr.

9         Epstein, in a sense, would then be adversely

10        affected by my actions when he acted in reliance

11        upon the agreement. How does that work?

12             MR. EDWARDS: Certainly, we're only asking

13        you to vacate the agreement.  I understand and your

14        point is well taken.  And I believe that at that

15        point in time his rights may kick in and say, wait,

16        I was relying on this other deal so I wouldn't be

17        prosecuted for these hundreds of other girls that I

18        molested; that I plead guilty over here to the one

19        girl that I will admit to molesting. So maybe I can

20        get to withdraw my plea. But the last thing he wants

21        to do because if he ends up going to trial, I'll be

22        in prison for the rest of his life like any other

23        person who ever did this crime would be.  He could

24        have that argument, I guess, but still wouldn't

25        really work well for him.

Page 22

1          THE COURT:  All right.  So you still think I

2     should set aside the agreement, require the  government to

3     confer?

4          MR. EDWARDS: Work out a plea negotiation

5     commensorate with the crimes that he committed and

6     that are favorable after they confer with the

7     victims.  And it is within their discretion.  Of

8     course, they can decide on their own that, hey, I

9     think that the agreement was fair after they have

10    talked with the victims.  That could happen.  I

11    don't know if a reasonable person that would do

12    that, but it could happen.

13         THE COURT:  Apparently, you are not

14    suggesting that that these person are not

15    reasonable.

16         MR. EDWARDS: I'm suggesting they haven't

17    conferred with the victims and that if they took

18    into consideration what these two in the courtroom

19    have to say, I don't think that we'd be in this same

20    position right now.

21         THE COURT: They have never spoken to your

22    client about what happened to them?

23         MR. EDWARDS: They have spoken to them about

24    what happened.  Maybe not about what the girls

25    wanted to happen as a result of this case, which is

1      part of conferring to decide that these girls wanted

2      money on their own, which is basically what this-- this

3   non-prosecution agreement entails that has

4      language that he'll agree to liability in a civil

5      case. That's not what these girls-- They want

6      justice.  They want him in prison now more than

7      ever. The reason they stated they kept this

8      agreement from the girls and they basically conceded

9      we didn't tell the girls about this agreement, well,

10     the reason is because they would have objected and

11     they wouldn't have been able to sign off on this and

12     the victims would have had a voice, and we'd still

13     been going through litigation.  The exact problem

14     they tried to prevent, at least in their terms which

15     was the impeachment of these girls at a later trial,

16     is still available to anybody once the civil suits

17     are filed anyway.

18          They have three arguments. One, we didn't

19     have to talk to them.  Two, we did talk to them sort

20     of.  And if you don't buy that, the reason we didn't

21     talk to them, we were trying to prevent them from

22     being impeached later.  None of them trump the

23     victims' rights to confer prior to plea

24     negotiations.  That's why, Your Honor, we would ask

25     this Court to enter an order vacating that previous

Page 24

```
 1      plea agreement as illegal, ask them to confer with

 2      the victims once again or for the first time and  work out a

 3   negotiated plea to that accord.

 4           THE COURT:  Well, all you can ask them to do

 5      is confer. I can't ask them to do anything beyond

 6      that.  I mean, it is up to them to negotiate.

 7           MR. EDWARDS: I wouldn't quarrel with that.

 8           THE COURT:  Now, having learned today, I

 9      guess, that the agreement was signed when, in

10      October?

11           MR. EDWARDS: October 2007, I heard.

12           THE COURT: About eight or nine months ago,

13      is there any need to rush to a decision in this

14      matter?  The decision has already been made.  You

15      filed this, I think, on the presumption that the

16      agreement was about to take place and you wanted to

17      be able to confer beforehand and you weren't sure

18      what was going on.

19           MR. EDWARDS: Precisely, Your Honor.  And I'm

20      holding the letters that are exhibits that they were

21      writing to my client during the year of 2008 telling

22      her how lengthy of a process this was going to be

23      and be patient.  So, right, I was completely in the

24      dark about when this agreement was signed.

25           THE COURT:  In view of the fact that this
```

 1      agreement has already been consumated, and you want

 2      me to set it aside, as opposed to something that's  about to

 3    occur, would you agree that-- and I have

 4      done this very quickly because of the petition and

 5      your allegation that something was about to happen.

 6      I'm not blaming you.

 7              MR. EDWARDS: I was mistaken.

 8              THE COURT:  I'm not blaming you for doing

 9      that.  In view of what you know now, is there any

10      need to treat this as an emergency that has to be

11      decided by tomorrow?

12              MR. EDWARDS: I can't think of any reason in

13      light of what we just heard.

14              THE COURT: Mr. Lee, do you have anything

15      else you wanted to add? Does either side think I

16      need to take evidence about anything?  If I do,

17      since this is not an emergency anymore, I can

18      probably find a more convenient time to do that.  I

19      don't have the time today to take evidence.  But if

20      you do believe that I should take evidence on this

21      issue.

22              MR. EDWARDS: It may be best if I conferred

23    with the U.S. Attorney's Office on that and we can

24    make a decision whether it is necessary or whether

25    Your Honor deemed it was necessary for you to make a

Page 26

```
 1     decision.

 2              THE COURT:  I want to know what your  respective

 3     positions are because it may be something

 4      in terms of having a complete record, and this is

 5      going to be an issue that's it going to go to the

 6      Eleventh Circuit, may be better to have a complete

 7      record as to what your position is and the

 8      government's is as to what actions were taken.  And

 9      I don't know if I have enough information, based on

10      Ms. Villafana's affidavit or I need additional

11      information.  And because it is not an emergency, I

12      don't have to do something quickly, we can play it

13      be ear and make this into a more complete record for

14      the court of appeals.

15              MR. EDWARDS: If there is a time where it is

16      necessary to take evidence, Your Honor is correct in

17      stating that it is not an emergency and it doesn't

18      need to happen today.  And, I will confer with the

19      government on this and if evidence needs to be

20      taken, it be taken at a later date.  It doesn't seem

21      like there will be any prejudice to any party.

22              THE COURT: Mr. Lee, do you have any

23      thoughts?  You want to consult with Mr. Edwards?

24              MR. LEE: There may be a couple of factual

25      matters that I need to chat with petitioner's
```

Page 27

```
 1      counsel on.  If we can reach agreement on those as
 2      to what was communicated to CW and what time, if  they don't
 3    dispute that, then we don't think it will
 4      be necessary to have an evidentiary hearing.  But if
 5      we can agree, fine or maybe we can't. We'll talk
 6      about it.
 7            THE COURT:  All right.  So why don't you let
 8      me know if you think an evidentiary hearing is
 9      necessary.  If there are additional stipulations you
10      want to enter into or supplement what has already
11      been presented, you can do that.
12            Now, the other issue I want to take up,
13      though, is the government filed its response to the
14      petition under seal.  And so I want to know why.
15      What is in there that at this point needs to be
16      under seal?  Is there anything in there that's
17      confidential, privileged, anything that's different
18      from what you hve said here in open court that
19      requires that to be sealed?
20            MR. LEE: Well, Your Honor, on our motion to
21      seal was based on two reasons.  One that dealt with
22      individuals or minors at the time that the offense
23      occurred.  So we were attempting to protect the
24      privacy of those individuals.  And also it dealt
25      with negotiations with Mr. Epstein which were in the
```

Page 28

```
1        nature of plea negotiations, which we treat as
2        confidential.  Normally, they're not aired out in  open court.
3     So those were our two reasons.
4              THE COURT:  All right.  But I guess the
5        letters you attached only related to Mr. Edwards'
6        client.
7              MR. LEE: Three of them, yes, Your Honor.
8              THE COURT:  Are you prepared, Mr. Edwards,
9        to waive any issues regarding the release of those
10       documents that relate to your clients?
11             MR. EDWARDS: Judge, I think it would be
12       appropriate to redact the names of the clients as
13       they have done.
14             THE COURT: I don't think the names are in
15       there.
16             MR. EDWARDS: I think they're redacted.
17       They're blacked out.  I have no problem with
18       releasing those documents.  I'm not sure that's part
19       of the deal.  But if it is--
20             MR. LEE: It is.
21             MR. EDWARDS: Okay.  I'll waive.
22             THE COURT:  You really don't have any
23       objection to those letters that were sent to them
24       being released to the public?
25             MR. EDWARDS: Of course not, Judge.
```

Page 29

1        THE COURT:  Then what is there about the

2    plea agreement or the negotiations that is in the  response

3    that we really haven't already kind of--

4        MR. LEE:  Your Honor, there was a

5    confidentiality agreement in the deferral of

6    prosecution to the State of Florida.  So we were

7    trying to maintain the confidentiality of the

8    negotiations that occurred since we had discussions

9    during those negotiations as one of the reasons why

10   we decided not to tell all of the individuals what

11   was going on.

12       THE COURT:  But is that still necessary,

13   that confidentiality or is that kind of moot at this

14   point?

15       MR. LEE:  Well, we would like it sealed.

16   Admittedly, what happened today in open court has

17   probably weakened our argument.  I don't dispute

18   that.

19       THE COURT:  In your opinion, anything in

20   particular, any paragraph in the response or in Ms.

21   Villafana's affidavit that you think is particularly

22   troublesome that should remain under seal?

23       MR. LEE:  May I have a moment, Your Honor?

24       THE COURT:  Yes.

25       MR. LEE:  Thank you.  Your Honor, one aspect

1    of this in the notification letters that were

2    dispatched to individuals which were attached to Ms.

3    Villafana's declaration, there is a citation to a

4    clause in the agreement that was reached regarding

5    the damages remedy under 18 USC 2255 that was

6    subject to the constitutionality agreement, we

7    believe that should still remain confidential.

8            THE COURT: But hasn't the fact that this

9    provision was part of the agreement again been

10   aired? Is there any secret to it anymore?

11           MR. LEE: The actual text of it has not been

12   aired. The existence of it has been heard but the

13   actual text has not and we believe it should still

14   remain confidential.

15           THE COURT:  Okay.  Any other argument on

16   that issue?

17           MR. LEE: No, Your Honor. Thank you.

18           THE COURT:  Ms. Villafana wants to speak to

19   you.

20           MR. LEE: Your Honor, one item that I'd like

21   to bring to the Court's attention. We had advised

22   Mr. Epstein and his attorneys that if we were to

23   disclose some of the agreement, we would give them

24   advance notice and ability to lodge an objection. We

25   would like an opportunity to do that.

Page 31

```
1              THE COURT: All right.  But you're not
2      disclosing.  It would be by my order that it would  be
3      disclosed.
4              MR. LEE: Yes, Your Honor.  And we just would
5      like to register that we believe it should remain
6      confidential.
7              THE COURT:  All right.
8              MR. EDWARDS: Your Honor, I don't see any
9      authority for keeping that under seal.
10             THE COURT:  I agree.  The fact that there is
11     this preserved right on behalf of the victims to
12     pursue a civil action is already a matter of public
13     record; the exact text of the clause-- I don't see
14     that disclosing the text of the clause when the fact
15     that the clause exists is already a matter of public
16     record.  It is not harmful in any way to Mr. Epstein
17     or the government and the letters to the victim that
18     the victim can disclose those letters, they're not
19     under any confidentiality obligation or restriction
20     and they're free to disclose it themselves if they
21     choose to.  So I don't see that there is any real
22     public necessity to keep the response sealed in view
23     of what we discussed already on the record and the
24     victim's ability to disclose those provisions of
25     their own choosing, if they wish.  So, in view of
```

1     the public policy that matters filed in court

2     proceedings should be open to the public and sealing  should

3   only occur in circumstances that justife the

4     need to restrict public access, I'm going to deny

5     the motion to seal the response and allow that to be

6     viewed.

7              All right.  So I'll let both of you confer

8     about whether there is a need for any additional

9     evidence to be presented.  Let me know one way or

10    the other.  If there is, we'll schedule a hearing.

11    If there isn't and you want to submit some

12    additional stipulated information, do that, and then

13    I'll take care of this in due course.

14              MR. EDWARDS: Thank you, Your Honor.

15              THE COURT:  All right.

16              MR. LEE: Thank you, Your Honor.

17              MS. VILLAFANA: Thank you, Your Honor.

18              THE COURT:  You're welcome.

19              (Proceedings concluded.)

20

21

22

23

24

25

Page 33

1

2          I hereby certify that the foregoing is true

3      and correct to the best of my ability.

4

5

6      
       _____

7      Victoria Aiello, Court Reporter

8

9

10

11

12

13