GOVERNMENT

EXHIBIT

V

**Kenneth W. Starr**
**Kirkland & Ellis LLP**
777 South Figueroa Street
Los Angeles, CA 90017-5800
Phone: 213-680-8440
Fax: 213-680-8500
kstarr@kirkland.com

**Joe D. Whitley**
**Alston & Bird LLP**
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
Ph: 202-756-3189
Fax: 202-654-4889
joe.whitley@alston.com

May 19, 2008

VIA FACSIMILE (202) 514-0467　　　　　　　　　　　　*CONFIDENTIAL*

Honorable Mark Filip
Office of the Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Judge Filip:

　　In his confirmation hearings last fall, Judge Mukasey admirably lifted up the finest traditions of the Department of Justice in assuring the United States Senate, and the American people, of his solemn intent to ensure fairness and integrity in the administration of justice. Your own confirmation hearings echoed that bedrock determination to assure that the Department conduct itself with honor and integrity, especially in the enforcement of federal criminal law.

　　We come to you in that spirit and respectfully ask for a review of the federal involvement in a quintessentially state matter involving our client, Jeffrey Epstein. While we are well aware of the rare instances in which a review of this sort is justified, we are confident that the circumstances at issue warrant such an examination. Based on our collective experiences, as well as those of other former senior Justice Department officials whose advice we have sought, we have never before seen a case more appropriate for oversight and review. Thus, while neither of us has previously made such a request, we do so now in the recognition that both the Department's reputation, as well as the due process rights of our client, are at issue.

　　Recently, the Criminal Division concluded a very limited review of this matter at the request of U.S. Attorney Alex Acosta. Critically, however, this review deliberately excluded many important aspects of this case. Just this past Friday, on May 16, 2008, we received a letter from the head of CEOS informing us that CEOS had conducted a review of this case. By its own admission, the CEOS review was "limited, both factually and legally." Part of the self-imposed limitation was CEOS's abstention from addressing our "allegations of professional misconduct by federal prosecutors"—even though such misconduct was, as we contend it is, inextricably intertwined with the credibility of the accusations being made against Mr. Epstein by the United States Attorney's Office in Miami ("USAO"). Moreover, CEOS did not assess the terms of the Deferred Prosecution Agreement now in effect, nor did CEOS review the federal prosecutors' inappropriate efforts to implement those terms. We detail this point below.

Honorable Mark Filip
May 19, 2008
Page 2

By way of background, we were informed by Mr. Acosta that, at his request, CEOS would be conducting a review to determine whether federal prosecution was both appropriate and, in his words, "fair." That is not what occurred. Instead, CEOS has now acknowledged that we had raised "many compelling arguments" against the USAO's suggested "novel application" of federal law in this matter. Even so, CEOS concluded, in minimalist fashion, that "we do not see anything that says to us *categorically* that a federal case should not be brought" and that the U.S. Attorney "would not be *abusing his prosecutorial discretion* should he authorize federal prosecution of Mr. Epstein" thus delegating back to Mr. Acosta the decision of whether federal prosecution was warranted (emphasis added). Rather than assessing whether prosecution would be *appropriate*, CEOS, using a low baseline for its evaluation, determined only that "it would not be impossible to prove . . ." certain allegations made against Mr. Epstein. The CEOS review failed to address the significant problems involving the appearance of impermissible selectivity that would necessarily result from a federal prosecution of Mr. Epstein.

We respect CEOS's conclusion that its authority to review "misconduct" issues was precluded by Criminal Division practice. We further respect CEOS's view that it understood its mission as significantly limited. Specifically, the contemplated objective was to determine whether the USAO would be abusing its discretion by bringing a federal prosecution rather than making its own de novo recommendations on the appropriate reach of federal law. However, we respectfully submit that a full review of all the facts is urgently needed at senior levels of the Justice Department. In an effort to inform you of the nature of the federal investigation against Mr. Epstein, we summarize the facts and circumstances of this matter below.

The two base-level concerns we hold are that (1) federal prosecution of this matter is not warranted based on the purely-local conduct and the unprecedented application of federal statutes to facts such as these and (2) the actions of federal authorities are both highly questionable and give rise to an appearance of substantial impropriety. The issues that we have raised, but which have not yet been addressed or resolved by the Department, are more than isolated allegations of professional mistakes or misconduct. These issues, instead, affect the appearance and administration of criminal justice with profound consequences beyond the resolution in the matter at hand.

\*     \*     \*

In a precedent-shattering investigation of Jeffrey Epstein that raises important policy questions—and serious issues as to the fair and honorable enforcement of federal law—the USAO in Miami is considering extending federal law beyond the bounds of precedent and reason. Federal prosecutors stretched the underlying facts in ways that raise fundamental questions of basic professionalism. Perhaps most troubling, the USAO in Miami, as a condition of deferring prosecution, required a commingling of substantive federal criminal law with a proposed civil remedy engineered in a way that appears intended to profit particular lawyers in

RFP MIA 000370

Honorable Mark Filip
May 19, 2008
Page 3

private practice in South Florida with personal relationships to some of the prosecutors involved. Federal prosecutors then leaked highly sensitive information about the case to a New York Times reporter.[1] The immediate result of this confluence of extraordinary circumstances is an onslaught of civil lawsuits, all save one brought by the First Assistant's former boutique law firm in Miami.

The facts in this case all revolve around the classic state crime of solicitation of prostitution.[2] The State Attorney's Office in Palm Beach County had conducted a diligent investigation, convened a Grand Jury that returned an indictment, and made a final determination about how to proceed. That is where, in our federal republic, this matter should rest. Mr. Epstein faces a felony conviction in state court by virtue of his conduct, and the only reason the State has not resolved this matter is that the federal prosecutors in Miami have continued to insist that we, Mr. Epstein's counsel, approach and demand from the State Attorney's Office a harsher charge and a more severe punishment than that Office believes are appropriate under the circumstances. Yet despite the USAO's refusal to allow the State to resolve this matter on the terms the State has determined are appropriate, the USAO has not made any attempt to coordinate its efforts with the State. In fact, the USAO mandated that any federal agreement would be conditioned on Mr. Epstein persuading the State to seek a criminal punishment unlike that imposed on other defendants within the jurisdiction of the State Attorney for similar conduct.

From the inception of the USAO's involvement in this case, which at the end of the day is a case about solicitation of prostitution within the confines of Palm Beach County, Florida, we have asked ourselves why the Department of Justice is involved. Regrettably, we are unable to suggest any appropriate basis for the Department's involvement. Mr. Epstein has no criminal history whatsoever. Also, Mr. Epstein has never been the subject of general media interest until a few years ago, after it was widely perceived by the public that he was a close friend of former President Bill Clinton.

The conduct at issue is simply not within the purview of federal jurisdiction and lies outside the heartland of the three federal statutes that have been identified by prosecutors—18 U.S.C. §§ 1591, 2422(b), and 2423(b).

---

[1] One of the other members of Mr. Epstein's defense team, Jay Lefkowitz, has personally reviewed the reporter's contemporaneous notes.

[2] Although some of the women alleged to be involved were 16 and 17 years of age, several of these women openly admitted to lying to Mr. Epstein about their age in their recent sworn statements.

RFP MIA 000371

Honorable Mark Filip
May 19, 2008
Page 4

These statutes are intended to target crimes of a truly national and international scope. Specifically, § 1591 was enacted to combat human trafficking, § 2422 is aimed at sexual predation of minors through the Internet, and § 2423 deals with sex tourism. The nature of these crimes results in multi-jurisdictional problems that state and local authorities cannot effectively confront on their own. However, Mr. Epstein's conduct was purely local in nature and, thus, does not implicate federal involvement. After researching every reported case brought under 18 U.S.C. §§ 1591, 2422(b), and 2423(b), we found that not a single case involves facts or a scenario similar to the situation at hand. Our review of each precedent reflects that there have been no reported prosecutions under § 1591 of a 'john' whose conduct with a minor lacked force, coercion, or fraud and who was not profiting from commercial sexual trafficking. There have likewise been no cases under § 2422(b)—a crime of communication—where there was no use of the Internet, and where the content of phone communications did not contain any inducing or enticing of a minor to have illegal sexual activity as expressly required by the language of the statute. Furthermore, the Government's contention that "routine and habit" can fill the factual and legal void created by the lack of evidence that such a communication ever occurred sets this case apart from every reported case brought under § 2422(b). Lastly, there are no reported cases of violations of § 2423(b) of a person whose dominant purpose in traveling was merely to go to his own home.[3]

Although these matters were within the scope of the CEOS review, rather than considering whether federal prosecution is appropriate, CEOS only determined that U.S. Attorney Acosta "would not be abusing his prosecutorial discretion should he authorize federal prosecution" in this case. The "abuse of discretion" standard constitutes an extremely low bar of evaluation and while it may be appropriate when the consideration of issues are exclusively factual in nature, this standard fails to address concerns particular to this situation, namely the "novel application" of federal statutes. The "abuse of discretion" standard in such pure legal matters of statutory application risks causing a lack of uniformity. The same federal statutes that would be stretched beyond their bounds in Miami have been limited to their heartland in each of the other federal districts. Also, because this case implicates broader issues of the administration of equal justice, federal prosecution in this matter risks the appearance of selectivity in its stretching of federal law to fit these facts.

---

[3] Federal prosecution of a man who engaged in consensual conduct in his home that amounted to, at most, the solicitation of prostitution, is unprecedented. Since prostitution is fundamentally a state concern, (see *United States v. Evans*, 476 F.3d 1176, n.1 (11th Cir. 2007) (federal law "does not criminalize all acts of prostitution (a vice traditionally governed by state regulation)")), and there is no evidence that Palm Beach County authorities and Florida prosecutors cannot effectively prosecute and punish the conduct, there is no reason why this matter should be extracted from the hands of state prosecutors in Florida.

RFP MIA 000372

Honorable Mark Filip
May 19, 2008
Page 5

In fact, recent testimony of several alleged "victims" contradicts claims made by federal prosecutors during the negotiations of a deferred prosecution agreement. The consistent representations of key Government witnesses (such as ▮▮▮▮▮ ▮▮▮▮▮, ▮▮▮▮ and ▮▮▮▮▮) confirm the following critical points: *First*, there was no communication, telephonic or otherwise, that meets the requirements of § 2422(b). For instance, Ms. ▮▮▮ confirmed that Mr. Epstein never emailed, text-messaged, or used any facility of interstate commerce whatsoever, before or after her one (and only) visit to his home. ▮▮▮ Tr. (deposition) at 30. *Second*, the women who testified admitted that they lied to Mr. Epstein about their age in order to gain admittance into his home. Indeed, the women who brought their underage friends to Mr. Epstein testified that they would counsel their friends to lie about their ages as well. Ms. ▮▮▮ stated the following: "I would tell my girlfriends just like ▮▮▮ approached me. Make sure you tell him you're 18. Well, these girls that I brought, I know that they were 18 or 19 or 20. And the girls that I didn't know and I don't know if they were lying or not, I would say make sure that you tell him you're 18." ▮▮▮ Tr. at 22. *Third*, there was no routine or habit of improper communication expressing an intent to transform a massage into an illegal sexual act. In fact, there was often no sexual activity at all during the massage. Ms. ▮▮▮ testified that "[s]ometimes [Mr. Epstein] just wanted his feet massaged. Sometimes he just wanted a back massage." ▮▮▮ Tr. at 19. ▮▮▮ also stated that Mr. Epstein "never touched [her] physically" and that all she did was "massage[ ] his back, his chest and his thighs and that was it." ▮▮▮ Tr. at 12-13. *Finally*, there was no force, coercion, fraud, violence, drugs, or even alcohol present in connection with Mr. Epstein's encounters with these women. Ms. ▮▮▮ stated that "[Mr. Epstein] never tried to force me to do anything." ▮▮▮ Tr. A at 12. These accounts are far from the usual testimony in sex slavery, Internet stings and sex tourism cases previously brought. The women in actuality were not younger than 16, which is the age of consent in most of the 50 states, and the sex activity was irregular and in large part, consisted of solo self-pleasuring.

The recent crop of civil suits brought against Mr. Epstein confirm that the plaintiffs did not discuss any sexually-related activities with anyone prior to arriving at Mr. Epstein's residence. This reinforces our contention that no telephonic or Internet persuasion, inducement, enticement or coercion of a minor, or of any other individual, occurred. In addition, Mr. Jeffrey Herman, the former law partner of one of the federal prosecutors involved in this matter and the attorney for most of the civil complainants (as described in detail below), was quoted in the Palm Beach *Post* as saying that "it doesn't matter" that his clients lied about their ages and told Mr. Epstein that they were 18 or 19.

Not only is a federal prosecution of this matter unwarranted, but the irregularity of conduct by prosecutors and the unorthodox terms of the deferred prosecution agreement are beyond any reasonable interpretation of the scope of a prosecutor's responsibilities. The list of improprieties includes, but is not limited to, the following facts:

Honorable Mark Filip
May 19, 2008
Page 6

- Federal prosecutors made the unprecedented demand that Mr. Epstein pay a minimum of $150,000 per person to an unnamed list of women they referred to as minors and whom they insisted required representation by a guardian ad litem. Mr. Epstein's counsel later established that all but one of these individuals were actually adults, not minors. Even then, though demanding payment to the women, the USAO eventually asserted that it could not vouch for the veracity of any of the claims that these women might make.

- Federal prosecutors made the highly unusual demand that Mr. Epstein pay the fees of a civil attorney chosen by the prosecutors to represent these alleged "victims" should they choose to bring any civil litigation against him. They also proposed sending a notice to the alleged "victims," stating, in an underlined sentence, that should they choose their own attorney, Mr. Epstein would not be required to pay their fees. The prosecutors further demanded that Mr. Epstein waive his right to challenge any of the allegations made by these "victims."

- The Assistant U.S. Attorney involved in this matter recommended for the civil attorney, a highly lucrative position, an individual that we later discovered was closely and personally connected to the Assistant U.S. Attorney's own boyfriend.

- Federal prosecutors represented to Mr. Epstein's counsel that they had identified (and later rechecked and re-identified) several alleged "victims" of federal crimes that qualified for payment under 18 U.S.C. § 2255, a civil remedy designed to provide financial benefits to victims. Only through state discovery provisions did we later learn that many of the women on the rechecked "victim list" could not possibly qualify under § 2255. The reason is that they, themselves, testified that they did not suffer any type of harm whatsoever, a prerequisite for the civil recovery under § 2255. Moreover, these women stated that they did not, now or in the past, consider themselves to be victims.

- During the last few months, Mr. Herman, First Assistant Sloman's former law partner, has filed several civil lawsuits against Mr. Epstein on behalf of the alleged "victims." It is our understanding that each of Mr. Herman's clients are on the

Honorable Mark Filip
May 19, 2008
Page 7

> Government's confidential "list of victims." Most of these lawsuits seek $50 million in money damages.[4]
>
> - Assistant U.S. Attorney David Weinstein spoke about the case in great detail to Landon Thomas, a reporter with the *New York Times*, and revealed confidential information about the Government's allegations against Mr. Epstein. The Assistant U.S. Attorney also revealed the substance of confidential plea negotiations.
>
> - When counsel for Mr. Epstein complained about the media leaks, First Assistant Sloman responded by asserting that "Mr. Thomas was given, pursuant to his request, non-case specific information concerning specific federal statutes." Based on Mr. Thomas' contemporaneous notes, that assertion appears to be false. For example, Mr. Weinstein told Mr. Thomas that federal authorities believed that Mr. Epstein had lured girls over the telephone and traveled in interstate commerce for the purpose of engaging in underage sex. He recounted to Mr. Thomas the USAO's theory of prosecution against Mr. Epstein, replete with an analysis of the key statutes being considered. Furthermore, after Mr. Epstein's defense team complained about the leak to the USAO, Mr. Weinstein, in Mr. Thomas' own description, then admonished him for talking to the defense, and getting him in trouble. Mr. Weinstein further told him not to believe the "spin" of Mr. Epstein's "high-priced attorneys," and then, according to Mr. Thomas, Mr. Weinstein forcefully "reminded" Mr. Thomas that all prior conversations were merely hypothetical.

We are constrained to conclude that the actions of federal officials in this case strike at the heart of one of the vitally important, enduring values in this country: the honest enforcement of federal law, free of political considerations and free of the taint of personal financial motivations on the part of federal prosecutors that, at a minimum, raise the appearance of serious impropriety.

We were told by U.S. Attorney Acosta that as part of the review he requested, the Department had the authority, and his consent, to make any determination it deemed appropriate regarding this matter, including a decision to decline federal prosecution. Yet, CEOS's only conclusion, based on its limited review of the investigation, is that U.S. Attorney Acosta would not abuse his discretion by proceeding against Mr. Epstein. Thus, the decision of whether

---

[4] As recently as two months ago, Mr. Sloman was still listed publicly as a part of his former law firm. While we assume this was an oversight, Mr. Sloman's identification as part of the firm raises the appearance of impropriety.

prosecution *is fair and appropriate* has been placed, once again, in U.S. Attorney Acosta's hands.

In light of the foregoing, we respectfully ask that you review this matter and discontinue all federal involvement so that the State can appropriately bring this matter to closure. We would greatly appreciate the opportunity to meet with you to discuss these important issues. Such a meeting would provide the Department with an opportunity to review the paramount issues of federalism and the appearance of selectivity that are generated by the unprecedented attempts to broaden the ambit of federal statutes to places that they have never before reached. We sincerely appreciate your attention to this matter.

Respectfully submitted,

Kenneth W. Starr
Kirkland & Ellis LLP

Joe D. Whitley
Alston & Bird LLP

Kenneth W. Starr
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800
Phone: 213-680-8440
Alt. Phone: 310-506-4621
Fax: 213-680-8500
kstarr@kirkland.com

Joe D. Whitley
Alston & Bird LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
Ph: 202-756-3389
Fax: 202-654-4889
joe.whitley@alston.com

May 27, 2008

VIA FACSIMILE (202) 514-0467                                    *CONFIDENTIAL*

Honorable Mark Filip
Office of the Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Judge Filip:

    This letter briefly supplements our prior submission to you dated May 19, 2008. In that communication, we urgently requested that your Office conduct an independent review of the proposed federal prosecution of our client, Jeffrey Epstein. The dual reasons for our request that you review this matter are (i) the bedrock need for integrity in the enforcement of federal criminal laws, and (ii) the profound questions raised by the unprecedented extension of federal law by the United States Attorney's Office in Miami (the "USAO") to a prominent public figure who has close ties to former President Clinton.

    The need for review is now all the more exigent. On Monday, May 19, 2008, First Assistant Jeffrey Sloman of the USAO responded to an email from Jay Lefkowitz informing U.S. Attorney Alex Acosta that we would be seeking your Office's review. Mr. Sloman's letter, which imposed a deadline of June 2, 2008 to comply with all the terms of the current Non-Prosecution Agreement (the "Agreement"), plus new unilateral modifications, on pain of being deemed in breach of that Agreement, appears to have been deliberately designed to deprive us of an adequate opportunity to seek your Office's review in this matter.

    The USAO's desire to foreclose a complete review is understandable, given that the Child Exploitation and Obscenity Section ("CEOS") has already determined that our substantive arguments regarding why a federal prosecution of Mr. Epstein is not warranted were "compelling." However, in contradiction to Mr. Sloman's assertion that CEOS had provided an independent, *de novo* review, CEOS made clear that it did not do so. Indeed, CEOS declined to examine several of the more troubling aspects of the investigation of Mr. Epstein, including the deliberate leak to the *New York Times* of numerous highly confidential aspects of the investigation and negotiations between the parties as well as the recent crop of civil lawsuits filed against Mr. Epstein by Mr. Sloman's former law partner.

    The unnecessary and arbitrarily imposed deadline set by the USAO was done without any respect for the normal functioning and scheduling of state judicial matters. It requires that Mr. Epstein's counsel persuade the State Attorney of Palm Beach to issue a criminal information

RFP MIA 000377

Honorable Mark Filip
May 27, 2008
Page 2

to a charge that the State Attorney has not, despite a two year investigation, determined to be appropriate. Mr. Epstein's counsel must also successfully expedite a plea of guilty to this charge on a date prior to July 8, 2008, which is the date presently set by the state court Judge.

Further, the unnecessary deadline is even more problematic because Mr. Epstein's effort to reconcile the state charge and sentence with the terms of the Agreement requires an unusual and unprecedented threatened application of federal law. Thus, it places Mr. Epstein in the highly unusual position of having to demand that the State acquiesce to a more severe punishment than it had already determined was appropriate.

We have attempted to resolve these and other issues through the USAO and CEOS, including raising our concerns about the USAO's inappropriate conduct with respect to this matter. But those avenues have now been shut down. Mr. Sloman's letter purports to prohibit any further contact between Mr. Epstein's defense team and U.S. Attorney Acosta, and instead requires us to communicate with the USAO only though Mr. Sloman's subordinates.

While it pains us to say this, this misguided prosecution from the outset gives the appearance that it may have been politically motivated. Mr. Epstein is a highly successful, self-made businessman and philanthropist who entered the public arena only by virtue of his close personal association with former President Bill Clinton. There is little doubt in our minds that the USAO never would have contemplated a prosecution in this case if Mr. Epstein were just another "John."

U.S. Attorney Acosta previously has stated that he is "sympathetic" to our federalism-related concerns, but he has taken the position that his authority is limited by enforcement policies set forth in Washington, D.C. As expressed in our prior communication to you, we believe that a complete and independent appraisal and resolution of this case most appropriately would be undertaken by your Office — beginning with the rescission of the arbitrary, unfair, and unprecedented deadline that Mr. Sloman demands to have imposed in this case. At the very least, we would appreciate a tolling of the arbitrary timeline imposed on our client by the USAO in order to allow time for your office to consider our request that you undertake a review of this case.

Thank you for your time and attention.

Respectfully submitted,

Kenneth W. Starr
Kirkland & Ellis LLP

Joe D. Whitley
Alston & Bird LLP