IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JANE DOE 1 AND JANE DOE 2, | Civil Action No. |
| Petitioners, | 08-80736-CIV-MARRA |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**Government's Notice of Proposed Procedures for the
Determination of a Remedy**

The United States of America, by Byung J. Pak, United States Attorney for the Northern District of Georgia, and Jill E. Steinberg and Nathan P. Kitchens, Special Attorneys for the Southern District of Florida, files this notice outlining the Government's proposed schedule for determining the issue of what remedy, if any, should be applied based on the Court's Opinion and Order of February 21, 2019. [Doc. 435].

Pursuant to the Court's order, the parties have conferred extensively over the past several weeks regarding the steps that may be necessary to aid the Court's determination of a remedy. While the parties agree on certain components, including cross-briefing and an opportunity for all parties to be heard, we have been unable to reach an agreement on a briefing schedule primarily based on two substantive disagreements.

First, the government has requested a sixty-day period to speak directly with victims who may be affected by any remedy in this matter prior to submitting its recommendation. For the reasons discussed below, Petitioners' counsel oppose this request. Based on discussions with Petitioners, the government anticipates that Petitioners are likely to propose remedies that could impact victims in significant—and perhaps unintended—ways. At this time, neither the government nor the Petitioners have spoken to the majority of victims. The victims' views and concerns are critical to inform the government's recommendation of an appropriate remedy, particularly given the sensitive nature of the crime at issue. Accordingly, the government respectfully submits that a sixty-day period to consult with victims is both reasonable and essential to the Court's determination of a remedy.

Second, the government proposes that Petitioners should file the first pleading setting forth their recommended remedy; Petitioners insist that the government should do so. Requiring Petitioners to file an initial statement is not only consistent with the well-established practice that plaintiffs must identify their requested relief, but also necessary to the efficient determination of a remedy by clarifying the potential scope of options sought by Petitioners.

Based on its careful review of pleadings in this matter and discussions with Petitioners, the government understands Petitioners' long-stated desire for an opportunity to be heard and for an efficient resolution of this matter. The government shares those concerns. The government also appreciates the delicate

task facing this Court to craft an appropriate remedy that respects the rights of all parties without causing unintended harm to victims. Providing the victims with an opportunity to be heard, both by having Petitioners submit their suggested remedy first and then by granting the government a reasonable time to speak with potentially impacted victims, promotes all of these goals and will best guide the Court's determination of a path forward.

## DISCUSSION

Consistent with the principles stated above, the government proposes the following procedures to aid the Court's determination of a remedy:

- Within 30 days of the Court's scheduling order, the Petitioners will submit their proposed remedies with a brief in support.

- The government will have 60 days from the date of the Petitioners' submission to consult with the Petitioners and any additional victims who may be impacted by the proposed remedies.

- Within 30 days after this consultation period, the government will respond in writing to the Petitioners' submission.

- Within 14 days of the government's submission, the Petitioners may submit a reply brief.

- No sur-replies will be permitted without permission of the Court.

- Within 30 days of the Petitioners' reply, or notice to the Court that no reply is being submitted, any briefs by intervening or interested parties are due.

- Within 30 days of the intervening/interested parties' submissions, the Petitioners and the government may submit a response.

- The Court will mandate a mediation between the parties to discuss a possible resolution of the case.[1]

- If the mediation is unsuccessful, the Court will hold argument on the parties' briefs, including any intervening or interested parties' submissions.

This schedule will facilitate the expeditious resolution of this matter by clarifying the scope of remedies sought by Petitioners in the initial filing, granting victims a reasonable time period to share with the government their thoughts and concerns about the appropriate outcome, and encouraging the parties to mediate a solution. Although the parties share the same aim to find the best resolution for victims, Petitioners oppose the government's request for a 60-day period to speak with victims and do not want to state their requested relief first, even though they have had more than ten years to consider what relief to seek. The government respectfully submits that the Court should adopt the government's proposed schedule.

---

[1] The parties agree that a mediation could be productive and are continuing to discuss the appropriate timing for one.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

4

1. **The Government should have a reasonable period of time to speak with victims prior to recommending a remedy that could affect many of them.**

Despite bringing a civil suit based on the government's failure to confer with victims prior to entering into a non-prosecution agreement, Petitioners' counsel now oppose granting time for the government to confer with those same victims in an effort to propose an appropriate remedy for the Court. Counsel's opposition is contrary to their prior insistence that the government should speak with victims and would hamstring the Court's consideration of issues relevant to a proper resolution. In light of the unique procedural posture of this case, the voices of victims who may be impacted by any remedy entered in this action will shape the government's recommended relief and should guide the Court's ultimate resolution.

Any remedy that the Court imposes in this action may have far-reaching consequences that impact many victims beyond Petitioners. In particular, Petitioners have repeatedly discussed some form of rescission of the non-prosecution agreement ("the Agreement") as a remedy in this action. [Doc. 48 at 37; Doc. 127 at 1]. As the Court is well aware, the Agreement required Jeffrey Epstein to fulfill certain conditions in exchange for the non-prosecution provisions, including his agreement to compensate victims who chose to file suit pursuant to 18 U.S.C. § 2255, a statute that presumed damages of $150,000 per victim with potential recovery of punitive damages and other relief. [Doc. 48 at 10; Doc. 48-5 at 5]. A rescission of the Agreement may impact victims who

recovered damages pursuant to the Agreement by making their settlements subject to challenge. An understanding of the views of these victims is essential to the government's, and ultimately this Court's, consideration of this remedy.

The necessity of consulting with victims who could be affected by any remedy is especially apparent here given the particular vulnerability of these victims. It is well-recognized that victims of sexual assault may suffer chronic psychological effects that carry long-term consequences for their well-being, and "[r]eadjustment after victimization can be challenging." *Violence Prevention*, Centers for Disease Control and Prevention, *available at https://www.cdc.gov/violencepreventionsexualviolence/fastfact.html* (last accessed May 9, 2019). In this case, even if victim settlements are not disturbed, any rescission of the Agreement and subsequent investigation may trigger unintended consequences for victims who have attempted to readjust their lives a decade after Epstein's conviction for a state offense. And victims' prior statements that they suffered emotional distress and were troubled by the prospect of any involvement in the government's investigation of Epstein, and the potential exposure of their identities, only heightens this concern. [Doc. 403-18 ¶ 12]. The government thus believes it is essential to understand these victims' concerns prior to recommending a remedy. *See Maryland v. Craig*, 497 U.S. 836, 852, 110 S. Ct. 3157, 3167 (1990) (recognizing the government's "compelling" interest "in the protection of minor victims of sex crimes from further trauma and embarrassment." (quotation marks omitted)). The government is sensitive to the

trauma already endured by victims in this matter, and consideration of their concerns prior to imposing a remedy is vital to the Court's determination.

Providing a reasonable period for the government to speak with victims is also important because both Petitioners and the government lack clarity about what victims want and how they may be affected by this matter. During the parties' discussions, Petitioners acknowledged that they have consulted only a subset (less than a majority) of the victims. The parties also agree that victims are likely to hold varying opinions about an appropriate remedy, including those who are likely to oppose rescission of the Agreement. Accordingly, the government believes that a sixty-day period to confer with victims is the minimum amount of time needed to inform its judgment about a remedy so it can effectively advise the Court.

In light of the government's expressed commitment to speak to victims about a remedy, Petitioners' opposition to the government's request is disappointing and would lead to a flawed process. Petitioners' counsel have cited multiple reasons for their opposition, none of which withstand scrutiny.

First, counsel contend that the government has declined the opportunity to confer with victims over the past ten years, so it should not be given time to do so now. While the government understands Petitioners' concern regarding the prior efforts of the U.S. Attorney's Office of the Southern District of Florida to communicate with victims, undersigned counsel have repeatedly expressed to Petitioners our intention to speak with victims from the outset of our

involvement in March 2019. Indeed, a different approach was necessitated by the different procedural posture of this case after the Court entered its order of partial summary judgment.[2] [Doc. 435] Based on that order, the government now seeks to assist the Court's determination of a remedy through a recommendation informed by an understanding of the victims' concerns. The government's commitment to confer with victims at the remedy stage has been, and will remain, firm.

Second, Petitioners' counsel suggest that a period dedicated to conferring with victims would further delay proceedings. But the government's request for a sixty-day period to speak with victims after Petitioners' submission on remedies is reasonable, if not ambitious, particularly in light of the fact that Petitioners have only consulted with a subset of victims over the past ten years. The government does not seek an open-ended delay, but instead asks for a

---

[2] Petitioners' counsel also have suggested that the government's prior objection to their motion to add Jane Doe No. 3 and Jane Doe No. 4 as plaintiffs is inconsistent with the government's commitment to speak with victims. Not so. The government objected to their joinder based on legal infirmities in Petitioners' motion, including the untimely nature of the request, the statute of limitations, and the injection of new legal issues when Jane Doe No. 4 was not known to the government at the time of the Agreement. [Doc. 290 at 12–13; Doc. 314 at 23–24]. The Court agreed that adding Jane Doe No. 3 and Jane Doe No. 4 was improper this "late in the proceedings." [Doc. 324 at 7]. The government never asserted that the views of these victims could not be considered at the remedy stage.

reasonable chance to speak to as many victims as possible so that it can frame a proper remedy and inform the Court.[3]

Third, Petitioners' counsel claim that the government could file its proposed remedy first and then amend its pleading later, if necessary, after speaking to victims. Such an approach would lessen, not promote, an efficient resolution by inviting the prospect of amended filings with accompanying multiple rounds of briefing. No judicial or victim interests are served in requiring the government to submit an incomplete filing lacking victim input before supplementing later.

Most troubling, Petitioners' counsel suggest that only the views of Jane Doe No. 1 and Jane Doe No. 2 should be relevant to a remedy, and that the Court should not consider the opinions of other victims given the certainty that some will hold differing views. The fact that victims likely have diverse concerns and opinions about the proper path forward makes it more essential, not less, that the Court have the benefit of their viewpoints for its consideration. The government trusts that Petitioners' counsel will effectively advocate for Petitioners' desired relief. But Petitioners should not impede the Court's consideration of other

---

[3] Although Petitioners assert that the Court's "limited" extension granted in March gave the government enough time to confer with victims, this claim does not align with what the Court ordered the government to do, which was to confer with Petitioners regarding the procedures for deciding a remedy after reviewing the voluminous pleadings in this matter. [Doc. 448 at 1–2]. The government has worked diligently to do so.

victims who may be affected by a remedy, particularly when the parties have not spoken to the majority of them.

Accordingly, the government's request for a sixty-day period to speak to victims who may be affected by a remedy should be granted. Such a process is fair to Petitioners, just to the victims, and essential for the Court.

2. **Petitioners should file a pleading setting forth their requested remedy to clarify the relief sought before the government's response.**

The parties disagree as to which party should submit the initial statement setting forth a recommended remedy, but general rules of civil practice, the statutory language of the Crime Victims' Rights Act ("CVRA"), and the judicial interest in an efficient resolution of this matter require Petitioners to identify their remedy first.

General principles of civil practice require the plaintiff to identify the relief requested. Civil complaints must contain "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). No authority supports Petitioners' apparent position that if a plaintiff subsequently establishes a claim for relief, the burden shifts to the respondent to propose the remedy to be entered. Simply stated, Petitioners must identify the specific relief they seek to accord the government with fair notice and an opportunity to respond.

Contrary to Petitioners' contentions, the CVRA does not mandate a different result. The "Enforcement and Limitations" provisions of the CVRA, 18 U.S.C. § 3771(d), outline the remedial steps that may be taken by victims seeking to

assert their rights enumerated in 18 U.S.C. § 3771(a). Specifically, Section 3771(d) provides that victims may seek relief for any violation of their CVRA rights, states that victims may do so by filing a motion, and sets forth limitations on remedies that may be granted under the CVRA. 18 U.S.C. §§ 3771(d)(1), (d)(3), (d)(5)–(6). Although Section 3771(d) does not explicitly state which party must recommend specific relief in all cases, it does identify the party who must make a motion for at least one of the potential remedies: "the victim." 18 U.S.C. § 3771(d)(5). If the "victim" must make a request to reopen a plea or sentence, *id.*, it is incumbent on Petitioners to file a pleading setting forth their requested remedy if they seek to reopen the Agreement here.

In an improper effort to shift this burden to the government, Petitioners claim that a different CVRA subsection, Section 3771(c), which is separate from the Section 3771(d) remedial provisions, requires the government to file first. But this provision merely sets forth the general principle that the government should "make their best efforts" to notify victims of their rights under the CVRA. 18 U.S.C. § 3771(c)(1). To the extent that this provision has any bearing on this issue, the government's request for reasonable time to confer with victims, and to thereby treat them with "fairness and respect for the victim's dignity and privacy," represents the government's best efforts to accord the victims their rights at this stage. 18 U.S.C. §§ 3771(a)(5), (a)(8).

In addition, an initial statement from Petitioners clarifying the specific remedies sought will facilitate a more efficient resolution because it will focus the

government's discussions with victims. It is presently unclear what relief Petitioners believe is suitable in this case. Shortly after initiating this lawsuit, Petitioners' counsel stated that "because of the legal consequences of invalidating the current agreement, it is likely not in my clients' best interest to ask for the relief that we initially asked for." [Doc. 403-21 at 4]. Three years later, Petitioners proposed a list of more than a dozen potential remedies, including the rescission of the Agreement. [Doc. 127 at 14–15]. In recent discussions, Petitioners have not identified what, if any, of these remedies they will seek in addition to some form of rescission of the Agreement. The government needs to know what remedies Petitioners propose in order to speak openly and effectively with victims about their views on relief. Delaying the Petitioners' pleading would force the government either to have multiple discussions with victims before and after receiving clarity on Petitioners' requested relief, or to forgo discussions with victims until both parties had already recommended relief without victim input. This proposal is neither efficient nor serves the victims' interests.

Accordingly, Petitioners should set forth their requested relief, followed by the government's responsive brief after a reasonable period to confer with victims.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181
12

## CONCLUSION

For the foregoing reasons, the Court should adopt the government's proposed procedures to aid in its determination of what remedy, if any, should apply.

                                      Respectfully submitted,

                                      BYUNG J. PAK
                                        *United States Attorney*

                                    /s/JILL E. STEINBERG
                                        *Special Attorney*
                                        Florida Special Bar No. A5502522
                                        Jill.Steinberg@usdoj.gov

                                    /s/NATHAN P. KITCHENS
                                        *Special Attorney*
                                        Florida Special Bar No. A5502520
                                        Nathan.Kitchens@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

May 10, 2019

/s/ NATHAN P. KITCHENS

NATHAN P. KITCHENS

*Assistant United States Attorney*