**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 9:08-cv-80736-KAM**

**JANE DOE 1 AND JANE DOE 2,**

    **Petitioners,**

    **v.**

**UNITED STATES,**

    **Respondent.**

_____/

**JANE DOE 1 AND JANE DOE 2'S POSITION ON THE PROCEDURES TO BE**
**FOLLOWED TO DETERMINE A REMEDY FOR THE GOVERNMENT'S**
**VIOLATION OF THE CRIME VICTIMS' RIGHTS ACT**

Jane Doe 1 and Jane Doe 2 (also referred to as "the victims"), by and through undersigned counsel, now file their position regarding the procedures to be followed to determine a remedy for the Government's violation of the Crime Victims' Rights Act (CVRA). For the reasons explained below, the Court should direct the Government to begin the process by first publicly announcing what remedy (if any) it proposes as appropriate given this Court's finding that the rights of Jane Doe 1 and 2 were violated. Thereafter, Jane Doe 1 and 2 will file a response, including (if necessary) proposing further remedies. Further cross-briefing could follow, assuring all parties (including intervenor Jeffrey Epstein) a chance to place their views before the Court. This approach would place the Court in a position to rule expeditiously. While the Government opposes having to disclose its proposed remedies first, this approach of requiring the Government to initiate remedial action for the violation of the Jane Doe 1 and 2's

rights is consistent with the CVRA's language and goals.  It is also the best way to bring this decade-old litigation to a prompt conclusion.

## RELEVANT BACKGROUND

As the Court is aware, Jane Doe 1 and 2 filed this action in 2008, alleging a violation of their rights.  The focus of concern in this case has recently shifted from whether the Government violated Jane Doe 1 and 2's CVRA rights to how to remedy that now-proven violation.  As the Court is aware, this case has spanned more than a decade, during which the Government repeatedly created obstacles to reaching the merits of whether CVRA violations occurred when the Government (and Epstein) purposely concealed the consummation and execution of a secret non-prosecution agreement (NPA).  On February 21, 2019, this Court brought the initial phase of the case to an end, holding that Jane Doe 1 and 2's "right to conferral under the CVRA was violated."  *Jane Does 1 and 2 v. U.S.*, 350 F.Supp.3d 1201, 1222 (S.D. Fla. 2019).  As the Court explained, the undisputed evidence establishes that "the Government entered into a[n] NPA with Epstein without conferring with Petitioners [i.e., Jane Doe 1 and 2] during its negotiation and signing." *Id.* at 1218.

At the end of the Court's opinion, the Court directed counsel for Jane Doe 1 and 2 and the Government to "confer and inform the Court within 15 days of the date of entry of this Order how they wish to proceed on determining the issue of what remedy, if any, should be applied in view of the violation." *Id.* at 1222.  The next day, Friday, February 22, 2019, the Court clarified that it "did not expect the parties to agree on a remedy.  The Court only directs the parties to confer on what submissions or proceedings they believe are necessary in order for the Court to

make a determination on a remedy, if any.  If the parties are unable to agree on the submissions or proceedings necessary, they may submit separate filings."  DE 437 at 1.

Consistent with the Court's direction for a submission within 15 days on proposed procedures for a remedy determination, the next workday – Monday, February 25, 2019 – Counsel for Jane Does 1 and 2 sent a letter to the U.S. Attorney for the Southern District of Florida.  *See* Ex. 1.  The letter explained their position that the Government should take the next step in abiding by its obligations under the CVRA.  Jane Doe 1 and 2 noted that, under the CVRA, all "[o]fficers and employees of the Department of Justice . . . *shall* make their *best efforts* to see that crime victims are notified of, and accorded, the rights described in [the CVRA]."  Ex. 1. at 3 (*citing* 18 U.S.C. § 3771(c)(1) (emphases added)).  Under this statutory command, Jane Doe 1 and 2 suggested that the Government has an obligation to reasonably confer with them.  *Id.*  Jane Doe 1 and 2 explained one possible approach to resolving the case and their willingness to discuss others.  Ex. 1 at 4.

The Government, however, did not respond to the letter.  Accordingly, with the Court's March 8 deadline drawing near, on March 4, 2019, Jane Doe 1 and 2 sent a second letter to the U.S. Attorney for the Southern District of Florida.  Noting their earlier request, Jane Doe 1 and 2 wrote "again and with increased urgency" to request that the Office "immediately work with us" to resolve the case. Ex. 2 at 1.  Jane Doe 1 and 2 requested a right to quickly confer, noting that time was "of the essence" in view of the Court's March 8 deadline.  *Id.* at 2.

Once again, the U.S. Attorney's Office did not respond to this request to confer.  Instead, on the evening of March 4, 2019, counsel received an email from the Government indicating that "the Southern District of Florida has been recused from the CVRA litigation."  The email did not

3

explain why, after more than ten years of litigation, the U.S. Attorney's Office for the Southern District of Florida was now being recused in the matter.  Nor did the email explain why the matter was now being sent to Georgia for review.  Indeed, reassignment of the matter to Georgia seems quite curious, given that some seven years earlier, the Government had informed this Court that it had "reassigned responsibility for the investigation and potential prosecution of such criminal matters [involving Epstein's sexual activities with minor females] in the Southern District of Florida to the United States Attorney's Office for the Middle District of Florida for consideration of any prosecutorial action that may be authorized and appropriate."  DE 205-2 at 9.

On March 6, 2019, the U.S. Attorney's Office for the Northern District of Georgia contacted Jane Doe 1 and 2's counsel, requesting a 90-day extension of time in which to confer and propose procedural steps for determining an appropriate remedy.  Through counsel, Jane Doe 1 and 2 conferred with the Office, noting that this case has been in litigation for more than a decade – requesting that a resolution be expedited.  That same day, the Government filed with this Court a motion for a 90-day extension of time, arguing that it needed time to learn about the case and to confer with Jane Doe 1 and 2's counsel about how to determine procedures for developing a remedy.  The Court then asked that counsel for Jane Doe 1 and Jane Doe 2 to provide their views on how best to proceed.  Their counsel suggested that, as a matter of professional courtesy to the new attorneys, the Court should grant the Government's motion but limit the extension to 45 days (until no later than April 22, 2019) and that the Government should announce what remedy it was voluntarily willing to provide to them on or before May 10, 2019. DE 447 at 1-2.

On March 13, 2019, this Court entered an order extending until May 10, 2019, the time for the parties to confer on the appropriate mechanism to propose to the Court to make a determination regarding an appropriate remedy.  DE 448.  Thereafter, counsel for Jane Doe 1 and 2 and the Government have conferred several times via telephone and additional correspondence regarding appropriate procedures to be followed in this case.  As stated in their February 25 and March 4 letters described above, Jane Doe 1 and 2 contended that the Government should take the first step to remedy the CVRA violation, consistent with its "best efforts" obligations under the CVRA.  Jane Does 1 and 2 expressed their willingness to confer with the Government immediately, as they are the petitioners whose rights have already determined to have been violated.  The Government, however, took the position that it was not yet prepared to engage in any substantive discussion.  The Government has also insisted that Jane Doe 1 and 2 file an additional pleading listing their proposed remedies first with the Court.

In addition, the Government took the position that substantive proceedings in this case should be delayed for several months to permit it to confer with some unspecified number of victims – beyond Jane Doe 1 and Jane Doe 2 – about how to resolve the petition filed by Jane Doe 1 and 2.  This is a dramatic change in position by the Government, now represented by the U.S. Attorney's Office for the Northern District of Georgia.  As the Court will recall, in 2015 two additional victims – Jane Doe 3 and Jane Doe 4 – sought to join this case.  DE 280.  The Government, then represented by the U.S. Attorney's Office for the Southern District of Florida, "vehemently" opposed joinder.  *See* DE 324 at 2 (*citing* DE 290, 314).  The Court adopted the Government's position and denied the additional victims' motion to join.  DE 324 at 9 (*quoting* De 280 at 1).  Today, some four years later, the Government now apparently wishes to confer

5

with (among others) the two victims whom it successfully blocked from joining this case previously.

What specifically the Government wishes to confer about – and what it will tell the victims, especially those who are not formally parties to the case and presumably have not kept up on the intricacies of the case -- remains unclear.  So far as we can determine, during the nearly three months since this Court's summary judgment ruling, the Government has not initiated any contact with any victims or their counsel.  In fact, during an April 29, 2019, conference call between attorneys from the U.S. Attorney's Office for the Northern District of Georgia and counsel for Jane Does 1 and 2 (and 3 and 4), the Jane Does' counsel offered to simply have the conferral with the Government at that time on that call.  The Government declined to do so.  And the Government was unable to describe the nature of any conference they intended to conduct, did not indicate what options they would propose to victims, and did not say what message they intended to convey to the victims about what support the Government would offer before apparently asking these individuals what remedy they would like to seek.  The Government could not even define the scope of the victim population from whom the Government intended to seek input.

## DISCUSSION

To be clear, Jane Doe 1 and 2 have never opposed the Government discussing the case with anyone.  Nor are they opposed to discussing a settlement of their petition.  But at this point, the Government has not substantively begun any such process, with the two Jane Does or anyone else.  The Government has had enough time to talk with whomever will help make up its mind on its position and the case simply needs to move forward.  The Government procrastination in

conferring should have no impact on its legal position regarding the appropriate remedy for violating the CVRA.  It is certainly not a condition precedent to the Government's ability to have a position and at the current stage would not only cause delay but could create more issues with concluding this case depending on the substance of the one-sided conferral they now seek.

Accordingly, Jane Doe 1 and 2 now offer their recommendations to the Court as to how to proceed to resolve *their* petition.  In setting up a mechanism for determining the appropriate remedy in this case, two principles should be paramount.  First, because the Government has a statutory obligation to see that Jane Doe 1 and 2 "are . . . accorded" their CVRA rights, *see* 18 U.S.C. § 3771(c)(1), it should initiate the process for remedying the established CVRA violation these two victims suffered.  And second, that remedial process should be expedited given the extended length of time that the Government's numerous motions have taken to resolve and the Government's obligations to ensure that proceedings are "free from unreasonable delay."   In light of both of these principles, the Court should now direct the Government to move forward with announcing the procedure it intends to follow to correct the CVRA violations suffered by the two petitioners.  That announcement should be followed by subsequent expedited briefing as provided below.

I.     **THE COURT SHOULD DIRECT THE GOVERNMENT TO FIRST ANNOUNCE WHAT REMEDIES IT IS WILLING TO PROVIDE TO JANE DOE 1 AND 2 FOR THE VIOLATION OF THEIR CVRA RIGHTS.**

While counsel for Jane Doe 1 and 2 and the Government have conferred on how to craft an agreed procedure to propose to the Court for determining a remedy in this case, those efforts foundered as to how to proceed at the opening step.  Jane Doe 1 and 2 took the view that the Government should take the first step by announcing its proposed remedy for the CVRA

violation of their rights.  On the other hand, the Government has insisted that Jane Doe 1 and 2 propose a complete solution for the Government's illegal conduct even though the two victims do not know what steps the Government is willing to undertake.

The Government should go first.  Under the CVRA's plain language, the Government must remedy the violation of the CVRA – a statutory obligation that the Government cannot defer pending some action by unspecified victims, including dozens of women who are not parties to this case.   Under 18 U.S.C. § 3771(c)(1), the Government has a "best efforts" obligation to afford victims their rights, including doing so without "unreasonable delay," 18 U.S.C. § 3771(a)(7).  Even if Jane Doe 1 and 2 never submitted anything to the Government (or to the Court), the Government would have to undertake its own corrective efforts to protect their rights to confer.  Under the CVRA, the Government is obligated to take remedial measures now, independently of whatever procedure this Court may decide to put in place for determining a remedy in this litigation.

Nor does any confusion exist about what possible steps the Government could take.  The Court will recall extensive litigation that occurred in this case on the issue of remedies some seven years ago.  On November 7, 2011, the Government filed its motion to dismiss this action, arguing that it was impossible for Jane Doe 1 and 2 to obtain any remedy.  DE 205-2 at 3-4.  In response to the Government's motion to dismiss, Jane Doe 1 and 2 responded that the CVRA in fact permits multiple remedies.   DE 127 at 8-13.  Indeed, Jane Doe 1 and 2 also provided a list

of approximately 27 separate remedies that the Government could provide in addition to re-opening the non-prosecution agreement. *See id.* at 13-18.[1]

After the Government replied (DE 205-6), this Court rejected the Government's position that no remedy was possible and agreed with Jane Doe 1 and 2.  In discussing one possible remedy, this Court specifically held that "the CVRA is properly interpreted to authorize the rescission or 're-opening' of a prosecutorial agreement—including a non-prosecution arrangement—reached in violation of a prosecutor's conferral obligations under the statute. . . . [T]he [CVRA] is properly interpreted impliedly to authorize a 're-opening' or setting aside of pre-charge prosecutorial agreements made in derogation of the government's CVRA conferral obligations . . . ." *Jane Does 1 and 2 v. United States,* 950 F. Supp. 2d 1262, 1267 (S.D. Fla. 2013).

In light of this earlier and extensive briefing, the legal framework for permissible remedies is already well developed.  It makes no sense to delay this case further, given that Jane Doe 1 and 2 provided a list of more than 20 specific remedies back in 2011, DE 127 at 8-18, and on February 25, 2019 (four days after this Court's ruling) a follow up letter outlining a way to resolve the case.  By all reasonable appearances, the Government's request for Jane Doe 1 and 2 to provide some further enumeration of what remedies are being sought is a pointless effort at delay.  So that the record is clear on what remedies are being requested, Jane Doe 1 and 2 simply reaffirm that they are seeking each and every remedy listed in 2011 – and are waiting (as they

---

[1]  Jane Doe 1 and 2 also filed a short, sealed pleading with additional remedies that are appropriate in this case.

have since 2011) to see whether the Government will agree to some or all of them – or make alternative proposals.

Directing the Government to go first is also consistent with judicial efficiency.   In light of the Court's binding ruling that the Government has violated its CVRA obligations, the Government may decide to announce that it will voluntarily take the steps that are satisfactory to Jane Doe 1 and 2.  If so, this litigation might be brought to a swift conclusion without the need for any further judicial rulings.  And even if the Government's remedies are less-than-complete, the existence of those voluntarily provided remedies may limit the scope of the dispute between the parties[2] – and, accordingly, the scope of any hearings and rulings by this Court.

Finally, this case is unlike many cases that the Court has before it.  In some cases, the defendant in an action might be uncertain as to what sorts of remedies are being requested.  But here the issue of permissible remedies was litigated more than seven years ago.  The Government took the position that no remedies were possible in this case – and this Court rejected that position.  This case is an enforcement action, designed to enforce Jane Doe 1 and Jane Doe 2's rights under the CVRA.  One of the parties – the Government – has it entirely within its power to provide all the various remedies being sought through the lawsuit  – and then some.  Indeed, as explained above, the Government is statutorily *obligated* to use its "best efforts" to provide appropriate remedies, 18 U.S.C. § 3771(c)(1), even without any action by this Court.  The

---

[2]  The Court has previously granted Epstein's motion to intervene on remedy issues that might affect him.  If any remedy is being proposed that affects Epstein, Jane Doe 1 and 2 have no objection to him being heard and, indeed, have built in an opportunity for him to be heard in the schedule that they propose.

Government should first explain what its "best efforts" will be.  Until it does so, there is no reason to confer with Jane Doe 1 or Jane Doe 2 – or anyone else for that matter.  What specific remedy or remedies would the conference be about and what options is the Government making available? After more than ten years of litigation, the Government's suggestion that it should postpone explaining *its* proposed remedy is a transparent effort to do nothing but cause further delay.

## II.  THE COURT SHOULD ESTABLISH PROCEDURES THAT WILL EXPEDITE PROVIDING A REMEDY TO JANE DOE 1 AND 2.

The other point that the Court should consider in crafting remedial procedures is the extraordinary amount of time that the Government has already managed to delay a resolution of the petition filed by Jane Doe 1 and 2.  As the Court is aware, Jane Doe 1 (and then Jane Doe 2) filed this action in July 2008, and the Government has since raised a seemingly non-stop series of objections.  And not to be outdone, Epstein also intervened and succeeded in delaying the case for a year while he took a meritless interlocutory appeal to the Eleventh Circuit.  *See Jane Doe 1 and Jane Doe 2 v. U.S.*, 749 F.3d 999 (11th Cir. 2014).  The upshot is that in this case involving federal sex offenses against two child victims, a resolution of the petition has been delayed for more than a decade.

The CVRA contemplates rapid resolution of the crime victims' issues.  The CVRA's enforcement provision provides that "[t]he district court shall take up and decide any motion asserting a victim's right *forthwith*."  18 U.S.C. § 3771(d)(3) (emphasis added).  The Court of Appeals is required to "take up and decide" any mandamus petition for review "*within 72 hours* after the petition has been filed."  *Id.* (emphasis added).  To be clear, Jane Doe 1 and 2 have

appreciated the care with which this Court has reviewed this complicated case and believes that the Court has satisfied its obligations under the CVRA.  But with regard to the Government, the Court must view any request for delay by the Government with a wary eye in view of the accelerated timelines the CVRA establishes.  Indeed, the Government is statutorily obligated to protect victims' rights to proceedings free from "unreasonable delay."  18 U.S.C. § 3771(a)(7).

Jane Doe 1 and 2 provided the Government with a specific list of possible remedies that they were seeking in 2011.  The Government has had seven years(!) to review that list – more than ample notice of what was going to be requested as the remedies in this case.  The Court should evaluate any claim that the Government now needs more time to assess the situation against that backdrop of years and years of litigation protracted by unfounded Government resistance.

## III.    JANE DOE 1 AND 2' PROPOSED PROCEDURE FOR THE COURT TO DETERMINE A REMEDY.

In light of the principles discussed above, Jane Doe 1 and 2 propose that the Court order the following schedule for determining a remedy in this case, which the Court should enter as quickly as is feasible:

Not later than two weeks from the date of the Court's order: The Government should specify in writing how and when it proposes to remedy the violation of the rights of the two victims (Jane Doe 1 and Jane Doe 2) who are parties to this litigation.  If the Government desires, it can also simultaneously but separately specify whether, when, and how it proposes to remedy any CVRA violations that denied other victims their rights.

Not more than two weeks later: Jane Doe 1 and Jane Doe 2 should file any objections and what (if any) additional remedies they seek from the Court beyond what the Government voluntarily proposes to provide.

Not more than two weeks later: Intervenor Jeffrey Epstein should be permitted to file responses to the proposals made by the Government and Jane Doe 1 and 2.

Not more than two weeks later: The Government responds to Jane Doe 1 and 2 and to Epstein.

Not more than two weeks later: The Jane Doe 1 and Jane Doe 2 reply to the responses filed to the proposals.

Thereafter, the Court would hold oral argument on the issue, and provide an opportunity for anyone affected by the issues to address the Court.

Thereafter, the Court would rule as soon as practicable.

## IV.   PROMPT MEDIATION

In addition, Jane Doe 1 and 2 and the Government have discussed the possibility of a mediation in this case.  Once again, however, the parties have a different point of view as to how best to proceed.  As Jane Doe 1 and 2 understand the Government's position, it is proposing a briefing schedule that could take months *before* holding a mediation.   As the Court will recall, in 2016 Jane Doe 1 and 2 had joined with the Government in requesting a mediation, which this Court ordered.  DE 374.  However, that mediation effort was unsuccessful but led to a delay. *Compare* DE 374 (March 23, 2016 order directing mediation in the case and delaying government response to Jane Doe 1 and 2' summary judgment motion) *with* DE 403 (June 2, 2017 response by the Government to Jane Doe 1 and 2's summary judgment motion).

13

In Jane Doe 1 and 2's view, the mediation went nowhere because of the stage the case was in at the time – with the Government taking the position that its handling of the case was entirely proper.  The posture of the case is much different now – the Court has ruled that Jane Doe 1 and 2's rights have been violated and the focus is on providing them a remedy.  Jane Doe 1 and 2 are willing to have a second mediation at Government expense to discuss resolving the case, but they strongly believe that mediation is more likely to be successful if it takes place against a backdrop of an on-going schedule leading quickly to a court-imposed solution if the mediation fails.  Consistent with their wish to rapidly resolve this case, Jane Doe 1 and 2 ask for a court-ordered mediation, to be concluded no later than June 3, 2019.  The Court should also direct the Government to have available at the mediation participant(s) with full settlement authority.  Because any resolution could impact on the rights of Epstein, Jane Doe 1 and 2 propose that he should have a full opportunity to participate in the mediation process in a separate room from any victim.

Consistent with the position outlined here, Jane Doe 1 and 2 attach for the Court's consideration a proposed order implementing all these scheduling matters.

## V.     IF THE COURT GRANTS THE GOVERNMENT'S REQUEST FOR ADDITIONAL DELAY, IT SHOULD SIMULTANEOUSLY PERMIT JANE DOE 1 AND 2 TO TAKE LIMITED DISCOVERY RELEVANT TO REMEDIAL ISSUES.

For the reasons just explained, Jane Doe 1 and 2 request that the Court should put this case on a path toward expeditious resolution as just outlined.  The Government will apparently propose a different approach, including (as we understand it) months of additional delay for meetings with additional (and unspecified) victims (or lawyers) other than Jane Doe 1 and Jane

14

Doe 2.  If the Court decides to approve the Government's approach, Jane Doe 1 and 2 would request two additions to the Government's proposal.  First, Jane Doe 1 and 2's counsel should be permitted to participate in any meetings with other victims.  And second, to ensure that any additional time required to bring this case to a conclusion is minimized, Jane Doe 1 and 2 should be allowed to take six depositions of witnesses with directly relevant information concerning remedial issues.

Turning to the first point, the Government appears to want to meet individually with dozens of victims (apart from Jane Doe 1 and Jane Doe 2) over the coming months – even though it has not previously met (or, so far we can tell, even communicated) with these persons during more than ten years of litigation.  The Government misunderstands the current posture of this case.  As noted above, the Government had previously *objected* when just two additional victims – Jane Doe 3 and Jane Doe 4 – tried to join the case.  Indeed, the Government was quite specific in its position: "[T]his Court should *decline to enlarge these proceedings to allow additional claims and additional petitioners* . . . ."  DE 314 at 3-4 (emphasis added).  The Government went on to argue that Jane Doe 3 and 4 "have provided no satisfactory explanation for the delay" in attempting to join the case in 2015.  *Id.* at 8.  Indeed, the Government argued that adding even two additional victims into the case "would prejudice the Government since it would inject new issues into this litigation."  *Id.* at 11.  The Government never gave even a hint that it was willing to allow Jane Doe 3 and 4 (for example) to be heard at the remedy stage.

On the particular issue of expanding that case to include two additional victims, the Court agreed with the Government's objection.  In so ruling, the Court noted that the Government had "vehemently" opposed joinder.  *See* DE 324 at 2 (*citing* DE 290, 314).  The Court then explained

15

that the merits of this case will be decided based on a "determination of whether the Government violated the rights of Jane Doe 1, Jane Doe 2, and all 'other similarly situated victims' under the CVRA. Jane Doe 3 and Jane Doe 4 may offer relevant, admissible, and non-cumulative evidence that advances that determination, but their participation as listed parties is not necessary in that regard."  DE 324 at 9 (emphasis deleted) (*quoting* DE 189 at 1; DE 311 at 2, 12, 15, 18-19).

In quoting Jane Doe 1 and Jane Doe 2's pleadings about "similarly situated victims," the Court was implicitly recognizing the parallels between this case and a class action lawsuit.  In light of this ruling, Jane Doe 1 and Jane Doe 2 can be viewed as the functional equivalent of "class representatives" in a class action lawsuit.  *See* Fed. R. Civ. P. 23(a)(4). And, further developing the parallel to a class action lawsuit, Jane Doe 1 and 2's proposed schedule outlined above allows for a court hearing, during which any individual member of the victims' class would be able to provide their views to the Court as to how best to proceed – subject to a later Court ruling – a much more rapid way of obtaining any necessary input than the delay proposed by the Government.  And Jane Doe 1 and 2 also have made clear that Epstein should have a chance to raise any points he believes that the Court should consider – and have built that into their proposed schedule.

If the Court determines to allow the Government to delay the case to have meetings with multiple other persons who are not parties to this case, then Jane Doe 1 and Jane Doe 2 – as class representatives – should at least be permitted to participate in those meetings through their legal counsel.  The Government, of course, has been litigating *against* Jane Doe 1 and 2 for more than ten years.  Indeed, the Government even threatened at one point to accuse all the victims of being criminal participants in their own abuse.  *See* DE 344 at 3-4 (citing Nov. 23, 2015 Tr. at 4-5). It

16

is Jane Doe 1 and Jane Doe 2 who have been fighting the Government to vindicate their rights as Epstein's victims.  It makes no sense for the Government to now be able to present its side of this case in private meetings with victims without the class representatives being able to participate, in order to frame the proceedings in a way that could be designed to prompt a certain (presumably pro-Government) view from the other victims.

In addition, as a second point, if the Court approves the months of delay that the Government proposes, the Court should at least make sure that time is used productively to put the case in a position for rapid resolution thereafter.  The Court can do this by allowing Jane Doe 1 and Jane Doe 2 to collect evidence that might be necessary at any contested hearing on remedy. In particular, it appears that the Government may attempt to inject into any remedy hearing the extent to which Epstein was involved in the CVRA violations.  The Government has vaguely alluded in its discussions with Jane Doe 1 and 2 to the possibility that if, for example, the NPA immunity provisions were rescinded in any way, then Epstein might have the ability to challenge certain settlement payments made to some of his victims.  Whether Epstein would actually make such a challenge and potentially expose himself to far greater civil liability seems highly unlikely – and the Government does not appear to have made any effort to even ask him his position. (Again, Jane Doe 1 and 2 believe Epstein should be given a full and fair opportunity to provide his position on these issues.)  But even more important, the Government has not disclosed to Jane Doe 1 and 2 the Government's position on any such hypothetical challenge by Epstein – much less the evidence within the Government's possession that could be used to respond to that challenge.

As Jane Doe 1 and 2 have made clear for years, it is their position that "Epstein has 'forfeited' any right to seek specific performance of the non-prosecution agreement. . . . [H]e was a party to – and, indeed, the instigator of – the Government's CVRA violations. . . . [H]ere the illegal agreement was a deliberate plan. In such circumstances, any equitable claim Epstein has for specific performance of the non-prosecution agreement disappears." DE 127 at 9 (*citing U.S. v. Walker*, 98 F.3d 944, 947 (7th Cir. 1996) (defendant forfeited right to seek specific performance of a plea agreement because the agreement was illegal)). Jane Doe 1 and 2 have reiterated that position in discussions with the Government over the past several months. But the Government has yet to share with Jane Doe 1 and 2 all of the information it possesses that Epstein instigated the illegal decision not to notify them of the agreement – or even if it will join Jane Doe 1 and 2's legal position.

Given the Government's failure to disclose all its information about Epstein's involvement in the illegal agreement, Jane Doe 1 and 2 need depositions of key witnesses on this subject. This Court has previously ruled that Jane Doe 1 and 2 could undertake "limited discovery in the form of document requests and requests for admissions from the U.S. Attorney's Office." DE 99 at 11. The Court also stated that "[e]ither party may request additional discovery if necessary." *Id.*

If the Government will not announce what remedy it is prepared to provide, then depositions are necessary. Depositions will shed important light on remedial issues beyond what the available documentary evidence currently reveals. One example of a subject for a deposition is a "breakfast meeting" that appears to have taken place on around October 12, 2007, between U.S. Attorney Acosta and Epstein attorney Jay Lefkowitz. This Court has previously noted that

this meeting occurred.  *See Jane Does 1 and 2 v. U.S.*, 359 F.Supp.3d 1201, 1210 (S.D. Fla. 2019).  And a subsequent letter from Lefkowitz to Acosta briefly refers to "a commitment" by the U.S. Attorney at that meeting that his Office "would not . . . contact any of the identified [victims] . . . in this matter."  *Id.*  But what was discussed specifically does not appear to have been memorialized.  A deposition will answer that and other related questions and will, Jane Doe 1 and 2 believe, establish that the Epstein was ultimately responsible for the decision not to disclose the existence of the immunity provisions to them.

With the assistance of the Court, Jane Doe 1 and 2 were able to secure various emails and letters between the Government and Epstein's attorneys. But the documents available to Jane Doe 1 and 2 do not fully reveal what was agreed to among the lawyers for the United States, Palm Beach County, and Epstein.  Indeed, it appears that some of the key players decided not to put in writing what was happening – as this Court has previously noted.  *See Jane Does 1 and 2 v. U.S.*, 359 F.Supp.3d 1201, 1207 (S.D. Fla. 2019) ("Palm Beach County State Attorney Barry Krischer wrote the line prosecutor about the proposed agreement and added: 'Glad we could get this worked out *for reasons I won't put in writing.* After this is resolved I would love to buy you a cup at Starbucks and have a conversation.'" (emphasis added)).

Accordingly, if the Court grants the Government's request for delay, Jane Doe 1 and 2 request that during the months of delay, they be given leave to depose six witnesses – former U.S. Attorney Acosta, who negotiated restrictions on what the victims could be told, during the "breakfast meeting" and otherwise; Assistant U.S. Attorney Villanfaña, who implemented the directions she was given by the U.S. Attorney; former Palm Beach County State Attorney Barry Krischer, who was involved in the plea discussions and was "glad" to work a deal out for reasons

he would not "put in writing"; Epstein Attorney Jay Lefkowitz, who was a key participant in the "breakfast meeting" and was deeply involved in crafting the restrictions on what the victims were to be told; and FBI Agents Nesbit Kuyrkendall and Jason Richard, who were responsible for interacting with the U.S. Attorney's Office on the subject of victim notifications and provided some of those notifications.

Jane Doe 1 and 2 can provide further information about why these six witnesses have important information connected with the remedies that are available in this case. But the Government has already agreed that this Court has this power to allow such discovery. *See* DE 99 at 11 ("the United States agreed that this Court, under its inherent authority to manage this case, could impose discovery obligations on each party."). And in its July 20, 2015 initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(1), the Government itself listed all these witnesses as persons who possess information relevant to this case. Jane Doe 1 and 2 respectfully submit that it would expedite a resolution of this case if they were permitted to take depositions during any delay in a resolution proposed by the Government.[3]

## CONCLUSION

For all the reasons explained above, the Court should adopt Jane Doe 1 and 2's proposed procedures and schedule for reaching a resolution on the appropriate remedy in this case.

DATED: May 10, 2019

---

[3]   Based on their current (limited) understanding of the Government's position on remedies in this case, Jane Doe 1 and 2 believe that with six depositions, they could collect the necessary evidence for a remedial hearing. They reserve the right to seek additional discovery if the Government's position on remedy necessitates it.

Respectfully Submitted,

/s/ *Bradley J. Edwards*

Bradley J. Edwards
Edwards Pottinger LP
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (800) 400-1098
E-Mail: brad@epllc.com


Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah[*]
383 S. University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
E-Mail: cassellp@law.utah.edu

John Scarola
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Telephone: (561) 686-6300
E-Mail:  jsx@searcylaw.com

*Attorneys for Jane Does 1 and 2*

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah.

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was served on May 10, 2019, on counsel of record

using the Court's CM/ECF system:

Jill E. Steinberg
Nathan P. Kitchens
U.S. Attorneys' Office for the Northern District of Georgia
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000
Jill.Steinberg@uisdoj.gov
Nathan.Kitchens@usdoj.gov

*Attorneys for the Government*

Roy Eric Black
Jacqueline Perczek
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard
Suite 1300
Miami, FL 33131
305-371-6421
Fax: 358-2006
Email: pleading@royblack.com

*Attorneys for Jeffrey Epstein*

/s/ *Bradley J. Edwards*