UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-Civ-Marra/Johnson

JANE DOE #1 and JANE DOE #2

v.

UNITED STATES
_____/

**JANE DOE 1 AND JANE DOE 2'S SUBMISSION ON PROPOSED REMEDIES**

COME NOW Jane Doe 1 and Jane Doe 2 (also referred to as "the victims"), by and through undersigned counsel, to provide their submission on proposed remedies.  For the reasons explained below, the Court should grant Jane Doe 1 and Jane Doe 2 various remedies as listed below.  The appropriate remedies include rescission of the provisions in the non-prosecution agreement that immunized Epstein and his named and unnamed coconspirators from prosecution without first conferring with Jane Doe 1 and Jane Doe 2.

## BACKGROUND

The Court is well familiar with the facts of this case but highlighting some aspects of the litigation history will usefully frame Jane Doe 1 and 2's request. The relevant facts of this case have already been essentially established by this Court's detailed ruling on summary judgment. As this Court found in its February 21, 2019 opinion and order, between about 1999 and 2007, "Jeffrey Epstein sexually abused more than 30 minor girls, including Petitioners Jane Doe 1 and Jane Doe 2 . . . at his mansion in Palm Beach, Florida, and elsewhere in the United States and overseas.   Because  Epstein  and  his  co-conspirators  knowingly  traveled  in  interstate  and

1

international commerce to sexually abuse Jane Doe 1, Jane Doe 2 and others, they committed violations of not only Florida law, but also federal law." *Jane Does 1 and 2 v. United States*, 359 F.Supp.3d 1201, 1204 (S.D. Fla. 2019) (internal citations omitted).  Ultimately in 2007, the U.S. Attorney's Office for the Southern District of Florida (hereinafter referred to simply as the "U.S. Attorney's Office") entered into a non-prosecution agreement ("NPA") with Epstein, in which that particular Office agreed not to prosecute him for federal sex abuse crimes committed against Jane Doe 1 and Jane Doe 2 and numerous other identified underage girls whom Epstein and his co-conspirators victimized. *Id.* at 1206-08.

This NPA was and is  illegal, as the U.S. Attorney's Office entered into it by intentionally violating the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.  As this Court explained:

> Here, it is undisputed that the Government entered into a NPA with Epstein without conferring with [Jane Doe 1 and Jane Doe 2] during its negotiation and signing. Instead, the Government sent letters to the victims requesting their "patience" with the investigation even after the Government entered into the NPA. At a bare minimum, the CVRA required the Government to inform Petitioners that it intended to enter into an agreement not to prosecute Epstein. Although the binding effect of the NPA was contingent upon Epstein pleading guilty to the state charges, that contingency was out of the control of the Government. The Government's hands were permanently tied if Epstein fulfilled his obligations under the NPA. Thus, Petitioners and the other victims should have been notified of the Government's intention to take that course of action before it bound itself under the NPA. Had the Petitioners been informed about the Government's intention to forego federal prosecution of Epstein in deference to him pleading guilty to state charges, Petitioners could have conferred with the attorney for the Government and provided input. *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (there are rights under the CVRA including the "reasonable right to confer with the attorney for the Government"). Hence, the Government would have been able to "ascertain the victims' views on the possible details of the [non-prosecution agreement]." *Id.* Indeed, it is this type of communication between prosecutors and victims that was intended by the passage of the CVRA. *See United States v. Heaton*, 458 F. Supp. 2d 1271 (D. Utah 2006)(government motion to dismiss charge of using facility of interstate commerce to entice minors to engage in unlawful sexual activity would not be granted until government consulted with victim); *United*

*States v. Ingrassia*, No. CR-04-0455ADSJO, 2005 WL 2875220, at *17 n. 11 (E.D.N.Y. Sept. 7, 2005) (Senate debate supports the view that the contemplated mechanism for victims to obtain information on which to base their input was conferral with the prosecutor concerning any critical stage or disposition of the case).

*Id.* at 1219.

This Court also found that the U.S. Attorney's Office had "concealed" the NPA from the victims and "misled" the victims about the possibility of a federal prosecution:

Particularly problematic was the Government's decision to conceal the existence of the NPA and mislead the victims to believe that federal prosecution was still a possibility. When the Government gives information to victims, it cannot be misleading. While the Government spent untold hours negotiating the terms and implications of the NPA with Epstein's attorneys, scant information was shared with victims. Instead, the victims were told to be "patient" while the investigation proceeded.

*Id.*

In light of these and other illegal actions by the U.S. Attorney's Office, this Court specifically held that "under the facts of this case, there was a violation of the victims' rights under the CVRA." *Id.* at 1222. The Court accordingly granted Jane Doe 1 and Jane Doe 2's motion for summary judgment, holding that Jane Doe 1 and 2's "right to conferral under the CVRA was violated." *Id.*[1]

In addition, Epstein was directly involved in these CVRA violations. As this Court found, "Epstein's counsel was aware that the Office was keeping the NPA secret from the victims and, indeed, had sought assurances to that effect." *Id.* at 1208 (*citing* DE 407 at ¶ 49).

_____

[1] Jane Doe 1 and 2 had also alleged violations of their rights to be treated with fairness and to receive notice of court proceedings. The Court did not rule on those allegations.

At the end of the Court's opinion, the Court directed counsel for Jane Doe 1 and 2 and the Government to "confer and inform the Court within 15 days of the date of entry of this Order how they wish to proceed on determining the issue of what remedy, if any, should be applied in view of the violation." *Id.* at 1222.  As recounted in Jane Doe 1 and 2's submission on this procedural issue, the two victims and the Government were unable to agree on a precise schedule for determining remedies.  *See* DE 452 at 1-6.  Accordingly, on May 13, 2019, the Court directed Jane Doe 1 and 2 to submit proposed remedies no later than 30 days after that date of that order.  Jane Doe 1 and 2 now timely file their requested remedies.

### JANE DOE 1 AND 2'S REQUESTED REMEDIES

Jane Doe 1 and 2 request that the Court enter an order providing to them the specified remedies, generally grouped into the following categories: rescission of the immunity provisions in the NPA; an apology from the U.S. Attorney's Office; restoration of basic rights to which the victims were deprived; educational remedies; related equitable remedies; other miscellaneous remedies; sealed remedies; and all other just and proper remedies.  In overview, Jane Doe 1 and 2 ask the Court to enter an order providing the following:

Rescission Remedies

1. The provisions in the non-prosecution agreement between the U.S. Attorney's Office for the Southern District of Florida and Jeffrey Epstein barring his prosecution and that of his named and unnamed conspirators were entered into illegally.  These provisions are accordingly null and void to the extent that they prevent prosecution of federal crimes committed in the Southern District of Florida against Jane Doe 1 and Jane Doe 2 (or any other victim of a federal sex offense committed by Epstein or his coconspirators within the Southern District of Florida (hereinafter referred to as an "Epstein victim"));

2. If after consultation with the victims the U.S. Attorney's Office determines that prosecution of Epstein for crimes committed against Jane Doe 1 and Jane Doe 2 (or

any other Epstein victim) is appropriate, the Constitution would permit such a prosecution;

3. The U.S. Attorney's Office is enjoined to forthwith make its "best efforts" to protect the CVRA rights of Jane Doe 1 and 2 (and all other Epstein victims) under 18 U.S.C. § 3771(c)(1);

4. The U.S. Attorney's Office is enjoined to forthwith "confer" with Jane Doe 1 and 2 (and all other Epstein victims who request it) as required by 18 U.S.C. § 3771(a)(5), and to provide them with accurate and timely notice of future case events as required by 18 U.S.C. § 3771(a)(2);

<u>Apology Remedies</u>

5. The U.S. Attorney's Office shall provide a letter of apology within 14 days to Jane Doe 1 and 2 (and all other Epstein victims) for violating Jane Doe 1 and Jane Doe 2's (and all other victims') rights;

6. The current U.S. Attorney for the Southern District of Florida, then-U.S. Attorney for the Southern District of Florida R. Alexander Acosta, the line prosecutor who handled the case, and then-supervisors shall personally meet with Jane Doe 1 and Jane Doe 2 and their legal counsel (and all other Epstein victims who so request) within 30 days, to explain in detail the decision not to prosecute Epstein's crimes against them and confer with them about the case and about what steps might be taken to insure that Epstein is held accountable for the sex offenses he has committed;

7. The Court shall hold a hearing within 45 days in which Jane Doe 1 and Jane Doe 2 (and any other Epstein victim, including others victimized outside the Southern District of Florida as a result of the Epstein conspiracy within this District) at which time victims may address the Court regarding the Epstein investigation and its resolution – and R. Alexander Acosta and intervenor Jeffrey Epstein shall be required to attend this hearing;

<u>Informational Remedies</u>

8. The Government shall provide Jane Doe 1 and Jane Doe 2 (and any other Epstein victim who requests it) within 30 days all information in its possession, including documents and correspondence, about why it decided not to prosecute Epstein's crimes against them;

9. Pursuant to Fed. R. Crim. P. 6(e)(3)(E),  the Government shall within 30 days provide all grand jury material relating, directly or indirectly, to Epstein's sex

offenses (and his conspiracy to commit sex offenses) against Jane Doe 1 and Jane Doe 2 to Jane Doe 1 and Jane Doe 2 (and any other Epstein victim who requests it);

10. The Government shall within 30 days provide any information regarding FBI-Miami's investigation into Jane Doe 1 or 2's (or any other Epstein victim who requests it) victimization by Epstein, including unredacted copies of any FBI Reports of Interviews ("302's") regarding the interviews of any such victims;

11. The Government shall within 30 days provide to Jane Doe 1 and Jane Doe 2 (and any other Epstein victim who requests it) all sealed materials previously submitted for *in camera* review in this case;

12. The Government shall within 30 days provide to Jane Doe 1 and Jane Doe 2 (and any other Epstein victim who requests it) all materials covered by the motion they filed in DE 414;

13. The Government shall within 30 days provide to Jane Doe 1 and Jane Doe 2 (and any other Epstein victim who requests it) all materials covered by the motion filed in DE 348;

Educational Remedies

14. The Justice Department shall within 45 days require a course of training for employees in the U.S. Attorney's Office for the Southern District of Florida about the CVRA and steps that can be taken to improve the treatment of crime victims, pursuant to 18 U.S.C. § 3771(f)(2)(B) and implementing Justice Department regulations;

Miscellaneous Remedies

15. The U.S. Attorney's Office shall with 30 days pay a monetary sanction, in an amount to be determined following a hearing before the Court, to Jane Doe 1 and Jane Doe 2 directly or to any appropriate entity that they may direct;[2]

16. The U.S. Attorney's Office shall, at times as directed by the Court, pay to Jane Doe 1 and Jane Doe 2 (and any other Epstein victim who request it), all forms of restitution provided in 18 U.S.C. § 2259(b) (providing for counseling expenses, lost income, attorneys' fees, and other forms of restitution);

---

[2] Note: the victims are not seeking "damages" under the CVRA, but rather another appropriate sanction. *Cf.* 18 U.S.C. § 3771(d)(6) (providing that the CVRA does not "authorize" a cause of actions for "damages").

17. The U.S. Attorney's Office shall within 30 days pay attorney's fees and costs to the attorneys for Jane Doe 1 and Jane Doe 2, under the Court's inherent authority to enter such an award, in an amount to be determined following appropriate submissions from the parties;[3]

Sealed Remedies

18. The Government shall provide the remedies that Jane Doe 1 and Jane Doe 2 listed in their sealed supplemental pleading on remedies, filed on December 6, 2011; and

All Other Just and Proper Remedies

19. Any other remedy that the Court deems just and proper to remedy the past violations of the CVRA rights of Jane Doe 1 and 2 (and all other Epstein victims) and to prevent any future violation of their CVRA rights.

## DISCUSSION

The Court has statutory authority to award each and every one of these remedies to Jane Doe 1 and 2.  And for the reasons explained below, it should do so.  If for any reason the factual record existing in this case is insufficient to support a remedy for Jane Doe 1 or 2, they would request a trial during which they could provide the factual support for the remedy.

## I.   THE CVRA GIVES THE COURT BROAD POWER TO CRAFT APPROPRIATE REMEDIES FOR VIOLATIONS OF THE RIGHTS IT CONFERS.

Before turning to the specifics of the individual remedies that Jane Doe 1 and 2 are seeking, it is important to understand the broad remedial structure surrounding the CVRA.  Since the earliest days of our nation, it has been settled law that "where there is a legal right, there is also a legal remedy . . . .."  *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted).

---

[3]  The victims are, of course, aware that the CVRA provides that it does not authorize a crime victim's claim for "damages."  18 U.S.C. § 3771(d)(6).  As explained below, the Court possesses the power to award attorney's fees based on other sources outside the CVRA (including its inherent power) and therefore a fee award is appropriate in this case.

Moreover, "[i]f the right is created by a federal statute, the federal courts have the power to fashion an appropriate remedy." *Intracoastal Transp., Inc. v. Decatur County, Georgia* 482 F.2d 361, 371 (5th Cir. 1973). Beyond these general principles, the CVRA itself requires this Court to protect victims' rights, emphasizing that "[i]n any court proceeding involving an offense against a crime victim, the court *shall ensure* that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added).

When a violation of federal law is established, "federal courts generally have the power to grant any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 784 (6th Cir. 1996) (internal quotation omitted). Federal courts should "presume the availability of all appropriate remedies [for a federal right of action] unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66 (1992). Congress has "expressly indicated" a few, narrowly drawn limitations on remedies in the CVRA. These limitations, however, are inapplicable to this case.

Congress limited certain legal remedies under the CVRA, in particular providing that the CVRA did not create a new "cause of action for damages." 18 U.S.C. § 3771(d)(6). It also provided a specific provision regarding "limitation on relief":

> (5) Limitation on relief— In no case shall a failure to afford a right under this chapter provide grounds for a new trial. A victim may make a motion to re-open a plea or sentence only if—
> (A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied;
> (B) the victim petitions the court of appeals for a writ of mandamus within 14 days; and
> (C) in the case of a plea, the accused has not pled to the highest offense charged.
> This paragraph does not affect the victim's right to restitution as provided in title 18, United States Code.

18 U.S.C. § 3771(d)(5). As is readily apparent, these limitations only apply to crime victims' efforts to obtain a "new trial" or to "re-open a plea or sentence." Jane Doe 1 and 2's proposed remedies here do not include a "*new* trial" – no trial has ever been held. Likewise, they do not ask to "re-open" a plea, much less a sentence. Epstein never pled guilty to any crime in federal court (and his plea in state court was not to charges involving them, although this fact remains uncertain[4]). Instead, the victims seek (among other remedies) the invalidation of an illegal non-prosecution agreement so that they can confer with the Government about an appropriate prosecution of the crimes Epstein committed against them. Accordingly, none of the specifically provided "limitations on relief" apply to this case. Indeed, this Court has already specifically discussed this language, concluding that (if anything) this language supports the conclusion that the Epstein NPA can be reopened. *See* DE 189 at 8 ("the court concludes that the statute is properly interpreted impliedly to authorize a 're-opening' or setting aside of pre-charge prosecutorial agreements made in derogation of the government's CVRA conferral obligations . . . ."). And the Court has emphasized that keeping a non-prosecution agreement secret from victims is worse than keeping a plea agreement secret, because even if a plea is kept secret "the victims will at least have an opportunity to provide input to a judge at sentencing." 359 F.Supp.3d at 1220 n.6.

---

[4] A recent article from the *Washington Post* indicates that the state plea Epstein entered was to soliciting sex from a 16-year-old victim, rather than a 14-year-old victim, in order to ease his obligations to register as a sex offender. *See* Beth Reinhard et al., *Investigation: Age of Victim in Prosecution of Jeffrey Epstein, Long a Source of Confusions, Eased His Obligations to Register as a Sex Offender*, WASH. POST., Mar. 17, 2019, https://www.washingtonpost.com/investigations/age-of-victim-in-prosecution-of-jeffrey-epstein-long-a-source-of-confusion-eased-his-obligations-to-register-as-a-sex-offender/2019/03/17.

In light of the narrow reach of the CVRA's "limitation" language, the CVRA clearly leaves open all other remedies.  Of course, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely" in its exclusion.  *United States v. Vereen*, 920 F.3d 1300, 1307 (11th Cir. 2019) (*citing* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 107 (2012) ("The expression of one thing implies the exclusion of others (expression unius est exclusion alterius)"). And with regard to the remedial structure of statutes, the Eleventh Circuit has made clear that "the district court is presumed to have the authority to grant the requested relief, absent some indication in the underlying statute that such relief is not available."  *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1152 (11th Cir. 2018), *cert. denied*, 2019 WL 1116465 (U.S. Apr. 29, 2019).  Thus, "'[U]nless the underlying statute clearly and validly limits the equitable jurisdiction of the district court, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.'"  910 F.3d at 1152 (*quoting AT & T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1316 (11th Cir. 2004) (internal citation omitted).

More generally, the "federal courts have historically had broad authority to fashion equitable remedies . . . ."  *Hardison v. Cohen*, 375 F.3d 1262, 1266 (11th Cir. 2004).  Settled law holds that "the nature of the remedy is to be determined by the nature and scope of the . . . violation."  *Nichols v. Hopper*, 173 F.3d 820, 824 (11th Cir. 1999) (internal quotation omitted).  The Eleventh Circuit has expressly required district courts to fashion appropriate equitable remedies when plaintiffs have proven a violation of statutory provisions.  *See, e.g., Alabama*

*Hospital Ass'n v. Beasley,* 702 F.2d 955, 962 (11th Cir. 1983) (in light of statutory violation, we "accordingly remand to the district court so that it may devise an appropriate equitable remedy."). And the CVRA is obviously "remedial legislation" that should be broadly construed to achieve its remedial purposes. *Edwards v. Kia Motors of America, Inc.,* 554 F.3d 943, 948 (11th Cir 2008)**.** Indeed, as the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while *giving meaning* to the rights we establish." 150 CONG. REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphases added).

A good illustration of the broad power of district courts to remedy CVRA violations comes from the Fifth Circuit's decision in *In re Dean*, 527 F.3d 391 (5th Cir. 2008). There, the Fifth Circuit found a violation of crime victims' right to confer with prosecutors regarding a plea agreement. The Circuit, however, declined to grant its own remedy, instead remanding to the district court. "We are confident, however, that the conscientious district court will fully consider the victims' objections and concerns in deciding whether the plea agreement should be accepted." *Id.* at 396.

While this Court has broad powers to remedy a CVRA violation, it may prove entirely unnecessary for the Court to do so. The CVRA envisions that the Justice Department will be the first line of defense against a CVRA violation – and the first actor to respond to a violation that has occurred. Under the CVRA's plain language, the Government must remedy the violation of the CVRA. Under 18 U.S.C. § 3771(c)(1), the Government has a "best efforts" obligation to afford victims their rights, including doing so without "unreasonable delay," 18 U.S.C. § 3771(a)(7).

11

Accordingly, before the Court takes any action, the Government has a statutory obligation to undertake its own corrective efforts to protect the victims' rights to confer.

The Court has directed the Government to respond to the victims' proposed remedies within 30 days. In light of the Court's binding ruling that the Government has violated its CVRA obligations, the Government may decide to announce that it will voluntarily take all the steps listed above. If so, this litigation might be brought to a swift conclusion without the need for any further judicial rulings. Here the Government has it entirely within its power to provide all the various remedies being sought through the lawsuit – and then some. Hopefully the Government will simply agree to the remedies described above – thereby avoiding any need for the Court to make a determination as to how to proceed.

## II.   THE VICTIMS ARE ENTITLED TO MULTIPLE REMEDIES FOR THE GOVERNMENT'S DELIBERATE CVRA VIOLATIONS.

Jane Doe 1 and Jane Doe 2 are entitled to multiple remedies for the Government's deliberate violation of their CVRA rights, including the Government's actions in "misleading" them about the status of the case. First, Jane Doe 1 and 2 are entitled to have the Court invalidate the provisions in the non-prosecution agreement blocking prosecution of Epstein and his named and unnamed co-conspirators declared null and void. Second, entirely apart and in addition to voiding the immunity provisions in the agreement, Jane Doe 1 and 2 are entitled to seek a wide range of other remedies

### A.   To Protect Their CVRA Right to Meaningfully Confer, Jane Doe 1 and 2 Are Entitled to Have the Immunity Provisions in the Non-Prosecution Agreement Rescinded and Declared Null and Void.

This Court has already directly ruled on one of the most important remedy issues in this case, specifically holding that rescission of the NPA's provisions blocking Epstein's prosecution can be set aside.  This Court has already held that the victims' "rights under the CVRA attach before the Government brings formal charges against a defendant."  359 F.Supp.3d at 1218 (*citing Jane Doe 1 and 2 v. United States*, 817 F. Supp. 2d 1337, 1341 (S.D. Fla. 2011)).  This Court has also held that "the CVRA authorizes the *rescission or 'reopening' of a prosecutorial agreement,* including a non-prosecution agreement, reached in violation of a prosecutor's conferral obligations under the statute."  359 F.Supp.3d at 1218 (emphasis added) (*quoting Jane Does 1 and 2 v. United States*, 950 F. Supp. 1262, 1267 (S.D. Fla. 2013).  This Court has further held that "section 3771(d)(5) of the CVRA authorizes the setting aside of pre-charge prosecutorial agreements . . . ." *Id.* (*citing Jane Does 1 and 2 v. United States*, 950 F. Supp. 2d at 1267).  And, finally, this Court has held that "the 'reasonable right to confer . . . in the case' extends to the pre-charge state of criminal investigations and proceedings."  *Id.*  Of course, all of these previous holdings are now the law of the case and any discussion of remedies begins against that backdrop.

Given these previous holdings, Jane Doe 1 and 2 are clearly entitled to an order from the Court that provisions in the NPA entered into between the U.S. Attorney's Office for the Southern District of Florida and Jeffrey Epstein barring his prosecution and that of his named and unnamed conspirators were entered into illegally and are accordingly null and void to the extent that they prevent prosecution of federal crimes committed in the Southern District of Florida against Jane Doe 1and 2 and any Epstein victim. [5]

---

[5] It appears that only three sentences in the non-prosecution agreement are at issue, namely: 1. "THEREFORE, on the authority of R. Alexander Acosta, United States Attorney for the

Because this Court has already explicitly ruled on the availability of this remedy, the only question is whether the remedy is appropriate given this Court's factual findings surrounding the CVRA violations.  Not only is this remedy appropriate under the CVRA, if anything the CVRA *requires* it.  The Court has now found that Jane Doe 1 and 2's right to confer under the CVRA was violated, particularly because the two victims were not afforded an opportunity to shape the course of the agreement that the Government and Epstein reached.  For example, Epstein attempted to shape the agreement to his liking through pleas all the way up to the highest levels of the Justice Department.  359 F.Supp.3d at 1221.  This Court noted that "[w]hile Epstein was within his rights to attempt to persuade higher authorities with the Department of Justice to overrule the prosecutorial decisions of the U.S. Attorney's Office in the Southern District of Florida, the CVRA was designed *to give victims the same opportunity to attempt to affect prosecutorial decisions before they became final*."  *Id.* (emphasis added).  Rescinding the NPA's immunity provisions will give Jane Doe 1 and 2 an opportunity to "affect" the prosecutorial decision of whether to file federal charges for Epstein's sex crimes in Florida before that decision becomes "final."   It    is

---

Southern District of Florida, prosecution in this district for these offenses [i.e., federal sex crimes committed by Epstein and his co-conspirators] shall be deferred in favor of prosecution by the State of Florida ….";

2. "After timely fulfilling all the terms and conditions of the agreement, no prosecution for the offenses set out on pages 1 and 2 of this Agreement, nor any other offenses that have been the subject of the joint investigation by Federal Bureau of Investigation and the United States Attorney's Office, nor any offenses that arose from the Federal Grand Jury investigation will be instituted in this District . . . ."; and

3. "In consideration of Epstein's agreement to plead guilty and to provide compensation in the manner described above, if Epstein successfully fulfills all of the terms and conditions of this agreement, the United States also agrees that it will not institute any criminal charges against any potential co-conspirators of Epstein, including, but not limited to Sarah Kellen, Adriana Ross, Lesley Groff, or Nadia Marcinkova."

We will refer to these three provisions as the NPA's "immunity provisions."

14

only after rescission that Jane Doe 1 and 2 can enjoy "the full unfettered exercise of their conferral rights at a time that will enable the victims to exercise those rights meaningfully."  DE 189 at 9 (*citing U.S. v. BP Products North America, Inc.*, 2008 WL 501321 at *14 (S.D. Tex. 2008).  The CVRA requires this Court to "ensure that the crime victim is afforded the rights described [in the CVRA]."  18 U.S.C. § 3771(b)(1).  Accordingly, the Court is required to enter this remedy.  *See, e.g., Kenna v. United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (when trial court denied victim his right to give statement at defendant's sentencing hearing and victim filed writ of mandamus as authorized by federal law, the trial court "must avoid upsetting constitutionally protected rights, but it must also be cognizant that the only way to give effect to [the victim's] right to speak . . . is to vacate the sentence and hold a new sentencing hearing").

While this Court's previous rulings make clear that this remedy is appropriate, ample precedent supports the power of this Court to set aside the agreement if it was arrived at illegally. When other plea arrangements have been negotiated in violation of law, they have been stricken by the courts.  For example, *United States v. Walker*, 98 F.3d 944 (7th Cir. 1996), held that where a sentence on a new crime could not run concurrently with a probation revocation the defendant was then serving – contrary to the assumption of the parties to the plea agreement – the defendant was not entitled to specific performance of the plea agreement.  The Court explained that the case was one "in which the bargain is vitiated by illegality . . . ."  *Id.* at 947.  Moreover, even though the defendant had served some prison time under the agreement, that did not mean he was entitled to specific performance of the agreement. *Id.* at 947.  The defendant had "forfeited" the right to seek specific performance of the agreement.

Here, of course, exactly the same is true: the NPA is "vitiated" by illegality – namely, the fact that (as this Court has previously held) the parties negotiated it in deliberate violation of the victims' rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771.  Moreover, Epstein has "forfeited" any right to seek specific performance of the NPA.  As this Court has previously found, Epstein was a party to – and, indeed, the instigator of – the Government's CVRA violations.  As this Court explained, "Epstein's counsel was aware that the Office was *deliberately* keeping the NPA secret from the victims and, indeed, had sought assurances *to that effect*."  359 F.Supp.3d 1201 at 1208 (*citing* DE 407 at ¶ 48 (emphasis added)).  Thus, unlike the *Walker* case where the agreement was accidently crafted in violation of law, here the illegal agreement was a deliberate plan to violate the law.  In such circumstances, any equitable or other claim Epstein has for specific performance of the non-prosecution agreement disappears.

Other cases reach similar conclusions.  *See, e.g., Craig v. People*, 986 P.2d 951, 959-60 (Colo. 1999) (because "neither the prosecutor nor the trial court have authority to modify or waive the mandatory parole period," such "is not a permissible subject of plea negotiations," and thus, even if "the trial court erroneously approves of such an illegal bargain" such plea is "invalid" and thus will not be specifically enforced).  Nor can a defendant claim some right to specific performance of an illegal non-prosecution agreement.  *See State v. Garcia*, 582 N.W.2d 879, 881-82 (Minn. 1998) (plea agreement for 81-month sentence, but court added 10-year conditional release term because, under facts of case, sentence without such release term is "plainly illegal," and thus remedy of specific performance not available); *State v. Wall*, 348 N.C. 671, 502 S.E.2d 585, 588 (1998) (plea agreement was for sentence to be concurrent with one not yet completed, but state statute mandates consecutive sentence on facts of this case; "defendant is not entitled to

16

specific performance in this case because such action would violate the laws of this state"); *Ex parte Rich*, 194 S.W.3d 508, 515 (Tex. Crim. App. 2006); (where "the plea bargain seemed fair on its face when executed, it has become unenforceable due to circumstances beyond the control of [the parties], namely the fact that one of the enhancement paragraphs was mischaracterized in the indictment, resulting in an illegal sentence far outside the statutory range," proper remedy is plea withdrawal, as "there is no way of knowing whether the State would have offered a plea bargain within the proper range of punishment that he deemed acceptable"); *State v. Mazzone*, 212 W.Va. 368, 572 S.E.2d 891, 897 (2002) (where plea agreement was that defendant would plead guilty to two felony counts of felon in possession of firearm and prosecutor would dismiss remaining six counts re other offenses with prejudice, and all parties erroneously believed these two crimes were felonies, lower court "correctly resolved this unfortunate predicament by holding that a plea agreement which cannot be fulfilled based upon legal impossibility must be vacated in its entirety, and the parties must be placed, as nearly as possible, in the positions they occupied prior to the entry of the plea agreement").

To be clear, nothing in our arguments here is intended to undercut the general proposition that the Government must generally abide by its promises in plea agreements.  *See, e.g., Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Harvey*, 869 F.2d 1439, 1443 (11th Cir. 1989)).  But the very point of all the cases cited by the victims in the previous paragraph is that the Government *cannot* abide by illegal promises, even where it has accidentally entered into some kind of an agreement with a defendant to that effect.  Here the Government made promises – immunity from prosecution – that it extended in violation of the CVRA.  And in any event, this case is truly unique because rather than involving an accidental illegal agreement, it involves (as

17

this Court has held) a "deliberate" agreement between the Government and Epstein to keep the NPA secret from Jane Doe 1 and 2.  *See* 359 F.Supp.3d at 1208.

Accepting any contrary argument would allow the Government by private arrangement with a criminal to supersede congressional mandates for keeping crime victims informed.  Just as the Government cannot illegally agree to run a sentence on a new crime concurrently with a probation revocation, *United States v. Walker*, 98 F.3d 944 (7th Cir. 1996), so too here it cannot illegally agree not to prosecute a sex offender without first conferring with his victims, treating them fairly, and giving them timely and accurate notice of court hearings.

Finally, a plea agreement is, in essence, a contract between a criminal defendant and the Government.  *See United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).  Accordingly, plea agreements are governed by applicable principles of contract law.  *Allen v. Thompson*, 161 F.3d 667, 671 (11th Cir. 1998); *United States v. Meyers*, 32 F.3d 411, 413 (9th Cir. 1994).  One such fundamental principle of contract law is that a contracts entered into in violation of law does not create enforceable legal rights.  *See, e.g., Power Fin. Credit Union v. Nat'l Credit Union Admin. Bd.*, 494 F. App'x 982, 986 (11th Cir. 2012) ("[A] contract which violates a provision of ... a statute is void and illegal and, will not be enforced in [Florida] courts") (*citing De Lage Landen Fin. Servs., Inc. v. Cricket's Termite Control Inc.,* 942 So.2d 1001, 1003 (Fla.Dist.Ct.App. 5th Dist.2006)); *see also Shaughnessy v. D'Antoni*, 100 F.2d 422, 424 (5th Cir. 1938); *accord McMullen v. Hoffman*, 174 U.S. 639, 654 (1899) ("[N]o court will lend its assistance in any way to carrying out the terms of an illegal contract. . . . nor will they enforce any alleged rights directly springing from such contract").  And a court cannot enforce such an illegal agreement to the

18

detriment of an innocent third party.  *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 182 (5th Cir. Unit A Sept. 1981).[6]

For all these reasons, the Court should set aside the NPA's immunity provisions as one of the appropriate remedies in this case.  Jane Doe 1 and 2 are only seeking that these particular provisions be set aside.  For the sake of completeness, the two victims note that Epstein cannot somehow seek to invalidate other provisions in the NPA.  Epstein cannot ask for rescission or invalidation of any provision in the NPA, because he has "unclean hands," that is, he is "one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness" and thus will appeal in vain to a court of conscience."  *In re Kingsley*, 518 F.3d 874, 878 (11th Cir. 2008).   Whatever else might be said about this case, it certainly proves "unclean hands" by the Epstein and the Government.  Epstein joined with the Government to "deliberately" (359 F.Supp.3d at 1208) keep his agreement with the Government secret from Jane Doe 1 and 2 (and other victims) – including sending "misleading" noticesabout what was happening (*id.* at 1219).  A defendant who acts in bad faith "is in no position to claim that good faith reliance upon the sentencing stipulations in the plea agreement wrongly induced his guilty plea."  *United States v. Gomez*, 326 F.3d 971 (8th Cir.2003).

Setting aside the immunity provisions in the agreement does not raise any federal double jeopardy concerns, even though Epstein spent some time in state custody following his entry of a plea to state charges.  For starters, any double jeopardy issue could not be raised by the

---

[6] "Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit."  *United States v. Brown*, 342 F.3d 1245, 1246 n.1 (11th Cir. 2003).

Government.   The Government will obviously suffer no harm if this Court invalidates the immunity provisions in the non-prosecution agreement barring certain federal prosecution.   To possess standing to raise a claim, a litigant "must show . . . it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 180 (2000).   And so this issue belongs only to Epstein – and to Epstein alone[7]– and until he raises the issue, it is not before the Court.

In any event, enforcement of victims' rights as we propose here does not implicate double jeopardy concerns.   A good analysis of this point comes from the Oregon Supreme Court in *State v. Barrett*, 255 P.3d 472 (Or. 2011), which allowed a resentencing (and possible sentencing enhancement) to protect a victim's right to be heard.   Citing relevant U.S. Supreme Court cases, *Barrett* explained the "'guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'"   *Id.* at 481 (*quoting U.S. v. DiFrancesco*, 449 U.S. 117, 129 (1980)).   *Barrett* concluded that none of these three guarantees was implicated in the resentencing to protect victims' rights: "The defendant 'is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired.'   A defendant has no more right to expect that his sentence will remain unchanged on appeal than he does to expect that his parole or

---

[7] Similarly, none of Epstein's named or unnamed coconspirators would have standing to raise some concern about an agreement that *he* alone entered.

probation will never be revoked." *Id.* at 481 (*quoting DiFrancesco*, 449 U.S. at 137). *Barrett* held that the victim's "proposed remedy—vacating defendant's sentence and conducting a resentencing hearing—was permissible, in that it was not barred by the Double Jeopardy Clause." *Id.*

So too here. Epstein is charged with knowledge of the CVRA – including its right to confer and the enforcement provisions in the statute. He has no constitutional right to demand that Jane Doe 1 and 2 forfeit their right to seek enforcement of the Crime Victims' Rights Act. Because his scheme to conceal how he was resolving the case failed, it is now proper that he suffer the consequences. The NPA's immunity provisions are void and unenforceable, certainly as to Jane Doe 1 and 2 – and likewise to any other victim who would like to see Epstein prosecuted.

For all these reasons, the Court should enter the "rescission" remedies listed above – specifically remedies 1, 2, 3, and 4. These remedies also include a prospective injunction, requiring the Government to protect the CVRA rights of Jane Doe 1 and 2 (and other victims). Nothing in the CVRA precludes injunctive relief. Moreover, the facts previously determined by the Court show a long running conspiracy between the Government and Epstein. As of yet, the Government has yet to apologize for its past violation of the victims' CVRA rights, let alone agree not to violate their rights in the future. Indeed, despite the passage of nearly three months since the Court's ruling in this case, the Government has yet to offer a single commitment to Jane Doe 1 and 2 to protect their rights. Injunctive relief is appropriate if "the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *SEC v. Caterinicchia,* 613 F.2d 102, 105 (5th Cir.1980) (*quoting SEC v. Blatt,* 583 F.2d 1325, 1334 (5th Cir.1978)). Nothing in the Government's conduct thus far provides any guarantee to Jane Doe 1 and 2 that their rights will be protected in future. Injunctive relief is accordingly appropriate.

**B.      The Victims Are Entitled to a Range of Other Remedies for Deliberate Violation of Their Rights.**

For all the reasons just explained, Jane Doe 1 and 2 are entitled to rescission of the NPA's immunity provisions.  But that remedy alone is insufficient to provide full justice in this case. Doing so only allows them to seek prosecution of Epstein and his coconspirators some eleven years after the prosecutors' decision was made.  Given the passage of time, it will no doubt be more difficult to persuade prosecutors to move forward with a prosecution.  Of course, even where "a court may not be able to return the parties to the *status quo* ante," so long as "a court can fashion *some* form of meaningful relief" it should do so.  *See Church of Scientology of California v. U.S.*, 506 U.S. 9, 12 (1992).   Accordingly, Jane Doe 1 and 2 are entitled to additional remedies.[8] Additional remedies are appropriate in five separate areas: an apology from the U.S. Attorney's Office; information about the case from the U.S. Attorney's Office; educational remedies; other miscellaneous remedies; sealed remedies; and all other just and proper remedies.  Each of these areas is discussed below.

**1.      An Apology, Meeting with the Former U.S. Attorney, and Court Hearing.**

Jane Doe 1 and 2 seek three additional remedies (numbers 5, 6, and 7 above) – i.e., a letter of apology, a meeting with the former U.S. Attorney, and a court hearing to address the Court regarding the case.  All of these remedies are also appropriate, and the Court should enter an order awarding them to the two Jane Does.

---

[8]   Of course, if for any reason, the Court were to determine that rescission is not a permissible remedy in this case, then Jane Doe 1 and 2 would be entitled to the additional remedies for that reason as well.

A letter of apology seems like the least that the Government could do under the circumstances.  As the Court is aware, the Government has claimed benign motives for concealing the NPA – all the while asserting work product and similar protections over the evidence that would support or contradict its claims.  *See* 359 F.Supp.3d at 1213 n.3.  If the Government truly acted from benign motives, then this request for an apology should be uncontested.

In addition, Jane Doe 1 and 2 seek an opportunity to personally meet with the current U.S. Attorney for the Southern District of Florida and R. Alexander Acosta, who was the U.S. Attorney who approved the NPA with Epstein and was deeply involved in the decisions involving the victims.  *See* 359 F.Supp.3d at 1207-10.   Jane Doe 1 and 2 have previously requested an opportunity to depose Acosta about some of the important subjects related to this case.   One example of a subject for discussion is a "breakfast meeting" that appears to have taken place on around October 12, 2007, between U.S. Attorney Acosta and Epstein attorney Jay Lefkowitz.  This Court has previously noted that this meeting occurred.  *See Jane Does 1 and 2 v. U.S.*, 359 F.Supp.3d 1201, 1210 (S.D. Fla. 2019).  And a subsequent letter from Lefkowitz to Acosta briefly refers to "a commitment" by the U.S. Attorney at that meeting that his Office "would not . . . contact any of the identified [victims] . . . in this matter." *Id*.  But what was discussed specifically does not appear to have been memorialized.  A chance to discuss this matter with Mr. Acosta to get answers about that and other related questions will, Jane Doe 1 and 2 believe, provide the kind of information that they would have received had the U.S. Attorney's Office properly conferred in a timely fashion back in 2007.

Finally, Jane Doe 1 and 2 also seek a hearing before the Court in which they and any other Epstein victim may address the Court regarding the Epstein investigation and its resolution – and

that R. Alexander Acosta and intervenor Jeffrey Epstein be required to attend this hearing.  The Court, of course, always possesses authority to order a hearing on a case before it.  And as described above, the Court possesses broad remedial powers, both as conferred specifically by its CVRA enforcement power (18 U.S.C. § 3771(b)(1)) and generally by its remedial powers to ensure federal statutes are enforced.  Given potential difficulties with placing Jane Doe 1 and 2 back into the position that they would have been if the U.S. Attorney had conferred with them in 2007, the Court should give them a public hearing to present issues related to their treatment.  Such a hearing would ensure that all issues related to this case were publicly aired and that the victims had an opportunity to be heard about what has transpired.

The Court has jurisdiction to order Mr. Acosta and Mr. Epstein to appear at the hearing.  Mr. Acosta's name appears on pleadings filed in this case as early as July 2008 and he remains a government employee today.  In addition, Mr. Epstein affirmatively moved to intervene in this case – and was granted intervention – subjecting him to the jurisdiction of the Court.

## 2.  Disclosing Information to the Victims.

Jane Doe 1 and 2 also seek three additional sets of remedies (numbers 8, 9, 10, 11, 12, and 13 above) related to information regarding this case – i.e., information about the non-prosecution decision, grand jury material, FBI information, materials submitted for *in camera* review, and other materials.  All of these remedies are also appropriate, and the Court should enter an order awarding them to the two Jane Does.

If the Government had properly conferred with the two Jane Does and other victims, it seems likely that the result would have been a federal prosecution – with a resulting federal trial or plea deal and following federal sentencing hearing.  These events would have provided Jane

24

Doe 1 and 2 with much more information about Epstein's criminal conspiracy and its scope and operation.  But the Court need not make any specific findings about the likelihood of a federal prosecution to conclude that the Government (joined by Epstein) illegally blocked any opportunity for the victims to obtain such a federal prosecution in Florida through the NPA.  Since one of the harms that flows from that illegality is the loss of any chance to obtain information, the obvious remedy is to disclose that information.

The Court should direct the Government to disclose all information is posses about why it decided not to prosecute Epstein. If the Government had properly conferred with the victims back in 2007 when it was first making that decision, then the victims would have immediately had an understanding of what the Government is doing.  Indeed, the Government persisted in refusing to explain to the victims what it was doing over the ensuing years.  *See, e.g.,* DE 127 at 16 (noting that the Government has refused to give the victims any specifics about its handling of the case).  Given the 12 years of uncertainty and questions that the Government's illegal concealment has caused, the remedy is release of this information.

It also appears that grand jury information exists in connection with this case.  And this Court clearly has authority to order release of this information, under both Rule 6(e) of the Federal Rules of Criminal Procedure and the Eleventh Circuit "special circumstances" doctrine.

To be sure, grand jury proceedings are always secret in the first instance under Rule 6(e).  But this is not to say that Rule 6(e) draws "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury. On the contrary, there is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." *Judicial Watch, Inc. v. Tillerson*, 270 F. Supp. 3d 1, 4 (D.D.C. 2017) (cleaned up) (*quoting SEC v. Dresser Indus.,*

*Inc.,* 628 F.2d 1368, 1382 (D.C. Cir. 1980) (*en banc*); *Senate of Puerto Rico v. DOJ*, 823 F.2d 574,

582 (D.C. Cir. 1987)). It is for this very reason that Rule 6(e)(3)(E) specifically provides that the

Court "may authorize disclosure – at a time, in a manner, and subject to any other conditions that

it directs – of a grand jury matter . . . preliminarily to or in connection with a judicial proceeding."

      To obtain release of information on this provision, a parties must show  "the material they

seek is needed to avoid a possible injustice in another court proceeding, that the need for disclosure

is greater than the need for continued secrecy, and that their request is structured to cover only

material so needed." *Pitch v. United States*, 915 F.3d 704, 708 (11th Cir. 2019) (*quoting Douglas

Oil Co. of Ca. v. Petrol Stops NW*, 441 U.S. 211, 222 (1979); *see also Judicial Watch, Inc. v.

Tillerson*, 270 F. Supp. 3d 1, 5 (D.D.C. 2017) (granting release of grand jury materials under this

three-part test).

      All three conditions are satisfied here.  Given the uncertainties that the Government has

created about what would have happened if it had properly consulted with the victims, the victims

will suffer an injustice if they are not given all possible information related to the Epstein

(non)prosecution decision.  Moreover, whatever need for secrecy may have existed back in around

2007, it seems unlikely that the need continues today.  On the other hand, the need for releasing

the information has only grown over the years, as victims have been left to wonder why the case

was handled the way it was.  Indeed, public scrutiny of the case has substantially increased in

recent months.  Major media sources speculating that the Epstein plea deal was cut for improper

reasons.  *See* Julie Brown, *Timeline of the Jeffrey Epstein Sex Abuse Case*, MIAMI HERALD, Nov.

28, 2018.  A congressional hearing has raised many questions about the handling of the case.  *See*

Hearing Before the House Subcommittee on Labor, Health and Human Services, Education, and

Related Agencies of the House Appropriation Committee, Apr. 3, 2019.  The victims deserve answers to the questions that have been raised.  And the only way to begin to answer those questions is to release all of the grand jury materials that bear substantively on the non-prosecution decision.

In addition to the specific provisions of Rule 6(e), the Eleventh Circuit has repeatedly recognized that district courts retain "inherent power beyond the literal wording of Rule 6(e)" to disclose grand jury material not otherwise covered by the exceptions."  *Pitch v. United States*, 915 F.3d 704, 708 (11th Cir. 2019) (*citing In re Petition to Inspect and Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261, 1268 (11ᵗʰ Cir. 1984)).  While secrecy remains the normal approach, the need for disclosure under this authority "requires a fact intensive analysis that depends on the competing interests in a particular case."  915 F.3d at 710.   Here, "exceptional circumstances" exist requiring release of appropriate grand jury materials to protect the victims' right to confer – as well as other rights that remain in play.[9]  It is extraordinary circumstance that the Government to negotiate with a sex abuser about the extent to which his victims would be told about the disposition of criminal charges involving them.  *See* 359 F.Supp.3d at 1208.  And the fact that the Government and a defendant agreed to "conceal the existence of the NPA and mislead the victims to believe the federal prosecution was still a possibility" (*id.* at 1219) is truly extraordinary. Against that backdrop release of grand jury materials is appropriate.

---

[9] The Court has previously ruled that Jane Doe 1 and 2's CVRA right to confer was violated.  It has not yet ruled on whether the their CVRA rights to be treated with "fairness" and to notice have been violated.

Other materials should also be released. As the Court is well aware, the Government has submitted voluminous materials concerning its internal deliberations in this case for in camera review. The Government argued that these materials were protected through work product and other privileges. And yet in response to Jane Doe 1 and 2's summary judgment motion, the Government made many representations about its internal deliberations, claiming that these deliberations involved nothing but benign intentions. Whatever else may be said about these claims, they surely waived work product and other protections. *See generally* Jane Doe 1 and 2's Motion for Finding of Waiver of Work Product and Similar Protections and for Production of Documents, DE 414. This Court previously concluded that it did not need to reach the issue of waiver of privilege "[g]iven . . . the Court's . . . ruling in favor of [Jane Doe 1 and 2] on [the summary judgment motions]." 359 F.Supp.2d at 1213 n.3. But the Court specifically stated that Jane Doe 1 and 2 "may reassert this argument if and when appropriate." *Id.*

The time for reasserting this argument has arrived. One clear remedy for the Government's refusal to properly confer with Jane Doe 1 and 2 is to provide to these victims information about what was going on during deliberations. Indeed, given the Government's waiver of privilege, no good reason exists for keeping the information secret any longer.

The victims deserve to know what the Government was doing back in 2007 and 2008 and why it was doing it. In 2004, Congress enacted the CVRA because it found that in case after case "victims, and their families, were ignored, cast aside, and treated as non-participants in a critical event in their lives. They were kept in the dark by prosecutors too busy to care enough . . . and by a court system that simply did not have place for them." 150 CONG. REC. 7296 (2004) (statement

of Sen. Feinstein).  To avoid keeping the victims in the dark any longer, the Court should release all of the sealed information submitted to it *in camera*.

The Court should also release the information previously requested by Jane Doe 1 and 2 in 2016 in DE 348.  Jane Doe 1 and 2 have explained in their motion why that information would be useful to them (and other victims) in understanding what happened.  The Court previously found it was unnecessary to reach that motion to grant summary judgment in favor of the Jane Does, denying the motion "without prejudice."  359 F.Supp.2d at 1222.  Accordingly, Jane Doe 1 and 2 simply reassert that motion at this time, because granting the motion would help to remedy the fact that they lack all the information about why the Government was reaching certain decisions.  The Court should accordingly grant this previously filed motion.

**3. Educational Remedies**.

Jane Doe 1 and 2 also seek an additional remedy (number 14 above) related to educating prosecutors about protecting victims' rights.  One of the great hopes of Jane Doe 1 and 2 is that the mistreatment they suffered will never again be experienced by crime victims, in the Southern District of Florida or elsewhere.  Accordingly, they seek this prospective remedy designed to train federal prosecutors and investigators.

Jane Doe 1 and 2 ask the Court to order that the employees in the U.S. Attorney's Office for the Southern District of Florida receive training to improve their handling of similar matters in the future.  The CVRA itself provides that regulations concerning such remedial training is part of the enforcement apparatus for the Act.  *See* 18 U.S.C. § 3771(f)(2)(B).  Perhaps in the several months since the Court's ruling the Justice Department has already undertaken this remedial training on its own accord, but, if not, the Court should order it directly.

### 4. Miscellaneous Remedies

Jane Doe 1 and 2 also seek three additional categories of remedies (numbers 15, 16, and 17 above) of a miscellaneous nature. The first of these is a direction that the U.S. Attorney's Office should be directed to pay a monetary sanction, in an amount to be determined following a hearing before the Court, to Jane Doe 1 and Jane Doe 2 directly or to any appropriate entity that they may direct. Jane Doe 1 and 2 are aware, of course, that the CVRA provides that it does not "authorize a cause of action for damages." 8 U.S.C. § 3771(d)(6). Accordingly, Jane Doe 1 and 2 are not seeking "damages" under the CVRA and thus have no need to adduce any evidence about the degree to which they have suffered harm from the U.S. Attorney's Office's violation. But that a traditional means for enforcing rights through the imposition of sanctions for failure to comply with a law. As the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while giving meaning to the rights we establish." 150 CONG. REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added). To give meaning to the rights at issue here, the court should impose sanctions on the Government.

Jane Doe 1 and 2 also ask the Court to award to them (and all other Epstein victims who so request) restitution, payable by the Government. One of the opportunities that the victims have lost as the result of denial of the right to confer is the opportunity to confer and convince the U.S. Attorney's Office to prosecute Epstein. Had the Office done so and obtained a conviction, then they would have been entitled to restitution, under 18 U.S.C. § 3663A. As a proper remedy for this lost opportunity, the Court should order the Government to pay restitution under the statute to

each of Epstein's victims. The available restitution under the statute is for the cost of medical, physical, psychiatric, and psychological care; physical and occupational therapy; lost income; and expenses incurred during the investigation of the crime and attendance at proceedings related to Epstein's crime.

Jane Doe 1 and 2 also ask for an award of attorneys' fees to their attorneys who have handled this case. The attorneys' have handled this case on a pro bono basis for Jane Doe 1 and 2 for more than a decade, devoting several thousand hours to vindicating their right (and the rights of other Epstein victims). The amount of fees to be awarded should be determined following appropriate submissions from the parties.

An award of attorneys' fees against the Government and in favor of the Jane Doe attorneys is just and proper, both under the enforcement provisions of the CVRA and under the inherent power of the Court. The Supreme Court has made clear that "[t]here are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991) (internal quotation omitted). For example, a federal court has authority, stemming from its historic equity jurisdiction, to "award attorney's fees to a party whose litigation efforts directly benefit others." *Id.* at 45. Here, of course, Jane Doe 1 and 2's efforts directly benefits other victims, not to mention the general public. In addition, a federal court has authority to awared fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46. As noted above and as the Court is award, the U.S. Attorney's Office has previously made claims about its internal deliberations, claiming that these deliberations involved nothing but benign intentions. Whatever else may be said about these claims, they surely waived work product and other protections about

what happened during the internal deliberations.  *See generally* Jane Doe 1 and 2's Motion for

Finding of Waiver of Work Product and Similar Protections and for Production of Documents, DE

414.  This Court previously concluded that it did not need to reach the issue of waiver of privilege

"[g]iven . . . the Court's . . . ruling in favor of [Jane Doe 1 and 2] on [the summary judgment

motions]."  359 F.Supp.2d at 1213 n.3.  But the Court specifically stated that Jane Doe 1 and 2

"may reassert this argument if and when appropriate."  *Id.*  Because the attorneys' fees

determination requires an assessment of the reasons for the Government's decade-long crusade to

block enforcement of the Crime Victims' Rights Act, it is now appropriate for the Court to either

provide all materials about the Government's internal deliberations to Jane Doe 1 and 2 because

of the Government's waiver.  Alternatively, the Court should conclude, on the facts of this

particular case, either that vexatious or oppressive litigation has occurred or that the Government

is estopped from denying that such occurred.

Related to this point is the fact that Jane Doe 1 and 2 still have pending an allegation that

the Government has violated their right to be treated "with fairness."  When the Court reaches that

allegation, a component of fairness will be the issue of whether attorneys' fees are available for

victims' rights attorneys, at least in the unique circumstances of this case, under the CVRA and its

enforcement provisions.  Indeed, the Court should simply construe the enforcement provisions for

the violation of the right to confer as encompassing the power to award attorneys' fees and grant

those fees to Jane Doe 1 and 2's counsel.

### 5.  Sealed Remedies.

Jane Doe 1 and 2 also previously sought remedies the nature of which is under seal

(hereinafter "sealed remedies"), as explained in their sealed supplemental pleading on remedies,

filed on December 6, 2011. Jane Doe 1 and 2 now reassert their request for all of those remedies, for the reasons listed there.

**6. All Other Just and Proper Remedies.**

Jane Doe 1 and 2 also request any other remedy that the Court deems just and proper to remedy the past violations of the CVRA rights of Jane Doe 1 and 2 (and all other Epstein victims) and to prevent any future violation of their CVRA rights.

**IV. JANE DOE 1 AND 2 PRESERVE THEIR RIGHT TO A TRIAL TO ESTABLISH VIOLATIONS OF THEIR RIGHT TO BE TREATED WITH FAIRNESS AND RIGHT TO BE NOTIFIED OF COURT HEARINGS.**

In granting summary judgment in favor of Jane Doe 1 and 2, the Court did so based solely on the Government's violation of their right to confer. Accordingly, Jane Doe 1 and 2 continue to have pending before the court two other allegations of the CVRA violations: a violation of their right to be treated with fairness and a violation of their right to notice. So that the record is clear, the Jane Does continue to assert those violations. They request a trial (or court hearing) to prove those violations and also all remedies that would be associated with proving those violations.

## CONCLUSION

The Court should grant Jane Doe 1 and Jane Doe 2 all the remedies identified above. If the Court believes that additional evidence is required to award any of the remedies, it should hold a trial or hearing as appropriate.

DATED: May 23, 2019

Respectfully Submitted,

/s/ *Bradley J. Edwards*
Bradley J. Edwards

Edwards Pottinger LP
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (800) 400-1098
E-Mail: brad@epllc.com


Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah[*]
383 S. University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
E-Mail: cassellp@law.utah.edu

John Scarola
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Telephone: (561) 686-6300
E-Mail:  jsx@searcylaw.com


*Attorneys for Jane Does 1 and 2*

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing document was served on May 23, 2019, on counsel of record using

the Court's CM/ECF system:

Jill E. Steinberg
Nathan P. Kitchens
U.S. Attorneys' Office for the Northern District of Georgia
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000
Jill.Steinberg@uisdoj.gov
Nathan.Kitchens@usdoj.gov

*Attorneys for the Government*


Roy Eric Black
Jacqueline Perczek
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard
Suite 1300
Miami, FL 33131
305-371-6421
Fax: 358-2006
Email: pleading@royblack.com

*Attorneys for Jeffrey Epstein*


/s/ *Bradley J. Edwards*