```
1              IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
2
                   WEST PALM BEACH DIVISION
3
                 CASE NO.:  08-cv-80736-KAM
4

5

6

7
     JANE DOE I and JANE DOE II,    )
8                                   )
                    Petitioners,    )
9    v.                             )
                                    )          March 28, 2016
10   UNITED STATES OF AMERICA,      )
                                    )
11                  Respondent.     )          Pages 1 - 21
     _____/
12

13

14

15                 TELEPHONIC STATUS HEARING

16       BEFORE THE HONORABLE DAVE LEE BRANNON
                UNITED STATES MAGISTRATE JUDGE
17

18

19

20   APPEARANCES:

21
     On behalf of the Petitioners:
22
                         THE UNIVERSITY OF UTAH
23                       S.J. QUINNEY COLLEGE OF LAW
                         383 S. University Street,
24                       Salt Lake City, Utah 84112
                         BY:  PAUL G. CASSELL, ESQ.
25
```

2

```
1
   APPEARANCES CONTINUED:
2
   On behalf of the Respondent:
3
                           UNITED STATES ATTORNEY'S OFFICE
4                          500 South Australian Avenue
                           Suite 400,
5                          West Palm Beach, FL 33401
                           BY:  MARIE C. VILLAFANA, AUSA
6

7

8                          UNITED STATES ATTORNEY'S OFFICE
                           99 NE 4th Street,
9                          Miami, FL 33132
                           BY:  DEXTER LEE, AUSA
10

11

12 On behalf of Intervenor Jeffrey Epstein:

13                         MARTIN G. WEINBERG, P.C.
                           20 Park Plaza
14                         Suite 1000,
                           Boston, MA 02116
15                         BY:  MARTIN G. WEINBERG, ESQ.

16

17 ALSO PRESENT:

18 Sun Sentinel media

19

20

21 Transcribed By:

22                         BONNIE JOY LEWIS, R.P.R.
                           7001 SW 13 Street
23                         Pembroke Pines, FL  33023
                           954-985-8875
24                         caselawrptg@gmail.com

25
```

1          (Thereupon, the following proceeding was held:)

2          THE COURT:  Good afternoon.

3          This is telephonic status conference in Case Number

4  08-cv-80736; Jane Doe I and II versus The United States of

5  America.

6          Would the parties state their appearances, please, for

7  the record.

8          MR. CASSELL:  This is Paul Cassell representing Jane

9  Doe I and Jane Doe II.

10          THE COURT:  Thank you, sir.

11          MS. VILLAFANA:  Good afternoon.  This is Marie

12  Villafana for the United States.

13          THE COURT:  Thank you, ma'am.

14          MR. LEE:  Good afternoon.  Dexter Lee, assistant U.S.

15  attorney for the United States also.

16          THE COURT:  Thank you, sir.

17          MR. WEINBERG:  Your Honor, this is Martin Weinberg

18  appearing for intervenor Jeffery Epstein.

19          THE COURT:  Thank you, sir.

20          And I think that is everybody.  I will tell the

21  parties that we have present in the courtroom a representative

22  from the media from the Sun Sentinel.

23          Okay.  There are a couple of things I want to talk

24  about today.  One of which is scheduling, but I think it is

25  fair that I go over or couple of things first.

1       Many of you already know, but in case some of the

2   people don't, I previously represented, when I was a federal

3   public defender, Alfredo Rodriguez, and he had been an employee

4   of Mr. Epstein.  He was prosecuted on a charge about selling

5   the address book that existed there and I represented him in

6   that matter.

7       I know I spoke with Judge Cassell several times in the

8   course of that representation and I will tell you that Mr.

9   Rodriguez has since passed away.  I wanted to let you know that

10  so you could consider whether that impacts your decision in

11  this matter at all.

12      I also represented a man whose initials are DG in a

13  totally unrelated matter in this case, who I now believe is a

14  stepfather of a victim.  He was not the stepfather when I

15  represented him.  And as I said, the charge was totally

16  unrelated.

17      So I don't know if he is the stepfather of either

18  victim one or victim two.  I have discussed this with Judge

19  Marra and, of course, he well knows about Alfredo Rodriguez

20  because he was the Judge in that case.

21      And I have also mentioned the DG matter to him as

22  well.  And neither he, nor I, believe that that is any kind of

23  a bar to my participating in the settlement conference, but I

24  think in the interest of disclosing everything that you all

25  should know that.

1          Also, I should tell you that I know Miss Villafana

2   given the size of our legal community here in West Palm Beach.

3   And of course, she was a prosecutor on Mr. Rodriguez.  So that

4   being said, does that give anybody any problems?

5          MS. VILLAFANA:  (Inaudible) represents Jane Doe I and

6   Jane Doe II and I have discussed both the GD situation that

7   (inaudible) Rodriguez --

8          THE COURT:  I'm sorry, Miss Villafana.  You are

9   breaking up.

10          MS. VILLAFANA:  I'm sorry.

11          THE COURT:  I am only getting a few words that you are

12   saying.

13          MS. VILLAFANA:  Let me maybe speak a little bit more

14   slowly and more loudly.  Does that help?

15          THE COURT:  That does help.

16          MS. VILLAFANA:  Oh, good.

17          All right.  As I was saying, I have spoken with Bret

18   Edwards, that representative of Jane Doe I and Jane Doe II in

19   this matter and I have discussed DG.  He was not (inaudible) or

20   Jane Doe II in the case.  We do not believe there is any

21   conflict.  If you do think there is (inaudible) presentation of

22   Alfredo Rodriguez.

23          THE COURT:  Okay.  I am getting most of what you are

24   saying.  Are you on a speaker phone?

25          MS. VILLAFANA:  I am actually on headphones, Your

1  Honor.  And I apologize.  I had to take my mother into

2  (inaudible).  So I am not in the office.

3            THE COURT:  Okay.

4            MS. VILLAFANA:  So as to Mr. Rodriguez, we also don't

5  believe there is conflict.  If you believe there was a conflict

6  that it should be raised, we would be willing to waive that

7  conflict.

8            THE COURT:  Okay.  Very good.  Thank you, ma'am.

9            MR. CASSELL:  This is Paul Cassell for Jane Doe I and

10  Jane Doe II.

11            I think, as Miss Villafana was indicating, our side of

12  the case sees no conflict at all.  If there were some

13  hypothetical conflict we would, of course, waive it.  We think

14  it is important to move forward with the settlement conference.

15  This isn't something on the merits of the case ultimately other

16  than trying to resolve it.

17            THE COURT:  Very good.

18            MR. WEINBERG:  And Judge, to the extent I have

19  standing on behalf of the intervenor and for the purposes of

20  furthering the settlement discussions, we have no objection to

21  Your Honor's conducting the settlement discussions.

22            THE COURT:  Okay.  Very good.

23            I understand that and, of course, it is quite correct

24  that I am not going to be deciding anything.  My job is to

25  facilitate a discussion.  So I think particularly in light of

1  that, not that I think there would be any conflict anyway, but

2  if there were, I think that would do a lot to mitigate it and

3  of course, the waivers that everybody has mentioned.

4        So let's do first things first.  How does the first

5  dates that I have made available, April 20th and April 21st,

6  look?

7        Mr. Lee, how does that look for the Government?

8        MR. LEE:  Those dates are good for me, but we have

9  already spoken with our opponents, Mr. Edwards and Professor

10 Cassell.

11       Apparently the April dates are not good.  Paul?

12       MR. CASSELL:  Yes.  I think we have come up with some

13 other dates.  As Miss Villafana -- and Dexter, I think you may

14 have been on the e-mail chain as well.

15       We have some other dates we would like to suggest to

16 Your Honor.  We have in order of preference May 11th, May 23rd,

17 May 24th, or May 6th I think are four dates in May that all

18 work for the parties.  There are a couple of things we need to

19 get sorted out in April and I think it would take a little bit

20 of time to get that done.

21       THE COURT:  Okay.  Let me take a look at those dates.

22       So your first choice is May 11th.  Unfortunately, I am

23 on criminal duty May 11th.  So that kind of knocks that one

24 out.

25       So let's take a look at, I believe, your second choice

1   was the 23rd.  And that looks wide open.  Let me double-check.

2   Yes, May 23rd looks wide open.  So May 23rd it shall be.

3           MS. VILLAFANA:  Okay.

4           MR. CASSELL:  Perfect.  Thank you.

5           THE COURT:  Sure.

6           And let me tell you how I do these things.  First, of

7   course, I like people to be actually present.  I find that

8   settlement conferences actually go far better when people are

9   here as opposed to appearing telephonically.

10          And I need people that have the authority to settle

11  the case without seeking permission from anybody else.  And

12  with respect to any case involving the Government that is as

13  close as we can get to anybody who can do that, which I know,

14  you know, we can never find that person to come in and appear

15  at this kind of a matter.

16          Does that present any problems with folks for the 23rd

17  with people actually being here?

18          MR. CASSELL:  Your Honor, for Jane Doe I and Jane Doe

19  II, I think there were some logistical issues around Jane Doe

20  I.  We would propose an order indicating that mediation will

21  take place on that date and then I think we could make

22  arrangements for her to be there.

23          With regard to Jane Doe II, our plan is to either have

24  her there or to have full settlement authority from her.  I

25  will being flying from Utah and Mr. Edwards will be traveling

1  to the mediation site as well.  So I think our side will be in

2  good shape on that date.

3         THE COURT:  With respect to Jane Doe II not being

4  here, if you want her not to be here, you will need to file a

5  motion to that affect.

6         MR. CASSELL:  All right.

7         THE COURT:  Because a big part of the presentation is

8  me telling everybody what a fine idea it is to settle cases and

9  the pluses of minuses of that.

10        And I find that that just works a lot better if the

11 actual decision-makers are here to hear it than they are if

12 they are sitting wherever they are sitting and rolling their

13 eyes as I am talking about these ideas over the phone.

14        And by the way, should I call you Judge Cassell,

15 Professor Cassell, or Mr. Cassell?  If a jury was present, I

16 would call you Mr. Cassell, but you tell me what you want.

17        MR. CASSELL:  Whatever you would do for our learned

18 colleagues on the other side of the case is fair by me.

19        THE COURT:  Okay.  Well, I think I guess being a Judge

20 is like the mark of Cane.  Once you've got it, it is on you

21 forever.  So I will call you Judge Cassell.

22        MR. CASSELL:  Mr. Cassell is actually fine.

23        I appreciate your asking, but since it will be Miss

24 Villafana and Mr. Lee, just probably treat everyone parallel

25 there.

1          THE COURT:  Okay.  That is what I will do then.

2          And then, that part of the settlement conference, that

3   is public when I give the virtues of settling cases because

4   sometimes people like to bring emotional support people with

5   them and I think it is useful for them to hear as well.

6          Then, we come to the point where each side makes a

7   brief presentation about their case.  At that point, I seal the

8   procedures.  We start with the confidentiality and everybody

9   leaves the room, accept the parties and their lawyers.  And if

10  the parties have emotional support people there that the other

11  side does not object to being included, then, I let them stay.

12  If they object, then, I tell them they have to leave.

13         And my normal procedure is to start at 10:30 just to

14  give everybody a chance to get here with logistics and I work

15  straight through.  Unless we have some kind of medical reason

16  why people need to take a break for lunch.

17         If they do, then, that is fine.  We will break for

18  lunch and do that.  My experience has been it is better if we

19  press on and keep the conversation going.  And we normally

20  know, in the course of this case is not part of that norm, but

21  we normally know by 1:30, 2:00 whether the case is going to

22  settle or not.

23         Does that procedure seem to work for everybody?

24         MS. VILLAFANA:  From the Government, yes.

25         MR. LEE:  That's fine for the Government, Your Honor.

1       MR. CASSELL:  Your Honor, this works out for us.

2  Might I suggest an earlier start time?  I will be flying in

3  from Utah the evening before.  And so I think we will have

4  everyone -- I believe we are doing this in West Palm Beach?

5       THE COURT:  Correct.

6       MR. CASSELL:  And so I think if I could suggest 9:30

7  that might make it possible to get an extra hour of work done

8  earlier in the day.

9       THE COURT:  Mr. Lee and Miss Villafana, does 9:30 work

10  for you?

11      MR. LEE:  9:30 would be fine, Your Honor.  Thank you.

12      MS. VILLAFANA:  That is fine.

13      THE COURT:  Okay.  Then 9:30 it shall be when we start

14  on May the 23rd.

15      Now, what role, if any, do the parties think

16  intervenors have in this?

17      MS. VILLAFANA:  Your Honor, speaking for the

18  Government there are three sets of intervenors in this case.

19  There is (inaudible).

20      THE COURT:  Okay.  Unfortunately, you are going to

21  have to go very slow because I don't know what to make when you

22  are breaking up, but you are breaking up.  I heard three sets

23  of intervenors.

24      MS. VILLAFANA:  Yes.  (Inaudible).

25      THE COURT:  Miss Villafana, can Mr. Lee pick up the

1  ball on this?

2          MS. VILLAFANA:  Let me try to call back in.

3          THE COURT:  Yes.  Why don't you try to call back in.

4          MS. VILLAFANA:  Sorry about that.

5          THE COURT:  That is okay.

6          We will just give Miss Villafana a minute.

7          MS. VILLAFANA:  Hello?

8          THE COURT:  That is better.

9          MS. VILLAFANA:  Oh, great.  Thank you.  I'm glad it is

10 better.  I could hear you perfectly, but I want to be eloquent

11 for you.

12         THE COURT:  Very good.

13         MS. VILLAFANA:  Am I interrupting anyone if I start

14 again?

15         THE COURT:  No.  We have all been very good and kept

16 our mouth shut while you have been off the line.

17         MS. VILLAFANA:  Okay.  All right.  So the first with

18 intervenors with Mr. Black, Mr. Weinberg, and Mr. Lefkowitz and

19 in Docket Entry 158, Judge Marra granted limited intervention

20 for them to assert a claim that certain documents were

21 privileged.  That issue has been resolved in the District Court

22 and by the Eleventh.

23         So as far as of the Government is concerned, all

24 issues related to them have been resolved and they don't have

25 anything left to mediate.

```
 1              MR. WEINBERG:  And I agree with that, Your Honor.  I
 2    am here on Mr. Epstein's behalf and not on behalf of the legal
 3    team.
 4              THE COURT:  Okay.  Very good.
 5              MS. VILLAFANA:  Then with regard to group two is
 6    Mr. Epstein.  He is the only person in that group.  He filed
 7    several motions to intervene.
 8              Two of them were related to particular documents that
 9    he was seeking to invoke, either an attorney/client privilege
10    or a 6(e) privilege and those issues also have been resolved.
11              Then he also sought in Docket Entry 207, he moved to
12    intervene.  He moved for prospective limited intervention in
13    which he asked to intervene at the remedy stage.  Saying when
14    and if the parties reached the stage at which the Court will
15    consider what remedy to order if it finds that the Government
16    violated the Plaintiff's rights under the CVRA and he sought to
17    intervene.
18              He said that he does not seek to intervene generally
19    in the case.  And he also wrote that the dispute is solely
20    between the Plaintiffs and the Government.  Judge Marra granted
21    his motion in Docket Entry 246 allowing him to intervene with
22    regard to any remedy issue.
23              So the point of the mediation is really to avoid
24    reaching the remedy issue and avoid reaching the liability
25    issue.  And allowing the parties to decide how to resolve the
```

1   case without making the Court decide those issues for us.

2           So from the Government's perspective, Mr. Epstein

3   doesn't have a role to play in the mediation.

4           THE COURT:  And what says Mr. Epstein?

5           MR. WEINBERG:  First, I don't think there would be any

6   disadvantage to the process with Mr. Epstein's participation.

7           To the extent that the settlement is not going to

8   reach decisions on liability, or proposals on liability, or

9   proposals on remedy, particularly the remedies that would

10  effect Mr. Epstein, then I don't disagree with the Government.

11          But I anticipate that the Government and the Jane Does

12  to come to a final resolution that there is at least going to

13  be the potential for some effort by Judge/Mr. Cassell to at

14  least discuss remedies that they have advanced principally

15  dating back to, I think, it is Docket Entry 127, where at least

16  a subset of the remedies do involve Mr. Epstein's interest.

17          And for that reason, think there is no disadvantage to

18  his participating in the event that the Court ever addresses

19  any proposals dealing with those remedies.

20          THE COURT:  Okay.  Mr. Cassell.

21          MR. WEINBERG:  One level more specific, Judge.

22          Mr. Cassell has advanced a theory that would involve a

23  proposal to invalidate non pros agreement that Mr. Epstein

24  reached with the United States attorney.

25          The U.S. attorney has objected to that.  We believe

1   that that remedy would not be appropriate.  Mr. Epstein has

2   fully conformed to the non pros agreement and met its

3   conditions, including going to jail.  We think that it wouldn't

4   be legally appropriate to invalidate it.

5         But to the extent that there is any decisions reached

6   between the Government and the Jane Does at a settlement

7   conference presided by Your Honor that would effect such

8   interest by Mr. Epstein, we would simply wish to be there and

9   think it would further an overall settlement.

10        THE COURT:  Understood.

11        Mr. Cassell, what is your position?

12        MR. CASSELL:  Our position is aligned with the

13   Government on this.

14        First off, we think that Mr. Epstein has no right to

15   be anywhere close to the mediation.  The motion was for

16   prospective intervention.  And so he is not technically

17   recognized as an intervenor at this point.

18        So we think we would like to have an opportunity to

19   sit down with the Government and with the help of Your Honor to

20   mediate the matter at issue and try to resolve things.

21        We do think there would be a significant disadvantage

22   if we turn a two-sided mediation into a three-sided mediation.

23   I haven't done the math, but it becomes exponentially more

24   complicated whenever you have other people there.

25        We also have to remember that we are going to have a

1  sexual abuse victim there and additional people could be

2  problematic for her emotional well-being.  And some of the

3  things that might be said could be problematic as well.

4          With regard to, you know, we are going to continue to

5  press.  Our opening position will be that there should be a

6  finding of liability.  And that a non prosecution agreement

7  should be invalidated, but I imagine there is going to be

8  discussion of the pros and the cons of that.

9          If the case got to that point, then, if that was the

10 resolution that the Government and the victims reached, then at

11 that point Judge Marra could consider whether Mr. Epstein had a

12 right to intervene.  But until the discussions have reached

13 that point, it seems like it is very premature and

14 disadvantageous for him to be involved.

15         THE COURT:  Okay.  Very good.  So that is two of our

16 groups.  What about our third group?

17         MR. LEE:  I will address that, Your Honor.  This is

18 Dexter Lee.

19         The third group would be the Palm Beach Post and the

20 Palm Beach Daily News.  I will call them the media intervenors.

21 They initially sought limited intervention to oppose a motion

22 for a supplemental protective order that was filed by attorneys

23 on behalf of Mr. Epstein.

24         Their limited motion for intervention was granted by

25 the District Court in Docket Entry 326 on April the 15th of

1  2015.  The same order, 16 pages long, denied Mr. Epstein's

2  motion for a supplemental protective order.  So since their

3  limited intervention has been addressed, we believe they have

4  no right to attend the confidential segments of this mediation

5  settlement conference.

6          THE COURT:  Very well.

7          From my quick amount of research that I have done in

8  taking a look at this, I have not seen a great deal of case law

9  about intervenors at settlement conferences.  I don't know if

10  you all have any in particular that you would want to call to

11  my attention.

12         MR. LEE:  Your Honor, we would submit that the case

13  law on intervenors does not apply here because Epstein is only

14  a prospective intervenor.  Until he is actually an intervenor,

15  he is just like any other citizen who might want to attend

16  something that is confidential, but has no right to do so.

17         THE COURT:  Okay.

18         MS. VILLAFANA:  Your Honor, this is Marie Villafana.

19         I just need to correct Mr. Casell's presentation.  I

20  don't think that he realizes that although Mr. Epstein moved

21  for prospective limited intervention, Judge Marra did grant his

22  motion.

23         So I think that he has been allowed to intervene so

24  far.  So that means that he is prospective, but I think -- and

25  I am not aware of any case law.  And I think, as the Court is

1   aware, this case is really *sui generis* and there is nothing

2   similar to this.

3            The one thing I wanted to mention in keeping with what

4   Mr. Cassell mentioned earlier is because this case is so unique

5   involving litigation between a prosecutor function and victims,

6   the idea of having the perpetrator present at a mediation with

7   victims, I think, would not be in keeping with the Crime

8   Victim's Rights Act, or just the general tenor of mediation

9   conferences in the District Court.

10           MR. CASSELL:  This is Mr. Cassell.

11           If I could just jump in.  I am aware that the motion

12  has been granted, but looking at it right in front of me it

13  says he is allowed to intervene with regard to any remedy issue

14  concerning the non prosecution agreement in this case.  It is

15  uncertain at this juncture whether the mediation is going to

16  get to that point.

17           So until we have certainly reached that juncture, he

18  is like any other citizen that has no interest in the case.

19           MR. WEINBERG:  And I would contend, Your Honor, since

20  this is scheduled as a one-day settlement conference with an

21  objection of having a complete settlement and not seeing any

22  prejudice, at least to my being present, even if Your Honor in

23  your discretion decided that Mr. Epstein should not personally

24  be present unless and until there is a discussion of remedy

25  that there would simply be no prejudice to the successful

1   outcome of the settlement with my presence.

2           To the extent that the settlement conference evolves

3   into a discussion of Mr. Epstein's rights and I think there are

4   two sets of rights.  One is the non pros agreement which we, of

5   course, vigorously oppose for a variety of reasons and I

6   believe the Government does as well.

7           But there was also a suggestion in the earlier

8   pleadings that one of the remedies that Mr. Cassell might seek

9   is some disclosure of 6(e) materials.  We did seek to intervene

10  to protect Mr. Epstein's rights against the disclosure of 6(e)

11  materials, but if that remains one of the remedies sought by

12  Mr. Cassell it is a second reason why Mr. Epstein has an

13  interest in being there.  It could be a conditional interest.

14          In other words, I could be a silent participant unless

15  and until the settlement conference evolves towards a

16  discussion of final remedies.  I am hopeful it doesn't evolve

17  in a way that would implicate Mr. Epstein's rights.

18          I think there are a lot of other remedies that are at

19  issue that have been raised by Mr. Cassell.  A lot of issues

20  between the one party that had obligations under the CVRA which

21  is the Government and the Jane Does, but simply seeing the

22  potential that if this evolves in a manner that would implicate

23  Mr. Epstein's legal rights that I be present, rather than

24  requiring or encouraging a separate or second settlement

25  discussion in order to reach the result, I think, everybody on

 1   this phone call wants to reach, which is a final settlement of

 2   this long-lasting case.

 3            THE COURT:  Okay.  Very good.

 4            Here's a case that you all might want to take a look

 5   at.  This a case out of the Southern District of Mississippi.

 6   It is *State Farm Fire and Casualty Company v. Jim Hood*.  It is

 7   at 266 FRD 135.  It's a 2010 discussion.

 8            An it dealt with members of the news media filing a

 9   motion to intervene as of right to challenge an order sealing a

10   settlement agreement between the parties.  That is about the

11   only thing that I could find in the short amount of time I had

12   to do some research dealing with intervenors and settlement

13   conferences.

14            And it is not exactly on point, but it is particularly

15   when it comes to the unsealing of an agreement that might be

16   something that the parties would have some interest in taking a

17   look at.

18            What I am going to do is I am going to give you some

19   time to file some briefing on that to lay out your positions

20   and see if there is any research on that.

21            And I think instead of going back and forth on the

22   briefing, I think the best bet is if I just give everybody one

23   deadline to file whatever they are going to file.  And then, I

24   will have to make my decision after that.

25            So any supplemental briefing that you would like to

1   file on this issue of the presence of intervenors will be due

2   on Friday, April 15th at 5:00 Eastern Time.

3             MR. LEE:  Your Honor, I am going to be out of town on

4   the 13th through the 15th.  Will it be possible to have one

5   additional week until April 22nd?

6             THE COURT:  Sure.

7             We will make it April 22nd at 5:00 Eastern Time.  Does

8   that work for you, Mr. Lee and Miss Villafana?  Does that work

9   for you.

10            MS. VILLAFANA:  Yes, it does.

11            MR. LEE:  Yes, it does.

12            MS. VILLAFANA:  Yes.

13            THE COURT:  And Mr. Weinberg, does that work for you,

14   sir?

15            MR. WEINBERG:  It does.  Thank you, Your Honor.

16            THE COURT:  Anything else we need to talk about today?

17            MR. LEE:  Nothing from the Government.

18            MS. VILLAFANA:  No, Your Honor.

19            THE COURT:  Okay.  Then I am looking forward to seeing

20   what you all have to say.  And I am looking for to doing this

21   settlement conference and we are in recess.

22            MS. VILLAFANA:  Thank you so much, Your Honor.

23            (Thereupon, the proceedings concluded.)

24

25

1

2                              CERTIFICATE

3

4        I hereby certify that the foregoing telephonic

5  transcript is an accurate transcript of the audio recorded

6  proceedings in the above-entitled matter.

7

8

9

10
      06/19/19                      Bonnie Joy Lewis,
11                         Registered Professional Reporter
                              CASE LAW REPORTING, INC.
12                            7001 Southwest 13 Street,
                            Pembroke Pines, Florida 33023
13                                954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25