IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JANE DOE 1 AND JANE DOE 2,

PETITIONERS,

*v.*

UNITED STATES OF AMERICA,

RESPONDENT.

.

Civil Action No.

08-80736-CIV-MARRA

· **Government's Response to Petitioners' Submission on Proposed Remedies**

The United States of America, by Byung J. Pak, United States Attorney for the Northern District of Georgia, and Jill E. Steinberg and Nathan P. Kitchens, Special Attorneys for the Southern District of Florida, files this response to Petitioners' proposed remedies.

## INTRODUCTION

The question before this Court is what remedies, if any, should be accorded Petitioners under the Crime Victims' Rights Act (CVRA) based on this Court's finding that the government failed to confer with Petitioners prior to entering into a non-prosecution agreement (NPA) with Jeffrey Epstein.[1] Petitioners seek

---

[1] This Court previously found that Petitioners are crime victims under the CVRA; a crime victim's rights under the CVRA attach before the government brings formal charges against a defendant; the CVRA's "reasonable right to confer" extends to conferring about non-prosecution agreements; the CVRA authorizes the rescission of a non-prosecution agreement reached in violation of a prosecutor's conferral obligations; and the government violated the CVRA by failing to advise the victims that it intended to enter into the NPA with Epstein. The government will not

what they call "rescission remedies," "apology remedies," "informational remedies," "educational remedies," and "miscellaneous remedies"—all of which constitute equitable relief, and none of which is authorized by the CVRA. But even if the statute did allow equitable relief, Petitioners are not entitled to the specific relief they are seeking.

Nevertheless, the government believes that it should have communicated its resolution of the federal criminal investigation of Epstein to his victims more effectively and in a more transparent manner. Although we cannot turn back time and put the victims back in the position they would have been in over a decade ago, the government believes the following proposed remedies would respect their rights under the CVRA, balance the constitutional and statutory obligations imposed on the government, and bring some level of finality to all the parties.

## DISCUSSION

**1. The Government's Proposed Remedies.**

### A. The government should have communicated in a more transparent way with victims.

As a matter of law, the government's position is that the legal obligations under the CVRA do not attach prior to the government charging a case. Nor does the CVRA authorize any of the remedies sought by the Petitioners—in part because the CVRA does not contemplate its invocation in the context of

---

revisit these findings here except to note that it maintains all of its objections.

uncharged criminal conduct.[2]  At the same time, the government strives to communicate with crime victims effectively and as transparently as possible.

There are myriad reasons why a prosecutor may decline to indict a case or resolve a case with a plea to a less serious charge. These considerations are highly contextual and involve a host of factors based upon the current state of the law and provable evidence, as well as the experience that prosecutors and their law enforcement partners develop working cases over many years. There are instances when victims of a crime or third parties may disagree with a prosecutor's decision, but that decision nevertheless remains with the prosecutor and her supervisors, and this discretion is expressly preserved in the CVRA. *See* 18 U.S.C. § 3771(d)(6).

Although the CVRA may not have required it, here, the government engaged with the Petitioners about the status of the investigation and advised them that the case was being actively pursued.  At the same time, potential federal charges were being resolved with a state court guilty plea in conjunction with the NPA. Regardless of whether the government ultimately chose to pursue, decline, or

---

[2] Indeed, under the CVRA, "crime victim" is a person directly and proximately harmed as a result of the "commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A).  Thus, without identifying exactly which federal offense was committed by filing formal charges, it is difficult to determine who was directly and proximately harmed. Moreover, the crime victims' rights are tied to a court proceeding, *see* 18 U.S.C. § 3771(b)(1), which indicates that formal charges are required prior to the attachment of rights under the CVRA.  By Department policy and practice, however, federal prosecutors usually go above and beyond the obligations defined by the CVRA and interact with victims early on in a case.

3

otherwise resolve federal prosecution—a decision upon which we do not opine here—the government should have communicated with the victims in a straightforward and transparent way.  Because the government did not communicate more clearly and directly with the victims, the resolution in this case has led some to conclude that the government chose for improper reasons not to prosecute Epstein, a conclusion that remains unsubstantiated. The government places high value in its work to support victims of crime, and its communications with victims must reflect that value.  The government regrets that the manner in which it communicated the resolution of the Epstein case to the victims fell short.

**B. The Department of Justice's commitment to victims of human trafficking and child exploitation supports targeted remedies to give the Epstein victims a voice, an explanation, and finality.**

Over the past decade, the Department of Justice has made combatting human trafficking and child exploitation a national priority.[3] Between Fiscal Years (FY) 2009 and 2016, the Department increased the number of human trafficking cases

---

[3] *See Department of Justice Releases First National Strategy for Child Exploitation Prevention and Interdiction* (Aug. 2, 2010), https://www.justice.gov/opa/pr/ department-justice-releases-first-national-strategy-child-exploitation-prevention- and (Eric Holder comments); Introduction by Attorney General Loretta Lynch, *National Strategy to Combat Human Trafficking* (January 2017), https://www.justice.gov/humantrafficking/page/file/922791/download (hereinafter *National Strategy to Combat Human Trafficking*); *Attorney General Jeff Sessions Delivers Remarks at National Law Enforcement Training on Child Exploitation* (June 6, 2017), https://www.justice.gov/opa/speech/ attorney-general-jeff- sessions-delivers-remarks-national-law-enforcement-training-child.

charged, defendants charged, and defendants convicted by roughly 70 percent in comparison to the prior eight years, in addition to higher prosecution results in cases involving child sex trafficking.[4] In FY 2009, the Department charged 2,315 child exploitation cases involving 2,427 defendants; in FY 2015, that number almost doubled to 4,211 cases involving 4,458 defendants.[5] In addition, through its Office of Justice Programs, the Department funds 61 coordinated task forces to fight internet-facilitated crimes against children (ICAC).[6] In FY 2008, the task forces were funded at $16.9 million; in FY 2018 the funding for the ICAC program was $28.6 million.[7] Through its Office for Victims of Crime (OVC), the Department provides more grant funding than any other federal agency to programs that provide direct services to victims of human trafficking.[8] Indeed, this month, OVC announced its FY 2019 grant, which will award millions of

---

[4] *National Strategy to Combat Human Trafficking* at 1.

[5] *National Strategy for Child Exploitation Prevention and Interdiction* (Aug. 2010), at 5, https://www.justice.gov/psc/docs/natstrategyreport.pdf; *National Strategy for Child Exploitation Prevention and Interdiction* (Apr. 2016), at 110–11, https://www.justice.gov/psc/file/842411/download (hereinafter *2016 National Strategy for Child Exploitation Prevention*).

[6] *Program Summary*, *Internet Crimes Against Children Task Force Program*, https://www.ojjdp.gov/programs/ProgSummary.asp?pi=3.

[7] *Id.*

[8] *Announcements*, Office for Victims of Crime, https://ovc.ncjrs.gov/humantrafficking/announcements.html.

dollars in funding to assist victims of trafficking.[9]  In April 2016, the Department published a comprehensive strategy, in conjunction with several other federal agencies, to combat child exploitation, including child sex trafficking.[10] In 2013, the Department and other agencies published a victim-dedicated action plan that described the process by which the government will combat trafficking offenses with a focus on providing support and services to victims.[11]

These programs and accomplishments matter because they reflect a commitment on the part of the Department of Justice, which includes all federal prosecutors, to combat human trafficking and crimes against children and fully support and protect victims of crime.   Any remedy the Court imposes in this matter should reflect the fact that any mistakes made in this case stand in contrast to the Department's commitment to victims.

Any remedy the Court imposes should also have a nexus to the purpose of the CVRA, which is to give victims a voice in the criminal justice process, but not decision-making authority over prosecution decisions. Here the Court found that the government violated the CVRA by failing to confer with the victims about the NPA. The past cannot be undone; the government committed itself to the terms of the NPA, and the parties have not disputed that Epstein complied with

---

[9] *OVC Fiscal Year (FY) 2019 Direct Services to Support Victims of Human Trafficking*, https://www.ovc.gov/grants/pdftxt/FY19-Direct-Services-Human-Trafficking-Solicitation.pdf.

[10] *2016 National Strategy for Child Exploitation Prevention*.

[11] *Federal Strategic Action Plan on Services for Victims of Human Trafficking*, https://www.ovc.gov/pubs/FederalHumanTraffickingStrategicPlan.pdf.

its provisions. A number of Epstein's victims subsequently invoked the NPA to enter into civil settlements with Epstein and, in that respect, also relied on its terms.[12] Any remedy for the CVRA violation should thus serve to give the victims a voice, even though the prosecution decision remains out of their hands. As such, the government proposes the following remedies:

- The Department of Justice will designate a representative to meet with Petitioners, and any other Epstein victim who wishes to participate, to discuss the government's decision to resolve the Epstein case and engage in an open dialogue about that decision.

- The government will participate in a public court proceeding, presided over by this Court, in which the Petitioners, and any other Epstein victim who wishes to participate, can make a victim impact statement. That hearing would be handled in a manner similar to the way the Court would handle victim impact statements in the context of a criminal sentencing.

- All criminal prosecutors in the United States Attorney's Office for the Southern District of Florida (USAO-SDFL) will undergo additional training on the CVRA, victim rights, and victim assistance issues to be completed no later than one year from the date of the Court's final order in this case.

## 2. The CVRA Specifies the Enforcement Mechanism To Address Violations of Its Terms and Does Not Authorize the Equitable Remedies Petitioners Seek.

The government offers the proposed remedies above, not because it is required to do so by law, but because it believes these corrective actions are

_____

[12] Based on information provided in response to the government's recent efforts to confer with victims, more than a dozen victims invoked the NPA to enter civil settlements with Epstein while protecting their anonymity.

necessary to give a voice to the victims of Jeffrey Epstein and an opportunity for them to understand the true reasons why the government resolved the case in the manner it did since they did not have that opportunity at the time. These remedies are generally consistent with several remedies proposed by Petitioners. But the law does not authorize this Court to grant other remedies Petitioners seek, nor would such remedies promote the underlying purpose of the CVRA to promote victims' participatory rights in the criminal justice process while respecting their dignity and privacy.

Although Petitioners assert that the CVRA gives this Court "broad power to craft appropriate remedies," Doc. 458 at 7, the statute's plain language says otherwise. That language explicitly provides that a crime victim may *not* seek damages against the United States:

> **No cause of action**. — Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages.

18 U.S.C. § 3771(d)(6) (emphasis in original).

Perhaps because Congress provided no cause of action for damages, it sought compliance a different way:  it included a section in the CVRA entitled "Procedures to [P]romote [C]ompliance," in which it directed the United States Attorney General to "promulgate regulations to enforce the rights of crime victims and to ensure compliance by responsible officials with the obligations"

8

set out by statute. 18 U.S.C. § 3771(f). Congress further directed that these regulations: (1) designate someone within the Department of Justice to receive and investigate complaints relating to a rights violation; (2) require that DOJ officials be trained on crime victims' rights and assist such employees in responding to crime victims' needs; (3) provide "disciplinary sanctions, including suspension or termination from employment, for employees of the Department of Justice who willfully or wantonly fail to comply with provisions of Federal law pertaining to the treatment of crime victims"; and (4) instruct that the "Attorney General, or the designee of the Attorney General, shall be the final arbiter of the complaint, and that there shall be no judicial review of the final decision of the Attorney General by a complainant." *Id.* at (f)(1)(A)-(D).

The Department of Justice did as Congress directed, and the resulting regulations are found at 28 C.F.R. § 45.10. These regulations outline the procedures a crime victim shall take when he or she believes that one of their CVRA rights has been violated. 28 C.F.R. § 45.10(c). Notably here, the regulations provide that the Department of Justice Victims' Rights Ombudsman is "the final arbiter of the complaint," and the complainant "may not seek judicial review" of that determination. *Id.* at (c)(7)–(8). The Ombudsman alone decides whether to notify the complainant of the result of the investigation. *Id.* at (c)(9). Empowering the Ombudsman to remedy a victim's complaint without the risk of delay from prolonged litigation is consistent with congressional intent that the CVRA's administrative remedy should "create[] a framework to quickly enforce victims' rights." 150 Cong. Rec. 7312 (statement of Sen. Orrin Hatch).

9

With respect to disciplinary sanctions, if the Ombudsman finds that a DOJ employee violated a crime victim's rights, but not in a willful or wanton manner, the Ombudsman shall require the employee "to undergo training on victims' rights." 28 C.F.R. § 45.10(d). If, however, the Ombudsman finds that the DOJ employee willfully or wantonly violated a crime victim's rights, the Ombudsman shall recommend "a range of disciplinary sanctions." *Id.* at (e)(1). "Disciplinary sanctions" means "those sanctions provided under the Department of Justice Human Resources Order, 1200.1," which include written reprimands, suspensions, reductions in grade or pay, removals, and furloughs for 30 days or less. *Id.* at (e)(2); DOJ Human Resources Order, 1200.1, Part 3, B(2). Thus, the CVRA provides sanctions that the government and its employees may be subjected to if they violate the CVRA.

The CVRA's plain text lays out the procedures that crime victims must follow when they believe their CVRA rights have been violated, the actions DOJ must take when it receives a complaint, and the sanctions DOJ may employ when a violation has occurred. And this carefully crafted and detailed enforcement scheme undermines any suggestion that Congress intended, but simply forgot, to provide additional remedies beyond those already specified. Courts agree. *See United States v. Monzel*, 641 F.3d 528, 542 (D.C. Cir. 2011) (holding that the CVRA's "carefully crafted and detailed enforcement scheme," provides "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly") (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 254 (1993)); *United States v. Hunter*, 548 F.3d 1308, 1315 (10th Cir. 2008)

10

(declining to "to read additional remedies" into the CVRA beyond those expressly contained in the Act); *see also Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 533 (1989) ("[I]t is . . . an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.") (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)); *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."); *McDonald v. Southern Farm Bureau Life Ins. Co.*, 291 F.3d 718, 725 (11th Cir. 2002) ("When Congress creates certain remedial procedures, we are, 'in the absence of strong indicia of contrary congressional intent, . . . compelled to conclude that Congress provided precisely the remedies it considered appropriate.'") (quoting *Karahalios*, 489 U.S. at 533). Because Petitioners seek remedies not authorized by the CVRA's plain language, their requests should be denied.

What's more, the plain text is supported by the CVRA's location in the United States Code. Specifically, the CVRA is found in Part II of Title 18, which is the part of the United States Code specifically devoted to "Criminal Procedure." The CVRA does not contemplate civil litigation, and the civil remedies that Petitioners seek are simply unavailable under the CVRA. Doc. 147 at 15–19. Instead of authorizing a victim to institute a civil action, the CVRA created a specific victims-rights-enforcement scheme within the federal criminal justice process – indeed, within Title 18 of the United States Code, which addresses

"Crimes and Criminal Procedure." That rights-enforcement scheme is based on the filing of a "motion asserting a victim's rights" – not a civil complaint or a civil lawsuit. 18 U.S.C. § 3771(d)(3); *see Sieverding v. U.S. Dept. of Justice*, 693 F. Supp. 2d 93, 110 (D.D.C. 2010) (recognizing that it is "only through a motion" that the CVRA "permits" individuals to assert statutory rights arising under the CVRA, such as the "right to confer" and '"discuss . . . allegations of criminal acts and [DOJ's] decisions to prosecute or not prosecute"') (citing 18 U.S.C. § 3771(d)(3)); *see also, e.g., In re Antrobus*, 563 F.3d 1092, 1097 (10th Cir. 2009) ("The CVRA contemplates that individuals asserting victim status may bring a motion in the district court even when criminal proceedings are not ongoing, and that the district court's denial of such a motion is reviewable by mandamus.") (citing 18 U.S.C. § 3771(d)(3)); *compare* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Congress expressly recognized in enacting the CVRA that the statute did not "[a]llow[] victims to vindicate their rights through separate proceedings for damages instead of through mandamus actions in the criminal case." 150 Cong. Rec. 7306 (2004) (statement of Sen. Patrick Leahy) (expressing regret that the CVRA "den[ied] victims any cause of action for damages in the event that their rights are violated"); 150 Cong. Rec. 7312 (statement of Sen. Orrin Hatch) ("For those who may be concerned that this bill might lead to new tort causes of action, let me assure you, that victims are not seeking to sue the government and get rich. . . . Accordingly, the bill states that there will be no cause of action for damages.").

The cases cited by Petitioners do not advance their efforts to expand the CVRA into a civil remedial scheme allowing for civil equitable relief. Those cases support the unremarkable proposition that courts generally have power to grant appropriate relief for recognized civil causes of action, but, as previously explained, there is no civil cause of action under the CVRA. And the case to which they do cite, *In re Dean*, 527 F.3d 391 (5th Cir. 2008), is not applicable here. Specifically, in *In re Dean*, a criminal charge was actually filed, and the case involved a plea agreement that the court would have to accept or reject; here, however, the NPA was never before this Court. Regardless, the Court in *In re Dean* never opined on the types of equitable relief Petitioners seek here.

In addition, Petitioners identify no other federal statute under which they can bring their claims for relief. Because the law does not provide Petitioners an avenue for the relief they seek, this Court must find that it does not have the authority to order the government to do as Petitioners ask, but may still accept the government's proposed remedies.

### 3. Even if the CVRA Allows for Civil Relief, the Remedies Petitioners Seek Go Well Beyond What Is Appropriate.

But even if the CVRA or some other statute allowed equitable relief, the remedies that Petitioners seek go well beyond what equity allows.

### A. Petitioners' request for partial rescission

Petitioners have repeatedly requested some form of rescission of the NPA, but their submission on remedies is telling more for what they seek to preserve from that agreement than what they seek to rescind. Specifically, Petitioners do not

ask the Court to scrap the agreement in its entirety; instead, Petitioners request that the Court leave in force all but three sentences of the agreement and stress that they "are only seeking that these particular provisions be set aside." Doc. 458 at 13 n.5, 19.

Petitioners' effort to preserve almost the entirety of the NPA is understandable because eliminating the complete agreement could harm many of the very victims the CVRA was designed to protect. As the Court is well aware, the NPA guaranteed a felony conviction and more than a year of incarceration for Epstein, which he agreed not to appeal; required him to register as a sex offender; provided for an attorney representative for victims, at Epstein's expense; and gave victims the equivalent of uncontested restitution by mandating that he waive his right to contest liability for victims who pursued a claim for damages under 18 U.S.C. § 2255. Doc. 48-5. Rescission could imperil these penalties as well as the benefits and settlements obtained by the more than dozen victims who invoked the NPA terms.

Petitioners attempt to avoid that outcome by asking the Court to spare provisions of the NPA they like while excising portions they do not. Given the potential harm that complete rescission would pose for many victims, the government understands this proposal to be well-meaning. Indeed, the government itself would benefit from partial rescission by reaping the advantages arising from Epstein's concessions without having to abide by its own commitments in the agreement. But partial rescission is not a proper remedy in this action because it would harm certain victims, has no basis under

14

the law,[13] and would undermine the CVRA's purpose to encourage proper treatment of victims.

### i. Partial rescission would pose harm to, and is contrary to the desires of, certain victims.

Despite Petitioners' best intentions, partial rescission would pose a significant risk of harm to certain victims, which must be considered in crafting an equitable remedy. The Eleventh Circuit has admonished courts considering equitable remedies to "bear in mind that a poorly crafted remedy may achieve justice for one by working a substantial injustice on another." *Walters v. City of Atlanta*, 803 F.2d 1135, 1149 (11th Cir. 1986); *see also Doll v. Brown*, 75 F.3d 1200, 1205 (7th Cir. 1996) ("Of course the effect on innocent third parties is a factor to be taken into account in the formulation of an equitable remedy"); *Byron v. Clay,* 867 F.2d 1049 (7th Cir. 1989) (noting that "equitable" relief "may have effects on third parties . . . and so should not be entered without consideration of those effects").

---

[13] For the reasons stated in the Government's prior filings, Docs. 119 & 147, the Government respectfully maintains that rescission is not an authorized remedy under the CVRA for the agreement in this matter. Petitioners' submission highlights the problematic logic underpinning their request for any form of rescission. Petitioners claim that the CVRA's limitations on efforts to "re-open a plea" under 18 U.S.C. § 3771(d)(5) do not apply here because rescission of a non-prosecution agreement is not a request to re-open a plea, Doc. 458 at 9, but the Court found that rescission of a non-prosecution agreement was authorized under Section 3771(d)(5) precisely because re-opening a non-prosecution agreement is akin to re-opening a plea. Doc. 189 at 7–9. Petitioners thus embrace the Court's finding while contradicting its underlying reasoning, all in an effort to avoid the consequences of their inability to fulfill all of the conditions on relief outlined in Section 3771(d)(5). Petitioners cannot have it both ways.

The government's recent effort to confer with victims has established that eliminating the immunity provisions would benefit certain victims and harm others. The government contacted all attorneys representing victims known to the government at the time of the NPA, attempted to locate other victims known at the time of the NPA, and conferred with additional victims who were not known at the time of the NPA. Indeed, the government has repeatedly invited Petitioners to confer with U.S. Attorney Pak in person "to share with [him] directly their thoughts about how the government should handle every aspect of this matter, both in civil and potential criminal proceedings." Letter from Byung J. Pak to Paul G. Cassell (May 7, 2019), attached as Exhibit 1. This invitation remains open. The government's efforts to speak with victims are ongoing, and it will seek leave to make a supplemental filing summarizing the steps taken to confer with victims and the victims' opinions on a proper remedy to ensure that their diverse voices are heard.

Based on the conversations with victims to date, it is apparent that any form of rescission would cause unintended harm to many of them. During these discussions with victims and their representatives, several victims passionately expressed their desire to see Epstein be prosecuted and were eager to serve as witnesses in any investigation of Epstein. On the other hand, other victims stated, through their counsel, that while they would like to see Epstein prosecuted for his crimes, they valued anonymity above all and were not willing to speak with law enforcement or otherwise participate in any criminal or civil litigation due to the risk that their involvement may become known to family,

friends, or the public. Several victims previously expressed, during the investigation of Epstein, that they suffered emotional distress and were troubled by the prospect of any involvement in the government's investigation. Doc. 403-18 ¶ 12. For these victims, setting aside the immunity provisions in a partial rescission could only undermine their desire to stay anonymous more than ten years after obtaining settlements from Epstein.

The passage of more than ten years since the NPA was entered only compounds the potential harm to victims that would arise from partial rescission. The Court is well aware of "Petitioners' counsel's initial 'indecision' on whether to seek rescission, as expressed at an earlier hearing held in August 2008," Doc. 189 at 12 n.6, in which counsel stated that "because of the legal consequences of invalidating the current agreement, it is likely not in my clients' best interest to ask for the relief that we initially asked for." Doc. 403-21 at 4. Petitioners' counsel told the Court in 2008 that "an immediate resolution was not necessary, Doc. 99 at 4, and the CVRA case then "stalled" for eighteen months "as petitioners pursued collateral civil claims against Epstein," resulting in the CVRA case being administratively closed in late 2010.[14] Doc. 189 at 5. Even if rescission is a permissible remedy for certain violations of the CVRA, the more than decade-long delay here renders this remedy inappropriate given these

---

[14] For the reasons stated in its prior filings, Doc. 147 at 8–12; Doc. 401-2 at 28–29, the government maintains that Petitioners should be estopped from seeking any form of rescission based on this delay.

unique circumstances and exacerbates the harm to victims who have attempted to readjust their lives in the interim.[15]

### ii.  Partial rescission contravenes governing tenets of contract law.

In addition to the potential harm posed to innocent third parties, the law unfortunately restricts the government's and Court's ability to rewrite the NPA a decade later. It is not uncommon for one party to a contract to wish to rework or eliminate terms after entering the agreement. But no matter how regrettable an agreement may appear in hindsight, fundamental tenets of contract law prohibit the rewriting of terms when the parties intended the agreement to be fulfilled in its entirety. Such principles bind the government's hands in this case.

Although the parties agree that the NPA should be governed by principles of contract law, Doc. 458 at 18, Petitioners cite no authority providing for partial rescission of a prosecutorial agreement, including a non-prosecution agreement, and ignore precedent foreclosing such a remedy when "the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement." *Local No. 234 v. Henley & Beckwith,* 66 So. 2d 818, 821 (Fla.1953); *see also Frankenmuth Mutual Ins. v. Escambia County,* 289 F.3d 723, 728 (11th Cir. 2002) (interpreting

---

[15] Although Petitioners' counsel have not spoken with the majority of the victims, they acknowledge that certain victims would be eager for rescission while a "large group . . . will respond by saying 'I have buried these experiences deep in the past and I don't want to do anything at all to unearth all the hurt and pain it has taken me this long to process.'" Julie K. Brown, *Prosecutors finally want to hear from Jeffrey Epstein's victims,* MIAMI HERALD, 2019, https://www.miamiherald.com/news/state/florida/article230275434.html (last visited June 21, 2019).

Florida law). Partial rescission of an agreement is "a remedy that is not generally cognizable under Florida law except in the unusual circumstances where a contract is clearly divisible." *Galaxy Cable, Inc. v. Cablevision of Marion Cty., LLC*, No. 5:05-CV-303-OC-GRJ, 2006 WL 2265419, at *3 (M.D. Fla. Aug. 8, 2006). A contract is considered to be "indivisible" when "each and all of its parts appear to be interdependent and common to one another and to the consideration." *Local No. 234*, 66 So. 2d at 822 (holding that contract was indivisible when "it is impossible to conclude that the very significant promise on one side. . . can be entirely eliminated from the contract and still leave a valid working arrangement fairly reflecting the original mutual understanding between the parties"); *see also Wilderness Country Club Partnership v. Groves,* 458 So. 2d 769, 771 (Fla. Dist. Ct. App. 1984) (concluding that, despite the illegality of only one contract provision, partial rescission was improper because illegal term was "vital," and severing that term "eliminates the essence of the contracting parties' agreement"). Courts determine whether an agreement is divisible based on the "intention of the parties" as revealed "by a fair construction of the terms and provisions of the contract itself, and by the subject matter to which it has reference." *Local No. 234*, 66 So. 2d at 822 (quotation marks omitted).

Here, excising the "immunity" or non-prosecution provisions plainly would eliminate the essence of the "Non-Prosecution Agreement." The three sentences that Petitioners seek to write out of the agreement are the only contractual consideration that the government provided in exchange for Epstein's concessions to a felony conviction, prison sentence, sex offender registration, and

uncontested restitution settlements. Doc. 48-5. Moreover, the agreement expressly states that its provisions were indivisible, noting that "each of these terms is material to this agreement and is supported by independent consideration," and a breach of any condition allowed the government to terminate the entire agreement. *Id.* at 7. Accordingly, omitting the immunity provisions "eliminates the essence of the contracting parties' agreement," and the NPA is thus an indivisible agreement not subject to partial rescission. *Wilderness Country Club Partnership,* 458 So. 2d at 771. Petitioners' request thus must be denied as a matter of law.

Petitioners point to authority setting aside agreements containing illegal provisions in support of their request, Doc. 458 at 15–17, but this argument is meritless for two reasons. First, while Petitioners contend that the government failed to accord victims their rights in communicating the terms of the NPA, Petitioners have not identified any illegal provision in the NPA itself. Doc. 147 at 4–5. Petitioners cite no precedent authorizing the rescission of an agreement containing legally valid terms based solely on an extrinsic violation in communicating the terms of that agreement to a third party. Second, none of Petitioners' cases authorizes partial rescission, the remedy they request here.[16]

---

[16] *See United States v. Walker*, 98 F.3d 944 (7th Cir. 1996) (holding that complete rescission of plea agreement was only permissible remedy when defendant was induced to enter plea based on mistake of law); *Craig v. People*, 986 P.2d 951, 966 (Colo. 1990) (noting that if plea was induced by illegal promise, proper remedy was defendant's option to withdraw from plea agreement in its entirety); *State v. Garcia*, 582 N.W.2d 879, 882 (Minn. 1998) (holding that if plea agreement could not be fulfilled based on illegal term, only remedy was withdrawal from entire

### iii.   Partial rescission would reward, not remedy, a violation of the CVRA.

Even if there were a legal basis for partial rescission, granting partial rescission in this matter would have the perverse effect of harming certain victims, who must be treated with "respect for [their] dignity and privacy" under the CVRA, 18 U.S.C. § 3771(a)(8), while rewarding the government for what the Court determined was a violation of the CVRA. The parties appear to have agreed for the purposes of this litigation that Epstein has fully performed his obligations under the NPA. By eliminating the immunity provisions of the agreement, Petitioners' proposal would thus allow the government to enjoy all the benefits of Epstein's compliance without binding it to its commitments under the NPA. Accordingly, Petitioners would place the government in a more favorable position than if it had fully conferred with victims prior to entering the NPA. Such a result would not encourage strict adherence to the CVRA, and partial rescission in this case would not foster the goals of the CVRA.

### B.  Petitioners' request for declaratory relief

Petitioners also request that this Court declare that the Constitution permits the government to prosecute Epstein in the event of rescission, but they cite no legal basis for this request. Declaratory relief serves only to clarify the legal relationship between the parties and does not serve to make factual

---

plea agreement); *State v. Wall*, 502 S.E.2d 585, 588 (N.C. 1998) (same); *Ex parte Rich*, 194 S.W.3d 508, 515 (Tex. Crim. App. 2006) (same); *State v. Mazzone*, 572 S.E.2d 891, 897 (W.Va. 2002) ("[A] plea agreement which cannot be fulfilled based upon legal impossibility must be vacated in its entirety.").

determinations. *See Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (citing *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009); *Eisenberg v. Standard Ins. Co.*, No. 09-80199, 2009 WL 1809994, at *3 (S.D. Fla. June 25, 2009)). But that is precisely what Petitioners seek here. Accordingly, Petitioners fail to allege a basis on which declaratory relief would be appropriate.

## C. Petitioners' request for injunctive relief

Next, Petitioners ask this Court to:

- order the government to issue a letter of apology, Doc. 458 at 5, 22–23;

- enjoin the government to make its "best efforts" to protect the victims' rights and confer with the victims and give them accurate and timely notice of future cases, *id.* at 5, 21;

- order DOJ to provide training to the USAO-SDFL, *id.* at 6, 29;

- order the government to meet with the victims, confer about the case, and explain why it chose not to prosecute Epstein, *id.* at 5, 23;

- hold a hearing where victims can be heard, *id.* at 5, 23–24; and

- order that the government provide all information in its possession; provide all grand jury materials; provide any information regarding FBI Miami's investigation, including un-redacted 302s; provide all sealed materials previously submitted for in camera review; and provide all materials covered by its previously filed motions, *id.* at 5–6, 24–29.

As a threshold matter, Petitioners do not have standing to seek injunctive relief. As the Supreme Court held in *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983), "federal courts are without jurisdiction to entertain" claims for

injunctive relief where a defendant points only to "past exposure to illegal conduct," and does not show "a continuing, present adverse effect." But even if Petitioners had standing to bring their request for injunctive relief, each request fails.

With respect to Petitioners' request for a letter of apology, such a remedy is not cognizable. In *Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002), the Sixth Circuit held that the district court exceeded its equitable powers when it ordered a party to apologize. In so holding, the court cited the Ninth Circuit, which has recognized that courts "are not commissioned to run around getting apologies," and reasoned that the law is not usually concerned with procuring apologies to make morally right a legal wrong done to the plaintiff. *Id.* (quoting *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974)). And certainly, a court may not order a defendant to speak in a manner that may contravene the beliefs the defendant holds. *See id.*; *see also Burkes v. Tranquilli*, No. 08-474, 2008 WL 2682606, at *4 (W.D. Pa. 2008) (citing *Woodruff*, 29 F. App'x at 346) ("Here, the district court exceeded its equitable power when it ordered [defendant] to apologize.").

Petitioners' request that this Court order the government to use its "best efforts" to comply with the CVRA and "confer" with the victims pursuant to the CVRA asks the Court to order the government to follow the law.[17] Such "obey-the-law" injunctions are "disfavored because they often run afoul of Rule 65(d)'s

---

[17] Petitioners' request that the Court enjoin the government to confer with Jane Doe 1 and 2 is particularly unnecessary and unjustified in light of the government's standing invitation for them to do precisely that. *See* Exhibit 1.

requirement that injunctions state their terms specifically and 'describe in reasonable detail' the 'act or acts restrained or required.'" *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1361 (11th Cir. 2019) (quoting Fed. R. Civ. P. 65(d)). Obey-the-law injunctions are proper only when the "statutory terms are specific and the defendant clearly knows what conduct is prohibited or required." *Id.* at 1362 (citing *SEC v. v. Goble*, 682 F.3d 934, 950 (11th Cir. 2012)). Accordingly, such injunctions are permissible if they require parties to follow statutory terms with "specific, objective criteria for compliance," *Goble*, 682 F.3d at 951, or specify "numerous concrete actions for the defendants to take . . . well beyond" what the law requires, *Askins & Miller Orthopaedics*, 924 F.3d at 1362. Obey-the-law injunctions concerning statutes lacking specific terms, or that require consultation with an "ever-changing judicial landscape" to interpret, do not inform the defendant of what conduct is forbidden under Rule 65(d). *Goble*, 682 F.3d at 951–52 (noting that "in some instances an injunction which merely tracks the language of the securities statutes and regulations will not clearly and specifically describe permissible and impermissible conduct"). Here, a statute requiring the government to make its "best efforts" to protect victims, 18 U.S.C. § 3771(c)(1), plainly does not provide "specific, objective criteria for compliance," *Goble*, 682 F.3d at 951. The requested obey-the-law injunction is thus both unwarranted and in violation of Rule 65(d).

So too would any order requiring the government to conduct training. The CVRA itself mandates that DOJ regulations "require a course of training for employees . . . of the Department of Justice that fail to comply" with victim

24

protections under federal law. 18 U.S.C. § 3771(f)(2)(B). DOJ regulations do so. 28
C.F.R. § 45.10(d). There is no need to require the government to do what it has
already undertaken to do, and prescribing the specific content or duration of
such training would contravene the constitutional doctrine of separation of
powers. Still, the government recognizes that training is always beneficial and
offers to do so, as explained above.

Next, Petitioners seek to meet with the government, attend a hearing, and
review all government documents as a way of putting themselves in the position
they would have been in had the government conferred with them before
entering into the NPA. *See* Doc. 458 at 23 (explaining that "[a] chance to discuss
this matter with Mr. Acosta to get answers about that and other related questions
will, Jane Doe 1 and 2 believe, provide the kind of information that they would
have received had the U.S. Attorney's Office properly conferred in a timely
fashion back in 2007"); *id.* at 24-25 ("If the Government had properly conferred
with the two Jane Does . . . [t]hese events would have provided Jane Doe 1 and 2
with much more information about Epstein's criminal conspiracy and its scope
and operation," and "[s]ince one of the harms that flows from that illegality is the
loss of any chance to obtain information, the obvious remedy is to disclose that
information"). But the problem with Petitioners' requests is that they, if granted,
would place Petitioners in an entirely different position than the CVRA allows.
The law does not countenance such a result. *See Feldkamp v. Long Bay Partners,
LLC*, 773 F. Supp. 2d 1273, 1285 (M.D. Fla. 2011) (holding that an injured party

25

shall not be placed in a position "better than that which he would have occupied had the contract been performed").

To begin, while the CVRA grants victims the right to "confer" with the government, this means only that, and not necessarily that the government is required to explain the "next steps" it intends to make or to share confidential information, including grand jury materials or sensitive information from other witnesses. Petitioners' request would intrude on the government's exercise of prosecutorial discretion, which is expressly prohibited by the CVRA. 18 U.S.C. § 3771(d)(6). Moreover, such an order would violate, or fall perilously close to violating, the separation-of-powers doctrine undergirding our democracy. It is axiomatic that "federal district courts cannot order a United States Attorney to conduct an investigation or to initiate a prosecution because it would violate the doctrine of separation of powers." *O'Connor v. Nevada*, 507 F. Supp. 546, 549 (D. Nev. 1981) (citing *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) ("[T]he attorney for the United States is . . . an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case . . . and courts are not to interfere with the free exercise of the discretionary powers of the [United States attorneys] in their control over criminal prosecutions."). The decision whether to prosecute Epstein lies solely within the Executive Branch, and any order today, by this Court, as to what the government must do in the future would be wholly inappropriate.

Nor does it mean that the government must give victims the discovery in the criminal case. As one court has explained, the CVRA does "not authorize an unbridled gallop to any and all information in the government's files." *United States v. Rubin*, 558 F. Supp. 2d 411, 425 (E.D.N.Y. 2008); *see also United States v. Moussaoui*, 483 F.3d 220, 235 (4th Cir. 2007) (noting that CVRA did not empower district court in a civil matter to order disclosure of documents to victims); *United States* v. *Hunter*, 548 F.3d 1308, 1317 (10th Cir. 2008) (holding "that the CVRA does not provide 'victims' with a right of access to the government's files"); *cf. In re Siler*, 571 F.3d 604, 609 (6th Cir. 2009) (holding that "the CVRA does not provide an independent right to obtain PSRs"); *Kenna v. United States*, 453 F.3d 1136, 1137 (9th Cir. 2006) (affirming district court's rejection of victim's argument that the CVRA conferred a general right for crime victims to obtain disclosure of PSRs). The CVRA provides victims with rights associated with the defendant's trial, such as notice of proceedings against the defendant, the right to be heard at a proceeding, and the right to confer with the government's attorney, but is silent as to documents offered during the trial. *See In re Siler*, 571 F.3d at 609–10.

Petitioners' argument that they are entitled to grand jury records similarly fails. The traditional rule of grand jury secrecy may be set aside under certain circumstances prescribed by Federal Rule of Criminal Procedure 6(e). The Supreme Court has explained that a party seeking disclosure of grand jury materials must make a showing of a "particularized need." *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004) (citing *Douglas Oil Co. v. Petrol*

*Stops Northwest*, 441 U.S. 211, 222 (1979)). For the reasons previously found by the Court, Petitioners have not, and cannot, make such a showing. Doc. 330 at 7–10.

In addition, the law enforcement investigative privilege protects the documents Petitioners seek. The purpose of this privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of New York,* 856 F.2d 481, 482 (2nd Cir. 1988) (citations omitted). Disclosure to third parties of the interview reports of the young women sexually abused by Epstein could cause their identities to become widely known and result in their harm or embarrassment. The disclosure of information contained in the FBI investigative file to third parties could cause additional psychological trauma, disruption of family relationships or professional careers, and possible public release of personal information.[18]

The law enforcement investigative privilege is recognized under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, which specifically exempts from

---

[18] Disclosure of information from the FBI file would also reveal sensitive FBI investigative and operational methods, procedures, and techniques. Information contained within an FBI investigative file, if revealed, might compromise the effective use of such methods in future cases. The FBI's investigative tools must remain confidential so that law enforcement can retain an element of surprise and prevent the use of countermeasures by targets and suspects to thwart effective law enforcement.

disclosure "records of information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy" or "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . . " 5 U.S.C. § 552(b)(7)(C) and (E). Certainly Congress did not contemplate granting victims an end-run around the FOIA disclosure exemptions when it drafted the CVRA.

### D. Petitioners' request for monetary damages

Finally, Petitioners assert that they are entitled to "monetary sanctions," attorneys' fees, and restitution. As explained above, however, the CVRA explicitly prohibits a cause of action for damages against the United States arising from any violation of the CVRA. 18 U.S.C. § 3771(d)(6). Attempting to recast a claim for damages as monetary "sanctions" does not make it any less an impermissible claim for damages.

Regarding restitution, Petitioners are entitled under the CVRA to "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). Congress modified a crime victim's entitlement to restitution by restricting it to only those circumstances  "provided in law," thus recognizing that there would be numerous situations when it would be impossible for a victim to receive restitution. *See In re W.R. Huff*, 409 F.3d 555, 563 (2d Cir. 2005). The statute under which Petitioners urge this Court to award restitution does not make the *government* liable for restitution for harms caused by others. Calling something "restitution" does not make it so. In reality, Petitioners seek money damages from the government, and this they cannot do.

With respect to attorneys' fees, the doctrine of sovereign immunity bars an award of attorneys' fees against the United States unless there is express statutory authorization for such an award. *Joe v. United States*, 772 F.2d 1535, 1536 (11th Cir. 1985). Waivers of sovereign immunity are to be strictly construed in favor of the sovereign. *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 590 (1941)). The CVRA does not provide for attorneys' fees against the United States, and thus Petitioners' argument that they are entitled to attorneys' fees must be rejected.

## CONCLUSION

Regardless of what the CVRA required the government to do in this matter, the victims are right to expect better from their Justice Department. The government's commitment in the decade since this action was filed to combat human trafficking and child exploitation and protect victims of such offenses underscores that its conduct in this matter, no matter how well-intentioned, fell short of the government's dedication to serve victims to the best of its ability. While the Court cannot unwind the past, the remedies proposed by the government would give the victims a meaningful opportunity to have their voices heard and to understand, if not accept, the decisions made in this matter. Petitioners' requested remedies, on the other hand, run afoul of the remedial scheme contemplated by the CVRA, are contrary to law, and may cause unintended harm to the victims whose interests are also protected by the CVRA.

For the foregoing reasons, the Court should endorse the government's proposed remedies.

Respectfully submitted,

BYUNG J. PAK
    *United States Attorney*

/s/JILL E. STEINBERG
    *Special Attorney*
    Georgia Bar No. 502042
    Jill.Steinberg@usdoj.gov

/s/NATHAN P. KITCHENS
    *Special Attorney*
    Georgia Bar No. 263930
    Nathan.Kitchens@usdoj.gov

**Certificate of Service**

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

June 24, 2019

/s/ Nathan P. Kitchens
_____

Nathan P. Kitchens

*Special Attorney*