# Alex Acosta acted with professionalism and integrity in handling the Jeffrey Epstein case

**BY JEFFREY H. SLOMAN**

FEBRUARY 15, 2019 12:02 PM, UPDATED FEBRUARY 16, 2019 11:28 AM

By now, you have probably formed some views on the Jeffrey Epstein case. You are, like me, repulsed by Epstein's conduct. You probably also believe, as I do now that more facts have emerged, that Epstein deserved harsher punishment than he ended up getting. No one will argue seriously against these views.

But based on the Miami Herald's "Perversion of Justice" series and the ensuing news coverage, you may also believe that well-connected lawyers corrupted now-Secretary of Labor and then-U.S. Attorney Alex Acosta and his team into giving Epstein a sweetheart deal. They did not. I would know. I was there.

In the late 2000s, I worked as Alex's second-in-command at the U.S. Attorney's Office for the Southern District of Florida. The Epstein case came to our attention in 2006. The local authority with primary jurisdiction to hold Epstein accountable for his crimes, the Palm Beach County State Attorney's Office, was going to allow him to plead guilty to a misdemeanor and merely pay a fine. The local police rightly were outraged and brought the facts to us.

After reviewing the case, we were appalled. Stunningly, the local prosecutors' resolution had not even acknowledged that Epstein engaged in abhorrent sex acts with scores of children. Despite our shock, we approached this case as federal prosecutors should approach every case: with a steadfast commitment to truth and a deep and abiding respect for the rights that our constitution and our laws afford to both victims and the accused. Our priorities were to make sure Epstein could not hurt anyone else and to compensate Epstein's victims without retraumatizing them.

Our team worked diligently to build a federal case against Epstein. Throughout the investigation, we took care to be respectful of the pain Epstein's victims had endured. As we continued, however, it became clear that most of Epstein's victims

https://www.miamiherald.com/opinion/op-ed/article226331175.html

were terrified to cooperate against him. Some hired lawyers to avoid appearing before a grand jury. One of the key witnesses moved to Australia and refused to return calls from us. We also researched and discussed significant legal impediments to prosecuting what was, at heart, a local sex abuse case.

Given the obstacles we faced in fashioning a robust federal prosecution, we decided to negotiate a resolution. The only way a resolution could ever be palatable, though, was if we met our two objectives: to protect others from Epstein and to compensate Epstein's victims without subjecting them to additional trauma.

To those ends, we demanded that Epstein: (1) plead guilty to a felony in state court that reflected his true conduct; (2) agree to incarceration for up to 18 months; (3) register as a sex offender; and (4) pay each known victim between $150,000 and $250,000 through a streamlined mechanism designed to avoid revictimization. We genuinely felt that these conditions met our two objectives. We told Epstein that unless he and the local authorities accepted our demands, we would indict and try him on federal charges. They agreed, and we did not pursue a federal case.

Many feel that this was not a harsh enough punishment. Make no mistake: I know that our resolution was not perfect, and that Epstein was able to use the resources at his disposal to exploit its weaknesses.

That said, some have mistakenly suggested that our office kowtowed to Epstein's high-priced defense lawyers or, worse, that his lawyers intimidated us into submission. The Herald's "Perversion of Justice" series made a strong case that he should have gone to jail for much longer, but never explained or substantiated its accusation that we schemed with Epstein's lawyers to avoid that result.

The team that worked the case was clear-eyed and dedicated. I have not reviewed the case file in more than 12 years, but I know in my heart that we based our actions solely on our independent interpretation of the facts and the law. You can disagree with the result we reached, but our whole team — from Alex on down the chain of command — always acted with integrity and in good faith.

I feel a special obligation to defend Alex from the unfair criticism he has received after the Herald published "Perversion of Justice." There was no public outcry for Alex to withdraw his candidacy for Secretary of Labor when, a month before his

https://www.miamiherald.com/opinion/op-ed/article226331175.html

Senate confirmation hearing, the Herald featured an earlier article about the Epstein case. To the contrary, senators barely gave Alex the opportunity to discuss the case during his testimony and went on to confirm him by a relatively wide margin.

Now, with the Herald's series serving as kindling, an outstanding public servant is at risk of becoming collateral damage in Washington's latest polarized conflagration. I won't let that happen without first being heard.

I am a lifelong Democrat. My personal political views do not align with Alex's views and I did not vote for the president for whom Alex now serves as secretary of Labor. But I know the leader and the person that Alex is. He is an honorable and decent man. Nothing about the Epstein case changes my view of his character. I hope that our leaders take my experiences into account as his stellar career and reputation hang in the balance.

*Jeffrey H. Sloman was first assistant U.S. attorney from 2006-2009 and U.S. attorney from 2009-2010.*

https://www.miamiherald.com/opinion/op-ed/article226331175.html