UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-Civ-Marra/Johnson

JANE DOE #1 and JANE DOE #2

      v.

UNITED STATES

_____/

**JANE DOE 1 AND JANE DOE 2'S REPLY TO THE GOVERNMENT IN SUPPORT OF**
**THEIR SUBMISSION ON PROPOSED REMEDIES**

Bradley J. Edwards
Edwards Pottinger LP
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (800) 400-1098
E-Mail: brad@epllc.com

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah[*]
383 S. University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
E-Mail: cassellp@law.utah.edu

John Scarola
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Telephone: (561) 686-6300

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

JANE DOE 1 AND 2'S REQUESTED REMEDIES ....................................................... 4

DISCUSSION .................................................................................................... 4

I.   THE CVRA AUTHORIZES ALL THE REMEDIES THAT JANE DOE 1 AND 2 SEEK.. 4

   A.   This Court Has Previously Rejected the Government's Arguments that the  Judiciary Lacks the Power to Enforce the CVRA. .......................................................... 5

   B.   The CVRA Requires the Court to Order Appropriate Remedies for any Violation of CVRA Rights. ......................................................................................... 6

   C.   The Court Should Release to Jane Doe 1 and 2 Documents Regarding the Deliberateness of the Government's CVRA Violations. ................................. 10

   D.   As Part of Crafting Its Remedies, the Court Should Enter Findings that the Government Violated Jane Doe 1 and 2's Right to be Treated with Fairness and to Reasonable Notice of Court Hearings. ............................................................................ 11

II.   THE VICTIMS ARE ENTITLED TO MULTIPLE REMEDIES FOR THE GOVERNMENT'S DELIBERATE CVRA VIOLATIONS. ............................................... 12

   A.   Remedy 1 - To Protect Their CVRA Right to Reasonably Confer, Jane Doe 1  and 2 Are Entitled to Have the Immunity Provisions in the Non-Prosecution  Agreement Applicable to Them Rescinded and Declared Null and Void. ...................... 12

      1.   The Court Is Statutorily Required to Award a Partial Rescission Remedy to Jane Doe 1 and Jane Doe 2 Because of Its Statutory Obligation Under 18 U.S.C. § 3771(b)(1) to Enforce the CVRA. ......................................................................... 14

      2.   A Partial Rescission Remedy Would Not Harm Other Epstein Victims.................... 16

      3.   Rescission of the Illegal Immunity Provisions Blocking Prosecution of Epstein's Federal Crimes Against Jane Doe 1 and Jane Doe 2 Is Consistent with, and Indeed Required by, Contract Law.................................................................... 19

      4.   Partial Rescission Would Further the CVRA's Goals............................................. 25

      5.   The Court Should Enter an Order Rescinding the NPA's Immunity Provisions for Epstein's Crimes Against Jane Doe 1, Jane Doe 2, and Any Other Victims Who Request Rescission. .......................................................................... 26

      6.   If Partial Rescission of the NPA is Impossible, Then the Court Must Award the Remedy of Total Rescission. ................................................................... 27

      7.   Yesterday's New York Indictment Provides No Basis for Denying Jane Doe 1 and 2 an Opportunity to Seek a Prosecution in this District. ............................... 33

i

B.      Remedy 2 - Jane Doe 1 and Jane Doe 2 Are Also Entitled to  Declaratory Relief to Protect Their CVRA Right to Confer...........................................................35

C.      Remedies 3 and 4 - Jane Doe 1 and Jane Doe 2 Are Also Entitled to  Injunctive Relief to Protect Their CVRA Right to Confer...........................................................38

D.      Jane Doe 1 and Jane Doe 2 Are Entitled to Various Other Forms of Relief. ................39

    1.      Remedies 5, 6, and 6 - An Apology, a Meeting with the Former U.S. Attorney,   and a Court Hearing. ...........................................................40

    2.      Remedies 8, 9, 10, 11, 12, and 13 - Disclosing Information to the Victims..............46

    3.      Remedy 14 - Educational Remedies. .......................................56

    4.      Remedies 15, 16, and 17 - Miscellaneous Remedies..................................56

    5.      Remedy 18 - Sealed Remedies. .............................................63

    6.      Remedy 19 - All Other Just and Proper Remedies. ..................................64

III.    THE GOVERNMENT HAS WAIVED ANY ESTOPPEL ARGUMENT.......................64

IV.     THE COURT SHOULD EXPEDITE A RULING ON REMEDIES. .............................65

V.      REQUEST FOR A HEARING (IF NECESSARY). ...........................................65

CONCLUSION.....................................................................66

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-Civ-Marra/Johnson

JANE DOE #1 and JANE DOE #2

      v.

UNITED STATES
_____/

**JANE DOE 1 AND JANE DOE 2'S REPLY TO THE GOVERNMENT IN SUPPORT OF THEIR SUBMISSION ON PROPOSED REMEDIES**

COME NOW Jane Doe 1 and Jane Doe 2 (also referred to as "the victims"), by and through undersigned counsel, having previously provided a submission on proposed remedies (DE 458) and in light of the Government's response (DE 462), to now reply to the Government and in support of their submission on proposed remedies.  For the reasons explained in their earlier submission and below, the Court should reject the Government's arguments and grant Jane Doe 1 and Jane Doe 2 various remedies to enforce and protect their rights under the Crime Victims' Rights Act (CVRA) – including rescission of the non-prosecution agreement.[1]

**INTRODUCTION**

As Jane Doe 1 and 2 explained in their initial submission, this case involves deliberate Government deception of dozens of victims of an international sex trafficking organization.  The deception – at the behest of a wealthy and politically-connected defendant, Jeffrey Epstein – has led to national outcry about unfairness and unequal treatment in the criminal justice system.

_____

[1] At 11:59 p.m. yesterday, intervenor Jeffrey Epstein also filed his memorandum on remedy issues.  DE 463.  Pursuant to the Court's scheduling order, DE 454, Jane Doe 1 and 2 will respond to his memorandum within 15 days.

1

In response, the Government[2] acknowledges that its concealment of its non-prosecution agreement (NPA) with Epstein has "led some to conclude that the government chose for improper reasons not to prosecute Epstein" in the Southern District of Florida in 2007.  Gov't Response to Petitioners' Submission on Proposed Remedies (hereinafter cited as "Gov't Remedies Resp."), DE 462 at 4.   Rather than denying improper reasons, however, the Government will only meekly venture that this "conclusion . . . remains unsubstantiated." *Id.*

And questions about this failure to prosecute Epstein here have only escalated, with yesterday's announcement of a substantial indictment against him on federal sex trafficking charges obtained by the U.S. Attorney's Office for the Southern District of New York.[3]  That powerful indictment – covering the same years as was involved in the NPA – demonstrates clearly that the U.S. Attorney's Office for the Southern District of Florida (USAO-SDFL) could have filed serious criminal charges against Epstein and his co-conspirators in Florida more than a decade ago.  Indeed, while yesterday's indictment specifically references three victims, the USAO-SDFL had information of the same kinds of crimes committed by Epstein and his coconspirators in Florida involving three *dozen* victims.  And yet, that Office filed no charges in this district.

More recently, through its briefing in this case, that Office refuses to even take the simple step of apologizing for its inaction.  And that Office also strenuously resists Jane Doe 1 and 2's efforts to obtain more information that might "substantiate" the conclusion that (unlike the federal prosecutors in New York) the USAO-SDFL improperly extended favors to a powerful defendant

---

[2]  References to the "Government" in this case should be generally understood to refer to the U.S. Attorney's Office for the Southern District of Florida, which is currently being represented by the U.S. Attorney's Office for the Northern District of Georgia.

[3]  Jane Doe 1 and 2 did not review that indictment before its filing and look forward to conferring with the capable prosecutors in New York about that case in the future.

and his well-connected coconspirators that it would never have granted to others who lacked such influence. Indeed, that Office ultimately stakes out the extreme position that this Court lacks *any* power to respond to what is surely the most serious violation of the CVRA since its enactment.

Given these extremely disturbing and proven CVRA violations, this Court is empowered to respond – and should respond – with remedies that match the scope, depth, and deliberateness of the violations. To be sure, Jane Doe 1 and 2 very much appreciate the laudable efforts of the diligent prosecutors in New York. But those New York charges, important though they are, still leave Epstein's crimes in Florida uncharged and all of his co-conspirators at large. This Court has already observed that Jane Doe 1 and 2 "have alleged a violation of their CVRA conferral rights against a federal prosecutorial authority which formally accepted the case against Epstein for prosecution [i.e., the USAO-SDFL]. Whether conferral rights do or do not exist with prosecutorial authorities in some other jurisdiction does not detract from the ripeness of this claim against a local federal prosecutorial authority [in Florida] which did actively investigate potential charges against Epstein in this district and formally resolved those charges with the challenged non-prosecution agreement . . . ." DE 189 at 13-14.

Jane Doe 1 and 2 seek to confer with prosecutors in this district about obtaining federal prosecution *here* – against Epstein and all his coconspirators. Federal prosecutors in Florida cannot outsource their obligations to see justice done for victims in this district. Epstein's Florida victims deserve full justice in Florida. Indeed, trial of Florida crimes in Florida has constitutional underpinnings. Accordingly, the Court should rescind the "immunity" provisions in the NPA blocking federal prosecution of Epstein and his coconspirators in the Southern District of Florida and also award Jane Doe 1 and 2 all the other remedies that they seek.

## JANE DOE 1 AND 2'S REQUESTED REMEDIES

To avoid any confusion – and to simplify the tasks of the Government in responding and the Court in ruling – Jane Doe 1 and 2 provided an itemized list of 19 requested remedies. *See* Jane Doe 1 and Jane Doe 2's Submission on Proposed Remedies (hereinafter cited as "Jane Does' Remedies Submission"), DE 458 at 4-7. In its response, however, the Government often chose not to specifically respond to the itemized list. For clarity, the victims will continue to refer its requested remedies by number, and the Court should summarily grant any requested remedy to which the Government has failed to specifically object.

## DISCUSSION

## I.    THE CVRA AUTHORIZES ALL THE REMEDIES THAT JANE DOE 1 AND 2 SEEK.

The Government's response to Jane Doe 1 and 2's requested remedies begins with a carefully hedged statement acknowledging that the Government "should have communicated with the victims [about the Jeffrey Epstein NPA] in a straightforward and transparent way." Gov't Remedies Resp. at 2. But then the Government quickly turns to irrelevant information about *other* sex trafficking prosecutions (Gov't Remedies Resp. at 4-7) – which begs the question as to why the serious federal sex trafficking crimes committed by Epstein and his coconspirators against dozens of minor victims in Florida were not prosecuted here more than a decade ago.

But for present purposes of determining an appropriate remedy for the Government's proven CVRA violations, it is necessary to respond only to the Government's next – and extraordinary – claim that this Court lacks any power to award any remedy. Gov't Remedies Resp. at 7-11. The Government's remarkable argument must be rejected for two reasons: First, this

4

Court rejected the same argument six years ago; and, second and unsurprisingly, the CVRA gives this Court power to respond to CVRA violations to protect the rights of crime victims.

> **A.      This Court Has Previously Rejected the Government's Arguments that the Judiciary Lacks the Power to Enforce the CVRA.**

The Government begins its response to Jane Doe 1 and 2's requested remedies by claiming that the CVRA does not authorize any equitable or similar remedies, such as rescission of provisions in the Epstein NPA. Gov't Remedies Resp. at 7-11. If this argument sounds eerily familiar to this Court, it is because the Government raised the very same argument six years ago. *See* DE 205-6 (arguing that "because the CVRA does not provide for civil remedies, petitioners cannot obtain redress for claimed CVRA injuries through their requests for civil remedies"). And the Court will no doubt recall that, after extensive briefing, it *rejected* the Government's argument in a thorough published opinion. *See Jane Does v. United States*, 950 F.Supp.2d 1262 (S.D. Fla. 2013). In doing so, this Court specifically discussed one important remedy – setting aside Epstein's non-prosecution agreement. This Court explained that "[w]here the statute expressly contemplates that a 'plea' may be set aside if entered in violation of CVRA conferral rights, it necessarily contemplates that a 'non-prosecution' agreement may be set aside if entered in violation of the government's conferral obligations." 950 F.Supp.2d at 1268. The Court went on to conclude that the CVRA empowered it to enter this remedy: "[I]n their petition and supplemental pleadings, Jane Doe 1 and 2 have identified a remedy which is likely to redress the injury complained of—the setting aside of the non-prosecution agreement as a prelude to the full unfettered exercise of their conferral rights at a time that will enable the victims to exercise those rights meaningfully." *Id.*

5

The Court further rejected the Government's position that Jane Doe 1 and 2 somehow lacked "standing" to seek remedies in this case.  This Court explained that "[i]t is apparent, through the passage of the CVRA, that Congress has enacted a statute expressly conferring certain legal rights upon 'crime victims,' the invasion of which creates standing to seek relief under the CVRA, even though no cognizable injury would exist without the statute."  *Id.* at 1269.

In light of this "law of the case," the Court should summarily reject the Government's attempt to relitigate matters previously decided.  As this Court previously ruled, the judiciary possesses the power to remedy proven CVRA violations.

### B.    The CVRA Requires the Court to Order Appropriate Remedies for any Violation of CVRA Rights.

While the Court need look no further than its earlier ruling to reject the Government's remarkable position, for sake of completeness Jane Doe 1 and 2 will respond to the Government's recycled claim that the judiciary lacks power to enforce the CVRA.  To begin with the bottom line: The Government asks this Court to render the CVRA meaningless, creating nothing but illusory rights for crime victims.  In the Government's view, the only "enforcement" the CVRA authorizes is apparently through the Justice Department's own internal "ombudsman" procedure.  Gov't Remedies Resp. at 8-9.

If the Government is serious about this position, one wonders why after more than eleven years of litigation the Government has never previously suggested to Jane Doe 1 and 2 that they must use the ombudsman complaint procedure.  In any event, this procedure does not address the issues in this case – specifically, how to enforce the CVRA rights of Jane Doe 1 and 2 (and other Epstein victims) and to correct the violations of their rights that the Court has found have already occurred.  The Justice Department's own website makes clear that "[t]he [ombudsman] complaint

6

process is *not designed for the correction of specific victims' rights violations*, but is instead used to request corrective or disciplinary action against Department of Justice employees who may have failed to provide rights to crime victims." *See* https://www.justice.gov/usao/resources/crime-victims-rights-ombudsman (emphasis added).

Given that the Department admits that the ombudsman procedure is "not designed for the correction of specific victims' rights violations," adopting the Government's position would render the CVRA entirely unenforceable – stripping the judiciary of any power to protect crime victims' rights. Such an interpretation would ignore the CVRA's plain language, which mandates that "the court *shall ensure* that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added). Indeed, the CVRA specifically requires courts to "*take up and decide* any motion asserting a victim's right forthwith." 18 U.S.C. § 3771(d)(3) (emphasis added). And contrary to the Government's position that the Justice Department itself is to be some sort of final arbiter of CVRA issues, the CVRA itself provides for judicial review of district court enforcement decisions by the Court of Appeals. *See* 18 U.S.C. § 3771(d)(3) ("If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus.").

This Court has previously discussed the CVRA's judicial enforcement procedures. Rejecting the Government's position that no CVRA enforcement was possible until criminal charges were formally filed, this Court explained that 18 U.S.C. § 3771(d)(3) provides that "the CVRA's enumerated rights 'shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway*, in the district court in the district in which the crime occurred.'" *Does v. United States*, 817 F. Supp. 2d 1337, 1342 (S.D. Fla. 2011) (*quoting* 18 U.S.C. § 377(d)(3) (emphasis deleted)). Accordingly, this Court held that the CVRA's

language allows CVRA's rights to "be *enforced* before a prosecution is underway . . . ", *id.* (emphasis added) – i.e., to be "enforced" in this Court.

Effective judicial protection of crime victims' rights was very much on the mind of Congress when it enacted the CVRA.  Indeed, one of the Senate co-sponsors of the legislation (Senator Kyl) explained that the requirement that courts "shall ensure" protection of victims' rights was "critical because *it is in the courts of this country that these rights will be asserted and it is the courts that will be responsible for enforcing them*."  150 CONG. REC. S10910-01 (Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added).  Perhaps anticipating arguments like those now being advanced by the Government, Senator Kyl explained that "[w]ithout the ability to enforce the rights in the criminal trial and appellate courts of this country any rights afforded are, at best, rhetoric. We are far past the point where lip service to victims' rights is acceptable. The enforcement provisions of this bill ensure that never again are victim's rights provided in word but not in reality."  *Id.* at S10910-01.

More broadly, federal courts must "presume the availability of all appropriate remedies [for a federal right of action] unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66 (1992).  To be sure, Congress did not authorize this Court to award every conceivable form of remedy for a CVRA violation.  As Jane Doe 1 and 2 explained in their initial remedies submission (Jane Does' Remedies Submission at 8-9), Congress added two specific limiting provisions in the CVRA – one precluding a "new trial" or "re-opening" a previously accepted guilty plea of a defendant (18 U.S.C. § 3771(d)(5)) and the other precluding an award of damages (18 U.S.C. § 3771(d)(6)).  But beyond these two narrow limitations, Congress left all other remedies available.  The Government does not respond to the

caselaw cited by Jane Doe 1 and 2 that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely" in its exclusion. *United States v. Vereen*, 920 F.3d 1300, 1307 (11th Cir. 2019) (*citing* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 107 (2012) ("The expression of one thing implies the exclusion of others (expression unius est exclusion alterius)"). And with regard to the remedial structure of statutes, the Eleventh Circuit has made clear that "the district court is presumed to have the authority to grant the requested relief, absent some indication in the underlying statute that such relief is not available." *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less,* 910 F.3d 1130, 1152 (11th Cir. 2018), *cert. denied*, 2019 WL 1116465 (U.S. 2019).   Thus, "'unless the underlying statute clearly and validly limits the equitable jurisdiction of the district court, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.'"   910 F.3d at 1152 (*quoting AT & T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1316 (11th Cir. 2004) (internal citation omitted)).

In a final effort to somehow tie this Court's hands, the Government tries to characterize the remedies that Jane Doe 1 and 2 seek as "civil remedies."  Gov't Remedies Resp. at 11.  To be sure, this case was initially docketed as a "civil" matter – but that was solely for administrative convenience.  *See Does v. United States*, 817 F. Supp. 2d 1337, 1341 n.4 (S.D. Fla. 2011).  The Government appears to concede that this case is properly described as a criminal case.  *See* Gov't Remedies Resp. at 11-12 (noting that the CVRA is found in the federal criminal code, Title 18).  Moreover, the Government never justifies labelling the victims' remedies as "civil."   Because all remedies are in service of enforcing rights in connection with "victims" of federal sex offenses

committed by Epstein, the label "criminal" is clearly more accurate – a point that Government has seemingly admitted earlier.  *See* DE 290 at 2 (Government description of this case as involving "ancillary criminal proceedings").  Regardless, a semantic issue provides no substantive reason for the Court to refuse to enforce the CVRA.  Congress directed this Court to "ensure" that crime victims receive their CVRA rights, and the only issue now before the Court is how best to do so.

### C.   The Court Should Release to Jane Doe 1 and 2 Documents Regarding the Deliberateness of the Government's CVRA Violations.

In granting summary judgment, this Court found (based on extensive documentary evidence) that the Government decided "to conceal the existence of the NPA and mislead the victims to believe that federal prosecution was still a possibility."  359 F.Supp.3d at 1219.  And this Court has also found that "Epstein's counsel was aware that the Office was *deliberately* keeping the NPA secret from the victims and, indeed, had sought assurances to that effect."  *Id.* at 1208 (*citing* DE 407 at ¶ 48 (emphasis added)).  In crafting its remedies, this Court should proceed on the basis that the CVRA violations were no accident but were "deliberate" – and sweeping remedies are thus appropriate in response.

This point would seem to be obvious given the Court's earlier findings.  But throughout its remedies submission, the Government attempts to undercut this Court's earlier rulings.  For example, in the conclusion of its submission, the Government sums things up by claiming that its actions were "well-intentioned" but merely "fell short of the government's dedication to serve victims to the best of its ability."  Gov't Remedies Resp. at 30.

The Court will recall that, in response to the victims' summary judgment motion, the Government previously proffered claims of benign intentions – while, at the same time, denying Jane Doe 1 and 2 access to information about the Government's deliberations.  Given the

10

representations about what occurred during its deliberations, the Government surely waived work product and other protections about what happened. *See generally* Jane Doe 1 and 2's Motion for Finding of Waiver of Work Product and Similar Protections and for Production of Documents, DE 414. This Court previously concluded that it did not need to reach the issue of waiver of privilege "[g]iven . . . the Court's . . . ruling in favor of [Jane Doe 1 and 2] on [the summary judgment motions]." 359 F.Supp.2d at 1213 n.3. But the Court specifically stated that Jane Doe 1 and 2 "may reassert this argument if and when appropriate." *Id.*

The appropriate time has now arrived for Jane Doe 1 and 2 to reassert their argument for waiver. Indeed, the waiver is now even clearer, given the Government's continued assertion of innocent motivations in its latest pleading. *See, e.g.,* Gov't Remedies Resp. at 30. To be sure, Jane Doe 1 and 2 believe that the Court can simply award them all their requested remedies without reaching this issue. But if, for any reason, that Court concludes that the existing evidence does not support granting Jane Doe 1 and 2 any requested remedy, the Court should at that time grant Jane Doe 1 and 2's motion for a finding of waiver of protections over the Government's documents and release to them all the documents requested in their motion advanced in DE 414 – thereby allowing Jane Doe 1 and 2 to develop their remedies argument based on a complete record.

> **D.** **As Part of Crafting Its Remedies, the Court Should Enter Findings that the Government Violated Jane Doe 1 and 2's Right to be Treated with Fairness and to Reasonable Notice of Court Hearings.**

In its summary judgment ruling, this Court previously held that the Government violated Jane Doe 1 and 2's right to confer, protected by 18 U.S.C. § 3771(a)(5). 359 F.Supp.3d at 1222. But as Jane Doe 1 and 2 observed in their initial remedies submission, they had also argued that the Government violated their rights to be treated with fairness (18 U.S.C. § 3771(a)(8)) and to

11

notice of public court proceedings (18 U.S.C. § 3771(a)(2)).  *See, e.g.,* DE 361 at 51- 53 (fairness right); *id.* at 54-55 (notification right).  Upon a finding from this Court that the Government violated these rights as well, additional remedial powers would exist.  Therefore, in their initial remedies submission, Jane Doe 1 and 2 asked for the Court to enter a finding that the Government has also violated these rights.  Jane Does' Remedies Submission at 33.  The Government has not responded to this request, and the Court should accordingly enter findings that the Government also violated these rights.

## II.    THE VICTIMS ARE ENTITLED TO MULTIPLE REMEDIES FOR THE GOVERNMENT'S DELIBERATE CVRA VIOLATIONS.

Jane Doe 1 and Jane Doe 2 are entitled to multiple remedies for the Government's deliberate violation of their CVRA rights, including the Government's actions in "misleading" them about the status of the case.  First, Jane Doe 1 and 2 are entitled to have the Court rescind the NPA's provisions blocking federal prosecution in Florida of Epstein and his named and unnamed coconspirators – either "partially" so as to permit prosecution of Epstein's crimes against Jane Doe 1 and 2 or "totally" so as to permit prosecution of Epstein's crimes against all his victims.  Second, in addition to voiding the immunity provisions in the agreement, Jane Doe 1 and 2 are entitled to a wide range of other legally available remedies.  Having listed 19 remedies in their earlier submission, Jane Doe 1 and 2 will now address each in turn.

### A.    Remedy 1 - To Protect Their CVRA Right to Reasonably Confer, Jane Doe 1 and 2 Are Entitled to Have the Immunity Provisions in the Non-Prosecution Agreement Applicable to Them Rescinded and Declared Null and Void.

The first remedy that Jane Doe 1 and Jane Doe 2 sought was rescission of the "immunity provisions" in the NPA blocking prosecution of Epstein in the Southern District of Florida.  *See*

Jane Does' Remedies Submission at 12-21 (remedy 1).[4]  The two Jane Does pointed out that this Court has previously held this remedy is available.  *See id.* at 13.  Specifically, this Court has previously held that "the CVRA authorizes the *rescission or 'reopening' of a prosecutorial agreement,* including a non-prosecution agreement, reached in violation of a prosecutor's conferral obligations under the statute." 359 F.Supp.3d at 1218 (emphasis added) (*quoting Jane Does 1 and 2 v. United States*, 950 F. Supp. 1262, 1267 (S.D. Fla. 2013)).  This Court has further held that "section 3771(d)(5) of the CVRA authorizes the setting aside of pre-charge prosecutorial agreements . . . ." *Id.* (*citing Jane Does 1 and 2 v. United States*, 950 F. Supp. 2d at 1267).

In response, the Government does not contest that this remedy is an option available to this Court.  *See* Gov't Remedies Resp. at 15 n.13 (maintaining the Government's earlier position that rescission is not an authorized CVRA remedy, but not contesting that rescission is now available in light of this Court's rulings).  Instead, the Government makes various policy arguments about why, in its view, such an outcome would be undesirable.  *See id.* at 15-21.  The Government's

---

[4]    The NPA negotiated by attorneys in the Southern District of Florida obviously only precludes prosecution in the Southern District of Florida.  *See* NPA at 2 (noting that the agreement was signed "on the authority of R. Alexander Acosta, United States Attorney for the Southern District of Florida" and requires that "prosecution *in this District* for [various federal offenses] shall be deferred" and that no federal prosecution of Epstein "will be instituted in *this District*").  Accordingly, the NPA has no application to prosecutors in other judicial districts, such as the Southern District of New York.  Indeed, this point has been made explicitly and directly for years throughout this litigation – without any objection from Epstein.  *See, e.g.,* DE 205-6 at 30 (". . . the USAO-SDFL did not bargain away the possibility of federal criminal charges being instituted in other districts based on alleged sexual acts that Epstein committed against [Jane Doe 1 and 2]. Such charges can still potentially be pursued in other districts, such as the Southern District of New York . . . ."); DE 205-2 at 8-9 ("a number of districts outside the Southern District of Florida (*e.g.,* the Southern District of New York . . .) share jurisdiction and venue with the Southern District of Florida over potential federal criminal charges based on the alleged sexual acts committed by Epstein against [Jane Doe 1 and 2].  Epstein is thus subject to potential prosecution for such acts in those districts.").

assessment of the competing concerns is erroneous, and, in any case, the CVRA requires this Court to award to Jane Doe 1 and Jane Doe 2 the remedy to which they are entitled.

In the discussion below, we focus initially on what can be described as a "partial" rescission remedy – i.e., rescinding provisions in the NPA barring prosecution of Epstein for his sex crimes against Jane Doe 1 and 2 (and other similarly situated victims).  But if for any reason a "partial" rescission remedy is unavailable, then the Court should simply award total rescission – i.e., rescinding *all* provisions in the NPA barring prosecution of Epstein for his sex crimes against *any* victim.

> ### 1. The Court Is Statutorily Required to Award a Partial Rescission Remedy to Jane Doe 1 and Jane Doe 2 Because of Its Statutory Obligation Under 18 U.S.C. § 3771(b)(1) to Enforce the CVRA.

While we demonstrate below that the balance of competing concerns tips decisively in favor of awarding a rescission remedy, the more fundamental and threshold point is that this Court is not permitted to make a discretionary decision about whether it is inclined to enforce the CVRA. Congress has already made that choice and has directed that this Court must enforce the CVRA – in this case, through a rescission remedy that would permit Epstein's prosecution for his federal sex trafficking crimes committed in the Southern District of Florida.

As Jane Doe 1 and 2 have argued throughout this case – including in their most recent filing (Jane Does' Remedies Submission at 8,15) – the CVRA contains an explicit enforcement provision requiring this Court to act.  The CVRA specifically directs that "[i]n any court proceeding involving an offense against a crime victim, the court *shall ensure* that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added).  This Court has, of course, already held that the Government violated Jane Doe 1 and 2's right to confer

under the CVRA, thereby denying them (and other victims) an opportunity to shape the NPA that the Government and Epstein crafted.  This Court carefully explained that "[w]hile Epstein was within his rights to attempt to persuade higher authorities with the Department of Justice to overrule the prosecutorial decisions of the U.S. Attorney's Office in the Southern District of Florida, the CVRA was designed *to give victims the same opportunity to attempt to affect prosecutorial decisions before they became final*."  359 F.Supp.3d at 1221 (emphasis added).

Rescinding the NPA's immunity provisions is thus statutorily required as part of this Court's obligation that it "shall ensure" that victims are afforded their rights.  18 U.S.C. § 3771(b)(1). An order to that effect from this Court will give Jane Doe 1 and 2 an opportunity to exercise their right to confer and to attempt to "affect" the prosecutors' decision of whether to file federal charges for Epstein's sex crimes in Florida before that decision becomes "final."  It is only after rescission of the provisions that Jane Doe 1 and 2 will receive "the full unfettered exercise of their conferral rights at a time that will enable [them] to exercise those rights meaningfully."  DE 189 at 9 (*citing U.S. v. BP Products North America, Inc.*, 2008 WL 501321 at *14 (S.D. Tex. 2008)); *see also Kenna v. United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (when trial court denied victim his right to give statement at defendant's sentencing, the trial court must be "cognizant that the only way to give effect to [the victim's] right to speak . . . is to vacate the sentence and hold a new sentencing hearing").

Remarkably, while Jane Doe 1 and 2 specifically raised this argument about the Court's statutory *obligation* under 18 U.S.C. § 3771(b)(1) to rescind the immunity provisions several times in their briefing (*see, e.g.,* Jane Does' Remedies Submission at 8, 15), in its 31-page response the Government fails to even *cite* this provision – much less rebut the victims' explanation about why

15

this statute requires this Court to enter a rescission remedy. It is thus apparently uncontested that this Court must enter the rescission remedy. The Court should accordingly do so, without tarrying to evaluate the Government's policy-based arguments.

In addition, the Government's position assumes that there was a lawful and binding agreement after Epstein accepted the immunity offer. But the Government could not lawfully extend a valid offer until it had conferred with Epstein's victims. Accordingly, the Government attorneys were simply not authorized to propose immunity to Epstein when they did – and any alleged immunity agreement was invalid at its inception. The Eleventh Circuit has made clear that "to enforce a promise made during plea negotiations, there must have been a valid, binding agreement in the first instance . . . . For an agreement to be valid and binding, the agent must possess actual authority to make the promise . . . . Estoppel and apparent authority normally will not substitute for actual authority to bind the United States Government." *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996). Here, as Epstein's attorneys well knew, the Government was extending an offer that it could not legally make. For this reason as well, partial rescission (at a minimum) is required, because there never was a valid and binding agreement between the Government and Epstein contravening the CVRA's conferral requirement.

### 2.      A Partial Rescission Remedy Would Not Harm Other Epstein Victims.

While the Government does not address this Court's statutory obligation to award a rescission remedy, the Government does offer its opinion that "partial rescission would pose a significant risk of harm to certain victims." Gov't Remedies Resp. at 15. Interestingly, even assuming the validity of the Government's alleged tradeoff, the Government never asserts that this alleged "risk" to unspecified victims (who are not named parties to this case) somehow outweighs

16

the certainty of providing a statutorily required vindication of the CVRA rights of petitioners Jane Doe 1 and 2 (and other similarly situated victims). But in any event, on closer examination, the Government's argument turns out to be vaporous.

The Government's alleged "risk" to other victims purportedly stems from the fact that some victims "value[] anonymity above all [else] and [are] not willing to speak with law enforcement or otherwise participate in any criminal or civil ligation due to the risk that their involvement may become known to family, friends, or the public." Gov't Remedies Resp. at 16-17. But the Government never explains how the partial rescission remedy sought by Jane Doe 1 and Jane 2 will create a "risk" of disclosing the identity of these other victims. Jane Doe 1 and Jane Doe 2 merely ask for rescission of the immunity provisions precluding federal prosecution in Florida of *their* cases. They also ask for rescission of the immunity provisions applicable in the Southern District of Florida for other similarly situated and *willing* victims. If, for example, this Court rescinds the immunity provisions for Jane Does 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and any other *willing* victims, that action cannot harm (for instance) a "Jane Doe 35" who may not want her immunity provision rescinded.

More broadly, the Government's argument strangely assumes that, if the Court grants the rescission remedy for willing victims, the Government will invade the privacy of the Epstein victims who do not want their privacy invaded. In the example above, the Government's "risk" argument is only valid if the Government itself is going to invade Jane Doe 35's privacy.[5]  Here, with so many victims, it would be solely the Government choosing to trigger this alleged parade

---

[5] Because the Jane Does covered by the NPA all appear to have legal counsel, any direct contact with them by Epstein is barred as well.

of horribles.  The Government's argument thus boils down to a stop-us-before-we-do-something-bad claim that deserves no credence from the Court.   Indeed, it is remarkable that the USAO-SDFL would even advance this argument, given that their colleagues in the USAO-SDNY identified victims who appear to have been willing to proceed with federal prosecution – without creating the alleged problems that USAO-SDFL speculates would occur from filing charges.

In a seemingly unrelated argument, the Government also points to the decade of litigation that it took Jane Doe 1 and 2 to prove the violation of their CVRA rights.  Strangely, the Government offers this length of time as a reason for now *denying* them vindication of their rights. *See* Gov't Remedies Resp. at 17.  This is a perverse argument on its face.  The Government should not benefit from having first illegally concealed the NPA and then having thrown up litigation roadblocks delaying this case's resolution for years. As the Court has previously held, Jane Doe 1 and 2 and the other victims "should have been notified of the Government's intention to take that course of action [to resolve the case] before it bound itself under the NPA" (DE 435 at 27) – i.e., the victims should have been notified before September 24, 2007. *See* DE 435 at 8. Thus, from every day after September 24, 2007, it was the USAO-SDFL who (in concert with Epstein) was illegally concealing the NPA and violating that Office's statutory obligation to have conferred about the arrangement.  That Office cannot benefit from *its* illegal actions.

In connection with its delay, the Government points to the "initial indecision" on the part of legal counsel for Jane Doe 1 and Jane Doe 2 at an August 2008 hearing regarding the "legal consequences of the current agreement" and whether to seek invalidation.  *See* Gov't Remedies Resp. at 17 (citing subsequent court filings).  But what the Government fails to discuss is the reason for that indecision.  A key subject of that August 2008 hearing was victims' counsels' efforts to

18

secure a copy of the NPA.  Indeed, a result of that hearing was this Court's order requiring the USAO-SDFL to disclose the entire NPA to the victims.  *See* DE 26 at 1.  Yet remarkably, the Government – having misleadingly and illegally concealed the NPA from the victims before August 2008 – now seeks to benefit from the resulting "indecision" of victims'.  Obviously, it was prudent for legal counsel for Jane Doe 1 and 2 to see the entire agreement before asking for its invalidation.  And the Government does not deny that, soon after it produced the entire agreement to victims' counsel, victims counsel then sought to have the immunity provisions invalidated.

> **3.      Rescission of the Illegal Immunity Provisions Blocking Prosecution of Epstein's Federal Crimes Against Jane Doe 1 and Jane Doe 2 Is Consistent with, and Indeed Required by, Contract Law.**

The Government next claims that "fundamental tenets of contract" law somehow "bind the Government's hands in this case."  Gov't Remedies Resp. at 18. The first point that the Government overlooks is that the issue is no longer simply whether *it* can maintain the NPA in the form that it (and Epstein) may desire.  As explained in detail above, the question of enforcing the CVRA is now out of the Government's hands and before the Court – which has an obligation to vindicate not merely the interests of the Government and Epstein but also the CVRA rights of Jane Doe 1 and 2.

It is well established in this Court and elsewhere that "[p]ublic policy empowers this Court to decline enforcement of a contract" that is contrary to law.  *Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281, 1286 (S.D. Fla. 2002) (*citing United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 42 (1987)).  Thus, parties "may not enter a contract that is void as a matter of public policy."  *Neiman,* 217 F. Supp. 2d at 1286 (*citing King v. Allstate Ins. Co.,* 906 F.2d 1537, 1540 (11th Cir.1990)).  For example, this Court has held that under "Florida law, a

19

contract that violates public policy is void and unenforceable." *Neiman*, 217 F. Supp. 2d at 1286 (*citing Harris v. Gonzalez, M.D.,* 789 So.2d 405, 409 (Fla. 4th DCA 2001)).

The *Restatement of Contracts* helpfully sets out the basic tenets of contract law regarding the unenforceability of terms violating public policy.  The *Restatement* notes that "a promise or other term of an agreement is unenforceable on grounds of public policy if [1] legislation provides that it is unenforceable or [2] the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." RESTATEMENT (2D) OF CONTRACTS § 178(1).  Here, both rationales render the NPA's immunity provisions unenforceable. First, with regard to legislation rendering the provisions unenforceable, as explained above, the CVRA itself directs that this Court "shall ensure," 18 U.S.C. § 3771(b)(1), that Jane Doe 1 and Jane Doe 2 (and other victims) have a right to confer about whether to prosecute Epstein's federal crimes against them.  The CVRA itself thus mandates that the immunity provisions be declared unenforceable, to protect the victims' right to confer.  Second, the public policy embodied in the CVRA requires the immunity provisions be rendered unenforceable.  Congress enacted the CVRA because it found that in case after case "victims, and their families, were ignored, cast aside, and treated as non-participants in a critical event in their lives. They were kept in the dark by prosecutors too busy to care enough . . . and by a court system that simply did not have place for them." 150 CONG REC. 7296 (2004) (statement of Sen. Feinstein).   Against that background, it would obviously flout not only the CVRA's specific provisions but also its underlying goals to allow the Government and Epstein to benefit from keeping the victims "in the dark" through an illegal, secret deal designed to thwart the victims' rights opportunity to be heard.[6]

---

[6]  This case is not the first time that the USAO-SDFL has deliberately withheld relevant

Perhaps recognizing the futility of attempting to justify its illegal deal, the Government never attempts to argue that enforcing the immunity provisions could somehow be consistent with the CVRA. Instead, the Government raises the technical argument that Epstein had himself joined this illegality by specifically bargaining to secure the secret immunity provisions. In the Government's view, the immunity provisions thus formed part of the "consideration" for Epstein's agreement and therefore must be enforced. *See* Gov't Remedies Resp. at 18-20.

But once again, the Government ignores basic tenets of contract law. In considering which contract terms are enforceable, the Court must consider not simply the parties' expectations but more broadly the parties' "*justified* expectations." RESTATEMENT (SECOND) OF CONTRACTS § 178(2)(a) (emphasis added). Here, the Court has previously found that "Epstein's counsel was aware that the Office was *deliberately* keeping the NPA secret from the victims and, indeed, had sought assurances *to that effect*." 359 F.Supp.3d at 1208 (*citing* DE 407 at ¶ 48 (emphasis added)). Thus, this is not a case where the defendant bargained for one (lawful) thing and the Government did another. Instead, this is case where the defendant was the impetus behind the illegality, as Epstein himself specifically sought to achieve a covert, illegal agreement. While he initially succeeded in concealing what he and the Government had unlawfully done, the Court has now exposed what happened. Whatever else may be said about the NPA, Epstein certainly cannot have a *justified* expectation that the immunity arrangements he illegally secured from the Government

---

information in a sex offense case. *See* Order, *U.S. v. McDaniel*, Case No. 06-80058-CR-ZLOCH, DE 70 at 1-2 (S.D. Fla. 2007) ("The Court is at a total loss as to why the Office of the U.S. Attorney for the Southern District of Florida, as well as the Assistant U.S. Attorney assigned to the above-styled cause, found it appropriate to intentionally withhold the following information from the Court [recounting information about prior sex offenses by defendant McDaniel].").

must continue to be protected.  *Cf. Neiman*, 217 F. Supp. 2d at 1286 (refusing to enforce contract provision where doing so "would validate a . . . [provision] founded in illegality").

As discussed above, this conclusion is required by binding Eleventh Circuit case law.  The Eleventh Circuit has instructed that in order for any provision in a plea agreement to be enforceable, "there must have been a valid, binding agreement in the first instance . . . ."  *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).  And the Circuit has explained that "[f]or an agreement to be valid and binding, the agent must possess actual authority to make the promise . . . ."  *Id.*  A U.S. Attorneys' Office must obviously proceed as "provided by law."  *See* 28 U.S. § 547.  As this Court has already held, the CVRA prohibits the Government from offering a non-prosecution agreement without first conferring with the victims.  Indeed, in this case, Epstein's attorneys knew that the victims' rights were being violated and insisted on the violation.  Accordingly, there was never a "valid, binding" agreement extending immunity to Epstein.

The Government further argues that eliminating the immunity arrangements would eliminate "the only contractual consideration" that Epstein received under the agreement.  Gov't Remedies Resp. at 19.  Here the Government misunderstands how partial rescission would work.  *See* Part II.A.5, *infra* (setting out proposed partial rescission order).  If, for example, the Court rescinds the immunity provisions precluding Epstein's federal prosecution in Florida for sex offenses against Jane Doe 1 and 2 (and 3, 4, 5, 6, 7, 8, 9, and 10), that would still leave intact the immunity provisions in this district for Jane Does 11, 12, 13, …35, etc.  With partial rescission, the only "consideration" that Epstein loses is consideration to which he was never entitled to in the first place: immunity from federal prosecution of crimes he committed here against certain victims via an agreement that he arranged to have illegally hidden from those very victims.

22

The point that a wrongdoer cannot benefit from his own wrongdoing is underscored by the Government's proffered caselaw. The Government cites *Wilderness Country Club Partnership v. Groves*, 458 So. 2d 769, 771 (Fla. 2nd DCA 1984), for the proposition that partial rescission of an illegal term from agreement was improper where doing so would "eliminate[] the essence of the contracting parties' agreement." Gov't Remedies Resp. at 19. But that case involved a seemingly legitimate commercial arrangement, where later the Florida Legislature stepped in to alter the contractual landscape. *See* 458 So. 2d at 772 (noting Florida legislation rendering illegal certain previously adopted rent escalation clauses). In granting total rather than partial rescission in that case, the Florida Court of Appeals "hasten[ed] to emphasize that the escalation clause in this case was not void at the time the sublease was executed. Therefore, it cannot be said that it was included in the sublease with malicious intent or reprehensible motive." 458 So. 2d at 772. Here, of course, exactly the opposite is true. The immunity provision was void at the time it was executed. Indeed, Epstein maliciously sought to conceal the immunity provisions barring his prosecution for numerous sex offenses in Florida precisely because enforcement of the CVRA's victim-conferral provisions would have allowed the victims to object to those immunity provisions. Thus, both Epstein and the Government now obviously come before this Court with "unclean hands" (*id.* at 772) and cannot object to the partial rescission remedy that the innocent victims propose.

As the *Wilderness Country Club* case makes clear, established caselaw supports courts refusing to enforce specific illegal provisions. But the Government attempts to distinguish away such cases with two curious arguments.

First, the Government gamely maintains that there was no illegal provision "in the NPA itself," and thus the illegality inheres only in the way the agreement was negotiated. Gov't

23

Remedies Resp. at 20.  But this is truly a distinction without a difference.  Provisions in contracts are routinely declared unenforceable for the way in which they were negotiated, even where the underlying provisions themselves are fully valid.  *See, e.g., Oce N. Am., Inc. v. Caputo*, 416 F. Supp. 2d 1321, 1328 (S.D. Fla. 2006) (collecting authorities that "[f]raud in the execution of a contract . . . renders a contract void").   For example, if the Government and Epstein had both secretly signed a contract requiring the two Jane Does to each pay Epstein $100, that contract provision would not be illegal "in itself" but rather simply unenforceable because it was entered into without proper notice to and agreement by the Jane Does.  *Cf. Thomas v. Sanborn.,* 172 So. 2d 841, 843 (Fla. 2nd DCA 1964) ("a contract that contravenes the known contractual rights of a third party borders on being a contract to commit a wrong and is against public policy).  Indeed, Florida law has long recognized that "[s]pecific performance [of a contract] will be denied when the rights of innocent third parties have intervened so that enforcement of the contract would be harsh, oppressive, or unjust to them."  *Seaboard Oil Co. v. Donovan*, 99 Fla. 1296, 1306, 128 So. 821, 825 (1930) (*citing* 6 POMEROY EQUITY JURISPRUDENCE, § 794).

Second, the Government argues that the cases we have cited involved partial rescission of a plea agreement – as opposed to total rescission.  Gov't Remedies Resp. at 20 n.16 (collecting cases).  But the courts in the cited cases have awarded total rescission of a plea agreement because of a mutual mistake of law or other similar innocent circumstance.  *See, e.g., State ex rel. Gessler v. Mazzone*, 212 W. Va. 368, 374 & n.4, 572 S.E.2d 891, 897 & n.4 (2002) (setting aside entire plea based on "mutual mistake regarding statutory realities" while cautioning that "no sound public policy supports granting defendants a right to benefit from illegal sentences" (internal quotation omitted)).   In contrast, this case involves a more disturbing illegality – i.e., the Government and a

24

criminal working together to deliberately impair the protected rights of innocent crime victims. Against that backdrop, partial rescission is plainly appropriate.

### 4.    Partial Rescission Would Further the CVRA's Goals.

In one final argument, the Government contends that allowing partial rescission would improperly "reward[] the government for what the Court determined was a violation of the CVRA." Gov't Remedies Resp. at 21.[7]   The Government then asserts that "[t]he parties appear to have agreed for purposes of this litigation that Epstein has fully performed his obligations under the NPA." *Id.*   No such "agreement" exists – the victims have never stipulated to any such thing, which seems difficult to maintain in any event, given Epstein's clear violation of the NPA's plain language.  *Compare* Non-Prosecution Agreement at ¶ 11 ("Epstein shall use his best efforts to enter his guilty plea and be sentenced no later than October 26, 2007") *with* DE 435 at 9-18 (describing months of delay by Epstein in entering his plea on June 30, 2008, all the while attempting to keep what was going on secret from the victims).

But even assuming Epstein complied with the NPA, partial rescission is not some sort of improper "reward" to the Government.   As the Court has already found, Epstein "sought assurances" that the Government would illegally conceal the NPA from the victims.  Put another way, nothing in the record suggests that its was the Government's idea to violate the NPA.  Rather, illegally concealing the agreement was Epstein's idea – and this case will hopefully remain as a

---

[7]   The Government also seems to suggest that partial rescission would somehow harm certain victims, thereby violating their right to be treated with "respect for [their] dignity and privacy." Gov't Remedies Submission at 21 (*citing* 18 U.S.C. § 3771(a)(8)).  As explained in Part II.A.2, *supra*, partial rescission of the NPA's immunity provisions forbidding prosecution of Epstein's crimes against Jane Doe 1, Jane Doe 2, and other victims who are willing to participate in a prosecution inflicts no harm on other victims.

unique situation in the annals of American jurisprudence where prosecutors agreed with a criminal to keep innocent victims in the dark about what was going on.  In these exceptional circumstances, partially rescinding the resulting immunity provisions is not some kind of "reward" to the Government but rather the natural consequence of the CVRA's direction to this Court that it "shall ensure" that the victims' rights are respected. 18 U.S.C. § 3771(b)(1).  And to ensure that the Government does not somehow end up believing that the Court is "rewarding" its illegal behavior, Jane Doe 1 and Jane Doe 2 have asked for a variety of additional remedies that would prevent any misimpression, such as awarding monetary sanctions against the Government and attorneys' fees for the victims' attorneys.  *See generally* Part II.C.4, *infra*.

>     5.    **The Court Should Enter an Order Rescinding the NPA's Immunity Provisions for Epstein's Crimes Against Jane Doe 1, Jane Doe 2, and Any Other Victims Who Request Rescission.**

To sum up this discussion of the partial rescission remedy, it may be useful to conclude with a precise description of what kind of order the Court should enter under the CVRA.  For the reasons given above, the Court should immediately enter an order declaring that the three "immunity provisions"[8] in the NPA are null and void to the extent that they preclude federal prosecution of any federal crimes (including conspiracy) committed by Epstein (and his coconspirators) against the two petitioners in this case in the Southern District of Florida – i.e., against Jane Doe 1 and Jane Doe 2.  The Court should also extend to other Epstein victims a similar opportunity to have the immunity provisions barring prosecution of Epstein's federal crimes against them in the Southern District of Florida declared null and void.  The simplest way to do

---

[8] Jane Doe 1 and 2 precisely identified the three sentences in the NPA that constitute the "immunity provisions" that would be covered by the order.  *See* Jane Does' Remedy Submission at 13-14 n. 5.

this is for the Court to direct the Government to provide notice to all Epstein's dozens and dozens of victims (through legal counsel if possible) of the opportunity to have their immunity provisions declared invalid as well. The Court could set a 45-day period for any victim to make such a request. Thereafter, the Court would enter an order of rescission regarding the immunity provisions involving crimes in the Southern District of Florida against Jane Doe 1, Jane Doe 2, and any other victim who has made a rescission request. This partial rescission approach would vindicate the CVRA rights of all of Epstein's victims and treat all of the victims with "fairness," as required by the CVRA, 18 U.S.C. § 3771(a)(8).

> **6.     If Partial Rescission of the NPA is Impossible, Then the Court Must Award the Remedy of Total Rescission.**

For all the reasons explained above, the Court should award a partial rescission remedy. If, however, the Government's argument is correct that partial rescission is not an available remedy, then Jane Doe 1 and 2 ask the Court to award the remedy of *total* rescission – i.e., invalidation of the entire NPA. If the Court faces an all-or-nothing choice, it must invalidate the illegal agreement rather than vindicate it.

Whether the Court will ever need to make an all-or-nothing decision is unclear. Jane Doe 1 and 2 have asked for partial rescission as a remedy. In order for the issue of total rescission to become more than a theoretical conjecture, Epstein must himself ask to have the entire NPA invalidated – a request that would obviously subsume Jane Doe 1 and 2's partial rescission request. Until this happens, the Government's suggestion that total rescission may be required is premature. Certainly at this juncture, the Government lacks "standing" to argue on behalf of further modifications to the NPA beyond what Jane Doe 1 and 2 seek. If the Court determines that it can

grant a partial rescission remedy, Epstein may decide not to seek further invalidation of the agreement.

If an all-or-nothing choice arises, the Government seems to suggest that the Court should validate the entire NPA rather than annul it. But leaving the NPA intact is not an available option for this Court. Congress has not permitted judges to balance away the crime victims' rights, dispensing with them whenever some other exigency of the moment seems more important. Instead, as explained above, *see* Part I.B, *supra*, Congress has already directed that courts "shall ensure" that victims' CVRA rights are fully protected. 18 U.S.C. § 3771(b)(1). Here, the only way to "ensure" the protection of Jane Doe 1 and 2's right to confer about prosecuting Epstein's (and his coconspirators') sex crimes in the Southern District of Florida is to eliminate the immunity provisions that prevent them from meaningfully conferring with the Government about a criminal prosecution here. Indeed, this Court has previously so held, noting that, if Jane Doe 1 and 2 could establish a violation of their right to confer, then rescission of the immunity provisions would be required so that they could have "the full unfettered exercise of their conferral rights at a time that will enable the victims to exercise those rights meaningfully." DE 189 at 9.

Proceeding in this fashion is exactly what Congress expected when it enacted the CVRA. As Senator Kyl explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while giving *meaning* to the rights we establish." 150 CONG. REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphases added). On the proven facts of this case, rescission of the NPA's immunity provisions – whether partially or totally – is the only way to "give meaning" to Jane Doe 1 and 2's rights to confer about charges in this district.

28

While Congress has required this Court to rescind the NPA's immunity provisions – in their entirety, if need be – we hasten to add that this outcome is also desirable public policy.  If the NPA were entirely invalidated, Epstein might in theory have an argument that he should be entitled to withdraw his Florida state plea and consequent sex offender registration.  But Epstein would have "unclean hands" in advancing such an argument, given that he instigated the plan to violate the CVRA and conceal the NPA.  In light of those facts, it seems dubious that the Florida courts would permit him to capitalize on his own wrongdoing and withdraw his guilty plea.

In any event, this "risk" that Epstein might be allowed to back out of his low-level state court plea would be clearly outweighed by the prospect that the federal government will finally bring Epstein and his coconspirators to justice for numerous federal sex trafficking crimes in Florida.  Despite having more than eleven years to do so, the USADO-SDFL has never attempted to justify its non-prosecution arrangement with Epstein.  Perhaps this is because the Epstein NPA is widely regarded as one of the worst deals in the history of American criminal justice.  *See, e.g., The Cowardly Labor Secretary: A Judge Says That as a Prosecutor, Alexander Acosta Broke the Law to Help a Powerful Man Accused of Abusing Girls*, N.Y. TIMES, Mar. 17, 2019 (describing the NPA as "a deal so sweet it would rot your teeth" and "a betrayal of countless young women – the full tally of Epstein's victims remains unknown – who'd already had their bodies violated and their innocence destroyed"); *Ridiculously Lenient Acosta/Epstein Plea Deal Demands a Federal Investigation*, MIAMI HERALD, Dec. 15, 2018 ("A top federal prosecutor – Alex Acosta – let Epstein's attorneys call the shots.  Epstein goes to jail for just over a year – on two prostitution charges, instead of, possibly for the rest of his life. . . . The sweetheart deals put an end to a federal investigation likely to end in an indictment for Epstein for international sex-trafficking . . . . At

29

least 30 U.S. lawmakers, on both sides of the aisle, have rightly requested an investigation to get to the bottom of this cesspool.").

Yesterday's indictment in the Southern District of New York demonstrates plainly that the USAO-SDFL could have easily filed federal charges in this district more than a decade ago.[9]  The New York prosecutors have crafted an indictment based on three identified Epstein victims – while the prosecutors in Florida were presented with more than three *dozen* victims in this district.  And yet, for mysterious reasons never explained, the USAO-SDFL decided not to prosecute Epstein – and for good measure to give immunity in this district to all of his unidentified "coconspirators."

Under either a partial or total rescission decision, the Government will become free to prosecute Epstein's and his coconspirators' numerous federal felonies (including conspiracy) in this district.  Indeed, the Government reports in its brief that in recent years "the Department of Justice has made combatting human trafficking and child exploitation a national priority."  Gov't Remedies Resp. at 4 (collecting examples).  And the Government claims it has made a firm commitment "to combat human trafficking and crimes against children and fully support and protect victims of [these] crime[s]."  *Id.* at 6.  If so, then Epstein's Florida's victims have nothing to fear from total rescission of the NPA.  Yesterday's indictment in New York demonstrates that the Epstein case is the proverbial "slam dunk."  Epstein's crimes in this district could likewise be swiftly and severely prosecuted here and would be on any fair-minded assessment of the evidence free from secret deals and private "breakfast meetings."  Now that the national spotlight is on the

---

[9] And yesterday's charges have only increased the troubling concerns about the agreement. *See, e.g., Who Protected Jeffrey Epstein? Mr. Epstein Is Not the Only One Due a Reckoning with Justice*, N.Y. TIMES, July 8, 2019.  Literally dozens of other similar questioning articles appeared in media sources from around the country yesterday.

USAO-SDFL, we have confidence that it will do the right thing … if given the opportunity.  Any argument to the contrary would seemingly be premised on that notion that the Office would abuse its discretion – something this Court should not presume.

A prosecution of Epstein in this district after the NPA's total rescission will not somehow invade the privacy of unwilling victims.  To prove Epstein's guilt, the USAO-SDFL would have available to it a mountain of evidence – and multiple willing victims.  Just as prosecutors in the USAO-SDNY had no difficulty finding victims willing to come forward, prosecutors here could easily assemble a "coalition of the willing" – or, more likely, an army of the willing – who could testify, if necessary, at any federal criminal trial in the Southern District of Florida.

Nor will total rescission cause financial harm to Epstein's victims.  The Government vaguely alludes to this possibility (Gov't Remedies Resp. at 14), but never presses the point.  Presumably this is because it has now become apparent that the NPA's supposedly generous compensatory provisions were, if anything, more useful to Epstein than his victims.  Many victims chose not to use those provisions.  And those who did were, no doubt, forced to do so because the Government failed to secure a criminal conviction for Epstein – thereby depriving the victims of both statutorily required restitution, *see* 18 U.S.C. § 3663A, and a conviction for sex trafficking crimes that could have served as the predicate for liability in a civil case to collect both compensatory and punitive damages.  Indeed, the NPA specifically required any victim seeking compensation to "waive any other claim for damages, whether pursuant to state, federal, or common law."  NPA at ¶ 8.  Moreover, the emails exchanged between prosecutors and defense attorneys in this case make clear that one of the very purposes of the compensation provisions was to try to keep Epstein's victims away from highly skilled Florida tort lawyers, who could likely

have obtained more substantial compensation for the victims. *See, e.g.,* DE 361 at 21 (line prosecutor explaining that she "just [has] a bias against plaintiffs' attorneys"). And finally, as noted above, Epstein would have "unclean hands" in any effort to back out of the financial commitments he has previously made under the NPA. Whether he would even attempt to do so is speculative, because the NPA's provisions limited the awards victims could receive to amounts far below what likely would have been recovered through civil suits against him.

But the Court need not trace out all theoretical ramifications of a partial or total rescission decision, both favorable and unfavorable. The only parties before the Court are Jane Doe 1 and 2. To vindicate their CVRA rights, they both support rescission, either partial or total as may be appropriate. Indeed, with regard to other Epstein victims, as the Court will recall, two additional victims – Jane Doe 3 and 4 – attempted to intervene in this action more than four years ago. *See* DE 280 and 311. In response to the attempted intervention, the Government strenuously objected to expanding this case beyond Jane Doe 1 and 2. DE 290. Indeed, the Government explained that it had provided a notice about this lawsuit to the victims covered by the NPA in September 2008. DE 290 at 4. The Government argued that Jane Doe 3 and 4 had "unduly delayed" (*id.* at 8) in attempting to intervene in this case in 2015.

The Court ultimately agreed with the Government, denying the efforts of the two new victims to join the case. DE 324 at 8-10. The Court concluded that the other victims could offer "evidence" regarding "whether the Government violated the rights of Jane Doe 1, Jane Doe 2, and all other similarly situated victims. *Id.* at 9. But the Court also held that the participation of other victims was unnecessary to reach a proper resolution in this case. *See id.* at 9-10. In light of this previous holding that Jane Doe 1 and 2 alone present the issues in this case, this case is currently

32

postured with a request from the only petitioners for rescission of the NPA's immunity provisions

blocking prosecution in the Southern District of Florida – and the Court must decide the case as

presented to it by Jane Doe 1 and 2.[10]

For all these reasons, if the Court is unable to award Jane Doe 1 and 2 their requested

remedy of partial rescission of the NPA, it should award them the remedy of total rescission.

### 7. Yesterday's New York Indictment Provides No Basis for Denying Jane Doe 1 and 2 an Opportunity to Seek a Prosecution in this District.

Yesterday's indictment of Epstein in the Southern District of New York provides no reason

for this Court to decline to give Jane Doe 1 and 2 the rescission remedy to which they are entitled

in the Southern District of Florida.  To be sure, that indictment is an important and laudable step

towards holding Epstein accountable for his sex trafficking crimes committed in that district.  But

unsurprisingly, the indictment there is limited, specifically mentioning only three victims –

identified as "Minor Victim 1," "Minor Victim-2," and "Minor Victim-3."  *See* Indictment at 8-

---

[10] In its response, the USAO-SDFL vaguely alludes to "ongoing" discussions with unidentified victims and the possibility that "it will seek leave to make a supplemental filing summarizing the steps taken to confer with victims and the victims' opinions on a proper remedy to ensure that their diverse voices are heard."  Gov't Remedies Resp. at 16.  Counsel for Jane Doe 1 and 2 are also conducting "ongoing" discussions with victims (and their legal counsel) about how to properly resolve this case – discussions that have informed this filing.  But at some point, this long-running case needs to be concluded.  Any effort by the USAO-SDFL to use its "ongoing" discussions as a basis for "supplemental" submissions would no doubt require supplemental responses from the other parties to this case and perhaps a reopening of this Court's earlier decision not to allow Jane Doe 3 and 4 to intervene.

It is also hard to understand what significant new information the USAO-SDFL could provide through a supplemental filing, given that it appears that the Office had already conferred with many victims when it filed its remedy submission.  *See* Gov't Remedies Resp. at 7 & n.12 (recounting information from Government conferral with more than a dozen victims).  In light of this background, Jane Doe 1 and 2 see little value that could come from a "supplement" and anticipate that they would object to any belated effort to modify and extend this Court's schedule for briefing on remedies.

12, *U.S. v. Jeffrey Epstein*, No. 19-Crim-490 (S.D.N.Y. indictment unsealed July 8, 2019).  While

the indictment does also appear to encompass other victims were harmed, the extent to which

further victims will be involved is unclear at this time.  Moreover, while the indictment makes

clear that Epstein conspired with many others to operate his sex trafficking organization, no other

persons are charged.

While yesterday's New York indictment begins to offer a vital measure of justice there, it

remains important that Epstein's federal crimes against Florida victims be pursued in this district.

The legal principle of "vicinage" has constitutional foundation, as it was one of the reasons for the

American Revolution.  In the Declaration of Independence, Thomas Jefferson charged that King

George III had transported defendants "beyond seas to be tried for pretend offenses."   Such

concerns led to Article III of the Constitution requiring that "the Trial of all Crimes . . . . shall be

by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed.

. . ."  U.S. Const., art. III, § 2.  This vicinage requirement was later strengthened in the Sixth

Amendment, requiring that "[i]n all criminal prosecutions, the accused shall enjoy the right to a

speedy and public trial, by an impartial jury of the state and district wherein the crime shall have

been committed."  U.S. Const., amend. VI.  *See generally* Drew L. Kershen, *Vicinage*, 30 OKLA.

L. REV. 1, 89 (1977) ("if jurors are consistently chosen from the community in which the crime

was committed – the vicinage – to pass judgment on those alleged crimes, then not only will the

individual jurors share similar community experience, portending consistent verdicts, but the

deliberative process of the jury itself shapes and reaffirms a community conscience"); Steven A.

Engel, *The Public's Vicinage Right: A Constitutional Argument*, 75 N.Y.U. L. REV. 1658, 1718

(2000) ("the local jury is necessary to represent the common knowledge and values of the

community, to legitimate the processes and outcomes of the criminal trial, and to permit the trial to heal the social rupture caused by the crime").

Without tracing out all the constitutional ramifications, the simple fact remains that Epstein's Florida victims deserve justice in Florida. Epstein and his coconspirators caused great harm to victims and their communities in Florida. Accordingly, the Court should rescind the "immunity" provisions in the NPA blocking federal prosecution of Epstein and his coconspirators in the Southern District of Florida.

**B.     Remedy 2 - Jane Doe 1 and Jane Doe 2 Are Also Entitled to Declaratory Relief to Protect Their CVRA Right to Confer.**

As Jane Doe 1 and 2 explained in their initial remedies submission, a declaratory remedy is ancillary to protecting their CVRA right to confer and to properly implementing rescission of the specific immunity provisions for specific victims outlined above. The Court should award requested remedy 2, declaring that double jeopardy and other constitutional considerations do not prevent prosecuting Epstein.

Rescission of the NPA's immunity provisions is, of course, not an end in itself but rather a means to an end – specifically, a means to giving Epstein's victims "the same opportunity [as Epstein had] to attempt to affect prosecutorial decisions before they became final." 359 F.Supp.3d at 1221. The victims will only have this opportunity to affect the prosecution decision through their "reasonable right to confer" with the Government (18 U.S.C. § 3771(a)(5)) if they have a genuine opportunity to convince the Government to prosecute Epstein for his crimes against them in Florida. Accordingly, the second remedy that Jane Doe 1 and Jane Doe 2 requested was an order from this Court that "[i]f after consultation with the victims the U.S. Attorney's Office determines that prosecution of Epstein for crimes committed against Jane Doe 1 and Jane Doe 2

(or any other Epstein victim) is appropriate, the Constitution would permit such a prosecution." Jane Does' Remedies Submission at 4-5, 19-21.

Without such a declaration, the Jane Does would not be put back in the same position as they would have been had the Government complied with the CVRA. With such a declaration, the USAO-SDFL might decide not to prosecution Epstein in Florida for his numerous sex offense for spurious constitutional concerns rather than lack of merit to such a prosecution. Or the USAO-SDFL might attempt to hide behind phantom constitutional concerns to avoid responsibility for its decision.[11]

The Government only tersely responds to victims' request for remedy 2, arguing briefly that Jane Doe 1 and Jane Doe 2 have not cited "any legal basis" for this request. Gov't Remedies Resp. at 21. But, to the contrary, the two Jane Does not only offered an extensive set of case citations in general support of this Court's broad remedial powers (*see* Jane Does' Remedies Submission at 7-12 (collecting cases)), but also repeatedly cited specific statutory authority for this Court to act under the CVRA. *See id.* at 8, 15 (*citing* 18 U.S.C. § 3771(b)(1)'s requirement for courts to "ensure" that CVRA rights are respected). And, of course, the Declaratory Judgment Act provides such authority. *See* 28 U.S.C. 2201(a)).

The Government also contends that the victims' request is improper because "[d]eclaratory relief serves only to clarify the factual relationship between the parties and does not serve to make factual determinations." Gov't Remedies Resp. at 21-22 (*citing Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (Marra, J.)). But the Government's

---

[11] Epstein may also attempt to compound this problem, by raising constitutional arguments on his own.

36

own authority proves the appropriateness of declaratory relief. As this Court explained in *Medmarc*, district courts are empowered under the Declaratory Judgment Act, after the filing of an appropriate pleading, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 783 F.Supp.2d at 1216 (*citing* 28 U.S.C. 2201(a)). District courts possess "ample" discretion when exercising this declaratory power. *Id.* (*citing Kerotest Mfg., Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183–84 (1952) ("an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts" in their decision to adjudicate declaratory judgment claims).

To be sure, as this Court cautioned, the Declaratory Judgment Act is not designed to make factual determinations regarding improper acts that a party may "have committed in the past." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1230, 1213 (S.D. Fla. 2009) (Marra, J.). Rather than adjudicate past conduct, the Declaratory Judgment Act is designed to permit controversies "to be settled before they ripen into violations of law or a breach of contractual duty." *Id.* at 1230.

In remedy 2, Jane Doe 1 and Jane Doe 2 do not seek "factual determinations" about the Government's past conduct – such determinations are unnecessary given the Court's previous and extensive findings of fact in granting the victims' summary judgment motion. Rather, Jane Doe 1 and Jane Doe 2 simply request that the Court lay the groundwork for *future* conferral with the USAO-SDFL about prosecuting Epstein in Florida. Without the Court laying that foundation now through a declaratory judgment, the victims' CVRA rights will not be fully protected, as the conferral would be improperly tainted by irrelevant constitutional concerns.

Finally, the Government asserts that it "cannot turn back time and put the victims back in the position they would have been in a decade ago." Gov't Remedies Resp. at 2. But this Court can come close. Declaring the immunity provisions to be illegal and unenforceable – and declaring that the victims now have the same right to persuade the Government to federally prosecute Epstein and his coconspirators in the Southern District of Florida as Epstein previously had to argue to the contrary – vindicates the victims' CVRA rights. For all the reasons explained here, the Court has ample authority to enters such an order. Nothing in the Government's response provides any reason for the Court not to discharge its duty under the CVRA to do so.

> ### C. Remedies 3 and 4 - Jane Doe 1 and Jane Doe 2 Are Also Entitled to Injunctive Relief to Protect Their CVRA Right to Confer.

Jane Doe 1 and 2 also requested two forms of injunctive relief. In remedy 3, they requested that the Government be enjoined to use its "best efforts" to protect Jane Doe 1 and 2's rights. *See* 18 U.S.C. § 3771(c)(1) (requiring Government's "best efforts" to secure victim's rights). In remedy 4, they requested that that the Government be enjoined to confer with Jane Doe 1 and 2 (and all other Epstein victims who request it) about future steps in this case.

With regard to remedy 3, the Government has now offered to undertake three specific steps to attempt to remedy the CVRA violation. *See* Gov't Remedies Resp. at 7. Without in any way conceding that these steps are sufficient – indeed, Jane Doe 1 and 2 strenuously argue in the pages that follow that they are insufficient – Jane Doe 1 and 2 would simple ask that, for remedy 3, the Government be enjoined to take these three steps that it has agreed to take.

With regard to remedy 4, in light of the Government's offer to confer with Jane Doe 1 and 2 in the immediate future, they will defer pressing for a further injunction at this time.

### D.  Jane Doe 1 and Jane Doe 2 Are Entitled to Various Other Forms of Relief.

For all the reasons just provided, the Court should enter the "rescission," declaratory, and injunctive remedies discussed above.  However, as the Government appears to concede, awarding a rescission decree in 2019 does not entirely remedy the CVRA violations that occurred in 2007 and 2008 – in other words, it does not place Jane Doe 1 and Jane Doe 2 (and other victims) in the same position as they would have been in had the violation of rights never occurred.  As the two victims explained in their initial submission, given the passage of time, it will no doubt be more difficult to persuade prosecutors to move forward with a prosecution now.  Jane Does' Remedies Submission at 22.  The Government appears to concede the point that the passage of time makes it difficult to restore the victims to the situation that existed when the Government was first considering whether to federally charge Epstein for his crimes committed in Florida.  *See* Gov't Remedies Resp. at 16-18.

To be sure, yesterday's indictment in the Southern District of New York begins the process of holding Epstein accountable for sex trafficking.  But that indictment is limited to charges with a nexus to the Southern District of New York.  And the indictment does not include any of Epstein's coconspirators.  Moreover, while a July 2019 indictment brings some measure of comfort for Epstein's victims now, it does not remedy the pain and anxiety caused by the secret agreement not to indict Epstein back in September 2007.  If anything, yesterday's indictment only raises additional questions about why the USAO-SDFL failed to act more than a decade ago.

Of course, even where "a court may not be able to return the parties to the *status quo* ante," so long as "a court can fashion *some* form of meaningful relief," it should do so.  *See Church of Scientology of California v. U.S.*, 506 U.S. 9, 12 (1992).  Accordingly, Jane Doe 1 and 2 argued

that they are entitled to additional remedies beyond rescission (Jane Does' Remedies Submission at 22),[12] and the Government implicitly concedes this point in proposing its own additional (albeit limited) "remedies."   *See* Gov't Remedies Resp. at 30 (arguing that the Government's proposed remedies) would "give the victims a meaningful opportunity to have their voices heard and to understand, if not accept, the decisions made in this matter").   The additional remedies sought by Jane Doe 1 and Jane Doe 2 are more expansive – and more appropriate – than the limited remedies proposed by the Government, and accordingly the Court should generally grant them.

**1.    Remedies 5, 6, and 6 - An Apology, a Meeting with the Former U.S. Attorney, and a Court Hearing.**

Jane Doe 1 and 2 seek three additional remedies (numbers 5, 6, and 7) – i.e., a letter of apology, a meeting with the former U.S. Attorney, and a court hearing to address the Court regarding the case.   Jane Doe 1 and 2 had assumed that Government agreement to these requests would be quickly forthcoming.   Unfortunately, the victims were mistaken.

*Remedy 5 - Letter of Apology*

Jane Doe 1 and 2 specifically requested a letter of apology from the USADO-SDFL.   Jane Does' Remedies Submission at 23.   They had assumed that because the Court had now firmly ruled that the Office's behavior was illegal, the Office would accept responsibility for its violations and let dozens of sex offense victims know that it was sorry for what it had done.   The victims had assumed that, among their 19 specifically listed remedies, this one would be the least controversial.

---

[12]   Of course, if for any reason, the Court were to determine that rescission is not a permissible remedy in this case, then Jane Doe 1 and 2 would be entitled to the additional remedies for that reason as well.

Remarkably, however, the USAO-SDFL refuses to take even this simple step towards helping Epstein's victims move forward with their lives. Instead, the Office spends its time and energy tracking down unpublished court decisions from remote jurisdictions suggesting that courts cannot technically order a litigant to apologize. *See, e.g.,* Gov't Remedies Resp. at 23 (*citing, e.g., Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (unpublished)). Indeed, doubling down on the point, the USAO-SDFL writes that a "court may not order a defendant to speak in a manner that may contravene the beliefs the defendant holds." Gov't Remedies Resp. at 23.

In light of the USAO-SDFL's intransigence, Jane Doe 1 and Jane Doe 2 withdraw their request that this Court order the Office to apologize. The Government's pleading makes clear that the Office is unapologetic about what it has done – and that any court-ordered "apology" would be insincere. But the USAO-SDFL fails to recognize the implications of its obstinacy. Because the Office is unwilling to apologize for its illegal past behavior, the victims are entitled to additional remedies that address the Office's past illegality and prevent its future repetition – as discussed throughout this submission.

### *Remedy 6 - Meeting with Government Representatives*

Jane Doe 1 and 2 sought an opportunity to personally meet with the current U.S. Attorney for the Southern District of Florida and the U.S. Attorney for that Office who personally negotiated the Epstein NPA, Mr. R. Alexander Acosta. *See* Jane Does' Remedies Submission at 23 (*citing* 359 F.Supp.3d at 1207-10 documenting Mr. Acosta's deep personal involvement in discussions with Epstein). In response to this request, the Government vaguely proposes an alternative: "The Department of Justice will designate a representative to meet with [Jane Doe 1 and 2] and any other Epstein victim who wishes to participate, to discuss the government's decision to resolve the

41

Epstein case and engage in an open dialogue about that decision."  Gov't Remedies Resp. at 7.

While the Court should (at a minimum) enter an order as agreed by the Government, the Court

should further direct that the Government "representatives" include Mr. Acosta.  Jane Doe 1 and

2 specifically requested that he be one of the Government's representatives, since he personally

(and apparently privately, at a secret "breakfast meeting") arranged for the NPA deal.  *See* Jane

Does' Remedies Submission at 23.

      While Mr. Acosta has chosen not to speak to the Epstein victims previously, he has chosen

to make public statements – when it is has served his purposes.  For example, in a March 2011

statement released to the media (but not to Epstein's victims), Acosta claimed that going to trial

against Epstein would have faced a "reduced likelihood of success."  That claim seemed dubious

at the time – and yesterday's indictment in New York casts further doubt on it.  Mr. Acosta should

explain to Epstein's Florida's victims why his judgment was so much different than the skilled

prosecutors in New York.  For example, in announcing yesterday's indictment, the U.S. Attorney

for the Southern District of New York, Geoffrey Berman, explained that prosecution was required

because Epstein's "alleged behavior shocks the conscience."  Kevin McCoy & John Bacon, USA

TODAY, July 8, 2019, https://www.usatoday.com/story/news/nation/2019/07/08/jeffrey-epstein-

court-sex-trafficking-charges/1671254001/.   Mr. Acosta apparently had a different assessment of

more numerous and extensive crimes committed by Epstein – and his powerful coconspirators –

against a larger number of victims in Florida.  Jane Doe 1 and 2 (and the other victims) are entitled

to know why Acosta reached this dubious conclusion.

      The Government had an opportunity to specifically rebut the victims' request for Acosta

to attend the meeting and chose not to do so.   Accordingly, the Court should grant this

unchallenged request – rather than allowing the Government to appoint some unidentified "representative," who could be someone without clear knowledge of or responsibility for the events surrounding this case. The Government has said that a meeting with the victims is necessary to give them "an opportunity for them to understand the *true reasons* why the government resolved the case in the manner it did." Gov't Remedies Resp. at 8 (emphasis added). Only Acosta can explain the "true reasons" for his decision to deviate from normal prosecutorial practice and secretly immunize from federal prosecution in this district Epstein and his many powerful (but unidentified) coconspirators.

### Remedy 7 - Court Hearing

Jane Doe 1 and 2 also sought a hearing before the Court in which they (and any other Epstein victim) could address the Court regarding the Florida Epstein investigation and its resolution – and that intervenor Epstein as well as Mr. Acosta be required to attend this hearing. Jane Does' Remedies Submission at 23-24. In response, the Government did not specifically object and, indeed, proposed a "public court proceeding, presided over by this Court, in which [Jane Doe 1 and 2], and any other Epstein victim who wishes to participate, can make a victim impact statement. That hearing would be handled in a manner similar to the way the Court would handle victim impact statements in the context of a criminal sentencing." Gov't Remedies Resp. at 7.

The Court should (at a minimum) enter an order directing the hearing that the Government has agreed to. But, here again, the Government's proposal does not go far enough, and the Court should adopt the victims' approach of a hearing with both Epstein and Acosta required to attend.

Before turning to the details of how the hearing should be structured, it is useful to determine the purposes that hearing would be designed to serve. Remarkably, while the Government briefly proposes that this Court should hold a hearing where Jane Doe 1 and 2 (and the other victims) can participate, it never explains the hearing's goal. Presumably the Government believes that the hearing would be akin to a sentencing hearing, as it states that the Court would conduct the hearing "in a manner similar to way that Court would handle victim impact statements." Against that backdrop, it is therefore useful to understand the purposes victim impact statements serve in the criminal justice system. *See generally* Paul G. Cassell, *In Defense of Victim Impact Statements*, 6 Ohio St. J. Crim. L. 611 (2009).

One of the primary purposes of victim impact statements is to provide information to the judge who is imposing a sentence. *See id.* at 620 (*citing Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). For example, the three victims identified in yesterday's New York indictment will have an opportunity to provide an impact statement in New York if Epstein is convicted. But here in Florida, it is uncertain (at this time) whether Epstein will be charged and convicted. At this time, then, the hearing should serve other purposes. Two additional purposes for such a hearing immediately come to mind.

Apart from changing a criminal sentence, another important purpose of a victim impact statement is to drive home to the offender the seriousness of his crimes. *See generally* Cassell, *supra*, 6 Ohio St. J. Crim. L. at 623-25. Thus, "if a victim impact statement helps an [offender] understand and gain empathy towards the victim, it may serve as the first step towards his effective rehabilitation." *Id.* at 623-24.

In light of this purpose for victim impact statements, Epstein should be present during the hearing. Jane Doe 1 and 2 specifically asked for his required attendance as part of the hearing they proposed. *See* Jane Does' Remedies Submission at 23-24 (noting that the Court has jurisdiction over intervenor Epstein). In response, the Government stood silent. Accordingly, this request should be regarded as unopposed by the Government. Epstein will be filing a submission soon, and he will either agree with the request or, if he opposes it, the victims will respond at that time.

In addition, delivering a victim impact statement can also be important for victims. *See* Cassell, *In Defense of Victim Impact* Statements, *supra*, at 621-23; Mary Margaret Giannini, *Equal Rights for Equal Rites?: Victim Allocution, Defendant Allocution, and the Crime Victims' Rights Act*, 26 YALE L. & POL'Y REV. 431 (2008). There may be therapeutic aspects to delivering a statement, as victims can benefit from participation and input. *See* Edna Erez, *Who's Afraid of the Big Bad Victim? Victim Impact Statements as Victim Empowerment and Enhancement of Justice*, CRIM. L. REV., July 1999, at 545, 550-51. But these benefits generally derive from the victims' statements being a part of the process – that is making a statement that is "on par with that defendants and prosecutors." Richard A. Bierschbach, *Allocution and the Purposes of Victim Participation Under the CVRA,* 19 FED. SENT'G Rep. 44, 46-47 (2006). Given that the victim impact statements will not, at least at this time, be able to influence any actual sentence, it is important to structure the hearing so that the victims' statements can be influential in other ways. While having Epstein at the hearing is a way to make the statement potentially influential, another way is to require the Mr. Acosta's attendance. If he attends, the victims would be able to make statements directly to Acosta about his role in blocking prosecution in Florida, something that could provide therapeutic and other benefits for the victims. *Cf.* Christine Hauser & Karen Zraick,

45

*Larry Nassar Sexual Abuse Scandal: Dozens of Officials Have Been Ousted or Charged*, N.Y. TIMES, Oct. 22, 2018 (noting victim impact statements by Olympic gymnastics victims attempting to hold others beyond the defendant accountable for what happened).

Jane Doe 1 and 2 specifically proposed that Mr. Acosta attend the hearing in their submission and noted that the Court had jurisdiction over Acosta. *See* Jane Does' Remedies Submission at 23-24. And – once again – the Government is silent on this request. Accordingly, the Court should regard the request as unopposed and grant it.[13]

## 2. Remedies 8, 9, 10, 11, 12, and 13 - Disclosing Information to the Victims.

Jane Doe 1 and 2 also seek several additional remedies (numbers 8, 9, 10, 11, 12, and 13) related to information about this case – i.e., information about the non-prosecution decision, documents presented to the grand jury, FBI information, documents submitted for *in camera* review, and other materials. All of these remedies are also appropriate, and the Court should enter an order awarding them to the two Jane Does.

*Remedy 8 - Materials Regarding Why the Government Decided Not to Prosecute Epstein*

Jane Doe 1 and 2 requested materials in the Government's possession about "why it decided not to prosecute Epstein's crimes" in Florida against his victims. *See* Jane Does' Remedies Submission at 5 (remedy 8). In support of this request, the victims explained that if the Government had properly conferred with the two Jane Does and other victims back in 2007, the victims would likely have known much more about what was happening in their case. Moreover,

---

[13] Yesterday's actions in New York do not change the need for a hearing in Florida. Jane Doe 1 and 2 (and Epstein's other Florida victims) are entitled to this hearing *in Florida*. Moreover, who is specifically covered by the New York indictment and how that case will ultimately play out is uncertain at this time.

Congress specifically enacted the CVRA because it found that in case after case "victims, and their families, were ignored, cast aside, and treated as non-participants in a critical event in their lives. They were kept in the dark by prosecutors too busy to care enough . . . and by a court system that simply did not have place for them." 150 CONG. REC. 7296 (2004) (statement of Sen. Feinstein).

And the mystery of why no charges have been filed in this district has only deepened, given yesterday's indictment of Epstein in New York. Jane Doe 1 and 2 (and other Florida victims) still need to know why Epstein and his coconspirators received such unprecedented leniency in this district, whether there was any possible corruption in the process, and what steps will be taken to ensure that no such violations of the CVRA will ever occur again in this district in the future. Given the eleven years of uncertainty and concealment caused by the Government's illegal behavior, Jane Doe 1 and 2 explained that release of information about the non-prosecution of crimes against them (and other Epstein) victims here in the Southern District of Florida was an appropriate remedy in this case. *See* Jane Does' Remedies Submission at 25.

In response, the Government does not appear to contest that, had it properly conferred with all the victims in 2007, they would have known much more information about their cases. Instead, the Government falls back on the refrain that releasing information would somehow "intrude on the government's exercise of discretion." Gov't Remedies Resp. at 26. But releasing information about *why* the Government exercised its discretion not to prosecute Epstein in this district in 2007 in no way interferes with any prosecutorial decision. Instead, allowing the victims to review these and other relevant materials simply stops keeping victims "in the dark" about the decision – the very CVRA violation that the Court must now remedy.

It bears emphasizing that none of the Government proposed three remedies fully vindicate the rights promised to Jane Doe 1 and 2 (and other Epstein victims) – a fact which the Government appears to concede.  *See* Gov't Remedies Resp. at 2 ("we cannot turn back time and put the victims back in the position they would have been in over a decade ago . . . .").  Even the other, more expansive, remedies proposed by Jane Doe 1 and 2 will not do that.  Accordingly, the burden falls on this Court (as explained in opening section of this brief) to consider any and all remedial proposals.

Against this need to craft a full and appropriate remedy, all the Government's other arguments against release of information are wide of the mark.  For instance, the Government claims that the CVRA does "not authorize an unbridled gallop to any and all information in the government's files."  Gov't Remedies Resp. at 27 (*quoting United States v. Rubin*, 558 F.Supp.2d 411, 425 (E.D.N.Y. 2008)).  But even assuming that the CVRA creates no specific substantive right to discover "any and all" documents in the ordinary case, the limited issue here is whether the Court should make documents available to *remedy* the highly unusual situation where it has been proven that the USAO-SDFL illegally kept victims in the dark.  Moreover, the victims here do not seek an "unbridled gallop to any and all information in the government's files," but rather (in remedy 8) information specifically about why the USAO-SDFL decided in 2007 not to prosecute Epstein's crimes against his victims in this district.  This is the kind of information that the victims would have obtained from the USAO-SDFL if that Office had properly conferred back in 2007.  Releasing such information now seems like the least that could be done to remedy that Office's violation.  And releasing this information is entirely consistent with the goals that Congress had in mind when adopting the CVRA.  *See* 150 Cong. Rec. S10910-01 (statement of

48

Sen. Kyl) (Oct. 9, 2004) (" . . . the victim has a reasonable right to confer with the attorney for the government in the case. This right is intended to be expansive. For example, the victim has the right to confer with the government concerning any critical stage or disposition of the case. . . . Prosecutors should consider it part of their professional responsibility to be available to consult with crime victims about concerns the victims may have which are pertinent to the case, case proceedings or dispositions.").

The Government makes no claim that collecting these materials would be burdensome or otherwise inappropriate.  Accordingly, the Court should grant Jane Doe 1 and 2's remedy 8.

### *Remedy 9 - Grand Jury Materials*

As a remedy for the Government's failure to confer, Jane Doe 1 and 2 also sought release of certain grand jury materials.  *See* Jane Does' Remedies Submission at 5-6 (remedy request 9). The two victims developed an extensive argument for release of the materials as a remedial measure under several different theories, including both Fed. R. Crim. P. 6(e) and the Eleventh Circuit's "special circumstances" doctrine.  *Id.* at 25-27.

In a four-sentence response, the Government argues that this Court should reject Jane Doe 1 and 2's request.  Gov't Remedies Resp. at 27-28.  But the Government responds only to the Jane Doe 1 and 2's Rule 6(e) argument.  *Id.*  And the only reason that the Government gives for its position is the claim that this Court has previously rejected the victims' argument back in 2015. *See id.* at 28 (*citing* DE 330 at 7-10).

The Government's undeveloped argument essentially leaves Jane Doe 1 and 2's arguments unchallenged.  For starters, this Court has *not* previously rejected the victims' argument – for the simple reason that Jane Doe 1 and 2's May 2019 remedy submission was their first opportunity to

make this request.  Back in 2015, Jane Doe 1 and 2 advanced a *discovery* argument that they needed access to grand jury materials in order to prove the Government's CVRA violation.  *See* DE 330 at 1-3 (describing discovery related background to the requests at issue).  Ultimately the Court concluded that Jane Doe 1 and 2 had not demonstrated that they needed the documents to prove their case.  DE 330 at 8 (holding that the materials did not bear on the Government's failure to confer).

Of course, the Court's 2015 ruling has now proven to be prescient; the victims did not need the materials to prove any failure to confer – as the Court's February 2019 summary judgment opinion to that effect confirms.  But following this Court's ruling, Jane Doe 1 and 2 now seek the same materials as a means of *remedying* the fact that the Government illegally kept them in the dark earlier.  And Jane Doe 1 and 2 provided specific reasons why releasing the materials was appropriate as a remedy.  Because the Government has not substantively responded in any way to the two victims' arguments, it should grant their request even under traditional Rule 6(e) standards.

In addition to arguing for release of the materials under Rule 6(e), Jane Doe 1 and 2 provided specific arguments why the materials should be released under the Eleventh Circuit's three-prong "special circumstances" doctrine.  *See* Jane Does' Remedies Submission at 26-27 (*citing, inter alia, Pitch v. United States*, 915 F.3d 704, 708 (11th Cir. 2019)).  The Jane Does provided substantive arguments demonstrating why they satisfied each of the three prongs.  And the Government did not contest those arguments in any way.

Accordingly, the Court should also find that Jane Doe 1 and 2 have advanced an uncontested argument for release of the materials and order release of the materials under the

Eleventh Circuit's doctrine.  Here again, providing the materials is not difficult, as they have been collected and submitted to the Court previously for *in camera* review.  *See* DE 330.

This may be the appropriate point to respond to the Government's vague assertion of "law enforcement investigative" privilege.  *See* Gov't Remedies Resp. at 28-29.  It is unclear what specific documents the Government is claiming are covered by this privilege.  For instance, with regard to the grand jury information just discussed, it seems likely that much of the information would be substantive information or testimony about Epstein's crimes – not information somehow disclosing "law enforcement techniques and procedures."  Gov't Remedies Resp. at 28.  But in any event, when the Government invokes a privilege, it has "the burden of proving that a [privileged] relationship existed and that the particular communications were confidential." *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003).  Of course, these are factual propositions that must be established through evidence — not mere assertion. *See, e.g.*, *Brown v. City of Margate*, 842 F. Supp. 515, 520 (S.D. Fla. 1993) (holding that the city failed to carry its burden to prove attorney-client relationship), *aff'd*, 56 F.3d 1390 (11th Cir. 1995).  And the Government (like any other litigant) must provide a privilege log when it asserts privilege over materials at issue.  *See* Fed. R. Civ. P. 26(b)(5).  Indeed, as the Court is well aware from earlier proceedings in this case, it has ordered a privilege log when privileges have been at issue.  *See, e.g.,* DE 190 at 2.

Against that backdrop, this Court must reject the Government's ambiguous and general invocation of some sort of "law enforcement investigative privilege."  Most obviously, the Government has simply failed to establish the factual predicate for any such privilege.  The proper procedure for establishing a predicate is through filing affidavits or other similar evidence – the approach that the Government previously followed.  *See, e.g.*, DE 238-1 (affidavit regarding

deliberative process privilege) and DE 243-1 (same).  And, of course, even had the Government filed such affidavits, it would be necessary to link them to a privilege log on a document-by-document basis.  Here again, the Government has not even attempted to so – meaning that Jane Doe 1 and 2 have no opportunity whatsoever to contest the Government's privilege argument.[14]

A fair opportunity to challenge the Government's argument is particularly important with regard to the alleged law enforcement privilege, because it is (at most) a qualified privilege – which can be overridden by the competing concerns.  *See Tuite v. Henry,* 98 F.3d 1411, 1418 (D.C. Cir. 1996).  Here the competing concern is, obviously, remedying a violation of the Crime Victims Rights Act.  But because the Government has failed to provide a privilege log and supporting affidavits for the facts undergirding its privilege assertion, Jane Doe 1 and 2 have been denied the opportunity to challenge, on a document-by-document basis, the Government's assertion – and correspondingly, the Government has failed to carry its burden of proof.  Given the Government's failures, the Court should reject the Government's privilege assertion as a basis for withholding any documents.

*Remedy 10 – Victim's 302s.*

Jane Doe 1 and 2 also requested, on behalf of themselves (and other similarly situated Epstein victims) release of unredacted copies of the reports of FBI investigative interviews *with*

---

[14]    For some reason, the Government briefly refers to the Freedom of Information Act (FOIA), which contains certain restrictions on the kind of information that the public can obtain about a criminal case.  *See* Gov't Remedies Submission at 28-29.  But clearly Jane Doe 1 and 2 – recognized victims of Epstein's sex crimes – stand on different footing from members of the general public.  For example, Jane Doe 1 and 2 have CVRA rights that the Government illegally violated, a violation which this Court must now remedy.  And, in addition, any application of FOIA's restrictions on release of information would depend on the Government proving the factual point that the conditions supporting the restrictions apply – a factual premise that is entirely lacking.

*them* – i.e., release to them of their own personal "302's".  *See* Jane Does' Remedies Submission

at 6 (remedy 10). The Government does not specifically contest this request.  Given the passage

of time that has occurred due to the Government's intransigence in this case, each victim should

at least – at minimum – be able to read the unredacted report of what she told the FBI in Florida

in 2006 and 2007.

To avoid any confusion, in this request, the two victims are only asking for release of *their*

302's to *them*.  So, for example, Jane Doe 1 requests that the Court release *to her* the FBI 302 of

*her* interview with the FBI.  Jane Doe 2 would receive the same thing – *her* FBI 302 upon request.

And the same would be the case, upon request, for Jane Does 3, 4, 5, etc.

The Government is not in any harmed by this request.  And it is helpful to individual

victims to see what *they themselves* reported to the FBI back when this case was being investigated.

No contrary argument having been provided, the 302's should be released.

*Remedy 11 – Materials Submitted In Camera*.

For the reasons explained above in connection with remedy 8, the Court should also release

to Jane Doe 1 and 2 all materials submitted to it in camera.

*Remedy 12 - Materials Over Which the Government Has Waived Privilege*

Another one of Jane Doe 1 and 2's informational requests (proposed remedy 12) is also

entirely unopposed.  Jane Doe 1 and 2 have long been attempting to obtain certain materials

involving prosecutorial deliberations submitted to the Court for in camera review.   The

Government argued that these materials were protected through work product and other privileges.

And yet in response to Jane Doe 1 and 2's summary judgment motion, the Government made many

representations about its internal deliberations, claiming that these deliberations involved nothing

but benign intentions.  Whatever else may be said about these claims, the Government surely waived work product and other protections.  *See generally* Jane Doe 1 and 2's Motion for Finding of Waiver of Work Product and Similar Protections and for Production of Documents, DE 414.

In reviewing this motion, this Court previously concluded that it did not need to reach the issue of waiver of privilege "[g]iven . . . the Court's . . . ruling in favor of [Jane Doe 1 and 2] on [the summary judgment motions]."  359 F.Supp.2d at 1213 n.3.  But the Court specifically stated that Jane Doe 1 and 2 "may reassert this argument if and when appropriate."  *Id.*  In part I.C, *supra*, the victims did reassert their argument.

In addition to specifically reasserting here their motion found in DE 414, previously in their remedies submission, Jane Doe 1 and 2 also specifically reasserted their argument as a remedial measure.  *See* Jane Does' Remedies Submission at 27-29.  Indeed, to avoid any confusion, the two victims recounted the Court's statement that they could reassert their argument if and when appropriate.  The victims directed stated that "[t]he time for reasserting this argument has arrived."  *Id.* at 28.  And Jane Doe 1 and 2 listed this request very specifically as remedial request 12 ("The Government shall within 30 days provided to Jane Doe 1 and Jane Doe 2 . . . all materials covered by the motion filed in DE 414").  And they provided specific justifications for the release of these materials as remedial measure, in addition to reasserting the waiver arguments previously made.  *See* Jane Does' Remedies Submission at 27-29.

The Government makes no specific response to this requested remedy.  As discussed in Part II.D.2, *supra*, the only conceivably responsive argument from the Government is its vague "law enforcement privilege" argument.  For the reasons discussed above, that undeveloped argument provides no basis for the Court to deny release of the requested materials.  Moreover,

54

as relevant to requested remedy 12, any investigative privilege claim is obviously off target for most of the documents sought.  Law enforcement privilege covers "law enforcement techniques and procedures" (Gov't Remedies Submission at 28), while the target documents in DE 414 are documents regarding deliberations by prosecutors. Nor has the Government provided a proper privilege log to invoke this claim.  And, for the reasons Jane Doe 1 and 2 explained in DE 414 (and in their reply, DE 422), the Government has waived any applicable privileges over these materials, and the Government does not argue otherwise.

In sum, the Government does not substantively contest Jane Doe 1 and 2's remedy request 12.  Accordingly, the Court should release to Jane Doe 1 and 2 all documents covered by DE 414.

<em>Remedy 13 – Materials Covered by DE 348</em>

Finally, one other informational remedy is unopposed.  Jane Doe 1 and 2 requested that the Court release the materials covered by DE 348.   *See* Jane Does' Remedies Submission at 6 (request 13).  Jane Doe 1 and 2 observed that they had previously explained in detail why that information was important to understanding what had happened to them.  *Id.* at 29 (citing DE 348). Jane Doe 1 and 2 noted that this Court has previously found it was unnecessary to reach this motion because it was granting summary judgment in favor of the Jane Does, denying the motion for release of materials "without prejudice."  359 F.Supp.2d at 1222.  Accordingly, Jane Doe 1 and 2 reasserted their request for the information as an appropriate remedy.  Jane Does' Remedies Submission at 29.

The Government does not even discuss requested remedy 13 (or DE 348) in its response, much less specifically object to this remedy.  Accordingly, the Court should grant this remedy.

55

### 3. Remedy 14 - Educational Remedies.

Jane Doe 1 and 2 also seek an additional remedy (remedy 14) related to educating prosecutors in the USAO-SDFL about protecting victims' rights. The Government has acquiesced to this request, agreeing to provide additional training to that Office. *See* Gov't Remedies Resp. at 7. Accordingly, this Court should simply order what the Government has agreed to do.

### 4. Remedies 15, 16, and 17 - Miscellaneous Remedies

Jane Doe 1 and 2 also seek three additional categories of remedies (remedies 15, 16, and 17 above) of a miscellaneous nature, including monetary sanctions (remedy 15), restitution to victims (remedy 16), and attorneys' fees (remedy16). The Court should also award these remedies.

*Remedy 15 – Monetary Sanctions*

Jane Doe 1 and 2 requested that the USAO-SDFL be directed to pay a monetary sanction, in an amount to be determined following a hearing before the Court, to Jane Doe 1 and Jane Doe 2 or to any appropriate entity that they may direct or that the Court may find is appropriate. Jane Does' Remedies Submission at 30. The Government responds with just three sentences, arguing that this is a request for damages – precluded by 18 U.S.C. § 3771(d)(6), which provides that the CVRA does not "authorize a cause of action for *damages*."

But as Jane Doe 1 and 2 made clear, they were not seeking damages – and they did not attempt to quantify any damage or other losses that they suffered as a result of the Government's illegal behavior. Instead, they made clear they were seeking *sanctions* for the Government's failure to comply with the law. Jane Does' Remedies Submission at 30. "Damages" and "sanctions" are two very different things. *Compare* BLACK'S LAW DICTIONARY 471 (10th ed.) (defining "damages" as money ordered to be paid to "a person as compensation for loss or injury")

56

*with id.* at 1541 (defining a "sanction" as a "provision that gives force to a legal imperative by . . . punishing disobedience").  Because the only argument that the Government advances is that remedy 15 is an impermissible claim for "damages" – and because that argument is demonstrable false – the Court should grant this remedy.

The Government does not dispute Jane Doe 1 and 2's point that "a traditional means for enforcing rights through the imposition of sanctions for failure to comply with a law."  Jane Does' Remedies Submission at 30.  Indeed, the "inherent power" of the courts "to police those appearing before them" is well recognized, specifically the power "to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).  Sanctions can be imposed under the Court's inherent power to "justly punish" an offending party and to "deter others from engaging in similar conduct."  *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1337 (11th Cir. 2002).  And with regard to the CVRA in particular, Congress has indicated its "clear intent and expectation of Congress that the district . . . courts will establish procedures that will . . . giv[e] meaning to the rights we establish." 150 CONG. REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl).  A monetary sanction will give meaning the victims' right to confer which the Government deliberately violated, thus both punishing the Government's improper actions in this case and deterring such action in the future.  Accordingly, the Court should impose a monetary sanction.[15]

*Remedy 16 – Restitution Paid by the Government*

---

[15] As explained below in connection with remedy 17, an award of attorneys' fees is also permissible as a sanction.

Jane Doe 1 and 2 also asked the Court to award to them (and all other Epstein victims who so request) restitution, payable by the Government.  Jane Does' Remedies Submission at 30-31. In its brief response, the Government asserts this request is for impermissible "damages."  Gov't Remedies Resp. at 29.  But here again, the terms "damages" and "restitution" are very different. The CVRA does not preclude an award of restitution.  And this Court has authority to make such an award under 18 U.S.C. § 3771(b)(1), as part of its CVRA enforcement power.  The Court should accordingly order the Government to pay restitution, in amounts to be determined through the normal process.

*Remedy 17 – Attorneys' Fees*

Jane Doe 1 and 2 also asked for an award of attorneys' fees to their attorneys who have handled this case.  Jane Does' Remedies Submission at 31-32 (remedy 17).[16]   In its three-sentence response, the Government argues only that the doctrine of sovereign immunity bars such an award. *See* Gov't Remedies Resp. at 30.

Before turning to the sovereign immunity issue, it is important to understand that the Government's limited response concedes important facts relating to the attorneys' fees request.  In particular, Jane Doe 1 and 2 explained in their initial remedies submission why such an award of fees was "just and proper."  Jane Does' Remedies Submission at 31-32.  They noted that they have devoted several thousand hours of legal time to vindicating the rights of Jane Doe 1 and 2 (and other Epstein victims), litigation efforts that have benefitted the public.  Indeed, if the Court fails to award attorneys' fees, the result will surely be to dramatically discourage the enforcement of

---

[16]  The attorneys' fees would, of course, only involve this CVRA case, not any other matter.

victims' rights in other cases, as the Government can warn other attorneys that they may face prohibitive financial expenditures if they attempt to vindicate the CVRA rights of victims.

In addition, Jane Doe 1 and 2 explained that an attorneys' fees award was particularly appropriate in this case, because the Court's earlier findings demonstrated that the Government had engaged in vexatious or oppressive litigation – or, at the very least, that the Government was estopped from denying that such litigation had occurred. *See* Jane Does' Remedies Submission at 31-32. Indeed, this litigation has now gone on for longer than a decade, with the Government refusing to stipulate to undisputed facts (*see* DE 41 at 2-4), unfairly forcing Jane Doe 1 and 2 to prove the Government's concealment of the NPA. Here again, the Government did not raise any substantive response to the Jane Does' arguments.

Rather than contest the fairness and justness of an attorneys' fees award – or the underlying factual basis for such an award – the Government raises only a single argument: sovereign immunity. Gov't Remedies Resp. at 30. In the Government's view, no statutory basis exists for the Court to award fees.

Once again, the Government fails to substantively engage the arguments advanced by Jane Doe 1 and 2. The two victims' specifically relied on the statutory provision contained in the CVRA requiring that this Court "shall ensure that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1), discussed in Jane Does' Remedies Submission at 32. That enforcement provision provides the necessary waiver of any sovereign immunity – and the Government fails to argue otherwise.

In addition, Jane Doe 1 and 2 argued in their initial submiss that the CVRA's right to be treated "with fairness" justified an attorneys' fees award. Jane Does' Remedies Submission at 32.

The Court should enter a finding that the Government violated the two victims' right to be treated with fairness and predicate an attorneys' fees award on that basis as well.

In addition to the CVRA's provisions, a statutory waiver of sovereign immunity is found in the "Hyde Amendment," Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).  The Hyde Amendment specifically allows an award of "a reasonable attorney's fee," *id.*, and thus constitutes an express and undeniable waiver of sovereign immunity.

While the Hyde Amendment is ordinarily invoked by criminal defendants who have been acquitted, the plain language of the Amendment is not so limited.  To the contrary, the Amendment provides that the "the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) ... may award to *a prevailing party, other than the United States*, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust."  *Id.* (emphasis added).  If Congress had decided to limit the Hyde Amendment to "defendants," it could have simply drafted the statute that way.  Instead, Congress expressly opted for a broader formulation.  Rather than being restricted to criminal defendants, the Hyde Amendment's plain language authorizes attorneys' fees for a "prevailing party, other than the United States" – a category that in this case surely includes Jane Doe 1 and 2 who have prevailed on the substantive issues.  *See* 359 F.Supp.3d at 1222 (*granting* Jane Doe 1 and 2's motion for summary judgment).

The Hyde Amendment applies broadly to "*any* criminal case."  And, as the Government concedes in its remedies submission, this case is a criminal case.  *See* Gov't Remedies Resp. at 11-

12 (noting that "the CVRA is found in Part II of Title 18, which is part of the United States Code specifically devoted to 'Criminal Procedure.'  The CVRA does not contemplate civil litigation."); *see also In re 1997 Grand Jury*, 215 F.3d 430, 434 (4th Cir. 2000) (attorneys' fees can be awarded under the Hyde Amendment where "the underlying action" is "criminal in nature") (considering on the merits whether to award fees in contempt proceeding related to alleged threats to a grand jury).

To obtain a fee award under the Hyde Amendment, it is insufficient to show that the Government has merely made some sort of mistake. Instead, it is necessary to demonstrate conscious wrongdoing.  *See United States v. Shaygan*, 652 F.3d 1297, 1313 (11th Cir. 2011) ("We define bad faith for purposes of the Hyde Amendment as 'the conscious doing of a wrong'" (*quoting United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (*quoting* BLACK'S LAW DICTIONARY 139 (6th ed. 1999)).  This case is a rare case involving no mere accident – instead, this Court has previously made findings of fact about the USAO-SDFL's  affirmative "*decision* to conceal the existence of the NPA and *mislead* the victims to believe that federal prosecution was still a possibility."  359 F.Supp.3d at 1219 (emphases added). And rather than stipulate to these facts, that Office engaged in ten years of litigation to conceal what it has done.  *See* DE 41 at 2-4. Moreover, as noted above, the Government failed to challenge Jane Doe 1 and 2's claim for attorneys' fees based on "vexatious" and "oppressive" litigation – and has even asserted privilege over documents that would shed further light on the subject.  *See* Jane Does' Remedies Submission at 31-32.

In these circumstances, all the prerequisites for an attorneys' fee award (and award of expenses) under the Hyde Amendment are clearly in place, and the Court should order such an

award – following appropriate submissions from counsel for Jane Doe 1 and 2 and any response

from the Government as to the size of the award.  In particular, in a supplemental submission, Jane

Doe 1 and 2 will demonstrate (if these issues are even contested) that they are eligible for an award

of attorneys' fees, that they were the "prevailing" parties in this case, and that the fees that they

are seeking are reasonable.  18 U.S.C. § 3006A; *see also* 28 U.S.C. § 2412 (providing procedures

for attorneys' fees claims).

      For all the reasons just explained, this case is appropriately viewed as a "criminal case,"

for which the Hyde Amendment authorizes attorneys' fees.  The Court has not yet determined the

precise status of this case, however, while indicating that convenience dictates that the Federal

Rules of Civil Procedure "govern the general course of these proceedings."  *See* DE 257 at 3 (*citing*

DE 190).  If the Court concludes that, for purposes of attorneys' fees, this case is properly viewed

as a "civil" case, then Jane Doe 1 and 2 would likewise be entitled to attorneys' fees, but under a

different statute – the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.  EAJA provides that

"[u]less expressly prohibited by statute, a court may award reasonable fees and expenses of

attorneys . . . to the prevailing party in any civil action brought by or against the United States . . .

in any court having jurisdiction of such action. The United States shall be liable for such fees and

expenses to the same extent that any other party would be liable under the common law or under

the terms of any statute which specifically provides for such an award."  28 U.S.C. § 2412(b).  If

the Court concludes that this case is a "civil case" for purposes of determining attorneys' fees, then

Jane Doe 1 and 2 respectfully request an opportunity to explain why they are entitled to fees under

EAJA.

Not only does the basis for a fee award exist in these statutes just discussed, but the Court's inherent power to impose sanctions supports such an award as well. Once again, the Government does not substantively challenge Jane Doe 1 and 2's arguments that sanctions are factually supported (*see also* Remedy 15, discussed above), relying solely on its sovereign immunity argument. But "[t]he question of the scope of a waiver of sovereign immunity falls away when a court acts under its sanctioning powers . . . ." *F.D.I.C. v. Maxxam, Inc*., 523 F.3d 566, 595 (5th Cir. 2008). This is because the federal government, "as a party to a lawsuit, is subject to the same ethical and procedural rules as a private litigant and risks the same sanctions if it fails to abide by these rules." *Id.* An award of attorneys' fees is appropriate as a sanction as well.

### 5. Remedy 18 - Sealed Remedies.

Jane Doe 1 and 2 also previously sought remedies the nature of which is under seal (hereinafter "sealed remedies"), as explained in their sealed supplemental pleading on remedies, filed on December 6, 2011. In their recent remedy submission, Jane Doe 1 and 2 reasserted their request for those remedies. Jane Does' Remedies Submission at 32-33 (developing request for remedy 18). The Government has not responded to – much less objected to – these remedies, and accordingly the Court should simply grant these remedies as unopposed.

In addition, the Court should now unseal Jane Doe 1 and 2's requests. In light of yesterday's filing of charges by the Southern District of New York, the need for sealing of these requests has disappeared. Given the questions that have swirled around the Epstein case, the public should have the maximum possible information about what is occurring this case. The Court should unseal all information and earlier briefing concerning remedy 18.

**6. Remedy 19 - All Other Just and Proper Remedies.**

To be clear, Jane Doe 1 and 2 also continue to request any other or additional remedy that the Court deems just and proper to remedy the past violations of the CVRA rights of Jane Doe 1 and 2 (and all other Epstein victims) and to prevent any future violation of their CVRA rights. *See* Jane Does' Remedy Submission at 33.

**III.    THE GOVERNMENT HAS WAIVED ANY ESTOPPEL ARGUMENT.**

At various points in some earlier pleadings, the Government (then represented by the U.S. Attorney's Office for the Southern District of Florida) suggested that it would raise an "estoppel" argument in connection with remedies. This Court noted that it would take up this issue at an "appropriate juncture."   359 F.Supp.3d at 1221.   However, in its remedies submission, the Government (now represented by the U.S. Attorney's Office for the Northern District of Georgia) declined to advance any estoppel argument.[17]   Accordingly, no estoppel argument is before the

---

[17] The Government did drop a footnote, noting that it is maintaining its earlier position in connection with the summary judgment motion that the initial period of delay from the filing of this lawsuit until 18 months later created some sort of estoppel against the victims regarding that period of time.  Gov't Remedies Resp. at 17 (citing DE 401-2 at 28-29).  However, the Government does not further develop this argument, particularly in light of the Court's intervening ruling *granting* summary judgment.  As this Court has repeatedly held, "Addressing a legal argument only in a footnote is an incorrect method to present substantive arguments on the merits." *Plain Bay Sales, LLC v. Gallaher*, No. 18-80581-CIV, 2019 WL 1782761, at *6 (S.D. Fla. 2019) (*citing Connor v. Midland Credit Mgmt., Inc.*, No. 18-23023-CIV, 2019 WL 717413, at *4, n. 1 (S.D. Fla. 2019) (*citing Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2014 WL 5846735, at *2 n.1 (S. D. Fla. 2014) (not considering argument raised in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote)).  Accordingly, the Court should find that the Government has waived this argument.  So that the record is clear, if the Court chooses to reach this issue, Jane Doe 1 and 2 maintain all of their previously filed responses.  *See* DE 416 at 54-63 (responding at length to Government's estoppel position); *see also* DE 41 at 2-4 (explaining the Government obstinacy was the basis for delay).

Court and, obviously, Jane Doe 1 and 2 have not had an opportunity to contest any such argument. Accordingly, the Court should not hesitate to award appropriate remedies for any reason relating to "estoppel."

## IV.     THE COURT SHOULD EXPEDITE A RULING ON REMEDIES.

As the Court is aware, the Government has succeeded in delaying a resolution of this case for more than a decade.  Congress has directed district court to rule rapidly on crime victims' rights issues.  *See* 18 U.S.C. § 3771(d)(3) (the district court "shall take up and decide any motion asserting a victim's right forthwith").  Accordingly, the Court should rule rapidly here.

Indeed, the need for a very rapid ruling has become even more apparent yesterday. Prosecutors in the Southern District of New York are moving forward quickly with federal sex trafficking charges against Epstein in that jurisdiction.   Because of the immunity provisions that exist in this district, however, victims in Florida are essentially frozen out of any ability to shape the course and scope of charges here – which presumably could interplay with what is currently happening in New York.  A rapid ruling from this Court granting the victims the remedies that they request is, accordingly, necessary to avoid further compounding the damage that has already been done by the NPA to Epstein's Florida victims by denying them an opportunity to meaningfully confer.

## V.     REQUEST FOR A HEARING (IF NECESSARY).

If the Court requires any further factual predicate from Jane Doe 1 and 2 to secure any of the remedies requested above, they request a hearing and opportunity to provide that predicate.

65

**CONCLUSION**

This is an extraordinary case – and it requires extraordinary relief.  For the first time in American history – and, one hopes, the last – the Government and an international sex trafficking conspiracy worked together to consummate a clandestine agreement *blocking* federal prosecution of multiple sex trafficking offenses committed in the Southern District of Florida.  The concealed agreement barred prosecution not just of the conspiracy's leader, but all of his "potential coconspirators" – many powerful men (and some women) who were never identified.  The linchpin to the brazen plan was illegally keeping the deal secret, as it would never have survived public or judicial scrutiny.  Indeed, the U.S. Attorney appears to have consummated the deal in a private, one-on-one, "breakfast meeting" with one of Epstein's high-powered lawyers.

Yesterday, federal prosecutors in New York demonstrated that an indictment of Epstein was possible for similar crimes Epstein committed against a smaller number of victims in that jurisdiction.  As a result, the questions swirling around why the U.S. Attorney's Office for the Southern District of Florida chose to secretly bar federal prosecution in Florida for hundreds of federal sex trafficking crimes committed by Epstein – and all of his powerful friends – only continue to mount.

This Court has now held that the Government's illegal actions, undertaken at Epstein's request, violated Jane Doe 1 and 2's rights under the Crime Victims' Rights Act.  And the Court possesses ample power to respond to this shameless attempt to keep innocent victims in the dark about why multiple federal sex crimes were to go unpunished.  The Court should accordingly grant Jane Doe 1 and Jane Doe 2 all the remedies discussed above, including rescission of the NPA's

66

"immunity" provisions precluding prosecution of Epstein and his coconspirators for federal sex crimes committed in the Southern District of Florida.

DATED: July 9, 2019

Respectfully Submitted,

/s/ *Bradley J. Edwards*

Bradley J. Edwards
Edwards Pottinger LP
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (800) 400-1098
E-Mail: brad@epllc.com

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah[*]
383 S. University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
E-Mail: cassellp@law.utah.edu

John Scarola
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Telephone: (561) 686-6300
E-Mail:  jsx@searcylaw.com

*Attorneys for Jane Does 1 and 2*

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah.

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was served on July 9, 2019, on counsel of record using

the Court's CM/ECF system:

Jill E. Steinberg
Nathan P. Kitchens
U.S. Attorneys' Office for the Northern District of Georgia
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000
Jill.Steinberg@uisdoj.gov
Nathan.Kitchens@usdoj.gov

*Attorneys for the Government*

Roy Eric Black
Jacqueline Perczek
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard
Suite 1300
Miami, FL 33131
305-371-6421
Fax: 358-2006
Email: pleading@royblack.com

*Attorneys for Jeffrey Epstein*

/s/ *Bradley J. Edwards*

68