UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80736-Civ-Marra/Johnson

JANE DOE #1 and JANE DOE #2

v.

UNITED STATES
_____/


**JANE DOE 1 AND JANE DOE 2'S STATEMENT NOTING DEATH PURSUANT TO RULE 25 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

COME NOW Jane Doe 1 and Jane Doe 2 (also referred to as "the victims"), by and through undersigned counsel, to provide this statement noting Jeffrey Epstein's death, pursuant to Rule 25 of the Federal Rules of Civil Procedure.

Under Rule 25, parties to an action are entitled to file a "statement noting death." Accordingly, the victims file this statement noting intervenor Jeffrey Epstein's death.  Because his death also moots several matters currently pending before the Court, victims' counsel also believe they are duty-bound to briefly and rapidly alert the Court to these implications of Epstein's death. Neither the Federal Rules of Civil Procedure nor this Court's local rules provide procedures for alerting the Court to issues that have become moot.  Accordingly, victims' counsel proceed by way this Statement Noting Death.  If the Court believes that a motion for leave to make a filing regarding mootness is required, the victims would respectfully request leave to file such a motion.

In light of Epstein recent passing, all his objections to the victims' proposed remedies have become moot.  And most of the Government's objections – which were likewise predicated on protecting Epstein's interests – have also become moot.  No other persons have sought to intervene

1

to raise objections.  Accordingly, the Court should grant the victims all of their proposed remedies – including invaliding the provisions in the non-prosecution agreement that precludes prosecution of Epstein's co-conspirators.

## FACTUAL BACKGROUND

On August 10, 2018, according to numerous sources whose authenticity cannot be reasonably questioned, Jeffrey Epstein died.  *See, e.g.,* Statement from Attorney General William P. Barr on the Death of Jeffrey Epstein (Aug. 10, 2018), available at https://www.justice.gov/opa/pr/statement-attorney-general-william-p-barr-death-jeffrey-epstein.

## DISCUSSION

I.   **ALL OF EPSTEIN'S OBJECTIONS TO THE VICTIMS' PROPOSED REMEDIES ARE NOW MOOT.**

In light of Epstein's death, all Epstein's objection to the victims' proposed remedies (DE 463) are now moot.  *See United States v. Romano*, 755 F.2d 1401, 1402 (11th Cir. 1985) ("When a defendant dies pending direct appeal of his criminal conviction, the Court will dismiss the appeal as moot with respect to that defendant and remand the case to the district court to vacate the judgment and dismiss the indictment.").

In addition, the Court lacks jurisdiction to determine any objections that Epstein raised.  As is well-settled, "The Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 1975).  With respect to Epstein's complaints, since the complaining party is now deceased, this Court lacks jurisdiction to address his arguments.

## II.   THE GOVERNMENT NOW LACKS STANDING TO RAISE MANY OF ITS OBJECTIONS TO THE VICTIMS' PROPOSED REMEDIES, INCLUDING THE PARTIAL RESCISSION REMEDY.

Many of the Government's objections to the victims' proposed remedies (DE 462) were predicated on protecting Epstein's interests.  Because his interests in this criminal case do not survive his death, the Government's corresponding objections have become moot.  The Government lack standing to raise them and the Court lacks jurisdiction to address them.

With regard to the rescission remedies, at this point the issue before the Court pertains not to whether to rescind the NPA's provisions blocking Epstein's prosecution (a moot point) but whether to rescind the NPA's provisions blocking the prosecution of Epstein's co-conspirators.[1] The only objections that the Government raised to rescinding the NPA's provisions were, first, unfairness to Epstein and, second, the possibility that Epstein might seek to recapture various financial payments made to some victims under the NPA.  Neither objection retains any viability in the wake of Epstein's death.

With regard to the first objection, as noted above, issues pertaining to fairness to Epstein are no longer before the Court – they have both become moot and moved outside this Court's case-and-controversy jurisdiction.  For example, Government raises various arguments about the contractual consideration that Epstein provided for the (illegal) non-prosecution agreement.  DE 462 at 18-19.  But the Government lacks "standing" to raise any issue about what consideration Epstein may (or may not) have provided for his agreement.  The Government plainly suffers no injury if this Court rescinds the NPA's co-conspirator immunity provisions, thereby giving the

---

[1]   As their first proposed remedy, the victims sought rescission not only of the NPA's provision barring the prosecution of Epstein, but also rescission of the provision barring prosecution of his named and unnamed conspirators.  *See* DE 458 at 4.

3

Government *greater* power to prosecute criminals – e.g., the power to prosecute Epstein's co-conspirators for sex offenses in the Southern District of Florida.  Indeed, the Government did not discuss co-conspirators at all in its submission.  Thus, in light of Epstein's death, the Court must grant the victims (among other things) the rescission remedy that they seek regarding co-conspirators, because the Court lacks any cognizable objections to this remedy.

Any other result would violate the CVRA, which promises crime victims a right to be "treated with fairness."   18 U.S.C. § 3771(a)(8).  It would be unfair to the victims if Epstein not only managed to cheat justice through his death, but also left behind some kind of legal issue preventing the victims from obtaining the rescission remedy to which they are plainly entitled.

In addition, the Government raised the specter that partial rescission of the NPA might subject some victims to the possibility that Epstein would seek to recoup financial payments he made to them under the NPA. DE 462 at 15-18.  The victims have already responded to the Government's mistaken concerns on their own merits.  *See, e.g.,* DE 464 at 16-19.  But in light of Epstein's death, any theoretical possibility that he could recover financial payments has evaporated.  Epstein made his payments personally through the non-prosecution agreement – a non-prosecution agreement that was ancillary to a criminal prosecution.  *See* DE 290 at 2 (Government describes this case as involving "ancillary criminal proceedings").  Because the NPA arises from a criminal case, only Epstein personally would have standing to make any arguments about the NPA's financial aspects, as criminal cases are personal to an individual.

No substitution of any party is possible for Epstein.  The NPA does not provide for any substitution of parties. Nor does federal law.  Wright & Miller, 7C FEDERAL PRAC. & PROC. § 1954 (3d ed.)  ("Nor does federal law generally provide for substitution of parties.").  And Epstein's only status in this case was as an intervenor on remedy issues – a status that has now disappeared

4

with his death.  DE 246 at 1 (granting Epstein personally a right to intervene).  Accordingly, any issue of Epstein attempting to withdraw financial payments has now likewise disappeared.

To be sure, in theory, with regard to rescission, a potential co-conspirator of Epstein's might have had standing to seek to intervene in this case at some earlier time.[2]  But as this Court is well aware, this case has spanned more than eleven years, and no one has sought intervention as a third-party beneficiary of Epstein's NPA.  Indeed, neither Epstein's brief nor the Government brief even discussed the co-conspirator immunity provisions – much less, raised any arguments on behalf of any co-conspirators.  Accordingly, the Court currently has before it no arguments from any co-conspirators objecting to granting the victims their requested rescission remedy or even pertaining to this issue.  In view of this posture, the Court should immediately grant the victims' currently unopposed remedy of rescinding the NPA's provisions barring prosecution of Epstein's coconspirators – as this Court lacks any currently cognizable objection to it.

## III.  THE NEED FOR THE COURT TO GRANT THE VICTIMS' OTHER PROPOSED REMEDIES HAS ONLY INCREASED DUE TO EPSTEIN'S DEATH.

Because of Epstein's death, the need for many of the victims' other proposed remedies has only increased – particularly the remedies concerning information for victims and holding a public hearing.  Because Epstein is now dead, there will never be a criminal trial to hold him accountable, either in the Southern District of Florida, the Southern District of New York, or elsewhere.  Accordingly, the victims (and the public) will never witness his public trial where the facts connected to sexual abuse will be fully aired.  This means that the informational remedies that the victims have sought regarding the case assume enhanced importance and should be granted by the

---

[2]  In noting this theoretical possibility, the victims do not concede that standing would have in fact existed.

Court.   And it also means that the public hearing – to which both the Government and the victims have agreed (*see* DE 464 at 43-46) – should also be held promptly, to give the victims at least some kind of day in court.  The only objection the Court received to the hearing was from Epstein, and his death moots that objection.

## CONCLUSION

Under Federal Rule 25(a)(2), the Court should take note of intervenor Jeffrey Epstein's death.  And for all the reasons the victims previously advanced – and advance in this notice – the Court should also expeditiously grant the victims all the remedies and other forms of relief that they seek, including rescission of the NPA's immunity provisions for Epstein's co-conspirators.

DATED: August 12, 2019

Respectfully Submitted,

/s/ *Bradley J. Edwards*
Bradley J. Edwards
Edwards Pottinger LP
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (800) 400-1098
E-Mail: brad@epllc.com

Paul G. Cassell
*Pro Hac Vice*
S.J. Quinney College of Law at the
University of Utah[*]
383 S. University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
E-Mail: cassellp@law.utah.edu

*Attorneys for Jane Does 1 and 2*

---

[*] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah.

6

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was served on August 12, 2019, on counsel of record

using the Court's CM/ECF system:

Jill E. Steinberg
Nathan P. Kitchens
U.S. Attorneys' Office for the Northern District of Georgia
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000
Jill.Steinberg@uisdoj.gov
Nathan.Kitchens@usdoj.gov

*Attorneys for the Government*


Roy Eric Black
Jacqueline Perczek
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard
Suite 1300
Miami, FL 33131
305-371-6421
Fax: 358-2006
Email: pleading@royblack.com

*Attorneys for Jeffrey Epstein*


/s/ *Bradley J. Edwards*


7