UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80736-CIV-MARRA

JANE DOE 1 AND JANE DOE 2,

Petitioners,

vs.

UNITED STATES of AMERICA,

Respondent.
_____/

**OPINION AND ORDER**[1]

This cause is before the Court upon Jane Doe 1 and Jane Doe 2's Submissions on Proposed Remedies (DE 458); the Government's Response to Petitioners' Submission on Proposed Remedies (DE 462); Limited Intervenor Jeffery Epstein's Brief in Opposition to Proposed Remedies (DE 463); Jane Doe 1 and Jane Doe 2's Reply to the Government in Support of their Submission on Proposed Remedies (DE 464); Jane Doe 1 and Jane Doe 2's Reply to Intervenor Epstein's Brief in Opposition to Proposed Remedies (DE 466); Jane Doe 1 and Jane Doe 2's Statement Noting Death Pursuant to Rule 25 of the Federal Rules of Civil Procedure (DE 475); Response to Rule 25 Notice, and Suggestion of Mootness (DE 476) and Jane Doe 1 and Jane Doe 2's Motion to Strike Response to Rule 25 Notice (DE 477).

On February 21, 2019, the Court entered its Order (DE 435) finding that the Government violated the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. §3771, when it failed to confer with Petitioners prior to entering into a non-prosecution agreement ("NPA") with Jeffrey Epstein ("Mr. Epstein"). The Court permitted the parties to brief and present additional evidence relative

---

[1] The Court presumes familiarity with its prior Orders.

to the issue of what remedies, if any, should be imposed by the Court as a result. The briefing was extensive and the Court has carefully reviewed all of the arguments. No additional evidence was presented by any of the parties. Furthermore, during the time the matter was under advisement, Mr. Epstein died, which resulted in additional briefing. The Court will simply provide an abbreviated summary of the parties' arguments, given that the briefs are available on the public docket.

Petitioners initially requested the following remedies: (1) rescind the provisions in the NPA between the U.S. Attorneys Office in the Southern District of Florida and Mr. Epstein that barred his prosecution and the prosecution of his named and unnamed alleged co-conspirators; (2) declare that the United States Constitution would permit such a prosecution; (3) enjoin the U.S. Attorney's Office to forthwith make its best efforts to protect the CVRA rights of Jane Doe 1 and Jane Doe 2 and other Epstein victims; (4) enjoin the U.S. Attorney's Office to forthwith confer with Jane Doe 1 and Jane Doe 2 and other Epstein victims to provide them with accurate and timely notice of future case events; (5) order a meeting for the victims with members of the current U.S. Attorney's Office and the former U.S. Attorney's Office, including former U.S. Attorney Alexander Acosta; (6) conduct a court hearing for victims, requiring the attendance of Mr. Acosta;[2] (7) provide various information to the victims including information in the Government's possession about why it did not prosecute Epstein's crimes, grand jury material, information from the Federal Bureau of Investigation ("FBI"), sealed material submitted by the Government to the Court and material filed by the Government in DE 414 and DE 348; (8)

---

[2] Petitioners' request included the required attendance of Mr. Epstein. Petitioners also requested a letter of apology from the U.S. Attorney's Office, but have since withdrawn that request.

require the Justice Department to conduct a course of training for employees in the U.S. Attorney's Office in the Southern District of Florida about the CVRA and (9) order the Government to pay monetary sanctions, restitution, attorney's fees and costs.

The Government asserts that these remedies are not authorized by the CVRA. The Government, however, states that it should have communicated more effectively with Petitioners and proposes the following remedies: (1) the Department of Justice will designate a representative to meet with Petitioners and other victims to discuss the decision to resolve the Epstein case; (2) the Government will participate in a public court proceeding in which Petitioners can make a victim impact statement and (3) all criminal prosecutors in the United States Attorney's Office for the Southern District of Florida will undergo additional training on the CVRA, victim rights and victim assistance issues.

Prior to his death, Mr. Epstein addressed the rescission remedies proposed by Petitioners, asserting that they were unauthorized by the CVRA, precluded by contract law, the doctrines of judicial and equitable estoppel, substantive due process, separation of powers and ripeness. Mr. Epstein also opposed the Government's proposed remedy of a proceeding in which "unadjudicated victims" "make impact statements about a person who has not been convicted of, or facing sentencing for, a federal crime," (DE 463 at 61.)

Petitioners provided the Court with a reply memoranda addressing both the Government's arguments (DE 464), as well as those of Mr. Epstein. (DE 466). On August 12, 2019, Petitioners filed a statement, noting Mr. Epstein's death. As part of that notice, Petitioners argue that Mr. Epstein's death rendered all of his objections to Petitioners' proposed remedies moot. (DE 475 at 1.) Moreover, Petitioners contend that most of the Government's objections which were

"predicated on protecting Epstein's interests" are also moot. (Id.)  Based on this theory, Petitioners urge the Court to grant all of Petitioners' proposed remedies, including invaliding the provisions in the NPA that precluded prosecution of Epstein's alleged co-conspirators. (Id.)

Mr. Epstein's attorneys responded that his death rendered Petitioners' request for rescission of the NPA moot.  Petitioners have asked the Court to strike this response since Mr. Epstein is dead, and therefore he should no longer have a voice in this proceeding.

Remedies against Jeffrey Epstein and the Alleged Co-Conspirators

Jane Doe 1 and Jane Doe 2 seek an order finding the provisions in the NPA barring the prosecution of Epstein's alleged co-conspirators null and void, to the extent they prevent their prosecution for federal crimes committed in the Southern District of Florida against Jane Doe 1 or 2 (or any other victim of a federal sex crime offense committed by Epstein's alleged co-conspirators within the Southern District of Florida).

Article III of the U.S. Constitution grants the judiciary the authority to adjudicate cases and controversies.  "In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy."  Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013).  "[A]n 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation."  Id. at 90-91; see also Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)); Gagliardi v. TJCV Land Tr., 889 F.3d 728, 733 (11th Cir. 2018) (a justiciable case or controversy must be present "at all stages of review.")

Here, there is no longer an Article III controversy permitting the Court to address the appropriateness of the remedy of rescission.  As a result of Mr. Epstein's death, there can be no criminal prosecution against him and the Court cannot consider granting this relief to the victims. Id. at 733.  ("Mootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way."); see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot.")

Likewise, the Court is without jurisdiction to grant Petitioners' request for rescission of the NPA provisions with respect to Mr. Epstein's alleged co-conspirators. That request invites the Court to render an advisory opinion.  "Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." National Advert. Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005).  "While the constitutional aspect of [the ripeness] inquiry focuses on whether the Article III requirements of an actual "case or controversy" are met, the prudential aspect asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time." Id.

By requesting rescission of the NPA with respect to the alleged co-conspirators, Petitioners seek a ruling affecting the rights of non-parties to this case.  If the Court granted such relief, and a criminal prosecution was to be instituted against the alleged co-conspirators, they would be free to assert the benefits, if any, which inured to them under the NPA as a bar to any prosecution. The question of the validity of the non-prosecution provisions of the NPA as they

5

relate to the alleged co-conspirators will have to be litigated with their participation if any prosecution against them is ever brought. Any decision by this Court on that question is meaningless without their participation in this proceeding. Steans v. Combined Ins. Co. of Am., 148 F.3d 1266, 1270 (11th Cir. 1998) ("a judgment *in personam* is not binding on a party who is not designated as a party.") Mr. Epstein chose to intervene in this case relative to the question of an appropriate remedy, and thus he would have been bound by any ruling issued by the Court. The alleged co-conspirators did not intervene, nor were they obligated to do so. See Martin v. Wilks, 490 U.S. 755, 763 (1989) ("a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined."), superseded by statute in not relevant part as stated in, Landgraf v. USI Film Products, 511 U.S. 244 (1994). Moreover, no party to this proceeding sought to join them to this case. Since the alleged co-conspirators are not parties to this case, any ruling this Court makes that purports to affect their rights under the NPA would merely be advisory and is thus beyond this Court's jurisdiction to issue.[3]

---

[3] A hypothetical will serve to buttress this conclusion. As was noted in the briefs of the parties, this action was initiated by Petitioners on July 7, 2008. (DE 1.) Four days later, this Court held a hearing on Petitioners' request for relief. (DE 10.) Shortly thereafter, on August 14, 2008, Petitioners' counsel chose not to pursue the request to invalidate the NPA at that time, but rather sought production of the NPA to evaluate it and decide how Petitioners wished to proceed. (DE 27 at 4.) Thereafter, there was no activity on the merits of this case for 2 years during which time Mr. Epstein performed under the NPA. The Court then issued an Order to Show Cause as to why the case should not be dismissed for lack of prosecution. (DE 40.) After receiving Petitioners' response to the Order to Show Cause (DE 41), the Court permitted the case to proceed and the parties began to litigate the case on the merits.

Let us assume at that point in the litigation, at which time Mr. Epstein had not intervened, rather than challenging Petitioners' claims, the United States had decided that it erred in failing to advise the victims of its intent to enter into the NPA, and agreed to settle this case with Petitioners. Petitioners and the United States then entered into a settlement agreement which provided, in relevant part, that they would submit a joint stipulation to the Court for the entry of a Consent Decree, a provision of which would hold that the NPA was invalid, and that the non-

Request for Injunction

Petitioners request that the Court issue an injunction requiring the U.S. Attorney's Office in the Southern District in Florida to make its "best efforts" to protect the CVRA rights of Mr. Epstein's victims, to confer with Jane Doe 1 and Jane Doe 2 and other Epstein victims who request it, and to provide them with accurate and timely notice of future case events.

The Court denies the request for the issuance of such injunctive relief. Petitioners only show "past exposure to illegal conduct" and do not show "continuing, present adverse effects." City of Los Angeles v. , 461 U.S. 95, 102 (1983). In discussing standing to seeking injunctive relief, the United States Court of Appeals for the Eleventh Circuit has explained the doctrine in the following way:

> Because injunctions regulate future conduct, a party has standing to seek injunctive

---

prosecution provision in the NPA was null and void. The Consent Decree would further provide that the United States Attorney's Office for the Southern District of Florida was free to prosecute Mr. Epstein for any federal crimes which he may have committed relative to the victims. Let us further assume that the Court approved the settlement agreement and entered a Consent Decree consistent with it. The United States Attorney's Office for the Southern District of Florida, armed with the Consent Decree holding that the NPA was invalid, then proceeded before a grand jury and obtained an indictment against Mr. Epstein. Mr. Epstein is then arrested and a criminal case against him proceeds. Under this hypothetical set of facts, could anyone seriously contend that Mr. Epstein would be bound by the Consent Decree which was entered in a case to which he was not a party and in which he had no opportunity to be heard? Of course not. Any such contention would be absurd. The Consent Decree would have been advisory only and not binding in any way against Mr. Epstein. The validity of the NPA would have to be litigated within the context of the criminal case brought against him. That is precisely the case with the alleged co-conspirators. The United States Attorney's Office for the Southern District of Florida can make an independent judgment as to whether it believes it is bound by the non-prosecution provision of the NPA as it relates to the alleged co-conspirators and proceed accordingly. If the office concludes it is not bound, and chooses to pursue criminal charges against those individuals, the validity of the non-prosecution provision will appropriately be resolved within the context of those criminal proceedings.

>relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury. Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past. Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.

Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir.1994) (internal citations and quotation marks omitted).

At this point, as to Mr. Epstein, there are no present or future CVRA rights of victims to protect. As to any alleged co-conspirators, the United States has agreed to confer with the victims regarding its decision relative to Mr. Epstein's case. It is further willing to participate in a forum[4] where the victims may express how their interaction with Mr. Epstein and his alleged co-conspirators affected them. The Government has also agreed to provide training to its prosecutors regarding the rights of victims under the CVRA. The Court has no reason to doubt the Government's representations to the Court, and no reason to believe that it will not follow through with these commitments. Hence, the Court concludes that there is no real and immediate threat of repeated violations of the CVRA, and that any injury that occurred in this case will remain entirely in the past. Thus, the Court finds that the granting of injunctive relief is not warranted in this case.

---

[4] While the parties contemplated this forum to be before this Court, it need not be and can be conducted anywhere the parties choose. The parties can also invite the news media to any such forum.

Meeting with the Former U. S. Attorney and Court Hearing

The Court has no jurisdiction over Alexander Acosta, the former U.S. Attorney, who is now a private citizen.  Therefore, the Court denies Petitioner's request that it order Mr. Acosta to appear at a meeting with the victims.  Given that the Government has agreed to arrange a meeting with Government representatives for Petitioners, the Court will not enter an Order directing this meeting. As indicated previously, the Court presumes and fully expects the Government will honor its representation that it will conduct this meeting.  The Court also declines to conduct a Court sanctioned proceeding to allow Mr. Epstein's victims an opportunity to address the Court on these topics.  First, it is a matter of public knowledge that the United States District Judge who was presiding over the criminal case brought against Mr. Epstein in the Southern District of New York already provided that opportunity to Mr. Epstein's victims.  Second, now that Mr. Epstein is deceased, any investigation regarding his criminal culpability has ended. To the extent any investigations are continuing as to Mr. Epstein's alleged co-conspirators, this Court can play no role in these investigations or their resolution, and the victims will have their opportunity to express their views to the U.S. Attorney's Office and other representatives of the U.S. Department of Justice who will have the ultimate say on how those investigations proceed.

Production of Documents

The parties have already engaged in discovery and the Court has previously made rulings concerning privilege and work product.  The finding by the Court of a violation of the CVRA does not void its finding on the privileged materials.  These privileged documents include those relating to the Government's decision to enter into the NPA with Mr. Epstein.  To the extent Petitioners seek production of FBI files relating to its investigation of Mr. Epstein and his alleged

co-conspirators, it is also a matter of public knowledge that there is an ongoing investigation by the Department of Justice relative those individuals. The FBI's documents, to the extent they were not otherwise protected by attorney/client or work product privileges, in all likelihood, are relevant to that ongoing investigation. The Court's ordering of production of those documents could adversely affect and interfere with that ongoing investigation. Thus, the Court will not order their production.

Furthermore, to the extent Petitioners seek this remedy based on their argument that the Court never ruled on whether the Government violated the Petitioners' right to be treated with fairness and to receive notice of court proceedings,[5] the Court rejects this theory. These rights all flow from the right to confer and were encompassed in the Court's ruling finding a violation of the CVRA. Thus, there is no basis for further production of documents.

Lastly, with respect to Petitioners' argument that they are entitled to grand jury records to obtain information as to why there was no prosecution of Mr. Epstein, the Court denies this request. The traditional rule of grand jury secrecy may be set aside under certain circumstances as set forth by Rule 6(e) of the Federal Rules of Criminal Procedure. "[T]he party seeking disclosure of the grand jury material must show a compelling and particularized need for disclosure." United States v. Aisenberg, 358 F.3d 1327, 1348 (11th Cir. 2004). Furthermore, "the private party must show circumstances had created certain difficulties peculiar to this case, which could be alleviated by access to specific grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process." Id.

---

[5] Likewise, the Court rejects Petitioners' argument that additional remedies flow from these additional rights.

at 1348-49 (internal quotation marks omitted). Here, Petitioners have not shown that they will suffer an injustice if they are denied access to grand jury materials. Nor have Petitioners shown that access to these materials is compelling or particularized to their asserted interests under the CVRA. Additionally, those materials may be relevant to any ongoing investigation relating to the alleged co-conspirators, the disclosure of which would interfere with that investigation. Therefore, the Court denies Petitioners access to the materials over which grand jury secrecy applies under Rule 6(e) of the Federal Rule of Criminal Procedure.

<u>Educational Remedies</u>

Petitioners seek an order requiring a course of training for employees in the U.S. Attorney's Office for the Southern District of Florida about the CVRA. The Government does not oppose providing such training. Once again, the Court presumes and fully expects the Government will honor its representation that it will provide training to its employees about the CVRA and the proper treatment of crime victims. Thus, the Court finds that issuance of such an order is not necessary or warranted under the facts of this case, and once again fully believes and expects that the Government will honor its representation.

<u>Monetary Sanctions, Restitution and Attorney's Fees</u>

The parties agree that the CVRA does not "authorize a cause of action for damages." 18 U.S.C. § 3771(d)(6). Petitioners seek sanctions, claiming that sanctions are a traditional means for enforcing rights for the failure to comply with a law.

Courts have the inherent power to impose sanctions based on the court's needs to "manage its own affairs so as to achieve the orderly and expeditious disposition of cases." <u>In re Sunshine Jr. Stores, Inc.</u>, 456 F.3d 1291, 1304 (11th Cir. 2006). This power, however, is to

manage and address actions that have taken place while litigation is pending before the Court, not to address actions taken prior to the litigation. See Woods v. Barnett Bank of Ft. Lauderdale, 765 F.2d 1004, 1014 (11th Cir. 1985)("The bad faith vexatious conduct must be part of the litigation process itself."); Lamb Eng'g & Const. Co. v. Nebraska Pub. Power Dist., 103 F.3d 1422, 1437 (8th Cir. 1997) (the district court's power to award attorney's fees as a sanction for bad faith conduct does not extend to prelitigation conduct); Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 766 (10th Cir. 1997) (same).[6] In contrast, remedies serve to redress a wrong that occurred prior to the litigation.

Notably, the cases cited by Petitioners in support of the imposition of sanctions (DE 464 at 60) involved conduct that arose during the course of litigation, and not conduct engaged in prior to the institution of the lawsuit. Here, Petitioners seek sanctions as punishment for the Government violating the CVRA, which is conduct that occurred prior to the institution of this

---

[6] In Chambers v. NASCO, Inc., 501 U.S. 32, 74 (1991), the dissenting Justices objected to the Court's ruling that they believed permitted sanctions being imposed for prelitigation conduct. 501 U.S. at 60 (Scalia, J., dissenting); 501 U.S. at 61(Kennedy, J., dissenting). The majority opinion in Chambers, however, made clear that its holding did not authorize the imposition of sanctions for prelitigation conduct. The Court stated, "the District Court did not attempt to sanction petitioner for breach of contract, but rather imposed sanctions for the fraud he perpetrated on the court and the bad faith he displayed toward both his adversary and the court throughout the course of the litigation," and the Court expressed "no opinion as to whether the District Court would have had the inherent power to sanction the petitioner for conduct relating to the underlying breach of contract." Chambers, 501 U.S. at 54 n.16. The Court further stated "the District Court made clear that it was policing abuse of its own process when it imposed sanctions 'for the manner in which this proceeding was conducted in the district court from October 14, 1983, the time that plaintiff gave notice of its intention to file suit.'" 501 U.S. 54 n.17. Thus, the majority opinion in Chambers implicitly supports this Court's ruling, and courts that have decided cases after Chambers have adopted this view. See Guevara v. Mar. Overseas Corp., 59 F.3d 1496, 1503 (5th Cir. 1995), abrogated on other grounds by Atl. Sounding Co. v. Townsend, 557 U.S. 404 (2009); Association of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 976 F.2d 541, 548–49 (9th Cir. 1992); see also supra Lamb Eng'g; Towerridge.

lawsuit. Authorized remedies, not sanctions, are therefore the appropriate conduit for such relief.

Petitioners also seek an award of restitution. Petitioners' request is improper for several reasons. First, it is essentially a request for money damages from the Government, which is not allowed under the CVRA. Second, although Petitioners claim the CVRA permits "the right to full and timely restitution" under the CVRA, restitution is limited only to those circumstances "provided in law." 18 U.S.C. § 3771(a)(6). Hence, Petitioners would have to point to a specific statute that authorizes an award of restitution. See 18 U.S.C. § 228(d); 18 U.S.C. §1593; 18 U.S.C. 2264; 18 U.S.C. § 2318(d); 18 U.S.C. §2323(c); 18 U.S.C. § 2428; 18 U.S.C. § 3556; 18 U.S.C. § 3572; 18 U.S.C. §3611; 18 U.S.C. § 3663; 18 U.S.C. § 3663A; 21 U.S.C. § 853(q); 21 U.S.C. § 882. The CVRA does not authorize an award of restitution against the United States.

The Court also rejects Petitioners' request for attorney's fees. To the extent Petitioners seek fees by claiming the Government acted in bad faith or vexatiously, the Court rejects that position. While the Court concluded that the Government violated the CVRA, the Court did not and does not find that the Government acted in bad faith throughout this litigation. Nor does the Court find any basis to draw such a conclusion on the record before it. Although unsuccessful on the merits of the issue of whether there was a violation of the CVRA, the Government asserted legitimate and legally supportable positions throughout this litigation. Thus, there is no basis to grant Petitioners attorney's fees as a sanction. Nor is there a basis to grant Petitioners attorney's fees because their "litigation efforts directly benefit[ted] others." (DE 458 at 31 citing Chambers, 501 U.S. at 45.) This theory relies upon a line of cases that permits the allowance of attorney's fees out of a fund which created, increased or was preserved by an attorney's services and for

13

which equity courts historically permitted compensation for the attorney's successful efforts. See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975); Sprague v. Ticonic Nat. Bank, 307 U.S. 161 (1939). This theory is simply inapplicable to the facts of this case. For these reasons, the Court denies Petitioners' request for attorney's fees.[7]

Motion to Strike

The Court denies Petitioners' Motion to Strike. The legal arguments made by Mr. Epstein's attorneys simply provide the current state of law that the Court is obligated to follow, whether or not Mr. Epstein's attorneys provided the Court with a memorandum of law.

Conclusion

This Order brings to an end this lengthy and contentious litigation. Recent events have rendered the most significant issue that was pending before the Court, namely, whether the Government's violation of Petitioners' rights under the CVRA invalidated the NPA, moot. Other relief sought by Petitioners was either beyond the jurisdiction of the Court to grant, unavailable under the law or, in the exercise of the Court's discretion and under all of the circumstances of the case, unnecessary or unwarranted. So, despite Petitioners having demonstrated the Government violated their rights under the CVRA, in the end they are not receiving much, if any, of the relief they sought. They may take solace, however, in the fact that this litigation has brought national attention to the Crime Victims' Rights Act and the importance of victims in the

---

[7] Petitioners also asked that they be granted the remedies requested in a sealed pleading (DE 134) filed on December 7, 2011. Almost all of these remedies are either addressed in this Order, the Court's prior Order (DE 435), or have been mooted by the death of Mr. Epstein. The only remedy that remains is Petitioners' request that the Court unseal the briefing concerning this remedy, which can be found at docket entries 119 and 134. The Court will order the Clerk to unseal these documents.

criminal justice system. It has also resulted in the United States Department of Justice acknowledging its shortcomings in dealing with crime victims, and its promise to better train its prosecutors regarding the rights of victims under the CVRA in the future. And rulings which were rendered during the course of this litigation likely played some role, however small it may have been, in the initiation of criminal charges against Mr. Epstein in the Southern District of New York and that office's continuing investigation of others who may have been complicit with him.

In view of all of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1)   The Clerk shall unseal docket entries 119 and 134.

2)   Jane Doe 1 and Jane Doe 2's Motion to Strike Response to Rule 25 Notice (DE 477) is denied.

3)   This Order shall constitute a judgment for purposes of Fed. R. Civ. P. 58.

4)   The Clerk will close the case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, 16th this day of September, 2019.

_____
KENNETH A. MARRA
United States District Judge